UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

IN RE:                                              Case No.  *09.34791 RBR*

ROTHSTEIN ROSENFELDT ADLER, P.A.,                   Involuntary Chapter 11 Proceeding

    Alleged Debtor.

_____/

[EMERGENCY HEARING REQUESTED ON OR BEFORE NOVEMBER 13, 2009]

**EMERGENCY MOTION FOR APPOINTMENT OF INTERIM CHAPTER 11 TRUSTEE**

    BONNIE BARNETT, ROGER WITTENBERNS, and ARAN DEVELOPMENT, INC., (hereinafter sometimes referred to individually as "Barnett," "Wittenberns," and "Aran Development," respectively, or collectively as the "Movants"), by and through their undersigned counsel, hereby file their Emergency Motion For Appointment Of Interim Chapter 11 Trustee, pursuant to 11 U.S.C. § 1104(a) and Federal Rules of Bankruptcy Procedure, Rule 2007.1(c) and Local Rule 9075-1, and state in support thereof as follows:

**L.R. 9075-1 CERTIFICATION OF BASIS FOR EMERGENCY HEARING**

    The appointment of a Chapter 11 Trustee is necessary in order to adequately protect the interests of Rothstein Rosenfeldt Adler, P.A.'s (hereinafter the "Alleged Debtor") former and current clients, to preserve funds on deposit in the Alleged Debtor's trust and other financial institution accounts, to secure business records, to vigorously investigate the causes of the reported five hundred million dollar ponzi scheme, and to commence litigation against responsible third parties in order to recoup losses for the hundreds of victims thereof. Unless an interim Chapter 11 Trustee is appointed, there will be a continuing risk of loss, concealment, dissipation and/or destruction of the Alleged Debtor's property resulting in direct, immediate, and substantial harm to the interests of entities in the Alleged Debtor's property and the ultimate

1

bankruptcy estate. On November 2, 2009, the Alleged Debtor filed an action in the Broward County Circuit Court seeking a judicial dissolution of the firm and the emergency appointment of a receiver. Accordingly, the Alleged Debtor would benefit, rather than be prejudiced, by the appointment of an interim Chapter 11 trustee.

## **MOTION**

1.     The Alleged Debtor is a law firm that has its principal place of business in this District.

2.     The Alleged Debtor is said to employ approximately 150 employees (including 70 attorneys) and has offices in Fort Lauderdale, Florida, Miami, Florida, Boca Raton, Florida, West Palm Beach, Florida, and New York, New York.

3.     At all relevant times, Scott W. Rothstein was the Alleged Debtor's Chief Executive Officer, Stuart A. Rosenfeldt was the Alleged Debtor's President, and Russell A. Adler was the Alleged Debtor's Vice President (hereinafter sometimes referred to individually as "Rothstein," "Rosenfeldt," and "Adler," respectively).

4.     Rothstein and Rosenfeldt were also each fifty percent shareholders of the Alleged Debtor. According to public admissions by Rosenfeldt he deferred completely to Rothstein on matters relating to the Alleged Debtor's finances.

5.     In or about July 2009, months before media reports chronicling Rothstein's alleged fraudulent activities, the Alleged Debtor, through Rothstein, the alleged Debtor's then partner Marc S. Nurik, Esq., finalized negotiations over a joint venture relationship between the alleged Debtor and certain lawyers in Caracas, Venezuela (the "Venezuelan Attorneys").

6.     On or about August 1, 2009, the joint venture relationship between the Venezuelan Attorneys and the Alleged Debtor took effect.

2

7.      According to media reports, Rothstein chartered a private plane and traveled from Fort Lauderdale, Florida to Casablanca, Morocco on October 27, 2009.

8.      Presumably, the firm's financial management is in charge of the Alleged Debtor's financial accounts and business operations during Rothstein's absence.

9.      The Alleged Debtor was the designated escrow agent for the receipt and disbursement of funds in a stock and real purchase transaction involving Ricardo Martinez and Camilo Manrique, each of whom are clients of the Venezuelan Attorneys in the subject real estate transaction (hereinafter the "Real Estate Transaction").

10.     In connection with its role as designated escrow agent for the Real Estate Transaction, the Alleged Debtor received a wire transfer in the amount $1.4 Million on October 29, 2009. The Alleged Debtor confirmed receipt of the wire transfer on October 30, 2009 (hereinafter the "Escrow Funds").

11.     On November 2, 2009, Rosenfeldt and the Alleged Debtor filed a Complaint for Dissolution and for Emergency Appointment of a Receiver in the Broward County Circuit Court. A true and correct copy of the Complaint is attached hereto as Exhibit "A" and is incorporated herein by this reference.

12.     The Complaint alleged that Rosenfeldt had learned "several days ago" that Rothstein secretly operated a structured settlement side business at the Alleged Debtor and misappropriated substantial investor funds from investor trust accounts in connection therewith.

13.     According to the Complaint, the funds allegedly misappropriated by Rothstein were unrelated to the direct practice of law and that "there [was] no necessity for the receiver to assume any control of the [Alleged Debtor's] law practice because the dedicated attorneys and

staff are continuing to assure that the interests of the firm's clients will remain paramount and will be fully protected."

14.     At an emergency hearing before the Broward County Circuit Court on November 2, 2009, Rosenfeldt reported that the Alleged Debtor's operating account had a balance of only $500,000.

15.     Following the hearing, Rosenfeldt admitted to Morales and others that the Escrow Funds had been transferred from the Alleged Debtor's escrow account to its operating account <u>on October 30, 2009</u> and immediately spent.  It should be noted that this transfer took place following Rothstein's departure to Casablanca, Morocco.

16.     On November 4, 2009, the Broward County Circuit Court entered an Order appointing the Honorable Herbert M. Stettin as receiver for the purpose of making the day-to-day financial decisions on behalf of the Alleged Debtor, investigating the status of any and all funds held in trust by the Alleged Debtor, and performing an accounting.  A true and correct copy of the Order is attached hereto as Exhibit "B" and is incorporated herein by this reference.

17.     The Order additionally appointed Rosenfeldt as the Alleged Debtor's Chief Executive Officer and granted him continuing authority to manage the Alleged Debtor's operations and ongoing client engagements.

18.     On November 4, 2009, the Honorable Robin Rosenbaum, United States Magistrate Judge for the Southern District of Florida issued a Search Warrant authorizing the search and seizure of property located in the Alleged Debtor's offices.  A true and correct copy of the Warrant is attached hereto as Exhibit "C" and is incorporated herein by this reference.

19.     On November 4, 2009, federal law enforcement authorities executed the Search Warrant and seized various property and records of the Alleged Debtor. An Inventory of the property seized is attached hereto as Exhibit "D" and is incorporated herein by this reference.

20.     Upon information and belief, Rosenfeldt turned over the Alleged Debtor's business records to federal law enforcement authorities without retaining copies thereof for the Alleged Debtor's continuing business operations.

21.     On or about November 6, 2009, Rosenfeldt reported that the firm's $500,000 operating account balance had dwindled to $300,000 in spite of a $200,000 refund issued to the Alleged Debtor from the Florida Democratic Party.

22.     On November 9, 2009, the United States of America filed a Verified Complaint for Forfeiture *In Rem* against eight real properties purchased by, with, or on behalf of Rothstein (hereinafter the "Forfeiture Complaint"). A true and correct copy of the Forfeiture Complaint is attached hereto as Exhibit "E" and is incorporated herein by this reference.

23.     The Forfeiture Complaint alleges that:

(a)     Rothstein has been operating a ponzi scheme since approximately 2005 and that Rothstein acquired the subject properties in connection with such ponzi scheme;

(b)     investor monies generated through the ponzi scheme were deposited into the Alleged Debtor's trust account;

(c)     these types of fraudulent investments had been offered by Rothstein to a variety of persons and entities throughout the United States for at least four years and the scheme involved hundreds of millions of dollars; and

(d)     Rothstein purchased many properties in the names of nominee corporations: "C1 07 LLC," "C1 08 LLC," "C1 16 LLC," "29 Bahia LLC," "MLC 350 LLC," "350 LOP # 2840 LLC," and "JB Boca M Holdings LLC."

24.     On November 10, 2009, the Movants filed an involuntary petition under Chapter 11 of Title 11 of the United States Code (hereinafter referred to as the "Bankruptcy Code") against the Alleged Debtor with the Clerk of this Court.

25.     In light of the transfer of the Escrow Funds from the Alleged Debtor's escrow account to the Alleged Debtor's operating account in Rothstein's absence, the nature of the allegations in the Complaint and the Forfeiture Complaint, and the extent of the Ponzi scheme as reported by the media and detailed in the Forfeiture complaint filed by the United States, the Movants respectfully submit that the appointment of an interim Chapter 11 Trustee is necessary and is in the best interests of the Alleged Debtor and the Alleged Debtor's creditors.

26.     Bankruptcy courts have found that one significant element of cause warranting the appointment of a chapter 11 trustee is where the funds of the Alleged Debtor have been improperly transferred out of the Alleged Debtor for its benefit and to the detriment of creditors. *In re Bibo, Inc.*, 76 F.3rd 256, 257-58 (9th Cir. 1996) (appointment of trustee was mandated where management had siphoned funds from the debtor); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3rd Circ. 1989) (systematic siphoning of debtor's assets to other companies under shareholders common control constitutes cause for the appointment of a trustee).

27.     The fact that an order for relief has not yet been entered in the instant bankruptcy case does not preclude the appointment of a chapter 11 trustee. *See, e.g., In re Professional Accountants Referral Services, Inc.*, 142 B.R. 422, 430 (Bankr. D. Colo. 1992). The language of Title 11 U.S.C. §1104 provides for the appointment of a trustee "at any time after the

commencement of the case but before confirmation of a plan." Section 1104 references the commencement of the case rather than the entry of the order for relief. *See Id.* Pursuant to title 11 U.S. C. §303, an involuntary case is "commenced" with the filing with the bankruptcy court of a petition under chapter 11 by the requisite type and number of entities. As set forth in paragraph 22 herein, because Movants have filed an involuntary petition, the instant bankruptcy case has been "commenced," and a trustee may, and Movants submit should, be appointed.

**WHEREFORE**, the Movants respectfully request this Honorable Court to enter an Order appointing an interim Chapter 11 trustee pursuant to pursuant to 11 U.S.C. § 1104(a) and Local Rule 9075-1 to operate the Alleged Debtor's business, to return property to its rightful third party owners, and for such other and further relief as the Court may deem just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the U.S. District Court for the Southern District of Florida and that I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Attorneys for the Movants*
Bank of America Tower at International Place
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: (305) 349-2300
Telecopier: (305) 349-2310

By: _____
   John H. Genovese, Esq.
   Florida Bar No.: 280852
   Robert F. Elgidely, Esq.
   Florida Bar No.: 111856
   Theresa M.B. Van Vliet, Esq.
    Florida Bar No.: 374040

7

**SONN & EREZ, PLC**
*Attorneys for the Movants*
Broward Financial Center
500 E. Broward Boulevard, Suite 1600
Fort Lauderdale, Florida 33394
Telephone: (954) 763-4700
Facsimile: (954) 763-1866

By: _____
       Jeffrey R. Sonn, Esq.
       Florida Bar No. 773514

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Emergency Motion

For Appointment Of Interim Chapter 11 Trustee has been furnished by the Court's CM/ECF

System and via U.S. Mail to STUART A. ROSENFELDT, ESQ., Rothstein Rosenfeldt Adler,

P.A., 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301, KENDALL

COFFEY, ESQ., Coffey Burlington, Office in the Grove, Penthouse, 2699 South Bayshore

Drive, Miami, Florida 33133; THE HONORABLE HERBERT M. STETTIN, One Biscayne

Tower, Suite 3700, Two South Biscayne Boulevard, Miami, Florida 33131; and to the Office of

the U.S. Trustee, 51 Southwest First Avenue, Room 1204, Miami, Florida 33130, on the 10th

day of November, 2009.

By: /s/ John H. Genovese
       John H. Genovese, Esq.

8

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

COMPLEX BUSINESS DIVISION

CASE NO. ____**09059301**____

**07**

STUART A. ROSENFELDT, individually,
and ROTHSTEIN ROSENFELDT ADLER, P.A.,
a Florida Professional Service Corporation,

      Plaintiffs,

v.

SCOTT W. ROTHSTEIN, individually,

      Defendant.

_____/

> **A TRUE COPY**
>
> NOV 02 2009
>
> HOWARD C. FORMAN
> CLERK OF CIRCUIT COURT
> BROWARD COUNTY, FL

## COMPLAINT FOR DISSOLUTION
## AND FOR EMERGENCY APPOINTMENT OF A RECEIVER

    Plaintiffs, Stuart A. Rosenfeldt, individually, and Rothstein Rosenfeldt Adler, P.A.

(sometimes referred to as the "firm"), files this action against Scott W. Rothstein, and alleges as

follows:

### PRELIMINARY STATEMENT

    It is with surprise and sorrow that the attorneys of Rothstein Rosenfeldt Adler, P.A. have

learned that Scott W. Rothstein, the managing partner and CEO of the firm, has, according to

assertions of certain investors, allegedly orchestrated a substantial misappropriation of funds

from investor trust accounts that made use of the law firm's name. The investment business

created and operated by Rothstein centered around the sale of interests in structured settlements.

Immediate judicial action is being sought to facilitate the investigation and accounting of

investor funds and to address the ongoing affairs of the firm in an appropriate manner.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

Meanwhile, there is no necessity for the receiver to assume any control of the firm's law practice because the dedicated attorneys and staff are continuing to assure that the interests of the firm's clients will remain paramount and will be fully protected.

Stuart Rosenfeldt and the firm have filed this action to minimize any further damage caused by Mr. Rothstein, to emphasize that the innocent attorneys and staff of the firm are not implicated in this controversy, and, most importantly, to protect the best interests of their clients.

## NATURE OF ACTION

1.      This is an action for judicial dissolution of the firm, an accounting, and appointment of a receiver pursuant to Florida Statutes Sections 607.1430(3), 607.1431 and 607.1432.

2.      Plaintiff Rosenfeldt is the firm's president. He has the inherent authority to initiate this emergency litigation.

3.      Defendant Rothstein is the firm's managing partner and CEO. Rothstein, a charismatic and talented lawyer, has controlled firm management, especially financial matters, and has not extended access to core financial matters and records to any other attorney at the firm.

4.      Plaintiff Rosenfeldt and Defendant Rothstein are the sole owners of the equity in the firm.

5.      The firm's principal office is located at 401 East Las Olas Blvd, Suite 1650, Fort Lauderdale, FL 33301.

6.      Venue properly lies with this Court because the firm's principal office is in Broward County.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

## BACKGROUND AND GROUNDS FOR DISSOLUTION

### The Firm

7.      The firm was founded by Plaintiff Rosenfeldt and Defendant Rothstein in 2002.

8.      The firm's practice was originally focused on labor and employment law, but the firm grew rapidly and its practice areas expanded to include intellectual property, corporate law, mergers and acquisitions, real estate, criminal defense, class actions, mass torts and personal injury claims, among others.

9.      The firm currently has seven offices, with locations in Florida, New York, and Venezuela, and employs over 70 lawyers.

10.     The firm has an outstanding group of attorneys, staff members, including distinguished former judges, many of whom have statewide, even national reputations, for professional excellence.

### The Settlement Funding Scheme

11.     Firm lawyers learned in the past few days about irregularities surrounding a settlement funding business operated by Rothstein.  The settlement funding business involved the purchase of structured legal settlements and the sale of these settlements to investors. Various investors have informed the firm that they believe that substantial funds are not properly accounted for and are missing. A review of the firm's records undertaken over this past weekend indicates that various funds unrelated to the direct practice of law cannot be accounted for, circumstances suggesting that investor money may have been misused by Rothstein who controlled all such accounts. Some investors allege that Defendant Rothstein may have been fabricating non-existent structured legal settlements for sale to investors.

COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

12.    Defendant Rothstein's allegedly improper activities were done without any knowledge of the other attorneys at the firm, and, in fact, Rothstein actively endeavored to hide the existence of the scheme.  It was not until several days ago that Plaintiff Rosenfeldt or any of the other lawyers at the firm discovered some of the circumstances concerning Defendant Rothstein's actions and the alleged improprieties.

13.    The firm's attorneys still have extremely limited knowledge concerning the allegations, and yet, recognize the importance of proceeding expeditiously to undercover the truth.  Thus, the emergency appointment of a receiver is critical to undertake at least a preliminary inquiry concerning Defendant Rothstein's conduct, and to make appropriate recommendations to the Court concerning any further investigation.

### Misuse of the Investor Trust Accounts

14.    With respect to the settlement funding scenario, Plaintiffs only recently discovered troubling information concerning Defendant Rothstein's investor trust accounts and details surrounding the transactions are still emerging.  However, it appears that Defendant Rothstein may have transferred substantial sums out of the investor trust accounts, and that the emergency appointment of a receiver is necessary to account for and, if appropriate, consider taking action to recover the missing investor trust account funds.

### CONCLUSION

15.    Defendant Rothstein's conduct in connection with the settlement funding and the investor trust accounts appears at this point to be extensive.  Under Florida Statute, a circuit court may dissolve a corporation having 35 or fewer shareholders if a sufficient showing is made with respect to improper or irregular conduct that materially injures the corporation. Moreover, based on Rothstein's own statements, there is a deadlock with respect to material aspects of the firm's

4



COFFEY BURLINGTON

OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

management. Among other disagreements, he has declined to resign despite the asserted and substantial irregularities because he purports to hold a 50% share of the law firm. Florida Statutes provide for the appointment of a receiver in the context of these circumstances. Dissolution and appointment of a receiver are critical to uncover the full extent of Defendant Rothstein's activities, to consider any appropriate action to recover missing proceeds, and to preserve, protect and review the firm's accounts and financial records.[1]

WHEREFORE, Plaintiffs demand judgment of dissolution and the appointment of a receiver to effect the dissolution, perform an accounting of the firm's assets and liabilities, undertake all actions necessary to uncover the extent of Defendant Rothstein's activities and to undertake all such other actions as may be necessary and appropriate under law.

Dated this 2nd day of November, 2009.

Respectfully submitted,

COFFEY BURLINGTON
Counsel for Plaintiffs
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
(305) 858-2900


By: _____
     For: KENDALL COFFEY
     Florida Bar No. 259861
     kcoffey@coffeyburlington.com

---

[1]    Annexed hereto as Exhibit A is an affidavit from Plaintiff Rosenfeldt attesting to the truthfulness of the allegations contained herein.

5

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

CASE NO.

STUART A. ROSENFELDT, individually, and
ROTHSTEIN ROSENFELDT ADLER, P.A.,
a Florida Professional Service Corporation,

      Plaintiffs,

v.

SCOTT W. ROTHSTEIN, individually,

      Defendant.

_____/

### AFFIDAVIT OF PLAINTIFF STUART A. ROSENFELDT

STATE OF FLORIDA      )
                     ) SS:
COUNTY OF BROWARD   )

      BEFORE ME, the undersigned authority, personally appeared STUART A. ROSENFELDT, ESQUIRE, who, being first duly sworn, deposes and says as follows:

      1.     I am the President of Plaintiff Rothstein Rosenfeldt Adler, P.A.

      2.     This Affidavit is based on personal knowledge.

      3.     I have reviewed the allegations of the Complaint to which this Affidavit is annexed, and I state under penalty of perjury that the allegations contained therein are true to the best of my knowledge, information, and belief.

## CIVIL COVER SHEET (COMPLEX LITIGATION UNIT)

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statute 25.075.

---

I.    CASE STYLE

In the Circuit Court of the 17th Judicial
Circuit in and for Broward County, Florida

Stuart A. Rosenfeldt + individually,

Rothstein Rosenfeldt Adler, P.A,
     Plaintiff(s),
     a Fla
     Professional
vs.     Service corp.

Scott W. Rothstein,
     Defendant(s).

09059301

07

Case # _____

Judge _____

**A TRUE COPY**

NOV 02 2009

HOWARD C. FORMAN
CLERK OF CIRCUIT COURT
BROWARD COUNTY, FL

---

II.    TYPE OF CASE

**Domestic Relations**
___Simplified dissolution
___Dissolution
___Support IV-D

___Support Non IV-D
___URESA - IV-D
___URESA - Non IV-D
___Domestic Violence

___Other Domestic Relations

**Torts**
___Prof. Malpractice
___Products Liability
___Auto Neglence

___Other Negligence

___Contracts
___Condominium
___Real Property/
Mortgage Fclsre.
___Eminent Domain
_X_Other

---

X This case is appropriate for assignment to the Complex Litigation Unit.

Please see attached Business Commercial Addendum if filing a commercial case.

Definition of Complex Litigation. A "complex case" is a case involving a complex legal and case management issues requiring extensive judicial management to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel.

In deciding whether an action is a complex case, the court must consider whether the action (excluding domestic relations cases) is likely to involve:

(a) Numerous pre-trial motions raising difficult or novel legal issues or legal issues that are inextricably intertwined that will be time consuming to resolve;

(b) Management of a large number of separately represented parties;

(c) Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court;

(d) Management of a large number of witnesses or a substantial amount of documentary evidence (including electronically stored information);

(e) Substantial time required to complete the trial;

(f) Management at trial of a large number of expert witnesses, attorneys or exhibits;

(g) Substantial post-judgment judicial supervision; and

(h) Any other factors identified by the court or a party.

---

**III. Is Jury Trial Demanded in Complaint?**
___Yes   X No

Date: 10/2/09

Signature of Attorney or Party
Initiating Action
Firm Coffey Burlington
Address 2699 South Bayshore Drive
City, State Zip Miami, Fla. 33133

Page 2 of 4

### CIVIL COVER SHEET BUSINESS-COMMERCIAL ADDENDUM
#### (PARTY OR ATTORNEY FILING ACTION MUST SELECT WHICH APPLIES)

Cases Subject to Complex Litigation Unit. All jury, non-jury, injunction and class action case shall be assigned to the Complex Litigation Unit if they are among the following types of actions.

THE PARTY OR ATTORNEY FILING ACTION MUST CIRCLE AT LEAST ONE OF THE PARAGRAPHS NUMBERS BELOW:

A. Any of the following where the amount in controversy is in excess of $150,000:

1. Claims arising from U.C.C. related transactions, if complex;

2. Claims arising from the purchase and sales of business or the assets of a business including contract disputes, commercial landlord-tenant claims and business torts;

3. Claims involving the sale of goods of services by or to business enterprises, if complex;

4. Claims involving non-consumer bank or brokerage accounts, including loan, deposit, cash management, and investment accounts;

5. Claims arising from the purchase, sale, lease of real or personal property or related security interest, if complex;

6. Claims related to construction litigation (non-personal injury) and surety bonds;

7. Franchise/franchisor relationships and liabilities;

8. Malpractice claims of non-medical professionals in connection with rendering services to a business enterprise;

9. Insurance coverage disputes, bad faith suits, and third party indemnity actions against insurers arising under policies issued to businesses, such as those claims arising under a commercial general liability policy or commercial property policy; and

10. Other complex disputes of a commercial nature (including fraudulent transactions), excluding those listed in Section 3 of Administrative Order Number 2008-1-Civ. Cases eligible under this category will normally have four or more parties, multiple claims and defenses, third party, cross or counterclaims, complex factual or legal issues, or other unusual features warranting assignment to the Complex Litigation Unit.

B.    Any of the following where the amount in controversy is in excess of $100,000.00:
    1.    Actions relating to the internal affairs or governance, dissolution or liquidation rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises;
    2.    Actions relating to trade secrets and non-compete agreements;
    3.    Intellectual property claims;
    4.    Actions relating to securities or relating to or arising under the securities laws or antitrust statutes;
    5.    Shareholder derivative suits and class actions involving claims that are subject to the Commercial Litigation Unit, pursuant to Administrative Order Number 2008-1-Civ.;
    6.    Actions relating to corporate trust affairs or directors and officer liability.

NOTE:  A copy of the Civil Cover Sheet and this Addendum must be served with the Complaint.  See Administrative Order Number 2008-1-Civ for further Complex Litigation Unit procedures.

EXHIBIT "B"

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

COMPLEX BUSINESS DIVISION

CASE NO. 09-059301

STUART A. ROSENFELDT, individually,
and ROTHSTEIN ROSENFELDT ADLER, P.A.,
a Florida Professional Service Corporation,

     Plaintiffs,

v.

SCOTT W. ROTHSTEIN, individually,

     Defendant.
_____/

## ORDER APPOINTING RECEIVER

    **THIS CAUSE** having come before the Court on Plaintiff's Amended Complaint for Dissolution and for Emergency Transfer of Corporate Powers to Stuart A. Rosenfeldt, or, in the Alternative, Appointment of a Custodian or Receiver, and the Court being duly informed in the premises, IT IS ORDERED AND ADJUDGED that:

    1.    Herbert Stettin is hereby appointed Receiver of Rothstein Rosenfeldt Adler, P.A. (the "firm") for all purposes outlined in this Order in accordance with the applicable Florida Statutes and Rule 1.620 of the Florida Rules of Civil Procedure.

    2.    Mr. Stettin (hereinafter referred to as the "Receiver") shall promptly file his Oath of Receiver with the Court in the form attached hereto, whereupon he shall undertake fully and faithfully to perform his duties as Receiver herein.

ORDER APPOINTING RECEIVER - CASE NO. 09-059301

**The Receiver's Authority**

3.      The Receiver is hereby authorized to take all necessary steps to secure the firm's physical premises, to restrict any individual's access to the firm's offices in his sole discretion, to set up appropriate document preservation protocols, and to preserve evidence. Provided, however, that no action undertaken by the Receiver shall restrict attorneys of the firm handling ongoing legal matters for clients of the firm, regardless of whether they continue their association with the firm going forward, from accessing the files of the firm for the purpose of continuing to perform legal services for these clients.

4.      The Receiver is further authorized to make the day-to-day financial decisions on behalf of the firm, including, but not limited to, the decision as to whether or not to disburse funds from firm accounts.

5.      The Receiver is hereby granted access to all of the firm's accounts and financial records, and shall have the authority to take appropriate action to investigate the status of any and all funds held in trust by the firm. Pursuant to this investigation, the Receiver shall the authority to appoint an accounting firm or other support staff to assist in his review of the firm's accounts and financial records.

6.      The Receiver shall, as soon as feasible, prepare and file with the Court as provided for by Rule 1.620 of the Fla.R.Civ.P. a complete inventory, under oath, of all of the assets, documents, and evidence, of which he takes custody and control under this Order.

7.      As provided below, this Order does not grant the Receiver, his staff, or his delegates the authority to manage any of the firm's operations or ongoing client engagements, except to the extent that such management is necessary to determine the status of any of the funds held by the firm in trust or is otherwise consistent with the authority granted to the Receiver herein.

2

ORDER APPOINTING RECEIVER - CASE NO. 09-059301

8.    Additionally, any disclosures of any client-related matters to the Receiver, his staff, or his delegates, shall not be deemed a waiver of any privilege, including, but not limited to, the attorney-client privilege and the attorney work product privilege.

### Plaintiff Stuart A. Rosenfeldt's Authority

9.    Plaintiff Stuart A. Rosenfeldt is hereby designated the firm's CEO.  Pursuant to this designation, all authority to manage the firm's operations and its ongoing client engagements is vested in Plaintiff Rosenfeldt.  Additionally, Plaintiff Rosenfeldt has full authority to take any legal action he deems to be in the best interests of the firm and its clients.  The Court finds that, because Defendant Rothstein has failed to appear at either of the hearings in this matter after having received notice, he has relinquished any authority with respect to any aspect of the firm's management.

### Further Proceedings

10.    On November 6, 2009, at 3 o'clock in the afternoon, the Court shall hold a status hearing on this matter with the Receiver[1], the Plaintiffs, and their counsel.  At such time, the Receiver shall advise the Court concerning his preliminary findings and make such recommendations as may be appropriate.

11.    The Receiver, Plaintiff Rosenfeldt, or any of the parties hereto shall have the ability to come before this Court to seek clarification of any issue of authority or other matter arising herein relating to the operation of the firm or the performance of his duties hereunder, including expanding the Receiver's authority where appropriate.

---

[1]    Because of a prior commitment, the Receiver may appear at the hearing by telephone.

3

ORDER APPOINTING RECEIVER - CASE NO. 09-059301

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, on this ____

day of November, 2009.

JEFFREY E. STREITFELD   NOV 0 4 2009
TRUE COPY

_____
CIRCUIT JUDGE

4

**OATH OF RECEIVER**

STATE OF FLORIDA       )
                               )SS:
COUNTY OF DADE       )

       BEFORE ME the undersigned authority personally appeared the Honorable Herbert Stettin who was sworn and says that he has been appointed Receiver in this action for the law firm that is the subject of the action pending before this Court and that he will faithfully perform his duties as Receiver.

_____
Herbert Stettin

       SWORN TO AND SUBSCRIBED before me this ___ day of November, 2009.

_____
NOTARY PUBLIC State of Florida

My Commission Expires:

EXHIBIT "C"

AO 93  (Rev  01/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 09-6431-RSR |
| | ) | |
| Office of Rothstein, Rosenfeldt & Adler, PA | ) | |
| 401 East Las Olas Boulevard, 15th, 16th, 22nd Floors | ) | |
| Fort Lauderdale, FL 33301 | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Southern_____ District of _____Florida_____
*(identify the person or describe the property to be searched and give its location)*:
Office of Rothstein, Rosenfeldt & Adler, PA, 401 East Las Olas Boulevard, 15th, 16th and 22nd Floors, Fort
Lauderdael, FL 33301, as more fully described in Attachment A, attached hereto and made a part hereof.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the*
*property to be seized)*:
Those items set forth in Attachment B, attached hereto and made a part hereof.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or
property.

**YOU ARE COMMANDED** to execute this warrant on or before     *11-14-09*
                                                                                                            *(not to exceed 10 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been
                                                                        established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property
taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the
place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an
inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty at the time of the return                                          .
                    *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay
of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be
searched or seized *(check the appropriate box)* ☐for _____ days *(not to exceed 30).*
                                                                        ☐until, the facts justifying, the later specific date of _____

Date and time issued:     *11-4-09   4:46 p.m.*                     _____
                                                                                                    *Judge's signature*

City and state:     Fort Lauderdale, FL     _____                Magistrate Judge Robin S. Rosenbaum
                                                                                            *Printed name and title*

AO 93 (Rev 01/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**
Physical Description of Target Location

Office of Rothstein, Rosenfeldt & Adler, PA
401 East Las Olas Boulevard, 15th, 16th and 22nd Floors
Fort Lauderdale, FL 33301

Rothstein, Rosenfeldt & Adler, PA is located in the Las Olas City Centre on East Las Olas Boulevard between SE 3rd Avenue and Federal Highway. The building is described as a white sky-scraper. Two signs in front of the building state "Bank of America Plaza at Las Olas" and "RRA Rothstein Rosenfeldt Adler." The law offices of Rothstein, Rosenfeldt & Adler are located on the 15th, 16th and 22nd Floors of the building. *See* photograph attached as ATTACHMENT A1 and made a part hereof.



**ATTACHMENT A1**

Attachment B

The items to be seized include the following: documents, books, ledgers, records, files, computer software, including disks, magnetic tapes, programs, and computer printouts and other documents, relating to or reflecting wire fraud and the laundering of investor proceeds and payments, income and expenses, in connection with the offer of investments into settlement agreements through ROTHSTEIN, ROSENFELDT & ADLER, P.A.

These items include:

☐ Deal Folders, which include two files for each investor transaction: a manila folder containing redacted structured settlement agreements and correspondences and a red folder containing unredacted structured settlement agreements and correspondences.

☐ ALL INVESTOR BOOKKEEPING RECORDS and other financial records including, but not limited to, settlement agreements, deal lists, investor payout lists, trust accounting records, investor trust accounts, books, records, ledgers, journals, receipts, invoices, billing statements, and other papers, records, correspondences or documents that may, in any way, be related to transactions involving client investments into settlement agreements through ROTHSTEIN, ROSENFELDT & ADLER.

☐ Investor correspondence, detailed records of meetings, handwritten or computerized, or other records reflecting conversations or transactions with and/or concerning investors and potential investors.

☐ SAVINGS, CHECKING AND TRUST ACCOUNT RECORDS, including monthly bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, wire transfers, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, Forms 1099, debit and credit memos, and records of any certificates of deposit.

☐ Any and all other records, documents and/or evidence constituting the fruits and instrumentalities of potential violations of Title 18, United States Code, Section 1956 (a)(1)(A)(i); Title 18, United States Code, Section 1957, and Title 18, United States Code, Section 1343, *as described in the affidavit for search warrant submitted in support of this warrant.*

☐ Any and all information, still or moving pictures, film and/or data obtained from surveillance video cameras and stored and/or maintained on the premises.

The above and foregoing includes any and all of the above-described information that may be stored on computer storage media. This includes information stored on computer hard drives, diskettes, tapes, CD-ROM, or any other media capable of storing information in a form readable by a computer. This also includes all copies of the information described above that may be maintained as archive or backup copies.

1

The agents searching for such information are authorized to search any desktop, other "personal computer" or PC located on the premises to be searched and to copy all above-described information stored on such computer.

The Computer Investigative Specialist, when searching for evidence authorized under the warrant, will take reasonable steps to avoid searching for and viewing documents which are not authorized under the warrant. These steps include the identification of non-pertinent directories and files. The Computer Investigative Specialist will not disclose the content of any file not covered under the warrant to the investigators.

In the event that the agents cannot, for technical reasons, obtain access to any subject computer or cannot search for or copy information contained on that computer, the agents are then authorized to seize such computer and remove it to a laboratory setting for a sufficient period of time to obtain access to, search for, and recover the files and financial records described above. In addition, if the files and records described above cannot be read and understood without the software of programs that created those files or records, the agents are authorized to seize such software and any documentation and manuals that describe the software and give instruction on its installation and use.

Additionally, to insure the accuracy and completeness of computer data and to prevent loss of data, either from accidental or programmed destruction, a qualified IRS-CI or FBI Special Agent/Computer Investigative Specialist (CIS) will be utilized. To effect such accuracy and completeness requires the seizure of all computerized records, computer equipment and peripherals, the software to operate them and related instruction manuals. Computerized records include, but are not limited to, the following:

Any and all information and/or data stored in the form of magnetic or electronic coding on computer related equipment. This media includes, but is not limited to, floppy disks, fixed hard disks, removable hard disk cartridges, tapes, laser disks, videocassettes, and any other media that is capable of storing magnetic coding. Any and all electronic devices which are capable of analyzing, creating, displaying, converting or transmitting electronic or magnetic computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, encryption circuit boards, optical scanners, external hard drives and other computer related electronic devices. Any and all instructions or programs stored in the form of electronic or magnetic media that are capable of being interpreted by a computer or related components. The items to be seized include, but are not limited to, operating systems, application software, utility programs, compilers, interpreters and any other programs or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio or other means of transmission. Any and all written or printed material which provides instructions or examples concerning the operation of computer system, computer software and/or related device.

2

EXHIBIT "D"

# Inventory Listing of All Items Seized at Search Warrant Site

**Site Name:**
401 E Las Olas Blvd, Ft Lauderdale, FL

Rothstein, Rosenfeldt, Adler Law Firm

**Investigation Number:**
1000229866

**Starting Date and Time:**
11/04/2009 07:45 PM

**Ending Date and Time:**
11/05/2009 03:15 AM

**Report Date:**
Thursday, November 05, 2009

| | | | |
|---|---|---|---|
| **Control #:** | 1 | **Evidence Box:** | 1 |
| **Location:** | Cubicle | **Locator Code:** | 15-42 |
| **Found:** | 15th Floor - Cubicle | | |
| **Description:** | Seized Per Warrant | One manila folder containing settlement statements labeled "Original Settlement Statements" | |

| | | | |
|---|---|---|---|
| **Control #:** | 2 | **Evidence Box:** | 1 |
| **Location:** | Cubicle | **Locator Code:** | 15-28A |
| **Found:** | 15th Floor | | |
| **Description:** | Seized Per Warrant | Documents titled Settlement Statement | |

| | | | |
|---|---|---|---|
| **Control #:** | 3 | **Evidence Box:** | 1 |
| **Location:** | Office | **Locator Code:** | 15-14A Desktop |
| **Found:** | 15th Floor | | |
| **Description:** | Seized Per Warrant | Certificates of Verification w/respect to cases RRA-5161, RRA-5160, RRA-5162 and a letter to Scott Rothstein re: RRA-401 | |

| | | | |
|---|---|---|---|
| **Control #:** | 4 | **Evidence Box:** | 1 |
| **Location:** | Office | **Locator Code:** | 15-38 |
| **Found:** | Right side of desk | | |
| **Description:** | Seized Per Warrant | Commerce Operating List, Email from Rothstein re: wires, Gibraltar statements & wires, folder with payments to Morse, Banyon Folder | |

| | | | |
|---|---|---|---|
| **Control #:** | 5 | **Evidence Box:** | 1 |
| **Location:** | Office | **Locator Code:** | 15-38A |
| **Found:** | Irene Stay's Office | | |
| **Description:** | Seized Per Warrant | Banyon Investment deposit logs, emails from Rothstein to Irene to move money, deposit slips | |

| | | | |
|---|---|---|---|
| **Control #:** | 6 | **Evidence Box:** | 1 |
| **Location:** | Office | **Locator Code:** | 15-38 |
| **Found:** | Irene Stay's Office | | |
| **Description:** | Seized Per Warrant | Trust Account bank statements, commerce bank operating account, trust account reconciliations | |

| Control #: | 7 | Evidence Box: | 2 |
|---|---|---|---|
| Location: | Office | Locator Code: | 16-16 |
| Found: | Room 16 | | |
| Description: | Seized Per Warrant   Gibraltar Private Bank & Trust Receipt, dated 10/19/09 | | |

| Control #: | 8 | Evidence Box: | 2 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-39A |
| Found: | Desk | | |
| Description: | Seized Per Warrant   Bank Stamps | | |

| Control #: | 9 | Evidence Box: | 3 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-39 |
| Found: | Office | | |
| Description: | Seized Per Warrant   Box containing miscellanous bank records | | |

| Control #: | 10 | Evidence Box: | 4 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-39 |
| Found: | Office | | |
| Description: | Seized Per Warrant   Box labeled 2005 bank statements, payroll docs | | |

| Control #: | 11 | Evidence Box: | 5 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-39 |
| Found: | Office | | |
| Description: | Seized Per Warrant   Box containing RRA - Operating Gibraltar documents | | |

| Control #: | 12 | Evidence Box: | 6 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-39 |
| Found: | Office | | |
| Description: | Seized Per Warrant   Box containing RRA Operating Gibraltar documents | | |

| Control #: | 13 | Evidence Box: | 7 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-33 |
| Found: | Office | | |
| Description: | Seized Per Warrant   Files re: deal folders | | |

| Control #: | 14 | Evidence Box: | 8 |
|---|---|---|---|
| Location: | Cubicle | Locator Code: | 15-33 |
| Found: | Cubicle | | |
| Description: | Seized Per Warrant   Deal folders | | |

| Control #: | 15 | Evidence Box: | 9 |
|---|---|---|---|
| Location: | Cubicle | Locator Code: | 15-33 |
| Found: | Office | | |
| Description: | Seized Per Warrant   Deal Folders | | |

| Control #: | 16 | | Evidence Box: | 10 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 17 | | Evidence Box: | 11 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 18 | | Evidence Box: | 12 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 19 | | Evidence Box: | 13 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 20 | | Evidence Box: | 14 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 21 | | Evidence Box: | 15 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 22 | | Evidence Box: | 16 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal Folders | | |

| Control #: | 23 | | Evidence Box: | 17 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal folders | | |

| Control #: | 24 | | Evidence Box: | 18 |
|---|---|---|---|---|
| Location: | Cubicle | | Locator Code: | 15-33 |
| Found: | Cubicle | | | |
| Description: | Seized Per Warrant | Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 25 | **Evidence Box:** | 19 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 26 | **Evidence Box:** | 20 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 27 | **Evidence Box:** | 21 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 28 | **Evidence Box:** | 22 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 29 | **Evidence Box:** | 23 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 30 | **Evidence Box:** | 24 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 31 | **Evidence Box:** | 25 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 32 | **Evidence Box:** | 26 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 33 | **Evidence Box:** | 27 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant   Deal folders | | |

| | | | |
|---|---|---|---|
| **Control #:** | 34 | **Evidence Box:** | 28 |
| **Location:** | Cubicle | **Locator Code:** | 22-17 |
| **Found:** | Open Office Area | | |
| **Description:** | Seized Per Warrant | File folder containing operational records, cancelled checks, etc | |

| | | | |
|---|---|---|---|
| **Control #:** | 35 | **Evidence Box:** | 28 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant | Jewelry certificates and miscellaneous folder labeled Mary Beth File | |

| | | | |
|---|---|---|---|
| **Control #:** | 36 | **Evidence Box:** | 29 |
| **Location:** | Cubicle | **Locator Code:** | 15-33 |
| **Found:** | Cubicle | | |
| **Description:** | Seized Per Warrant | Vehicle purchase documents | |

| | | | |
|---|---|---|---|
| **Control #:** | 37 | **Evidence Box:** | 30 |
| **Location:** | Office | **Locator Code:** | 16-9 |
| **Found:** | Office | | |
| **Description:** | Seized Per Warrant | One white envelope containing significant fund transfers from RRA; Various folders consisting of redacted structured settlement agreements and correspondence | |

| | | | |
|---|---|---|---|
| **Control #:** | 38 | **Evidence Box:** | 31 |
| **Location:** | Office | **Locator Code:** | 16-01 |
| **Found:** | Right side of Desk | | |
| **Description:** | Seized Per Warrant | Rothstein AMEX Statements, Bank of America Online Statements 6835 - 2006, Intracoastal Assets Brochure, Quickbooks & Excel Reports & SWR Entities, stock certificates & Q-Task to AAMM Holdings, Letter RE: Edify LLC Separation, Investor Promissory Note - Brauser | |

| | | | |
|---|---|---|---|
| **Control #:** | 39 | **Evidence Box:** | 31 |
| **Location:** | Office | **Locator Code:** | 16-01 |
| **Found:** | Right side of desk on the floor | | |
| **Description:** | Seized Per Warrant | Investment records, Gibraltar bank folder, AMEX Statements, TD Bank record, Limo Records for Jake, Sea Club Resort Financial Statements | |

| | | | |
|---|---|---|---|
| **Control #:** | 40 | **Evidence Box:** | 31 |
| **Location:** | Office | **Locator Code:** | 16-02 |
| **Found:** | Office of Debra Villegas | | |
| **Description:** | Seized Per Warrant | Blue Star Itinerary from Blue Star Jets, dated October 26, 2009 for flight from Ft Lauderdale Executive Airport to Casablanca, Morocco Depature 10/27/09 8pm Return 11/06/09 12:00 pm | |

| Control #: | 41 | | Evidence Box: | 31 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-02 |
| Found: | Office of Debra Villegas | | | |
| Description: | Seized Per Warrant | Gibraltar bank documents, deposit slips for Gibraltar Bank, bank account numbers on sticky for Rachel, SWR, Kim; Manila Folder marked "Shred" containing Gibraltar bank documents & Miscellaneous Trust Information. | | |

| Control #: | 42 | | Evidence Box: | 32 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-09 |
| Found: | Office | | | |
| Description: | Seized Per Warrant | Bank of America LOC, MIP Finance, emails, Rothstein Fund, CCLLC Mortgage with telephone records with notes and complainants, red folder with flow charts and emails, presentation RRA fund LLC, Merrill Lynch Structured | | |

| Control #: | 43 | | Evidence Box: | 31 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-02 |
| Found: | Cabinet | | | |
| Description: | Seized Per Warrant | Vehicle Payment booklets | | |

| Control #: | 44 | | Evidence Box: | 33 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-02 |
| Found: | Office of Debra Villegas | | | |
| Description: | Seized Per Warrant | Binders and corporate records | | |

| Control #: | 45 | | Evidence Box: | 34 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-02 |
| Found: | Office of Debra Villegas | | | |
| Description: | Seized Per Warrant | Three binders of SWR Personnel & Auto Insurance Policies, files related to vehicle purchases. | | |

| Control #: | 46 | | Evidence Box: | 35 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-02 |
| Found: | Office of Debra Villegas | | | |
| Description: | Seized Per Warrant | Binders of Corporate Documents | | |

| Control #: | 47 | | Evidence Box: | 36 |
|---|---|---|---|---|
| Location: | Office | | Locator Code: | 16-02 |
| Found: | Office of Debra Villegas | | | |
| Description: | Seized Per Warrant | Personal Financial Documents, Property Documents, Bank Records | | |

| | | | |
|---|---|---|---|
| **Control #:** | 48 | **Evidence Box:** | 37 |
| **Location:** | Office | **Locator Code:** | 16-02 |
| **Found:** | Office of Debra Villegas | | |
| **Description:** | Seized Per Warrant    Financial Documents, client complaints, bar complaints, jewelry appraisals | | |

| | | | |
|---|---|---|---|
| **Control #:** | 49 | **Evidence Box:** | 38 |
| **Location:** | Office | **Locator Code:** | 16-02 |
| **Found:** | Office of Debra Villegas | | |
| **Description:** | Seized Per Warrant    Binders and corporate documents, financial documents, property documents, and bank records | | |

| | | | |
|---|---|---|---|
| **Control #:** | 50 | **Evidence Box:** | 39 |
| **Location:** | Office | **Locator Code:** | 16-02 |
| **Found:** | Cabinet | | |
| **Description:** | Seized Per Warrant    Personal Financial Documents, Jewelry Files, Bank Records | | |

| | | | |
|---|---|---|---|
| **Control #:** | 51 | **Evidence Box:** | 40 |
| **Location:** | Office | **Locator Code:** | 16-02 |
| **Found:** | Office of Debra Villegas | | |
| **Description:** | Seized Per Warrant    Binders and corporate documents | | |

| | | | |
|---|---|---|---|
| **Control #:** | 52 | **Evidence Box:** | 41 |
| **Location:** | Office | **Locator Code:** | 16-09 |
| **Found:** | On the desk | | |
| **Description:** | Seized Per Warrant    One potential "taint" letter | | |

| | | | |
|---|---|---|---|
| **Control #:** | 53 | **Evidence Box:** | 42 |
| **Location:** | Office | **Locator Code:** | 16-01 |
| **Found:** | Credenza behind the desk | | |
| **Description:** | Seized Per Warrant    Unknown amount of currency | | |

| | | | |
|---|---|---|---|
| **Control #:** | 54 | **Evidence Box:** | |
| **Location:** | Office | **Locator Code:** | 22-13 |
| **Found:** | On the floor, left side of room | | |
| **Description:** | Seized Per Warrant    Dell GX280 OptiPlex Tag #CMQPR71 | | |

| | | | |
|---|---|---|---|
| **Control #:** | 55 | **Evidence Box:** | |
| **Location:** | Office | **Locator Code:** | 22-13 |
| **Found:** | On floor left side of room | | |
| **Description:** | Seized Per Warrant    GX280 Optiplex Tag #4PQPR71 | | |

| | | | |
|---|---|---|---|
| **Control #:** | 56 | **Evidence Box:** | |
| **Location:** | Office | **Locator Code:** | 22-13 |
| **Found:** | First rack | | |
| **Description:** | Seized Per Warrant    Video Raid 1 top DELL MD 1000 | | |

| Control #: | 57 | Evidence Box: | |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-13 |
| Found: | Office | | |
| Description: | Seized Per Warrant | Scanner Doc Raid, Dell MD 3000 | |

| Control #: | 58 | Evidence Box: | |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-13 |
| Found: | Bottom Shelf | | |
| Description: | Seized Per Warrant | Video Raid 2 Bottom, Dell MD 1000 | |

| Control #: | 59 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-12 |
| Found: | On top of the desk | | |
| Description: | Seized Per Warrant | Scan Disk Cruzer 4 g micro thumbdrive SDCZ64098RB | |

| Control #: | 60 | Evidence Box: | |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-13 |
| Found: | Rack 1 | | |
| Description: | Seized Per Warrant | Dell 2930 Server Exchange #JKZ1ZH1 | |

| Control #: | 61 | Evidence Box: | |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-13 |
| Found: | Rack 1 | | |
| Description: | Seized Per Warrant | Dell 2930 FTLSECVID Server TAG 7F16XH1 | |

| Control #: | 62 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-02 |
| Found: | Office | | |
| Description: | Seized Per Warrant | Image of 160gig hard drive from Dell Optiplex 755 (S/N: HVNOKFI) | |

| Control #: | 63 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 16-01 |
| Found: | Desk - right drawer | | |
| Description: | Seized Per Warrant | Four (4) thumb drives with labels | |

| Control #: | 64 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-01 |
| Found: | 22-01 and 22-12 | | |
| Description: | Seized Per Warrant | Two separate images: (1) 80 gig hdd Dell Optiplex (s/n: 75BYQH1) and (2) 160 gig hdd from Dell Optiplex GX620 (s/n: GYNHCB1) | |

| Control #: | 65 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-12 |
| Found: | Office | | |
| Description: | Seized Per Warrant | 2 boxed sets of WebCCTV Network Video Recorder CD's found in shelf above the desk on far right floor | |

| Control #: | 66 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 12-12 |
| Found: | 16-09, 22-12 | | |
| Description: | Seized Per Warrant | Image of 160 gig WD h/d from Dell Optiplex 755 desktop located next to the desk, area 16-9 (16th Floor, Room 9) Dell s/n (4J1688F1) 1000229866-1-16-9-1-0; Image of 20 gig Hitachi h/d Fujitsu lifebook laptop found on top of table, near wall opposite desk 1000229866-1-22-12-5-1 | |

| Control #: | 67 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 16-02 |
| Found: | 16-02 and 15-38 | | |
| Description: | Seized Per Warrant | Image of 160 gig h/d from Dell Optiplex 755 desktop (6J1068F1) located under the desk in area 16-02 - 1000229866-1-16-2-1-0;  Image of 160 gig Seagate h/d from Dell Optiplex 755 desktop located under desk - 1000229866-1-15-38-1-0 | |

| Control #: | 68 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-12 |
| Found: | On table near desk | | |
| Description: | Seized Per Warrant | Seagate free agent desk external hard drive (s/n: 2GEBG60L) | |

| Control #: | 69 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 16-01 |
| Found: | Trash Can | | |
| Description: | Seized Per Warrant | Miscellaneous documents found in the trash can | |

| Control #: | 70 | Evidence Box: | 43 |
|---|---|---|---|
| Location: | Office | Locator Code: | 22-12 |
| Found: | Laptop Image | | |
| Description: | Seized Per Warrant | Image of 320 gig hard drive from Dell Laptop Serial Number 7VCRJ1; WDL-WD3200BEVT-7; WD-WXD0A59D8961 | |

| Control #: | 71 | Evidence Box: | 44 |
|---|---|---|---|
| Location: | Office | Locator Code: | 15-72 |
| Found: | Server Room | | |
| Description: | Seized Per Warrant | Multiple hard drives and images as shown on attached property receipt | |

| Control #: | 72 | Evidence Box: | 44 |
|---|---|---|---|
| Location: | Office | Locator Code: | 16-01 |
| Found: | Right hand desk drawer | | |
| Description: | Seized Per Warrant    First Union Bank Safe Deposit Box #48 | | |

| Control #: | 73 | Evidence Box: | 44 |
|---|---|---|---|
| Location: | Office | Locator Code: | 16-01 |
| Found: | Desk right hand drawer | | |
| Description: | Seized Per Warrant    Ferrari Key | | |

EXHIBIT "E"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **09-CV-61780-Zloch-Rosenbaum**

UNITED STATES OF AMERICA,

       Plaintiff,

v.

VARIOUS REAL PROPERTIES PURCHASED BY
OR WITH OR ON BEHALF OF SCOTT W. ROTHSTEIN,
SPECIFICALLY:

(1) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2307 CASTILLA ISLE, FORT
LAUDERDALE, FLORIDA;

(2) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2308 CASTILLA ISLE, FORT
LAUDERDALE, FLORIDA;

(3) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2316 CASTILLA ISLE,
FORT LAUDERDALE, FLORIDA;

(4) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 30 ISLA BAHIA DRIVE,
FORT LAUDERDALE, FLORIDA;

(5) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 29 ISLA BAHIA DRIVE,
FORT LAUDERDALE, FLORIDA;

(6) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 350 SE 2nd STREET, UNIT 2840,
FORT LAUDERDALE, FLORIDA;

(7) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 380 CARRINGTON DRIVE,
WESTON, FLORIDA;

(8) REAL PROPERTY AND APPURTENANCES,
LOCATED AT 2133 IMPERIAL POINT DRIVE,
FORT LAUDERDALE, FLORIDA;

       Defendants.
_____/

FILED by _VT_ D.C.
ELECTRONIC

**Nov. 9, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, hereby files this verified civil complaint for forfeiture *in rem* and states as follows:

### GENERAL ALLEGATIONS

1.     This is a civil action for forfeiture *in rem* for eight real properties, situated in Broward County in the Southern District of Florida, and appurtenances thereon, located at (1) 2307 Castilla Isle, Fort Lauderdale, Florida; (2) 2308 Castilla Isle, Fort Lauderdale, Florida; (3) 2316 Castilla Isle, Fort Lauderdale, Florida; (4) 30 Isla Bahia Drive, Fort Lauderdale, Florida; (5) 29 Isla Bahia Drive, Fort Lauderdale; (6) 350 SE 2nd Street, Unit 2840, Fort Lauderdale, Florida; (7) 380 Carrington Drive, Weston, Florida; and (8) 2133 Imperial Point Drive, Fort Lauderdale, Florida, hereinafter collectively known as "the defendants" or "the defendant properties," for violation of 18 U.S.C. §1343, and/or 18 U.S.C. §1957, thereby subjecting the defendant properties to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and pursuant to 18 U.S.C. §981(a)(1)(A).

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345 and 1355.

3.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. §§ 1355 (b)(1), 1355 (b)(2) and 1395 because the defendant properties are located in the Southern District of Florida.

4.     The defendant real properties will not be seized, but will be posted with a summons/notice of the complaint in accordance with 18 U.S.C. §985(c)(1) and (3).

5.     The defendant real property located at 2307 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant 1," includes all buildings, improvements, fixtures,

-2-

attachments and easements found therein or thereon, and is more particularly described as:

Lauderdale Shores Reamen Plat 15-31 B Lot 2 Blk 5

6.    The defendant real property located at 2308 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant 2," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

Lauderdale Shores Reamen Plat 15-31 B Lot 2 Blk 4

7.    The defendant real property located at  2316 Castilla Isle, Fort Lauderdale, Florida, hereafter also referred to as "Defendant 3," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

Lauderdale Shores Reamen Plat 15-31 B Lot 3 & Lot 4 W ½ Blk 4

8.    The defendant real property located at 30 Isla Bahia Drive, Fort Lauderdale, Florida, hereafter also referred to as "Defendant 4," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

Isla Bahia 47-27 B Lot 63

9.    The defendant real property located at 29 Isla Bahia Drive, Fort Lauderdale, hereafter also referred to as "Defendant 5," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

Isla Bahia 47-27 B Lot 35

10.    The defendant real property located at 350 SE 2nd Street, Unit 2840, Fort Lauderdale, Florida, hereafter also referred to as "Defendant 6," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

350 Las Olas Place Condo Unit 2840

-3-

11.     The defendant real property located at 380 Carrington Drive, Weston, Florida, hereafter also referred to as "Defendant 7," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

Sector 4 North 153-46 B Lot 24 Blk A

12.     The defendant real property located at 2133 Imperial Point Drive, Fort Lauderdale, hereafter also referred to as "Defendant 8," includes all buildings, improvements, fixtures, attachments and easements found therein or thereon, and is more particularly described as:

Imperial Point 1 Sec 53-44 B Lot 11 Blk 22

## FACTUAL ALLEGATIONS

13.     Based upon the following information, there is probable cause to believe that the above-described defendant properties were acquired in connection with a "Ponzi" scheme, conducted by attorney Scott Rothstein, hereinafter "ROTHSTEIN," and others.  ROTHSTEIN has been operating the "Ponzi" scheme since approximately 2005.

14.     According to witness complaints, clients were solicited by, or on behalf of, ROTHSTEIN to invest in pools of structured settlements in which putative plaintiffs in civil cases had entered into confidential settlement agreements with putative defendants based upon the forbearance of civil claims in sexual harassment and other labor-related cases.  The potential investors were told that these settlements, which existed in blocks ranging from hundreds of thousands to millions of dollars, could be purchased at a discount and repaid to the investors at face value over time.  Clients who agreed to invest were directed by ROTHSTEIN or others to wire transfer funds to the trust account of Rothstein, Rosenfeld and Adler, PA, hereinafter "RRA," a law firm located in Fort Lauderdale, Florida.  For example, in September 2009, one potential investor

-4-

was told that he could purchase a settlement valued at $450,000.00 for $375,000.00 which would be repaid in increments of $150,000.00 per month for the following three months. This would amount to a yield of 20 percent over three months, or an annual percentage yield in excess of 80 percent. The investor was further told that the funds were held in the RRA trust account. The investor was shown a purported wire transfer receipt as evidence that the funds were held in the trust account of RRA. ROTHSTEIN is the first named partner of RRA.

15.     The criminal investigation has disclosed that the investments purportedly underlying the above-described investment scheme never existed. The investigation has established that no such settlement agreements had ever existed and the entire investment scheme was a fraud. These transactions constituted a "Ponzi" scheme in which new investor money was utilized to pay previous investors in furtherance of the scheme. The investigation has disclosed that these types of fraudulent investments had been offered by Rothstein to a variety of persons and entities throughout the United States for at least four years, and the scheme involved hundreds of millions of dollars. Multiple bank accounts were utilized at financial institutions into which investors' money was sent by wire transfer across state lines. Further, as a fraudulent inducement to investors, ROTHSTEIN and co-conspirators falsified documents which were presented to investors as proof that certain sums of money were contained in these bank accounts when, in fact, the bank accounts did not contain these funds.

16.     The investigation has established that portions of the criminally derived proceeds were used to pay past investors thereby promoting the scheme. The investigation has established that portions of the criminally derived proceeds were used to acquire millions of dollars worth of assets including the defendant real properties set forth above. The investigation has further established that

-5-

many of the properties have been transferred to the following nominee corporations controlled by Rothstein, as set forth below, as a wealth preservation mechanism: "C1 07 LLC," "C1 08 LLC," "C1 16 LLC," "29 Bahia LLC," "MLC 350 LLC,""350 LOP #2840 LLC," "JB Boca M Holdings LLC."

17.    The investigation has established that Rothstein's financial ability to acquire such properties did not exist prior to the execution of the Ponzi scheme.

18.    Rothstein used proceeds obtained from the Ponzi scheme to acquire the defendant real properties.

19.    Rothstein acquired Defendant 1 on or about September 21, 2007 for a sales price of $1,750,000.

20.    Defendant 1 was transferred, via Quit Claim Deed, to "C1 07 LLC" on or about August 10, 2009.

21.    Rothstein acquired Defendant 2 on or about March 3, 2005 for a sales price of $2,730,000.

22.    Defendant 2 was transferred, via Quit Claim Deed, to "C1 08 LLC" on or about July 22, 2009.

23.    Rothstein acquired Defendant 3 on or about March 14, 2007 for a sales price of $1,925,000.

24.    Defendant 3 was transferred, via Quit Claim Deed, to "C1 16 LLC" on or about August 10, 2009.

25.    Rothstein and his wife Kimberly Rothstein acquired Defendant 4 on or about March 14, 2008 for a sales price of $6,450,000.

26.    Defendant 5, a vacant lot, was transferred to "29 Bahia LLC" on or about January 7,