UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

In re:

Rothstein Rosenfeldt Adler, PA.,   Case No.: 09-34791-BKC-RBR
                                    Chapter 11
    Alleged Debtor.
_____/

**MOTION OF THE UNITED STATES TRUSTEE
FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER
11 TRUSTEE AND OBJECTION TO RETENTION OF
CHIEF RESTRUCTURING OFFICER.
(Expedited Hearing Requested - November 20, 20009)**

The United States Trustee for Region 21, Donald F. Walton ("UST"), through his undersigned counsel, moves this Court for an order directing the appointment of a chapter 11 trustee, and objects to the Debtor's retention of a chief restructuring officer, for the following reasons:

**BACKGROUND**

1. Pursuant to 28 U.S.C. § 586, the UST is charged with the administrative oversight of cases commenced pursuant to Title 11 of the United States Bankruptcy Code. This duty is part of the UST's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting the UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

2. On November 10, 2009 (the "Petition Date"), four petitioning creditors, Roger Witterberns ("Witterberns"), Bonnie Barnett ("Barnett"), Aran Development, Inc. ("Aran") and

Universal Legal ("Universal")(collectively "Petitioning Creditors") with claims asserted in the total amount of $1,152,800, filed an Involuntary chapter 11 petition against Rothstein Rosenfeldt Adler, P. A., ("Alleged Debtor")(DE#1).  The Summons to Debtor in Involuntary Case was issued on November 10, 2009 (DE#3).

3. On November 10, 2009, Witterberns, Barnett and Aran (three of the Petitioning Creditors) filed an Emergency Motion for Appointment of Interim Chapter 11 Trustee (DE#2) ("Creditors Motion"). The Creditors Motion was set for hearing on November 12, 2009 (DE#24) and which has now been continued to November 20, 2009.

4. On November 13, 2009, creditors Blue Oaks Limited, Pharon Development Assets, Inc, Camilo Manrique and Ricardo Martinez filed a joinder in the Involuntary petition filed against the Alleged Debtor (DE#6), asserting claims totaling $1,400,000.00 (collectively the "Joining Petitioning Creditors")

5. The Creditors Motion, in summary, asserts the following facts, which the UST believes are undisputed.

- The Alleged Debtor is a law firm with its principal place of business in Ft. Lauderdale, Florida.
- The Alleged Debtor is said to employ approximately 150 employees (including 70 attorneys) and has offices in Fort Lauderdale, Florida; Miami, Florida;  Boca Raton, Florida; West Palm Beach; Florida and New York, New York.
- At all relevant times, Scott Rothstein was the alleged Debtor's Chief Executive Officer, Stuart A. Rosenfeldt was the Alleged Debtor's President, and Russell A. Adler was the Alleged Debtor's Vice President (hereinafter sometimes referred to individually as  "Rothstein", "Rosenfeldt" and "Adler" respectively).
- Rothstein and Rosenfeldt were each fifty percent shareholders of the Alleged Debtor.  According to public admissions by Rosenfeldt he deferred completely to Rothstein on matters relating to the Debtor's finances.

- The Alleged Debtor was designated escrow agent for the receipt and disbursement in a stock and real property purchase involving Ricardo Martinez and Camilo Manrique (two of the Joining Petitioning Creditors), each of whom are clients of the Venezuelan Attorneys (defined in the Creditor Motion) in the Real Estate Transaction (defined in the Creditor Motion).

- In Connection with its role as designated escrow agent for the Real Estate Transaction, the Alleged Debtor received a wire transfer in the amount of $1.4 Million on October 30, 2009 (defined as the Escrow Fund in the Creditor Motion).

- On November 4, 2009, federal law enforcement authorities executed the Search Warrant and seized various property and records of the Alleged Debtor[1]. An Inventory of the property seized is attached as Exhibit "D " and incorporated by reference herein.

- On or about November 6, 2009, Rosenfeldt reported that the firm's $500,000 operating account balance had dwindled to $300,000 in spite of a $200,000 refund issued to the alleged Debtor form the Florida Democratic Party.

- Following the hearing on the Dissolution Complaint (defined below) Rosenfeldt admitted to others that the Escrow fund had been transferred from the alleged Debtor's escrow account to its operating account on October 30, 2009 and immediately spent. This date is after the date of Rothstein's apparent departure to Casa Blanca, Morocco on October 27, 2009.

6. On November 2, 2009, Rosenfeldt and the Alleged Debtor filed a Complaint for Dissolution and for Emergency Appointment of a Receiver in the Broward County Circuit Court, Case No. 09-059301 ("Dissolution Complaint")[2]. A true and correct copy of the Dissolution

---

[1] Pursuant to the Creditors Motion, it is believed that Rosenfeldt turned over the Alleged Debtor's Business records without retaining copies for the Alleged Debtor's continued business operations and needs.

[2] The Civil Cover Sheets Attached to the Dissolution Complaint assert, among others, that the Complaint involves claims arising from the sales of business or the assets of a business including contract disputes, commercial landlord-tenant claims and business torts; Malpractice claims of non-medical professionals in connection with rendering services to a business enterprises; Actions relating to the internal affairs or governance, dissolution or liquidation rights or obligations between or among owners (shareholders, partners, members), or liability or

Complaint is attached hereto as Exhibit "A" and is incorporated by reference herein.

7. The Dissolution Complaint, which attached an affidavit from Rosenfeldt attesting to the truthfulness of the allegations, alleged, among other things, that firm lawyers in the last few days learned about irregularities surrounding a settlement funding business operated by Rothstein. The settlement funding business involved the purchase of structured settlements and the sale of these settlements to investors.

8. The Dissolution Complaint also states that a review of the "firms records" indicates that various funds can not be accounted for, and that circumstances suggest that investor money may have been misused by Rothstein.

9. Paragraph 14 of the Dissolution Complaint asserts that it appears that Rothstein may have transferred substantial sums out of the investor trust accounts and paragraph 15 concludes that Rothstein's conduct in connection with the settlement funding and investor trust accounts appears at this point to be extensive.

10. On November 4, 2009 the Broward County Circuit Court, in Case No. 09-059301, entered an Order appointing the Honorable Herbert M. Stettin as Receiver. A true and correct copy of the Receivership Order is attached hereto as Exhibit "B" and incorporated by reference herein. The Receivership Order authorizes the Receiver to make day to day financial decisions on behalf of the firm and authorized the Receiver to take all necessary steps to secure the firms's

---

indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises; Actions relating to corporate trust affairs or directors an officer liability.

physical premises, to restrict any individual's access to the firm's offices in his sole discretion, to set up appropriate document preservation protocols and to preserve evidence.

11. The Receivership order further appointed Rosenfeldt as firm's CEO and pursuant to that designation, gave him all authority to manage the firm's operations and its ongoing client engagements. Additionally, Rosenfeldt was granted full authority to take any legal action he deems to be in the best interests of the firm and its clients. The Receivership Order further found that Rothstein relinquished any authority with respect to the firm's management.

12. What the Receivership Order did not authorize was for the Receiver to pursue causes of action, recover transfers or monetize any of the assets. The Receivership Order instructed the Receiver and any other party to seek clarification on any issue of authority and expanding the Receiver's authority.

13. On November 9, 2009, the United States of America filed a Verified Complaint for Forfeiture In Rem against eight properties purchased by, with or on behalf of Rothstein ("Forfeiture Complaint"), a true copy of which is attached hereto as Exhibit "C" and incorporated by reference herein.

14. The Forfeiture Complaint alleges, among other things, that:

- •Rothstein and others had been operating a ponzi scheme since approximately 2005 and that Rothstein acquired the subject properties in connection with such ponzi scheme;
- •Investor monies generated through the ponzi scheme were deposited into the Alleged Debtor's trust account;
- •These types of fraudulent investments had been offered by Rothstein to a variety of persons and entities throughout the United States for at least the last four years ad the scheme involved hundreds of millions of dollars.

15. On November 12, 2009, at the hearing on the Creditor Motion before this Court, the Receiver, through counsel for the Alleged Debtor, announced the following:

> 1) That the Alleged Debtor intended to consent to the Order for Relief by weeks end or Monday, November 16, 2009;
>
> 2) That Rosenfeldt, on November 11, 2009, as sole officer and president of the corporation, appointed the Receiver as Chief Restructuring Officer ("CRO") and granted him all managerial and operational control of the entity, including the authority to file for relief under the Bankruptcy Code or to consent to the Order for Relief; and
>
> 3) That Rosenfeldt resigned as Chief Operating Officer but retained the right to terminate the CRO.

16. The Receiver in direct response to questions posed by this Court, responded that the Alleged Debtor was not really operating as a law firm any longer, that the Receiver is attempting to collect receivables, that the Receiver is preparing the Inventory required in paragraph 6 of the Receivership Order and will be preparing to trace payments.

17. Apparently the Movants in the Creditors Motion and the Alleged Debtor reached an agreement whereby the Creditors Motion would be withdrawn if certain assurances were fulfilled. The Alleged Debtor apparently believes that the retention of a CRO will appease the concerns raised in this case, even though there is no restructuring, no business to reorganize and no ownership control.  There are no general day-to-day management responsibilities of the Alleged Debtor's business other than to wind down the firm's practice and transition client files. There are no financial and operational strategies for the Alleged Debtor to implement other than to liquidate and monetize its assets and recover property of the estate.

18. What is abundantly clear is that in the last two weeks, the day to day operations of the Alleged Debtor have ceased and that an alleged Ponzi scheme operated for several years behind the closed doors of the Alleged Debtor. What is also abundantly clear is that an

independent fiduciary, a fiduciary with duties to the creditors, answerable to the Court and with no appearance of impropriety or semblance of connection to the Alleged Debtor, either in corporate title or otherwise, must be appointed to steward this case through the bankruptcy process, whether that be in chapter 7 or 11, and lead this investigation to recover avoidable transfers, assets and property of the estate. That decision is clear and mandated by the Bankruptcy Code.

19. Under these facts, a Chapter 11 Trustee is the only appropriate party to lead this case. The facts of this case require an independent fiduciary, not a CRO, to investigate the actions of the Alleged Debtor.  It would be inappropriate here to have a CRO lead an investigation of the very firm and parties that appointed him and who still has the right to terminate his position.  A CRO is arguably an officer or quasi-officer of that company. What happens if the firm is implicated in the scheme? Changing the CRO's title does not erase the conflict and only raises doubts as to the integrity of the process. What if other related entities or persons are brought into bankruptcy, either voluntarily or involuntarily. Does the CRO assume roles in those cases as well and seek to recover fraudulent conveyances? This is more than a title. In the face of these facts and questions posed, the proper remedy is to appoint a chapter 11 trustee. This is not a case for a CRO as there is nothing to restructure.

## SUMMARY OF RELIEF REQUESTED

20. The Alleged Debtor, which itself is seeking dissolution in the Dissolution Complaint, is  seeking to relinquish absolute control of its business and corporate affairs in response to the Involuntary petition to a third party.   That third party forthrightly stated that the firm in no longer really operating as a firm. The pre and post-petition actions of the Debtor and Rothstein, and any

other party implicated in the ponzi scheme or who failed in their duties, including the unauthorized and improper use of trust account funds, the lack of oversight and accounting controls, and other indicia of dishonesty, incompetence and gross mismanagement, warrant the immediate appointment of a chapter 11 trustee to administer these cases.  The substantial allegations of fraud and other wrongdoing in the Forfeiture Complaint, Creditors Motion and Dissolution Complaint only serve to further support the granting of this relief.  The Alleged Debtor should not be permitted to avoid this relief by an attempted act of corporate governance on the eve of the hearing on the Creditors Motion to fortuitously turn over control and hire the Receiver as the CRO and avoid the appointment of a chapter 11 trustee. This case should not be about the CRO and corporate governance. Either Rosenfeldt retains the right to control the CRO (through his right to fire him), in which case pre-petition management remains in effective control, or the CRO is operating free from any corporate oversight whatsoever.  The first of these results is improper under the Bankruptcy Code, and the second is improper under basic tenets of corporate governance and the Bankruptcy Code.  In either event, the mandated and appropriate remedy is the appointment of a chapter 11 trustee.

21.   For similar reasons, this Court should deny the Debtor's request to retain a CRO. While retention of a CRO or a crisis manager might be appropriate in some cases, it is clearly not appropriate here.  Unlike other cases, there is no intrinsic value in keeping a CRO with institutional knowledge in place. This CRO was put in place post petition and on the eve of the hearing to appoint a chapter 11 trustee.  These acts are one last attempt to dictate what happens to creditors and clients and to circumvent the clear and plain language of the Bankruptcy Code. If

this maneuvering and change of titles enables a chapter 11 debtor to avoid the appointment of a chapter 11 trustee with such egregious facts as those presented here, then it begs the question of under what scenario could there be chapter 11 trustee appointed.  The Alleged Debtor is the subject of intense scrutiny with connections to an reported ponzi scheme, the extent of which is just coming into full view but which losses have been reported by the media at $1 Billion. This firm does not have a legitimate purpose to remain in chapter 11 to reorganize or for a restructuring officer. The firm itself is seeking dissolution. In addition, there's no engaged, independent board or directors or managers to supervise the CRO, because those same parties have relinquished control or had control taken from them and who very may very well be the subject of further intense scrutiny and inquiry. This is not a case where the engagement of a CRO should be approved. This case requires an independent fiduciary, a chapter 11 trustee.

## MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE

22.  Section 1104(e) mandates that the U.S. Trustee file a motion seeking the appointment of a trustee if reasonable grounds exist to suspect that current members of management or the debtor's governing body have participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting.  Section 1104(e) focuses attention not only on corporate officers who committed fraud, but also on the "governing body" who selected those officers; therefore, the common practice whereby a board of directors on whose watch fraud occurred replaces management with a restructuring professional immediately before filing or in response to an Involuntary Petition in an effort to avoid a trustee appointment will not pass  scrutiny.

23.  Here, the Alleged Debtor itself has sought dissolution and has in effect been implicated by the terms of its own Dissolution Complaint, in an alleged ponzi scheme either

directly or through lack of oversight, proper managerial controls and unorthodox business practices. The attempt to avoid the appointment of a trustee by appointing a CRO, regardless of who that person is, should be unavailing.  The Alleged Debtor will attempt to argue that it will be costly or inefficient to replace the CRO with a duly appointed Chapter 11 Trustee, however this argument must fail as any inefficiency would be minimal. The CRO was appointed juts a few days ago and has no institutional knowledge. In addition the costs of a CRO will deplete the limited available funds of the Alleged Debtor, while a trustee is compensated pursuant to the terms of 11 U.S.C. § 326.

24.  11 U.S.C. § 1104(a) states that the Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the UST, and after notice and a hearing.  Section 1104 provides, in part, as follows:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate. . . .

> (e) The United States Trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting.

11 U.S.C. § 1104.

**Cause exists for the appointment of a trustee.**

25. Subsection (1) of Section 1104(a) addresses management's pre and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue Place Associates, 171 B.R. 615, 623 (N.D. Ill. 1994)*. Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

26. The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *See In re Marvel Entertainment Corp.*, 140 F.3rd 463, 472 (3d Cir. 1998)(quoting *Committee of Dalkon Shield Claimants v. A.H. Robins Co.*, 828 F.2d 239, 242 (4th Cir. 1987)) . Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). See, *e.g., In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Colby Construction Corp.*, 51 B.R. 113, 116-118

(Bankr. S.D.N.Y. 1985). The determination of whether cause exists must be taken on a case by case basis, taking into account all relevant factors. *Sharon Steel*, 871 F.2d at 1225.

27. Through section 1104(a)(1), Congress has mandated that the chapter 11 debtor in possession, which acts as a fiduciary of the creditors of the bankruptcy estate, be an honest broker. *See Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) (willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee"); *In re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) ("The willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in possession defaults in this respect, [s]ection 1104(a)(1) [of the Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.") (cited with approval in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)).

28. The plain language of section 1104(a)(1) (specifically, the use of the word "shall") indicates that this Court has no discretion to look past a finding of "cause" in ordering the appointment of a trustee. For example, if "current management" was found to be incompetent due to acts or omissions which occurred prior to the petition date, this Court must direct the appointment of a trustee. *See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989) ("[11 U.S.C. § 1104](a)(1) requires the bankruptcy court, upon motion, to appoint a trustee when the movant has proved "cause," which the statute defines to include incompetence and gross mismanagement."); *In re National Staffing Servs., LLC*, 2005 WL 3729404 at *2 (Bankr. N.D.

Ohio Nov. 21, 2005) (11 U.S.C. § 1104(a)(1) provides for "the mandatory appointment of a trustee upon a specific finding of 'cause.'").

29. There can be no doubt that what the Alleged Debtor disclosed in the Dissolution Complaint, as well as the allegations in the Forfeiture Complaint and Creditors Motion, which have not been disputed, at a minimum constitutes substantial pre-petition "incompetence" by management under section 1104(a)(1) and cause for the appointment of a chapter 11 trustee. In addition, if Rosenfeldt, as he contends, was not aware of the wrongdoings being perpetrated under his managerial control and ownership, or that he is unable to account for what appears to have been hundreds of millions of dollars that flowed through the law firm trust accounts, then he has failed to fulfill his obligations as a fiduciary of the corporation and he therefore cannot be entrusted with the fiduciary responsibilities of a debtor-in-possession or the decision to turn over control of the Alleged Debtor post petition to a CRO as a strategy in response to the Creditors Motion and Involuntary Petition.

30. While Rosenfeldt remains the sole director of the Alleged Debtor, he has sought to dissolve the firm and abandon his fiduciary responsibilities and to relinquish all control of the Debtor to a de facto officer. The clear import of this action is that the CRO will operate free from any true board oversight. The UST is aware of no persuasive authority permitting an alleged debtor after the filing of an Involuntary Petition and on the eve of a hearing to appoint a trustee to avoid the appointment of a chapter 11 trustee by irrevocably contracting away its rights under the law under which it was formed to a person who will then serve as de facto owner, director, manager, partner or officer of the entity, subject to no control. In fact, 11 U.S.C. § 1104(e) reflects Congress's determination that problems with members of a debtor's pre-petition

governing body cannot be cured so long as those members remain in place. If the conduct of the pre-petition governing body and management of a debtor warrants the selection of an independent person to act as the estate fiduciary, as the case surely does, that person should be selected pursuant to and subjected to all requirements of the Bankruptcy Code governing the selection and duties of a chapter 11 trustee. There is more than enough "cause" here to mandate the immediate appointment of a chapter 11 trustee.

### The appointment of a trustee is in the best interests of the estate and creditors.

31. Section 1104(a)(2) of the Bankruptcy Code provides an additional basis for the appointment of a chapter 11 trustee. Courts have construed Section 1104(a)(2) to provide for a "flexible standard." *See, e.g., In re Sharon Steel Corp.*, 871 F.2d at 1226; *see also In re Ionosphere Clubs, Inc.*, 113 B.R. 164 (Bankr. S.D.N.Y. 1990). Section 1104(a)(2) emphasizes the court's discretion, allowing it to appoint a trustee when to do so would serve the parties' and the estates' interest." *Id*.

32. It is axiomatic that a debtor in possession is a fiduciary. As a fiduciary, the debtor in possession does not act in its own interest but, like a trustee, must act in the best interest of the creditors of the estate. *Commodity Futures Trading Comm. V. Weintraub*, 47 U.S. 343, 354-55 (1985). In determining if a debtor in possession is complying with its fiduciary duties, courts should be cognizant of the fact that "section 1104 represents a protection that the court should not lightly disregard or encumber with overly protective attitudes toward debtors-in-possession." *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

33. The *Marvel* court applied this flexible standard and affirmed the district court's

appointment of a trustee in a case where the "level of acrimony found to exist certainly [made] the appointment of a trustee in the best interest of the parties and the estate." *Marvel Entertainment Corp.*, 140 F.3d at 474. The court concluded that the parties' sharp divisions on many issues supported the district court's exercise of discretion in appointing a trustee. *Id.* At 474-476.

34. Other courts have considered the following factors in determining whether the appointment of a trustee is in the best interest of the parties under Section 1104(a)(2): (1) the trustworthiness of the debtor; (2) the debtor's past and present performance and prospects for the debtor's rehabilitation; (3) the confidence or lack thereof of the business community and of creditors in present management; and (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. *See In re Cajun Electric Power Co-Op, Inc.*, 1991 B.R. 659 661-62 (M.D.La, 1995) *aff'd* 74 F3d 599 (5th Cir.), *cert. denied*, 117 S.Ct, 51 (1996); *Accord in re Ionosphere Clubs, Inc.*, 113 B.R. at 168.

35. Here, an analysis of the relevant facts clearly demonstrates that the appointment of a chapter 11 trustee is in the best interest of the parties and creditors of the Alleged Debtor's estate. The admissions by the Alleged Debtor and Rosenfeldt in the Dissolution Complaint together with the uncontested allegations in the Creditors Motion and Forfeiture Complaint, overwhelmingly support that conclusion. The Debtor itself has sought dissolution and the appointment of an independent fiduciary to take action to recover missing proceeds and to preserve, protect and review the firms accounts and financial records. Clearly the Alleged Debtor's trustworthiness is in question. There is no chance of rehabilitation as the Alleged Debtor sought its own dissolution and the Receiver stated that the firm was not really operating as a law firm any longer. Without question, as evidenced by the pleadings thus far in the case, scrutiny given to the case and media attention, there

is no confidence in the Debtor. Finally, the cost of appointing a chapter 11 trustee in this case, where funds are scarce and the need for transparency great, the benefits of a chapter 11 trustee clearly outweigh the costs. The only conclusion that can be reached in this case is that the appointment of a chapter 11 trustee is in the best interests of creditors.

## OBJECTION TO RETENTION OF CRO

36. The UST also objects to the retention of the Receiver as CRO. The Alleged Debtor's attempt to completely supplant its current management with a quasi officer pursuant to sections 105 and 363 of the Bankruptcy Code on the eve of a hearing to appoint a chapter 11 trustee and in response to an Involuntary Petition having been filed would circumvent the clear requirements of section 1104 for the selection of independent fiduciaries to serve in chapter 11 cases.

37. Equitable principles cannot be used to circumvent clear Congressional intent. *See, e.g.*, *United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 300 (3d Cir. 1994); *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994). In addition, 11 U.S.C. § 105(a) can only be used to carry out provisions of the Code, not to engraft new provisions onto the statute that Congress neither enacted nor intended. Using sections 105(a), 363, or any other provision of the Code to completely replace management with a person other than a duly appointed and qualified trustee would violate the spirit and letter of the Code. Congress has addressed the issue of appointing independent fiduciaries in place of management through 11 U.S.C. § 1104, and the Alleged Debtor cannot ignore that section by writing its own remedy into the Code. Rather, courts must presume that Congress meant for such an independent fiduciary to be employed

only pursuant to section 1104; otherwise, that provision would be nullified.[3] In light of Congress' careful consideration of what to do when an independent fiduciary is needed to replace debtor's management, this Court should deny the request.

38. The Alleged Debtor in support of the retention of a CRO will undoubtedly cite several cases in which debtors have utilized temporary employees to provide restructuring services and interim management services. Those cases are clearly distinguishable. Crisis managers and CROs are occasionally employed pursuant to section 363, but only in cases where they answer to and are subject to the control of an independent corporate governing body selected pursuant to applicable non-bankruptcy law. This debtor will be seeking more. The Alleged Debtor, as the Receiver stated at the November 12, 2009 hearing, is not really operating as a law firm any longer. Just 1 week prior to the commencement of this case, the State Court appointed a third party to investigate, not to take over, the finances of the Alleged Debtor based on the wrongdoings set forth in the Alleged Debtor's own Dissolution Complaint. This turnover of complete and absolute control is nothing more than a transparent attempt and strategy to avoid the appointment of a chapter 11 trustee.

39. Furthermore, the fact remains that Rosenfeldt may terminate the CRO's services without cause. The CRO will not be subject to the fiduciary duties of a trustee and may appear to outsiders

---

[3]As the leading commentator has stated:

> It is really unnecessary to misinterpret the Code and look for ways to circumvent its provisions. In an appropriate case, section 1104 can be utilized to provide the proper persons to run the business and assist in the reorganization. When a court finds that management should be replaced, that should be sufficient cause under section 1104(a)(1) to order the appointment of a trustee.

7 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1104.03[6][a] at 1104-42.

and victims of the scheme to be beholden to current management. The dynamic tension between the owners and the CRO should not exist in any case, and clearly not in case with allegations of a $1 Billion ponzi scheme. The Alleged Debtor, it's owners, officers, employees, professionals and all business and family relationships may very well be the subject of serious inquiry and scrutiny throughout these proceedings, and the person directing that inquiry as a fiduciary should not be subject to any control or appearance of control by the Alleged Debtor. This is a case where the appearance of impropriety and transparency mean something and must be considered. The Alleged Debtor's business operations are tainted with allegations wrought with fraud and a chapter 11 trustee who is an independent fiduciary answerable to no one but the Court, is the only remedy that should be considered.

## **CONCLUSION**

Based upon the foregoing, the UST requests that this Court issue an order directing the appointment of a chapter 11 trustee and sustaining the objection of the UST to the Retention of a CRO and for such further and other relief as this court deems just and equitable.

DATED:  November 16, 2009.

Donald F. Walton
United States Trustee
Region 21

/s/
Steven D. Schneiderman, Trial Attorney
Office of the U.S. Trustee
51 SW 1 Avenue, Suite 1204
Miami, FL 33130
Telephone No.: (305) 536-7285
Facsimile No.:  (305) 536-7360

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion and Objection has been served on the following parties on November 16, 2009, electronically through CM/ECF, on parties having appeared electronically in the instant matter or those listed as being served electronically as denoted by an * and that a copy hereof shall be served by U.S. Mail, postage prepaid, on the following:

*John G. Bianco III jgb@trippscott.com, bankruptcynoticecenter@trippscott.com

*John H Genovese jgenovese@gjb-law.com, cgreco@gjb-law.com;dsanchez@gjb-law.com;gjbecf@gjb-law.com

*Jordi Guso Jguso@bergersingerman.com
*Paul Singerman Singerman@bergersingerman.com

Rothstein Rosenfeldt Adler, PA
Las Olas City Centre
401 E Las Olas Blvd #1650
Ft Lauderdale, FL 33301

Aran Development Inc.
c/o Sonn & Erez PLC
500 E Broward Blvd #1600
Ft Lauderdale, FL 33394

Bonnie Barnett
c/o Sonn & Erez PLC
500 E Broward Blvd #1600
Ft Lauderdale, FL 33394

Blue Oaks Limited
c/o Marianella Morales
AvenidaFrancisco de Miranda
Torre Provincial "A" Piso 8
Caracas, 1060

Camilo Manrique
c/o Marianella Morales
Avenida Francisco de Miranda
Torre Provincial "A" Piso 8
Caracas, 1060

Ricardo Martinez
c/o Marianella Morales
Avenida Francisco de Miranda
Torre Provincial "A" Piso 8
Caracas, 1060

Pharon Development Assets, Inc
c/o Marianella Morales
Avenida Francisco de Miranda
Torre Provincial "A" Piso 8
Caracas, 1060

Jeffrey R Sonn
500 E Broward Blvd #1600
Ft. Lauderdale, FL 33394

Universal Legal
888 E Las Olas Blvd #508
Ft Lauderdale, FL 33301

/s/
Steven D. Schneiderman, Trial Attorney
Office of the U.S. Trustee
51 SW 1 Avenue, Suite 1204
Miami, FL 33130
Telephone No.: (305) 536-7285
Facsimile No.:  (305) 536-7360

I hereby certify that I am admitted to the Bar of the State of Illinois, and that, I am excepted from additional qualifications to practice in this Court pursuant to Local Rule 9011-4 and 2090(B) (2) (b) pertaining to attorneys representing the United States government