UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    CASE NO.: 09-34791-BKC-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,[1]        INVOLUNTARY CHAPTER 11

        Debtor.

_____/

**ALLEGED DEBTOR'S RESPONSE IN OPPOSITION TO
THE MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER
DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE AND
OBJECTION TO RETENTION OF CHIEF RESTRUCTURING OFFICER**

Rothstein Rosenfeldt Alder, P.A. ("Alleged Debtor" or "RRA"), through its Chief

Restructuring Officer, Herbert Stettin, files this response in opposition to the *Motion of the*

*United States Trustee for an Order Directing the Appointment of a Chapter 11 Trustee and*

*Objection to the Retention of Chief Restructuring Officer* [D.E. 8] (the "Trustee Motion"), and

seeks an order denying the Trustee Motion.   In support of this response, RRA states the

following:

**BACKGROUND**

1.      The Alleged Debtor is a Florida professional services corporation, formed on

February 7, 2002 by Scott W. Rothstein ("Rothstein") and Stuart A. Rosenfeldt ("Rosenfeldt").

Although  the firm's practice was originally focused on labor and employment law, it expanded

to other areas of law.  Until recently the Alleged Debtor employed over 70 lawyers, with total

staff of over 150 people on payroll.  The Alleged Debtor had offices in Florida, New York and

Venezuela.

---

[1] The address and last four digits of the taxpayer identification number of the Debtor, Rothstein Rosenfeldt Adler,
  P.A., is Las Olas City Centre, 401 E. Las Olas Blvd, Suite 1650, Fort Lauderdale, Florida 33301 (TIN 7961).

2445091-4

2.      On November 2, 2009, prior to the commencement of this case, Rosenfeldt, on behalf of himself and RRA, filed a lawsuit in Broward County Circuit Court [D.E.2, Ex. A] (the "Receivership Action") against Rothstein alleging multiple wrongful acts by Rothstein, RRA's former Chief Executive Officer.

3.      On November 4, 2009, the state court presiding over the Receivership Action, recognizing the need for independent and experienced management of RRA, entered an order (a) removing Rothstein as the Chief Executive Officer, and (b) appointing Herbert Stettin ("Stettin") as the Receiver for RRA (the "Receiver Order").  [D.E.2, Ex. B].  The Receiver Order gave Stettin the sole authority to manage the law firm's financial affairs and found that Rothstein relinquished any authority with respect to the law firm's management.

4.      Immediately upon his appointment as Receiver, Stettin assumed stewardship of RRA and, among other things, began the arduous process of evaluating RRA's financial position.

5.      On November 10, 2009, four petitioning creditors (the "Petitioning Creditors") commenced this case by filing an involuntary chapter 11 petition against RRA under 11 U.S.C. § 303.  [D.E. 1].

6.      The Petitioning Creditors concurrently filed an *Emergency Motion for Appointment of Interim Chapter 11 Trustee* [D.E. 2] (the "Interim Trustee Motion") and noticed it for hearing on November 12, 2009.

7.      On November 11, 2009, Rosenfeldt, as the sole remaining officer and director of RRA, executed a corporate resolution appointing Stettin as the Chief Restructuring Officer ("CRO") of RRA and delegated to Stettin all operational and managerial control over RRA (the "Resolution").  The Resolution, *inter alia*, irrevocably delegates to Stettin "all managerial and operations control with respect to [RRA]."  A copy of the Resolution is attached as **Exhibit A**.

8.      Pursuant to the Resolution, Rosenfeldt conveyed full operational and managerial control of RRA to Stettin.  The sole right preserved to Rosenfeldt  under the Resolution was the right to terminate Stettin.  In all other respects, Stettin has full managerial and operational control over the Alleged Debtor.  Subsequently, by order dated November 18, 2009, Judge Streitfeld, who presides over the Receivership Action, expanded the scope of Stettin's powers to include Stettin's authority over the management of the law as described in Section 6 of the Resolution, which states:

> The Chief Restructuring Officer shall have the exclusive responsibility and authority to manage the business and affairs of the Corporation.  Accordingly, the Chief Restructuring Officer shall have the combined sole and absolute power and authority of the chief executive officer, the chief operating officer, chief financial officer, and the chief restructuring officer of the Corporation for all purposes including, without limitation (and without in any way limiting the foregoing grant of corporate power and authority), the sole power and authority: (a) to open and close bank accounts for the Corporation, (b) to transfer funds of the Corporation, (c) to hire and terminate employees of the Corporation; (d) to cause the Corporation to modify, amend, terminate and/or enforce  any of its any contractual rights; (e) to cause the Corporation to enter into any agreement or contract; (f) to cause the Corporation to pursue, settle or compromise any litigation, controversy or other dispute involving the Corporation, (g) to cause the Corporation to borrow funds and to pledge any of its assets in order to pay the working capital needs of the Corporation, (h) to cause the Corporation to exercise the Corporation's rights under the Corporation's agreements and other agreements in favor of the Corporation, (i) to cause the Corporation to commence a proceeding under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), consent to entry of an order for relief in respect of any involuntary bankruptcy case that may be filed against the Corporation or to take such other judicial action with respect to the Corporation and (j) to cause the Corporation to take any other action which the CRO, in good faith, determines to be necessary, prudent or appropriate under the circumstances.

See Exhibit A, Resolution, ¶ 6.

9.      Upon Stettin's appointment as CRO, and as announced on the record at the November 12, 2009 hearings, the Petitioning Creditors agreed to withdraw the Interim Trustee Motion.

10.      On November 16, 2009, the Office of the United States Trustee for the Southern District of Florida ("UST") filed the Trustee Motion.

11.      On November 18, 2009, pursuant to an *Emergency Motion for Ratification of Appointment of Chief Restructuring Officer* filed by counsel to Rosenfeldt and RRA, the state court ordered that Stettin can be removed as Receiver of RRA only by order of the state court, or by order of any other court of competent jurisdiction (the "Ratification Order").  A copy of the Ratification Order is attached as **Exhibit B**.

## ARGUMENT

## I.      The Appointment of a Trustee is not Warranted Because Current Management is Properly Carrying Out the Fiduciary Responsibilities of a Debtor-in-Possession

### A.      The Legal Standard For the Appointment of a Trustee is Very High

12.      Preliminarily, the Petitioning Creditors commenced this case as an involuntary chapter 11 case, as opposed to a case under chapter 7.  Therefore, the Petitioning Creditors did not elect to pursue a straight liquidation of the Alleged Debtor.   As discussed hereafter, there is a presumption that a chapter 11 case should be prosecuted by management of the debtor in possession, and not a trustee.

13.      The appointment of a chapter 11 trustee is an extraordinary remedy.  *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3d Cir. 1989); *In re Nartron Corporation*, 330 B.R. 573, 591 (Bankr. W.D.Mich. 2005).  As the Second Circuit has noted, the standard for the appointment of a chapter 11 trustee is "very high."  *In re Smart World Technologies, LLC*, 423 F.3d 166, 176 (2d Cir. 2005).  A party seeking the appointment of a trustee in a debtor in possession case must

overcome the strong presumption against the appointment of a Chapter 11 trustee. *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 85 (Bankr. S.D.N.Y. 2007)("There is a strong presumption that a debtor should remain in possession..."); *In re SunCruz Casinos, LLC*, 298 B.R. 821, 827 (Bankr. S.D. Fla. 2003)(citing *In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D.Ga. 2000).

14.     Moreover, the UST must establish cause for the appointment of a trustee by clear and convincing evidence. *In re Sundale, Ltd.*, 400 B.R. 890 (Bankr. S.D. Fla. 2009)("Because the appointment of a trustee is such an extraordinary remedy, the moving party must show that cause for appointment of a trustee exists by clear and convincing evidence."); *see also In re G-I Holdings, Inc.*, 385 F.3d 313, 318 (3d Cir. 2004); *In re Adelphia Communications Corp.*, 336 B.R. 610, 655-56 (Bankr. S.D.N.Y. 2006), *aff'd* 342 B.R. 122 (S.D.N.Y. 2006); *In re SunCruz Casinos, LLC*, 298 B.R. 821, (Bankr. S.D. Fla. 2003); *In re W.R. Grace & Co.*, 285 B.R. 148, 157 (Bankr. D. Del. 2002); *In re Royster Co.*, 145 B.R. 88, 90 (Bankr. M.D. Fla. 1992).

15.     The UST cites §1104(e) in support of its allegations regarding the requirement for the appointment of a trustee. However, Section 1104(e) sets forth only the circumstances under which the UST *is required to move for the appointment* of a chapter 11 trustee, not the standard which the Court must apply in determining *whether to appoint a chapter 11 trustee*. The standard the Court is to apply in adjudicating the Trustee Motion is found in § 1104(a), not § 1104(e). *In re The 1031 Tax Group, LLC*, 374 B.R. at 87 ("the statutory requirement that the U.S. Trustee bring such a motion does not alter the standard for deciding whether to grant the motion. Rather §§ 1104(a)(1) and (2), and the cases interpreting these subsections, continue to control whether a trustee should be appointed.").

16.     Section 1104(a) allows for the appointment of a trustee where there is fraud, dishonesty, incompetence or gross mismanagement of the affairs of the Alleged Debtor by _current_ management:

>          (a)     At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and hearing, the court shall order the appointment of a trustee--
>
>          (1)     for cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by _current_ management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

_Id._ (emphasis added).

17.     Unlike § 1104(e), § 1104(a)(1) refers to the fraud, dishonesty, incompetence, or gross mismanagement of _current_ management of a debtor.   When Congress enacted the _Bankruptcy Abuse and Crime Prevention Act of 2005_ ("BAPCPA") and added subsection (e) to § 1104, Congress could have amended subsection (a) to also refer to the "governing body of the debtor," but it did not.   Instead, Congress clearly intended for the "cause" standard in § 1104(a) to apply solely to bad acts by _current_ management.   As noted in _Collier_:

>          The new section 1104(e) requires the U.S. trustee to move for the appointment of a trustee if there are reasonable grounds to suspect any of the enumerated circumstances.   However, section 1104(e) does not expand the grounds for the appointment of a trustee set forth in section 1104(a) and, once the U.S. trustee files a motion required by section 1104(e), the standards for determining whether a trustee should be appointed are the same as in any other motion for such an appointment.

7 Lawrence P. King, _Collier on Bankruptcy_ §25.36[1] (15th ed. rev. 2007).

18.     Where the court is satisfied that the _current_ management is free from the taint of prior management, the fact that a debtor's _prior_ management might have been guilty of fraud,

dishonesty, incompetence or mismanagement does not provide grounds for the appointment of a trustee under Section 1104(a)(1). *See In re The 1031 Tax Group, LLC*, 374 B.R. at 86.

19. As implicitly recognized by the UST in the Trustee Motion, Stettin is currently the sole officer of the Alleged Debtor, and no one suggests he is guilty of fraud, dishonesty, incompetence, or gross mismanagement. To the contrary, the Trustee Motion does not contain a single allegation impugning, in anyway, Stettin's qualifications, impartiality or conduct. Upon his appointment as CRO, Stettin replaced the Alleged Debtor's former management – none of the Alleged Debtor's former management has any current control or governance of the Alleged Debtor or Stettin as CRO. There is no evidence, or even any allegation, that Stettin has engaged in any fraud, mismanagement or dishonesty. By all accounts, Stettin has performed in an exemplary manner. In fact, by the UST's own admission, by retaining Stettin, the Alleged Debtor has selected a manager whose competence and integrity are beyond question. Therefore, the UST cannot prove by any standard, let alone clear and convincing evidence, that the appointment of a trustee is warranted due to fraud, mismanagement or dishonesty by *current* management.

### B. Former Management's Transfer of Authority To Stettin As CRO Was Proper and Negates Any Basis for the Trustee Motion

20. Although, the UST does not question Stettin's ability to competently manage the Alleged Debtor, the UST claims that the "attempt to avoid the appointment of a trustee by appointing a CRO, regardless of who that person is, should be unavailing" and that such appointment "would circumvent the clear requirements of section 1104 for the selection of independent fiduciaries to serve in chapter 11 cases." Trustee Motion, ¶23, page 10 and ¶36, page 16.

21.     Contrary to the UST's assertions, the appointment of Stettin is permissible and proper under bankruptcy and Florida law.  In *In re The 1031 Tax Group, LLC*, the Bankruptcy Court for the Southern District of New York spoke to the concern that new management could be tainted by the bad acts of former management.   The Court noted that, because former management was divested of its management authority by corporate action, including any ability to direct the actions of new management, the new management was independent and unconflicted.  *See Id.* at 88, n.10.

22.     Furthermore, in *In re Blue Stone Real Estate Constr. and Dev. Corp.*, 392 B.R. 897 (Bankr. M.D. Fla. 2008), the court was confronted with an argument from the U.S. Trustee that a debtor's appointment of a CRO after the U.S. Trustee moved for appointment of a trustee was effectively an "end-run" on Section 1104's mandate that only the U.S. Trustee is empowered to select a chapter 11 trustee.  Similar to the UST's allegations in this case, the U.S. Trustee in *Blue Stone* argued that it is inappropriate to allow the debtor to appoint a CRO and, thereby, avoid the appointment of a trustee:

> [B]ecause of the timing in this case… it is clearly inappropriate for the Debtor to come in after the allegations have been made… and attempt to put their person in place, however well respected he is, and circumvent the process under 1104.
>
> …
>
> [W]e're not questioning [the CRO's] credentials.   We are, however, questioning the procedure here.  It is inappropriate.

*Id.* at 904, n.8.

23.     The *Blue Stone* court stated that the U.S. Trustee's argument was essentially that a debtor whose management may be guilty of fraud, mismanagement or dishonesty is precluded from taking any action to rectify the problem:

> Stated alternatively, if a debtor in possession is guided by management that can be proved to be incompetent, or to have engaged in fraud or dishonesty or to have grossly mismanaged the debtor, then the appointment of a Chapter 11 trustee is *fait accompli* and no salutary action can be taken by the debtor to cure that problem.

*Id.* at 904.

24.     In rejecting the U.S. Trustee's argument and authorizing the retention of a CRO, the *Blue Stone* court held that the U.S. Trustee's argument was unsupported by the letter and intent of the Bankruptcy Code:

> [T]he real concern of the United States trustee is its own organizational interest in maintaining control when it seeks the appointment of a Chapter 11 trustee, never mind that the Debtor's retention of this particular CRO in these particular cases just might be (and the Court determines it is, clearly) in the best interest of the Debtor.
>
> …
>
> The United States trustee's argument widely misses the mark because it overlooks two important principles concerning a Chapter 11 debtor in possession.  First, the legislative history of section 1107, titled "Rights, powers, and duties of debtor in possession," clearly dictates that the debtor in possession is *already* the functional equivalent of a Chapter 11 trustee.
>
> …
>
> Second, the legislative history of section 1104, which prescribes the grounds for appointment of a Chapter 11 trustee, reflects a decided preference for leaving a debtor in possession in place.

*Id.* at 904.

25.     Similarly, in *In re Bayou Group, L.L.C.*, 363 B.R. 674 (S.D.N.Y. 2007), the Bankruptcy Court for the Southern District of New York approved the appointment a third party to serve as a receiver and "exclusive managing member" of the debtor entities prepetition.  *Id.* At 676-77.  After his appointment, the third party receiver caused each debtor entity to file bankruptcy petitions and signed each of the debtor's chapter 11 petitions as the "Sole Managing

Member." *Id.* At 681.  Thereafter, the third party receiver continued to administer the debtor

entities post-petition and the U.S. Trustee moved for the appointment of a chapter 11 trustee.

The District Court affirmed the bankruptcy court and denied the motion to appoint a trustee.  *Id.*

at 680.

26.    Furthermore, governing Florida law and applicable bankruptcy law provide that

directors of a corporation in bankruptcy have the power and authority to delegate rights and

powers to manage and control the business of the corporation.   The operable statute for the

delegation of such authority is *Fla. Stat.* §607.0732, which provides in relevant part:

> (1)    An agreement among the shareholders of a
> corporation with 100 or fewer shareholders at the time of the
> agreement, that complies with this section, is effective among the
> shareholders and the corporation, even though it is inconsistent
> with one or more other provisions of this chapter, if it:
>
> (a)    *Eliminates the board of directors or restricts the
> discretion or powers* of the board of directors; . . .
>
> (f)    *Transfers to any shareholder or other person any
> authority to exercise the corporate powers or to manage the
> business and affairs of the corporation*, including the resolution of
> any issue about which there exists a deadlock among directors or
> shareholders.

*Id.* (emphasis added).

27.    Additionally, the Bankruptcy Code contemplates that the state law powers of a

corporation's board of directors can be altered while the corporation is a debtor in bankruptcy.

*See In re Blue Stone*, 392 B.R. at 905.  Equity holders of a corporate debtor in possession may

change the debtor's management; there is nothing in the Bankruptcy Code prohibiting equity

from doing so.  *Id.*

28.    Effective upon the execution of the Resolution, all managerial, operating and

financial control of the Alleged Debtor's prior management was expressly delegated by

Rosenfeldt to Stettin as CRO in accordance with Florida law.  RRA's former management no longer has any  authority or control over the Alleged Debtor.  Accordingly, Stettin's appointment as CRO in this matter was proper according to both bankruptcy and Florida law and the appointment of a trustee is unwarranted.

### C.    Current Management (Stettin) is Properly Carrying Out the Fiduciary Responsibilities of a Debtor-in-Possession

29.    The Trustee Motion contains allegations of allegedly improper conduct on the part of the Alleged Debtor that, in the view of the UST, justifies the appointment of a chapter 11 trustee.  However, the alleged fraud, mismanagement or dishonesty that the UST cites in support of the Trustee Motion relates only to prepetition acts that occurred while the Alleged Debtor was managed and controlled by former management (Rothstein); none of this conduct is alleged to have occurred under current management (Stettin).

30.    It is indisputable that since his retention, Stettin has taken significant steps to rectify the business practices of the Alleged Debtor, including:

a.    Eliminating all disbursements other than those necessary to preserve and protect the Alleged Debtor's business operations and its assets;

b.    Scrutinizing disbursements to ensure no disbursements are made without the CRO's approval;

c.    Addressing the payment and/or retention of critical vendors for insurance, document management and retention systems, and employee investment plans;

d.    Billing for all attorney time prior to the Receivership; analyzing accounts receivable and implementing measures to ensure collections;

e.    Analyzing and enforcing the obligations attendant to releasing files to protect the interests of firm clients and to ensure payment of sums due and to become due the firm;

f.    Communicating telephonically and in person with potential creditors and the media to foster a climate of transparency and cooperation;

g.     Providing day to day supervision and assistance to the remaining staff including the attorneys and accounting and IT departments.

31.     The UST cites to *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) in stating that "through section 1104(a)(1), Congress has mandated that the chapter 11 debtor in possession, which acts as a fiduciary of the creditors of the bankruptcy estate, be an honest broker."  Trustee Motion, ¶27, page 12.  There has been no question that Stettin, the current management of the Alleged Debtor, is that honest broker.

32.     The UST also cites *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518 (Bankr. E.D.N.Y. 1989) for the proposition that the willingness of Congress to leave a debtor in possession is premised on an expectation that *current* management can be depended upon to carry out the fiduciary responsibilities of a trustee.  In this case, Stettin is doing exactly that.  Stettin has been in control of the Alleged Debtor since November 4, 2009.  In that time he has made significant progress in identifying and solving many problems, including the resolution of difficult accounting, creditor and client servicing issues.  In addition, he has met with or spoken to counsel to many of the key constituents in the case and has begun the forensic work necessary to identify and prosecute litigation claims.

33.     The UST's allegation that Stettin has "no institutional knowledge" regarding the Alleged Debtor (Trustee Motion, ¶23, page 10) is misplaced.  In the approximately two weeks since Stettin has been in control of RRA, he has amassed significant knowledge of the issues facing the Alleged Debtor, its business operations, as well as the Alleged Debtor's books and records.

34.     When considering the propriety of a motion for the appointment of a trustee, the focus is on the debtor's *current* activities, not any past misconduct.  *Id.*  Speculation that a debtor

may do something in the future does not overcome the strong presumption that the debtor should be permitted to remain in possession in a chapter 11 case or justify the additional costs of a chapter 11 trustee. *In re Sletteland,* 260 B.R. 657, 671-72 (Bankr. S.D.N.Y. 2001)(citing *In re Fairwood Corp.,* 2000 WL 264319, 43 Collier Bank. Cas. 2d 1345 (S.D.N.Y. 2000), *aff'd*, 242 F.3d 364, 2001 WL 11045 (2d Cir. 2001); *In re General Oil Distributors, Inc.*, 42 B.R. 402 (Bankr. E.D.N.Y. 1984).

35.    The UST has failed to demonstrate, by any standard, let alone by clear and convincing evidence, which is the burden of proof in such a motion (*In re Sundale, Ltd.*, 400 B.R. 890 (Bankr. S.D. Fla. 2009)), that replacing Stettin with a chapter 11 trustee is warranted based on the standards set forth in § 1104(a)(1).    Stettin has the integrity, ability, and management experience necessary to manage the Alleged Debtor in this case.    He has retained accountants and attorneys whose qualifications are well known to this Court.    Creditors overwhelmingly support Stettin's involvement and his appointment as the CRO..

## II.    <u>Creditors Assert That Appointment of a Trustee Is Not Their Best Interest</u>

36.    Pursuant to Section 1104(a)(2), the UST "must show that the appointment of a trustee is in the interest of *all* those with a stake in the estate." *Sletteland*, 260 B.R. at 672 (emphasis added).    "When current management is competent and able to adjust to its new obligations under chapter 11, and when the creditors' committee is functioning properly, there may in fact be little or no benefit to the appointment of a trustee." 7 Lawrence P. King, *Collier on Bankruptcy* §1104.02[3][d][ii] (15th ed. rev. 2007).

37.    In this case counsel for several investors have expressed that they do not believe that appointing a trustee is in the best interest of their constituency.    They support Stettin as the person to manage the debtor in possession.    The Alleged Debtor believes that the UST will offer little, if any, proof that the appointment of a chapter 11 trustee would benefit creditors in this

case.  Here, the UST cannot establish a *prima facie* case that the appointment of a trustee would

benefit all creditors, much less sustain this heavy burden; thus, no trustee must be appointed.

**III.**    **The Retention of Stettin As CRO Should Be Approved**

38.    Although the UST argues that the Court should reject the retention of Stettin as

the Alleged Debtor's CRO, that issue is not properly before the Court.  As an Alleged Debtor,

RRA has the authority under Section 303(f) to "continue to operate… as if an involuntary case

concerning the debtor had not been commenced."  To date, no order for relief has been entered ,

and the Alleged Debtor is not at this time required to seek authorization for the retention of

Stettin from this Court.  However, the retention of Stettin as CRO has been ratified by Judge

Streitfeld in the Ratification Order.

39.    However, even if the issue were properly before the Court, the Court should

approve the retention of Stettin as CRO.  As noted above, *Section I.B.*, the UST alleges that the

appointment of Stettin as CRO "would circumvent the clear requirements of section 1104 for the

selection of independent fiduciaries to serve in chapter 11 cases."  The premise that underlies the

UST's argument is that the Alleged Debtor has in effect handpicked a chapter 11 trustee.

However, as described in *Section I.B.,* this same argument has been previously rejected by other

courts.  As set forth in both the *In re 1031 Tax Group* and *In re Blue Stone* cases, where former

management retains a CRO and is thereby divested of all management authority and ability to

dictate the CRO's actions, the appointment of the CRO is proper, and the appointment of a

trustee is not warranted.

40.    Further, as made clear in the Ratification Order, it was Judge Streitfeld in the

Receiver Order that selected Stettin as Receiver, and Stettin may only be removed as Receiver or

CRO pursuant to an order from that court or any other court with appropriate jurisdiction.  Any

allegation that Stettin is beholden to Rosenfeld is wholly unsupported and entirely misplaced. Accordingly, the UST's alleged concerns regarding the propriety of Stettin's appointment are unfounded.

## IV. The Appointment of a Trustee Prior to the Entry of an Order for Relief is Improper

41. The Trustee Motion points to 11 U.S.C. § 1104(a) as authority for the appointment of a trustee. However, this case is an involuntary proceeding and no order for relief has been entered. The UST has moved for the appointment of a trustee, not an *interim* trustee. While the appointment of a trustee may be appropriate in certain circumstances *after* an order for relief has been entered, such relief is not appropriate prior to such relief.

42. Further, even if the Trustee Motion seeks the appointment of an interim trustee, that relief is also inappropriate. Section 1104 does not provide authority for the appointment of an interim trustee:

> An examination of the provisions governing involuntary cases clearly indicates that an interim trustee cannot be appointed in an involuntary Chapter 11 case.
>
> …
>
> The only statutory provision with respect to the appointment of an interim trustee is an involuntary case is § 303(g) *which pertains exclusively to involuntary Chapter 7 proceedings*.
>
> …
>
> An entire statutory scheme provided under Chapter 7 is conspicuously absent under Chapter 11. Therefore, to infer such a provision as to the petitioners is to do violence to sound statutory construction.

*In re Beaucrest Realty Assoc.*, 4 B.R. 164, 165 (Bankr. E.D.N.Y. 1980).

43.    Further, pursuant to Section 303(f), an alleged debtor in possession remains in possession of its property and operates its business as if the involuntary proceeding had never been filed:

> [U]ntil an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

*Id.*

44.    Accordingly, the appointment of a trustee at this point in these proceedings would be inappropriate and violative of the provisions of the Bankruptcy Code.

45.    Notwithstanding this procedural deficiency, because the Alleged Debtor believes that creditors and parties in interest deserve finality with respect to whom should (or will be) managing the Alleged Debtor post-petition, , the Alleged Debtor waives such defect so that the Court may rule on the merits of the Trustee Motion.

**WHEREFORE**, the Alleged Debtor respectfully request that the Court enter an order (a) denying the Trustee Motion; (b) if the Court determines that the issue is properly before the

Court, approving the retention of Stettin as CRO; and (c) granting any other and further relief the

Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1.

Respectfully submitted,

BERGER SINGERMAN, P.A.
*Counsel for Alleged Debtor*
200 South Biscayne Blvd., Suite 1000
Miami, FL  33131
Telephone (305) 755-9500
Facsimile (305) 714-4340

By: ___*/s/ Jordi Guso*_____
         Paul Steven Singerman
         Florida Bar No. 378860
         singerman@bergersingerman.com
         Jordi Guso
         Florida Bar No. 863580
         jguso@bergersingerman.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served electronically via the Court's CM/ECF system to those parties registered to receive electronic/notice service on this 18th day of November, 2009.

*/s/ Jordi Guso*_____
Jordi Guso

# EXHIBIT A

**RESOLUTION OF THE DIRECTOR AND CHIEF EXECUTIVE OFFICER
OF ROTHSTEIN ROSENFELDT ADLER, P.A.,
A FLORIDA PROFESSIONAL SERVICE CORPORATION**

THE UNDERSIGNED STUART A. ROSENFELDT, a Florida resident and being the sole Director and the Chief Executive Officer of Rothstein Rosenfeldt Adler, P.A. (the "*Corporation*"), hereby resolves and adopts at the Corporation's offices in Ft. Lauderdale, Florida, this 11th day of November, 2009, the following resolutions and actions, same to be effective immediately:

      1.     I have served as a Director of the Corporation consistently since its inception on February 7, 2002, and I am the sole current Director of the Corporation

      2.     Pursuant to that certain Order Appointing Receiver entered by Florida Circuit Court Judge Jeffrey E. Streitfeld on November 4, 2009 in Seventh Judicial Circuit Case Number 09-059301 (the "Receivership Order"), I have been appointed and am serving as the Corporation's Chief Executive Officer. In my capacity as the Chief Executive Officer of the Corporation, and as provided in the Receivership Order, I have the authority to manage the Firm's operations and to take any legal action necessary to serve the best interests of the Corporation and the clients of its law practice.

      3.     As the sole Director and Chief Executive Officer of the Corporation, I affirm compliance with all formal requirements, including notice and the conduct of formal or informal special meetings.

      4.     Pursuant to my authority as the Director and Chief Executive Officer of the Corporation, and the authority granted to me by the Receivership Order, and upon the recommendation of the Corporation's professional advisors, I have determined that it is desirable, fair, reasonable, and in the best interest of the Corporation's creditors, shareholders, and other interested parties, for the Corporation to create a new executive office to be titled Chief Restructuring Officer.

      5.     Pursuant to my authority as the Director and Chief Executive Officer of the Corporation, and the authority granted to me by the Receivership Order, I have determined that it is in the best interest of the Corporation, for me to irrevocably delegate to the Chief Restructuring Officer all managerial and operational control with respect to the Corporation.

### Filing and Prosecution of Bankruptcy Case

6. BE IT RESOLVED THAT, effective as of the date of execution hereof, the Corporation shall create the new executive office of Chief Restructuring Officer. The Chief Restructuring Officer shall have the exclusive responsibility and authority to manage the business and affairs of the Corporation. Accordingly, the Chief Restructuring Officer shall have the combined sole and absolute power and authority of the chief executive officer, the chief operating officer, chief financial officer, and the chief restructuring officer of the Corporation for all purposes including, without limitation (and without in any way limiting the foregoing grant of corporate power and authority), the sole power and authority: (a) to open and close bank accounts for the Corporation, (b) to transfer funds of the Corporation, (c) to hire and terminate employees of the Corporation; (d) to cause the Corporation to modify, amend, terminate and/or enforce any of its any contractual rights; (e) to cause the Corporation to enter into any agreement or contract; (f) to cause the Corporation to pursue, settle or compromise any litigation, controversy or other dispute involving the Corporation, (g) to cause the Corporation to borrow funds and to pledge any of its assets in order to pay the working capital needs of the Corporation, (h) to cause the Corporation to exercise the Corporation's rights under the Corporation's agreements and other agreements in favor of the Corporation, (i) to cause the Corporation to commence a proceeding under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), consent to entry of an order for relief in respect of any involuntary bankruptcy case that may be filed against the Corporation or to take such other judicial action with respect to the Corporation and (j) to cause the Corporation to take any other action which the CRO, in good faith, determines to be necessary, prudent or appropriate under the circumstances. AND

7. BE IT FURTHER RESOLVED THAT, if determined by the Chief Restructuring Officer to be in the best interest of the Corporation, the Chief Restructuring Officer is hereby authorized and empowered to cause to be prepared and to execute and file a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida or a consent to an order for relief in respect of any involuntary bankruptcy case that may be filed against the Corporation, in such form and at such time as the Chief Restructuring Officer shall determine, and to prepare, execute, and file such disclosure statement(s), plan(s) of reorganization, and such other documents and pleadings determined by the Chief Restructuring Officer to be necessary or advisable to effectuate the Corporation's bankruptcy case in the best interest of the Corporation and its creditors, shareholders, and other interested parties. AND

8. BE IT FURTHER RESOLVED THAT the Chief Restructuring Officer is hereby authorized and directed to execute and file (or direct others to do so on behalf of the Corporation as provided herein) all necessary documents, including, without limitation, all petitions, affidavits, schedules, motions, lists, applications, pleadings and other papers, and in connection therewith, to employ and retain all assistance by legal counsel, accountants or other professionals and to take any and all action which they deem necessary and proper in connection with the Chapter 11 case. AND

**Appointment and Retention of Professionals**

9.     BE IT FURTHER RESOLVED THAT, effective as of the date of execution hereof, the Corporation hereby appoints Herbert Stettin as its Chief Restructuring Officer and authorizes and directs Herbert Stettin to take all actions necessary or advisable to restructure the financial affairs of the Corporation and all other action authorized hereby.  AND

10.     BE IT FURTHER RESOLVED THAT  the law firm of Berger Singerman, P.A. be, and hereby is, engaged under general retainer as bankruptcy counsel for the Corporation in the Chapter 11 case, and the Chief Restructuring Officer is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case, and cause to be filed an appropriate application for authority to retain the services of Berger Singerman, P.A.  AND

11.     BE IT FURTHER RESOLVED THAT  the Certified Public Accounting firm of Berkowitz Dick Pollack & Brant, LLP be, and hereby is, engaged under general retainer as accountants and consultants for the Corporation in the Chapter 11 case, and the Chief Restructuring Officer is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case, and cause to be filed an appropriate application for authority to retain the services of Berkowitz Dick Pollack & Brant, LLP.  AND

12.     BE IT FURTHER RESOLVED THAT the Chief Restructuring Officer be, and hereby is, authorized and directed to retain and engage any other firm as professionals or consultants to the Corporation as are deemed necessary to represent and assist the Corporation in carrying out its duties under the Bankruptcy Code and, in connection therewith, the Chief Restructuring Officer is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of a Chapter 11 case and cause to be filed an appropriate application for authority to retain the services of such firm.  AND

13.     BE IT FURTHER RESOLVED THAT all acts lawfully done or actions lawfully taken by the Chief Restructuring Officer to seek or consent to relief under Chapter 11 of the Bankruptcy Code or in connection with the Chapter 11 case, or any matter related thereto, be, and hereby are, adopted, ratified, confirmed and approved.  AND

**General Authorizing Resolutions**

14.     BE IT FURTHER RESOLVED THAT the Chief Restructuring Officer be, and hereby is, authorized and directed, in the name of and on behalf of the Corporation, under the Corporation's corporate seal or otherwise, to make, enter into, execute, deliver and file any and all other or further agreements, documents, certificates, materials and instruments, to disburse funds of the Corporation, to take or cause to be taken any and all other actions, and to incur all such fees and expenses as any such officer deems to be necessary, appropriate or advisable to carry out the purposes of the foregoing resolutions and the transactions contemplated thereunder and/or to successfully complete a Chapter 11 case, the taking of any such action to constitute conclusive evidence of the exercise of such discretionary authority.  AND

3

15. BE IT FURTHER RESOLVED THAT the Chief Restructuring Officer be, and hereby is, authorized, empowered and directed to certify and attest any documents or materials which he deems necessary, desirable or appropriate to consummate the transactions contemplated by the foregoing resolutions, without the necessity of the signature or attestation of any other officer or the affixing of any seal of the Corporation.

16. BE IT FURTHER RESOLVED THAT the Chief Restructuring Officer be, and hereby is, authorized and directed to take all necessary or desirable actions in the name and on behalf of the Corporation to consummate the transactions contemplated by these Resolutions, including without limitation such further documents, agreements, instruments and other writings as the Chief Restructuring Officer may determine in his sole discretion to be necessary or desirable to consummate such transactions and further, that any and all acts of said the Chief Restructuring Officer pursuant to the authority hereby presented and directed, be, and the same hereby are, approved, ratified and accepted as the action of the Corporation.  AND

17. BE IT FURTHER RESOLVED THAT in light of the rights, powers and duties delegated to the Chief Restructuring Officer, the undersigned resigns as the Chief Executive Officer of the Company and delegates all of his other powers as a director of the Corporation to the Chief Restructuring Officer, retaining solely the power to terminate the Chief Restructuring Officer pursuant to further resolution of the board of directors. AND

18. BE IT FINALLY RESOLVED that any and all other actions heretofore taken by the Corporation in furtherance of the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

IN WITNESS WHEREOF, the undersigned has set his hand to this Resolution of the Director and Chief Executive Officer of the Corporation this 11th day of November, 2009.

Stuart Rosenfeldt

Witness:

Witness:

4

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

In re:

COMPLEX BUSINESS DIVISION

STUART A. ROSENFELDT, individually,
and ROTHSTEIN ROSENFELDT ADLER.
P.A., a Florida Service Corporation,

CASE NO.  09-059301 CA 0K 19

        Plaintiffs,

vs.

SCOTT W. ROTHSTEIN, individually,

        Defendant.

_____/

## ORDER GRANTING MOTION FOR RATIFICATION OF
## APPOINTMENT OF CHIEF RESTRUCTURING OFFICER

**THIS MATTER** came before the Court on November 18, 2009 at 1:30 p.m. upon the *Emergency Motion For Ratification of Appointment of Chief Restructuring Officer* (the "Motion"), filed the Plaintiffs, Rothstein Rosenfeldt Alder. P.A ("RRA") and Stuart A. Rosenfeldt ("Rosenfeldt"). The parties advise that there has been no Order for Relief entered in the involuntary bankruptcy and as such this Court has concurrent jurisdiction over RRA. Moreover, because this is an action commenced by RRA, the Alleged Debtor, the automatic stay (11 U.S.C. § 362) does not prevent this Court from ruling. The Court has reviewed the file, heard argument of counsel, and other parties of interest present at the hearing, and is otherwise advised in the premises. Accordingly, it is:

      **ORDERED** as follows:

    1.    The Motion is granted in its entirety. Herbert Stettin's ("Stettin") appointment as Chief Restructuring Officer ("CRO") of RRA, is ratified. Moreover, at this Court's suggestion and without objection, this relief is effective as of November 11, 2009.

2446220-1

2.      Notwithstanding anything to the contrary in the Resolution (as defined in the Motion), Stettin may only be removed as Receiver or CRO pursuant to an order from this Court, or any other court with appropriate jurisdiction.

3.      The Court further notes that delegation to Stettin pursuant to the Resolution, as ratified by this Order, vests in Stettin all managerial and authoritative control of RRA, including the right to consent to the involuntary petition.

4.      In addition to the findings of fact made on the record the Court also makes the following specific findings:

(a)     Stettin was selected by this Court to be appointed as Receiver.  Stettin's impartiality is beyond reproach.

(b)     The Court appointed Rosenfeldt as Chief Executive Officer ("CEO") of RRA. If the Court had been previously advised that Rosenfeldt was no longer willing to or could not discharge his duties as CEO, the court would have expand the scope of the Receivership Order to vest in Stettin the authority bestowed on him in the Resolution.

(c)     At the hearing Mr. William R. Scherer, Esq., a prominent local attorney who represents the holders of at least $100 million of investor claims against RRA, unqualifiedly supported the relief granted hereby and the authority granted to Stettin.

**DONE AND ORDERED** in Fort Lauderdale, Florida this ____ day of November, 2009.

Jeffrey E. Streitfeld

NOV 1 8 2009

_____
HONORABLE JEFFREY E. STREITFELD
CIRCUIT JUDGE

Copies furnished to:
Kendall Coffey, Esq.