UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                          CASE NO.: 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,[1]            CHAPTER 11

    Debtor.
_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

### Preliminary Statement

    On November 30, 2009, upon the consent [D.E. 57] filed by Rothstein Rosenfeldt Adler P.A, the debtor in the above-captioned case (the "Debtor" or "RRA"), this Court entered an Order for Relief [D.E. 66]. In accordance with this Court's Order [D.E. 66] and Local Rule 2081-1B, the Trustee on behalf of the Debtor is filing its Chapter 11 Case Management Summary (the "Filing"). While the Trustee and his advisors have made their best efforts to prepare the most accurate Filing possible, the Trustee discloses that for reasons beyond his control, not all relevant information has been reviewed to date as the Trustee has not had access to all of the Debtor's books and records. As such, the Filing may and likely will contain additional (and different) information that will require revision. Moreover, the books and records that were available are in disarray, inadequate and do not contain the typical records that one would expect to be maintained in the normal course of business including a complete accounts payable subsidiary ledger, thus making it difficult to determine the exact composition of the creditor body, or provide for a meaningful analysis.

    Therefore, the Filing is based on the best information that the Trustee has to date. Most of this information is based on forensic procedures, analysis and investigation of bank and available accounting records. The Debtor principally used TD Bank N.A., a subsidiary of TD Bank Financial Group ("TD Bank") and Gibraltar Private Bank and Trust ("Gibraltar Bank"). The Trustee has not received complete copies of the Debtor's records from each of TD Bank and Gibraltar Bank. The Filing is based largely on a review of the TD Bank records from April 2008, forward. The Trustee has been unable to analyze the Gibraltar accounts because at this time Gibraltar has not provided the Trustee with the wire transfer detail crucial to this analysis. To date, the Gibraltar Bank records consist of the front of cancelled checks and bank statements from five of the nine accounts dating back to January 2007 for most of the accounts and to May 2007 for one of the accounts. Gibraltar Bank also produced a second set of documents on November 30, 2009, containing deposit slips and a limited set of bank statements for one of the accounts. Further, many of the former RRA employees whom the Trustee and his advisors could speak to regarding the Debtor's books and records have left the employ of the Debtor, are under

---

[1] The address and last four digits of the taxpayer identification number of the Debtor, Rothstein Rosenfeldt Adler, P.A., is Las Olas City Centre, 401 E. Las Olas Blvd, Suite 1650, Fort Lauderdale, Florida 33301 (TIN 7961).

2466189-4

investigation by the Federal Government or have refused to cooperate with the Trustee and his advisors. The Trustee is taking the action necessary and appropriate to obtain complete bank records from TD Bank, Gibraltar Bank, and any other depository institutions of the Debtor. The Trustee reserves all rights against each of the parties listed in the Filing and the right to amend this Filing from time to time as may be necessary or appropriate. This preliminary statement is incorporated by reference in, and comprises an integral part of, the Filing, and should be referred to and reviewed in connection with any review of the Filing. In the event that the Filing differs from the foregoing preliminary statement, the preliminary statement shall control.

In compliance with Court Order [D.E.66] and Local Rule 2081-1(B), the Trustee, Herbert Stettin, files this Chapter 11 Case Management Summary and states:

1. Date of Order for Relief under chapter 11 (filing date of petition if voluntary chapter 11 petition):

    **November 30, 2009 [D.E. 66].**

2. Names, case numbers and dates of filing of related debtors:

    **No related debtors.**

3. Description of debtor's business:

    **The Debtor is a Florida professional services corporation, formed on February 7, 2002 by Scott W. Rothstein ("Rothstein") and Stuart A. Rosenfeldt ("Rosenfeldt"). Although the firm's practice was originally focused on labor and employment law, it expanded to other areas of law, including intellectual property, corporate law, mergers and acquisitions, real estate, criminal defense, class actions, mass torts and personal injury claims. At its height the Debtor employed over 70 lawyers, with total staff of over 150 people on payroll. The Debtor had offices in Florida, New York, Washington D.C. and Venezuela.**

4. Locations of debtor's operations and whether the business premises are leased or owned:

    **The Debtor had leased offices in Florida, New York, Washington D.C., and Venezuela. The Trustee does not have information regarding the New York or Venezuela leases.**

    **Florida Leases:**

    (a) <u>Boca Office</u>: Mizner Park Office Tower, 225 NE Mizner Blvd, Suite 675, Boca Raton, FL 33432.

2466189-4

(b) <u>West Palm Beach Office</u>: Galleria International Corporate Suites, 301 Clematis Street, Suite (Office Number) 3125, West Palm Beach, Florida 33401

(c) <u>Miami Office</u>:  Bank of America Tower at International Place, Suite 3500, 100 SE 2nd Street, Miami, Florida 33131.

(d) <u>Tallahassee Office</u>: 200 West College Ave, Suite 226, Tallahassee, FL 32308

(e) <u>Fort Lauderdale Office</u>:  401 East Las Olas Blvd, Fort Lauderdale, Florida (various spaces including portions of the 15th, 16th, and 22nd floors)

(f) <u>Warehouse</u>:  4,000 sq. ft. at 1140 NE 7th Ave, Fort Lauderdale, FL

**<u>Washington, D.C. Lease</u>:**

(a) <u>Washington D.C. Office</u>: 1875 K Street, N.W., Washington, DC (seventh floor) Lease is dated and signed 9/29/09.  However, the Debtor was supposed to take over the premises on or before 12/1/09 and the lease expires 60 months later.

5. Reasons for filing chapter 11:

The Debtor did not commence this case voluntarily.  This case was commenced as an involuntary proceeding by four petitioning creditors. [D.E1].  On November 25, 2009, the Debtor consented to the entry of an order for relief.  [D.E. 57].  On November 30, 2009 the Court entered the Order for Relief [D.E. 66].

Prior to November 2, 2009, Rothstein was the Chief Executive Officer, managing partner and, upon information and belief, a 50% shareholder of the Debtor.  Rosenfeldt was the President and, upon information and belief, the remaining 50% shareholder of the Debtor.

On November 2, 2009, Rosenfeldt initiated a lawsuit in Broward County Circuit Court (Case No. 09-059301) on behalf of the Debtor and himself, for judicial dissolution of the firm, an accounting, and appointment of a receiver, pursuant to Florida Statutes §§ 607.1430(3), 607.1431 and 607.1432 (the "Receivership Action").

In the Receivership Action complaint (the "Rosenfeldt Complaint"), Rosenfeldt and the Debtor allege that Rothstein engaged in multiple wrongful acts.   The Rosenfeldt Complaint claims that Rothstein "orchestrated a substantial misappropriation of funds from investor trust accounts that made

2466189-4

use of [the Debtor's] name" and that "[t]he investment business created and operated by Rothstein centered around the sale of interests in structured settlements." The Rosenfeldt Complaint also alleges that "various funds unrelated to the practice of law cannot be accounted for."

On November 4, 2009, Broward Circuit Judge Jeffery E. Streitfeld entered an order (the "Receivership Order") appointing Herbert Stettin as Receiver for the Debtor. The Receivership Order also removed Rothstein as CEO and named Rosenfeldt as the sole officer and director of the Debtor.

This case is the result of one or more allegedly fraudulent schemes committed by Mr. Rothstein and perhaps others. As has been widely reported in the media and as has been previewed before this Court, the Debtor suffered a traumatic financial shock as a result of these alleged criminal and fraudulent actions.

On November 9, 2009, the United States of America ("USA") filed a *Verified Complaint for Forfeiture In Rem* against personal and real properties that appear to be connected to Rothstein. *United States v. Various Real Properties Purchased by or With Or On Behalf of Scott W. Rothstein*, 09-cv-61780-WJZ, [D.E. 1] ("Forfeiture Complaint") and an Amended Forfeiture Complaint was subsequently filed on November 23, 2009.

In the Forfeiture Complaint the USA notes that there is probable cause to believe that Rothstein was conducting a Ponzi scheme since approximately 2005. Forfeiture Complaint at pg. 4. The Forfeiture Complaint also states that investor-victims in Rothstein's Ponzi scheme "were directed by Rothstein or others to wire transfer funds to the trust account of [the Debtor]." Forfeiture Complaint at pg. 4. The Ponzi scheme, according to the USA, revolved around soliciting investors to invest in pools of structured settlements. The settlements related to civil cases where the putative defendant agreed to settle sexual harassment and other labor related claims in return for payments over time to the putative plaintiff. The investors were told that these settlements were confidential. The amounts of the settlements ranged from hundreds of thousands to millions of dollars and the investor purchaser monies were wired to trust accounts titled in the name of the Debtor. According to the Forfeiture Complaint, the "criminal investigation has disclosed that the investments purportedly underlying the… investment scheme never existed" and that "[t]he investigation has established that no such settlement agreements ever existed and the entire investment scheme was a fraud." Forfeiture Complaint at pg. 5.

From the Trustee's preliminary review of available books and records, it appears that there were a large number of unorthodox and, so far, unexplained transactions that occurred at Rothstein's direction or under his control. Abnormal transactions appear to have occurred in both the Debtor's

2466189-4

trust and operating accounts. The Debtor was a large law firm conducting a multitude of transactions daily. Many were legitimate. It will take significant additional work to recreate and establish an accurate financial picture of the Debtor.

The United States has filed a criminal information against Rothstein (09-60331), and that proceeding is currently pending before Judge Cohn. Rothstein is currently in Federal Custody.

6. List of officers and directors, if applicable, and their salaries and benefits at the time of filing and during the 1 year prior to filing:

> (a) Scott W. Rothstein, Chairman and CEO. Rothstein's 2009 calendar year compensation through October 31, 2009, was $10,465,458.28. For the 2008 calendar year, his compensation was $35,655,036.67.
>
> (b) Stuart A. Rosenfeldt, President. Rosenfeldt's 2009 calendar year compensation through October 31, 2009, was $847,599.10. For the 2008 calendar year, his compensation was $6,012,294.08.
>
> (c) Russell Adler, Vice President. Adler's 2009 calendar year compensation through October 31, 2009, was $853,666.04. For the 2008 calendar year, his compensation was $888,317.61
>
> (d) Grant Smith, Assistant Managing Shareholder. Smith's 2009 calendar year compensation through October 31, 2009, was $ 331,711.93. For the 2008 calendar year, his compensation was $ 335,209.82.
>
> (e) David J. Boden, General Counsel. Boden's 2009 calendar year compensation through October 31, 2009, was $ 380,404.16. For the 2008 calendar year, his compensation was $ 637,874.22.

7. Debtor's fiscal or calendar year to date gross income and the debtor's gross income for the calendar or fiscal year prior to the filing of this petition:

**Given the current state of the Debtor's books and records and as a result of the Federal Government seizures, it is impossible to accurately state the Debtor's gross income.**

8. Amounts owed to various creditors:

> a. Obligations owed to priority creditors including priority tax obligations: unknown.

2466189-4

b. **With respect to creditors holding secured claims, the name of and amounts owed to such creditors and a description and estimated value of all collateral of the debtor securing their claims: no known secured claims.**

c. **Amount of unsecured claims: undetermined.**

9. General description and approximate value of the debtor's assets:

   **The Debtor's physical assets consist of the equipment found in the offices. The value of the equipment is still not determined as the inventory is ongoing. The Debtor also has a wasting malpractice insurance policy in the amount of $10,000,000. There are several preference and fraudulent transfer claims whose amounts are currently unknown, but are expected to be substantial.**

10. List of all insurance policies, the property covered under the policy, the name of the insurer, the policy number, amount of coverage, whether the premium is current, the date the next premium is due and date the policy expires:

    **The Debtor is insured under a malpractice insurance policy issued by Carolina Casualty Insurance Company. The policy limit is approximately, $10,000,000. This is a "wasting" policy in that every dollar spent on legal defense reduces the amount of money available for payout on claims. Coverage expires on February 22, 2010. A final premium payment was made on or about November 22, 2009. The insurance company has filed suit to invalidate the policy.**

11. Number of employees and amounts of wages owed as of petition date:

    **The Debtor has 13 employees as of the Petition Date. As of the petition date the 13 employees were owed $41,066.74. Of that amount, $16,262.52 was paid pursuant to Court order. There are 18 employees who were employed prior to October 30, 2009 who received a pay check on October 30, 2009, that was not honored when they attempted to cash the check. The checks covered the period of October 11 thru October 25. The amount still due for these 18 people is $86,455.53.**

12. Status of debtor's payroll and sales tax obligations, if applicable. This does not eliminate the obligation of chapter 11 debtors (other than individuals not engaged in business) to provide the more detailed payroll tax information required by Local Rule 2081-1(A):

    **To the best of the Trustee's knowledge, all payroll taxes and sales taxes are current.**

13. Anticipated emergency relief to be requested within 14 days from the petition date:

**Petition date was November 10, 2009, and 14 days have already passed. However, in the short term the Trustee may seek emergency relief to reject executory contracts and to establish procedures to sell and to approve the sale of certain property of the Debtor. On December 3, 2009, the Trustee has sought an emergency injunction in Adversary 09-2478.**

_____
Herbert Stettin, Trustee

Dated: December 3, 2009

Respectfully submitted,

BERGER SINGERMAN, P.A.
Attorneys for Alleged Debtor
200 S. Biscayne Blvd., Ste. 1000
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:  /s/ Paul Steven Singerman
     Paul Steven Singerman
     singerman@bergersingerman.com
     Florida Bar No. 378860
     Jordi Guso
     jguso@bergersingerman.com
     Florida Bar No. 0863580
     Isaac Marcushamer
     imarcushamer@bergersingerman.com
     Florida Bar No. 0060373

2466189-4