UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.     Case No. 09-34791-BKC-RBR
                                      Chapter 11
    Debtor.
_____/

HERBERT STETTIN, Chapter 11 Trustee,

    Plaintiff,                      Adv. Pro. No. _____-BKC-RBR-A
v.

STEVEN N. LIPPMAN,

    Defendant.
_____/

**COMPLAINT AGAINST STEVEN LIPPMAN TO AVOID
AND RECOVER FRAUDULENT TRANSFERS OF PROPERTY** [1]

    Plaintiff, Herbert Stettin, the duly appointed and acting Chapter 11 Trustee ("Trustee" or "Plaintiff") for the estate of Rothstein, Rosenfeldt Adler, P.A., hereby sues the Defendant, Steven N. Lippman ("Lippman"), pursuant to 11 U.S.C. §§ 544, 548 and 550, and Rule 7001 of the Federal Rules of Bankruptcy Procedure, to avoid and recover fraudulent transfers and for other claims, and in support thereof, states:

**JURISDICTION AND VENUE**

    1.    This adversary proceeding is brought by the Trustee to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 550 and *Fla. Stat*. §§ 726.105 and 726.106.

---

[1] The address and last four digits of the taxpayer identification number of the debtor is 401 E. Las Olas Blvd. Suite 1650, Fort Lauderdale, FL 33301 (TIN 7961). Plaintiff reserves the right to bring additional claims against Lippman and nothing contained herein shall be deemed a waiver of any rights or causes of action that the Trustee or the estate may have against Lippman.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

3. This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A) and (H).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES AND PROCEDURAL BACKGROUND

5. On November 10, 2009, an Involuntary Petition for Relief was filed against Rothstein Rosenfeldt Adler P.A, the debtor in the above-captioned case (the "Debtor" or "RRA") (DE#1). On November 25, 2009, a consent to the Involuntary Petition for Relief was filed by RRA (DE# 57). On November 30, 2009, this Court entered an Order for Relief on the filing of a Petition for Involuntary Bankruptcy (DE# 66).

6. On November 20, 2009, the United States Trustee's Office filed a Notice Appointing Plaintiff Stettin as Trustee of RRA (DE #35). On November 25, 2009, this Court entered an order ratifying the appointment of Plaintiff Stettin as Trustee (DE #55.)

7. Defendant Lippman is an individual residing in Broward County, Florida. Lippman is a former employee of RRA and an attorney, authorized to practice law in the State of Florida. Lippman received the transfers set forth herein from RRA within four years of the filing of the Petition Date.

8. RRA is a Florida professional services corporation, formed on February 7, 2002 by Scott W. Rothstein ("Rothstein") and Stuart A. Rosenfeldt ("Rosenfeldt"). Although the firm's practice was originally focused on labor and employment law, it expanded to other areas of law, including intellectual property, corporate law, mergers and acquisitions, real estate, criminal defense, class actions, mass torts and personal injury claims. At its height, RRA

employed over 70 lawyers, with total staff of over 150 people on payroll, maintaining offices in Florida, New York and Venezuela.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

9. Prior to November 2, 2009, Rothstein was the Chief Executive Officer, managing partner and a 50% shareholder of RRA. Rosenfeldt was the President and also a 50% shareholder of RRA.

10. On November 2, 2009, Rosenfeldt initiated a lawsuit in Broward County Circuit Court (Case No. 09-059301)("Receivership Action") on behalf of RRA and himself, for judicial dissolution of the firm, an accounting, and appointment of a receiver, pursuant to Florida Statutes §§ 607.1430(3), 607.1431 and 607.1432.

11. In the Receivership Action complaint ("Rosenfeldt Complaint"), Rosenfeldt and RRA alleged that Rothstein had engaged in multiple wrongful acts. The Rosenfeldt Complaint pleads that Rothstein orchestrated a substantial misappropriation of funds from investor trust accounts that made use of RRA's name. The Rosenfeldt Complaint also alleges that the investment business created and operated by Rothstein centered around the fraudulent sale of interests in structured settlements and that "various funds unrelated to the practice of law cannot be accounted for."

12. As to these alleged structured settlements, Rothstein falsified the existence of the (i) client, (ii) settlement, (iii) settlement proceeds, (iv) documents, and misappropriated the investor funds to himself and to a series of business ventures which are the alter ego of RRA, now commonly known as the RRA Entities.

13. As part of his Ponzi Scheme to defraud investors, Rothstein utilized the RRA offices, RRA lawyers and staff, and his position as an attorney and as an owner and officer of

RRA, in addition to his relationship with existing clients of RRA and RRA's financial institution accounts, in order to effectuate the fraudulent sale of fictitious structured settlements.

14. Indeed, while the scheme was ongoing, RRA rapidly grew from a 7 attorney law firm in 2002 to 70 attorneys and 80 support staff in 2009. Prior to 2005, Rothstein was a virtual unknown in legal, political, and charitable circles. Subsequent to 2005, Rothstein and RRA gained the reputation of being a highly visible law firm making direct and indirect significant political and charitable contributions to both gain influence and give the appearance of a successful law firm.

15. Upon information and belief, through the use and means of RRA, Rothstein bilked investors out of an estimated to $1.2 billion and $1.6 billion.

16. Further, the Federal Bureau of Investigation and other federal agencies have been investigating Rothstein and others in connection with the Ponzi scheme. On November 9, 2009, the United States of America ("USA") filed a Verified Complaint for Forfeiture *In Rem* against several real properties that appear to be connected to Rothstein. *United States v. Various Real Properties Purchased by or With Or On Behalf of Scott W. Rothstein*, 09-cv-61780-WJZ.

17. The Forfeiture Complaint pled that the "criminal investigation has disclosed that the investments purportedly underlying the… investment scheme never existed. The investigation has established that no such settlement agreements ever existed and the entire investment scheme was a fraud." Subsequently, an Amended Forfeiture Complaint was filed by the USA.

### ALLEGATIONS SPECIFIC TO LIPPMAN

18. For a number of years prior to January 2005, Lippman was a partner in a law firm that, through several iterations, was last known as Lippman Valinsky & Storfer ("LVS").

Starting in January 2005, LVS ceased conducting business as a law firm, at which time Lippman became employed by RRA, where he continued his law practice and he and RRA held Lippman out to the public as a "partner." During the course of is employ at RRA, Lippman performed certain management functions.

19. Lippman was paid gross salary by RRA from 2006 through 2009, respectively in the amounts of $517,596.13 for 2006; $607,692.24 for 2007; $696,153.67 for 2008 and $659,925.85 for the first ten months of 2009, after which RRA ceased to operate. For purposes of this lawsuit, at this time, the Trustee does not challenge the reasonableness of these gross salary payments; they are cited to demonstrate that the other payments received by Lippman which are described below during the 4 year period subject of this lawsuit, were unreasonable and improper.

20. From 2006 though 2009, Lippman received compensation or payments from RRA in various forms in addition to his annual salary described above, which the Trustee now seeks to recover.

21. The first set of payments the Trustee seeks to recover includes reimbursements for what are referred to as expenses. During the years 2006 through 2009, on a monthly basis, Lippman submitted "Expense Reports" to RRA seeking repayment of personal expenses for items which included furniture for his home, his Weston Hills Country Club charges, personal travel, clothing, sports tickets, charitable contributions, personal meals, general household items and other such items ("Personal Expense Payments"), all of which were charged to Lippman and his wife's American Express credit card.

22. Following Lippman's submission of his monthly Expense Reports along with his American Express bills specifically noting the items being charged to RRA, Lippman was paid

the following sums as Personal Expense Payments by RRA: (a) in 2006 - $254,424.95; (b) in 2007 - $298,375.00; (c) in 2008 - $228,662.52; and (d) in 2009 - $151,207.76. The total amount paid by RRA to Lippman for Personal Expense Payments from 2006 through 2009 was $932,670.23. RRA received less than reasonably equivalent value in exchange for these expense reimbursements.

23. The second set of payments the Trustee seeks to recover includes reimbursements for payments made by RRA to Lippman which were classified in RRA's financial records as "loans" or "other compensation" and are referred to below as the "Lippman Loans." These payments were reflected by numerous checks written by RRA to Lippman over a 4 year period from the RRA operating account. Typically, Lippman would deposit each check into the bank account he maintained in the name of Lippman Valinsky & Storfer, and which Lippman and Rothstein both referred to as the "Nest Egg Account." Usually, within a day or two of deposit by Lippman of the RRA check, he would then write a check out of the Nest Egg Account payable to RRA in an amount less than the check RRA had just given him. These loan payment checks were usually deposited into RRA's operating account, although some were deposited into one or more RRA accounts denominated as a "trust account" or "real estate account." The Lippman Loans totaled $8,960,310.75.

24. In some instances, after Lippman received a check from RRA, rather than repaying RRA, he wrote the return check drawn on the Nest Egg Account to third parties including: (a) 10 checks to Sterling Bank, totaling $664,953, although all of these checks appear to have been indorsed by an individual and not the payee bank; (b) a check to Kendall Sports Bar in the amount of $89,000; (c) 4 checks payable to Albert Peter, an individual who had a business relationship with Rothstein, totaling $89,723; (c) 4 checks to Banyon LLC totaling $797,000; (d)

6

2 checks to Rothstein totaling $463,143; and (e) various other checks to himself and Rosenfeldt.

25. The total unpaid amount of Lippman Loans, net of all repayment checks, as of the date hereof is $2,464,907.68. The payments described in the preceding paragraph provided no benefit to RRA and thus, RRA received less than a reasonably equivalent value in exchange for the unpaid Lippman Loans.

26. The third set of payments the Trustee seeks to recover includes sums paid as bonuses to Lippman. In 2008, Lippman received $337,133.09 in bonuses and in 2009, he received $99,385.74 in bonuses (the "Bonus Payments"). The total amount of the Bonus Payments is $436,518.83. RRA received less than reasonably equivalent value in exchange for the Bonus Payments.

27. The Personal Expense Payments in the aggregate amount of $932,670.23, the unpaid Lippman Loans in the aggregate amount of $2,464,907.68 and the Bonus Payments in the aggregate amount of $436,518.83 are collectively referred to below as the "Transfers."

## COUNT I – FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE

28. The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

29. The Transfers were made to Lippman within four years of the Petition Date. Those Transfers that were made between November 30, 2007 and November 30, 2009 (the "Two Year Transfers") were made by RRA within two years prior to the date that the Involuntary Petition was filed on November 10, 2009.

30. The Two Year Transfers were made by RRA to Lippman with the actual intent to hinder, delay or defraud an entity to which RRA was or became, on or after the date such transfers were made, indebted.

7

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a Judgment:

    a.    Declaring the Two Year Transfers to have been fraudulent transfers pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

    b.    Avoiding the Two Year Transfers made to Lippman as fraudulent transfers in violation of § 548(a)(1)(A) of the Bankruptcy Code; and

    c.    Granting such other and further relief as may be just and proper.

### COUNT II – FRAUDULENT TRANSFERS PURSUANT TO SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE

31.    The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

32.    The Two Year Transfers were made by RRA within two years prior to the Petition Date.

33.    RRA received less than reasonably equivalent value in exchange for the Two Year Transfers, and

    a.    was insolvent on the dates that the transfers were made or was rendered insolvent because of those transfers;

    b.    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with RRA was an unreasonably small capital; or

    c.    RRA intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, Plaintiff respectfully requests that the Court to enter an Judgment:

    a.    Declaring the above referenced payments to Lippman to have been fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code;

      b.      Avoiding the Two Year Transfers made to Lippman as fraudulent transfers in violation of § 548(a)(1)(B) of the Bankuptcy Code; and

      c.      Granting such other and further relief as may be just and proper.

### COUNT III – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(a) OF THE FLORIDA STATUTES

34.      The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

35.      Within the four year period preceding the Petition Date, RRA made the Transfers to Lippman.

36.      The Transfers were made by RRA with the actual intent to hinder, delay or defraud creditors of RRA.

37.      The Transfers may be avoided under 11 U.S.C. §544 and *Fla. Stat.* §726.105(1)(a).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a Judgment:

      a.      Declaring the above referenced payments to Lippman to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.105(1)(a);

      b.      Avoiding the Transfers made to Lippman as fraudulent transfers in violation of *Fla. Stat.* § 726.105(1)(a); and

      c.      Granting such other and further relief as may be just and proper.

### COUNT IV – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(b) OF THE FLORIDA STATUTES

38.      The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

39. Within the four year period preceding the Petition Date, RRA made the Transfers to Lippman.

40. RRA made the Transfers without receiving reasonably equivalent value in exchange for the Transfers, and

    a. was engaged or was about to engage in a business or a transaction for which the remaining assets of RRA were unreasonably small in relation to its business or transaction; or

    b. intended to incur, or believed it would incur, debts that would be beyond RRA's ability to pay as they became due.

41. The Transfers may be avoided under 11 U.S.C. § 544 and *Fla. Stat*. §726.105(1)(b).

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a Judgment:

    a. Declaring the above referenced payments to Lippman to have been fraudulent transfers pursuant to *Fla. Stat*. § 726.105(1)(b);

    b. Avoiding the Transfers made to Lippman as fraudulent transfers in violation of *Fla. Stat*. § 726.105(1)(b); and

    c. Granting such other and further relief as may be just and proper.

### COUNT V – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.106(1) OF THE FLORIDA STATUTES

42. The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

43. Within four year period preceding the Petition Date, RRA made the Transfers to Lippman.

44. RRA made the Transfers without receiving reasonably equivalent value in exchange for the Transfers.

45. RRA was insolvent at that times of the Transfers or became insolvent as a result of thereof, and a creditor(s) existed at the time of each of the Transfers.

46. The Transfers may be avoided under 11 U.S.C. § 544 and *Fla. Stat*. §726.106(1).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a Judgment:

a. Declaring the above referenced payments to the Lippman to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.106(1);

b. Avoiding the Transfers made to Lippman as fraudulent transfers in violation of *Fla. Stat*. § 726.106(1); and

c. Granting such other and further relief as may be just and proper.

### COUNT VI – RECOVERY OF PROPERTY PURSUANT TO SECTION 550 OF THE BANKRUPTCY CODE

47. The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

48. The transfers referenced above are avoidable by Plaintiff pursuant to pursuant to 11 U.S.C. §§ 544 and 548 and as a result, such payments are recoverable by Plaintiff pursuant to 11 U.S.C. § 550.

49. Lippman was the initial transferee of the above referenced payments and/or the entity for whose benefit such transfers were made.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment:

a. Declaring Lippman to be the initial transferee and/or the entity for whose benefit the above referenced payments were made;

  b. Directing Lippman to turnover the above referenced fraudulent payments, plus interest at the applicable federal statutory rate, and reasonable attorneys' fees and expenses to the extent permissible by applicable law to Plaintiff; and

  c. Granting such other and further relief as may be just and proper.

## COUNT VII – FOR BREACH OF FIDUCIARY DUTY

50. The allegations set forth in paragraphs 1 through 27 are realleged as if fully restated herein.

51. At all times material hereto, as an employee of RRA, having held himself out to the public as a partner of RRA and having performed certain management functions, Lippman owed RRA fiduciary duties, including a duty of loyalty, which includes an obligation to account for RRA property.

52. Lippman has breached his fiduciary duty by submitting Expense Reimbursement Reports for payment by RRA, knowing that these submissions largely encompassed payment for personal expenses, rather than legitimate law firm expenses.

53. Lippman also breached his fiduciary duty to RRA by engaging in the systematic trading of checks with RRA and paying third parties with RRA funds, including to himself, Rothstein, Banyon LLC, Sterling Bank, Kendall Sports Bar, Albert Peter and others, and by not repaying the Lippman Loans in due course.

54. As a result of Lippman's breaches of fiduciary duty, RRA has been damaged in an approximate amount of $3.8 million.

55. At all times material hereto, Lippman's actions were willful and wanton and occurred with total disregard for the rights of RRA, thus entitling RRA to an award of punitive damages.

**WHEREFORE**, Plaintiff prays for entry of a judgment in his favor and against Defendant Steven Lippman for damages, punitive damages and all such other relief as this court deems just and appropriate.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(a).

**DATED** this 29th day of December 2009.

                    BERGER SINGERMAN, P.A.
                    Attorneys for the Trustee, Herbert Stettin

By: */s/    Paul Steven Singerman*
      Paul Steven Singerman, Esq.
      Fla. Bar No.  378860
      singerman@bergersingerman.com
      Charles H. Lichtman, Esq.
      Fla. Bar No. 501050
      clichtman@bergersingerman.com
      Berger Singerman, P.A.
      350 East Las Olas Blvd.
      Suite 1000
      Fort Lauderdale, Florida 33301
      Direct Telephone: (954) 712-5138
      Main Line: (954) 525-9900
      Facsimile: (954)  523-2872

2516956-1