UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

| | |
|---|---|
| In re | CASE NO. 09-34791-BKC-RBR<br>CHAPTER 11 |
| ROTHSTEIN ROSENFELDT ADLER, P.A., | |
|     Debtor. | |

_____/

| | |
|---|---|
| HERBERT STETTIN, not individually but as<br>Chapter 11 Trustee of the estate of the Debtor,<br>Rothstein Rosenfeldt Adler, P.A., | ADV. NO. |
|     Plaintiff, | |
| v. | |
| MICHAEL SZAFRANSKI, an individual, and<br>ABS CAPITAL FUNDING, LLC, a limited<br>liability company, ONYX OPTIONS<br>CONSULTANTS CORP. d/b/a ONYX<br>CAPITAL MANAGEMENT, a Florida<br>corporation,  SKIS VENTURES, LLC, a<br>limited liability company,  ALEXA<br>FUNDING, LLC, a limited liability company, | |
|     Defendants. | |

_____/

## ADVERSARY COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND FRAUDULENT TRANSFERS, TO RECOVER USURIOUS PAYMENTS, FOR CANCELLATION OF INDEBTEDNESS AND FOR OTHER RELIEF

The Plaintiff, HERBERT STETTIN (the "Trustee" or "Stettin"), not individually but as

Chapter 11 Trustee of the estate of the Debtor, Rothstein Rosenfeldt Adler, P.A. (the "Debtor" or

"RRA"), files this Adversary Complaint to Avoid and Recover Preferential and Fraudulent

Transfers, to Recover Usurious Payments, for Cancellation of Indebtedness and for Other Relief,

against the Defendants MICHAEL SZAFRANSKI, an individual ("SZAFRANSKI"), ABS

CAPITAL FUNDING, LLC, a limited liability company ("ABS"), ONYX OPTIONS CONSULTANTS CORP. d/b/a ONYX CAPITAL MANAGEMENT, a Florida corporation ("ONYX CAPITAL"), SKIS VENTURES, LLC, a limited liability company ("SKIS"), and ALEXA FUNDING, LLC, a limited liability company ("ALEXA") (ABS, ONYX CAPITAL, SKIS and ALEXA, shall at times collectively be referred to herein as the "SZAFRANSKI ENTITIES," and collectively with SZAFRANSKI as "Defendants"),[1] and alleges:

## FACTS COMMON TO ALL COUNTS

1.     RRA was a law firm that was incorporated in the State of Florida on February 7, 2002.  RRA maintained a principal office at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida, with satellite offices in Miami, Boca Raton, West Palm Beach and New York City.

2.     Rothstein is an individual who resides in Broward County, Florida.

3.     Until he was permanently disbarred by Order of the Florida Supreme Court dated November 25, 2009, Rothstein had been a member of the Florida Bar since 1988 and, prior to November 2, 2009, was RRA's Chief Executive Officer and fifty percent shareholder.

4.     On November 10, 2009 (the "Petition Date"), a group of petitioning creditors filed an involuntary petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") against RRA in the wake of allegations, which have proven to be true, that Rothstein had perpetrated a massive Ponzi scheme in which funds received from later investors were used to pay earlier investors.

---

[1] In compliance with Fed. R. Bankr. P. 7020 and Local Rule 7003-1(D) regarding the joinder of multiple parties in a single filed complaint, each of the named defendants share common ownership and control and involve fraudulent transfers arising out the same series of transactions, occurrences or series of transactions or occurrences, along with common questions and issues of law and fact.

5.      The involuntary petition was filed after RRA learned that Rothstein utilized RRA's business to fraudulently secure investments in fictitious structured settlements and that Rothstein funneled those investment funds through accounts nominally labeled as "trust accounts" titled in the name of RRA, as well as through the use of RRA's accounts in other financial institutions, to Rothstein personally and to certain businesses owned and/or controlled by Rothstein, collectively referred to herein as the "Rothstein Entities."

6.      On November 2, 2009, Stettin was appointed RRA's state court receiver.  On November 11, 2009, Stettin was appointed as RRA's Chief Restructuring Officer, and thereafter, by Order dated November 20, 2009, was appointed Chapter 11 Trustee of RRA.

7.      By notice filed November 25, 2009, RRA, by and through the Trustee, consented to the entry of an Order for Relief under Chapter 11 of the Bankruptcy Code.  As such, the Trustee is the duly authorized fiduciary on behalf of the Debtor.

8.      Defendant, ABS, is a limited liability company owned, controlled and/or operated by SZAFRANSKI, and that was otherwise formed and/or operated as the alter ego of SZAFRANSKI.

9.      Defendant, ONYX CAPITAL, is a Florida corporation, controlled and/or operated by SZAFRANSKI, and that was otherwise formed and/or operated as the alter ego of SZAFRANSKI.

10.      Defendant, SKIS, is a limited liability company owned, controlled and/or operated by SZAFRANSKI, and that was otherwise formed and/or operated as the alter ego of SZAFRANSKI.

11.      Defendant, ALEXA, is a limited liability company owned, controlled and/or operated by SZAFRANSKI, and that was otherwise formed and/or operated as the alter ego of

3

SZAFRANSKI.

12.     Defendant, SZAFRANSKI, is an individual that resides in Broward County, Florida.  At all times material hereto, SZAFRANSKI and the SZAFRANKSI ENTITIES were insiders of RRA as provided under Section 101(31) of the Bankruptcy Code.

13.     The relationship between Rothstein, RRA, SZAFRANSKI and the SZAFRANSKI ENTITIES was intertwined.  SZAFRANSKI was the individual designated to "verify" as legitimate the Rothstein structured settlement transactions and investments.  RRA guaranteed the repayment of the proceeds of the structured settlements to the Defendants, and RRA issued promissory notes to Defendants  securing certain of those investments (the "Usurious Notes", copies of which are attached hereto as **Composite Exhibit "A"**) which provided for repayment by RRA to Defendant ABS.   Such Usurious Notes were signed by Rothstein and were obtained from RRA with the intent to willfully and knowingly take more than the legal rate of interest for the monies loaned to RRA.

14.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

15.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (H) and (O).  The Trustee consents to the entry of final orders and judgment by the Bankruptcy Court.

16.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

17.     All conditions precedent to the filing of this action have been performed, have occurred, have been waived or have otherwise been excused.

**THE AVOIDABLE TRANSFERS
AT ISSUE IN THIS CASE**

18.     The transfers from RRA to SZAFRANSKI and the SZAFRANKSI ENTITIES detailed in the schedule attached hereto as **Exhibit "B"** are at issue in this case (collectively, the

"Transfers") totaling $32,796,263.98 in the aggregate (some of which may have been payment under the Usurious Notes) are at issue in this case, along with any and all other obligations incurred or transfers made by RRA to the Defendants within four years of the Petition Date.

<u>COUNT I</u>
<u>Action to Avoid and Recover Fraudulent Transfers Pursuant</u>
<u>to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes</u>
<u>(Against ABS)</u>

The Trustee sues Defendant ABS and alleges:

19.    The Trustee realleges paragraphs 1 through 18 above.

20.    Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

21.    Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under

Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

22.     The Transfers to ABS constitute transfers of an interest in property of the Debtor to ABS within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

23.     The Transfers were made with actual intent to hinder or delay creditors of the Debtor, and such Transfers were not received in good faith by ABS.  Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (i) Rothstein was utilizing RRA to conduct a Ponzi scheme; (ii) RRA was not paying its debts as they became due; and (iii) RRA did not receive reasonably equivalent value for the Transfers.

24.     In addition, the Debtor did not receive reasonably equivalent value for the Transfers and it: (i) was insolvent at the time of the Transfers or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

25.     As a result of the above, the Trustee can avoid the Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that this Court enter a judgment against the Defendant, ABS, that: (i) avoids the Transfers to ABS and recover same for the benefit of the estate; (ii) awards to the Trustee the amount or value of the Transfers, plus interest and costs; (iii) disallows any claim that ABS may have against the Debtor until such time the Transfers are re-paid to the Trustee pursuant to 11 U.S.C. § 502(d); and (iv) awards any other relief the Court deems appropriate.

**COUNT II**
**Action to Avoid and Recover One Year**
**Preferential Transfers Pursuant to 11 U.S.C. § 547**
**(Against ABS)**

The Trustee sues Defendant ABS and alleges:

26.     The Trustee realleges paragraphs 1 through 18 above.

27.     Pursuant to 11 U.S.C. § 550, in a preferential transfer action commenced under Section 547 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

28.     The Transfers constituted transfers of property of the Debtor made: (i) within one year before the Petition Date; (ii) to or for the benefit of ABS, which, at all relevant times, was a creditor of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Defendant before such transfers were made; and (iv) while the Debtor was insolvent.

29.     The Transfers enabled ABS to receive more than it would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the 90 Day Preferential Transfers

7

and the One Year Preferential Transfers had not been made; and (iii) ABS received payment of its debt to the extent provided by the Bankruptcy Code.

30. By reason of the foregoing, the Transfers to ABS are avoidable pursuant to 11 U.S.C. § 547(b). As a result, Plaintiff may recover the amount or value of the Transfers from ABS pursuant to 11 U.S.C. § 550.

WHEREFORE the Trustee respectfully requests that this Court enter a judgment against the Defendant, ABS, that: (i) avoids the Transfers to ABS pursuant to 11 U.S.C. § 547(b); (ii) awards to the Trustee pursuant to Section 550 of the Bankruptcy Code the amount or value of the Transfers, plus pre-judgment interest and costs; (iii) disallows any claim that ABS may have against the Debtor until such time as ABS makes payment on the Transfers as provided in 11 U.S.C. § 502(d); and (iv) awards any relief the Court deems appropriate.

### COUNT III
### Action to Avoid and Recover Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes (Against ONYX CAPITAL)

The Trustee sues Defendant ONYX CAPITAL and alleges:

31. The Trustee realleges paragraphs 1 through 18 above.

32. Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in

8

exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

33.     Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

34.     The Transfers to ONYX CAPITAL constitute transfers of an interest in property of the Debtor to ONYX CAPITAL within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

35.     The Transfers were made with actual intent to hinder or delay creditors of the Debtor, and such Transfers were not received in good faith by ONYX CAPITAL.  Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (i) Rothstein was utilizing RRA to conduct a Ponzi scheme; (ii) RRA was not paying its debts as they became due; and (iii) RRA did not receive reasonably equivalent value for the Transfers.

36.     In addition, the Debtor did not receive reasonably equivalent value for the Transfers and it: (i) was insolvent at the time of the Transfers or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the

remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

37.     As a result of the above, the Trustee can avoid the Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that this Court enter a judgment against the Defendant, ONYX CAPITAL, that: (i) avoids the Transfers to ONYX CAPITAL and recover same for the benefit of the estate; (ii) awards to the Trustee the amount or value of the Transfers, plus interest and costs; (iii) disallows any claim that ONYX CAPITAL may have against the Debtor until such time the Transfers are re-paid to the Trustee pursuant to 11 U.S.C. § 502(d); and (iv) awards any other relief the Court deems appropriate.

**COUNT IV**
**Action to Avoid and Recover One Year**
**Preferential Transfers Pursuant to 11 U.S.C. § 547**
**(Against Defendant ONYX CAPITAL)**

The Trustee sues Defendant ONYX CAPITAL and alleges:

38.     The Trustee realleges paragraphs 1 through 18 above.

39.     Pursuant to 11 U.S.C. § 550, in a preferential transfer action commenced under Section 547 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

40.     The Transfers constituted transfers of property of the Debtor made: (i) within one

year before the Petition Date; (ii) to or for the benefit of ONYX CAPITAL, which, at all relevant times, was a creditor of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Defendant before such transfers were made; and (iv) while the Debtor was insolvent.

41.     The Transfers enabled ONYX CAPITAL to receive more than it would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the 90 Day Preferential Transfers and the One Year Preferential Transfers had not been made; and (iii) ONYX CAPITAL received payment of its debt to the extent provided by the Bankruptcy Code.

42.     By reason of the foregoing, the Transfers to ONYX CAPITAL are avoidable pursuant to 11 U.S.C. § 547(b).  As a result, Plaintiff may recover the amount or value of the Transfers from ONYX CAPITAL pursuant to 11 U.S.C. § 550.

WHEREFORE the Trustee respectfully requests that this Court enter a judgment against the Defendant, ONYX CAPITAL, that: (i) avoids the Transfers to ONYX CAPITAL pursuant to 11 U.S.C. § 547(b); (ii) awards to the Trustee pursuant to Section 550 of the Bankruptcy Code the amount or value of the Transfers, plus pre-judgment interest and costs; (iii) disallows any claim that ONYX CAPITAL may have against the Debtor until such time as ONYX CAPITAL makes payment on the Transfers as provided in 11 U.S.C. § 502(d); and (iv) awards any relief the Court deems appropriate.

### COUNT V
### Action to Avoid and Recover Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes (Against SKIS)

The Trustee sues Defendant SKIS and alleges:

43.     The Trustee realleges paragraphs 1 through 18 above.

44.     Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the

11

Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

45.     Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

46.     The Transfers to SKIS constitute transfers of an interest in property of the Debtor to SKIS within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

47.     The Transfers were made with actual intent to hinder or delay creditors of the

Debtor, and such Transfers were not received in good faith by SKIS. Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (i) Rothstein was utilizing RRA to conduct a Ponzi scheme; (ii) RRA was not paying its debts as they became due; and (iii) RRA did not receive reasonably equivalent value for the Transfers.

48.     In addition, the Debtor did not receive reasonably equivalent value for the Transfers and it: (i) was insolvent at the time of the Transfers or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

49.     As a result of the above, the Trustee can avoid the Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that this Court enter a judgment against the Defendant, SKIS, that: (i) avoids the Transfers to SKIS and recover same for the benefit of the estate; (ii) awards to the Trustee the amount or value of the Transfers, plus interest and costs; (iii) disallows any claim that SKIS may have against the Debtor until such time the Transfers are re-paid to the Trustee pursuant to 11 U.S.C. § 502(d); and (iv) awards any other relief the Court deems appropriate.

**COUNT VI**
**Action to Avoid and Recover One Year**
**Preferential Transfers Pursuant to 11 U.S.C. § 547**
**(Against Defendant SKIS)**

The Trustee sues Defendant SKIS and alleges:

50.     The Trustee realleges paragraphs 1 through 18 above.

51.     Pursuant to 11 U.S.C. § 550, in a preferential transfer action commenced under Section 547 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

52.     The Transfers constituted transfers of property of the Debtor made: (i) within one year before the Petition Date; (ii) to or for the benefit of SKIS, which, at all relevant times, was a creditor of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Defendant before such transfers were made; and (iv) while the Debtor was insolvent.

53.     The Transfers enabled SKIS to receive more than it would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the 90 Day Preferential Transfers and the One Year Preferential Transfers had not been made; and (iii) SKIS received payment of its debt to the extent provided by the Bankruptcy Code.

54.     By reason of the foregoing, the Transfers to SKIS are avoidable pursuant to 11 U.S.C. § 547(b).  As a result, Plaintiff may recover the amount or value of the Transfers from SKIS pursuant to 11 U.S.C. § 550.

WHEREFORE the Trustee respectfully requests that this Court enter a judgment against the Defendant, SKIS, that: (i) avoids the Transfers to SKIS pursuant to 11 U.S.C. § 547(b); (ii)

14

awards to the Trustee pursuant to Section 550 of the Bankruptcy Code the amount or value of the Transfers, plus pre-judgment interest and costs; (iii) disallows any claim that SKIS may have against the Debtor until such time as SKIS makes payment on the Transfers as provided in 11 U.S.C. § 502(d); and (iv) awards any relief the Court deems appropriate.

**COUNT VII**
**Action to Avoid and Recover Fraudulent Transfers Pursuant**
**to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes**
**(Against ALEXA)**

The Trustee sues Defendant ALEXA and alleges:

55.     The Trustee realleges paragraphs 1 through 18 above.

56.     Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

57.     Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

58.     The Transfers to ALEXA constitute transfers of an interest in property of the Debtor to ALEXA within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

59.     The Transfers were made with actual intent to hinder or delay creditors of the Debtor, and such Transfers were not received in good faith by ALEXA.  Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (i) Rothstein was utilizing RRA to conduct a Ponzi scheme; (ii) RRA was not paying its debts as they became due; and (iii) RRA did not receive reasonably equivalent value for the Transfers.

60.     In addition, the Debtor did not receive reasonably equivalent value for the Transfers and it: (i) was insolvent at the time of the Transfers or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

61.     As a result of the above, the Trustee can avoid the Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that this Court enter a judgment against the Defendant, ALEXA, that: (i) avoids the Transfers to ALEXA and recover same for the benefit of the estate; (ii) awards to the Trustee the amount or value of the Transfers, plus interest and costs; (iii) disallows any claim that ALEXA may have against the Debtor until such time the Transfers are re-paid to the Trustee pursuant to 11 U.S.C. § 502(d); and (iv) awards any other relief the Court deems appropriate.

### COUNT VIII
### Action to Avoid and Recover One Year
### Preferential Transfers Pursuant to 11 U.S.C. § 547
### (Against Defendant ALEXA)

The Trustee sues Defendant ALEXA and alleges:

62.     The Trustee realleges paragraphs 1 through 18 above.

63.     Pursuant to 11 U.S.C. § 550, in a preferential transfer action commenced under Section 547 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

64.     The Transfers constituted transfers of property of the Debtor made: (i) within one year before the Petition Date; (ii) to or for the benefit of ALEXA, which, at all relevant times, was a creditor of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Defendant before such transfers were made; and (iv) while the Debtor was insolvent.

65.     The Transfers enabled ALEXA to receive more than it would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the 90 Day Preferential

Transfers and the One Year Preferential Transfers had not been made; and (iii) ALEXA received payment of its debt to the extent provided by the Bankruptcy Code.

66.     By reason of the foregoing, the Transfers to ALEXA are avoidable pursuant to 11 U.S.C. § 547(b).  As a result, Plaintiff may recover the amount or value of the Transfers from ALEXA pursuant to 11 U.S.C. § 550.

WHEREFORE the Trustee respectfully requests that this Court enter a judgment against the Defendant, ALEXA, that: (i) avoids the Transfers to ALEXA pursuant to 11 U.S.C. § 547(b); (ii) awards to the Trustee pursuant to Section 550 of the Bankruptcy Code the amount or value of the Transfers, plus pre-judgment interest and costs; (iii) disallows any claim that ALEXA may have against the Debtor until such time as ALEXA makes payment on the Transfers as provided in 11 U.S.C. § 502(d); and (iv) awards any relief the Court deems appropriate.

### COUNT IX
### Action to Avoid and Recover Fraudulent Transfers Pursuant
### to 11 U.S.C. §§ 544 and 548 and Chapter 726 of the Florida Statutes
### (Against SZAFRANSKI)

The Trustee sues Defendant SZAFRANKSI and alleges:

67.     The Trustee realleges paragraphs 1 through 18 above.

68.     Pursuant to 11 U.S.C. § 548 and/or 11 U.S.C. § 544 and Chapter 726 of the Florida Statutes, a Trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years (under Section 548 of the Bankruptcy Code) and 4 years (under Chapter 726 of the Florida Statutes) before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or (B)(i) received less than a reasonably equivalent value in

18

exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

69.     Pursuant to 11 U.S.C. § 550, in a fraudulent transfer action commenced under Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statutes, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; and (2) any immediate or mediate transferee of such initial transferee.

70.     The Transfers to SZAFRANKSI constitute transfers of an interest in property of the Debtor to SZAFRANKSI within two years (under Section 548 of the Bankruptcy Code) and four years (under Chapter 726 of the Florida Statutes) prior to the Petition Date.

71.     The Transfers were made with actual intent to hinder or delay creditors of the Debtor, and such Transfers were not received in good faith by SZAFRANKSI.  Among other badges of fraud and/or lack of good faith, at or near the time of the Transfers: (i) Rothstein was utilizing RRA to conduct a Ponzi scheme; (ii) RRA was not paying its debts as they became due; and (iii) RRA did not receive reasonably equivalent value for the Transfers.

72.     In addition, the Debtor did not receive reasonably equivalent value for the Transfers and it: (i) was insolvent at the time of the Transfers or became insolvent as a result thereof; (ii) was engaged or was about to engage in a business or transaction for which the

remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they came due.

73.     As a result of the above, the Trustee can avoid the Transfers pursuant to Sections 544 and 548 of the Bankruptcy Code and Chapter 726 of the Florida Statues, and recover the value thereof for the benefit of the estate pursuant to Section 550 of the Bankruptcy Code.

WHEREFORE, the Trustee respectfully requests that this Court enter a judgment against the Defendant, SZAFRANKSI, that: (i) avoids the Transfers to SZAFRANKSI and recover same for the benefit of the estate; (ii) awards to the Trustee the amount or value of the Transfers, plus interest and costs; (iii) disallows any claim that SZAFRANKSI may have against the Debtor until such time the Transfers are re-paid to the Trustee pursuant to 11 U.S.C. § 502(d); and (iv) awards any other relief the Court deems appropriate.

**COUNT X**
**<u>Action to Avoid and Recover One Year</u>**
**<u>Preferential Transfers Pursuant to 11 U.S.C. § 547</u>**
**<u>(Against Defendant SZAFRANKSI)</u>**

The Trustee sues Defendant SZAFRANKSI and alleges:

74.     The Trustee realleges paragraphs 1 through 18 above.

75.     Pursuant to 11 U.S.C. § 550, in a preferential transfer action commenced under Section 547 of the Bankruptcy Code, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from – (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; (2) any immediate or mediate transferee of such initial transferee; or (3) any commercial conduit lacking good faith in receipt of such property.

76.     The Transfers constituted transfers of property of the Debtor made: (i) within one

20

year before the Petition Date; (ii) to or for the benefit of SZAFRANKSI, which, at all relevant times, was a creditor of the Debtor; (iii) for or on account of an antecedent debt owed by the Debtor to Defendant before such transfers were made; and (iv) while the Debtor was insolvent.

77.     The Transfers enabled SZAFRANKSI to receive more than it would have received if: (i) this case were a case under Chapter 7 of the Bankruptcy Code; (ii) the 90 Day Preferential Transfers and the One Year Preferential Transfers had not been made; and (iii) SZAFRANKSI received payment of its debt to the extent provided by the Bankruptcy Code.

78.     By reason of the foregoing, the Transfers to SZAFRANKSI are avoidable pursuant to 11 U.S.C. § 547(b).  As a result, Plaintiff may recover the amount or value of the Transfers from SZAFRANKSI pursuant to 11 U.S.C. § 550.

WHEREFORE the Trustee respectfully requests that this Court enter a judgment against the Defendant, SZAFRANKSI, that: (i) avoids the Transfers to SZAFRANKSI pursuant to 11 U.S.C. § 547(b); (ii) awards to the Trustee pursuant to Section 550 of the Bankruptcy Code the amount or value of the Transfers, plus pre-judgment interest and costs; (iii) disallows any claim that SZAFRANKSI may have against the Debtor until such time as SZAFRANKSI makes payment on the Transfers as provided in 11 U.S.C. § 502(d); and (iv) awards any relief the Court deems appropriate.

### COUNT XI
### Action for Turnover of Property of the Estate
### and Demand for an Accounting Pursuant to 11 U.S.C. § 542
### (Against the Defendants)

The Trustee sues the Defendants and alleges:

79.     The Trustee realleges the allegations in Counts I through X above.

80.     This is an action for turnover of property of the estate pursuant to Section 542 of

the Bankruptcy Code and a demand for an accounting in accordance therewith.

81.     The transfers that are the subject of Counts I through X above constitute property of the estate to be recovered and administered by the Trustee pursuant to Section 541 of Bankruptcy Code.

82.     As a result of he foregoing, pursuant to Section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover from the Defendants of any and all transfers made by RRA, directly or indirectly, to the Defendants.

83.     As a result of he foregoing, pursuant to Section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such transfers received by the Defendants from RRA, directly or indirectly.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Defendants: (i) ordering them to turnover to the Trustee all funds and other things of value that are the subject of the Transfers that are the subject of Counts I through X above; (ii) ordering the Defendants to account to the Trustee regarding the status, use and current location of such funds and assets; (iii) entering a judgment for the value of the assets that comprise such funds and other things of value; and (iv) for any other relief the Court deems appropriate.

## COUNT XII
### Claim for Unjust  Enrichment
### (Against the Defendants)

The Trustee sues the Defendants and alleges:

84.     The Trustee realleges paragraphs 1 through 18 above.

85.     This is a claim for unjust enrichment.

86.     RRA conferred a benefit on the Defendants by making the Transfers.

87.     The Defendants knowingly and voluntarily accepted and retained the benefit

conferred by RRA.

88.     The circumstances are such that it would be inequitable and unjust for the Defendants to retain the benefit conferred by RRA without paying the Trustee the value thereof.

89.     As a result of the foregoing, the Defendants have been unjustly enriched at the expense of the RRA bankruptcy estate.

90.     The Trustee is entitled to the return of those amounts by which the Defendants were unjustly enriched through disgorgement or any other appropriate remedy.

WHEREFORE, the Trustee respectfully requests that the Court enter judgment against the Defendants in the amount that they were unjustly enriched, together with pre-judgment interest and costs, and for any other relief the Court deems appropriate.

**Count XIII**
**Action Seeking Cancellation of All Sums Due and**
**Recovery of All Payments Resulting from Usurious Notes**
**Pursuant to Fla. Stat. § 687.071**
**(Against Defendant ABS)**

The Trustee sues Defendant ABS and alleges:

91.     The Trustee realleges paragraphs 1 through 18 above.

92.     None of the Usurious Notes are enforceable as they each provide for a usurious interest rate in violation of applicable Florida law.

93.     ABS knowingly sought to charge and charged interest on the Usurious Notes at a rate in excess of the amount permitted by Florida law, as codified in § 687.071, Fla. Stat., and as evidence in party by the Usurious Notes.

94.     Because the interest rate set forth in the Usurious Notes exceeds the permissible rate under Florida law, the Usurious Notes are unenforceable.

95.     Moreover, because the Usurious Notes are unenforceable pursuant to § 687.071,

Fla. Stat., all interest payments made to ABS by RRA may be recovered under applicable Florida law.

WHEREFORE, the Trustee demands the entry of an order and/or judgment against Defendant ABS (i) finding that the Usurious Notes are usurious, and as such, unenforceable; (ii) finding that all interest payments made to ABS are recoverable and awarding interest on all payments recovered from ABS under the maximum rate allowed under Florida law; (iii) providing for all other relief afforded under Chapter 687, Fla. Stat.,; and (iv) awarding such other and further relief this Court deems just and proper.

Respectfully submitted this 3rd day of February, 2010.

> I hereby certify that I am admitted to the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).
>
> GENOVESE JOBLOVE & BATTISTA, P.A.
> Special Counsel for the Debtor-in-Possession,
>   Rothstein, Rosenfeldt and Adler, P.A.
> Miami Tower
> 100 S.E. Second Street, Suite 4400
> Miami, Florida 7131
> Tel.: (305) 349-2300
> Fax.: (305) 349-2310
> Email: dcimo@gjb-law.com
>
> By:   /s/ David C. Cimo
>        David C. Cimo, Esq.
>        Fla. Bar. No. 775400
>        John H. Genovese
>        Fla. Bar. No. 280852
>        Paul J. Battista, Esq.
>        Fla. Bar. No. 884162
>        Robert Farouk Elgidely, Esq.
>        Fla. Bar. No. 111856
>        Theresa Van Vliet, Esq.
>        Fla. Bar. No. 374040
>        Jesus M. Suarez, Esq.
>        Fla. Bar No. 60086

# COMPOSITE
# EXHIBIT
# "A"

## PROMISSORY NOTE

$300,000.00 U.S.

May 7, 2009

Fort Lauderdale, FL

FOR VALUE RECEIVED, the undersigned promises to pay to the order of ABS Capital Funding ("lender") the principal sum of $300,000.00 U.S., together with interest, points, processing fees, transaction fees, expediting fees and other fees thereon as follows: **Four equal monthly installments in the amount of $112,500.00 commencing on June 7, 2009.**

There shall be no penalty for prepayment of this loan, interest and/or other fees, whether same is prepaid in whole or in part. However, interest and all other fees shall be deemed earned by lenders at the moment of the funding of this loan and, therefore, borrower shall not, at any time, be entitled to any reduction in principal, interest, fees or points as a result of early payment.

Payment of this loan and all interest and fees to ABS Capital Funding, shall be made by lawful checks drawn on the account of Rothstein Rosenfeldt Adler, P.A., made payable to ABS Capital Funding, dated pursuant to the terms set forth above, and shall be delivered on the date of funding to ABS Capital Funding at 9511 Collins Avenue, Suite 411, Surfside, Florida 33154.

The maker of this Note further agrees to pay all costs of collection, including a reasonable attorney's fee in case the principal of this Note or any payment on the principal or any interest, fees or points thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Should borrower fail to take all steps necessary to insure that payment is timely received by lender, resulting in late tender to lender, borrower shall pay to lender a late payment fee of FIVE HUNDRED and 00/100 DOLLARS ($500.00) U.S., per day. Borrower waives all right to challenge said late payment fee on any basis, whatsoever, as Borrower acknowledges that time is of the essence with regard to all payments hereunder.

This Note is subject to and shall be interpreted under the laws of the State of Florida. Venue shall be in Broward County, Florida. Upon default in the payment of principal and/or interest and/or points and/or fees due on this Note this Note shall forthwith become due and payable in full with interest at the maximum rate permitted by law.

Rothstein Rosenfeldt Adler, P.A.
Borrower

By: _____
        Scott W. Rothstein, CEO

S19(a)

## PROMISSORY NOTE

$800,000.00 U.S.

June 24, 2009

Fort Lauderdale, FL

FOR VALUE RECEIVED, the undersigned promises to pay to the order of ABS Capital Funding ("lender") the principal Eight Hundred Thousand Dollars ($800,000.00) U.S., together with interest, points, processing fees, transaction fees, expediting fees and other fees thereon as follows: **Two equal monthly installments in the amount of $550,000.00 commencing on July 24, 2009.**

There shall be no penalty for prepayment of this loan, interest and/or other fees, whether same is prepaid in whole or in part. However, interest and all other fees shall be deemed earned by lenders at the moment of the funding of this loan and, therefore, borrower shall not, at any time, be entitled to any reduction in principal, interest, fees or points as a result of early payment.

Payment of this loan and all interest and fees to ABS Capital Funding, shall be made by lawful checks drawn on the account of Rothstein Rosenfeldt Adler, P.A., made payable to ABS Capital Funding, dated pursuant to the terms set forth above, and shall be delivered on the date of funding to ABS Capital Funding at 9511 Collins Avenue, Suite 411, Surfside, Florida 33154.

The maker of this Note further agrees to pay all costs of collection, including a reasonable attorney's fee in case the principal of this Note or any payment on the principal or any interest, fees or points thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Should borrower fail to take all steps necessary to insure that payment is timely received by lender, resulting in late tender to lender, borrower shall pay to lender a late payment fee of FIVE HUNDRED and 00/100 DOLLARS ($500.00) U.S., per day. Borrower waives all right to challenge said late payment fee on any basis, whatsoever, as Borrower acknowledges that time is of the essence with regard to all payments hereunder.

This Note is subject to and shall be interpreted under the laws of the State of Florida. Venue shall be in Broward County, Florida. Upon default in the payment of principal and/or interest and/or points and/or fees due on this Note this Note shall forthwith become due and payable in full with interest at the maximum rate permitted by law.

Rothstein Rosenfeldt Adler, P.A.
Borrower

By: _____
        Scott W. Rothstein, CEO

S34

934-D

## PROMISSORY NOTE

$800,000.00 U.S.

September 3, 2009

Fort Lauderdale, FL

FOR VALUE RECEIVED, the undersigned promises to pay to the order of ABS Capital Funding ("lender") the principal Eight Hundred Thousand Dollars ($800,000.00) U.S., together with interest, points, processing fees, transaction fees, expediting fees and other fees thereon as follows: **Four equal monthly installments in the amount of $337,500.00 commencing on October 3, 2009.**

There shall be no penalty for prepayment of this loan, interest and/or other fees, whether same is prepaid in whole or in part. However, interest and all other fees shall be deemed earned by lenders at the moment of the funding of this loan and, therefore, borrower shall not, at any time, be entitled to any reduction in principal, interest, fees or points as a result of early payment.

Payment of this loan and all interest and fees to ABS Capital Funding, shall be made by lawful checks drawn on the account of Rothstein Rosenfeldt Adler, P.A., made payable to ABS Capital Funding, dated pursuant to the terms set forth above, and shall be delivered on the date of funding to ABS Capital Funding at 9511 Collins Avenue, Suite 411, Surfside, Florida 33154.

The maker of this Note further agrees to pay all costs of collection, including a reasonable attorney's fee in case the principal of this Note or any payment on the principal or any interest, fees or points thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Should borrower fail to take all steps necessary to insure that payment is timely received by lender, resulting in late tender to lender, borrower shall pay to lender a late payment fee of FIVE HUNDRED and 00/100 DOLLARS ($500.00) U.S., per day. Borrower waives all right to challenge said late payment fee on any basis, whatsoever, as Borrower acknowledges that time is of the essence with regard to all payments hereunder.

This Note is subject to and shall be interpreted under the laws of the State of Florida. Venue shall be in Broward County, Florida. Upon default in the payment of principal and/or interest and/or points and/or fees due on this Note this Note shall forthwith become due and payable in full with interest at the maximum rate permitted by law.

Rothstein Rosenfeldt Adler, P.A.
Borrower

By:_____
    Scott W. Rothstein, CEO

S134

S134 B—

## PROMISSORY NOTE

$800,000.00 U.S.

September 3, 2009

Fort Lauderdale, FL

FOR VALUE RECEIVED, the undersigned promises to pay to the order of ABS Capital Funding ("lender") the principal Eight Hundred Thousand Dollars ($800,000.00) U.S., together with interest, points, processing fees, transaction fees, expediting fees and other fees thereon as follows: **Four equal monthly installments in the amount of $337,500.00 commencing on October 3, 2009.**

There shall be no penalty for prepayment of this loan, interest and/or other fees, whether same is prepaid in whole or in part. However, interest and all other fees shall be deemed earned by lenders at the moment of the funding of this loan and, therefore, borrower shall not, at any time, be entitled to any reduction in principal, interest, fees or points as a result of early payment.

Payment of this loan and all interest and fees to ABS Capital Funding, shall be made by lawful checks drawn on the account of Rothstein Rosenfeldt Adler, P.A., made payable to ABS Capital Funding, dated pursuant to the terms set forth above, and shall be delivered on the date of funding to ABS Capital Funding at 9511 Collins Avenue, Suite 411, Surfside, Florida 33154.

The maker of this Note further agrees to pay all costs of collection, including a reasonable attorney's fee in case the principal of this Note or any payment on the principal or any interest, fees or points thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Should borrower fail to take all steps necessary to insure that payment is timely received by lender, resulting in late tender to lender, borrower shall pay to lender a late payment fee of FIVE HUNDRED and 00/100 DOLLARS ($500.00) U.S., per day. Borrower waives all right to challenge said late payment fee on any basis, whatsoever, as Borrower acknowledges that time is of the essence with regard to all payments hereunder.

This Note is subject to and shall be interpreted under the laws of the State of Florida. Venue shall be in Broward County, Florida. Upon default in the payment of principal and/or interest and/or points and/or fees due on this Note this Note shall forthwith become due and payable in full with interest at the maximum rate permitted by law.

Rothstein Rosenfeldt Adler, P.A.
Borrower

By:_____
    Scott W. Rothstein, CEO

S135

S135 B-

## PROMISSORY NOTE

$800,000.00 U.S.

September 7, 2009

Fort Lauderdale, FL

FOR VALUE RECEIVED, the undersigned promises to pay to the order of ABS Capital Funding ("lender") the principal Eight Hundred Thousand Dollars ($800,000.00) U.S., together with interest, points, processing fees, transaction fees, expediting fees and other fees thereon as follows: **Four equal monthly installments in the amount of $337,500.00 commencing on October 7, 2009.**

There shall be no penalty for prepayment of this loan, interest and/or other fees, whether same is prepaid in whole or in part. However, interest and all other fees shall be deemed earned by lenders at the moment of the funding of this loan and, therefore, borrower shall not, at any time, be entitled to any reduction in principal, interest, fees or points as a result of early payment.

Payment of this loan and all interest and fees to ABS Capital Funding, shall be made by lawful checks drawn on the account of Rothstein Rosenfeldt Adler, P.A., made payable to ABS Capital Funding, dated pursuant to the terms set forth above, and shall be delivered on the date of funding to ABS Capital Funding at 9511 Collins Avenue, Suite 411, Surfside, Florida 33154.

The maker of this Note further agrees to pay all costs of collection, including a reasonable attorney's fee in case the principal of this Note or any payment on the principal or any interest, fees or points thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Should borrower fail to take all steps necessary to insure that payment is timely received by lender, resulting in late tender to lender, borrower shall pay to lender a late payment fee of FIVE HUNDRED and 00/100 DOLLARS ($500.00) U.S., per day. Borrower waives all right to challenge said late payment fee on any basis, whatsoever, as Borrower acknowledges that time is of the essence with regard to all payments hereunder.

This Note is subject to and shall be interpreted under the laws of the State of Florida. Venue shall be in Broward County, Florida. Upon default in the payment of principal and/or interest and/or points and/or fees due on this Note this Note shall forthwith become due and payable in full with interest at the maximum rate permitted by law.

Rothstein Rosenfeldt Adler, P.A.
Borrower

By:_____
        Scott W. Rothstein, CEO

S136

## PROMISSORY NOTE

$800,000.00 U.S.

<u>September 7, 2009</u>

<u>Fort Lauderdale, FL</u>

FOR VALUE RECEIVED, the undersigned promises to pay to the order of ABS Capital Funding ("lender") the principal Eight Hundred Thousand Dollars ($800,000.00) U.S., together with interest, points, processing fees, transaction fees, expediting fees and other fees thereon as follows: **Four equal monthly installments in the amount of $337,500.00 commencing on October 7, 2009.**

There shall be no penalty for prepayment of this loan, interest and/or other fees, whether same is prepaid in whole or in part. However, interest and all other fees shall be deemed earned by lenders at the moment of the funding of this loan and, therefore, borrower shall not, at any time, be entitled to any reduction in principal, interest, fees or points as a result of early payment.

Payment of this loan and all interest and fees to ABS Capital Funding, shall be made by lawful checks drawn on the account of Rothstein Rosenfeldt Adler, P.A., made payable to ABS Capital Funding, dated pursuant to the terms set forth above, and shall be delivered on the date of funding to ABS Capital Funding at 9511 Collins Avenue, Suite 411, Surfside, Florida 33154.

The maker of this Note further agrees to pay all costs of collection, including a reasonable attorney's fee in case the principal of this Note or any payment on the principal or any interest, fees or points thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not.

Should borrower fail to take all steps necessary to insure that payment is timely received by lender, resulting in late tender to lender, borrower shall pay to lender a late payment fee of FIVE HUNDRED and 00/100 DOLLARS ($500.00) U.S., per day. Borrower waives all right to challenge said late payment fee on any basis, whatsoever, as Borrower acknowledges that time is of the essence with regard to all payments hereunder.

This Note is subject to and shall be interpreted under the laws of the State of Florida. Venue shall be in Broward County, Florida. Upon default in the payment of principal and/or interest and/or points and/or fees due on this Note this Note shall forthwith become due and payable in full with interest at the maximum rate permitted by law.

Rothstein Rosenfeldt Adler, P.A.
Borrower

By:_____
        Scott W. Rothstein, CEO

S137

S137 B

# EXHIBIT

# "B"

**Rothstein Rosenfeldt Adler, PA.**
**United States Bankruptcy Court**
**Southern District of Florida**
**Fort Lauderdale Division**
**Case No. 09-34791-BKC-RBR**

**Payments to Mike Szafranski & Related Entities**

| Payee | Date | RRA Bank Account | Num | Outflows |
|---|---|---|---|---|
| ABS Capital Funding, LLC | 04/06/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $500,000.00 |
| | 04/28/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $250,000.00 |
| | 04/28/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $500,000.00 |
| | 05/07/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $340,000.00 |
| | 05/07/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $483,333.33 |
| | 06/05/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $700,000.00 |
| | 06/08/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $452,500.00 |
| | 06/29/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $816,666.66 |
| | 07/06/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $200,000.00 |
| | 07/07/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $452,500.00 |
| | 07/07/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $633,333.33 |
| | 07/07/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $166,666.67 |
| | 07/07/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $550,000.00 |
| | 07/27/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $333,333.33 |
| | 07/29/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $233,333.34 |
| | 07/30/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $266,666.67 |
| | 08/05/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $200,000.00 |
| | 08/05/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $952,500.00 |
| | 08/05/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $633,333.34 |
| | 08/14/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $250,000.00 |
| | 08/19/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $600,000.00 |
| | 08/19/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $300,000.00 |
| | 08/24/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $1,016,666.67 |
| | 08/24/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $183,333.33 |
| | 08/24/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $866,666.66 |
| | 09/08/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $2,085,833.32 |
| | 09/10/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $300,000.00 |
| | 09/14/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $250,000.00 |
| | 09/14/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $1,441,666.66 |
| | 09/21/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $600,000.00 |
| | 09/24/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $337,500.00 |
| | 09/29/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $675,000.00 |
| | 09/30/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $866,666.67 |
| | 10/05/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $675,000.00 |
| | 10/05/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $1,475,000.00 |
| | 10/13/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $300,000.00 |
| | 10/14/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $250,000.00 |
| | 10/14/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $3,775,000.00 |
| | 10/21/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $300,000.00 |
| | 10/23/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $300,000.00 |
| **ABS Capital Funding, LLC Total** | | | | **$25,512,499.98** |

**Rothstein Rosenfeldt Adler, PA.**
**United States Bankruptcy Court**
**Southern District of Florida**
**Fort Lauderdale Division**
**Case No. 09-34791-BKC-RBR**

**Payments to Mike Szafranski & Related Entities**

| Payee | Date | RRA Bank Account | Num | Outflows |
|---|---|---|---|---|
| Onyx Capital | 07/16/2009 | 101 - Operating Commerce 1274 | 2124 | $150,000.00 |
| | 07/29/2009 | 101 - Operating Commerce 1274 | 2412 | $253,000.00 |
| | 08/08/2009 | 101 - Operating Commerce 1274 | 1978 | $250,000.00 |
| | 08/12/2009 | 101 - Operating Commerce 1274 | 2345 | $100,000.00 |
| | 08/14/2009 | 101 - Operating Commerce 1274 | 2112 | $62,500.00 |
| | 08/16/2009 | 101 - Operating Commerce 1274 | 2125 | $50,000.00 |
| | 08/17/2009 | 101 - Operating Commerce 1274 | 2413 | $210,244.00 |
| | 08/19/2009 | 101 - Operating Commerce 1274 | 2113 | $600,000.00 |
| | 08/26/2009 | 101 - Operating Commerce 1274 | 3025 | $225,000.00 |
| | 08/28/2009 | 101 - Operating Commerce 1274 | 2414 | $311,993.00 |
| | 09/01/2009 | 101 - Operating Commerce 1274 | 2346 | $225,000.00 |
| | 09/02/2009 | 101 - Operating Commerce 1274 | 3026 | $70,000.00 |
| | 09/08/2009 | 101 - Operating Commerce 1274 | 1979 | $250,000.00 |
| | 09/09/2009 | 101 - Operating Commerce 1274 | 3027 | $675,000.00 |
| | 09/14/2009 | 101 - Operating Commerce 1274 | 2114 | $62,500.00 |
| | 09/15/2009 | 101 - Operating Commerce 1274 | 3612 | $250,000.00 |
| | 09/16/2009 | 101 - Operating Commerce 1274 | 2126 | $50,000.00 |
| | 09/21/2009 | 101 - Operating _____ 1274 | 2347 | $175,000.00 |
| | 09/23/2009 | 101 - Operating Commerce 1274 | 3028 | $70,000.00 |
| | 09/24/2009 | 101 - Operating Commerce 1274 | 2415 | $387,333.00 |
| | 09/30/2009 | 101 - Operating Commerce 1274 | 3029 | $225,000.00 |
| | 10/06/2009 | 101 - Operating Commerce 1274 | 3613 | $490,000.00 |
| | 10/06/2009 | 101 - Operating Commerce 1274 | 3961 | $222,355.00 |
| | 10/08/2009 | 101 - Operating Commerce 1274 | 1980 | $250,000.00 |
| | 10/13/2009 | 101 - Operating Commerce 1274 | 2416 | $293,339.00 |
| | 10/13/2009 | 101 - Operating Commerce 1274 | 2115 | $62,500.00 |
| | 10/13/2009 | 101 - Operating Commerce 1274 | 3030 | $200,000.00 |
| | 10/16/2009 | 101 - Operating Commerce 1274 | 2127 | $50,000.00 |
| | 10/23/2009 | 101 - Operating Commerce 1274 | 3614 | $263,000.00 |
| **Onyx Capital Total** | | | | **$6,483,764.00** |
| Skis Ventures LLC | 08/17/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $150,000.00 |
| | 09/16/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $150,000.00 |
| | 10/16/2009 | T 9  Trust 9  6861076906  RRA S | Wire | $150,000.00 |
| **Skis Ventures LLC Total** | | | | **$450,000.00** |
| Alexa Funding, LLC | 08/03/2009 | 101 - Operating Commerce 1274 | 2352 | $150,000.00 |
| | 08/12/2009 | 101 - Operating Commerce 1274 | 2349 | $50,000.00 |
| | 08/24/2009 | 101 - Operating Commerce 1274 | 2350 | $110,000.00 |
| | 09/07/2009 | 101 - Operating Commerce 1274 | 2351 | $40,000.00 |
| **Alexa Funding, LLC Total** | | | | **$350,000.00** |
| **Total - Mike Szafranski and Related Entities** | | | | **$32,796,263.98** |