UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.[1]   Case No. 09-34791-BKC-RBR
                                       Chapter 11
    Debtor.
_____/

HERBERT STETTIN, Chapter 11 Trustee,

    Plaintiff,                        Adv. Pro. No. _____-BKC-RBR-A
v.

RUSSELL ADLER and KATIE ADLER,

    Defendants.
_____/

**COMPLAINT AGAINST RUSSELL ADLER AND KATIE ADLER TO
AVOID AND RECOVER FRAUDULENT TRANSFERS OF PROPERTY[2]**

    Plaintiff, Herbert Stettin, the duly appointed and acting Chapter 11 Trustee ("Trustee" or "Plaintiff") for the estate of Rothstein Rosenfeldt Adler, P.A., hereby sues the Defendants, Russell Adler ("Adler") and Katie Adler, pursuant to 11 U.S.C. §§ 544, 548 and 550, and Rule 7001 of the Federal Rules of Bankruptcy Procedure, to avoid and recover fraudulent transfers and for other claims, and in support thereof, states:

**JURISDICTION AND VENUE**

    1.    This adversary proceeding is brought by the Trustee to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 550 and *Fla. Stat*. §§ 726.105 and

---

[1] The address and last four digits of the taxpayer identification number of the debtor is 401 E. Las Olas Blvd. Suite 2270, Fort Lauderdale, FL 33301 (TIN 7961).

[2] Plaintiff reserves the right to bring additional claims against Adler and nothing contained herein shall be deemed a waiver of any rights or causes of action that the Trustee or the estate may have against Adler.

726.106.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

3. This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A) and (H).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES AND PROCEDURAL BACKGROUND

5. On November 10, 2009, an Involuntary Petition for Relief was filed against Rothstein Rosenfeldt Adler P.A, the debtor in the above-captioned case (the "Debtor" or "RRA") (DE#1). On November 25, 2009, a consent to the Involuntary Petition for Relief was filed by RRA (DE# 57). On November 30, 2009, this Court entered an Order for Relief on the filing of a Petition for Involuntary Bankruptcy (DE# 66).

6. On November 20, 2009, the United States Trustee's Office filed a Notice Appointing Plaintiff Stettin as Trustee of RRA (DE #35). On November 25, 2009, this Court entered an order ratifying the appointment of Plaintiff Stettin as Trustee (DE #55.)

7. Defendant Adler is an individual residing in Broward County, Florida. Adler is a former employee of RRA and an attorney, authorized to practice law in the State of Florida. Adler received the transfers set forth herein from RRA within four years of the filing of the Petition Date.

8. Defendant Katie Adler is an individual residing in Broward County, Florida. Adler and is the wife of Adler. Katie Adler received the transfers set forth herein from RRA within four years of the filing of the Petition Date.

9. RRA is a Florida professional services corporation, formed on February 7, 2002 by Scott W. Rothstein ("Rothstein") and Stuart Rosenfeldt ("Rosenfeldt"). Although the firm's

practice was originally focused on labor and employment law, it expanded to other areas of law, including intellectual property, corporate law, mergers and acquisitions, real estate, criminal defense, class actions, mass torts and personal injury claims. At its height, RRA employed over 70 lawyers, with total staff of over 150 people on payroll, maintaining offices in Florida, New York and Venezuela.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

10. Prior to November 2, 2009, Rothstein was the Chief Executive Officer, managing partner and a 50% shareholder of RRA. Rosenfeldt was the President and also a 50% shareholder of RRA.

11. On November 2, 2009, Rosenfeldt initiated a lawsuit in Broward County Circuit Court (Case No. 09-059301)("Receivership Action") on behalf of RRA and himself, for judicial dissolution of the firm, an accounting, and appointment of a receiver, pursuant to Florida Statutes §§ 607.1430(3), 607.1431 and 607.1432.

12. In the Receivership Action complaint ("Rosenfeldt Complaint"), Adler and RRA alleged that Rothstein had engaged in multiple wrongful acts. The Rosenfeldt Complaint pleads that Rothstein orchestrated a substantial misappropriation of funds from investor trust accounts that made use of RRA's name. The Rosenfeldt Complaint also alleges that the investment business created and operated by Rothstein centered around the fraudulent sale of interests in structured settlements and that "various funds unrelated to the practice of law cannot be accounted for."

13. As to these alleged structured settlements, Rothstein falsified the existence of the (i) client, (ii) settlement, (iii) settlement proceeds, (iv) documents, and misappropriated the investor funds to himself and to a series of business ventures which are the alter ego of RRA, now commonly known as the RRA Entities.

14. As part of his Ponzi Scheme to defraud investors, Rothstein utilized the RRA offices, RRA lawyers and staff, and his position as an attorney and as an owner and officer of RRA, in addition to his relationship with existing clients of RRA and RRA's financial institution accounts, in order to effectuate the fraudulent sale of fictitious structured settlements.

15. Indeed, while the scheme was ongoing, RRA rapidly grew from a 7 attorney law firm in 2002 to 70 attorneys and 80 support staff in 2009. Prior to 2005, Rothstein was a virtual unknown in legal, political, and charitable circles. Subsequent to 2005, Rothstein and RRA gained the reputation of being a highly visible law firm making direct and indirect significant political and charitable contributions to both gain influence and give the appearance of a successful law firm.

16. Upon information and belief, through the use and means of RRA, Rothstein bilked investors out of an estimated to $1.2 billion and $1.6 billion.

17. Further, the Federal Bureau of Investigation and other federal agencies have been investigating Rothstein and others in connection with the Ponzi scheme. On November 9, 2009, the United States of America ("USA") filed a Verified Complaint for Forfeiture *In Rem* against several real properties that appear to be connected to Rothstein. *United States v. Various Real Properties Purchased by or With Or On Behalf of Scott W. Rothstein*, 09-cv-61780-WJZ.

18. The Forfeiture Complaint pled that the "criminal investigation has disclosed that the investments purportedly underlying the… investment scheme never existed. The investigation has established that no such settlement agreements ever existed and the entire investment scheme was a fraud." Subsequently, an Amended Forfeiture Complaint was filed by the USA.

**ALLEGATIONS SPECIFIC TO ADLER**

19.     At all times material hereto, (a) RRA's corporate and trade name included Adler's and RRA held him out to the public both as a shareholder and partner.  During the course of his employ at RRA, Adler performed certain management functions at the law firm.

20.     From 2006 though 2009, Adler received compensation or payments from RRA in various forms, which the Trustee now seeks to recover.

21.     The first set of payments the Trustee seeks to recover includes reimbursement for overpayment of Adler's base salary, bonus and/or other distributions paid by RRA.

22.     In 2007, Adler's gross salary was $317,307.59, which should have been no more than $300,000 maximum, such that Trustee claims a 2007 compensation overpayment of $17,307.59.

23.      In 2008, Adler's gross salary was $379,999.78 and he received a bonus or other distribution of $425,000, which cumulatively should have been no more than $300,000 maximum, such that Trustee claims a 2008 compensation overpayment of $504,999.78.

24.      For the first ten months of 2009, after which RRA ceased to operate, Adler's gross salary was $307,692.14, which should have been no more than $250,000 maximum, such that Trustee claims a 2009 compensation overpayment of $57,692.14.

25.     The payments made to Adler for salary, bonus or other distributions are collectively referred to below as the "Compensation Payments."  The Trustee challenges the reasonableness of these Compensation Payments for each of these years, based upon various factors relevant to the operation and profitability of law firms and payment of attorney compensation. The amounts challenged as being overpayments of compensation for the 4-year period subject to this lawsuit were unreasonable and improper.

26.     The second set of payments the Trustee seeks to recover includes reimbursements for payments made by RRA to Adler that were classified in RRA's financial records as "loans" and are referred to below as the "Adler Loans." The Adler Loans comprise two components, the first of which are recorded cash loan outlays to Adler in: (a) 2006 of $25,000, (b) 2007 of $20,000, (c) 2008 of $65,000, all of which amounts remain unpaid, and (d) 2009 of $110,000 which $70,000 remains unpaid, and all are immediately due and payable with accrued interest.

27.     The second component of the Adler Loans is a loan Adler negotiated between Adler and Rothstein, for Adler and his wife, Katie, to purchase a coop apartment at 290 West 11th Street, Unit 1C, New York, New York (the "Apartment"), shortly before the Ponzi Scheme was revealed. On or about August 12, 2009, $475,000 of RRA funds paid through two Gibralter Bank cashiers checks funded the purchase of the Apartment and it was contemporaneously booked in the RRA financial records as a loan. Adler's acknowledgment that the loan debt was due RRA, he signed two documents titled, "Authorization to Deduct Money From Payroll Check For Payroll Cash Advance," copies of which are attached hereto as Exhibits A and B.  These authorizations total $475,000 in payments, with one authorization in the amount of $47,500 and a corresponding promissory note payable to RRA in that amount, attached as Exhibit C, that covered the down payment on the Apartment.  The second authorization of $427,500 paid the balance of the purchase price, but notably, Adler and his wife executed a promissory note on August 12, 2009 in favor of an entity known as RSA11th Street LLC in the amount of $427,500, instead of in favor of RRA.  Finally, at the same time that Adler and Rothstein struck their deal on Adler's loan to purchase the Apartment, Adler received a $100,000 per year salary increase. The increase was not tied to merit, but as a means for Adler to personally acquire the Apartment for free and at RRA's expense.

28. The total unpaid amount of Adler Loans, net of all repayment checks, as of the date hereof is $655,000. The payments described in the preceding paragraphs provided no benefit to RRA and thus, RRA received less than a reasonably equivalent value in exchange for the unpaid Adler Loans.

29. The Compensation Payments in the aggregate amount of $579,999.51 and the unpaid Adler Loans in the aggregate amount of $655,000 are collectively referred to below as the "Transfers."

30. Katie Adler was the mediate transferee of the Transfer related to the Apartment. This payment for the benefit of Katie Adler provided no benefit to RRA, and thus, RRA received less than a reasonably equivalent value in exchange for this Transfer. The Trustee only seeks to avoid as a fraudulent transfer the funds related to the Apartment.

## COUNT I – FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE

31. The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

32. The Transfers were made to Adler and Katie Adler within four years of the Petition Date. Those Transfers that were made between November 30, 2007 and November 30, 2009 (the "Two Year Transfers") were made by RRA within two years prior to the date that the Involuntary Petition was filed on November 10, 2009.

33. The Two Year Transfers were made by RRA to Adler and Katie Adler with the actual intent to hinder, delay or defraud an entity to which RRA was or became, on or after the date such transfers were made, indebted.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a Judgment:

  a. Declaring the Two Year Transfers to have been fraudulent transfers pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

  b. Avoiding the Two Year Transfers made to Adler and Katie Adler as fraudulent transfers in violation of § 548(a)(1)(A) of the Bankruptcy Code; and

  c. Granting such other and further relief as may be just and proper.

**COUNT II – FRAUDULENT TRANSFERS**
**PURSUANT TO SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE**

34. The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

35. The Two Year Transfers were made by RRA within two years prior to the Petition Date.

36. RRA received less than reasonably equivalent value in exchange for the Two Year Transfers, and

  a. was insolvent on the dates that the transfers were made or was rendered insolvent because of those transfers;

  b. was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with RRA was an unreasonably small capital; or

  c. RRA intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, Plaintiff respectfully requests that the Court to enter an Judgment:

  a. Declaring the above referenced payments to Adler and Katie Adler to have been fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code;

      b.    Avoiding the Two Year Transfers made to Adler and Katie Adler as fraudulent transfers in violation of § 548(a)(1)(B) of the Bankruptcy Code; and

      c.    Granting such other and further relief as may be just and proper.

### COUNT III – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(a) OF THE FLORIDA STATUTES

37.    The allegations set forth in paragraphs 1 through 28 are realleged as if fully restated herein.

38.    Within the four year period preceding the Petition Date, RRA made the Transfers to Adler and Katie Adler.

39.    The Transfers were made by RRA with the actual intent to hinder, delay or defraud creditors of RRA.

40.    The Transfers may be avoided under 11 U.S.C. §544 and *Fla. Stat.* §726.105(1)(a).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a Judgment:

      a.    Declaring the above referenced payments to Adler and Katie Adler to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.105(1)(a);

      b.    Avoiding the Transfers made to Adler and Katie Adler as fraudulent transfers in violation of *Fla. Stat.* § 726.105(1)(a); and

      c.    Granting such other and further relief as may be just and proper.

### COUNT IV – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.105(1)(b) OF THE FLORIDA STATUTES

41.    The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

42. Within the four year period preceding the Petition Date, RRA made the Transfers to Adler and Katie Adler.

43. RRA made the Transfers without receiving reasonably equivalent value in exchange for the Transfers, and

    a. was engaged or was about to engage in a business or a transaction for which the remaining assets of RRA were unreasonably small in relation to its business or transaction; or

    b. intended to incur, or believed it would incur, debts that would be beyond RRA's ability to pay as they became due.

44. The Transfers may be avoided under 11 U.S.C. § 544 and *Fla. Stat.* §726.105(1)(b).

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a Judgment:

    a. Declaring the above referenced payments to Adler and Katie Adler to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.105(1)(b);

    b. Avoiding the Transfers made to Adler and Katie Adler as fraudulent transfers in violation of *Fla. Stat.* § 726.105(1)(b); and

    c. Granting such other and further relief as may be just and proper.

### COUNT V – AVOIDANCE OF FRAUDULENT TRANSFERS PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE AND SECTION 726.106(1) OF THE FLORIDA STATUTES

45. The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

46. Within four year period preceding the Petition Date, RRA made the Transfers to Adler and Katie Adler.

47. RRA made the Transfers without receiving reasonably equivalent value in exchange for the Transfers.

48. RRA was insolvent at that times of the Transfers or became insolvent as a result of thereof, and a creditor(s) existed at the time of each of the Transfers.

49. The Transfers may be avoided under 11 U.S.C. § 544 and *Fla. Stat*. §726.106(1).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a Judgment:

    a. Declaring the above referenced payments to the Adler and Katie Adler to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.106(1);

    b. Avoiding the Transfers made to Adler and Katie Adler as fraudulent transfers in violation of *Fla. Stat*. § 726.106(1); and

    c. Granting such other and further relief as may be just and proper.

### COUNT VI – RECOVERY OF PROPERTY PURSUANT TO SECTION 550 OF THE BANKRUPTCY CODE

50. The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

51. The transfers referenced above are avoidable by Plaintiff pursuant to pursuant to 11 U.S.C. §§ 544 and 548 and as a result, such payments are recoverable by Plaintiff pursuant to 11 U.S.C. § 550.

52. Adler was the initial transferee of the above referenced payments and/or the entity for whose benefit such transfers were made.

53. Katie Adler was the mediate transferee of the payments related to the Apartment for whose benefit such transfers were made.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment:

      a.      Declaring Adler to be the initial transferee and/or the entity for whose benefit the above referenced payments were made;

      b.      Declaring Katie Adler to be the mediate transferee and/or the entity for whose benefit the above referenced payments were made;

      c.      Directing Adler to turnover the above referenced fraudulent payments, plus interest at the applicable federal statutory rate, and reasonable attorneys' fees and expenses to the extent permissible by applicable law to Plaintiff; and

      d.      Granting such other and further relief as may be just and proper.

## COUNT VII – FOR BREACH OF FIDUCIARY DUTY

54. The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

55. At all times material hereto, as an employee of RRA, having held himself out to the public as a partner of RRA and having performed certain management functions, Adler owed RRA fiduciary duties, including a duty of loyalty, which includes an obligation to account for RRA property.

56. Adler has breached his fiduciary duty by (a) effectively converting the amount of the Apartment loan to his personal own use and (b) signing documents that purport to grant a security interest in the Apartment to RSC 11th Street, LLC, instead of to RRA, which furnished the funds for the Apartment loan, (c) conspiring with Rothstein to structure the Apartment transaction by arranging a non-merit based salary increase of $100,000 a year solely to cover the Apartment debt service, the result intended that Adler would get the Apartment for free, (d) taking purported loans from RRA, with no intention of ever repaying same, evidenced by the fact that no loan repayments were made, which is therefore a conversion of RRA funds.

57. As a result of Adler's breaches of fiduciary duty, RRA has been damaged in an approximate amount of $1,234,999.51 plus pre-judgment interest

58. At all times material hereto, Adler's actions were willful and wanton and occurred with total disregard for the rights of RRA, thus entitling RRA to an award of punitive damages.

**WHEREFORE**, Plaintiff prays for entry of a judgment in his favor and against Defendant Russell Adler for damages, punitive damages and all such other relief as this court deems just and appropriate.

## COUNT VIII – FOR DEFAULT ON PROMISSORY NOTE

59. The allegations set forth in paragraphs 1 through 30 are realleged as if fully restated herein.

60. On August 12, 2009 Adler and Katie Adler executed a promissory note (the "Note") in favor of RRA in the amount of $47,500, a copy of which is attached as Exhibit C.

61. The Note is in default as payment and all amounts due thereunder are now due and payable.

62. The Note provides that RRA is entitled to recover its reasonable attorneys fees and costs in collection of the Note.

63. RRA is damaged in the amount of $47,500 plus interest, attorneys fees and costs.

WHEREFORE, Plaintiff demands judgment against Russell Adler and Katie Adler, jointly and severally, in the amount of $47,500, plus interest attorneys fees, costs and all such other relief as this Court deems just and appropriate.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(a).

DATED this 8th day of February 2009.

        **BERGER SINGERMAN, P.A.**
        Attorneys for Trustee, Herbert Stettin
        350 East Las Olas Blvd.
        Suite 1000
        Fort Lauderdale, Florida 33301
        Direct Telephone: (954) 712-5138
        Main Line: (954) 525-9900
        Facsimile: (954) 523-2872

        By: _/s/ Paul Steven Singerman_
            Paul Steven Singerman, Esq.
            Fla. Bar No. 378860
            singerman@bergersingerman.com
            Charles H. Lichtman, Esq.
            Fla. Bar No. 501050
            clichtman@bergersingerman.com

2606140-1

## AUTHORIZATION TO DEDUCT MONEY FROM PAYROLL CHECK FOR PAYROLL CASH ADVANCE

I, Russell S. Adler, hereby authorize Rothstein Rosenfeldt Adler to deduct from my earnings twenty-four (24) equal monthly payments in the amount of $2,213.87 to pay off FORTY SEVEN THOUSAND FIVE HUNDRED AND XX/00 ($47,500.00) dollars at an interest rate of ELEVEN (11%) percent per annum. Said deductions will commence on the first payroll period of September 2009 through and including the first payroll period in August 2011.

_____
Russell S. Adler

State of Florida     )
                     ) SS.:
County of Broward    )

On the 12 day of August in the year 2009, before me, the undersigned, a notary public in and for said state, personally agreed RUSSELL S. ADLER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.



Notary Public State of Florida
Christina Palmer
My Commission DD686252
Expires 06/22/2011

_____
Notary Public



1021.78 per paycheck

9/2/09



D. Boden

EXHIBIT A

## AUTHORIZATION TO DEDUCT MONEY FROM PAYROLL CHECK FOR PAYROLL CASH ADVANCE



I, Russell S. Adler, hereby authorize Rothstein Rosenfeldt Adler to deduct from my earnings sixty (60) monthly payments in the amounts set forth on Exhibit A to pay the obligations under that certain promissory note in the principal amount of Four Hundred Twenty Seven Thousand Five Hundred Dollars ($427,500) attached as Exhibit B. Said deductions will commence on the first payroll period of September 2009 through and including the first payroll period of September 2014.

_____
Russell S. Adler

State of Florida )
                          ) SS.:
County of Broward )

On the 12 day of August in the year 2009, before me, the undersigned, a notary public in and for said state, personally agreed RUSSELL S. ADLER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.





Notary Public State of Florida
Christina Palmer
My Commission DD686252
Expires 06/22/2011

$2291.50

292.931.31
÷ 59
─────────
4964.93

X _____
9/2/09

D. Boden

**EXHIBIT B**

# PROMISSORY NOTE

$47,500.00                                                                    August 12, 2009

      **FOR VALUE RECEIVED,** the undersigned, **RUSSELL S. ADLER AND KATIE B. ADLER,** (hereafter called "Borrower or Maker") promises to pay to the order of **ROTHSTEIN ROSENFELDT ADLER** (hereafter called "Lender") the principal sum of FORTY SEVEN THOUSAND FIVE HUNDRED AND XX/A00 ($47,500.00) Dollars, with interest thereon, at the rate of ELEVEN (11%) percent per annum as hereinafter provided:

      Commencing September 4th, 2009 and every subsequent first pay period of every calendar month for the next twenty-four (24) months, payments in the amount of TWO THOUSAND TWO HUNDRED THIRTEEN AND 87/100 ($2,213.87) dollars per month. Said payments are to be deducted from Russell S. Adler's earnings from Rothstein Rosenfeldt Adler. (SEE ATTACHED PAYMENT SCHEDULE ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF).

      All payments of principal and/or interest shall be paid to Lender at such place as the holder hereof may from time to time designate in writing, in lawful money of the United States of America, which shall be legal tender for public and private debts at the time of payments, without deduction for or on account of any present or future taxes, duties or other charges levied or imposed on this Note or the proceeds hereof, or upon the maker or holder hereof by any government, or any instrumentality, authority or political subdivision thereof.

      If any payment of principal and/or interest shall not be paid within five (5) days of its due date shall be subject to a late charge equal to five (5%) percent of the amount due and at Holder's election the entire principal sum and interest at the highest legal rate per annum shall become due and payable at once without notice and demand at the option of the holder of this Note.

      This Note may be prepaid in whole or in part at any time without penalty.

      The maker of this Note further waives demand, notice of non-payment, presentment for payment, protest, notice of protest and notice of extension of time of payment and consent that the payment of any installment of principal and/or interest may be extended without notice, and in case suit shall be brought for the collection hereof, or the same has to be collected upon demand of any attorney, to pay reasonable attorneys' fees for making such collection.

      Any action regarding this Note shall be brought in Broward County, Florida.

      Notwithstanding any provision in this Note or in any instrument now or hereafter given to



EXHIBIT C

secure this Note, the total liability for payments in the nature of interest shall not exceed the maximum rate ("Maximum Rate") permitted under the laws of the State of Florida. However, in no event shall the Maximum Rate be less than the Maximum Rate in effect as of the date of this Note.

All of the terms of this Note shall inure to the benefit of Lender and its successors and assigns and shall be binding upon Borrower and his heirs, executors, administrators, personal representatives, successors and assigns, jointly and severally.

Maker represents that is has had an opportunity to consult with independent legal counsel, other than Maker, and is not relying upon any other attorney or Rothstein Rosenfeldt Adler in entering into this Note.

If Russell S. Adler ceases to be an employee of Rothstein Rosenfeldt Adler, Lender may declare the entire amount due under the Note immediately due and payable. Lender is not obligated to notify Borrower or demand payment from Borrower if Lender decides to accelerate payment.

**MAKER:**

_____
RUSSELL S. ADLER, a natural person

State of Florida    )
                    ) SS.:
County of Broward   )

On the 12 day of August in the year 2009, before me, the undersigned, a notary public in and for said state, personally agreed RUSSELL S. ADLER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

Notary Public State of Florida
Christina Palmer
My Commission DD686252
Expires 06/22/2011

Page 2 of 3

_____
KATIE B. ADLER, a natural person

State of Florida        )
                        ) SS.:
County of Broward       )

On the 12 day of August in the year 2009, before me, the undersigned, a notary public in and for said state, personally agreed KATIE B. ADLER, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

Notary Public State of Florida
Christina Palmer
My Commission DD686252
Expires 06/22/2011

_____
Notary Public
Christina Palmer

Page 3 of 3