UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    CASE NO.: 09-34791-BKC-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,[1]        CHAPTER 11

      Debtor.
_____/

HERBERT STETTIN, Chapter 11 Trustee,

      Plaintiff,                                    Adv. Pro. No. _____-BKC-RBR-A

v.

STUART ROSENFELDT and SUZANNE
ROSENFELDT,

      Defendants.
_____/

**COMPLAINT AGAINST STUART ROSENFELDT AND SUZANNE ROSENFELDT
TO AVOID AND RECOVER FRAUDULENT TRANSFERS OF PROPERTY [2]**

      Plaintiff, Herbert Stettin, the duly appointed and acting Chapter 11 Trustee ("Trustee" or

"Plaintiff") for the estate of Rothstein Rosenfeldt Adler P.A., hereby sues the Defendants, Stuart

Rosenfeldt ("Rosenfeldt") and Suzanne Rosenfeldt, pursuant to 11 U.S.C. §§ 544, 548 and 550,

and Rule 7001 of the Federal Rules of Bankruptcy Procedure, to avoid and recover fraudulent

transfers and for other claims, and in support thereof, states:

**JURISDICTION AND VENUE**

      1.    This adversary proceeding is brought by the Trustee to avoid and recover

fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548, 550 and *Fla. Stat*. §§ 726.105 and

---

[1] The address and last four digits of the taxpayer identification number of the Alleged Debtor, Rothstein Rosenfeldt
Adler, P.A., is Las Olas City Centre, 401 E. Las Olas Blvd, Suite 2270, Fort Lauderdale, Florida 33301 (TIN 7961).
[2] Plaintiff reserves the right to bring additional claims against Rosenfeldt and nothing contained herein shall be
deemed a waiver of any rights or causes of action that the Trustee or the estate may have against Rosenfeldt.

726.106.

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

3.      This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157(b)(2)(A) and (H).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES AND PROCEDURAL BACKGROUND

5.      On November 10, 2009, an Involuntary Petition for Relief was filed against Rothstein Rosenfeldt Adler P.A, the debtor in the above-captioned case (the "Debtor" or "RRA") (DE#1).  On November 25, 2009, a consent to the Involuntary Petition for Relief was filed by RRA (DE# 57). On November 30, 2009, this Court entered an Order for Relief on the filing of a Petition for Involuntary Bankruptcy (DE# 66).

6.      On November 20, 2009, the United States Trustee's Office filed a Notice Appointing Plaintiff Stettin as Trustee of RRA (DE #35).  On November 25, 2009, this Court entered an order ratifying the appointment of Plaintiff Stettin as Trustee (DE #55.)

7.      Defendant Rosenfeldt is an individual residing in Palm Beach County, Florida. Rosenfeldt is a former employee of RRA and an attorney, authorized to practice law in the State of Florida.  Rosenfeldt received the transfers set forth herein from RRA within four years of the filing of the Petition Date.

8.      Defendant Suzanne Rosenfeldt is an individual residing in Palm Beach County, Florida and is the wife of Rosenfeldt. Suzanne Rosenfeldt received the transfers set forth herein from RRA within four years of the filing of the Petition Date.

9.      RRA is a Florida professional services corporation, formed on February 7, 2002 by Scott W. Rothstein ("Rothstein") and Rosenfeldt. Although  the firm's practice was originally

2

focused on labor and employment law, it expanded to other areas of law, including intellectual property, corporate law, mergers and acquisitions, real estate, criminal defense, class actions, mass torts and personal injury claims.  At its height, RRA employed over 70 lawyers, with total staff of over 150 people on payroll, maintaining offices in Florida, New York and Venezuela.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

10.     Prior to November 2, 2009, Rothstein was the Chief Executive Officer, managing partner and a 50% shareholder of RRA.   Rosenfeldt was the President and also a 50% shareholder of RRA.

11.     On November 2, 2009, Rosenfeldt initiated a lawsuit in Broward County Circuit Court (Case No. 09-059301)("Receivership Action") on behalf of RRA and himself, for judicial dissolution of the firm, an accounting, and appointment of a receiver, pursuant to Florida Statutes §§ 607.1430(3), 607.1431 and 607.1432.

12.     In the Receivership Action complaint ("Rosenfeldt Complaint"), Rosenfeldt and RRA alleged that Rothstein had engaged in multiple wrongful acts.  The Rosenfeldt Complaint pleads that Rothstein orchestrated a substantial misappropriation of funds from investor trust accounts that made use of RRA's name.   The Rosenfeldt Complaint also alleges that the investment business created and operated by Rothstein centered around the fraudulent sale of interests in structured settlements and that "various funds unrelated to the practice of law cannot be accounted for."

13.     As to these alleged structured settlements, Rothstein falsified the existence of the (i) client, (ii) settlement, (iii) settlement proceeds, (iv) documents, and misappropriated the investor funds to himself and to a series of business ventures which are the alter ego of RRA, now commonly known as the RRA Entities.

3

14.     As part of his Ponzi Scheme to defraud investors, Rothstein utilized the RRA offices, RRA lawyers and staff, and his position as an attorney and as an owner and officer of RRA, in addition to his relationship with existing clients of RRA and RRA's financial institution accounts, in order to effectuate the fraudulent sale of fictitious structured settlements.

15.     Indeed, while the scheme was ongoing, RRA rapidly grew from a 7 attorney law firm in 2002 to 70 attorneys and 80 support staff in 2009.  Prior to 2005, Rothstein was a virtual unknown in legal, political, and charitable circles.  Subsequent to 2005, Rothstein and RRA gained the reputation of being a highly visible law firm making direct and indirect significant political and charitable contributions to both gain influence and give the appearance of a successful law firm.

16.     Upon information and belief, through the use and means of RRA, Rothstein bilked investors out of an estimated to $1.2 billion and $1.6 billion.

17.     Further, the Federal Bureau of Investigation and other federal agencies have been investigating Rothstein and others in connection with the Ponzi scheme. On November 9, 2009, the United States of America ("USA") filed a Verified Complaint for Forfeiture *In Rem* against several real properties that appear to be connected to Rothstein. *United States v. Various Real Properties Purchased by or With Or On Behalf of Scott W. Rothstein*, 09-cv-61780-WJZ.

18.     The Forfeiture Complaint pled that the "criminal investigation has disclosed that the investments purportedly underlying the… investment scheme never existed.   The investigation has established that no such settlement agreements ever existed and the entire investment scheme was a fraud."   Subsequently, an Amended Forfeiture Complaint was filed by the USA.

## ALLEGATIONS SPECIFIC TO ROSENFELDT

19.    At all times from the formation of RRA with Rothstein, in addition to owning a 50% share of RRA with Rothstein, during the course of his employ at RRA, Rosenfeldt (a) performed certain management functions at the law firm, (b) RRA's corporate and trade name included Rosenfeldt's and RRA held him out to the public both as a shareholder and partner.

20.    From 2006 though 2009, Rosenfeldt received compensation or payments from RRA in various forms, which the Trustee now seeks to recover.

21.    The first set of payments the Trustee seeks to recover includes reimbursement for overpayment of Rosenfeldt's base salary, bonus and/or other distributions paid by RRA.

22.    In 2006, Rosenfeldt's gross salary was $497,721.09 and he received other distributions of  $101,177.60, which cumulatively should have been no more than $300,000 maximum, such that Trustee claims a 2006 compensation overpayment of $298,898.69.

23.    In 2007, Rosenfeldt's gross salary was $923,076.96 and he received other distributions of  $314,000, which cumulatively should have been no more than $300,000 maximum, such that Trustee claims a 2007 compensation overpayment of $937,076.96

24.     In 2008, Rosenfeldt's gross salary was $1,000,000 and he received a bonus of $360,517.55 and other distributions of $4,650,000, which cumulatively should have been no more than $300,000 maximum, such that Trustee claims a 2008 compensation overpayment of $6,010,517.55.

25.     For the first ten months of 2009, after which RRA ceased to operate, Rosenfeldt's gross salary was $846,153.88 and he received other distributions of $100,000, which cumulatively should have been no more than $250,000 maximum, such that Trustee claims a 2009 compensation overpayment of $696,153.88.

26.     The payments made to Rosenfeldt for salary, bonus or other distributions are collectively referred to below as the "Compensation Payments."  The Trustee challenges the reasonableness of these Compensation Payments for each of these years, based upon various factors related to the operation and profitability of law firms and attorney compensation structure. The amounts challenged as being overpayments of compensation for the 4-year period subject to this lawsuit were unreasonable and improper.

27.     The fact that significant amounts of alleged bonus or other payments to Rosenfeldt are not related to actual earned compensation ties to the timing of when Rosenfeldt received certain of such payments, and how he thereafter paid out similar amounts of money as political contributions.  For example, and demonstrating it was part of a scheme to funnel cash out of RRA to use for political contributions and not to pay legitimate earned income, on May 19, 2008, Rosenfeldt, Russell Adler ("Adler") and Steven Lippman ("Lippman") each received an alleged bonus of $140,000 from RRA.  On May 28, 2008 Rosenfeldt made a donation of $140,000 to the John McCain presidential campaign.  Also on May 28, 2008, Lippman and his wife Marcy, made payments to the same campaign of $65,000 and $60,000 respectively.  On June 12, 2008, Adler contributed $80,000 to the McCain campaign and his wife Katie likewise contributed $39,200.  Thereafter, and through the balance of 2008 and much of 2009, Rosenfeldt, Adler and Lippman each received periodic alleged compensation payments from RRA and they (and/or their wives) then made a series of political contributions that trace close to receipt of the monies (which was received both before and after the contributions) with similar, if not identical payments then being made to the same candidates or political parties, including the McCain campaign, the Florida Republican Party, the Ohio Republican Party, the Pennsylvania Republican Party, the Missouri Republican Party, the Michigan Republican Party and Governor

Charlie Crist.  The bonus or other compensation payments that were used to pay for political contributions provided no consideration to RRA and thus, RRA received less than a reasonably equivalent value in exchange for these payments.

28.    The second set of payments the Trustee seeks to recover includes reimbursements for personal expenses that improperly benefited both Rosenfeldt and Suzanne Rosenfeldt. During the years 2006 through 2009, on a monthly basis, Rosenfeldt had unfettered personal use of the RRA American Express card.  During this time, for his and his wife's benefit, Rosenfeldt improperly charged to RRA over $1 million in purely personal expenses, including $439,337.45 just from December 3, 2008 through June 18, 2009.  Examples of Rosenfeldt's personal expenses paid by RRA that personally benefitted Rosenfeldt and Suzanne Rosenfeldt include: 72 pieces of jewelry purchased from J.R. Dunn Jewelers, numerous local hotel room charges, furniture for their home, vacations and personal travel, exotic reptiles, home repairs, athletic club charges, men's and women's clothing, groceries, charitable contributions, personal meals, general household items and other items ("Personal Expense Payments"). RRA received less than reasonably equivalent value in exchange for these expense reimbursements.

29.    The third set of payments the Trustee seeks to recover includes reimbursements for payments made by RRA to Rosenfeldt which were classified in RRA's financial records as "loans" and are referred to below as the "Rosenfeldt Loans."  These payments were reflected by numerous checks written by RRA to Rosenfeldt from the RRA operating account, often in random dollar amounts.  The loan checks were sometimes issued on the same day with a loan check in numbered sequence to another RRA partner, Steven Lippman ("Lippman").  Typically, Rosenfeldt would deposit each check into his personal bank account, then shortly after the deposit by Rosenfeldt of the RRA check, he would write a check out that personal account

payable to RRA in an amount less than the check RRA had given him.  The Rosenfeldt Loans totaled $8,960,310.75.

30.     In some instances, after Rosenfeldt received a check from RRA, and rather than repaying RRA, he wrote the return check to third parties including: (a) at least one check to Kendall Sports Bar on June 19, 2006 in the amount of $61,500, (b) numerous checks to Russell Adler in amounts of $1000 to $5000 referencing "loan."

31.     The total unpaid amount of Rosenfeldt Loans, net of all repayment checks is $458,617.10.  The payments described in the preceding paragraph provided no consideration to RRA and thus, RRA received less than a reasonably equivalent value in exchange for the unpaid Rosenfeldt Loans.

32.     The fourth repayment Trustee seeks from Rosenfeldt is $24,963.54 representing a payment made by Lippman to Rosenfeldt on December 29, 2006, out of the Tescher Lippman & Valinsky Operating Account, now commonly known as the "Nest Egg Account."  This payment is referenced below as the "Nest Egg Transfer."   On that same date, in sequential numbered checks out of the Nest Egg Account, Rothstein was paid $28,963.55 and Lippman was also paid $24,963.54.  The funds in the Nest Egg Account were the property of RRA and RRA received less than reasonably equivalent value in exchange for the Nest Egg Transfer.

33.     The Compensation Payments in the aggregate amount of $7,942,646; the Personal Expense Payments in the aggregate amount of $1,000,000; the unpaid Rosenfeldt Loans in the aggregate amount of $458,617.10, and the Nest Egg Transfer of $24,963.54 are collectively referred to below as the "Transfers."

34.     In certain instances, whether a payment was made to Rosenfeldt as compensation or as a loan, he thereafter made: (a) over 50 other checks or transfers payable to "Cash" or

himself in amounts ranging from $500 up to $50,000, and (b) at least 30 checks or transfers to his wife, Suzanne Rosenfeldt totaling at least $690,000, which included four joint transfers, totaling $250,000.

35.    Suzanne Rosenfeldt was the mediate transferee of many of the Transfers, specifically including the Personal Expense payments and at least the thirty transfers identified in the preceding paragraph.  These payments for the benefit of or to Suzanne Rosenfeldt provided no consideration to RRA and thus, RRA received less than a reasonably equivalent value in exchange for these transfers.

## COUNT I – FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 548(a)(1)(A) OF THE BANKRUPTCY CODE

36.    The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

37.    The Transfers were made to Rosenfeldt and Suzanne Rosenfeldt within four years of the Petition Date. Those Transfers that were made between November 30, 2007 and November 30, 2009 (the "Two Year Transfers") were made by RRA within two years prior to the date that the Involuntary Petition was filed on November 10, 2009.

38.    The Two Year Transfers were made by RRA to Rosenfeldt and Suzanne Rosenfeldt with the actual intent to hinder, delay or defraud an entity to which RRA was or became, on or after the date such transfers were made, indebted.

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a Judgment:

a.    Declaring the Two Year Transfers to have been fraudulent transfers pursuant to § 548(a)(1)(A) of the Bankruptcy Code.

b.    Avoiding the Two Year Transfers made to Rosenfeldt and Suzanne Rosenfeldt as fraudulent transfers in violation of § 548(a)(1)(A) of the Bankruptcy Code; and

c.       Granting such other and further relief as may be just and proper.

## COUNT II – FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 548(a)(1)(B) OF THE BANKRUPTCY CODE

39.      The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

40.      The Two Year Transfers were made by RRA within two years prior to the Petition Date.

41.      RRA received less than reasonably equivalent value in exchange for the Two Year Transfers, and

a.       RRA was insolvent on the dates that the transfers were made or was rendered insolvent because of those transfers;

b.       RRA was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with RRA was an unreasonably small capital; or

c.       RRA intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

**WHEREFORE**, Plaintiff respectfully requests that the Court to enter an Judgment:

a.       Declaring the above referenced payments to Rosenfeldt and Suzanne Rosenfeldt to have been fraudulent transfers pursuant to § 548(a)(1)(B) of the Bankruptcy Code;

b.       Avoiding the Two Year Transfers made to Rosenfeldt and Suzanne Rosenfeldt as fraudulent transfers in violation of § 548(a)(1)(B) of the Bankruptcy Code; and

c.       Granting such other and further relief as may be just and proper.

## COUNT III – AVOIDANCE OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
## AND SECTION 726.105(1)(a) OF THE FLORIDA STATUTES

42.     The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

43.     Within the four year period preceding the Petition Date, RRA made the Transfers to Rosenfeldt and Suzanne Rosenfeldt.

44.     The Transfers were made by RRA with the actual intent to hinder, delay or defraud creditors of RRA.

45.     The Transfers may be avoided under 11 U.S.C. §544 and *Fla. Stat.* §726.105(1)(a).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a Judgment:

a.     Declaring the above referenced payments to Rosenfeldt and Suzanne Rosenfeldt to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.105(1)(a);

b.     Avoiding the Transfers made to Rosenfeldt and Suzanne Rosenfeldt as fraudulent transfers in violation of *Fla. Stat.* § 726.105(1)(a); and

c.     Granting such other and further relief as may be just and proper.

## COUNT IV – AVOIDANCE OF FRAUDULENT TRANSFERS
## PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
## AND SECTION 726.105(1)(b) OF THE FLORIDA STATUTES

46.     The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

47.     Within the four year period preceding the Petition Date, RRA made the Transfers to Rosenfeldt and Suzanne Rosenfeldt.

48. RRA made the Transfers without receiving reasonably equivalent value in exchange for the Transfers, and

a. RRA was engaged or was about to engage in a business or a transaction for which the remaining assets of RRA were unreasonably small in relation to its business or transaction; or

b. RRA intended to incur, or believed it would incur, debts that would be beyond RRA's ability to pay as they became due.

49. The Transfers may be avoided under 11 U.S.C. §544 and *Fla. Stat.* §726.105(1)(b).

**WHEREFORE**, Plaintiff respectfully requests the Court to enter a Judgment:

a. Declaring the above referenced payments to Rosenfeldt and Suzanne Rosenfeldt to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.105(1)(b);

b. Avoiding the Transfers made to Rosenfeldt and Suzanne Rosenfeldt as fraudulent transfers in violation of *Fla. Stat.* § 726.105(1)(b); and

c. Granting such other and further relief as may be just and proper.

**COUNT V – AVOIDANCE OF FRAUDULENT TRANSFERS
PURSUANT TO SECTION 544 OF THE BANKRUPTCY CODE
AND SECTION 726.106(1) OF THE FLORIDA STATUTES**

50. The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

51. Within four year period preceding the Petition Date, RRA made the Transfers to Rosenfeldt and Suzanne Rosenfeldt.

52. RRA made the Transfers without receiving reasonably equivalent value in exchange for the Transfers.

12

53.     RRA was insolvent at that times of the Transfers or became insolvent as a result of thereof, and a creditor(s) existed at the time of each of the Transfers.

54.     The Transfers may be avoided under 11 U.S.C. § 544 and *Fla. Stat*. §726.106(1).

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a Judgment:

a.     Declaring the above referenced payments to the Rosenfeldt and Suzanne Rosenfeldt to have been fraudulent transfers pursuant to *Fla. Stat.* § 726.106(1);

b.     Avoiding the Transfers made to Rosenfeldt and Suzanne Rosenfeldt as fraudulent transfers in violation of *Fla. Stat.* § 726.106(1); and

c.     Granting such other and further relief as may be just and proper.

## COUNT VI – RECOVERY OF PROPERTY PURSUANT TO SECTION 550 OF THE BANKRUPTCY CODE

55.     The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

56.     The transfers referenced above are avoidable by Plaintiff pursuant to pursuant to 11 U.S.C. §§ 544 and 548 and as a result, such payments are recoverable by Plaintiff pursuant to 11 U.S.C. § 550.

57.     Rosenfeldt was the initial transferee of the above referenced payments and/or the entity for whose benefit such transfers were made.

58.     Suzanne Rosenfeldt was the mediate transferee of the above referenced payments identified in paragraphs 28 and 34 above and/or the entity for whose benefit such transfers were made.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment:

13

a.    Declaring Rosenfeldt to be the initial transferee and/or the entity for whose benefit the above referenced payments were made;

b.    Declaring Suzanne Rosenfeldt as the mediate Transferee of the Transfers as described in paragraphs 28 and 34 above.

c.    Directing Rosenfeldt and Suzanne Rosenfeldt to turnover the above referenced fraudulent payments, plus interest at the applicable federal statutory rate, and reasonable attorneys' fees and expenses to the extent permissible by applicable law to Plaintiff; and

d.    Granting such other and further relief as may be just and proper.

## COUNT VII – FOR BREACH OF FIDUCIARY DUTY

59.    The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

60.    At all times material hereto, as President, a director and an employee of RRA, and having held himself out to the public as a partner of RRA and having performed certain management functions, Rosenfeldt owed RRA fiduciary duties, including a duty of loyalty, which includes an obligation to account for RRA property.

61.    Rosenfeldt has breached his fiduciary duty by (a) charging Personal Expense Payments to RRA, knowing that these submissions largely encompassed payment for personal expenses, rather than legitimate law firm expenses; (b) taking purported loans from RRA, with no intention of ever repaying same in full; (c) by engaging in the systematic trading of checks with RRA and paying third parties with RRA funds, including to himself, Rothstein, Russell Adler, Kendall Sports Bar and by not repaying the Rosenfeldt Loans in due course and (d) by engaging in a scheme to accept alleged compensation in return for using those funds to make political contributions.

14

62.     As a result of Rosenfeldt's breaches of fiduciary duty, RRA has been damaged by no less than $9,426,226.

63.     At all times material hereto, Rosenfeldt's actions were willful and wanton and occurred with total disregard for the rights of RRA, thus entitling RRA to an award of punitive damages.

**WHEREFORE**, Plaintiff prays for entry of a judgment in his favor and against Defendant Stuart Rosenfeldt for damages, punitive damages and all such other relief as this court deems just and appropriate.

## COUNT VIII – FOR CONSTRUCTIVE TRUST

64.     The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

65.     The Plaintiff as Trustee of RRA is the legal title holder to all property of RRA.

66.     The Transfers were effected by Rosenfeldt fraudulently or alternatively, retained by him under circumstances such that it would be inequitable for him to retain the Transfers.

67.     As the beneficiary of the Transfers and having a confidential and fiduciary relationship with RRA, Rosenfeldt knew or should have known that the Transfers were improper.

68.     Rosenfeldt has been unjustly enriched to the detriment of the Plaintiff, and as a result, a constructive trust should be established against the Transfers and upon the proceeds of the Transfers.

**WHEREFORE**, Plaintiff prays for entry of a judgment in his favor and against Defendant Stuart Rosenfeldt for imposition of a constructive trust to be established against the Transfers and all proceeds of the Transfers, for damages and all such other relief as this court deems just and appropriate.

15

## COUNT IX – FOR EQUITABLE LIEN

69.    The allegations set forth in paragraphs 1 through 35 are realleged as if fully restated herein.

70.    The Plaintiff as Trustee of RRA is the legal title holder to all property of RRA.

71.    The Transfers were effected by Rosenfeldt fraudulently or alternatively, retained by him under circumstances such that it would be inequitable for him to retain the Transfers.

72.    As the beneficiary of the Personal Expense Payment Transfers and having a confidential and fiduciary relationship with RRA, Rosenfeldt knew or should have known that the Personal Expense Payment Transfers were improper.

73.    Rosenfeldt has been unjustly enriched to the detriment of the Plaintiff, and as a result, an equitable lien should be established against all personalty acquired by Rosenfeldt and Suzanne Rosenfeldt directly traceable to the Personal Expense Payment Transfers and all proceeds of the Transfers.

**WHEREFORE**, Plaintiff prays for entry of a judgment in his favor and against Defendant Stuart Rosenfeldt and Suzanne Rosenfeldt for imposition of an equitable lien to be established against all personalty directly traceable from the Personal Expense Payment Transfers and all proceeds of the Transfers, for damages and all such other relief as this court deems just and appropriate.

16

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this Court set forth in Local Rule 2090-1(a).

**DATED** this 11th day of February 2009.

BERGER SINGERMAN, P.A.
Attorneys for Trustee, Herbert Stettin
Berger Singerman, P.A.
350 East Las Olas Blvd.
Suite 1000
Fort Lauderdale, Florida 33301
Direct Telephone: (954) 712-5138
Main Line: (954) 525-9900
Facsimile: (954)  523-2872


By:   _/s/    Paul Steven Singerman_
        Paul Steven Singerman, Esq.
        Fla. Bar No.  378860
        singerman@bergersingerman.com
        Charles H. Lichtman, Esq.
        Fla. Bar No. 501050
        clichtman@bergersingerman.com

2606143-1