UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

                                           CASE NO.: 09-34791-BKC-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,[1]       CHAPTER 11

       Debtor.

_____/

**SUMMARY OF FIRST INTERIM APPLICATION FOR ALLOWANCE AND
PAYMENT OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES OF BERGER SINGERMAN, P.A. AS COUNSEL TO
HERBERT STETTIN, CHAPTER 11 TRUSTEE**

| | |
|---|---|
| 1.Name of applicant: | Berger Singerman, P.A. |
| 2.Role of applicant: | Counsel for Chapter 11Trustee |
| 3.Name of certifying professional: | Paul Steven Singerman |
| 4.Date case filed: | November 10, 2009 |
| 5.Date of application for employment: | November 24, 2009 (D.E. No. 42) |
| 6.Date of final order approving employment: | December 23, 2009 (D.E. No. 155) |
| 7.If debtor's counsel, date of Disclosure of Compensation form: | N/A |
| 8.Date of this application: | March 4, 2010 |
| 9.Dates of services covered: | November 10, 2009 through January 31, 2010 |

**Fees**

| | |
|---|---|
| 10.Total fee requested for this period (from Exhibits) | $1,230,974.50 |
| 11.Balance remaining in fee retainer account, not yet awarded | $    50,000.00 |
| 12.Fees paid or advanced for this period, by other sources | $         0.00 |
| **13.Net amount of fee requested for this period** | **$1,180,974.50** |

**Expenses**

| | | |
|---|---|---|
| 14. | Total expense reimbursement requested for this period (from Exhibit) | $   28,092.06 |
| 15. | Balance remaining in expense retainer account, not yet received | $         0.00 |
| 16. | Expenses paid or advanced for this period, by other sources | $         0.00 |
| 17. | **Net amount of expense reimbursements requested for this period** | **$   28,092.06** |
| 18. | Gross award requested for this period (#10 + #14) | $1,259,066.56 |
| 19. | **Net award requested for this period** | **$1,209,066.56** |

---

1  The address and last four digits of the taxpayer identification number of the Debtor, Rothstein Rosenfeldt Adler, P.A., is Las Olas City Centre, 401 E. Las Olas Blvd, Suite 2270, Fort Lauderdale, Florida 33301 (TIN 7961).

2600116-7

20. If **Final** Fee Application, amounts of net awards
requested in interim applications but **not previously awarded**
(total from History of Fees and Expenses, following pages):                    N/A

21. Total fee and expense award requested (#19 + #20)

$1,209,066.56[2]

## History of Fees and Expenses

1.    Dates, sources, and amounts of retainers received:

| Dates | Sources | Amounts | For fees or costs |
|-------|---------|---------|-------------------|
| 11/24/09 | Debtor | $50,000.00 | N/A |

2.    Prior fee and expense awards:                    N/A

3.    Dates, sources and amounts of third party payments received:    N/A

---

2 This amount does not reflect any "holdback" applied.

## Certification

1.      I have been designated by Berger Singerman, P.A. (the "Applicant" or "BSPA") as the professional with responsibility in this case for compliance with the current "Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases" (the "Guidelines").

2.      I have read BSPA's application for compensation and reimbursement of expenses (the "Application").

3.      To the best of my knowledge, information, and belief formed after reasonable inquiry, the Application complies with the Guidelines.

4.      To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and expenses sought fall within the Guidelines, except as specifically noted in this Certification and described in the Application.

5.      Except to the extent that fees or expenditures are prohibited or restricted by the Guidelines, the fees and expenditures sought are billed at rates and in accordance with practices customarily employed by the Applicant and generally accepted by the Applicant's clients.

6.      In providing a reimbursable service, the Applicant does not make a profit on that service (other than the time charged for professionals and paraprofessionals).

7.      In charging for a particular service or disbursement, the Applicant does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission).

8.      In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, the Applicant is requesting reimbursement only for the

2600116-7

3

amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor.

9.      The Trustee, the chairperson of the official committee of unsecured creditors, the U.S. Trustee, and their respective counsel, will be mailed, simultaneously with the filing of the Application with the Court, a complete copy of the Application (including all relevant exhibits).

10.     The following are the variances with the provisions of the Guidelines, the date of the specific Court approval of such departure, and the justification for the departure:  None

**I HEREBY CERTIFY** that the foregoing is true and correct.

Dated:  March 4, 2010                      Respectfully Submitted,

                                           BERGER SINGERMAN, P.A.
                                           *Counsel for Chapter 11 Trustee*
                                           200 S. Biscayne Blvd., Suite 1000
                                           Miami, FL 33131
                                           Telephone:  (305) 755-9500
                                           Facsimile:  (305) 714-4340


                                           By:  /s/  Paul Steven Singerman
                                                Paul Steven Singerman
                                                singerman@bergersingerman.com
                                                Florida Bar No. 378860
                                                Isaac Marcushamer
                                                imarcushamer@bergersingerman.com
                                                Florida Bar No. 0060373

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

ROTHSTEIN ROSENFELDT ADLER P.A.,[1]          Case No. 09-34791-BKC-RBR

                                              Chapter 11 Case

        Debtor.
_____/

## FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF BERGER SINGERMAN, P.A. AS COUNSEL TO HERBERT STETTIN, CHAPTER 11 TRUSTEE

This first interim application (the "Application") of Berger Singerman, P.A., counsel for

Herbert Stettin, Trustee ("Trustee" or "Stettin") for the Chapter 11 estate of Rothstein Rosenfeldt

Adler P.A. ("RRA" or "Debtor"), is made by the law firm of Berger Singerman, P.A. (the

"Applicant" or "BSPA") for an award of compensation for services rendered and costs incurred

in this Chapter 11 proceeding for the period of November 10, 2009 through January 31, 2010

(the "Application Period").[2]  In support of the Application, the Applicant states:

### PRELIMINARY STATEMENT

On December 1, 2009, the Federal Government charged Scott Rothstein with running a

$1.2 Billion Ponzi scheme. *See USA v. Rothstein,* 09-cr-60331- JIC, *Criminal Information* [D.E.

1] (S.D. Fla. Dec. 1, 2009). This case has been described in the press as "Madoff on Crack".[3]

The Federal Bureau of Investigations called this case one of the largest fraud cases in the history

---

1 The address and last four digits of the taxpayer identification number of the Debtor, Rothstein Rosenfeldt Adler, P.A., is Las Olas City Centre, 401 E. Las Olas Blvd, Suite 2270, Fort Lauderdale, Florida 33301 (TIN 7961).

2  The interim and final orders approved the retention of BSPA *nunc pro tunc* to November 10, 2009. [D.E. 54 and 155]. In accordance with those Orders, BSPA seeks compensation for the period of November 10, 2009 through January 31, 2010.

3  See Jen Christensen, *$1.2 billion swindle 'was like Madoff on crack',* CNN website, ww.cnn.com/2010/CRIME/02/18/florida.rothstein.ponzi.scheme/index.html (last visited March 1, 2010)

2600116-7

of South Florida.[4]  Rothstein's fraud ensnared a wide variety of individuals and companies, as reflected by the more than 15,000 notice parties in this case and the over 5,500 creditors listed on the Debtor's Schedules. All of these aggrieved individuals are looking to the Trustee and BSPA, as his general counsel, as well as his other professionals, for recoveries to help lessen the impact of this historic fraud.  This undertaking has required a substantial commitment of professional and paraprofessional resources from BSPA.

## SYNOPSIS

Prior to November 2, 2009, RRA had all the trappings of a successful South Florida law firm. It employed over 70 attorneys as well as a full complement of support staff.  In total, RRA employed over 150 people in offices located in New York, Venezuela, and throughout Florida. RRA's principal office and its epicenter of operations, located in Fort Lauderdale, occupied over 34,000 square feet spread across four floors in a class A office building on East Las Olas Boulevard.

At the center of the RRA universe was Scott W. Rothstein ("Rothstein"). Rothstein, together with Stuart Rosenfeldt ("Rosenfeldt"), formed RRA in February, 2002.  The firm originally focused on labor and employment law.  Over the next several years and in dramatic fashion RRA expanded its practice to other areas of law including intellectual property, corporate law, mergers and acquisitions, real estate, criminal defense, class actions, mass torts, and personal injury litigation.

In early November 2009, RRA imploded.  On November 2, 2009, while Rothstein was in Morocco, Rothstein's partner Rosenfeldt, filed a lawsuit in Broward County Circuit Court alleging that Rothstein had "orchestrated a substantial misappropriation of funds from investor trust accounts that made use of RRA's name. The investment business created and operated by

---

4 *See* Ashby Jones, *FBI Investments With Rothstein Could Top $1B,* Wall Street Journal Blogs, November 12, 2009.

Rothstein centered around the sale of interests in structured settlements." Rosenfeldt , for himself and on behalf of RRA, sued for judicial dissolution of the law firm, an accounting, and appointment of a receiver under Florida law (the "Receivership Action"). *Rosenfeldt v. Rothstein*, Case No. 09-059301 (17[th] Judicial Circuit, Florida).  Two days later, the Broward County Circuit Court appointed Stettin as receiver for RRA. *See Order Appointing Receiver*, attached as Exhibit B to the Emergency Motion For Appointment of Interim Chapter 11 Trustee [D.E. 2]

Until the filing of the Receivership Action, RRA appeared to have all of the elements of a successful law firm with a thriving practice. But almost overnight thereafter, the majority of the lawyers and support staff of RRA disappeared. On the evening of November 4, when the Trustee (then the State Court Receiver) was visiting the offices of RRA for the very first time, representatives of various Federal law enforcement agencies entered the offices of RRA and executed search warrants and seized RRA's books, records, computers and servers. As a result, normal business operations of the firm were severely interrupted and have never resumed.  The work of the Trustee and his advisors has been made yet more difficult because during its operations, RRA did not maintain its books and records in a perfectly orderly manner.  Six days after Stettin's appointment as Receiver, on November 10, 2009, while Stettin and Berger Singerman were preparing for an orderly entry into Chapter 11, an involuntary bankruptcy petition was filed against RRA [D.E.1].  This case did not have a smooth entry into bankruptcy as Stettin had planned; rather it had a crash landing into Chapter 11.

It is under these circumstances that Stettin sought assistance from BSPA: to step in and assist him as his general counsel in the execution of his duties as Receiver and to plan for and execute as smooth a transition into bankruptcy as was possible in the circumstances.  The first

2600116-7                                          7

few hours, days and weeks in this case were spent by Stettin, BSPA and Stettin's other advisors in an exhaustive and broad based triage operation. Nearly every phone call and email presented a new challenge and a new set of issues and facts. Moreover, as RRA continued to unravel, each of its constituent parts sought to protect its own respective interest. Lawyers and other employees sought and obtained other employment opportunities, clients requested information on their files, and investors in Rothstein's Ponzi scheme wanted answers. In order to deal with these incredible pressures and demands, BSPA mobilized its resources and assigned as many professionals and paraprofessionals as were needed. A small number of these individuals worked only on discrete issues for a limited time.[5]

BSPA's work during the Application Period can be divided into three broad categories: (1) minimizing expenses by securing and disposing of assets; (2) developing and beginning implementation executing upon a broad based litigation strategy; and (3) participating in the labor intensive wind up of RRA's law firm operations.

BSPA's initial focus was on securing the assets of RRA. This included inspecting and securing the main office in Fort Lauderdale, which was spread over four floors. In addition, all of the other Florida offices had to be inspected and secured. As part of this effort, BSPA also sought to minimize administrative expenses. In many cases this was done by reaching agreements with potential administrative expense claimants. In other cases, BSPA moved quickly reject burdensome leases, including vacating and minimizing the massive amounts of office space that RRA leased. As part of this initial focus, BSPA led the effort to identify the Debtor's non-essential assets and prepare and market these assets for sale.

Once the immediate need to secure and dispose of the non-essential assets was stabilized

---

5, BSPA has written off the time spent by lawyers and paralegals who handled discrete issues and expended less than 5.0 hours on the case. This represents 45 hours of work during this Application Period, and a voluntary wavier of $11,438.50 in fees.

and procedures were implemented for their disposition and sale, BSPA, along with special litigation counsel, began to develop and implement a broad based litigation strategy. Much of the work done during the Application Period involved exploring and developing the claims that the Trustee plans to bring in the near future. Although much of this background work has not yet resulted in substantial litigation recoveries, this preparatory work is essential in a case of this nature and magnitude.

BSPA also focused heavily on winding up the law firm practice of RRA. Although these activities have not yet brought in revenue for the estate, they are in many cases mandated by law and the ethical rules governing lawyers. The activities in this category included the orderly transfer of client files, the safe guarding of the 401(k) plan and return of trust and escrow money where appropriate.

Although much work remains to be done, there has been a tremendous amount accomplished during the Application Period to effect a wind-down of RRA's operations. BSPA, at Stettin's direction, put in place processes to minimize costs and administrative expenses and maximize the recovery of assets of the estate. The following is a summary of only some accomplishments since the filing of the case:

a.  Accounts Receivable: The Debtor's outstanding accounts receivable for legal services peaked at $14,654,417.00. As of the petition date, a substantial portion of this sum was more than 30 days over due, and a significant amount of this sum had never been billed. To date, over $397,000 of the outstanding balance has been collected. BSPA attorneys have worked closely with the Trustee and his other professionals to institute procedures to commence orderly collection efforts. Over

the Application Period, these efforts have intensified. And they will continue until collection and recovery efforts are exhausted.

b.    <u>Rejection of Leases and Executory Contracts</u>: RRA had all the trappings of a large law firm. There were several leases with various landlords for the many offices it maintained. The total cost of these leases on a monthly basis exceeded $200,000. As a result of BSPA's efforts, the monthly payments for the space needed is less than $20,000, reflecting less than 10% of the pre-petition amount. Moreover, there were leases and agreements pertaining to personal property with a variety of vendors and other contractors. All of these had the potential to increase the administrative expenses of the estate. Accordingly, BSPA analyzed each one and promptly sought and obtained Court approval to reject many of these agreements.  In other cases, BSPA entered into agreements with putative administrative expense creditors to either cap or eliminate the estate's administrative expense exposure.

c.    <u>Liquidation of Personal Property and Office Contents</u>: BSPA, at the direction of the Trustee, engaged an auctioneer and oversaw the first auction of the personal property contained in the Debtor's South Florida offices. The auction held on January 23, 2010, netted over $150,000 for the estate.  By moving quickly to liquidate non-essential assets, BSPA assisted the Trustee in maximizing the return to the Debtor's estate and further helped limit the exposure of the estate to the Debtor's landlords for continued occupancy of unnecessary space.[6]

---

6 On February 27, 2010, BSPA, at the Trustee's direction, oversaw a second auction of personal property (principally computer equipment and electronics).  Although, this second auction occurred after the Application Period, all of the work  necessary to make it happen took place during the Application Period.  This second auction generated over $120,000.

2600116-7                                        10

d.    Collaboration with Creditors' Committee: BSPA, the Trustee and the Trustee's other advisors have worked diligently and cooperatively with the Creditors' Committee. As a result of the open communication with the Creditors' Committee, there have been no disputes over the Trustee's administration of the estate. To date, the Trustee and the Creditors' Committee have reached agreement on virtually every significant matter that has come before the Court.

e.    Cooperation with the United States: BSPA and the Trustee (as well as other of the Trustee's advisors) have met with representatives of the Office of the United States Attorney in good faith in order to advance the common goals of the Trustee and the United States to maximize the value of the assets subject of the Government's forfeiture proceedings and distributions to legitimate creditors of the Debtor and victims of Rothstein's criminal conduct.  The Trustee has, as appropriate, filed pleadings before the District Court in effort to preserve the estate's claims in respect of the assets subject of the Government's forfeiture efforts.  In addition, BSPA has assisted the Trustee in responding to inquiries from other law enforcement and regulatory agencies regarding the business affairs and records of the Debtor.

f.    Development of Litigation Strategy and Commencement of Litigation: After stabilizing the business of the Debtor and securing its assets and focusing on minimizing administrative expense, BSPA, in collaboration with the Trustee and his other advisors, has worked intensively on investigating litigation claims against third parties, gathering evidence in support of such litigation claims and developing the overall litigation strategy of this case.  During the Application

Period BSPA issued 39 Rule 2004 examination notices and 78 demand letters to various parties.[7]    Additionally, BSPA has commenced a lawsuit against one former partner of RRA.  This is the first of many lawsuits that will be filed.[8]

g.    <u>Client File Transition and Cooperation with The Florida Bar</u>: BSPA has been actively communicating and collaborating with The Florida Bar in order to effectuate the orderly transition of client files.  BSPA has also assisted the Trustee in implementing protocols to facilitate client file retrieval and the resolution of any outstanding bills.   This process has been done with due caution and deliberation in order to comply with applicable ethics and confidentiality rules. BSPA is also cooperating with The Florida Bar to resolve issues related to "orphan files."  These are the files for which no RRA attorney has claimed responsibility.  BSPA is working with The Florida Bar to set up procedures to assure that even these files are reviewed and to protect the interests of the former RRA clients.

h.    <u>Resolution of Employee 401(k) Plan</u>: BSPA assisted the Trustee in removing Rothstein as RRA's 401(k) Plan administrator and in selecting a new private trustee for the plan. The new plan trustee will facilitate the wind down of the plan and where permissible allow former employees to access their plan assets for emergency hardship loans.   In addition, BSPA led the effort to resolve any potential objections from the Department of Labor regarding the wind down of the 401(k) Plan.

---

7 Since the end of the Application Period, BSPA issued an additional 100 Rule 2004 examination notices and 33 demand letters.
8 Since the end of the Application Period, BSPA filed an additional two lawsuits against former partners of RRA.

i.    Filing of the Debtor's Schedules and Statement of Financial Affairs: BSPA
      worked intensively with the Trustee's accountants to expeditiously file the
      Debtor's Schedules and Statements of Financial Affairs (collectively, the
      "Schedules"). The preparation of the Schedules was an extremely time consuming
      task. The Debtor's books and records were far less than perfect, and certain
      categories of data needed to be forensically examined and reconstructed. This
      was further complicated by the unavailability of the executives of RRA who
      maintained the books and records of the law firm and their refusal to cooperate.

    The foregoing list is not an exhaustive compilation of the value of BSPA efforts to the
estate. Rather, it highlights only a few of the major categories of work done by the BSPA team
that have resulted in the stabilization of this large and difficult case. The work done by BSPA,
the Trustee and the Trustee's other advisors during this Application Period will prove to be a
strong foundation for the assertion and prosecution of significant litigation claims against third
parties in the future. BSPA has devoted substantial resources to this case- in excess of 3400
hours during the Application Period- notwithstanding its knowledge that the bankruptcy estate
would not now have sufficient resources from which to pay BSPA and the Trustee's other
advisors for word done to date.  In these circumstances and without prejudice to BSPA's rights
to seek to recover the entirety of the fees it has incurred to date, BSPA has agreed to seek
payment of only 35% of the fees the Court may award at a hearing on this Application in order to
insure that the Trustee and this estate retain sufficient liquidity to allow the Trustee to conduct
the business and affairs of this estate.  Moreover, because BSPA, as the Trustee's general
counsel, has incurred substantially more fees than the Trustee's other advisors during the

2600116-7                                          13

Application Period, BSPA has agreed to accept a larger hold back than the Trustee's other advisors until the bankruptcy estate has more available cash.

## PROCEDURAL BACKGROUND

On November 2, 2009, Rosenfeldt initiated the Receivership Action on behalf of the Debtor and himself, for judicial dissolution of the firm, an accounting, and appointment of a receiver, pursuant to Florida Statutes §§ 607.1430(3), 607.1431 and 607.1432.

On November 10, 2009 (the "Petition Date") Roger Wittenberns, Bonnie Barnett, Aran Development, Inc. and Universal Legal (collectively, the "Petitioning Creditors") commenced this case (the "Chapter 11 Case") by filing an involuntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in this Court. [D.E. 1]

On November 20, 2009, Herbert Stettin was appointed as the Chapter 11 Trustee of the Debtor [D.E. 35].

On November 24, 2009, the Application to Employ Paul Steven Singerman and the Law Firm of Berger Singerman, P.A. as Attorneys for the Chapter 11 Trustee, *nunc pro tunc* to November 10, 2009, was filed. [D.E. 42]. The Application was approved on an interim basis on November 25, 2009 [D.E. 54] and on a final basis on December 23, 2009 [D.E. 155].

The Applicant submits this Application, pursuant to Sections 328, 330 and 503(b) of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases (the "Guidelines").

The Applicant has incurred legal fees and expenses, as counsel to the Trustee, in the amount of $**1,259,066.56** comprised of (a) $**1,230,974.50** for services rendered during the period of November 10, 2009 through and including January 31, 2010 (the "Application Period"); and

2600116-7                                          14

(b) $28,092.06 for the actual and necessary expenses incurred by the Applicant on behalf of the Trustee during the Application Period. This request is the Applicant's first application to the Court for compensation and reimbursement of expenses for services rendered as counsel to the Trustee. As further explained herein, the Applicant is, at this time, seeking an interim award of $984,779.60[9] in fees and $28,092.06 in expenses; provided, however, that in light of the estate's limited liquidity at this time, the Applicant is only seeking payment of fees in the amount of $380,841.06 along with permission to apply the $50,000 retainer that the Applicant is holding, and preserving onto the Trustee the right to pay all or any additional amounts awarded to the Applicant, at such time or times as the Trustee determines, in the exercise of his business judgment, based on the amount of funds then available in the estate. That is, upon approval of this Application the Trustee will be authorized to pay, in the exercise of his business judgment, the remaining balance of $553,938.54, without further order of the Court.  No understanding exists between the Applicant and any other person for the sharing of compensation sought by this Applicant, except among the partners and associates of the Applicant.

In accordance with the Guidelines, the following exhibits are annexed to this Application:

Exhibit A:    Summary of Professional and Paraprofessional Time;

Exhibit B:    Summary of Professional and Paraprofessional Time by Activity Code Category;

Exhibit C:    Summary and Breakdown of Requested Reimbursement of Expenses;

Exhibit D:    the Applicant's complete time by Activity Code Category for the time period covered by this application;

The Applicant has expended a total of 3,468.50 hours during the period covered by this Application in rendering necessary and beneficial legal services to the Trustee.  Exhibit "A"

---

9  This amount represents an award of 80% of the total fees incurred during the Application Period. The remaining 20% is to be considered a holdback, which the Applicant may seek an award of at the appropriate time.

contains a list of the Applicant's professionals and paraprofessionals who have provided services to the Trustee during the Application Period, the hourly rate charged by each, and a summary of time expended by each. Exhibit "B" contains a summary of professional and paraprofessional time by activity code as required by, and in compliance with, the Guidelines (redacted to preserve and protect the Trustee's attorney-client privilege and the work product protection doctrine). Exhibit "C" contains a summary of the Applicant's total actual and necessary out-of-pocket expenses and disbursements, on behalf of the Trustee, for which the Applicant seeks reimbursement in accordance with Section 330(a)(2) of the Bankruptcy Code, the Bankruptcy Rules and the Guidelines. The expenses and disbursements summarized in Exhibit "C" are those which the Applicant typically would invoice to its non-bankruptcy clients. Exhibit "D" contains: (i) a daily description of the services rendered and the hours expended by the various attorneys and paralegals of the Applicant who performed services in this case (redacted to preserve and protect the Trustee's attorney-client privilege and the work product protection doctrine); and (ii) a detailed schedule listing of the expenses and disbursements for which the Applicant seeks reimbursement. The Applicant has prepared Exhibit "D" based on, among other things, contemporaneous daily time records maintained by the Applicant's attorneys and paralegals who have rendered services in this case.

### INDEXING OF TASKS BY ACTIVITY CODES

As set forth in the Exhibits to this Application, the Applicant has organized its time records by activity codes in accordance with the Guidelines. Accordingly, each of the time entries of the attorneys and paralegals of the Applicant have been indexed into the categories listed below.

> **501. Case Administration:** Coordination and compliance activities, including, but not limited to: compliance with United States Trustee Guidelines; general creditor

inquiries; and activities relating to the general administration of these cases as well as other tasks not otherwise indexed by activity code.

**502.   Business Operations:** Issues related to the Trustee's operation of the Debtor's business, including, but not limited to, employee, vendor and consumer issues.

**503.   Meeting of Creditors/Committees:** Preparing for and attending the meeting of creditors; and time entries related to issues pertaining to the meeting of creditors and meetings with the Committee and its counsel.

**504.   Asset Analysis and Recovery:** Assisting in and providing legal counsel in connection with analysis of assets and related work; issues related to the preservation or disposal of property of the estate; and responding to the inquiries of all interested parties and prospective purchasers of the assets of the estate.

**505.   Asset Disposition/Preservation:** Assisting in providing legal counsel in connection with the Debtor's sale of assets and related transactional work; issues related to the preservation or disposal of property; and responding to the inquiries of all interested parties.

**506.   Financing:** Providing legal counsel in connection with issues associated with the Trustee's consideration of debtor in possession financing early in this case.

**507.   Fee/Employment Application:** Preparation of employment and fee applications and related tasks.

**509.   Claims Administration and Objections:** Specific claim inquiries and analysis of claims.

**512.   Executory Contracts and Unexpired Leases:** Issues associated with leases and/or contracts between the Debtor and third parties.

**513.   Utilities:** Activities relating to claims of utility companies, including telephone conferences with various utility companies regarding utility deposits.

**514.   Employee Benefits/Pensions:** Providing legal counsel in connection with pre-petition wages and employee benefits of the Debtor's employees and administration and termination of the Debtor's 401(k) plan.

**517.   Settlement and Compromise:** Issues related to settlements of contested matters, including settlement negotiations and preparation and/or review of settlement agreements and motion and order approving same.

**518.   Plan and Disclosure Statement:** Analysis and structuring of plan of liquidation.

**527.    Litigation Consulting:** Prosecution and defense of contested matters and litigation, including adversary proceedings. During the Application Period, the Applicant has spent a great deal of time investigating litigation claims against third parties and gathering facts to support substantial litigation claims the Trustee will bring in the future.

**528.    Relief from Stay Proceeding/Adequate Protection:** Activities involving the filing of motions for relief from the automatic stay by creditors and parties-in-interest.

## DESCRIPTION OF SERVICES

### Case Administration (Activity Code 501)

BSPA met with, assisted and counseled the Trustee with regard to a number of matters concerning the administration the Debtor's Chapter 11 case. BSPA's initial involvement in this case started when the Trustee was functioning as the Receiver appointed by the State Court in the Receivership Action. BSPA faced a significant "learning curve" to get up to speed in the early part of this case. Climbing the learning curve required extensive discussions and collaboration with various parties and the review of large volumes of documents and information concerning RRA's pre-petition activities.

BSPA conducted an investigation to determine the status of assets that were believed to be related to the Debtor's pre-petition activities and to ascertain what assets could be disposed of early in this case. As part of its investigation, BSPA met with the representatives of the United States and with counsel for certain of the investor victims who were engaged in pre-petition transactions with the Debtor and Rothstein, and a number of other third parties. The Applicant assisted the Trustee in securing and reviewing the Debtor's books and records.

In addition, the Applicant worked hard to assist the Trustee with the stabilization of this case. This was necessary in order to establish a solid platform to begin aggressive asset recovery efforts. As part of the stabilization effort, BSPA drafted and sent out a notice of commencement, with Court approval, and assisted in the creation of a website to provide timely information to

18

creditors and parties in interest in an efficient manner. The Applicant reviewed all of the available books and records of the Debtor to assemble the complete creditor matrix, which consists of over 15,000 clients, investors and trade vendors. The Applicant received, on average, 40 phone calls a day from interested parties and creditors regarding the status of their claims and the case.

In addition, Applicant worked with the Trustee and Berkowtiz Dick Pollack & Brandt, P.A., the Trustee's forensic accountants ("BDPB"), on the preparation of the Debtor's schedules and statement of financial affairs. The Applicant conducted numerous conferences and had numerous meetings with the Trustee and BDPB with respect to compliance with the United States Trustee's guidelines and operating requirements, including, but not limited to, preparation of monthly operating reports and sales tax reports. The Applicant prepared the Debtor's case management summary in compliance with Administrative Order 05-1. The Applicant prepared for and attended the initial debtor interview and conducted multiple conferences regarding same. The Applicant communicated regularly with numerous creditors and parties in interest regarding the status of the Chapter 11 case and case administration issues.

During the Application Period, the Applicant conducted a significant amount of research and worked with the Trustee and BDPB and filed the following motions regarding various administrative issues of the estate.

- Emergency Motion To Confirm Receiver's Compliance With 11 U.S.C. §543(B)(1) And To Authorize The Chief Restructuring Officer To Pay Expenses Pursuant To 11 U.S.C. §303(F) [D.E. 10]

- Emergency Motion to Enforce the Automatic Stay [D.E. 14]

- Consent to Order for Relief in Involuntary Case [D.E. 57]

- Emergency Motion to (1) Suspend, in part, Local Rule 2004-1(A), U.S. Bankruptcy Court, Southern District of Florida and (2) Require Court Approval

2600116-7                                        19

for any Federal Rule of Bankruptcy Procedure 7030 Deposition of Herbert Stettin, Rothstein Rosenfeldt Adler P.A. through Existing Employees, or Current Professionals of the Trustee [D.E. 69]

- Expedited Motion To Authorize Trustee to (A) Terminate RRA's 401(k) and Profit Sharing Plan; (B) Remove Scott W. Rothstein as Plan Trustee; and (C) Authorize Stettin to Select New Plan Trustee [D.E. 81]

- Motion to Compromise Controversy and Settlement between the Chapter 11 Trustee and Florida Care Foundation, Inc. [D.E. 106]

- Chapter 11 Trustee's Motion to (A) Approve Form and Manner of Limited Notice and (B) Approve the Form and Manner of the Notice of Commencement [D.E. 107]

- Chapter 11 Trustee's Application for Approval of Employment of Trustee Services, Inc. as Notice, Claims and Balloting Agent of the Bankruptcy Court [D.E. 108]

- Trustee's Emergency *Ex Parte* Application (i) to Employ Fisher Auction Co., Inc. as Auctioneers for the Debtor (ii) to Employ AMC Liquidators to Facilitate Moving and Storage; and (iii) for Authorization to Pay AMC Liquidators [D.E. 126]

- Trustee's *Ex Parte* Application (i) to Employ Suddath Relocation Systems of Fort Lauderdale, Inc. to Relocate Office contents and (ii) to Pay Relocation Systems of Fort Lauderdale, Inc. [D.E. 138]

- Trustee's Ex Parte Motion to File Documents Under Seal (Schedule F1 to the Debtor's Schedules) [D.E. 142]

- Chapter 11 Trustee's Motion for Order (I) Authorizing the Trustee to Pay (A) Certain Employee Obligations and (B) Pre-Petition Withholding Obligations [D.E. 158]

- Chapter 11 Trustee's Motion to (1) Approve Selection of Plan Trustee Nunc Pro Tunc to December 11 and (2) Authorize the Plan Trustee and Other Plan Professionals to Create, Pro Rata, an Expense Fund From Plan Assets [D.E. 164]

- Chapter 11 Trustee's Emergency Motion for an Order Authorizing Trustee to Enter into a Short-Term Commercial Lease for Administrative Office Space for Use During the Wind Down of the Debtor's Operations [D.E. 175]

- Trustee's Agreed Motion to Reject Unexpired Lease (As to Fort Lauderdale Lease Agreement) [D.E. 176]

- Trustee's Agreed Motion to Reject Unexpired Lease (As To Suite 2250 Leased Premises) [D.E. 178]

- First Omnibus Motion to Approve Compromise, Indemnification, Release and Settlement between the Chapter 11 Trustee and Various Parties [D.E. 216]

- Emergency Motion for Order Authorizing Sale Sporting and Events Tickets and Approving the Use of a Ticket Broker [D.E. 217]

- Motion to Reject Unexpired Leases (As to Boca Raton, West Palm Beach and Tallahassee Leases) [D.E. 226]

- Emergency Motion to Reject Executory Contract and Leases [D.E. 257]

In addition to the filing of the pleadings listed above, the Applicant responded to various motions, as appropriate, and attending the related Court hearings on behalf of the Trustee.

The Applicant conducted frequent status conferences with the Trustee, BDPB and GJB regarding the status of all administrative, operational and litigation matters.  The Applicant, in conjunction with the efforts by BDPB, has been conducting on-going review of the Debtor's books and records in order to properly identify all aspects of the Debtor's business and affairs and in order to identify assets and litigation claims that will serve as sources of recovery for the Debtor's creditors.

The Applicant expended a total of **787.30** hours in this category and is requesting the total sum of **$229,186.00** for the services rendered in this category.

### Business Operations (Activity Code 502)

In this category, the Applicant expended a significant amount of time and resources addressing the numerous requests for transfer of RRA case files.  The Applicant initially worked on organizing, indexing and relocating the case files to a storage facility.  This organizational effort included an analysis of the Debtor's pre-petition electronic data management system and the creation of an electronic data retention protocol.  Thereafter, a procedure was developed for

2600116-7                                                    21

the transfer of case files and such requests were handled on a case-by-case basis. An analysis of billing and trust account issues associated with the case file was undertaken for each request for transfer, including preserving the Debtor's ability to assert charging liens where applicable. In connection with each of the case file transfers, a representative of the Applicant traveled to the storage facility to supervise the transfer of the case files to the requesting party. The Applicant received hundreds of requests for transfer of RRA's case files.

The Applicant also expended a substantial amount of time learning about RRA's pre-petition business operations and practices. This included a thorough analysis of RRA's financial accounting systems and issues relating to the collection of account receivables, remaining trust account funds and disbursements. In addition, the Applicant also addressed issues relating to RRA's leased premises, including negotiating a lease for a fraction of the pre-petition office space for storage and the winding down of office operations. BSPA also handled the wind down of office operations, including dealing with issues relating to post-petition employment of RRA personnel. Additionally, BSPA implemented a protocol to permit former employees to collect their personal effects.

The Applicant expended a total of **670.80** hours in this category and is requesting **$252,525.00** for the services rendered in this category.

### Meeting of Creditors (Activity Code 503)

The Applicant began preparations for the Section 341(a) meeting of creditors. This included gathering the relevant data and preparing and reviewing the appropriate documents with the Trustee. The Schedules in this case are over 150 pages and the Statement of Financial Affairs includes another 60 pages. In addition to preparing for the Section 341(a) meeting[10], the Applicant assisted the Trustee with preparing for and attending the Initial Debtor Interview

---

10 The 341(a) Meeting of Creditors was held and concluded February 18, 2010.

("IDI"). In connection with preparing for the IDI, the Applicant reviewed all of the Debtor's insurance policies, Profit and Loss Statements, 401(k) statements, filed and unfiled tax returns, and thousand of pages of other documents in order to fully comply with the United States Trustee's IDI requirements.

The Applicant expended a total of **13.30** hours in this category and is requesting the total sum of **$7,250.50** for the services rendered in this category.

### Asset Analysis and Recovery (Activity Code 504)

The Applicant expended a significant amount of time in preparing for and defending against the United States Trustee's Motion for Appointment of a Chapter 11 Trustee (the "Trustee Motion") [D.E 8]. Originally, the Applicant had been hired by Herbert Stettin as Chief Restructuring Officer to RRA, who had been contemplating the filing a voluntary chapter 11 petition on behalf of RRA. After extensive negotiations with the Office of the United States Trustee, Stettin agreed to the entry of an Order granting the Trustee Motion and appointing a trustee [D.E.30]. BSPA has continued to represent Stettin following his appointment as Trustee [D.E.35].

The Applicant has conducted an in depth analysis of the Debtor's business activities, and the potential assets that might be available to creditors of the Debtor's estate. This analysis included an exhaustive title search, conducting inventories at the various offices and research relating to ownership of the New York Coop, that is titled in the name of a former RRA partner and may be an asset of the estate. In addition, fees billed to this category relate to significant efforts of the Trustee and BSPA to recover various pre-petition payments that had been made to political and charitable organizations. This includes a payment of $1,000,000 that was made to the Florida Cares Foundation by the Debtor, 100% of which was recovered by the Trustee.

23

BSPA, with the oversight of the Trustee, engaged almost all of the charitable and political contribution recipients of RRA funds in settlement discussions. Many of these organizations have acceded to the Trustee's demand of full repayment. In some cases, after careful evaluation and recommendation by BSPA, the Trustee has agreed to accept a reduced recovery. BSPA expects to file several motions to approve the settlements, as and where required. As well as recovering the payments made to political and charitable organizations, the Applicant also expended numerous hours in assessing the value of various sports and event tickets discovered at the RRA offices belonging to RRA, arranging for buyers of the tickets and then obtaining court approval for the sale of the tickets. The sale of the sports and event tickets has produced $11,124.12 to date.

The Applicant and the Trustee have engaged in discussions with the United States Government to explore the most efficient disposition of assets seized by the Government through forfeiture proceedings. The Government seized more than $50 million in assets. The Trustee, acting for the benefit of all creditors, has directed BSPA to protect the bankruptcy estate's interest in the property subject of the Government's forfeiture proceedings. The Trustee and BSPA continue to monitor the Government's forfeiture proceedings and continue in efforts to persuade the Government to engage in a collaborative dialogue regarding maximizing the value of the assets subject of the forfeiture proceedings and maximizing distributions to creditors of the Debtor and victims of Mr. Rothstein's criminal conduct.

The Applicant has undertaken extensive research regarding claims that the Trustee may have against third parties pursuant to 11 U.S.C.§§547, 548 and 550 and applicable state law. The Trustee expects that there are hundreds of millions of dollars that may be recovered by pursuing avoidable transfers. The Trustee expects that the recoveries from these claims may constitute a

large part of the assets of this case. Finally, BSPA met with a number of individuals who have claimed to have information about the Debtor's pre-petition activities, and BSPA at the Trustee's direction, has to date noticed 139 of examinations pursuant to Rule 2004, Federal Rules of Bankruptcy Procedure, of which 39 Rule 2004 examinations were issued during the Application Period.

The Applicant expended a total of **403.20** hours in this category and is requesting the total sum of **$147,060.00** for the services rendered in this category.

### Asset Disposition/Preservation (Activity Code 505)

BSPA assisted the Trustee in developing a plan and strategy for selling the property located at the Debtor's South Florida offices to maximize recoveries for creditors. BSPA prepared the required motions and supporting documentation, including bid procedures, form of orders, and all of the required contracts, riders, and related documents that would be needed to proceed forward with the sale. Multiple conferences, both in person and via telephone, were held with the Trustee, BSPA, and Fisher Auction Company, Inc. ("Fisher Auction"), the Trustee's chosen auctioneer.

BSPA dedicated a substantial amount of time to setting up and coordinating the sales of the Debtor's personal property. Much of this time was dedicated to verifying ownership of the furniture and property located on the Debtor's premises and analyzing leases pertaining to the property. In addition, BSPA assisted the Trustee and other professionals in moving and securing the contents of the RRA offices.

The largest auction sale was held on January 23, 2010. The gross proceeds from this sale were $180,900.00. After all expenses were paid, $152,415.00 was remitted to the estate. This sale consisted of the majority of the furniture and non-computer equipment from the Miami, Ft.

Lauderdale, Boca Raton, West Palm Beach offices.  In addition to setting up and coordinating the auction, BSPA handled Rothstein's objections and those of his wife to the auction and the inclusion of certain items in it.  The Trustee ultimately prevailed and the property that Rothstein sought to have excluded from the auction was included and sold at the auction.

The Trustee, with the help of BSPA, has secured the remaining computer related equipment and remaining furniture. These items were sold at public auction on February 27, 2010.

Additionally, the Trustee, with the help of BSPA, engaged the services of a ticket broker to monetize various sporting and event tickets, including tickets to the Super Bowl.

The Applicant expended a total of **240.70** hours in this category and is requesting the total sum of **$83,263.50** for the services rendered in this category.

### Financing (Activity Code 506):

Early in the case, at the direction of the Trustee, the Applicant explored the possibility of obtaining debtor in possession financing during the gap period after the filing of the involuntary petition and prior to the entry of the order for relief. This work involved the preparation of a term sheet for the prospective lender and an analysis of the needs of the estate.  Additionally, BSPA met with the prospective lender regarding terms.  Ultimately, Stettin decided not to pursue the financing early in the case.

The Applicant expended a total of **1.70** hours on this activity and is requesting **$850.00** for services rendered in this category.

### Fee/Employment Compensation Application (Activity Code 507)

BSPA prepared the applications and associated declarations that were required in connection with the engagement of professionals, including that of BSPA.  In connection with

2600116-7                                      26

the filing of BSPA's application to be employed as counsel for the Chapter 11 Trustee, the BSPA reviewed and conducted a conflict search that consisted of over 15,000 clients, investors and vendors of the Debtor.

In addition, the Applicant assisted in the retention of Berkowtiz Dick Pollack & Brandt, LLP, the Trustee's forensic accountants.

After visiting each of the Debtor's locations, including Miami, Fort Lauderdale (which consisted of over 34,000 sq. ft.), Boca Raton, West Palm Beach and a warehouse, it became abundantly clear that the Trustee needed to hire an auctioneer to inventory all of the Debtor's assets, including all furniture, fixtures, and equipment. The Applicant worked with various auction companies and reviewed each bid submitted. In the end, the Trustee employed Fisher Auction to inventory all of the Debtor's assets, including all furniture, fixtures, and equipment at each of its locations listed above and to conduct the sale of the said assets. On January 23, 2010, Fisher conducted its first public auction of the Debtor's assets, which netted approximately $152,000.00 to the estate. In connection with the employment of Fisher Auction, the Trustee also directed BSPA to employ AMC Liquidators to Facilitate Moving and Storage of the Debtor's assets. Lastly, the Applicant filed a motion to employ Suddath Relocation Systems of Ft. Lauderdale for the relocation of the contents, not including furniture and equipment, of the Miami, Ft. Lauderdale, Boca Raton and West Palm Beach RRA offices.

Upon review of the Debtor's books and records and after numerous telephone conference with the Clerk of the Court and the Office of the United States Trustee, the Applicant facilitated and coordinated the retention of Trustee Services, Inc. ("TSI") as Notice, Claims and Balloting Agent of the Bankruptcy Court. The Applicant worked closely with TSI to ensure that all known parties-in-interest were provided with the notice of commencement and proof of claim form. In

2600116-7                                     27

connection with providing notice to all parties, the Applicant and TSI have routinely and constantly updated the creditor matrix with new address information. Lastly, the Applicant worked closely with an advertising company to ensure that the notice of commencement and bar date information was published with the Miami Herald, Fort Lauderdale Sun-Sentinel, West Palm Beach Post, and the South Florida Business Journal. Additionally, BSPA worked closely with TSI, the Official Committee of Unsecured Creditors and the Clerk of Court to set up a website, www.rra-bk.com, to provide accurate and up-to-date information regarding the case.

As part of those efforts, BSPA prepared the required Applications, Affidavits and/or Declarations, and proposed orders granting the respective applications.

The Applicant expended a total of **87.70** hours in this category and is requesting the total sum of **$25,734.50** for the services rendered in this category.

### Claims Administration and Objection (Activity Code 509)

The Applicant dealt with numerous claims issues, including establishing procedures to notice over 15,000 parties of the commencement of the case and the creation of a claims administration protocol in conjunction with TSI. The Applicant has assisted with the settlement of many administrative expense claims with various parties on terms that are beneficial to the estate. Finally, the Applicant has fielded many telephone calls and other inquiries from creditors of the estate with regards to the status of their respective claims.

Additionally, BSPA analyzed the nature of the major claims against the estate as part of the preparation of the list of 20 largest creditors. Moreover, BSPA conducted extensive research into the reconciliation procedures of claims' administration and objections in Ponzi scheme cases. This issue is one of the largest in the case, as the claims' resolution process in most Ponzi scheme cases is a significant and often contested undertaking. Accordingly, at the direction of

the Trustee, BSPA has undertaken substantial research regarding the issues that are likely to present themselves in the claims' resolution proceedings in this case in order to proceed in the most effective, efficient and expeditious manner.

BSPA has been reviewing and analyzing the claims that have been filed in this case in conjunction with BDPB. BSPA has commenced preparation of an omnibus claims matrix.

The Applicant expended a total of **22.70** hours in this category and is requesting the total sum of $**7,167.00** for the services rendered in this category.

### Executory Contracts (Activity Code 512)

BSPA undertook a comprehensive review of RRA's contractual relationships. After a careful analysis of each executory contract pertaining to personal property and lease of non-residential real property, BSPA provided the Trustee with a series of proposed contract rejection options. BSPA reviewed a wide range of contracts, including contracts for sporting tickets, advertising and promotion, office space (including office space in Miami, Fort Lauderdale, Boca Raton, West Palm Beach, Tallahassee and Washington, D.C.), storage units, cellular communication, internet access, computer hardware, and other office equipment. Once the Trustee approved the rejection of the contracts and leases, BSPA negotiated with opposing counsel(s) and filed the appropriate motions and noticed the relevant parties in order to obtain requisite Court approval. In addition, BSPA has been working diligently with many of the lessors to arrange for the return of the leased equipment.

BSPA has had continuing negotiations with each lessor in order to minimize the estate's administrative expense claim exposure. The largest saving has come in the reduction of office space. The rejection of office leases has helped reduce the office space of RRA from seven 7 offices through out Florida and in Washington, D.C. (over 50,000 sq ft. of office space) to just

6% of its pre-petition total space. Moreover, in many instances, BSPA negotiated a reduction or elimination of any administrative rent claim that a counterparty may have held and in some instances even managed to eliminate the party's claim altogether, which will ultimately benefit all of the creditors of the estate.

The Applicant expended a total of **199.10** hours in this category and is requesting the total sum of **$59,918.50** for the services rendered in this category.

### Utilities (Activity Code 513)

BSPA dealt with and resolved any issues associated with the return of equipment to the cable company. RRA had rented several cable boxes and other equipment and this equipment had to be returned as the Debtor had no further use for these items. BSPA efficiently handled this issue.

The Applicant expended a total of **1.50** hours in this category and is requesting the total sum of **$292.50** for the services rendered in this category.

### Employee Pensions and Benefits (Activity Code 514)

With respect to the RRA 401(k) and Profit Sharing Plan ("Plan"), BSPA reviewed the Plan documents and related correspondence in order to assess what steps needed to be taken in connection with the proposed termination of the Plan and finding a replacement trustee. BSPA prepared a motion to remove the former trustee of the plan (Scott Rothstein) and to authorize the Trustee, as the plan administrator, to terminate the Plan, to appoint a successor trustee for the Plan, and take any other steps necessary to wind down the Plan. BSPA interviewed several prospective successor plan trustees and conducted several meetings and discussions to ensure that steps were being taken to comply with applicable tax and ERISA requirements. Moreover, BSPA worked collaboratively with the Department of Labor ("DOL") to resolve any objection it

may have to the relief sought by the Trustee. The Applicant had numerous discussions with members of the DOL in order to meet their demands and to try to seek DOL assistance in order to expedite the termination of the Plan for the benefit of the former employees of RRA. In light of the potential objections by the DOL to the appointment of a successor trustee of the Plan, BSPA contacted and interviewed 3 candidates, who were suggested by the DOL, in order to find a suitable replacement trustee. Thereafter, Stettin retained Larry Lefoldt, CPA, to serve as independent fiduciary/successor trustee of the Plan. BSPA also contacted the IRS in order to seek rapid approval of the termination of the Plan and to seek certain waivers with regard to Plan matters. We also engaged in numerous discussions with the Third Party Administrator and the custodians at Morgan Stanley regarding Plan matters. In addition, we had to deal with inquiries by Plan participants for requests for hardship withdrawals and related matters.

The Applicant expended a total of **160.30** hours in this category and is requesting the total sum at **$64,252.00** for the services rendered in this category.

### Settlement and Compromise (Activity Code 517)

The Applicant participated in a number of settlement discussions and negotiations with a variety of parties. As of the Petition Date, the Debtor had scores of contracts with various vendors and parties. Each of these contracts is a potential administrative expense claimant. The Trustee, with the assistance of BSPA, has resolved many claims and disputes with putative claimants. Especially noteworthy is BSPA's efforts to cause one charitable organization to return 100% of the funds it received from RRA, $1,000,000, without the filing of a lawsuit and with minimal expense. The Trustee, in conjunction with BSPA, has settled several potential administrative expense claims through negotiation. In many instances these claims were settled for no payment from the estate.

2600116-7                                           31

The Applicant expended a total of **5.70** hours in this category and is requesting the total sum of **$1,420.50** for the services rendered in this category.

### Accounting and Auditing (Activity Code 521), Data Analysis (Activity Code 522), and Reconstruction/ Accounting (Activity Code 526)

RRA, like any large law firm, collected a large volume of data on a regular basis. Unfortunately, RRA's data information technology systems did not keep pace with the size and scale of a law firm of its size. Accordingly, sorting through the voluminous data was a time intensive and laborious process. This process was further complicated by the Federal Government's seizure of RRA's books and records and data storage devices. Notwithstanding these challenges, BSPA, in conjunction with BDPB the other professionals working on this case conducted an extensive review of the data storage systems of RRA and assisted the Trustee in the formulation of a plan for data retention and preservation. BSPA has also assisted in the development of the process of organizing the data so that the Trustee and other professionals will be able to access it in an orderly manner. This organizational process is ongoing and will require substantial additional work before being completed. BSPA has been sensitive to the confidential nature of the information that RRA maintained, and has endeavored to protect and safeguard the confidentiality of this information.

The Applicant, in conjunction with BDPB, has assisted in the significant task of the forensic reconstruction of certain of the Debtor's books and records. The Applicant spent a significant amount of time reviewing transactions in the Debtor's pre-petition accounts (which total 48 accounts including accounts at TD Bank, Gibraltar, and BB&T). This colossal task has been the basis and foundation for all demand letters, preference and fraudulent transfer investigations, the preparation of the Debtor's Schedules, and other litigation matters. There is a great deal more work to be done in connection with these matters.

BSPA has also worked with the Trustee and BDPB to assemble, review and file each month's Trustee-in-Possession operating reports with the Court and the Office of the United States Trustee.

The Applicant expended a total of **51.80** hours in these category and is requesting the total sum of **$18,625.00** for the services rendered in all three categories.

### Tax Issues (Activity Code 525)

The Applicant has conducted minimal tax work to date. Much of it involved work related to the 401(k) Plan or review of tax returns.

The Applicant expended a total of **4.80** hours in this category and is requesting the total sum of **$2,320.00** for the services rendered in this category.

### Litigation Consulting (Activity Code 527)

The Applicant spent an extensive amount of time engaged in activities relating to litigation matters. More than half of the time billed to this category was devoted to the investigation of potential litigation claims. The Trustee's litigation plan is likely to include, preference and fraudulent transfer actions, as well as, other claims regarding turnover of estate property and funds. The investigation and analysis of litigation claims in this case been unusually difficult because the individuals with the most knowledge of the business and affairs of the Debtor and the claims against third parties are themselves either litigation targets or suspects in respect of criminal conduct- in either instance, few former employees of RRA have been cooperative with the Trustee and his advisors. The Applicant spent a considerable amount of time investigating litigation claims, as such claims are likely to be the principal source of recovery for the creditors of the this bankruptcy estate. BSPA's research included reviewing the Debtor's financial records, employment records, and third party vendor records. During the

33

Application Period BSPA prepared and served 39 Rule 2004 examination notices and related requests for the production of documents.

During the Application Period and at the direction of the Trustee, BSPA filed suit against one of the former partners of the Debtor seeking to avoid certain transfers and recover fraudulent transfers of property, as well as asserting a breach of fiduciary duty.[11]  BSPA has also spent a significant amount of time responding to and dealing with a substantial number of lawsuits that were pending prior to the Petition Date as well as adversary proceedings that have been brought post-petition against the Trustee or the estate.  Many of these lawsuits involve individuals who had funds on deposit with the Debtor and who are seeking to recover lost monies.

There are also several lawsuits that are pending in both State and Federal Courts throughout the State of Florida in which Debtor is not a named defendant, but is involved because one of its former lawyers is involved.  In many of these cases, the Applicant has had to review each case in order to recommend to the Trustee the appropriate course of action.

In these cases, BSPA, has been assisting the Trustee with transition of client files to appropriate counsel.  In addition the Trustee has sought and obtained Court approval to produce certain documents in response to discovery requests that contain sensitive financial information about the firm.

The Applicant expended a total of **813.80** hours in this category and is requesting the total  sum of **$330,142.00** for the services rendered in this category.

### Relief From Stay (Activity Code 528)

The Applicant reviewed and counseled the Trustee with respect to several stay relief motions, and BSPA has filed objections when appropriate. However, much of the activity with

---

11 Since the end of the Application Period, BSPA issued an additional 100 Rule 2004 examination notices and 33 demand letters. Additionally, BSPA filed two lawsuits against former partners of RRA.

respect to the automatic stay has been related to preventing or addressing stay violations. BSPA, has issued several notices and letters to various parties advising them of actions that were in violation of the automatic stay. In many instances communication with opposing parties has eliminated the need for hearings on enforcement or applicability of the automatic stay. Notwithstanding BSPA's attempts to resolve automatic stay issues on a consensual basis, there have been some instances in which Court intervention has been warranted and BSPA has never hesitated to aggressively protect the estate.

The Applicant expended a total of **4.10** hours in this category and is requesting the total sum of **$967.50** for services rendered in this category.

## EVALUATION OF SERVICES RENDERED; FIRST COLONIALCONSIDERATIONS

1.    This Application has presented the nature and extent of the professional services the Applicant has rendered in connection with its representation of the Trustee and for which the Applicant seeks compensation. The data set forth in the daily time records attached hereto constitutes only a summary of the time spent. A mere reading of the time summary annexed hereto alone cannot completely reflect the full range of services the Applicant rendered and the complexity of the issues and the pressures of time and performance which have been placed on the Applicant in connection with these cases.

2.    *American Benefit Life Ins. Co. v. Baddock (In re First Colonial Corp.)*, 544 F.2d 1291 (5th Cir.), *cert denied*, 431 U.S. 904 (1977), enumerates twelve factors a bankruptcy court should evaluate in awarding fees. *First Colonial* remains applicable in the Eleventh Circuit to the determination of reasonableness of fees to be awarded under the Bankruptcy Code. *Grant v. George Schumann Tire & Battery Company*, 908 F.2d 874 (11th Cir. 1990); *Collier on Bankruptcy* ¶330.05[2][a] at 330-33 through 330-37 (L. King 15th ed. 1991); *See also Bonner v.*

2600116-7                                        35

*City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981). The twelve factors are:

(A)      The time and labor required;

(B)      The novelty and difficulty of the questions presented;

(C)      The skill required to perform the legal services properly;

(D)      The preclusion from other employment by the attorney due to acceptance of the case;

(E)      The customary fee for similar work in the community;

(F)      Whether the fee is fixed or contingent;

(G)      The time limitations imposed by the client or circumstances;

(H)      The experience, reputation and ability of the attorneys;

(I)      The undesirability of the case;

(J)      The nature and length of the professional relationship with the client; and

(K)      Awards in similar cases.

*First Colonial*, 544 F.2d at 1298-99.

3.      Based on the standards set forth in Section 330 of the Bankruptcy Code and *First Colonial*, the Applicant believes that the fair and reasonable value of its services rendered during the period covered by this Application is the total amount of **$1,230,974.50** plus expenses of **$28,092.06**.

**A.      Time, Nature and Extent of Services Rendered, Results Obtained and Related First Colonial Factors**

The foregoing summary, together with the Exhibits attached hereto, details the time, nature and extent of the professional services of the Applicant rendered for the benefit of the estate during the period covered by this Application. The total number of hours expended,

2600116-7                                          36

**3,468.50**, proves the extensive time devoted to this matter by the Applicant with respect to the various legal issues which have arisen in this case during the period covered by this Application.

B.    **Novelty and Difficulty of Questions Presented**

The complex and novel issues which have arisen in this case during the period encompassed by this Application demanded a high level of skill.  This case is a large and challenging one- by any standard.  We are now at the tip of the iceberg of the legal issues that this case will ultimately present.

C.    **Skill Requisite to Perform Services Properly**

In rendering services to the Trustee, the Applicant demonstrated substantial legal skill and expertise in the areas of bankruptcy, litigation, commercial transactions, criminal law and negotiation.

D.    **Preclusion from Other Employment by Attorney due to Acceptance of Case**

The Applicant's representation in this case did not preclude it from accepting other employment.

E.    **Customary Fee**

The hourly rates charged by the Applicant as set forth in Exhibits 1, 2 and 3 range from $235.00 to $560.00 per hour for attorneys and $75.00 to $195.00 per hour for paralegals and law clerks, which is customary for professionals and paraprofessionals in the Southern District of Florida of similar skill and experience.

The hourly rates charged for attorneys and paraprofessionals who worked on this bankruptcy case are as follows:

2600116-7                                          37

| | **ATTORNEYS** | 2009 Rate-2010 Rate |
|---|---|---|
| PSS | PAUL STEVEN SINGERMAN | $535 - $560 |
| CHL | CHARLES H. LICHTMAN | $535 - $560 |
| JG | JORDI GUSO | $500 - $525 |
| JCC | JAMES C. CUNNINGHAM, JR | $420 - $430 |
| NJ | NICK JOVANOVICH | $450 - $475 |
| SK | SHARON KEGERREIS | N/A - $500 |
| IMH | ILYSE HOMER | $400 - $425 |
| DG2 | DAVID GAY | $320 - $345 |
| IMM | ISAAC MARCUSHAMER | $235 - $260 |
| AMH | ANDREW HINKES | $270 - $295 |
| PB | PHYLLIS BEAN | $430 - $455 |
| BGR | BRIAN RICH | $435 - $475 |
| MS | MARC SHUSTER | $345 - $365 |
| BU | BRUCE UDOLF | $500 - $550 |
| WMS | WILLIAM SHAHEEN | $400 - $435 |
| FPS | FRANK SCRUGGS | $515 - $525 |
| SSP | SHELDON POLISH | $470 - $495 |
| JSW | JEFFERY WERTMAN | $390 - $410 |
| MM1 | MELISSA MELZER | $305 - $320 |
| | **PARAPROFESSIONALS** | |
| JA1 | JENNIFER AVERY | $75 - $75 |
| CC | CARMEN CRUZ | $185 - $195 |
| HE1 | HULDA ESTAMA | $155 - $165 |
| SHP | SHENIQUE PATTON | $185 - $195 |
| LME | LISSETTE MERIDA | $185 - $195 |
| JWS | JUDITH W. STONER | $185 - $195 |
| LM | LOUISE MEAGHER | $185 - $195 |
| MA | MICHELLE ALBRECHT | $185 - $195 |
| JD | JANETTE DIAZ | $185 - $195 |
| KG | KERRY GOINS | $185 - $195 |

2600116-7

| AH | ALMA HERZOWITZ | $185 - $195 |
| CMT | CHRISTOPHER TARRANT | $185 - $195 |
| LT | LUIS TORRES | $185 - $195 |
| AV | ANGIE VERBECK | $185 - $185 |
| FS | FLETA SELLERS | $75 - $75 |

**F.    Whether Fee is Fixed or Contingent**

The Applicant's compensation in this matter is subject to approval of the Court and therefore contingent.  The Court should consider this factor, which militates in favor of a fee award in the amount requested.  The amount requested is consistent with the fee which the Applicant would charge its clients in other non-contingent, bankruptcy and commercial cases. The Applicant respectfully requests that the Court note that the Applicant received a minimal retainer at the outset of this engagement, and that when the Applicant was retained, there were then and still are insufficient funds to pay the Applicant's fees and costs in the ordinary course as they are being incurred.

**G.    Time Limitations Imposed by Client or Other Circumstances**

The circumstances of this case occasionally imposed time constraints on the Applicant due to the necessity for rapid resolution of significant issues.

**H.    Experience, Reputation and Ability of Attorneys**

The Applicant is an established law firm and its members and associates working on this case are experienced in matters of this kind and well known to this Court. The Applicant enjoys a fine reputation and has demonstrated substantial ability in the fields of bankruptcy, litigation, creditors' rights and business reorganization.

**I.    "Undesirability" of Case**

This case is not undesirable.  The Applicant is privileged to have the opportunity to represent the Trustee, and to appear before the Court in this case.

J.      **Nature and Length of Professional Relationship with Client**

Mr. Stettin, the Trustee, has conducted mediations and presided over judicial proceedings (as a trial judge or as a discovery special master) in a number of matters in which the Applicant has been involved over the years. However, this is the only active representation of Mr. Stettin, in his capacity as a Trustee.

K.      **Awards in Similar Cases**

The fees and costs requested by the Applicant are reasonable in terms of awards in cases of similar magnitude and complexity.  The compensation which the Applicant requests comports with the mandate of the Bankruptcy Code, which directs that services be evaluated in light of comparable services performed in non-bankruptcy cases in the community.  The fee requested by the Applicant, **$1,230,974.50** reflects an average hourly rate of **$354.90** for **3,468.50** hours of service.

## CONCLUSION

**WHEREFORE,** The Applicant respectfully requests the Court to enter an order (i) awarding the Applicant the sum of **$1,012,871.66** which is, comprised of (a) **$984,779.60** as compensation for services rendered during the Application Period, which sum represents 80% of **$1,230,974.50,** the amount of fees incurred in the Application Period, and provides for a "holdback" of 20% of fees incurred in the Application Period; (b) **$28,092.06** as reimbursement for actual and necessary expenses incurred during the course of the Applicant's representation of the Trustee during the Application Period; (ii) authorizing and directing the Trustee to pay the Applicant the sum of **$380,841.06** upon entry of an Order awarding the fees requested in this

Application (which amount together with application of the Applicant's **$50,000.00** retainer referred to in section (iii) below reflects a voluntary 65% "holdback" in light of the lack of sufficient funds on hand in the estate to permit immediate payment of the Applicant's fees and those of the Trustee's other professionals were such fees to be awarded by the Court), (iii) authorizing the Applicant to apply the **$50,000.00** currently held in the Applicant's trust account as its retainer; and (iv) authorizing the Trustee to pay the Applicant an additional sum of **$553,938.54**, without further order of this Court, when and as the Trustee has sufficient funds on hand to administer the estate and to make payments to the other estate professionals the amounts awarded by the Court in respect of their first interim fee applications, and (v) granting such other and further relief as the Court deems appropriate

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Regular U.S. Mail, postage prepaid, fax, email and/or overnight delivery upon all parties on the attached Service List this 4th day of March, 2010.

> BERGER SINGERMAN, P.A.
> *Counsel for Chapter 11 Trustee*
> 200 S. Biscayne Blvd., Suite 1000
> Miami, FL 33131
> Telephone: (305) 755-9500
> Facsimile: (305) 714-4340
>
>
> By: /s/ Paul Steven Singerman
>     Paul Steven Singerman
>     singerman@bergersingerman.com
>     Florida Bar No. 378860
>     Isaac Marcushamer
>     imarcushamer@bergersingerman.com
>     Florida Bar No. 0060373

41

## <u>SERVICE LIST</u>
## CASE NO.: 09-34791-BKC-RBR

Marianella Morales, Esquire
Authorized Agent For Joining Creditors
Avenida Francisco de Miranda
Torre Provincial "A"
Piso 8
Caracas, Venezuela
**(VIA EMAIL)**


John H. Genovese, Esq. **(VIA CM/ECF)**
Robert F. Elgidely, Esq.
Theresa M.B. Van Vliet, Esq.
Genovese Joblove & Battista, PA
Bank Of America Tower at International Place
100 S.E. 2nd Street
Suite 4400
Miami, Florida 33131
Phone: (305) 349-2300
Fax (305) 349-2310


Kendall Coffey, Esq. **(VIA EMAIL)**
Coffey Burlington,
Office in the Grove
Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
kcoffey@coffeyburlington.com


The Honorable Herbert M. Stettin
One Biscayne Tower
Suite 3700
Two South Biscayne Boulevard
Miami, Florida 33131


John G. Bianco, Esq. **(VIA CM/ECF)**
John M. Mulli, Esquire
Tripp Scott
110 Southeast Sixth Street
Fifteenth Floor
Fort Lauderdale, Fl. 33301
jgb@trippscott.com

Alison W. Lehr **(VIA EMAIL)**
Assistant United States Attorney
99 N.E. 4th Street
7th Floor
Miami, Florida 33132
Phone: (305) 961-9176
Fax: (305) 536-7599
Alison.Lehr@usdoj.gov


Stuart A. Rosenfeldt, Esq. **(VIA EMAIL)**
Rothstein Rosenfeldt Adler, PA
401 East Las Olas Boulevard
Suite 1650
Fort Lauderdale, Florida 33301
srosenfeldt@rra-law.com


Jeffrey R. Sonn, Esq. **(VIA EMAIL)**
Sonn & Erez, PLC
Broward Financial Center
500 E. Broward Boulevard
Suite 1600
Fort Lauderdale, Florida  33394
Phone: (954) 763-4700
Fax (954) 763-1866
jsonn@sonnerez.com


Office of the US Trustee **(VIA CM/ECF)**
51 Southwest First Avenue
Suite 1204
Miami, Florida  33130


Thomas Tew, Esq. **(VIA EMAIL)**
Lynn Maynard Gollin, Esq.
Tew-Cardenas, LLP
Four Seasons Tower
15th Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
tt@tewlaw.com
lmg@tewlaw.com


2441794-1

Conrad & Scherer, LLP **(VIA EMAIL)**
633 South Federal Highway
Fort Lauderdale, FL 33301
Tel: 954-462-5500
bs@conradscherer.com
JSilver@conradscherer.com

Michael D. Seese, Esq. **(VIA EMAIL)**
Hinshaw & Culbertson, LLP
1 E Broward Blvd Ste 1010
Ft Lauderdale, Florida 33301
Tel: 954.4677900
Fax: 954.4671024
mseese@hinshawlaw.com

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114
**(Via U.S. Mail)**

Internal Revenue Service
Special Procedures - Insolvency
7850 SW 6th Court
Plantation, FL  33324
Tel.: (954) 423-7300
Fax.: (305) 982-5406
**(Via U.S. Mail)**

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, Fl  33130
Fax: (305) 530-7139
**(Via U.S. Mail)**

Grant J. Smith, Esq. **(VIA EMAIL)**
Rothstein Rosenfeldt Adler, P.A.
401 East Las Olas Blvd
Suite 1650
Fort Lauderdale, FL 33301
gsmith@rra-law.com

United Healthcare
Dept. CH 10151
Palatine, IL 60055
**(Via US Mail)**

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906
**(Via U.S. Mail)**

The Honorable Eric H. Holder, Jr.
Attorney General of the U.S.
950 Pennsylvania Avenue, NW Room 4400
Washington, DC  20530-0001
**(Via U.S. Mail)**

Honorable Jeffrey H. Sloman,
Acting U.S. Attorney
99 NE 4th Street
Miami, Fl  33132
**(Via U.S. Mail)**

Daniel Mink
Ovadia Levy
c/o Renato Watches, Inc
14051 NW 14th Street
Sunrise, Florida 33323
**((Via U.S. Mail)**

William George Salim, Jr. **(VIA CM/ECF)**
Moskowitz Mandell & Salim
800 Corporate Dr Ste 510
Fort Lauderdale, Florida 33334
wsalim@mmsslaw.com
Tel: 954.491-2000
Fax:  954.4912051

USI **(VIA EMAIL)**
Attn: Anthony Gruppo
200 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33309
Tel: 954-607-4000
Anthony.gruppo@usi.biz

Marc Nurik, Esq. **(VIA EMAIL)**
1 East Broward Blvd
Suite 700
Fort Lauderdale, FL 33301
marc@nuriklaw.com

BAST AMRON LLP **(VIA CM/ECF)**
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905
bamron@bastamron.com
jbast@bastamron.com

Mark Bloom, Esq. **(VIA EMAIL)**
Greenberg Traurig, LLP
1221 Brickell Avenue
Miami, FL 33131
T 305.579.0500
F 305.579.0717
bloomm@gtlaw.com

Robert D. Critton, Esq.  **(VIA EMAIL)**
Burman, Critton, Luttier & Coleman
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com

Roth & Scholl **(VIA EMAIL)**
Attn: Jeffrey C. Roth, Esq.
Attorneys For Creditor Blue
Capital Us East Coast Properties, L.P.
866 South Dixie Highway
Coral Gables, Fl 33146
Telephone: (305) 662-4141
jeff@rothandscholl.com

Rogers, Morris & Ziegler, LLP **(VIA EMAIL)**
1401 East Broward Blvd
Suite 300
Fort Lauderdale, FL 33301
Tel: (954) 462-1431
Fax: (954) 763-2692
mfbooth@rmzlaw.com

Arthur C. Neiwirth, Esq. **(VIA CM/ECF)**
One E. Broward Blvd., Suite 1400
Ft. Lauderdale, FL 33301
Tel: (954) 523-7008
Fax: (954) 523-7009
aneiwirth@qpwblaw.com

The Florida Bar **(VIA EMAIL)**
Adria E. Quintela, Esq.
Alan Anthony Pascal, Esq.
Lake Shore Plaza II
1300 Concord Terrace, Suite 130
Sunrise, FL 33323
aquintel@flabar.org
apascal@flabar.org

Micheal w. Moskowitz, Esq. **(VIA E-MAIL)**
800 Corporate Drive, Suite 500
Ft. Lauderdale, FL 33234
mmoskowitz@mmsslaw.com

Francis L. Carter, Esq. **(VIA E-MAIL)**
Katz Barron Squitero Faust
2699 S. Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: 305-856-2444
Fax: 305-285-9227
flc@katzbarron.com

Bradley S. Shraiberg, Esq. **(VIA EMAIL)**
2385 NW Executive Drive
Suite 300
Boca Raton, Florida 33431
Tel: 561-443-0800
Fax: 561-998-0047
bshraiberg@sfl-pa.com

2441794-1

3

Henry S. Wulf, Esq. **(VIA EMAIL)**
CARLTON FIELDS, P.A.
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 659-7070
Facsimile: (561) 659-7368
E-Mail: hwulf@carltonfields.com

EMESS Capital, LLC **(VIA EMAIL)**
c/o Bruce A. Katzen, Esq.
201 S. Biscayne Blvd., 17th Floor
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile: (305) 379-3428
E-Mail: bkatzen@klugerkaplan.com

Ira Sochet, Trustee **(VIA EMAIL)**
Revocable Intervivos Trust of Ira Sochet
c/o Phil Hudson, Esq.
200 South Biscayne Blvd, Suite 3600
Miami, Florida 33130
Telephone: (305) 374-3330
Facsimile: (305) 374-4744
E-Mail: pmhudson@arnstein.com

Coquina Investments **(VIA EMAIL)**
c/o Patricia A. Redmond, Esq.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3553
Facsimile: (305) 789-3395
E-Mail: predmond@stearnsweaver.com

Michael I. Goldberg, Esq. **(VIA EMAIL)**
Las Olas Centre - Suite 1600
350 East Las Olas Blvd
Fort Lauderdale, FL 33301
Telephone: (305) 463-2700
Facsimile: (305) 463-2224
E-Mail: Michael.goldberg@akerman.com

LMB Funding Group **(VIA EMAIL)**
c/o Robert C. Furr, Esq.
2255 Glades Road, Suite 337W
Boca Raton, Florida 33431
Telephone: (561) 395-0500

Facsimile: (561) 338-7532
E-Mail: rfurr@furrcohen.com

Lawrence A. Gordich, Esq. **(VIA EMAIL)**
Melissa Alagna, Esq.
701 Brickell Ave
Suite 1900
Miami, Florida 33131
Telephone: (305) 789-2700
Facsimile: (305) 789-2727
Email: Lawrence.gordich@ruden.com
Email: Melissa.alagna@ruden.com

Broward County **(VIA EMAIL)**
Attn: Hollie N. Hawn, Esq.
Government Center
115 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 357-7600
Facsimile: (954) 357-7641
E-Mail: hhawn@broward.org

Steven J. Solomon, Esq. **(VIA EMAIL)**
Gray Robinson, P.A.
1221 Brickell Ave, Suite 1600
Miami, Florida 33131
E-Mail – steven.solomon@gray-robinson.com

Peter F. Valori, Esq. **(VIA EMAIL)**
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
E-mail: pvalori@dvllp.com

Canon Financial Services, Inc.
158 Gaither Drive, #200
Mount Laurel, NJ 08054
**(Via US Mail)**

2441794-1

CIT Technology Financing Services I,
LLC
10201 Centurion Parkway North
Jacksonville, FL 32256
**(Via US Mail)**

Gibraltar Private Bank & Trust
Company
220 Alhambra Circle, Suite 500
Coral Gables, FL 33134
**(Via US Mail)**

Inter-Tel Leasing, Inc.
1140 West Loop North
Houston, TX 77055
**(Via US Mail)**

Florida Department of Revenue
501 S. Calhoun Street
Room 201
Carlton Building
Tallahassee, FL 32399
**(Via US Mail)**

Leon County Tax Collector
315 S. Calhoun Street
Suite 210
Tallahassee, FL 32301
**(Via US Mail)**

Miami-Dade County Tax Collectors
140 West Flagler Street, 14th Floor
Miami, FL 33130
**(Via US Mail)**

Palm Beach County Tax Collector
P.O. Box 3715
West Palm Beach, FL 33402-3715
**(Via US Mail)**

THE LAW OFFICES OF
GEOFFREY D. ITTLEMAN, P.A.
440 North Andrews Avenue
Fort Lauderdale, Florida 33301
Tel: (954)462-8340
Fax: (954) 462-8342

**(Via US Mail)**

Carpenter & Berger, PL
6400 N. Andrew Ave, suite 370
Fort Lauderdale, FL 33309
**(Via US Mail)**

Frank F. McGinn, Esq. **(VIA EMAIL)**
Bartlett Hackett Feinberg, P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
ffm@bostonbusinesslaw.com

Darol H. M. Carr, Esq. **(VIA EMAIL)**
99 Nesbit Street
Punta Gorda, FL 33950
dcarr@farr.com

**EXHIBIT "A"**
**1ST INTERIM FEE APPLICATION**
**Summary of Professional and Paraprofessional Time Total per Individual for this Period Only**

| Partner, Associate | Year Licensed | Total Hours | Blended Rate* | Fees |
|---|---|---|---|---|
| Paul Steven Singerman | 1983 | 183.40 | $ 541.01 | $ 99,221.50 |
| Charles H. Lichtman | 1985 | 447.50 | $ 544.52 | $ 243,672.50 |
| Bruce Udolf | 1991 | 23.50 | $ 540.85 | $ 12,710.00 |
| Frank P. Scruggs | 1978 | 75.80 | $ 517.45 | $ 39,223.00 |
| Jordi Guso | 1990 | 79.40 | $ 502.42 | $ 39,892.50 |
| Sharon Kegerreis | 1990 | 9.70 | $ 500.00 | $ 4,850.00 |
| Sheldon S. Polish | 1974 | 129.90 | $ 480.30 | $ 62,390.50 |
| Nick Jovanovich | 1980 | 114.60 | $ 461.28 | $ 52,862.50 |
| Brian G. Rich | 1994 | 23.20 | $ 448.28 | $ 10,400.00 |
| Phyllis Bean | 1979 | 11.10 | $ 435.86 | $ 4,838.00 |
| James C. Cunningham, Jr. | 1979 | 77.80 | $ 424.34 | $ 33,014.00 |
| William M. Shaheen | 1993 | 174.80 | $ 413.22 | $ 72,230.00 |
| Jeffrey S. Wertman | 1994 | 12.30 | $ 410.00 | $ 5,043.00 |
| Ilyse M. Homer | 1989 | 39.40 | $ 406.92 | $ 16,032.50 |
| Marc Shuster | 2001 | 279.00 | $ 353.70 | $ 98,681.00 |
| David Gay | 2004 | 488.20 | $ 329.15 | $ 160,691.50 |
| Melissa Melzer | 2005 | 58.30 | $ 310.53 | $ 18,104.00 |
| Andrew M. Hinkes | 2005 | 79.60 | $ 282.81 | $ 22,512.00 |
| Isaac M. Marcushamer | 2007 | 385.30 | $ 240.74 | $ 92,755.50 |
| **Paraprofessional** | | | | |
| Shenique Patton | | 127.80 | $ 192.37 | $ 24,585.00 |
| Luis Torres | | 116.30 | $ 189.46 | $ 22,034.50 |
| Alma Herzowitz | | 21.40 | $ 188.79 | $ 4,040.00 |
| Christopher M. Tarrant | | 375.00 | $ 188.36 | $ 70,635.00 |
| Judith W. Stoner | | 20.30 | $ 187.22 | $ 3,800.50 |
| Janette B. Diaz | | 6.00 | $ 185.33 | $ 1,112.00 |
| Carmen Cruz | | 15.40 | $ 185.00 | $ 2,849.00 |
| Kerry Goins | | 6.20 | $ 185.00 | $ 1,147.00 |
| Angie Verbeck | | 37.40 | $ 185.00 | $ 6,919.00 |
| Louise Meagher | | 5.10 | $ 187.94 | $ 958.50 |
| Hulda Estama | | 5.10 | $ 155.39 | $ 792.50 |
| Jennifer Avery | | 16.00 | $ 75.00 | $ 1,200.00 |
| Fleta Sellers | | 23.70 | $ 75.00 | $ 1,777.50 |
| **TOTALS** | | **3468.50** | | **$ 1,230,974.50** |
| Blended Average Hourly Rate | | | $ 354.90 | |

* Blended Rate due to rate increase from 2009 to 2010.

| | | |
|---|---|---|
| Total Professional and Paraprofessional Hours: | | 3,468.50 |
| Average Hourly Rate: | $ | 354.90 |
| Total Professional and Paraprofessional Fees: | | $ 1,230,974.50 |

**EXHIBIT "B"**
**1ST FIRST INTERIM FEE APPLICATION**
**Summary of Professional and Paraprofessional Time by Activity Code Category**

| Activity Code #501: Case Administration | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Paul S. Singerman | | 64.90 | $ | 539.70 | $ | 35,026.50 |
| Charles H. Lichtman | | 74.20 | $ | 535.00 | $ | 39,697.00 |
| Frank P. Scruggs | | 1.20 | $ | 515.00 | $ | 618.00 |
| Jordi Guso | | 31.00 | $ | 502.98 | $ | 15,592.50 |
| James C. Cunningham, Jr. | | 0.10 | $ | 420.00 | $ | 42.00 |
| Jeffrey S. Wertman | | 4.90 | $ | 410.00 | $ | 2,009.00 |
| Ilyse H. Homer | | 15.90 | $ | 402.20 | $ | 6,395.00 |
| Marc Shuster | | 20.40 | $ | 358.14 | $ | 7,306.00 |
| David Gay | | 72.60 | $ | 327.02 | $ | 23,742.00 |
| Andrew M Hinkes | | 2.60 | $ | 270.00 | $ | 702.00 |
| Isaac H. Marcushamer | | 139.80 | $ | 237.74 | $ | 33,235.50 |
| **Paraprofessional** | | | | | | |
| Luis Torres | | 1.20 | $ | 195.00 | $ | 234.00 |
| Alma Herzowitz | | 6.80 | $ | 187.94 | $ | 1,278.00 |
| Christopher M. Tarrant | | 285.50 | $ | 187.92 | $ | 53,652.50 |
| Janette B. Diaz | | 3.20 | $ | 185.63 | $ | 594.00 |
| Carmen Cruz | | 0.60 | $ | 185.00 | $ | 111.00 |
| Kerry Goins | | 3.50 | $ | 185.00 | $ | 647.50 |
| Louise Meagher | | 3.60 | $ | 185.00 | $ | 666.00 |
| Angie Verbeck | | 30.20 | $ | 185.00 | $ | 5,587.00 |
| Hulda Estama | | 2.10 | $ | 155.00 | $ | 325.50 |
| Fleta Sellers | | 23.00 | $ | 75.00 | $ | 1,725.00 |
| **Activity Total** | | **787.30** | | | $ | **229,186.00** |

| Activity Code #502: Business Operations | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Paul S. Singerman | | 17.20 | $ | 535.15 | $ | 9,204.50 |
| Charles H. Lichtman | | 24.60 | $ | 535.00 | $ | 13,161.00 |
| Frank P. Scruggs | | 0.80 | $ | 515.00 | $ | 412.00 |
| Jordi Guso | | 4.10 | $ | 503.05 | $ | 2,062.50 |
| Sheldon S. Polish | | 110.60 | $ | 481.87 | $ | 53,294.50 |
| William M. Shaheen | | 174.80 | $ | 413.22 | $ | 72,230.00 |
| Marc Shuster | | 174.10 | $ | 354.26 | $ | 61,676.50 |
| David Gay | | 21.40 | $ | 329.70 | $ | 7,055.50 |
| Melissa Melzer | | 58.30 | $ | 310.53 | $ | 18,104.00 |
| Andrew M. Hinkes | | 4.70 | $ | 282.23 | $ | 1,326.50 |
| Isaac M. Marchushamer | | 11.20 | $ | 241.70 | $ | 2,707.00 |
| **Paraprofessional** | | | | | | |
| Shenique Patton | | 28.40 | $ | 195.00 | $ | 5,538.00 |

| Luis Torres | | 21.60 | $ | 190.00 | $ | 4,104.00 |
|---|---|---|---|---|---|---|
| Hulda Estama | | 2.80 | $ | 155.00 | $ | 434.00 |
| Fleta Sellers | | 0.20 | $ | 75.00 | $ | 15.00 |
| Jennifer Avery | | 16.00 | $ | 75.00 | $ | 1,200.00 |
| **Activity Total** | | **670.80** | | | $ | **252,525.00** |

| Activity Code #503: Meeting of Creditors/Committees | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Paul S. Singerman | | 13.30 | $ | 545.15 | $ | 7,250.50 |
| **Activity Total** | | **13.30** | | | $ | **7,250.50** |

| Activity Code #504: Asset Analysis/Recovery | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Charles H. Lichtman | | 37.80 | $ | 539.17 | $ | 20,380.50 |
| Paul S. Singerman | | 24.50 | $ | 535.61 | $ | 13,122.50 |
| Frank P. Scruggs | | 8.00 | $ | 515.00 | $ | 4,120.00 |
| Jordi Guso | | 31.90 | $ | 500.78 | $ | 15,975.00 |
| Sharon Kegerreis | | 9.70 | $ | 500.00 | $ | 4,850.00 |
| Bruce Udolf | | 2.40 | $ | 500.00 | $ | 1,200.00 |
| Sheldon S. Polish | | 0.80 | $ | 470.00 | $ | 376.00 |
| Phyllis Bean | | 11.10 | $ | 435.86 | $ | 4,838.00 |
| James C. Cunningham, Jr. | | 25.80 | $ | 420.00 | $ | 10,836.00 |
| Jeffrey S. Wertman | | 1.40 | $ | 410.00 | $ | 574.00 |
| Iilyse M.  Homer | | 5.50 | $ | 403.18 | $ | 2,217.50 |
| Marc Shuster | | 63.10 | $ | 353.18 | $ | 22,285.50 |
| David Gay | | 54.30 | $ | 322.72 | $ | 17,523.50 |
| Isaac M. Marcushamer | | 96.10 | $ | 239.16 | $ | 22,983.50 |
| Judith W. Stoner | | 20.30 | $ | 187.22 | $ | 3,800.50 |
| **Paraprofessional** | | | | | | |
| Shenique Patton | | 1.50 | $ | 195.00 | $ | 292.50 |
| Christopher M. Tarrant | | 2.50 | $ | 193.00 | $ | 482.50 |
| Alma Herzowitz | | 0.90 | $ | 185.00 | $ | 166.50 |
| Luis Torres | | 5.60 | $ | 185.00 | $ | 1,036.00 |
| **Activity Total** | | **403.20** | | | $ | **147,060.00** |

| Activity Code #505: Asset Disposition/Preservation | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Paul S. Singerman | | 5.80 | $ | 558.28 | $ | 3,238.00 |
| Sheldon S. Polish | | 13.50 | $ | 470.00 | $ | 6,345.00 |
| Brain G. Rich | | 23.20 | $ | 448.28 | $ | 10,400.00 |
| Ilyse M. Homer | | 4.50 | $ | 408.33 | $ | 1,837.50 |
| Marc Suster | | 3.90 | $ | 345.00 | $ | 1,345.50 |
| David Gay | | 155.70 | $ | 333.31 | $ | 51,896.50 |
| Andrew M. Hinkes | | 0.50 | $ | 270.00 | $ | 135.00 |
| Isaac M. Marcushamer | | 33.60 | $ | 240.06 | $ | 8,066.00 |
| **Activity Total** | | **240.70** | | | $ | **83,263.50** |

| Activity Code #506: Financing | | Hours | Rate | Fees |
|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | **Rate** | **Fees** |
| Jordi Guso | | 1.70 | $ 500.00 | $ 850.00 |
| **Activity Total** | | **1.70** | | **$ 850.00** |

| Activity Code #507:Fee/Employment Application | | Hours | Rate | Fees |
|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | **Rate** | **Fees** |
| Charles H. Lichtman | | 2.30 | $ 535.00 | $ 1,230.50 |
| Paul S. Singerman | | 3.90 | $ 535.00 | $ 2,086.50 |
| Jordi Guso | | 0.90 | $ 500.00 | $ 450.00 |
| Ilyse M. Homer | | 2.50 | $ 404.00 | $ 1,010.00 |
| Marc Shuster | | 1.50 | $ 345.00 | $ 517.50 |
| David Gay | | 43.40 | $ 320.00 | $ 13,888.00 |
| Isaac M. Marcushamer | | 8.20 | $ 235.00 | $ 1,927.00 |
| **Paraprofessional** | | | | |
| Carmen Cruz | | 12.30 | $ 185.00 | $ 2,275.50 |
| Janette B. Diaz | | 2.50 | $ 185.00 | $ 462.50 |
| Kerry Goins | | 1.20 | $ 185.00 | $ 222.00 |
| Christopher M. Tarrant | | 9.00 | $ 185.00 | $ 1,665.00 |
| **Activity Total** | | **87.70** | | **$ 25,734.50** |

| Activity Code #509: Claims Administration/Objection | | Hours | Rate | Fees |
|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | **Rate** | **Fees** |
| Paul S. Singerman | | 7.70 | $ 537.27 | $ 4,137.00 |
| David Gay | | 1.00 | $ 320.00 | $ 320.00 |
| **Paraprofessional** | | | | |
| Christopher M. Tarrant | | 14.00 | $ 193.57 | $ 2,710.00 |
| **Activity Total** | | **22.70** | | **$ 7,167.00** |

| Activity Code #512: Executory Contracts/Leases | | Hours | Rate | Fees |
|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | **Rate** | **Fees** |
| Paul S. Singerman | | 3.00 | $ 542.50 | $ 1,627.50 |
| Jordi Guso | | 1.80 | $ 518.06 | $ 932.50 |
| Ilyse M. Homer | | 3.50 | $ 425.00 | $ 1,487.50 |
| Marc Shuster | | 16.00 | $ 346.88 | $ 5,550.00 |
| David Gay | | 119.70 | $ 332.11 | $ 39,754.00 |
| Isaac M. Marcushamer | | 1.90 | $ 260.00 | $ 494.00 |
| **Paraprofessional** | | | | |
| Carmen Cruz | | 1.00 | $ 185.00 | $ 185.00 |
| Alma Herzowitz | | 12.20 | $ 188.77 | $ 2,303.00 |
| Christopher M. Tarrant | | 40.00 | $ 189.63 | $ 7,585.00 |
| **Activity Total** | | **199.10** | | **$ 59,918.50** |

| Activity Code #513: Utilities | | Hours | Rate | Fees |
|---|---|---|---|---|
| **Paraprofessional** | | **Hours** | **Rate** | **Fees** |

| Alma Herzowitz | | 1.50 | $ | 195.00 | $ | 292.50 |
|---|---|---|---|---|---|---|
| **Activity Total** | | **1.50** | | | **$** | **292.50** |

| **Activity Code #514: Employee Benefits/Pension** | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Charles H. Lichtman | | 1.00 | $ | 535.00 | $ | 535.00 |
| Nick Jovanovich | | 114.60 | $ | 461.28 | $ | 52,862.50 |
| Isaac M. Marcushamer | | 44.70 | $ | 242.83 | $ | 10,854.50 |
| **Activity Total** | | **160.30** | | | **$** | **64,252.00** |

| **Activity Code #517: Settlement & Compromise** | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Ilyse H. Homer | | 0.40 | | | $ | 170.00 |
| Isaac M. Marcushamer | | 5.00 | | | $ | 1,195.00 |
| **Paraprofessional** | | | | | | |
| Janette B. Diaz | | 0.30 | | | $ | 55.50 |
| **Activity Total** | | **5.70** | | | **$** | **1,420.50** |

| **Activity Code #521: Accounting/Auditing** | | | | | | |
|---|---|---|---|---|---|---|
| **Paraprofessional** | | **Hours** | | **Rate** | | **Fees** |
| Christopher M. Tarrant | | 11.50 | $ | 188.04 | $ | 2,162.50 |
| **Activity Total** | | **11.50** | | | **$** | **2,162.50** |

| **Activity Code #522: Data Analysis** | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| David Gay | | 18.20 | $ | 323.98 | $ | 5,896.50 |
| **Activity Total** | | **18.20** | | | **$** | **5,896.50** |

| **Activity Code #524: Corporate Finance** | | | | | | |
|---|---|---|---|---|---|---|
| **Paraprofessional** | | **Hours** | | **Rate** | | **Fees** |
| Shenique Patton | | 1.90 | $ | 195.00 | $ | 370.50 |
| **Activity Total** | | **1.90** | | | **$** | **370.50** |

| **Activity Code #525: Tax Issues** | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | **Hours** | | **Rate** | | **Fees** |
| Bruce Udolf | | 1.30 | $ | 500.00 | $ | 650.00 |
| Sheldon S. Polish | | 3.50 | $ | 477.14 | $ | 1,670.00 |
| **Activity Total** | | **4.80** | | | **$** | **2,320.00** |

| **Activity Code #526: Reconstruction/Accounting** | | | | | | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | Hours | | Rate | | Fees |
| Frank P. Scruggs | | 18.20 | $ | 515.00 | $ | 9,373.00 |
| Sheldon S. Polish | | 1.50 | $ | 470.00 | $ | 705.00 |
| Isaac M. Marcushamer | | 0.50 | $ | 235.00 | $ | 117.50 |
| **Activity Total** | | **20.20** | | | **$** | **10,195.50** |

| Activity Code #501: Litigation Consulting | | Hours | Rate | | Fees | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | | | | | |
| Bruce Udolf | | 19.80 | $ | 548.48 | $ | 10,860.00 |
| Charles H. Lichtman | | 307.60 | $ | 548.34 | $ | 168,668.50 |
| Paul S. Singerman | | 43.10 | $ | 545.90 | $ | 23,528.50 |
| Frank P. Scruggs | | 47.60 | $ | 518.91 | $ | 24,700.00 |
| Jordi Guso | | 8.00 | $ | 503.75 | $ | 4,030.00 |
| James C. Cunningham, Jr. | | 51.90 | $ | 426.51 | $ | 22,136.00 |
| Ilyse M. Homer | | 6.50 | $ | 411.54 | $ | 2,675.00 |
| Jeffrey S. Wertman | | 6.00 | $ | 410.00 | $ | 2,460.00 |
| David Gay | | 1.60 | $ | 320.00 | $ | 512.00 |
| Andrew M. Hinkes | | 71.80 | $ | 283.41 | $ | 20,348.50 |
| Isaac M. Marcushamer | | 44.30 | $ | 252.27 | $ | 11,175.50 |
| **Paraprofessional** | | | | | | |
| Louise Meagher | | 1.50 | $ | 195.00 | $ | 292.50 |
| Shenique Patton | | 92.80 | $ | 191.38 | $ | 17,760.00 |
| Christopher M. Tarrant | | 12.50 | $ | 190.20 | $ | 2,377.50 |
| Luis Torres | | 87.90 | $ | 189.54 | $ | 16,660.50 |
| Kerry Goins | | 1.50 | $ | 185.00 | $ | 277.50 |
| Angie Verbeck | | 7.20 | $ | 185.00 | $ | 1,332.00 |
| Hulda Estama | | 0.20 | $ | 165.00 | $ | 33.00 |
| Carmen Cruz | | 1.50 | $ | 185.00 | $ | 277.50 |
| Fleta Sellers | | 0.50 | $ | 75.00 | $ | 37.50 |
| **Activity Total** | | **813.80** | | | $ | **330,142.00** |

| Activity Code #528: Relief from Stay | | Hours | Rate | | Fees | |
|---|---|---|---|---|---|---|
| **Partner, Associate** | | | | | | |
| Ilyse H. Homer | | 0.60 | $ | 400.00 | $ | 240.00 |
| David Gay | | 0.30 | $ | 345.00 | $ | 103.50 |
| **Paraprofessional** | | | | | | |
| Shenique Patton | | 3.20 | $ | 195.00 | $ | 624.00 |
| **Activity Total** | | **4.10** | | | $ | **967.50** |

| | EXHIBIT "C" - 1ST INTERIM FEE APPLICATION<br>EXPENSE SUMMARY | | | |
|---|---|---|---|---|
| 1 | Filing Fees | | $ | - |
| 2 | Mediation Fees | | $ | - |
| 3 | Process Service Fees | | $ | 463.00 |
| 4 | Recording Fees | | $ | - |
| 5 | Deposition Services | | $ | - |
| 6 | Court Reporter Fees and Transcripts | | $ | 283.60 |
| | a) Court Reporter | $ 185.00 | | |
| | b) Transcripts | $ 98.60 | | |
| 7 | Lien, UCC and Title Searches | | $ | 396.75 |
| 8 | Photocopies | | $ | 15,454.08 |
| | a) Copies of Court Documents/Certified Copies | $ 53.56 | | |
| | b) In-house Copies @ 0.15 ea | $ 13,867.35 | | |
| | c) Outside Copy Service | $ 983.17 | | |
| | d) Outside Services - Mail Outs | $ - | | |
| | e) Electronic Copies - DVD | $ 550.00 | | |
| 9 | Postage | | $ | 638.45 |
| 10 | Overnight Delivery Charges | | $ | 1,437.07 |
| 11 | Outside Professional Services | | $ | 192.88 |
| 12 | Outside Courier/Messenger Service | | $ | 855.75 |
| | a) Courier | $ 855.75 | | |
| | b) Messenger | $ - | | |
| 13 | Fax Transmissions ($1/page) | | $ | 622.00 |
| 14 | Computerized Research | | $ | 5,345.14 |
| | a) Pacer | $ 720.72 | | |
| | b) Westlaw/Lexis/Accurint | $ 4,524.97 | | |
| | c) Choicepoint Auto Track/ Accurint | $ 99.45 | | |
| 15 | Out of Southern District of Florida Travel | | $ | 188.20 |
| | a) Travel - Airfare | $ - | | |
| | b) Hotels | $ - | | |
| | c) Mileage, Parking and Tolls | $ 188.20 | | |
| | d) Taxi, Airport Transfers, travel meals | $ - | | |
| 16 | Telephone Charges | | $ | 1,346.51 |
| | a) Regular Long Distance Telephone Calls | $ 1,096.35 | | |
| | b) Genesys Conference Calls | $ 250.16 | | |
| | c) Court Call - Telephonic Attendance at Hearings | $ - | | |
| 17 | Other Permissible Expenses | | $ | 868.63 |
| | a) Working Meals with Client/ and Misc charges | $ 868.63 | | |
| | b) Word Processing | $ - | | |
| | c) Trial Exhibits | $ - | | |
| | d) Other (Adv. Daily Business Review) | $ - | | |
| | TOTAL REIMBURSEMENT REQUESTED | | $ | 28,092.06 |