**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                               CASE NO.:  09-34791-BKC-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,        CHAPTER 11

      Debtor.

_____/

**TRUSTEE'S MOTION TO COMPEL QTASK**
**TO COMPLY WITH ORDER OF CONTEMPT**

Herbert Stettin, Chapter 11 Trustee ("Trustee") of Rothstein Rosenfeldt Adler, P.A.

("RRA"), seeks the entry of an order to compel Qtask, Inc. ("Qtask") to comply with both this

Court's March 8, 2010 Order [D.E. #411], and its June 9, 2010 Order of Contempt [D.E. #776],

by producing responsive data described below, and states:

**I. BACKGROUND**

1.      The Trustee is confident the Court is well versed with the Qtask discovery

litigation to date, so instead of repeating the lengthy procedural history, we focus on the two

central orders in issue before the Court.  The first is the March 8, 2010 "Order Granting Motion

to Compel" [D.E. # 411], which required Qtask to:

    (a)     Produce ESI in its native format, including the production of all software required
           for full access and use of all ESI in its reasonably usable form, without
           downgrading the quality and functionality of that ESI, from the functionality
           experienced by any regular user of the Qtask system (D.E. #411, at ¶4);

    (b)     Produce all ESI "with its metadata" (D.E. #411, at ¶5);

    (c)     Provide the Trustee with access to the Qtask system for all former attorneys,
           associated staff of the former Rothstein Rosenfeldt Adler P.A. law firm ("RRA
           User," as well as for all parties who were invited to participate in Qtask
           ("Invitees") by any RRA User, by producing the login and password for all RRA
           Users and Invitees to the Trustee (D.E. #411, at ¶6);

(d)     Notify all Invitees by written notice that their access to Qtask is being turned over to the Trustee and requiring Invitees to provide their access credentials to the Trustee within two days of receipt of the notice, or that Qtask would reset the Invitees' login and password and provide them to the Trustee three days thereafter (D.E. #411, at ¶8).[1]

2.      The second order, which emanated out of a June 9, 2010 hearing on the Court's Order to Show Cause resulted in the Court entering its Order of Contempt [D.E. #766], which required Qtask to do the following things:

a.  Make Von Wolfsheild (Qtask's corporate officer) available to the Trustee's Counsel from July 6-9 to cooperate fully with the Trustee to provide full compliance with the Order Granting Motion to Compel;
b.  Pay all attorney's fees and costs incurred by the Trustee in furtherance of compelling Qtask's compliance with the Order Granting Motion to Compel from the date of the filing of the Motion to Compel Qtask through the date of the contempt hearing;
c.  To comply with the subpoena at issue no later than July 9, 2010.

3.      Indeed, Von Wolfshield met with Trustee's counsel and then Qtask produced data in a "flat text" form, and later created a "Shadowbox" system for the Trustee's exploration of Qtask data.  The "Shadowbox" is a parallel Qtask system that contains the data for the Qtask users and projects that fall within the scope of the subpoena, so that the Trustee can review the Qtask system.  Critical to the usefulness of the Shadowbox is the ability of the Trustee to log into the Shadowbox as any Qtask user, to review notes, person-to person conversations, calendar entries and individual meetings that exist independent of the data held within any "projects" that the specific Qtask user could access.

4.      However, this person-centric investigation on the Shadowbox is impossible if the Trustee cannot access the Shadowbox as the individual Qtask users. The only way to obtain that

---

[1] Two subsequent oral modifications were made to the March 8, 2010 order: a) time limitations of the data to be provided limited to data and communications that arose before the Notice of filing by Trustee; and, b) non-RRA employees were not subject to the March 8, 2010 Order.  Those modifications were first acknowledged by the Court in its Order of Contempt, and as discussed further, below, subsequently modified again to bring Invitees back within the scope of the subpoena at issue.

access is for Qtask to reset the passwords for those users on the Shadowbox, and to provide those reset passwords to the Trustee.  Von Wolfshield initially agreed to load that data stating, *"It should be easy then to take the "list of other names" and add it in, much easier of course than sending data and updating by USB drive and Harddrive :)."*  See Exhibit A.

5.    This led to the Trustee seeking court intervention on the issue of identifying Qtask users invited onto the system who were not former RRA employees (*i.e.* invitees). The end result was that the Court instructed the Trustee to provide a list of the Qtask users of interest to Qtask, who was to produce the data to the Trustee.  The Court continued the deadline for compliance and the status conference through July 23, 2010. *See* D.E. # 800.

6.    On July 21, 2010, the Trustee filed his Expedited Motion for Clarification [D.E. #824], focused on the Trustee's concern about preserving his work-product privilege as to Qtask investigatory targets.  At the July 23, 2010 status conference, the Court directed the Trustee to provide a list to Qtask of all users, including Invitees, who were the potential subject of the Trustee's investigation, and that Qtask was to produce to the Trustee the data in accordance with that list. The Court will recall the Trustee reported that Qtask produced a fairly large amount of data to the Trustee less than 24 hours before the status conference, leaving the Trustee unable to review the material before the hearing.  The Court reiterated that Qtask remained in contempt and continued the Status Conference to August 6, 2010.

7.    The Trustee then provided Qtask with his detailed list of Qtask investigatory targets and:

   a.   …all data for all projects  for which they are a member, and all person-specific data including, but not limited to: all personal (i.e. person-to-person) messages, personal meetings (and discussions, files and other data associated therewith) personal calendars, personal projects and other associated data for those listed persons in the flat text format similar to Qtask's prior productions; and

> b. … all data for those listed Qtask users (including the data listed above) by uploading all data for those users in to the shadowbox (i.e. the back-end server(s) for http://**REDACTED**.com) with those Qtask users' passwords reset to "abc123" (without the quotes).

*See* email correspondence attached (without attachment) as <u>Exhibit B</u>.

8.      Then, entirely ignoring the Court's mandate, Qtask attempted to negotiate the names of the user list with the Trustee, and its obligation to reset the passwords on the Shadowbox. See comments from Von Wolfshield dated 7/28/10-7/30/10, where he said, *"So far we have not reset anyone's password, that part of this is something to be worked out between Rob and court,"* and that they would not produce data or reset passwords for *"about 50 of …people [Qtask] could not show as being subject to the judge's request." See* Exhibit A. Further, Von Wolfshield clearly indicated that Qtask would not update any information or reset any Qtask User passwords on the Shadowbox, until Qtask's protestations about the Qtask User list were resolved to Qtask's satisfaction. *See* Exhibit A.  To be clear, the Trustee has continually stated he will not negotiate disclosure of his work product.

9.      At the Court's August 6, 2010 hearing, the Trustee explained that Qtask still not provided to the Trustee:

> a. Data (in any format) regarding at least 49 individuals named on the Trustee's User list provided to Qtask in accordance with D.E. 842;
> b. Reset passwords for any Qtask users whose data is populated on the Shadowbox;
> c. Project data (in any format) for multiple projects which were withheld by Qtask without explanation;
> d. Project data (in any format) which was withheld by Qtask at Robert Buschel's request.

The Trustee believes this is the remaining information he is entitled to receive, and that the Court has ordered Qtask to produce.

10.    Qtask still argues the Trustee should explain to Qtask why the Trustee wants to investigate each Qtask user.  [That issue is closed.]  Qtask further complained that it was burdensome for Qtask to change passwords for a subset of users or projects on the Shadowbox, and then have to go back again and change the passwords for another subset of users, until the Court ruled on the issue of the Trustee's User list.  [The Court already has dispositively concluded that issue as well].  The Court pointed out that Qtask entirely failed to file any motion for protective order, (which the Trustee would not understand anyway, since a contempt order was already in place), and the Court explained to Qtask that its position was wrong:

> "The Court: And I ordered you to comply with the list unless you got a court order" *See* the transcript of the August 6, 2010 hearing, attached hereto as <u>Exhibit C</u>, at pg 18, ln. 16-17.

20.    At the conclusion of the August 6, 2010 hearing, the Court imposed a $5,000 a day fine, to begin accruing on August 6, 2010, and directed that the Trustee file this motion.

## II. QTASK  SHOULD BE COMPELLED TO PRODUCE RESPONSIVE DATA

To make it easy for the Court, and without repeating the matters discussed above:

1.    Qtask must (a) produce the flat text data and (b) insert all data for all Qtask Users found on the Trustee's User list onto the Shadowbox.  Qtask has yet to produce this data and should be compelled to do so.

2.    Qtask is obligated by the subpoena and the Order to Compel, and the Contempt Order to "Produce ESI in its native format, including the production of all software required for full access and use of all ESI in its reasonably usable form, without downgrading the quality and functionality of that ESI, from the functionality experienced by any regular user of the Qtask system."  See D.E. #411, at ¶4. The only way to produce this data is by actually viewing the data

in Qtask through the Shadowbox. Qtask must reset the passwords for the Qtask users listed by the Trustee to a generic password, and to notify the Trustee of the generic password.

3.      Qtask has arbitrarily refused to produce data for projects which Qtask simply thinks should not be produced. For example, Mr. Buschel, Mr. Boden and Mr. Adler were all participants in a project called "ROLODEX Group" for which Qtask has failed to produce either flat text or Shadowbox data. The Court should compel Qtask to produce data for any project that any person listed on the Trustee's User List participated in from the beginning of the use of the Qtask system through November 10, 2009.

4.      Mr. Buschel, as a former partner at RRA, who is also a shareholder of and counsel to Qtask, has provided a list Qtask Projects over which he individually asserts a privilege against production to the Trustee. He argues that projects should be withheld from the Trustee for the following reasons:

        a. that projects are "private non-RRA projects";
        b. that projects are subject to other protective orders;
        c. that projects concern client files and the clients have objected to the disclosure
            of their project data after November 10, 2009;
        d. that projects include data for clients who are adverse to clients represented by
            Berger Singerman, P.A.

To the extent Buschel's objections are based on category a or c, above, the Trustee requests the Court order Qtask to produce flat text and Shadowbox data for those projects, with the data to be produced restricted to that which existed on or before November 10, 2009. To the extent Buschel's objections are based on category d, above, the Court should Order Qtask to provide access to that specific project to the Trustee's conflicts counsel, Genovese, Joblove, Battista.

### III. SANCTIONS AND CONCLUSION

Qtask refused to cooperate with the Trustee's subpoena, promising production but failing to deliver for months until the Trustee was left with no option but to seek the Court's assistance

to obtain Qtask's compliance.  After the Court entered its Order to Compel, Qtask refused to comply. Then, even after being placed into contempt, Qtask still refuses to comply, ignoring this Court's Orders.  The Court should require Qtask to (a) produce both flat and Shadowbox data for all Qtask users listed on the Trustee's User List, (b) reset all passwords for all Qtask Users listed on the Trustee's User List, keep that reset password confidential, and otherwise provide that reset password to the Trustee and his agents, only; (c) to Order Qtask to produce both flat and Shadowbox data for all projects that any Qtask users listed on the Trustee's User List had participated in or accessed on or before November 10, 2009; (d) to overrule Buschel's specific objections to the production of certain projects.  The Trustee is already entitled to his attorneys fees and now a $5,000 a day fine.  The Trustee wishes to bring this matter to a final conclusion and reduce the matter to judgment.

WHEREFORE, Trustee Herbert Stettin requests this Court enter an order in accordance with the foregoing and all such relief as the Court deems appropriate.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Regular U.S. Mail, postage prepaid, fax, email and/or overnight delivery upon all parties on the attached Service List this 11th day of August, 2010.

Respectfully submitted,

BERGER SINGERMAN
Attorneys for Chapter 11 Trustee
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, FL  33301
Telephone:  (954) 525-9900
Direct:     (954) 712-5138

By:   /s/   Charles H. Lichtman
      Charles H. Lichtman
      Florida Bar No.  501050
      clichtman@bergersingerman.com

3008182-3

7

## MASTER SERVICE LIST
CASE NO.: 09-34791-BKC-RBR

Marianella Morales, Esquire
Authorized Agent For Joining Creditors
Avenida Francisco de Miranda
Torre Provincial "A"
Piso 8
Caracas, Venezuela
**(VIA CM/ECF and EMAIL)**

John H. Genovese, Esq.
Robert F. Elgidely, Esq.
Theresa M.B. Van Vliet, Esq.
Genovese Joblove & Battista, PA
Bank Of America Tower at International
Place
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
**(VIA CM/ECF and EMAIL)**

Kendall Coffey, Esq.
Coffey Burlington,
Office in the Grove
Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
kcoffey@coffeyburlington.com
**(VIA CM/ECF and EMAIL)**

The Honorable Herbert M. Stettin
One Biscayne Tower
Suite 3700
Two South Biscayne Boulevard
Miami, Florida 33131
**(VIA U.S. MAIL and EMAIL)**

John G. Bianco, Esq.
John M. Mulli, Esquire
Tripp Scott
110 Southeast Sixth Street
Fifteenth Floor
Fort Lauderdale, Fl.  33301
jgb@trippscott.com
**(VIA CM/ECF and EMAIL)**

Alison W. Lehr, Esq.
Grisel Alonso, Esq.
Assistant United States Attorney
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132
Alison.Lehr@usdoj.gov
Grisel.alonso@usdoj.gov
**(VIA CM/ECF and EMAIL)**

Jeffrey R. Sonn, Esq.
Sonn & Erez, PLC
Broward Financial Center
500 E. Broward Boulevard
Suite 1600
Fort Lauderdale, Florida  33394
jsonn@sonnerez.com
**(VIA CM/ECF and EMAIL)**

Office of the US Trustee
51 Southwest First Avenue
Suite 1204
Miami, Florida  33130
**(VIA CM/ECF and EMAIL)**

Thomas Tew, Esq.
Tew-Cardenas, LLP
Four Seasons Tower
15th Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
tt@tewlaw.com
 **(VIA CM/ECF and EMAIL)**

Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
bs@conradscherer.com
JSilver@conradscherer.com
**(VIA CM/ECF and EMAIL)**

2441794-1

## MASTER SERVICE LIST
CASE NO.: 09-34791-BKC-RBR

Michael D. Seese, Esq.
Hinshaw & Culbertson, LLP
1 E Broward Blvd Ste 1010
Ft Lauderdale, Florida 33301
mseese@hinshawlaw.com
**(VIA CM/ECF and EMAIL)**

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114
**(Via U.S. Mail)**

Internal Revenue Service
Special Procedures - Insolvency
7850 SW 6th Court
Plantation, FL 33324
**(Via U.S. Mail)**

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, Fl 33130
**(Via U.S. Mail)**

United Healthcare
Dept. CH 10151
Palatine, IL 60055
**(Via US Mail)**

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906
**(Via U.S. Mail)**

The Honorable Eric H. Holder, Jr.
Attorney General of the U.S.
950 Pennsylvania Avenue, NW Room 4400
Washington, DC  20530-0001
**(Via U.S. Mail)**

Honorable Jeffrey H. Sloman,
Acting U.S. Attorney
99 NE 4th Street
Miami, Fl  33132
**(Via U.S. Mail)**

Daniel Mink
Ovadia Levy
c/o Renato Watches, Inc
14051 NW 14th Street
Sunrise, Florida 33323
**(Via U.S. Mail)**

William George Salim, Jr.
Moskowitz Mandell & Salim
800 Corporate Dr Ste 510
Fort Lauderdale, Florida 33334
wsalim@mmsslaw.com
**(VIA CM/ECF and EMAIL)**

USI
Attn: Anthony Gruppo
200 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33309
Anthony.gruppo@usi.biz
**(VIA EMAIL)**

Marc Nurik, Esq.
1 East Broward Blvd
Suite 700
Fort Lauderdale, FL 33301
marc@nuriklaw.com
**(VIA EMAIL)**

BAST AMRON LLP
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida 33131
bamron@bastamron.com
jbast@bastamron.com
**(VIA CM/ECF and EMAIL)**

# MASTER SERVICE LIST
CASE NO.: 09-34791-BKC-RBR

Mark Bloom, Esq.
John B. Hutton, Esq.
Greenberg Traurig, LLP
1221 Brickell Avenue
Miami, FL 33131
bloomm@gtlaw.com
huttonj@gtlaw.com
**(VIA CM/ECF and EMAIL)**

Robert D. Critton, Esq.
Burman, Critton, Luttier & Coleman
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com
**(VIA CM/ECF and EMAIL)**

Roth & Scholl
Attn: Jeffrey C. Roth, Esq.
Attorneys For Creditor Blue
Capital Us East Coast Properties, L.P.
866 South Dixie Highway
Coral Gables, Fl 33146
jeff@rothandscholl.com
**(VIA CM/ECF and EMAIL)**

Rogers, Morris & Ziegler, LLP
1401 East Broward Blvd
Suite 300
Fort Lauderdale, FL 33301
mfbooth@rmzlaw.com
**(VIA CM/ECF and EMAIL)**

Arthur C. Neiwirth, Esq.
One E. Broward Blvd., Suite 1400
Ft. Lauderdale, FL 33301
aneiwirth@qpwblaw.com
**(VIA CM/ECF and EMAIL)**

The Florida Bar
Adria E. Quintela, Esq.
Alan Anthony Pascal, Esq.
Lake Shore Plaza II
1300 Concord Terrace, Suite 130
Sunrise, FL 33323
aquintel@flabar.org
apascal@flabar.org
**(VIA CM/ECF and EMAIL)**

Micheal W. Moskowitz, Esq.
800 Corporate Drive, Suite 500
Ft. Lauderdale, FL 33234
mmoskowitz@mmsslaw.com
**(VIA CM/ECF and EMAIL)**

Francis L. Carter, Esq.
Katz Barron Squitero Faust
2699 S. Bayshore Drive, 7th Floor
Miami, Florida 33133
flc@katzbarron.com
**(VIA CM/ECF and EMAIL)**

Bradley S. Shraiberg, Esq.
2385 NW Executive Drive
Suite 300
Boca Raton, Florida 33431
bshraiberg@sfl-pa.com
**(VIA CM/ECF and EMAIL)**

Henry S. Wulf, Esq.
CARLTON FIELDS, P.A.
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401
E-Mail: hwulf@carltonfields.com
**(VIA CM/ECF and EMAIL)**

EMESS Capital, LLC
c/o Bruce A. Katzen, Esq.
201 S. Biscayne Blvd., 17th Floor
Miami, Florida 33131
E-Mail: bkatzen@klugerkaplan.com
jberman@klugerkaplan.com
**(VIA CM/ECF and EMAIL)**

# MASTER SERVICE LIST
CASE NO.: 09-34791-BKC-RBR

Ira Sochet, Trustee
Revocable Intervivos Trust of Ira Sochet
c/o Phil Hudson, Esq.
200 South Biscayne Blvd, Suite 3600
Miami, Florida 33130
E-Mail: pmhudson@arnstein.com
**(VIA CM/ECF and EMAIL)**

Coquina Investments
c/o Patricia A. Redmond, Esq.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
E-Mail: predmond@stearnsweaver.com
**(VIA CM/ECF and EMAIL)**

Michael I. Goldberg, Esq.
Las Olas Centre - Suite 1600
350 East Las Olas Blvd
Fort Lauderdale, FL 33301
E-Mail: Michael.goldberg@akerman.com
Eyal.berger@akerman.com
**(VIA CM/ECF and EMAIL)**

LMB Funding Group
c/o Robert C. Furr, Esq.
2255 Glades Road, Suite 337W
Boca Raton, Florida 33431
E-Mail: rfurr@furrcohen.com
**(VIA CM/ECF and EMAIL)**

Lawrence A. Gordich, Esq.
Melissa Alagna, Esq.
SEGALL/GORDICH P.A.
801 Brickell Avenue, Suite 900
Miami, Florida 33131
Email: lag@segallgordich.com
Email: mma@segallgordich.com
**(VIA CM/ECF and EMAIL)**

Broward County
Attn: Hollie N. Hawn, Esq.
Government Center
115 South Andrews Avenue
Fort Lauderdale, FL 33301
E-Mail: hhawn@broward.org
**(VIA CM/ECF and EMAIL)**

Steven J. Solomon, Esq.
Gray Robinson, P.A.
1221 Brickell Ave, Suite 1600
Miami, Florida 33131
E-Mail – steven.solomon@gray-robinson.com
**(VIA CM/ECF and EMAIL)**

Peter F. Valori, Esq.
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
E-mail: pvalori@dvllp.com
**(VIA CM/ECF and EMAIL)**

Canon Financial Services, Inc.
158 Gaither Drive, #200
Mount Laurel, NJ 08054
**(Via US Mail)**

CIT Technology Financing Services I, LLC
10201 Centurion Parkway North
Jacksonville, FL 32256
**(Via US Mail)**

Gibraltar Private Bank & Trust Company
220 Alhambra Circle, Suite 500
Coral Gables, FL 33134
**(Via US Mail)**

Inter-Tel Leasing, Inc.
1140 West Loop North
Houston, TX 77055
**(Via US Mail)**

Florida Department of Revenue
501 S. Calhoun Street
Room 201
Carlton Building
Tallahassee, FL 32399
**(Via US Mail)**

## <u>MASTER SERVICE LIST</u>
CASE NO.: 09-34791-BKC-RBR

Leon County Tax Collector
315 S. Calhoun Street
Suite 210
Tallahassee, FL 32301
**(Via US Mail)**

Miami-Dade County Tax Collectors
140 West Flagler Street, 14th Floor
Miami, FL 33130
**(Via US Mail)**

Palm Beach County Tax Collector
P.O. Box 3715
West Palm Beach, FL 33402-3715
**(Via US Mail)**

THE LAW OFFICES OF
GEOFFREY D. ITTLEMAN, P.A.
440 North Andrews Avenue
Fort Lauderdale, Florida 33301
**(Via US Mail)**

Carpenter & Berger, PL
6400 N. Andrew Ave, suite 370
Fort Lauderdale, FL 33309
**(Via US Mail)**

Frank F. McGinn, Esq.
Bartlett Hackett Feinberg, P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
ffm@bostonbusinesslaw.com
**(VIA CM/ECF and EMAIL)**

Darol H. M. Carr, Esq.
99 Nesbit Street
Punta Gorda, FL 33950
dcarr@farr.com
**(VIA CM/ECF and EMAIL)**

Jane A. Bee, Esq.
Blank Rome LLP
130 North 18th Street
Philadelphia, PA 19103-6998
bee@blankrome.com
(**VIA EMAIL**)

Roderick F. Coleman, Esq.
400 South Dixie Highway, Suite 121
Boca Raton, FL 33432
rfc@colemanattorneys.com
**(VIA CM/ECF and EMAIL)**

Mark S. Haltzman, Esq.
Lamm Rubenstone, LLC
3600 Horizon Blvd, Suite 200
Trevose, PA 19053
mhaltzman@lammrubenstone.com
**(VIA CM/ECF and EMAIL)**

Robert C. Buschel, Esq.
100 S.E. Third Ave, Suite 1300
Fort Lauderdale, FL 33394
**buschel@bglaw-pa.com**
**(VIA CM/ECF and EMAIL)**

Berkowitz Dick Pollack & Brant
Certified Public Accountants & Consultants,
LLP
200 S Biscayne Boulevard, Sixth Floor
Miami, FL  33131-2310
Attn: Richard Pollack
**(Via Email and U.S. Mail)**

MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Attn: James C. Moon, Esq.
jmoon@melandrussin.com
Attn: Peter D. Russin, Esq.
prussin@melandrussin.com
Attn: Michael S. Budwick, Esq.
mbudwick@melandrussin.com
**(VIA CM/ECF and EMAIL)**

Gary S. Blake, Esq.
1499 W. Palmetto Park Rd
Suite 300
Boca Raton, FL 33486
gblake@lglaw.net
**(VIA CM/ECF and EMAIL)**

# MASTER SERVICE LIST
## CASE NO.: 09-34791-BKC-RBR

Melinda S. Thornton, Esq.
Assistant County Attorney
County Attorney's Office
2810 Stephen P. Clark Center
111 N.W. First Street
Miami, Fl 33128-1993
Email: cao.bkc@miamidade.gov
**(VIA CM/ECF and EMAIL)**

SLATKIN & REYNOLDS, P.A.
Attorneys for Russell Adler and Katie Adler
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301
Telephone 954.745.5880
Facsimile 954.745.5890
jslatkin@slatkinreynolds.com
**(VIA CM/ECF and EMAIL)**

ASSOULINE & BERLOWE, P.A.
213 East Sheridan Street, Ste. 3
Dania Beach, FL 33004
Attn: Eric N. Assouline, Esq.
ena@assoulineberlowe.com
**(VIA CM/ECF and EMAIL)**

Steven J. Reisman, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
E-mail: sreisman@curtis.com
**(Via Email and U.S. Mail)**

Turner P. Smith, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
E-mail: tsmith@curtis.com
**(Via Email and U.S. Mail)**

Maryann Gallagher, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue

New York, NY 10178-0061
E-mail: mgallagher@curtis.com
**(Via Email and U.S. Mail)**

ILEANA CRUZ BONGINI, ESQ.
icruz@stearnsweaver.com
STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON,
P.A.
Coquina Investments
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
**(VIA CM/ECF and EMAIL)**

Lynn Maynard Gollin
lgollin@gordonrees.com
Gordon & Rees LLP
Four Seasons Tower
15th Floor
1441 Brickell Avenue
Miami, FL 33131
**(VIA CM/ECF and EMAIL)**

# EXHIBIT A



Qtask Discussions

File   Edit   View   History   Bookmarks   Window   Help

+  https://www.qtask.com/qutit.fcg#chat?linktype=2&id=144465

Apple   Yahoo!   Google Maps   YouTube   Wikipedia   News (10) ▼   Popular ▼

qtask    ⌂ All projects    Find one project.    Global search.    Help ▼   Sign out Trustee

**Tom** — More ▼
I think that this list is being developed but in the mean time, how is the development of our mini qtask site going? The site would certainly expedite the review of the data.
15/7/10   ❄ Cold ▼   ☆ Read

**Reichart**
Tom thanks for the update.

We started in earnest the day the 4 of us met. The team has the plan in place, and Monday we met (4 of my team) and reviewed how to bring up another full copy of the system with the RRA.

They are working on this now, and we hope to have something start of next week. Our plan is set up BS's IT with VPN, which they can show to Drew.

It would be cool to get their IT lead in here.

I should be easy then to take the "list of other names" and add it in, much easier of course than sending data and updating by USB drive and Harddrive :)

Would like to know if the data on the harddrive we delivered looked good.
I'm going to stand my bet of $1 that there is nothing useful all said and done, but I sure hope there is, because then Qtask can use it as a marketing point :)
15/7/10   ❄ Cold ▼   ☆ Read

More ▼
We have been copying data from Qtask live to the Shadow box over the weekend and even now. While it "seems" like one would just take the data we gave you on the harddrive and do it that way, it really can't work this way since there are hundreds if not thousands of connections and historical data that would be lost that is too subtle.

So we are building a complete shadow, then removing stuff that has nothing to do with you guys, like Disney stuff, etc.

We think we will have the complete Shadow box set up in the next few days. Which is to say, a Qtask version of what we already gave you.

(just reminder, there were something like 60 files that had long file names that were not updated on what we gave you, these WILL be on the Shadow box though of course)
19/7/10   ❄ Cold ▼   ☆ Read

More ▼   Drew, any updates on your side?

Type your message here. Press [Ctrl + [Return]] to post the message from the keyboard.   [Ctrl] [Return]

📎 Attach files   📎 Pick file

Trustee
Find...
144 More...
Erni
Gabriel
Reichart
Shelley
Jim
Rob
Rader
Charissi





Qtask: Discussions

File  Edit  View  History  Bookmarks  Window  Help

+ https://www.qtask.com/qult.fcg#chat?linktype=2&id=144465

Apple  Yahoo!  Google Maps  YouTube  Wikipedia  News (10) ▼  Popular ▼

qtask

All projects    Find one project.    Global search.    Help ▼    Sign out Trustee

From:

I asked Drew to post this email here. He did not. So I will. Reichart: please respond accordingly.

From: Andrew M. Hinkes [ ✓ ➡ ]
Sent: Tuesday, July 20, 2010 5:01 PM
To: Robert Buschel
Cc: Andrew M. Hinkes; Thomas Sadaka; Charles H. Lichtman
Subject: Qtask follow ups:

Robert-

I've spoken with Tom and the below is our current "open item" list:

1. We need a list of all projects that any former RRA employee/user were members of at any time from the beginning of time through November 10, 2009 which Qtask is not
providing, including the names of the project, and the names of all persons who were members of those projects as of October 28, 2009;

2. Regarding the "Flat data":
   a. Please confirm that the data project histories for all projects provided will be provided;
   a. Please confirm that the data will include membership info and histories for each project as November 10, 2010;

3. Regarding the "shadowbox" which is said to be in progress-
   a. Please confirm that shadowbox will have the full history for all data points in the project
   b. Please confirm that the shadowbox will include full memberships in the projects (i.e. if there invitees or third parties who were members, that their membership and
   contributions are contained in the shadowbox)

When does Qtask anticipate making the Shadowbox available to Tom and me for testing & verification?

Tom, if I missed anything, please respond with any other open items ASAP.

Thank you,
-Drew

Good morning Tom and Drew,

More ▼

Type your message here. Press [Ctrl] + [Return] to post the message from the keyboard.

Attach files    Pick file

[Ctrl] [Return]

7/27/10
❄ Cold ▼
☆ Read

7/27/10
❄ Cold ▼

Trustee
Find...
144 More...
Chelsi
Rob
Erik
Gabriel
Reichart
Shelley
Jim
Rudler



qtask... | All projects | Find one project... | | More ▼

Apple  Yahoo!  Google Maps  YouTube  Wikipedia  News (10) ▼  Popular ▼

https://www.qtask.com/qalit.fcg#chat?linktype=2&id=144465

Global search...  Q~ Google

Help ▼    Sign out Trustee

**Drew**

Good morning Tom and Drew,

Our team has been working around the clock since we last met, and we have built from scratch a complete system and brought up a full mirror of Qtask. We call this a shadow box.

On t we have placed what we hope to be a complete copy of all data within the metrics so far provided, such as between the known dates ending in Nov 1, 2009, and containing all the projects identified so far.

Of course we seek your review to confirm you have access to what you expect to have access to of RRAs.

In addition, we have done with this Shadow box what we had done with the live site, and invited both the Trustee email and Tom to the system as well, giving you even more power and insight into the data.

There may be some oddities, our only focus was confirming what should not be there, not what should be there, since we are still a bit blind to that. We are standing by and are here to help you in any way we can to ensure you have everything.

Drew seems to have gone quiet (from my POV), and we have not seen notice of inviting BS's IT person, so Tom I assume you are serving the role of all contact.

Website: ▮▮▮▮
Trustee email password ▮▮▮▮▮▮▮ burgersingerman.

Anyone that you already have the password for should still work, keeping in mind their password would be what ever it was as of Nov 1.

I can also be reached directly by phone ▮▮▮▮▮▮ or skype ▮▮▮▮▮▮

Tom, in response to Drew's email outside of this project... (copied over by Rob manually)

1 A: "List of unrelated third parties"

We have already provided a list of projects not part of RRA that have been excluded (and including the source code to the query).

I'm not clear what part of any order says we are meant to hand over a list unrelated third parties. This is not a hostile point, rather, still attempting to understand the scope here.

Never-the-less, since the list seems to be only projects excluded by Rob, if he wishes to provide you the list of people, he can do so.

*Type your message here. Press [Ctrl + [Return]] to post the message from the keyboard.*

Attach files   📎 Pick file

Trustee

Find:
144 More...

Rob
Erik
Gabriel
Reinhart
Shelley
Jim
Diksel
Butler

2/7/10
❄ Cold ▼
☆ Read

2/7/10
❄ Cold ▼
☆ Read



Qtask: Discussions

qtask

Apple   Yahoo!   Google Maps   YouTube   Wikipedia   News (10) ▾   Popular ▾

https://www.qtask.com/qalit.fcg#chat?&rkype=2&id=144465

Global search...                                                    Q        Help ▾   Sign out Trustee

⌂ All projects          Find one project...

Tom, in response to Drew's email outside of this project... (copied over by Rob manually)                    2/27/10

1 A: "List of unrelated third parties"                                                                    ⊗ Cold ▾
                                                                                                          ☆ Read
We have already provided a list of projects not part of RRA that have been excluded (and including the source code to the query).

I'm not clear what part of any order says we are meant to hand over a list of unrelated third parties. This is not a hostile point, rather, still attempting to understand the scope here.

Never-the-less, since the list seems to be only projects excluded by Rob, if he wishes to provide you the list of people, he can do so.

2 a A: "Flat data" (er, "projects provided will be provided")

Indeed, all things provided...will be provided.  (see  W en.wikipedia.org... )

2 b A: "histories for each project as November 10, 2010"

In all of our communications, examples of scope, etc. we have been using the 1st of November as the end date.

3. A: Regarding the "shadowbox" which is said to be in progress-

It is more than "said", it is REANIMATED!) Please review my previous post here of today.

3. a. A: "history"

Indeed, it is simply a complete working mirror of Qtask, and this is its default functionality.

3. b. A: "include full memberships"

Indeed, it is simply a complete working mirror of Qtask, and this is its default functionality.

As far as Qtask is aware, we have completed our legal obligations under both the court orders and the subpoena.

Reichart, I'm not able to get in. I assumed that the "email" was the ones we were previously invited under, mine being ▬▬▬▬▬ and then the password you                    2/27/10
referenced above. Following that methodology, neither Drew nor I are able to access the system. Additionally, my understanding was tant the shadowbox would have all       ⊗ Cold ▾
the applicable data and users and that the users passwords would be stripped so we could access as each person with a password to ABC or 123. Is that how it is            ☆ Read

More ▾

Type your message here. Press [Ctrl] + [Return] to post the message from the keyboard.

⧉ Attach files   ⎙ Pick file                                                        [Ctrl+Return]



**qtask** Discussions

https://www.qtask.com/qualit.fcgi#chat#rk#type=2&id=144465

Apple   Yahoo!   Google Maps   YouTube   Wikipedia   News (10) ▼   Popular ▼

Find one project...

All projects

Global search...

Help ▼   Sign out Trustee

**Tom** ▼
More ▼

Reichart, I'm not able to get in. I assumed that the "email" was the ones we were previously invited under, mine being ████████ and then the password you referenced above. Following that methodology, neither Drew nor I are able to access the system. Additionally, my understanding was that the shadowbox would have all the applicable data and users and that the users passwords would be stripped so we could access as each person with a password to ABC or 123. Is that how it is currently set-up?

2/27/10
❄ Cold ▼
☆ Read

**Reichart**

Tom, I just checked, and using: ████████

"Worked perfectly, please confirm you do not have any spaces before or after any part of these words.

"Additionally, my understanding was that the shadowbox would have all the applicable data and users and that the users passwords would be stripped so we could access as each person with a password to ABC or 123. "

2/27/10
❄ Cold ▼
☆ Read

Right, and the Judge asked BS to give us that list, correct?
We tend to do things in batches, so we had expected to get a list from you of all parties of interest.
We are NOT being difficult, rather, just doing things in order.

2/27/10
❄ Cold ▼
☆ Read

**More** ▼

...we are also updating the end date of the data to Nov 9th, 11:59pm.
And moving any data that might not be on the Shadow box to ensure that it is there.

2/27/10
❄ Cold ▼
☆ Read

**More** ▼

We are going to update the data right now with the increased date range.
This may knock you off ████████

2/27/10
❄ Cold ▼
☆ Read

**More** ▼

Ok, done. You may need to sign in a again.

2/27/10
❄ Cold ▼
☆ Read

**More** ▼

Tom, (...and Drew) regardless of the on going silliness outside of here, I'm planning to just focus down on you, and help you get what you need.

2/37/10
❄ Cold ▼

Type your message here. Press (Ctrl) + (Return) to post the message from the keyboard.

Attach files    Pick file

(Ctrl) (Return)

Trustee
Find
144 More...
Shelley
Rob
Emi
Gabriel
Reichart
Jon
Chelsi
Butler



Qtask: Discussions

https://www.qtask.com/qtask.fcgi#chat?lrktype=2&id=144465

Apple  Yahoo!  Google Maps  YouTube  Wikipedia  News (10) ▼  Popular ▼

qtask:~.·.        All projects    Find one project...

Global search...    🔍    Help ›  Sign out  Trustee

Rob    Tom, (...and Drew) regardless of the on going silliness outside of here, I'm planning to just focus down on you, and help you get what you need.    23/7/10

So, please confirm you were able to get in, and tell me what we can tweak next for you.    😎 Cold ▼
                                                                                                                                                    ☆ Read ▼

From: Andrew M. Hinkes [·✓·]    27/7/10
Sent: Tuesday, July 27, 2010 12:29 PM    😎 Cold ▼
To: Robert Buschel    ☆ Read ▼
Cc: Andrew M. Hinkes; Thomas Sadaka; Charles H. Lichtman; Lisa Webster
Subject: Qtask users

Robert-
Attached, please find a list of the Qtask users whose Qtask data and access rights are to be produced in accordance with Judge Ray's many orders.

For each listed Qtask user:
1. Please produce all data for all projects for which they are a member, and all person-specific data including, but not limited to: all personal (i.e. person-to-person)
messages, personal meetings (and discussions, files and other data associated therewith) personal calendars, personal projects and other associated data for those
listed persons in the flat feed format similar to Qtask's prior productions;
2. Please produce all data for those listed Qtask users (including the data listed above) by uploading all data for those users in to the shadowbox (i.e. the back - end
server(s) for [___]           with those Qtask users' passwords reset to "abc123" (without the quotes).

Please note that the Trustee reserves his right to supplement this list. Also, please keep me apprised via email of your progress in producing all data for the listed Qtask
users as described above.

Thank you,

More ▼

Reichart    Looked through the list, removed all the duplicates (89 of them).  Cleaned it up and obviously we have a few questions.   Created a clean list for Rob of people to get more    28/7/10
information on  (for example non RRA people).    😎 Cold ▼
                                                                                                                                                    ☆ Read ▼
You don't need to wait on us to use the ShadowBox to look at projects since it opens up everything we are aware of at this point.

Drew and Tom,    29/7/10

Attached is a link to your original list, cleaned up, and with comments.    😎 Cold ▼
                                                                                                                                                    ☆ Read ▼
Drew, you redacted and correlated our list, summed to Court order

More ▼

Type your message here. Press [Ctrl] + [Return] to post the message from the keyboard.    Ctrl-Return

Attach files    Pick file

Trustee

Find...
144 More...

Shelley

Rob

Erik

Gabriel

Reichart

Jim

Diskel

Radler



Qtask: Discussions

qtask

URL: https://www.qtask.com/qult.fcgi#chat?linktype=2&id=144465

Apple   Yahoo!   Google Maps   YouTube   Wikipedia   News (10) ▼   Popular ▼

Q▾ Google

Global search...

Help ▾   Sign out Trustee

All projects        Find one project...

Drew and Tom,

Attached is a link to your original list, cleaned up, and with comments.

Drew, you provided an xl-spreadsheet list, pursuant to Court order.

89 were duplicates, so we removed those.
49 are not RRA employees that we could find.
10 did not have RRA email addresses, but either Rob or Russell Adler confirmed they were employees of RRA, so we will include them in the next run.

The rest were already provided.

📄 rra-bs-list.xls

Remember, Qtask is your friend :)

More ▼

Hello Gentleman, another weeks goes by...
Would really love to keep the lines of communication here open and moving.
Any feedback?

Also, Drew, you owe me a drive, Tom, you owe me a USB mem card.

More ▼

I thought I gave you back the USB memory card in court on the date of the first hearing. If not, I must have given it to Drew. I will follow-up.

As for the production thus far, I'm still actively reviewing and looking at the data. As for the "new" data based upon the individuals listed in the xl spreadsheet, were the passwords of those included users reset?

Tom

More ▼

Tom, indeed...I got one USB, there are two.

So far we have have not reset anyone's password, that part of this is something to be worked out between Rob and court.

Personally I'm looking for errors, or data that I'm blind to. I want to make sure the formulas and search rules are "correct".
In other words, I'm in charge of technical, and Rob is in charge of "rights".

Reichart

Type your message here. Press [Ctrl + Return] to post the message from the keyboard.

📎 Attach files   📄 Pick file



qtask.

https://www.qtask.com/qtask.fcgi#chat?linktype=2&id=144465 — Global search.

Apple   Yahoo!   Google Maps   YouTube   Wikipedia   News (10) ▼   Popular ▼

Q▾ Google

Help ▾   Sign out Trustee

All projects    Find one project...

**Reichart**

Tom, indeed...I got one USB, there are two.

So far we have not reset anyone's password, that part of this is something to be worked out between Rob and count.

Personally I'm looking for errors, or data that I'm blind to. I want to make sure the formulas and search rules are "correct". In other words, I'm in charge of technical, and Rob is in charge of "rights".

It might make sense for you and I if we matched up on this too, as in you and I confirm you get the data specific, and Drew and Rob can enjoy the "debate" of access with Judge. :)

More ▼

**Tom**

During out discussions prior to and during the set-up of the shadow box it was my understanding that the passwords were going to be reset (indeed, one of the main reasons to use the shadow box instead of the Qtask live), so that the data could be reviewed from the user centric view. It is somewhat difficult to confirm data and therefore the formulas and search rules, if one cannot access directly as the user. No?  My hope would be that Rob's work out would be sooner than the next hearing so that a resolution can be reached at that hearing as to compliance.  If there is going to be another argument as to the password reset, won't that just push us off to another date and prolong this process?

More ▼

**Reichart**

Correct, we have several things going on though.

Step one was to ensure the basic system works (it seems to)
Next we want to ensure we had included a complete list of people, which we are still working out.

It costs time and money (the time part meaning we are falling in our duties in our real businesses) every time we fetch some data for this.
I mentioned several weeks ago my goal is to do a complete update with all data.

As I understand it, the judge said "TRRA employees". BUT........(again, assuming you assume we are actually trying to be helpful here, how is that for being meta?), Even we will help you include people that can be identified as working for RRA, and that should be included in the scope of the data.  This is not about semantics to me in any form.

This is discovery process for me, not a rote librarian job where we check out books from a library.

So as it stands, there is this list of names BS gave us, and we have commented on them, and about 50 of them are people we could not show as being subject to the judge's request.
10 are people we all agree should be, and indeed we will add them to the next run.

Rob and I would like to suggest we get on the phone together and work through the list of names.
I think we accomplish a lot when we speak to each other directly.  Drew and Rob should work out the time, this is my highest priority, so I should not be in the way of any

Type your message here. Press [Ctrl] + [Return] to post the message from the keyboard.

Attach files | Pick file

[⌘] [Return]

Trustee
Find.
144 More...

Shelley
Rob
Emi
Gabriel
Reichart
Jim
Chelsi
Rudler

30/7/10   ❄ Cold ▼   ☆ Read

30/7/10   ❄ Cold ▼   ☆ Read

30/7/10   ❄ Cold ▼   ☆ Read



Qtask Discussions

qtask

Apple  Yahoo!  Google Maps  YouTube  Wikipedia  News (10) ▼  Popular ▼

https://www.qtask.com/qutil.fcg/#chat?linktype=2&id=144465

Global search...

⌂ All projects    Find one project ▼    Help ▼  Sign out Trustee

Judge. :)

**Tom ▼**
More ▼

During out discussions prior to and during the set-up of the shadow box it was my understanding that the passwords were going to be reset (indeed, one of the main reasons to use the shadow box instead of the Qtask live), so that the data could be reviewed from the user centric view. It is somewhat difficult to confirm data and therefore the formulas and search rules, if one cannot access directly as the user. No? My hope would be that Rob's work out would be sooner than the next hearing so that a resolution can be reached at that hearing as to compliance. If there is going to be another argument as to the password reset, won't that just push us off to another date and prolong this process?    307/10 ☆
    ❄ Cold ▼
    ☆ Read

**Fletchart**
Correct, we have several things going on though.

Step one was to ensure the basic system works (it seems to)
Next we want to ensure we had included a complete list of people, which we are still working out.

It costs time and money (the more time part meaning we are failing in our duties in our real businesses) every time we fetch some data for this.
I mentioned several weeks ago my goal is to do a complete update with all data.

As I understand it, the judge said "RRA employees". BUT..........(again, assuming you assume we are actually trying to be helpful here, how is that for being meta?). Even we will help you include people that can be identified as working for RRA, and that should be included in the scope of the data. This is not about semantics to me in any form.

This is discovery process for me, not a role librarian job where we check out books from a library.

So as it stands, there is this list of names BS gave us, and we have commented on them, and about 50 of them are people we could not show as being subject to the judge's request.
10 are people we all agree should be, and indeed we will add them to the next run.

Rob and I would like to suggest we get on the phone together and work through the list of names.
I think we accomplish a lot when we speak to each other directly. Drew and Rob should work out the time, this is my highest priority, so I should not be in the way of any time you guys are good with.    307/10 ☆
    ❄ Cold ▼
    ☆ Read

**Tom ▼**
More ▼

Phone call would be good.    307/10 ☆
    ❄ Cold ▼
    ☆ Read

Ctrl+ Return

Type your message here. Press [Ctrl + [Return] to post the message from the keyboard

Attach files    Pick file

Trustee
Find...
144 More...
Shadley  Rob  Ert  Adahri  Reinhart  Jim  Chelsi  Reider

# EXHIBIT B

**Andrew M. Hinkes**

| | |
|---|---|
| **From:** | Andrew M. Hinkes |
| **Sent:** | Tuesday, July 27, 2010 12:29 PM |
| **To:** | Robert Buschel |
| **Cc:** | Andrew M. Hinkes; Thomas Sadaka; Charles H. Lichtman; Lisa Webster |
| **Subject:** | Qtask users |
| **Attachments:** | Qtask user requests.XLS^ |

Robert-
Attached, please find a list of the Qtask users whose Qtask data and access rights are to be produced in accordance with Judge Ray's many orders.

For each listed Qtask user :
1. Please produce all data for all projects  for which they are a member, and all person-specific data including, but not limited to: all personal (i.e. person-to-person) messages, personal meetings (and discussions, files and other data associated therewith) personal calendars, personal projects and other associated data for those listed persons in the flat text format similar to Qtask's prior productions;
2. Please produce all data for those listed Qtask users  (including the data listed above) by uploading all data for those users in to the shadowbox (i.e. the back - end server(s) for ███████████with those Qtask users' passwords reset to "abc123" (without the quotes).

Please note that the Trustee reserves his right to supplement this list. Also, please keep me apprised via email of your progress in producing all data for the listed Qtask users as described above.
Thank you,



BIO

**BERGER SINGERMAN**

GIVING BACK, MOVING FORWARD

**Andrew M Hinkes**

350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL  33301
Telephone: (954) 525-9900
Fax: (954) 523-2872

Direct Line: (954) 712-5143
E-mail: AHinkes@bergersingerman.com

<u>Boca Raton</u>   <u>Ft. Lauderdale</u>   <u>Miami</u>   <u>Tallahassee</u>

www.bergersingerman.com

🖨 **Please consider the environment before printing this email.**

This transmission is intended to be delivered only to the named addressee(s) and may contain information that is confidential, proprietary, attorney work-product or attorney-client privileged. If this information is received by anyone other than the named and intended addressee(s), the recipient should immediately notify the sender by E-MAIL and by telephone at the phone number of the sender listed on the email and obtain instructions as to the disposal of the transmitted material. In no event shall this material be read, used, copied, reproduced, stored or retained by anyone other than the named addressee(s), except with the express consent of the sender or the named addressee(s). Thank you.

*************************************************************************

CIRCULAR 230 DISCLAIMER: This communication does not constitute a "covered opinion" as such term is defined within Circular 230, and does not comply with the requirements for a "covered opinion." We have not conducted, nor have we been asked to conduct, that type of analysis in this communication. To ensure compliance with requirements imposed by the IRS, we must inform you that any U.S. federal tax advice contained in this communication (including any documents or items appended herein) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

***********************************************************************************

8/11/2010

# EXHIBIT C

Page 1

1                UNITED STATES BANKRUPTCY COURT

                  SOUTHERN DISTRICT OF FLORIDA

2

IN RE:                        CASE NO.09-34791-BKC-RBR

3

ROTHSTEIN ROSENFELDT ADLER,

4    P.A.,

5          Debtor.

_____/

6

                        STATUS CONFERENCE

7                       (No D.E. Number)

8

9                       August 6, 2010

10

11

12

13          The  above-entitled  cause  came  on  for

14   hearing  before  the  HONORABLE RAYMOND B. RAY,   one

15   of   the   judges  of  the  UNITED STATES  BANKRUPTCY

16   COURT,  in and  for  the  SOUTHERN DISTRICT OF FLORIDA

17   at  299  East  Broward  Boulevard,  Fort  Lauderdale,

18   Broward County, Florida on August 6, 2010, commencing

19   at or about 10:00 a.m., and the following proceedings

20   were had:

21

22

23

24

25          Reported By:  Bonnie Tannenbaum

```
 1                    APPEARANCES:
 2

 3              BERGER SINGERMAN, by
            CHARLES H. LICHTMAN, ESQUIRE
             ANDREW M. HINKES, ESQUIRE
 4    On behalf of Herbert Stettin, Chapter 11 Trustee
 5

 6              CONRAD & SCHERER, by
             JAMES D. SILVER, ESQUIRE
            On behalf of Razorback Funding
 7

 8              BUSCHEL GIBBONS, by
            ROBERT C. BUSCHEL, ESQUIRE
 9               On behalf of Qtask
10

11              ALSO PRESENT:

         MR. VON WOLFSHEILD (Via Telephone)
12                  _ _ _ _ _
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1            THE COURT:  That now takes us to the status
 2   conference in the main case, and the continued
 3   hearing on Qtask.
 4            MR. LICHTMAN:  If I may ask the Court's
 5   indulgence in potentially leaning on Mr. Hinkes, in
 6   the event I need to, for some technical or
 7   clarification points.
 8            THE COURT:  Well, let me see, is Mr.
 9   Wolfsheild on the phone?
10            COURT CALL OPERATOR:  Yes, Your Honor, his
11   line is open.
12            THE COURT:  All right.  Other appearances
13   for the record.
14            MR. BUSCHEL:  Robert Buschel on behalf of
15   Qtask.
16            MR. SILVER:  Do you want me to appear
17   again, Judge, or --
18            THE COURT:  No, I've got you.
19            MR. SILVER:  Thank you.
20            THE COURT:  I didn't have Mr. Buschel for
21   the record, and I didn't have Mr. Wolfsheild.
22            All right.
23            MR. LICHTMAN:  If it please the Court, when
24   we came before you last time, and I think the two
25   times before that, we had reported to you some
```

Page 4

1    progress.  And you'll recall my commenting that I was

2    interested in assuring that we got our attorneys'

3    fees paid, and asked the Court to defer the issue as

4    to the $5,000 a day penalty, the fine.

5              I regret to tell the Court that after much

6    consideration, we conclude that what has happened

7    over the course of the past month since the entry of

8    the contempt order is that Qtask is playing games

9    with us, and that we've been played, and we're pretty

10   unhappy about it.

11             The issues that remain before you are not

12   technical issues, they're issues of just strict

13   compliance with this Court's orders and producing

14   information to us that they could and haven't,

15   constantly interjecting, well, we don't think we have

16   to give you this, and we don't think we have to give

17   you that.

18             In essence, we find ourselves today just as

19   we have in the preceding two weeks where the night

20   before a hearing, or the day of a hearing, having

21   certain material given to us, and information

22   provided, or a filing made that purports to give them

23   enough cover to come before the Court.

24             So, to the extent that we had previously

25   commented, we're focussed on just making sure the

Page 5

1   estate doesn't lose money on attorneys' fees, I want

2   to be clear that we back off of that strongly.

3            Now, here's where we are today.  And I'm

4   going to ask Mr. Hinkes, if it's okay with the Court,

5   that if I, by chance, slightly miss my factual

6   presentation in terms of what we're missing, that he

7   be allowed to clarify for me, and that's because

8   Mr. Hinkes has had the lion's share of responsibility

9   on working directly with the Qtask folks.

10           First is that I'd like to reiterate, this

11  is not a tech issue, it's an issue of entitlement.

12  It's an issue of Qtask continuing to question and

13  challenge the scope of the Court's orders, and the

14  Court's mandates from the Bench.

15           When we were before you last, we spoke to

16  you about the issue of the shadow box that had been

17  provided immediately before that hearing.  Well, we

18  find ourselves in the position today of still having

19  no access to the shadow box because Qtask had

20  scrubbed -- because of Qtask scrubbing or holding

21  back user password reset so that we cannot access the

22  data, and we cannot confirm the data.

23           We also have what I think is a very

24  material issue of -- that in the last hearing, you'll

25  recall that we started the presentation with our

Page 6

```
 1   emergency motion for clarification on the issue of
 2   third party invitees.  And the Court made a very
 3   clear directive that we were to provide Mr. Buschel
 4   with a list of the third party invitees and the
 5   former employers, and I had commented that we needed
 6   an awful lot of people, and you said, give them the
 7   list, and we did.  And I wish to reiterate so that we
 8   have this for the record, the need for that was
 9   predicated on our being able to conduct a full and
10   complete forensic analysis on a whole range of
11   fronts, given the scope of what the Qtask system
12   seems to involve.
13          And we had the very strong support, both of
14   Mr. Silver, and Mr. Scherer, as well as by the
15   committee, where Mr. Goldberg also came and spoke in
16   support of our getting that full access.
17          We gave them the list.  Here we are now up
18   until last night or this morning where we had been
19   given push back, like we were supposed to explain to
20   them why we needed these names.  And the whole point
21   of what I had repeatedly said from the beginning, and
22   that everybody had said, and I think that you got,
23   was that that's work product.  I'm not telling you
24   why I need somebody's information.  And we find
25   ourselves --
```

Page 7

```
 1            THE COURT:  My order said, give them a list
 2   of names, and required Qtask to provide the
 3   information on the names.
 4            MR. LICHTMAN:  Correct.
 5            THE COURT:  That's not a complex issue.
 6            MR. LICHTMAN:  No.  And it's one of the
 7   reasons why you can see that we're slightly agitated
 8   about this.
 9            Now, I'm going to ask Mr. Hinkes to help
10   me, in case I get this wrong, because as I was
11   leaving for Court, he told me that there was a filing
12   that was made.  I don't know if it was last night, or
13   if it was first thing this morning.  It really is
14   astonishing to me.  You'll recall that much of the
15   focus of Qtask's presentations to you, and their
16   purported reasons for not complying with the Court's
17   subpoena and subsequent orders, was to protect
18   privacy rights.  So what do they do in this filing
19   9:00 a.m. this morning was they published the names
20   of our investigation and passwords in this filing.  I
21   believe that they may have requested that it be under
22   seal.
23            MR. HINKES:  Your Honor, if I may
24   interject, Andrew Hinkes representing the trustee.
25   This morning at 9:00 a.m., we received, and I'll use
```

Page 8

1    the phrase service loosely, but we received a copy of

2    a paper to be filed, I guess, by Qtask.   The paper

3    itself attaches a series of documents.   In those

4    documents, Your Honor, are these user names and

5    passwords given to the trustee to allow the trustee

6    to investigate within the Qtask system.

7              Additionally, Your Honor, the entire list,

8    including names and e-mail addresses which were

9    provided by the trustee to Qtask was attached, as

10   well.

11             THE COURT:  Well, there's no filing.

12             MR. HINKES:  It was served upon us, Judge,

13   and, again, I use the word service loosely.  We would

14   request that if --

15             THE COURT:  Well, it's not a matter of the

16   record -- of the electronic record.

17             MR. HINKES:  Your Honor, to the extent that

18   Qtask does intend to actually file such a thing, we

19   would first point out to the Court that despite

20   ringing the bell on privacy issues for months and

21   months, a bell which the Court has already decided

22   doesn't need to be rung anymore, they then go and

23   violate the very precept which they claim to hold so

24   close to themselves by publishing our information

25   ostensibly to the entire world.  How they can claim

Page 9

1   to be the guardians of privacy rights, and security,

2   and concepts of that nature, and then throw our

3   investigative tools, throw our ability to actually

4   conduct an investigation and preserve our work

5   product out into the public sphere defies any further

6   description or explanation.

7           MR. LICHTMAN:  Okay.  Let me continue.  We

8   had another issue with respect to getting access to

9   the system for, as an example, a project called the

10  Rolodex Project that was on the system, but not on

11  the shadow box.  It was not on Mr. Buschel's

12  privileged log.

13          Access to the data of this restricted

14  project -- we can't see anything after November 10th,

15  2010.  That's somewhat of an issue, we understand,

16  because of the Court's sort of like finite cutoff

17  date where we would have to substantiate that.  We

18  are entitled to access for that information for

19  before November 10th.  We cannot actually even

20  reconcile the projects from the shadow box to what

21  would otherwise be on Qtask.

22          There's also what's called flat data for

23  the additional persons to be produced.  We haven't

24  gotten those text files that pertained to the flat

25  data.  This is not a tech issue, this is a compliance

1    issue.  So we can't ascertain the level of compliance

2    without the password reset.  We have data on the

3    shadow box that appears to be incomplete.  We have

4    been locked out from getting this data, and this just

5    isn't right.  This is the kind of thing where

6    compliance of court orders should have occurred long

7    ago.  And you would have thought that once the

8    contempt order was in place, all they'd have done is

9    look up and say, take it all, leave us alone, so we

10   can purge, potentially, the contempt.  We don't find

11   ourselves in that position.

12            And, you know, as I spoke to Mr. Stettin

13   about this, without waiving privilege, we're

14   particularly troubled, because we respectfully remind

15   the Court that Qtask existed because RRA funds,

16   approximately $600,000, went to it in the months

17   immediately preceding the dissolution of RRA.  So

18   they existed with our funds.  They even acknowledge

19   in press reports, and have acknowledged elsewhere,

20   that we were funding their operation.  That, of

21   course, will probably be the subject of an adversary

22   proceeding very shortly, because we'd like to get our

23   money back, but that's a different issue for a

24   different day.

25            We ask the Court to hold their feet to the

1    fire in the most harsh strict of manners in

2    compliance with your own order so that we can get

3    this data and move forward.  The case is already nine

4    months old, and we need to move quickly.

5            MR. HINKES:  Your Honor, if I may make two

6    brief qualifications and brief explanations as to

7    certain statements that Mr. Lichtman made just for

8    clarity.

9            The first issue is regarding access into

10   the shadow box.  The shadow box was a parallel

11   version of Qtask that had what the parties were

12   hoping would be the universe of responsive data

13   loaded into it.  One of the central and important

14   points of creating the shadow box was to create a box

15   where the trustee could investigate through the eyes

16   of different users.  Each person when they log into

17   Qtask sees things differently than another person

18   does.  Merely being dropped into a project is not the

19   same, because one person sees the data in a project a

20   little bit differently than another person.

21           To date, we have only received or we are

22   only able to look into the shadow box through the

23   eyes of people whose passwords we've already received

24   on our own.  Qtask has never provided a single

25   password for any other person, and we understood the

Page 12

1    Court's orders to require the shadow box to have the

2    passwords for the users whose information was put

3    into the shadow box ripped out and replaced with

4    something easy, one, two, three, four, five, so that

5    the trustee could then investigate the universe of

6    responsive data through the eyes of those users.

7    That has not occurred, and that's significantly

8    impairing our ability to even gauge whether

9    compliance has been achieved.

10            THE COURT:  So you're saying that Qtask

11    never gave you the passwords that will allow you

12    access to the shadow box?

13            MR. HINKES:  Qtask did not change the

14    passwords.  We had a limited number of passwords

15    which we had received --

16            THE COURT:  You already did that.

17            MR. HINKES:  Yes, Judge.

18            THE COURT:  What do you need from Qtask

19    with respect to the shadow box?

20            MR. HINKES:  Judge, we need Qtask to reset

21    the passwords for all users whose passwords we do not

22    already have, whose data is requested by the list

23    which was provided by the trustee to Qtask in

24    accordance with the Court's statements from the July

25    23rd hearing.

1          Qtask has taken the position that because

2    it's time consuming to pull out passwords and reset

3    passwords, they will not do it until the Court tells

4    them that they have to include the invitees who were

5    on the list.

6          THE COURT:  All right.

7          MR. HINKES:  Another issue which I wanted

8    to clarify for you, Judge.  There are two issues

9    regarding projects, so I'm walking away from person

10   specific issues and focusing on project specific

11   issues here, Judge.  Mr. Lichtman made a reference to

12   a Rolodex Project.  Rolodex is an example of a

13   project which includes more than one RRA attorney,

14   and was not given in the shadow box.

15          Now, Judge, in accordance with your

16   statements in court, and I'll cite to the July 9th

17   transcript at Page 10, Line 11, through Page 10, Line

18   19, the data to be produced is to include the data

19   where there was more than one RRA person

20   participating.  And, specifically, Judge, if I can

21   actually read to the Court the exact language,

22   starting at Line 11, I'm quoting, MS. MOON: "Well,

23   yes, and then supplemented by the list that Your

24   Honor just described, and that would include not only

25   the projects that those folks were involved in, but

1   also the person-to-person conversations."  THE

2   COURT: "With whom?"  MS. MOON: "Any RRA employee and

3   any person on the enumerated list."  THE COURT: "Well

4   that's apparent in my -- and then Mr. Buschel cuts

5   off.

6           We read that as though the Court intended

7   for the data to be produced to include everything

8   where there are RRA folks interacting.  And when I

9   say RRA folks, I mean the persons who were listed on

10  the list to be provided to Qtask.

11          Again, Qtask has taken the position, as far

12  as ripping out the passwords in the shadow box, they

13  won't do that until the invitee issue is resolved.

14  And I think the Court has broadcasted where it's

15  going on that issue.

16          So then there's the issue of projects which

17  were arbitrarily withheld by Qtask.  The second part

18  of the project centric issues, Judge, is what

19  Mr. Lichtman referred to as Mr. Buschel's privileged

20  log.  Mr. Buschel transmitted a list of projects

21  which he has taken the position should not be

22  produced for various reasons.  Some of them are, gee,

23  you're going to have to take my word for it, because

24  I'm not telling you what's in here except that you

25  can't have it.  Some of them are, you can't see after

1   November 10th, because after November 10th, they went

2   to a different law firm, and the trustee does not

3   stand in the shoes and hold the privilege for the new

4   law firm.

5           I want to only address right now the

6   November 10th issue, Judge.  To the extent that

7   there's a project which only -- to the extent that

8   there's a project which went to a new law firm after

9   November 10th, we don't see any issue, Judge, with

10  the Court instructing Qtask to give us the data

11  through November 10th for those projects.

12          Finally, Your Honor, there's the issue of

13  what Mr. Lichtman qualified as flat data.  And what

14  that was, Judge, was the means of compliance before

15  the shadow box went live.  What Qtask had done was

16  taken the information and converted it into a

17  readable format which was in text.  To the extent

18  that there's any additional data produced, Judge, we

19  would ask that it be produced in the flat data

20  format, as well, since all the heavy labor as far as

21  creating that data format from a program in respect

22  it was already finished, and it will aid in the

23  trustee's investigation and search.

24          If the Judge doesn't have any questions,

25  I'll rest for now.

Page 16

1          THE COURT:  I have one question.  Does

2   anyone know, because I can't -- I don't want to take

3   the time to pull it up, the day the $5,000 a day fine

4   started?

5          MR. LICHTMAN:  I have the order with me, I

6   can pull it.

7          MR. HINKES:  Your Honor, the order that was

8   recently entered continuing the status conference

9   reset the deadlines through today's date.

10          MR. LICHTMAN:  I think he means the

11   original order.

12          MR. HINKES:  Thank you, Your Honor.

13          MR. LICHTMAN:  The order of contempt, which

14   is Docket Entry 776 --

15          THE COURT:  I realize the date has been

16   reset to today, but I just wanted to know the date of

17   that.

18          MR. LICHTMAN:  It provides at Paragraph 6,

19   Page 8, for every day after July 9, 2010, when Qtask

20   fails to fully comply with order granting motion to

21   compel, Qtask shall be required to pay to the trustee

22   a sanction of $5,000 per day.

23          THE COURT:  And that date, then, was

24   continued to today?

25          MR. LICHTMAN:  Sequentially, yes.

1          THE COURT:  All right.

2          MR. BUSCHEL:  Good morning.  Robert Buschel

3     on behalf of Qtask.  Before the Court imposes any

4     penalty or fines, there needs to be very important

5     distinctions and clarifications.  I filed something

6     this morning on a status conference, and I e-mailed

7     it to your chambers, because there's the list that

8     we're talking about, the Court needs to review.  And

9     I'm going to quote the Court a couple of times --

10         THE COURT:  Why did you wait until today?

11         MR. BUSCHEL:  Because I wanted to have a --

12    we had a phone conference.  You wanted attorneys to

13    work out issues.  So they started the conversation,

14    and then yesterday at 5:27, I get a no answer to

15    whether or not we can work together to narrow the

16    invitee list.

17         And here's why I'm trying to work with the

18    trustee's counsel.  The Court said in its contempt

19    order in Paragraph 4(d), non RRA employees were not

20    subject to the March 8, 2010 order.

21         At the July 9th hearing, 2010, on Page 12,

22    this Court said, referring to this invitee list,

23    anything after that the trustee is going to have to

24    show me a reason why they would be entitled to

25    access.  Now it may be you discover some ongoing

Page 18

1   conspiracy that started before and continued

2   thereafter.  Fine, we will have a hearing.  If need

3   be, the hearing can be closed.

4           All this conversation about -- so I asked

5   for the list.  They gave us the list.  The list had a

6   lot of duplicates, 89 duplicates on it, and there

7   were several -- let me just give a stark example, my

8   father is on the list.  He's not an employee, he's

9   not a lawyer of Qtask, and it's clear from the

10  Court's intent that not every human being on Qtask

11  should be just, if you put --

12          THE COURT:  Did you file a motion claiming

13  that you didn't want to give that information?

14          He gave you a list.

15          MR. BUSCHEL:  He gave a list.

16          THE COURT:  And I ordered you to comply

17  with the list unless you got a court order.

18          MR. BUSCHEL:  Judge, this conversation,

19  you'll see in the exhibits, I set up a meeting.  Tom

20  Satica (phonetic), who is their consultant, said,

21  let's have a phone conference about it.  I set up the

22  phone conference on Monday.  At that phone

23  conference, Mr. Hinkes unequivocally said, we are not

24  even going to discuss reducing the list.  When I

25  asked, well, let's pick a good example, why is my

1    father on the list, and he said, who is your father.

2         This isn't well thought out on behalf of

3    the trustee, this is a list that was thrown at us,

4    and the Court has said, let's narrow it down.  Should

5    I just turn over data of people that have nothing to

6    do with RRA whatsoever, other than at some point in

7    time someone from RRA invited them to a non-RRA

8    project?

9         THE COURT:  File a motion for protective

10   order.

11        MR. BUSCHEL:  Well, I got the no.  I

12   thought they were working with me, and today -- I

13   filed a brief this morning for a status conference to

14   let you know, the reason why Qtask should not be --

15   is not -- intent should not be that they're being

16   contemptuous, it's that we are discussing it.  You'll

17   see conversations within Qtask that we are trying to

18   resolve the issue.  It culminated in a phone call of

19   Monday, and on Monday, it clearly says, well, we're

20   not even talking about this.

21        This Rolodex Project that Mr. Lichtman just

22   referred to, this is the first time in court ever

23   hearing that they don't have it.  Why don't they talk

24   to us?  If they could just pick up the phone and say,

25   the Rolodex Project is not here, please include it.

Page 20

```
 1              As to my own list that I transmitted, I

 2   transmitted that over a month ago.  If they think

 3   there's an exception, or something that I put on the

 4   list, talk to me about it.  I'm more than happy to

 5   demonstrate -- like in the one case, they represent

 6   the opposing party, the receiver in a particular

 7   case.  Their interest is adverse to my client.  I

 8   cannot release that attorney/client privileged

 9   information, that's work product information.

10              THE COURT:  It's called a motion for

11   protective order.

12              MR. BUSCHEL:  I filed it on behalf of

13   Qtask.  I gave it to them.  If they really want me to

14   put it in a motion for protective order on behalf of

15   my clients, I'll be happy to do that, but I think

16   we're compelled to talk first before burdening the

17   Court with the discussion.

18              As to the flat data, I think Mr. Hinkes

19   corrected Mr. Lichtman.  Mr. Lichtman said Qtask is

20   bad because we're not providing it, and we did.

21              As for the list, I provided the list.  I

22   did not provide passwords on the invitee list.  These

23   are people, and we are demonstrating to the Court, we

24   have turned it over.  We have turned it over to who

25   we have turned over, who we have already provided.
```

1          Then, at the end of the list, there are

2     several people which I am more than happy to tell the

3     trustee who they are, so they know that they're not

4     anything to do with the RRA investigation.  If they

5     tell me, this person is an investor, I will make sure

6     that it's a part of the list.  If it's somebody, like

7     somebody who flies my airplane with me, do they

8     really need that person?  Do they have anything to do

9     with RRA?  Are we just going to take the Fourth

10    Amendment and just throw it to the side because

11    they're on the list that the trustee just put in an

12    Excel spreadsheet?

13          I responded to them.  I'm trying to treat

14    them respectfully.  I understand that they're the

15    trustee, but I think they're at least owed -- I'm

16    owed a response as to why certain people should or

17    should not be on the list.  I'm not asking for work

18    product, I'm just saying, this person was an

19    investor, please include.  Who is Patrick Dupuey

20    (phonetic), I'll tell them who that is, he flies my

21    airplane with me.  We schedule things on the airplane

22    so we know that it's here in Florida as opposed to

23    somewhere else.  Do they really need to see our

24    conversations about that?  It has nothing to do with

25    RRA.

1          I'm more than happy -- because it takes --

2     it is not as easy -- the analogy is this, Judge, we

3     can't incrementally go into Qtask, cut it open and

4     create the shadow box.  That is something we did to

5     try and protect the rights of innocent people, and at

6     the same time, give the trustee what he is entitled

7     to.  So it is like asking to go to the offsite

8     warehouse and get a box of documents, but it's 20

9     miles away.  Can you just give us a final list, and

10    I'm more than happy to work with them to get that

11    list so we only have to make one trip to the

12    warehouse 20 miles away.  They would have us take a

13    half a day, one box at a time, and go out and keep

14    adding stuff to Qtask.

15         Qtask has -- they have accesses to people

16    who have provided their password voluntarily.  We

17    created this shadow box that freezes from November

18    10th backwards, and they can see it in every project

19    as if they were themselves.  They finally accepted an

20    invitation to Qtask to actually look around, and we

21    put them in the RRA projects that we've been begging

22    them to look around in, because that is their data.

23    And all I'm asking the Court is to not punish Qtask,

24    we're asking them to say, let's work together to

25    narrow this list down, and then we'll be done.

Page 23

1              Thank you.

2              THE COURT:  All right.  We'll proceed as

3    follows:  The Trustee will file within five days of

4    today a motion to compel with specific requests as to

5    what is being compelled to be delivered.  Qtask will

6    file a motion for protective order, and Qtask will

7    file a notice of -- through a notice of filing of

8    what has been -- it claims has been provided to the

9    trustee.

10             The $5,000 a day fine starts now, subject

11   to my deciding at a later date that it will not be

12   paid, but it starts today.  Do you understand?

13             MR. BUSCHEL:  Very good, sir.

14             THE COURT:  Does anybody have any

15   questions?

16             MR. BUSCHEL:  Thank you for your time.

17             THE COURT:  Mr. Lichtman, see to the order.

18             MR. LICHTMAN:  Thank you.

19             THE COURT:  Gentlemen -- so everybody

20   understands, I want it in writing.

21             All right, that concludes the morning

22   calendar.

23             (Thereupon, the hearing was concluded.)

24

25

Page 24

1                          CERTIFICATION

2

3    State of Florida:

4    County of Dade:

5

6              I,  BONNIE  TANNENBAUM,  Shorthand Reporter

7    and Notary  Public  in  and  for the State of Florida

8    at Large,  do  hereby  certify  that  the  foregoing

9    proceedings were  taken  before  me at  the date and

10   place  as  stated  in  the caption  hereto on Page 1;

11   that the  foregoing computer-aided transcription is a

12   true record of  my  stenographic  notes taken at said

13   proceedings.

14              WITNESS  my  hand  this 9th day  of August,

15   2010.

16

17         _____

                BONNIE TANNENBAUM

18         Court Reporter and Notary Public

          in and for the State of Florida at Large

19          Commission Number:  DD 968452

                Expires:  June 22, 2014

20

21

22

23

24

25