UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

CASE NO.: 09-34791-RBR
Chapter 11

IN RE:

ROTHSTEIN ROSENFELDT ADLER, P.A.,

Debtor.

_____/

**RAZORBACK VICTIMS' OBJECTION TO TRUSTEE'S MOTION
TO APPROVE SETTLEMENT WITH BERENFELD SPRITZER
SHECHTER & SHEER, AND FOR ENTRY OF BAR ORDER**

The "Razorback Victims"[1] object to the Trustee's Motion to Approve Settlement with Berenfeld Spritzer Shechter & Sheer, LLP and For Entry of a Bar Order (ECF #1123), (the "Settlement Motion") and state:

**PRELIMINARY STATEMENT**

The Razorback Victims have lost more than $160 million as a result of the conduct of Berenfeld and others, and represent approximately sixty percent (60%) of the entire creditor body in this case. The Razorback Victims object to the Trustee's proposed settlement with Berenfeld Spritzer Schechter & Sheer, LLP ("Berenfeld") on the following grounds:

- - This Court lacks jurisdiction to grant the extraordinarily broad bar order requested by the Trustee, over the Razorback Victims' objection. The

---

[1] The "Razorback Victims" are Razorback Funding, LLC, D3 Capital Club, LLC, BFMC Investment, LLC, Linda Von Allmen As Trustee Of The Von Allmen Dynasty Trust, D&L Partners, LP, David Von Allmen, As Trustee Of The David Von Allmen Living Trust, Ann Von Allmen, As Trustee Of The Ann Von Allmen Living Trust, Dean Kretschmar, Ira Sochet Revocable Inter Vivos Trust, Investors Risk Advantage, LP, Cooper Management, Anthony Degennaro As Trustee Of The Extra Inning Dynasty Trust, Adele Mussry, Jack Mussry, Nassim Mussry, Melina El-Ani, Danielle El-Ani, H&N Associates, Aretz Associates, Park National Capital Funding, LLC, Park National Mortgage Servicing, Scott Morgan, Viceroy Global Investments, Inc., Concorde Capital, Inc., Sussco, Inc., Edward Paley, Florence Paley, The Edward And Florence Paley Foundation, Steven Paley, Laura Paley, Jane Zaretsky, Steven Zaretsky, As Trustee Of The Jane Zaretsky Dynasty Trust, Lawrence E. Dekelbaum, and Shalom Strictly Kosher Meats, Inc.

1

scope of the proposed bar order grossly exceeds the permissible scope of such orders as established under settled law in this circuit.

- -    The proposed settlement would improperly and illegally bar and release the Razorback Victims' $160 million of claims against Berenfeld for $10 million, while allocating ALL of the settlement proceeds to the estate.

- -    The proposed settlement is not supported by the Unsecured Creditors Committee or any other major creditor group. It is vehemently opposed by the two most significant creditor constituencies.

- -    The Trustee has no standing to recover on direct creditor claims, and the Trustee's own claims against Berenfeld are barred by the *in pari delicto* doctrine.

- -    Contrary to the Trustee's suggestions, the Razorback Victims have not agreed to this, or any other, settlement with Berenfeld or the Trustee.

## FACTS RELEVANT TO THIS OBJECTION

### The Razorback Victims

The Razorback Victims have lost more than $160 million as a result of the conduct of Berenfeld and others. By dollar amount, their claims comprise approximately 60% of all creditor claims in this case (excluding duplicative and other clearly non-allowable claims), and even a larger percentage of defrauded investor claims. The Razorback Victims' pending state court suit is the most advanced litigation against Berenfeld and the other culpable defendants, and represents a very significant investment in legal fees and costs, including extensive document analysis and an advanced document management system for literally hundreds of thousands of documents. The action is set for jury trial during the fourth quarter of 2011.

### The Trustee's Proposed Settlement

The settlement agreement attached to the Settlement Motion is between the Trustee, Berenfeld, and Berenfeld's insurer, Lexington Insurance Company ("Lexington"). It is the culmination of what became the Trustee's unilateral negotiation with Berenfeld and Lexington, and

provides "for delivery to the Trustee" of the sum of $10,000,000.00. Settlement Motion, Exhibit A, at 2, Recital F; *Id.* at 2-3, ¶ 2. Although the Razorback Victims participated in mediation, they did not settle with Berenfeld or its insurer, they are not parties to the Trustee's proposed settlement, and they had no part in its documentation. For example, the Razorback Victims' letter to Lexington, attached as Exhibit B to the Settlement Motion, expressly contemplated a "joint tender" of the policy limits to the Trustee and the Razorback Victims. That offer was never accepted, no joint tender was ever made, and the agreement that Berenfeld and Lexington have now struck with the Trustee is a very different, and impermissible, one.[2]

## ARGUMENT

### I. THE *JUSTICE OAKS* FACTORS

The Razorback Victims agree with the Trustee that the starting point for evaluation of the proposed settlement under Fed.R.Bankr.P. 9019 is *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990). This Court should deny approval of the proposed Berenfeld settlement because it completely disregards the fourth *Justice Oaks* factor, which requires consideration of the "paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id*. at 1549 (emphasis added). Specifically, as discussed below, the proposed settlement incorporates a bar order that would eviscerate the rights of the Razorback Victims (and similarly situated victims) and that is far beyond this Court's jurisdiction or authority to enter.[3]

---

[2] Although we do not believe that the Trustee could - - or does - - dispute this, we request an evidentiary hearing on this issue to the extent that the Trustee seeks to rely on any purported assent to this settlement by the Razorback Victims.

[3] The Razorback Victims do not dispute that bar orders can be an appropriate and useful device in complex litigation. It is when, as here, they are used over the objection of a significant constituency of creditors to misappropriate and usurp their independent claims that the requested relief exceeds the Court's jurisdiction and fails to satisfy the requirement that a bar order be "fair and equitable."

## II. THE TRUSTEE MAY NOT BAR THE INDEPENDENT CLAIMS OF THE RAZORBACK VICTIMS

This Court does not have authority to bar the independent state law claims of the Razorback Victims over their objection. The Eleventh Circuit has never approved a bar order that precludes anything other than contribution and indemnity claims of non-settling defendants and has never come close to approving an order that would eradicate independent state law claims such as those held by the Razorback Victims.

### A.  *Munford*

*In re Munford*, 97 F.3d 449 (11th Cir. 1996), is the sole Eleventh Circuit decision relied on by the Trustee as support for his requested bar order. *Munford* involved an adversary proceeding by a Chapter 11 debtor against two defendants. The debtor settled with one defendant, who insisted, as a condition of the settlement, on an order barring its co-defendant's contribution and indemnity claims against it. The Eleventh Circuit held only that (i) there was a sufficient "nexus" between (A) the settled claims in the adversary proceeding and (B) the potential indemnity and contribution claims to confer bankruptcy court jurisdiction over the latter claims and (ii) that the settlement bar was "fair and equitable" under the standards enunciated in this circuit's seminal bar order case, *In re U.S. Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992). *Munford* did not involve an attempt to bar the claims of plaintiffs with independent claims against the settling party, such as the Razorback Victims here.

### B.  *AAL*

In his Settlement Motion, the Trustee cites *Munford* for the proposition that "bar orders play an integral role in facilitating settlements." Settlement Motion at 7, (citing *Munford*, *supra*, 97 F.3d at 455). The subject language actually comes from *U.S. Oil & Gas*, *supra*. Indeed, litigants have repeatedly attempted to cite *U.S. Oil* to support overbroad bar orders that would bar independent

4

claims (*i.e.*, other than co-defendant indemnity and contribution claims of the type resolved in both *Munford* and *U.S. Oil*).

The Eleventh Circuit has consistently rejected such a broad reading of *U.S. Oil.* For example, in In *AAL High Yield Bond Fund v. Deloitte & Touche LLP*, 361 F.3d 1305. 1312 (11th Cir. 2004), the court stated:

> Appellees argue in brief that our decision in [*U.S. Oil]*, is controlling in this case.... Although the language of the bar order involved in *U.S. Oil & Gas* was broad, as it is here, the holding of our decision was much more narrow…. We held that the bar order properly barred Pinnacle's cross-claim [,which] was "an attempt to seek indemnity from A & A for the federal securities law violations alleged against Pinnacle in the complaints" in that very case, *i.e.,* for Pinnacle's liability to those same plaintiffs. *Id*. With respect to Pinnacle's "allegedly independent causes of action for fraud and negligence," we held that "[t]hese claims were not, in fact, independent of Pinnacle's or A & A's liability to the plaintiffs." *Id.* at 495-96. Rather, we noted that "Pinnacle stated in its cross-claim that it 'seeks damages against A & A and Riley to the extent that it is liable to any of the plaintiffs herein.' " *Id.* at 496. The opinion expressly declined to address the issue of "truly independent claims." *Id.* at 496 n. 5.

*AAL*, *supra*, 361 F.3d at 1312 (emphasis added).

**C.**     *HealthSouth*

In the recent case of *In re HealthSouth Corp. Securities Litigation*, 572 F.3d 854 (11th Cir. 2009),  the court reaffirmed the principle that preclusion of truly independent claims is beyond the permissible scope of a bar order.  Though it approved the bar order at issue, the court specifically rejected the non-settling defendant's argument that the claim being barred was truly independent. *Id.* at 864.  The *HealthSouth* court also made clear that *U.S. Oil* is to be construed narrowly:

> …[A]lthough the opinion of this Circuit in *In re U.S. Oil & Gas Litigation, supra,* has been interpreted by other courts as staking out a broader scope for permissible bar orders, our recent opinion in *AAL High Yield* construed *U.S. Oil* more narrowly. We held

5

> there: "The [U.S. Oil] opinion expressly declined to address the issue of 'truly independent claims.'"

*Id.* at 863 (internal citations omitted).

In *HealthSouth*, the Eleventh Circuit also cited with approval *Gerber v. MTC Electronic Technologies Co., Ltd.*, 329 F.3d 297 (2d Cir. 2003). In *Gerber*, the bar order had to be modified to limit the barred claims to those "where the injury is the non-settling defendants liability to the plaintiffs." *Id.* at 307. The *Gerber* court further quoted with approval from the Tenth Circuit's decision in *TBG, Inc. v. Bendis*, 36 F.3d 916, 928 (10th Cir. 1994):

> Courts that have allowed bar orders have only barred claims in which the damages are 'measured by' the defendant's liability to the plaintiff. Besides contribution and indemnity claims, these include any claims in which the injury is the nonsettling defendant's liability to the plaintiff. **No court has authorized barring claims with independent damages**.

*Id.* at 306-307. (citations omitted) (emphasis added).

## D. Representative Cases Specifically Recognizing the Bankruptcy Court's Lack of Jurisdiction to Bar Independent Claims.

### 1. *Covington*

Consistent with Eleventh Circuit precedent, Judge Killian has refused to approve a bar order that would have barred the independent claims of certain state court plaintiffs who were also creditors in the bankruptcy estate. *In re Covington Properties, Inc.*, 255 B.R. 77 (Bankr. N.D.Fla. 2000). His reasoning is particularly apt here. First, he noted that the request for entry of a bar order was effectively a request to have the bankruptcy court settle the independent state court claims of the creditors whose claims were sought to be barred. Judge Killian questioned whether the bankruptcy court even had jurisdiction to grant such a request. He then wrote:

> This Court distinguishes *Munford* from the instant matter. In *Munford*, a debtor-in-possession brought an adversary proceeding against the settling and nonsettling defendants. The claims subject to

6

> the bar order flowed directly from the plaintiff's claims. In the instant matter, the Trustee has *not* instituted an adversary proceeding nor has she asserted any claims against the McAlisters [the state court plaintiffs analogous to the Razorback Victims here], there is no reason for the McAllisters settle their state court claims against the Talley Family members with the Trustee. The McAlisters' state court litigation involving the Talley Family members [the settling defendants] has little, if any, effect on Debtor's estate being administered in bankruptcy and is independent of the trustee's claims against the Talley Family. Hence, irrespective of the language of the settlement agreement, it seems unlikely that a sufficient nexus exists between the McAlisters' state court claims and this matter.

255 B.R. at 79. Judge Killian also found that it was not fair and equitable to use the bankruptcy settlement with a bar order "… to unilaterally settle a creditor's state court claims against non-debtors." *Id*.

### 2. *Dreier*

Similarly, in the recent decision of *In re Dreier LLP*, 429 B.R. 112 (Bankr. S.D.NY 2010), the court denied approval of a bar order that would have enjoined the prosecution of independent claims. The court explained:

> The Bar Order, however, goes well beyond derivative claims, and ultimately exceeds the Court's subject matter jurisdiction. While the bar order is limited to creditors and parties in interest in the LLP and Dreier cases, these parties may also have direct claims against GSO [the settling defendant]… that are unrelated to their status as creditors or parties in interest. For example, they may be GSO investors who have claims against GSO sounding in negligence or breach of fiduciary duty… As investors, they may have contractual rights to compel GSO to distribute the balance of the payments. Finally, they may be GSO creditors who have claims based upon GSO's fraudulent transfer of the remaining notes proceeds to GSO Releasees.
>
> This is not intended to be an exhaustive list, and it is up to the parties to craft an injunction that passes muster. <u>Rather, the examples simply illustrate several types of potential independent claims that could arise from GSO's own wrongful conduct relating to the debtors or the Notes. Such claims do not affect property of the estate or the</u>

7

> administration of the estate beyond GSO's insistence that the GSO Settlement Agreement must include the Bar Order, and the Court lacks subject matter jurisdiction to enjoin their prosecution.

*Id.* at 133, (emphasis added).

### E. The Trustee's Authorities Are Clearly Inapposite

The Trustee places primary reliance in his Settlement Motion on *Munford*, which for the reasons described above does not support the broad bar order sought here. The additional instances identified by the Trustee where bar orders have been entered provide no better support for the unauthorized usurpation of the Razorback Plaintiffs' independent claims. *In re S & I Investments*, 421 B.R. 569 (Bankr. S.D. Fla. 2009) involved the settlement of a judgment against the debtor and two other co-defendants, in which one settling co-defendant was given the protection of a bar order from claims by the non-settling co-defendant (who received a dollar-for-dollar credit against any subsequent judgment against her); it did not involve a bar order against independent plaintiffs' claims. In *In re Certified HR Serv. Co.*, Case No. 05-22912-RBR (ECF#2200, Bankr. S.D. Fla. June 8, 2008), the only parties who did not ultimately consent to the entry of the bar order were former directors and officers of the debtor who sought to preserve contribution and indemnification claims against the settling accounting firm, rather than claims of plaintiffs with independent claims for the settling parties' wrongdoing. In *In re First NLC Fin. Serv. LLC*, Case No. 08-10632-PGH (ECF#863, 865, Bankr. S.D. Fla. March 12, 2009), a bar order was entered effectively without objection from any party, after objections had been resolved, whereas here the bar order is opposed by creditors holding the majority of the claims in the estate and who have independent claims against the settling party much more substantial than the claims of the Trustee.[4]

---

[4] It is also worth noting that in *First NLC*, the objection of a particular party who raised objections that the requested bar order was beyond the Bankruptcy Court's jurisdiction and unsupported by applicable authorities was resolved by the parties agreeing that the bar order would not apply to their claims. *See In re First NLC Fin. Serv. LLC*, Case No. 08-10632-PGH, ECF#775, *Limited Objection of Thomas J. Allison and Mesirow Financial Interim Management,*

The circumstances of the Szafranski settlement and bar order in this case were fundamentally different and distinguishable. The Court entered a bar order pursuant to a settlement in which Szafranski, who was subject to fraudulent transfer claims by the estate which exceeded his total assets, agreed to pay approximately $6 million which represented nearly 90% of his total assets. The Court specifically noted that "No creditor or interested party argued that a bankruptcy court lacks jurisdiction to enter some form of a bar order in appropriate circumstances." *In re Rothstein Rosenfeldt Adler, P.A.*, 2010 WL 3743885, *6 (Bankr. S.D. Fla. Sept. 22, 2010). It further noted, in addressing the objection of the Banyon Noteholders, that the Banyon Noteholders were not prejudiced by the settlement because "any recovery that the Banyon Noteholders could receive as a result of their independent and direct claims against Szafranski, which are directed related to the claims at issue in this bankruptcy proceeding, would either be (i) property fraudulent transferred from the Debtor's bankruptcy estate, or (ii) property subject to the Trustee's fraudulent transfer claims." *Id*. at *8. That is clearly not the case here, where the Trustee has not brought any fraudulent transfer claim against BSSS, and where the source of recovery is not fraudulently transferred property but rather the insurance proceeds of the Lexington policy. The Lippman settlement (ECF#910) is even further removed, in that no party had even asserted any claims against Lippman other than the Trustee's fraudulent transfer claims for excessive compensation.

For the reasons described above, the limited authority identified by the Eleventh Circuit in *Munford* and *U.S. Oil & Gas* for the entry of bar orders, particularly as further narrowed by subsequent decisions, does not support the Trustee's request here for the entry of a bar order over the objection of creditors holding a majority of the claims in the estate, whose independent claims would be precluded and usurped as a result of the requested relief.

---

*LLC*) and ECF#865, ¶ 3 (excluding Thomas J. Allison and Mesirow Financial Interim Management, LLC from the scope of the bar order).

## III. THE TRUSTEE'S CLAIMS ARE INFERIOR TO THOSE OF THE RAZORBACK VICTIMS

The proposed settlement is particularly egregious because the Trustee is attempting to leverage claims whose merits are highly questionable in order to appropriate the entire $10 million Berenfeld policy proceeds, all to the great detriment of the Razorback Victims, who hold direct, meritorious claims against Berenfeld in an amount exponentially greater than those of the Trustee.

### A. The Trustee Is Not a "Super-Plaintiff"

The Trustee's mere possession of competing claims against the same defendant, Berenfeld, does not elevate his claims over the independent claims of the Razorback Plaintiffs. Where the bankruptcy trustee is merely a competing plaintiff asserting state law claims against the same parties, the Bankruptcy Code "… does not arm him with "super-plaintiff powers in causes of action between third parties." *In re CHS Electronics, Inc.*, 261 B.R. 538, 544 (Bankr. S.D.Fla. 2001) (Mark, J.) (holding that liquidating trustee had no right to delay settlement of class action claims against debtor's former directors and officers merely because bankruptcy estate also had claims against those same parties and their insurance policies). Judge Mark further agreed with counsel for the class action plaintiffs that the "'… estate is merely another litigant wishing to pursue claims against the Ds and Os.'" *Id.* at 544 (citation to transcript omitted). Likewise, here the estate is no more than another litigant. Ironically, his claims are dubious in substantive merit, and far less in dollar amount.

### B. The Trustee Lacks Standing to Pursue Tort Claims Against Berenfeld

In *Feltman v. Prudential Bache Securities*, 122 B.R. 466 (S.D.Fla. 1990), Judge Nesbitt rejected the standing of a bankruptcy trustee to recover damages against an accounting firm and other deep pocket defendants for their role in assisting the debtors in defrauding investors out of

10

huge sums of money.    Here, as in *Feltman*, the debtor entity (RRA) was the alter ego of an individual (Rothstein) engaged in a criminal scheme to defraud investors, and was used as the instrumentality for perpetrating the fraud on investors.  Indeed, the Trustee here has already acknowledged in a sworn adversary complaint filed in this matter that RRA was Rothstein's alter ego and his instrumentality for defrauding investors through the sale of fictitious structured settlements.  Specifically, the Trustee stated:

> 28.    At all times material hereto, Rothstein formed, operated or otherwise treated RRA and the Rothstein Entities as his alter egos and his mere instrumentality in committing the fraud described hereinabove.
>
> 29.    For all purposes, Rothstein, the Rothstein Entities, and RRA were single economic entities and RRA and the Rothstein Entities simply functioned as a façade for Rothstein as their dominant shareholder.

Verified Complaint in *Stettin v. Scott W. Rothstein, et al.*,  ECF# 1 in Adv. No. 09-02478-RBR, at 8.

The trustee in *Feltman* sought to establish standing by alleging that the fraud "…directly injured the debtor corporations-thus derivatively injuring all the creditors."  *Feltman* at 472-473. Similarly, in this case, the Trustee has claimed direct injury to RRA, and his damage claim includes the more than $450,000,000.00 stolen from the investor victims.  Judge Nesbitt rejected the trustee's standing argument, finding that "[t]he Trustee is simply attempting to circumvent the standing requirements by alleging that the debtor has been injured."  122 B.R. at 475, n.13.  The Trustee's claims of direct injury to RRA should be similarly in this case disregarded.

In denying standing, Judge Nesbitt relied on *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979 (11th Cir. 1990) (holding that on the facts before it, the bankrupt corporation did not have standing to assert the claims of creditors).  Judge Nesbitt found that the action before her was essentially identical to *Hadley* on the facts (the only exception being that the trustee in Hadley did not attempt to assert direct injury to the debtor).  *Feltman*, *supra*, 122 B.R. at 475, n.13.

Finally, Judge Nesbitt found that it would be inappropriate to permit a bankruptcy trustee to sue for the same damages suffered by a specific class of creditors. She wrote:

> A distribution among all creditors, however, clearly raises the possibility that the defrauded creditors would be treated inequitably. Under the Plan, other creditors, such as trade creditors, might receive some of the monies which should in fact recompense the victims of the fraud. To use the debtor corporations as a means of distributing monies recovered from Defendants would be to perpetuate the debtors' role as a vehicle for the principal's fraud, possibly preventing the victims of the fraud from fully recovering their losses.

*Id.,* at 474-475.

Judge Nesbitt's words resonate in this case. Permitting the Trustee to take the proceeds of the asserted Berenfeld settlement into the bankruptcy estate would be inequitable as it would perpetuate RRA's role as a vehicle for Scott Rothstein's fraud, and would diminish the recovery that the Razorback Victims would otherwise realize on their individual claims. The Razorback Victims' recovery would be severely diluted by trade creditors, large additional claims allowed by the Trustee through settlements with culpable parties and other litigation targets, holders of unrelated legal malpractice claims against RRA, and large priority administrative claimants.

For similar reasons, Judge Cohn rebuffed the Trustee's efforts to obtain turnover of assets in the related criminal forfeiture action for distribution to creditors in the RRA bankruptcy case. For example, in denying the Trustee's attempt to assert a constructive trust claim to certain of those assets, Judge Cohn explained:

> Here, scores of RRA's clients, investors, and non-investors alike, deposited millions of dollars into RRA Accounts. Scott Rothstein, because of his unique position within RRA, stole those clients' money. Indeed, Rothstein had unfettered access to RRA's bank accounts and raided them at will. It would be patently inequitable to return that money to RRA's estate when it can be returned directly to the clients and qualified investors. The Court, therefore, will not deem the Trustee as the beneficiary of a constructive trust over the Miscellaneous Properties.

*July 9, 2010 Order Granting in Part and Denying in Part United States' Motion to Dismiss Chapter 11 Trustee's Verified Claims and Petition*, ECF# 400 in District Court Case No. 09-60331, p. 22.

Similarly, in *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006), the Eleventh Circuit rejected the argument that innocent victims would be better off if the trustee could pursue the Ponzi claims and bring the recoveries into the bankruptcy estate. In the context of applying *in pari delicto* to bar a bankruptcy trustee from pursuing tort claims arising from a massive Ponzi scheme, the court observed:

> Laddin argues that his recovery would ultimately inure to the benefit of innocent creditors instead of the wrongful debtor, but he fails to account for the likelihood that individual creditors damaged by the debtor's Ponzi scheme could separately pursue claims against the IRA Custodians free from the bar of *in pari delicto*. If Laddin were allowed to pursue the debtor's claims, his recovery, on the one hand, would become part of the bankruptcy estate to be apportioned among creditors without regard to whether they were harmed by the IRA Custodians. See 11 U.S.C. §§507, 1129(b)(2).... If creditors who were harmed by the IRA Custodians, on the other hand, sued separately outside of bankruptcy, then those creditors would not risk dilution through apportionment to senior creditors or unharmed creditors of equal priority. See id. §507 (prioritizing classes of claims). **Creditors whose legal interests were harmed by the IRA Custodians could rightfully recover more outside of bankruptcy because they would not compete with the trustee's claims on behalf of the debtor estate**."

437 F.3d at 1151 (emphasis added). The same wrong would occur if the Trustee is permitted to usurp the independent claims of the Razorback Victims here, notwithstanding that his own claims are barred by *in pari delicto*, as discussed below.

   **C.**  **The Trustee's Claims Against Berenfeld Are Barred By *In Pari Delicto***

The Trustee's claims against Berenfeld are also barred by *in pari delicto* since RRA was a perpetrator, and not a victim, of the Ponzi scheme. See generally, *O'Halloran v. First United Nat'l Bank of Florida*, 350 F.3d 1197, 1203 (11th Cir. 2003) (prohibiting entity's receiver from

13

recovering for Ponzi scheme torts where the entity itself "was one of the principal culprits.") Under binding Eleventh Circuit precedent, where the claims of the debtor in bankruptcy would be barred by *in pari delicto*, the claims of the bankruptcy trustee will be barred to the same extent. *See Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150-1152 (11th Cir. 2006). The *Edwards* court, citing decisions from five other circuits, pointed out that its sister circuit courts have "… unanimously concluded that *in pari delicto* applies with equal force to a trustee-in-bankruptcy as a debtor outside of bankruptcy." *Edwards*, supra, at 1151 (citations omitted). As a result, the Eleventh Circuit affirmed the district court's dismissal of the trustee's complaint on *in pari delicto* grounds based on the debtor entity's pre-bankruptcy wrongdoing.

Like *Edwards*, the Trustee here is suing another allegedly culpable party in the Ponzi scheme in which the debtor RRA was an active participant. Like *Edwards*, RRA, the debtor entity here, was the "hub" of the Ponzi, and the Ponzi could not have been perpetrated without RRA. The Trustee has acknowledged in a sworn pleading that RRA is Rothstein's alter ego and was used as the instrumentality of the fraud. Moreover, the Trustee's counsel has recently argued, and this Court has agreed, that RRA was the criminal enterprise, a fact that is also made clear by Rothstein's guilty plea. At a recent hearing on the Trustee's Motion for Partial Summary Judgment in the *Stettin v. Russell Adler and Katie Adler* adversary proceeding, the Trustee's counsel acknowledged that RRA was a criminal enterprise. He stated:

> "***The debtor was a criminal enterprise***, *as is stated in the indictment. Rothstein pled to it, and he used the words "Ponzi scheme" in his plea agreement.*"

Transcript at pp. 31-32 (emphasis added). Likewise, at the same hearing, this Court stated:

> "*I don't think anybody is disputing or can dispute that RRA and Rothstein were a Ponzi scheme.*"

Transcript at p. 31.   This Court further stated:

> *"You all need to go back, and don't look at the guilty plea. Look at the indictment. The indictment defines "enterprise." Enterprise was RRA."*

Transcript at p. 26.   The Trustee's counsel responded by stating:

> *"It's all in the guilty plea, Your Honor."*

Id.

In summary, the Trustee's claims are sufficiently problematic - especially when contrasted with the claims of the true RRA victims - that it would be ludicrous for the estate to hijack Berenfeld's insurance proceeds from the victims.  This Court lacks jurisdiction to enter the bar order, and the proposed settlement is anything but "fair and equitable."  *Munford*, *supra*; *U.S. Oil*, *supra*.

## CONCLUSION

This Court should deny the Settlement Motion.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

Respectfully submitted,

| | |
|---|---|
| /s/James D. Silver | /s/David L. Rosendorf |
| WILLIAM R. SCHERER | HARLEY S. TROPIN |
| Florida Bar No. 169454 | Florida Bar No. 241253 |
| wscherer@conradscherer.com | hst@kttlaw.com |
| JAMES D. SILVER | DAVID L. ROSENDORF |
| Florida Bar No. 373702 | Florida Bar No. 996823 |
| jsilver@conradscherer.com | dlr@kttlaw.com |
| CONRAD & SCHERER, LLP | KOZYAK TROPIN & |
| Counsel for Creditors | THROCKMORTON, P.A. |
| 633 South Federal Highway | 2525 Ponce de Leon, 9th Floor |
| Fort Lauderdale, FL 33301 | Coral Gables, FL 33134 |
| Tel: (954) 847-3324 | Tel: (305) 372-1800 |
| Fax: (954) 463-9244 | Fax: (305) 372-3508 |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on November 12, 2010, on all parties registered to receive CM/ECF electronic notifications from the Bankruptcy Court in this case, and to the additional parties listed on the attached service list in the manner specified therein.

By: s:/James D. Silver
Florida Bar No.: 373702
633 South Federal Highway
Fort Lauderdale, FL 33301
Tel: (954) 847-3324
Fax: (954) 463-9244

319282.2

**SERVICE LIST**

Internal Revenue Service
Special Procedures - Insolvency
7850 SW 6th Court
Plantation, FL 33324
**(Via U.S. Mail)**

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, Fl 33130
**(Via U.S. Mail)**

United Healthcare
Dept. CH 10151
Palatine, IL 60055
**(Via US Mail)**

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906
**(Via U.S. Mail**)

The Honorable Eric H. Holder, Jr.
Attorney General of the U.S.
950 Pennsylvania Avenue, NW Room 4400
Washington, DC 20530-0001
**(Via U.S. Mail)**

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114
**(Via U.S. Mail)**

Honorable Jeffrey H. Sloman,
Acting U.S. Attorney
99 NE 4th Street
Miami, Fl 33132
**(Via U.S. Mail)**

Daniel Mink
Ovadia Levy
c/o Renato Watches, Inc
14051 NW 14th Street
Sunrise, Florida 33323
**(Via U.S. Mail)**

USI
Attn: Anthony Gruppo
200 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33309
Anthony.gruppo@usi.biz
**(VIA EMAIL)**

Marc Nurik, Esq.
1 East Broward Blvd
Suite 700
Fort Lauderdale, FL 33301
marc@nuriklaw.com
**(VIA EMAIL)**

Canon Financial Services, Inc.
158 Gaither Drive, #200
Mount Laurel, NJ 08054
**(Via US Mail)**

CIT Technology Financing Services I, LLC
10201 Centurion Parkway North
Jacksonville, FL 32256
**(Via US Mail)**

Gibraltar Private Bank & Trust
Company
220 Alhambra Circle, Suite 500
Coral Gables, FL 33134
**(Via US Mail)**

Inter-Tel Leasing, Inc.
1140 West Loop North
Houston, TX 77055
**(Via US Mail)**

| | |
|---|---|
| Florida Department of Revenue<br>501 S. Calhoun Street<br>Room 201<br>Carlton Building<br>Tallahassee, FL 32399<br>**(Via US Mail)** | Berkowitz Dick Pollack & Brant<br>200 S Biscayne Boulevard, Sixth Floor<br>Miami, FL 33131-2310<br>Attn: Richard Pollack<br>**(Via Email and U.S. Mail)** |
| Leon County Tax Collector<br>315 S. Calhoun Street<br>Suite 210<br>Tallahassee, FL 32301<br>**(Via US Mail)** | Steven J. Reisman, Esq.<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178-0061<br>E-mail: sreisman@curtis.com<br>**(Via Email and U.S. Mail)** |
| Miami-Dade County Tax Collectors<br>140 West Flagler Street, 14th Floor<br>Miami, FL 33130<br>**(Via US Mail)** | Turner P. Smith, Esq.<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178-0061<br>E-mail: tsmith@curtis.com<br>**(Via Email and U.S. Mail)** |
| Palm Beach County Tax Collector<br>P.O. Box 3715<br>West Palm Beach, FL 33402-3715<br>**(Via US Mail)** | |
| THE LAW OFFICES OF<br>GEOFFREY D. ITTLEMAN, P.A.<br>440 North Andrews Avenue<br>Fort Lauderdale, Florida 33301<br>**(Via US Mail)** | Maryann Gallagher, Esq.<br>CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP<br>101 Park Avenue<br>New York, NY 10178-0061<br>E-mail: mgallagher@curtis.com<br>**(Via Email and U.S. Mail)** |
| Carpenter & Berger, PL<br>6400 N. Andrew Ave, suite 370<br>Fort Lauderdale, FL 33309<br>**(Via US Mail)** | Robert P. Avolio, Esq.<br>Crossroads Corporate Center<br>3150 Brunswick Pike, Ste. 120<br>Lawrenceville, NJ 08648<br>ravolio@avoliohanlon.com<br>**(Via Email and U.S. Mail)** |
| Jane A. Bee, Esq.<br>Blank Rome LLP<br>130 North 18th Street<br>Philadelphia, PA 19103-6998<br>bee@blankrome.com<br>(**VIA EMAIL**) | Mark S. Shipman, Esq.<br>20 Batterson Park Road, Suite 120<br>Farmington, CT 06032<br>mark@shipso.com<br>**(Via Email and U.S. Mail)** |