**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                           CASE NO.: 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,                CHAPTER 11

     Debtor.

_____/

## RESPONSE OF L.M., BRADLEY J. EDWARDS, AND FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L  TO CREDITORS MOTION TO CLARIFY PRIOR ORDERS

     L.M. (a minor victim of sex offenses), Bradley J. Edwards, and Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. (hereinafter referred to collectively as "L.M. et al.") file this response to the Motion to Clarify Prior Orders (doc. #1554) of Razorback Funding, L.L.C. and other creditors (hereinafter referred to collectively as "Razorback Creditors").

     The Razorback Creditors' motion seeks to "clarify" that they have a right to "fully participate" in the process established by Special Master Carney for determining whether internal law firm e-mails and other records are protected by the attorney-client privilege. The motion, however, rests on the assumption that the creditors have established that the e-mails and other materials somehow have relevance to the instant bankruptcy action or to their state court action[1] against Scott Rothstein and others. This foundational assumption is incorrect – the materials are utterly irrelevant to either this bankruptcy action or to the Razorback Creditor's lawsuit. Moreover, as a matter of comity, these issues surrounding discovery in a state court case should be left to the state court to rule upon. Accordingly, in ruling on the Razorback Creditor's motion, the Court should make clear that it is not ruling on the numerous issues relating to

---

[1] *Razorback Funding, LLC, et al. v. Rothstein, et al.*, Case # 09-062943 CACE 19, Circ. Crt. of the 17th Judicial Circuit in and for Broward County, Florida.

relevance, burdensomeness, and attorney-client and other privileges regarding the Razorback Creditors' subpoena.  Instead, these issues are left to the State Court judge presiding over their case to decide.

## I.    BACKGROUND

The procedural background surrounding the Razorback Creditor's motion is important to the Court's ultimate resolution of that motion.  It is therefore set out here:

### *Epstein's Sexual Abuse Victims Obtain Legal Representation from Bradley Edwards*

1.    Between approximately August 2002 and September 2005, Jeffrey Epstein sexually assaulted L.M., who was then a minor female, more than 50 times.  In particular, beginning when she was 13 years old, he (among many other acts of sexual abuse) vaginally penetrated L.M. with his finger and with a massager.

2.    Epstein is a politically-connected billionaire, who used his wealth and power to coerce L.M. into submitting to these sexual assaults.  L.M. suffered severe emotional and other trauma as a result of these sexual assaults.  During the same time, Epstein also sexually abused several dozen other minor females, including E.W. and S.R.

3.    In about April 2008, Bradley J. Edwards, Esq., was a licensed attorney in Florida, practicing as a sole practitioner.  As a former prosecutor, he was well versed in civil cases that involved criminal acts, including sexually assaults.  Three of the many girls Epstein had abused – L.M., E.W., and S.R. (also known as "Jane Doe") – all requested that Edwards represent them civilly and secure appropriate monetary damages against Epstein for repeated acts of sexual abuse while they were minor girls.

4.    On June 13, 2008, attorney Edwards agreed to represent E.W.; on July 2, 2008, attorney Edwards agreed to represent S.R.; and, on July 7, 2008, attorney Edwards agreed to represent

2

L.M. in connection with the sexual assaults committed by Epstein.

5.      On June 30, 2008, in the Fifteenth Judicial Circuit in Palm Beach County, Florida, defendant Epstein, entered pleas of "guilty" to various Florida state crimes involving the solicitation of minors for prostitution and the procurement of minors for the purposes of prostitution.

6.      As a condition of that plea, and in exchange for the Federal Government not prosecuting him, Epstein additionally entered into an agreement with the Federal Government acknowledging that approximately thirty-four (34) other young girls (including L.M. and E.W.) could receive payments from him under the federal statute providing for compensation to victims of child sexual abuse, 18 U.S.C. § 2255.

7.      On September 11, 2008, at the request of his client L.M.., Brad Edwards filed a civil suit against Jeffrey Epstein to recover damages for his sexual assault of L.M.   Around the same time, he also filed suits for E.W. and S.R.

8.      At about the same time as Edwards filed his three lawsuits against Epstein, other civil attorneys were filing similar lawsuits against Epstein.  For example, on or about April 14, 2008 another law firm, Herman and Mermelstein, filed the first civil action against Epstein on behalf of one of its seven clients who were molested by Epstein.  The complaint that attorney Herman filed on behalf of his seven clients was similar in tenor and tone to the complaint that Edwards filed on behalf of his three clients.  Over the next year and a half, more than 20 other similar civil actions were filed by various attorneys against Epstein alleging sexual assault of minor girls.  In fact, one of these civil complaints, *Jane Doe 102 v. Jeffrey Epstein* filed by attorney Robert Josefsberg, was much more graphic and detailed than any filed by Brad Edwards and described how Jeffrey Epstein sexually trafficked and pimped Jane Doe 102 to his high-profile friends,

3

politicians, academicians, royalty, etc.. (*Jane Doe 102 v. Jeffrey Epstein* complaint attached hereto as **Exhibit A**).

9.     In addition to civil suits that were filed in court against Epstein, at around the same time other attorneys engaged in pre-filing settlement discussions with Epstein. Rather than face filed civil suits in these cases, Epstein paid money settlements to more than 15 other women whom he had sexually abused while they were minors.

### *Edwards Pursues the Cases Against Epstein and Obtains Settlements*

10.     Once Edwards filed his civil complaints for his three clients, he began the normal process of discovery for cases such as these. He sent standard discovery requests to Epstein about his sexual abuse of the minor girls, including requests for admissions, request for production, and interrogatories. Rather than answer any substantive questions about his sexual abuse and his conspiracy for procuring minor girls for him to abuse, Epstein invoked his 5th amendment right against self-incrimination. When Edwards had the opportunity to take Epstein's deposition, he only asked reasonable questions, all of which related to the merits of the cases against Epstein.

11.     Edwards' efforts to obtain information about Epstein's organization for procuring young girls were also blocked because Epstein's co-conspirators (i.e., Sarah Kellen, Nadia Marcinkova, Adriana Mucinska Ross) also took the Fifth on every question posed. Other important witnesses (i.e., Ghislaine Maxwell, Jean Luc Brunel) evaded depositions.

12.     Because of the difficulty of obtaining discovery from Epstein and his co-conspirators, Edwards was forced to pursue other avenues of discovery to further his clients' cases. Accordingly, he pursued discovery against friends of Epstein who might have knowledge of the relevant events. Since Epstein traveled in celebrity circles, many of his friends were also

4

celebrities.[2]

13.     Edwards also received information that Epstein engaged in sexual abuse of minors on his private aircraft.  Accordingly, Edwards pursued discovery to confirm this allegation and obtained flight logs and passenger information regarding some of Epstein interstate and international flights.

14.     On July 6, 2010, rather than face trial for the civil suits that had been filed against him by L.M., E.W., and Jane Doe, defendant Epstein settled the cases against him.  The exact terms of the settlement are confidential, but all three of the clients were very satisfied with the legal representation of Edwards.  Epstein has made substantial payments to other girls who he has abused rather than face trial on the civil suits that have been filed against him by other attorneys.

### Scott Rothstein's Ponzi Scheme

15.     From in or about 2005, through in or about November 2009, Scott Rothstein appears to have run a giant Ponzi scheme at his law firm of Rothstein, Rosenfeldt and Adler P.A. ("RRA"). This Ponzi scheme involved Rothstein falsely informing investors that settlement agreements had been reached with putative defendants based upon claims of sexual harassment and/or whistle-blower actions.  Rothstein falsely informed the investors that the potential settlement agreements were available for purchase.

16.     In about October 2009, Rothstein met with Dean Russell Kretschmar (an investor in Razorback) and made false representations about cases against Epstein.  Rothstein claimed that there were 18 such cases being pursued against Epstein that could lead to confidential

---

[2]  Recent news reports have clearly revealed that the Epstein's celebrity friends undeniably have relevant information about his sexual abuse of minor girls.  *See, e.g., Was [Prince] Andrew Involved with Teenage Girls?  Pervert's Aide Quizzed Over Prince*, Mirror (UK), March 14, 2011, at 11 (discussing involvement of Prince Andrew with Jeffrey Epstein's sexual affairs); *Bill Knew, Says Perv's Masseuse*, New York Post, March 7, 2011, at 7 (discussing former President Bill Clinton's knowledge of Epstein's sexual affairs).

settlements.  Rothstein never mentioned Bradley J. Edwards.  *Epstein v. Rothstein*, Case NO. 50 2009CA040800XXXXMB AG, Depo. of Dean Russell Kretschmar, Feb. 11, 2011, at 73. Rothstein never mentioned L.M. (or any of the other girls Epstein had abused).  *Id.* at 61.

17.    In about October 2009, Rothstein fraudulently persuaded various investors to invest in fictitious confidential settlements with Jeffrey Epstein.  These confidential settlements were separate from the other cases being handled by RRA.  *Id.* at 65-66, 73.  The basic pitch was that clients needed immediate payment of confidential structured settlements that were paying out over time.

18.    Edwards had no knowledge of the any such fraud.  Edwards joined RRA in about April 2009, bringing his three cases against Epstein with him.  Edwards left RRA in November 2009 – a period of less than one year.  Edwards would not have joined RRA had he been aware that Scott Rothstein was running a giant Ponzi scheme at the firm.  Edwards left RRA shortly after learning of Rothstein's fraudulent scheme.

19.    At the time Rothstein was making pitches about structure settlements, none of Edwards' three cases had settled.  (They would not settle until July 2010, another eight months *after* Rothstein's fraud was exposed.)

20.    Edwards never substantively discussed the merits of any of his three cases against Epstein with Rothstein.  L.M. never met Rothstein.

21.    In the wake of Rothstein's fraud, RRA filed for bankruptcy.  This Court appointed Herbert Stettin as Trustee in Bankruptcy for RRA to administer the firm's assets and claims.

22.    On July 20, 2010, Bradley Edwards received a letter from the U.S. Attorney's Office for the Southern District of Florida – the office responsible for prosecuting Rothstein's Ponzi scheme.  The letter indicated that law enforcement agencies had determined that Edwards was "a

6

victim (or potential victim)" of Scott Rothstein's federal crimes. The letter informed Edwards of his rights as a victim of Rothstein's fraud and promised to keep Edwards informed about subsequent developments in his prosecution.

### Epstein's Lawsuit Against Edwards

23.    On December 7, 2009, Jeffrey Epstein filed a lawsuit against L.M. and Edwards, alleging that they had manufactured claims against him and had sensationalized the allegations against him. Epstein also alleged that Rothstein had engaged in a fraud against him. *Jeffrey Epstein v. Scott Rothstein, Bradley J. Edwards, and L.M.*, Case No. 50-2009 CA 040800XXXX MB AG (Cir. Ct. of the 15th Judicial Circuit, Palm Beach County, FL).

24.    L.M. and Edwards answered the complaint, denying all allegations against them and raising a counterclaim for abuse of process.

25.    In fact, Edwards has filed a detailed Motion for Summary and accompanying Undisputed Statement of Facts detailing the frivolous nature of Epstein's complaint and allegations against Edwards. (Attached hereto as **Exhibit B and C**).

26.    On about April 17, 2010, Epstein propounded a very broad subpoena to the Trustee for RRA, requesting tens of thousands of e-mails and other records connected with civil cases filed against him. The subpoena was directed to the Trustee in this case, who had possession of some of the e-mails and records at issue. The request was not reasonably calculated to lead to the discovery of admissible evidence. The e-mails and records at issue include discussion of confidential issues pertaining to L.M., as well as attorney-client privileged and work product protected information.

27.    The trustee for RRA is merely the custodian of these records and stands in the shoes of the former RRA attorneys and clients. The trustee is therefore obligated to protect the interests

of (for example) L.M., including her right to privacy against compelled disclosure of confidential medical and psychiatric information, as well as against disclosure of attorney-client privileged and work product protected materials.

28.     Epstein's counsel had a subpoena *duces tecum* issued from the Circuit Court in *Epstein v. Edwards* seeking production from Trustee Stettin of the case files of Edwards relating to L.M. and other clients.  L.M. and the Trustee filed for a protective order.

29.     Epstein then filed a motion to compel in this Court seeking production of the same documents which the Circuit Court did not allow. Epstein's Motion to Compel (doc. #807).

30.     July 19, 2010, L.M. filed an objection and Amended Motion for Protective Order (doc. #819), explaining that the requested materials were barred from disclosure by the attorney client privilege and work product protections.  She also explained that the materials involved confidential matters and that the discovery requests were not reasonably calculated to lead to the discovery of admissible evidence.

31.     On August 13, 2010, this Court entered an Order regarding production of documents regarding Jeffrey Epstein.  This Court appointed former Broward County Circuit Judge Robert Carney as a special master to work with counsel for the Trustee regarding privileged documents (doc. #888).

32.     On September 20, 2010, Special Master Carney moved for clarification of the order appointing him in several respects.

33.     On September 27, 2010, Bradley J. Edwards moved for a protective order, adopted the arguments of L.M. in her motion for a protective order.  Edwards further asked that the court preclude production of the documents on grounds of his own attorney client-privilege and attorney work product.  Doc. # 1022.

34.     On September 30, 2010, L.M. joined in that objection and further asked for clarification of the scope of the orders so that she could determine how to proceed to protect her interests. Doc. #1038.

35.     On October 15, 2010, this Court entered an order clarifying its earlier order (doc. #1068). The order provided that counsel for the Trustee would deliver to the Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, P.L. law firm ("Farmer, Jaffe") the documents at issue in the subpoena, giving Farmer Jaffe an opportunity to prepare a privilege log.  The order also established a procedure for the Special Master to hold a hearing about assertions of privilege.

36.     On October 20, 2010, this Court entered an order cancelling the hearing on the motion for protective order (doc. #1077), noting that all issues raised in the motion for a protective order had been "preserved."

37.     On October 13, 2010, the Creditors served a Rule 2004 subpoena on the Trustee requesting in this bankruptcy case essentially the same documents as had been sought by Epstein.  Doc. #1063, 1143, and 1191.

38.     On December 16, 2010, L.M. filed a motion requesting an emergency hearing and stay of court order directing preparation of the privilege log (doc. #1236).  L.M. requested a ruling on the pending summary judgment motions in the state court case before requiring production of the privilege log and further for sufficient time to prepare a privilege log regarding documents that exceeded 24,000 email-related pages.

39.     On December 22, 2010, this Court entered an order extending time for production of a privilege log until January 31, 2011 (doc. #1260).

40.     On January 26, 2011, Farmer Jaffe produced the privilege log as directed by this Court. Jeffrey Epstein challenged the sufficiency of that privilege log (doc. #1442).  Special Master

9

Carney set a hearing for April 6, 2011 regarding the sufficiency of the privilege log.

41.    On March 30, 2011, Judge Crow, presiding over the *Epstein v.* Rothstein, Case NO. 50 2009CA040800XXXXMB AG case issued an Order staying all subpoenas that have been issued by Epstein's Counsel, including that which was served upon the trustee. (**Attached hereto as Exhibit D**).

### *The Separate Lawsuit by the Razorback Creditors*

42.    Meanwhile**,** the Razorback Creditors filed a lawsuit against Scott Rothstein and other defendants alleging fraudulent misrepresentation and other claims.  L.M. and Bradley J. Edwards are not defendants in that action.  *Razorback Funding, LLC et al. v. Scott W. Rothstein et al.*, Case NO. 09-062943(19) (Cir. Ct. of the 17th Judicial Circuit, Broward County, FL).

43.    The lawsuit alleged that Rothstein told the investors that confidential settlements would be reached with various defendants, with structured monthly payments.  Rothstein further told the investors that some plaintiffs would not want to wait for structured monthly payments, and would be willing to accept a lump-sum payment in the range of 20-40% off the settlement's face-value.  *Id.* at ¶ 82.

### *The Pending Motion*

44.    The Razorback Creditors learned of Judge Carney's hearing on the privilege log.  On March 18, 2011, the Razorback Creditors filed the instant motion to clarify prior orders, seeking to "fully participate" in the process for determining privilege.  The motion asserted that "[t]he Razorback Creditors' counsel and Trustee's counsel have previously agreed that all documents produced through the special master process would also be produced to the Razorback Creditors."  Doc. #1554 at ¶ 7.

## II.    MEMORANDUM OF LAW

The Razorback Creditors' motion to clarify makes a number of assumptions about the current status of the case.  L.M. et al. believes several of these assumptions are incorrect, and the Court should accordingly not adopt those assumptions.  In particular, the motion incorrectly assumes that the documents in issue have been determined to relevant in the pending state court case filed by Razorback, when in fact they are utterly irrelevant.  Moreover, that issue (and other issues surrounding discovery) are properly left to the state court handling those issues in the first instance.  The Court should therefore make clear in ruling on the Razorback Creditor's Motion that issues surrounding relevance of the materials and other related discovery issues are left to the State Court to decide.

### A.    The Subpoenaed Materials Are Simply Irrelevant to Any Issues in the Razorback Creditors' Action Against Scott Rothstein.

The Razorback Creditors tersely assert that it "subpoenaed the documents as [they] [relate] to the investigation of claims relating to the Ponzi scheme at issue in this case, in particular, how Scott Rothstein and possible others at RRA used false and sensational allegations involving Epstein and the promise of enormous settlements based on fictional and fabricated events to help lure investors into the Ponzi scheme." Motion at 3.  But in fact, the documents do not have any bearing on any controverted issue in the case.  Neither Edwards nor his clients who were sexual abuse victims of Epstein wish to impede the rightful prosecution of the Razorback lawsuit against the criminals who perpetrated a fraud and who should be held accountable.  In fact, Edwards and his clients would cooperate and assist in the prosecution of that action in any way possible; however, information contained within the real cases prosecuted against Epstein could not possibly help to prove or disprove a material fact in controversy in the Razorback case

11

where the allegation in that action is that Rothstein duped them into investing in cases completely fabricated by Rothstein.  Razorback's best argument that any of the discovery obtained in the cases actually litigated against Epstein is relevant to the Razorback litigation is that Razorback investors were apparently shown certain documents (flight logs that contained the names of high profile friends of Epstein) and they claim that those documents from the real cases further induced them to invest in the fabricated cases that Rothstein dreamt up.  If that is the case, then Razorback should be made to specify which documents induced them into this investment and Edwards will turn each one of those documents over immediately.  Other than the few documents which allegedly helped to entice the Razorback investors to buy into Rothstein's ponzi scheme, how is it conceivable that the remaining discovery material and attorney work-product information and ideas and attorney-client privileged materials within the bona fide case files could be relevant to the Razorback action?  Certainly, any relevance that Razorback can allege is greatly outweighed by the burdensome nature of the request and the imposition on Edwards and his clients, especially in light of the fact that there does not seem to be any remaining dispute as to what Rothstein did to scam these investors.

Rothstein has now pled guilty to criminal fraud for misrepresenting the investment opportunities available in cases at the firm.  *See* Plea Agreement, Doc. #69, *United States v. Rothstein*, No. 09-60331-CR-COHN.  Accordingly, the fact he made misrepresentations about certain fictitious settlements is not in doubt.  Nor is there any doubt that the fictitious settlements involved cases that did not actually ever exist and had never actually been filed.  That is what the Razorback Creditors understood.  *See* ¶ 17, 41, *supra*.  And that is what Scott Rothstein plead guilty to.  *See* Plea Agreement, Statement of Facts, at 2 (discussing fraudulent scheme involving "pre-litigation" settlement agreements and "therefore there was no pending litigation or court

12

oversight"). Of course, the three Epstein cases handled by Bradley Edwards had all been filed in court and were legitimate claims being prosecuted against Epstein – claims that Epstein ultimately settled for significant amounts months after he alleged in his baseless complaint that the claims had minimal value. Accordingly, these legitimate cases had nothing to do with Scott Rothstein's Ponzi scheme.

The Razorback Creditors should not be permitted to impose burdensome discovery obligations on a non-party and to obtain the release of confidential client files in pursuit of evidence of undisputed events until there is at least a determination of relevance. Indeed, the obligation to produce a privilege log is not even triggered until there has been an initial determination of relevancy. *See Gosman v. Luzinski*, 937 So.2d 293, 296 (Fla. App. 2006) ("Before a written objection to a request for production of documents is ruled upon, the documents are not 'otherwise discoverable' and thus the obligation to file a privilege log does not arise.").

### B.   Discovery Issues Related to the State Court Issued Subpoenas Are Not Properly Before the Bankruptcy Court

The Razorback Creditors are also attempting to litigate issues relating to discovery in state court cases before this bankruptcy court. But neither 28 U.S.C. §§ 152 or 1334 confer jurisdiction on this honorable Court to adjudicate a discovery matter arising purely under state law claims filed in state court. The Razorback Creditors in essence are seeking to perform an end run around the Circuit Court's proper exercise of its jurisdiction to adjudicate matters pending before it, including subpoenas issued from that court. For reasons of comity alone, this Court should not rule on issues regarding the proper conduct of those state court cases.

### C.    The Subpoenaed Materials Fall Well Outside the Boundaries of Permissible Subpoena Under Rule 2004.

The subpoenaed materials also fall well outside of the materials that can be obtained under Rule 2004.  Not surprisingly, the Bankruptcy Rules limit examinations to specific questions related to the debtor's estate:

> (b) Scope of examination
> The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and *financial condition of the debtor*, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. . . .

Bankruptcy Rule 2004(b) (emphasis added).  Obviously the materials that the Razorback Creditors are seeking are not related to the "financial condition of the debtor" or any similar matters.  Instead, the Razorback Creditors are transparently seeking to use a bankruptcy process to obtain discovery related to their pending state court litigation.   Such discovery should be pursued in the state court, where the state court judge presiding over the case can make assessments of relevancy, burdensomeness, and other issues surrounding production of the materials.

### D.    The Discovery Sought is Privileged and/or Attorney Work Product and Beyond the Permissible Scope of Discovery.

At every step of this case, L.M. et al. have asserted privileges and other protections in the subpoenaed materials, including attorney-client privileges and work-product protections.    L.M. et al. reassert all of those protections here.

### i.    Scope of Permissible Discovery

Rule 26(b) excludes privileged matters from the scope of permissible discovery.  Epstein seeks the production of documents from clients' privileged case files and investigative files. These documents are beyond the scope of discovery permitted by Rule 26(b).

### ii.    Protective Orders

Rule 26(c) states that a court may protect a party or person from whom discovery is sought, based on "good cause shown."  A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A)    forbidding the disclosure or discovery;

(B)    specifying terms, including time and place, for the disclosure or discovery;

(C)    prescribing a discovery method other than the one selected by the party seeking discovery;

(D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E)    designating the persons who may be present while the discovery is conducted;

(F)    requiring that a deposition be sealed and opened only on court order;

(G)    requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H)    requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed.R.Civ.P. 26(c)

The Razorback Creditors seek the production from the Trustee of privileged, confidential, and attorney work product materials.  The requested documents, relating to the *bona fide* cases of clients are not relevant or calculated to lead to the discovery of admissible evidence in this bankruptcy action or any adversary proceeding presently before this Court.  Therefore, the requested documents are beyond the scope of permissible discovery.   The requested materials

are *not* discoverable under the Florida Rules of Civil Procedure, the Federal Rules of Civil Procedure, the Bankruptcy Rules of Civil Procedure or any other possibly applicable system of rules.  Moreover, the document production methodology established by order of this Court was not intended to be a conduit of privileged and work product of RRA's former clients to the clients' litigation adversaries.  L.M. et al. should be given a full and fair opportunity to have all these issues addressed.

      **E.**      **There Can Be No Valid "Agreement" Between the Trustee and the Creditors that Binds L.M. or Waives Her Rights.**

The Razorback Creditors assert in their motion that "[t]he Razorback Creditors' Counsel and Trustee's counsel have previously agreed that all documents produced through the special master process would also be produced to the Razorback Creditors."  Motion at 4.  L.M. has not been notified of any such agreement.  Any such agreement is accordingly invalid, as the agreement would have to fully protect L.M.'s interests.

**CONCLUSION**

In ruling on the Razorback Creditors' Motion to Clarify, the Court should make clear in ruling on the Razorback Creditor's Motion that issues surrounding relevance of the materials and other related discovery issues are left to the State Court to decide.

      DATED:      April 8, 2011

                            /s/ Seth M. Lehrman

                            Seth M. Lehrman
                            seth@pathtojustice.com
                            Florida Bar No.: 132896
                            FARMER, JAFFE, WEISSING,
                            EDWARDS, FISTOS & LEHRMAN, P.L.
                            425 North Andrews Avenue, Suite 2
                            Fort Lauderdale, FL 33301
                            (954) 524-2820   (954) 524-2822 (fax)

16

Jack Scarola
Florida Bar No.: 169440
Searcy, Denney, Scarola, Barnhart & Shipley
2139 Palm Beach Lakes Blvd
West Palm Beach, FL 33409
(561) 686-6300
(561) 684-5816 (fax)
*Attorney for Bradley J. Edwards in the matter of Epstein v. Edwards, et al.*
*Case No.: 502009CA040800XXXXMBAG*

**MASTER SERVICE LIST**

**CASE NO.: 09-34791-BKC-RBR**

Marianella Morales, Esquire
Authorized Agent For Joining Creditors
Avenida Francisco de Miranda
Torre Provincial "A"
Piso 8
Caracas, Venezuela
**(VIA CM/ECF and EMAIL)**

John H. Genovese, Esq.
Robert F. Elgidely, Esq.
Theresa M.B. Van Vliet, Esq.
Genovese Joblove & Battista, PA
Bank Of America Tower at International
Place
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
**(VIA CM/ECF and EMAIL)**

Kendall Coffey, Esq.
Coffey Burlington,
Office in the Grove
Penthouse
2699 South Bayshore Drive
Miami, Florida 33133
kcoffey@coffeyburlington.com
**(VIA CM/ECF and EMAIL)**

The Honorable Herbert M. Stettin
One Biscayne Tower
Suite 3700
Two South Biscayne Boulevard
Miami, Florida 33131
**(VIA U.S. MAIL and EMAIL)**

John G. Bianco, Esq.
John M. Mulli, Esquire
Tripp Scott
110 Southeast Sixth Street
Fifteenth Floor
Fort Lauderdale, Fl. 33301
jgb@trippscott.com
**(VIA CM/ECF and EMAIL)**

Alison W. Lehr, Esq.
Grisel Alonso, Esq.
Assistant United States Attorney
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132
Alison.Lehr@usdoj.gov
Grisel.alonso@usdoj.gov
**(VIA CM/ECF and EMAIL)**

Jeffrey R. Sonn, Esq.
Sonn & Erez, PLC
Broward Financial Center
500 E. Broward Boulevard
Suite 1600
Fort Lauderdale, Florida 33394
jsonn@sonnerez.com
**(VIA CM/ECF and EMAIL)**

Office of the US Trustee
51 Southwest First Avenue
Suite 1204
Miami, Florida 33130
**(VIA CM/ECF and EMAIL)**

Thomas Tew, Esq.
Tew-Cardenas, LLP
Four Seasons Tower
15th Floor
1441 Brickell Avenue
Miami, Florida 33131-3407
tt@tewlaw.com
**(VIA CM/ECF and EMAIL)**

Conrad & Scherer, LLP
633 South Federal Highway
Fort Lauderdale, FL 33301
bs@conradscherer.com
JSilver@conradscherer.com
**(VIA CM/ECF and EMAIL)**

Honorable Jeffrey H. Sloman
Acting U.S. Attorney
99 NE 4th Street

18

Michael D. Seese, Esq.
Hinshaw & Culbertson, LLP
1 E Broward Blvd Ste 1010
Ft Lauderdale, Florida 33301
mseese@hinshawlaw.com
**(VIA CM/ECF and EMAIL)**

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA 19114
**(Via U.S. Mail)**

Internal Revenue Service
Special Procedures - Insolvency
7850 SW 6th Court
Plantation, FL 33324
**(Via U.S. Mail)**

Special Asst. U.S. Attorney
P.O. Box 9, Stop 8000
51 SW 1st Avenue, #1114
Miami, Fl 33130
**(Via U.S. Mail)**

United Healthcare
Dept. CH 10151
Palatine, IL 60055
**(Via US Mail)**

Special Asst. U.S. Attorney
IRS District Counsel
1000 S. Pine Island Rd., Ste 340
Plantation, FL 33324-3906
**(Via U.S. Mail)**

The Honorable Eric H. Holder, Jr.
Attorney General of the U.S.
950 Pennsylvania Avenue, NW Room 4400
Washington, DC 20530-0001
**(Via U.S. Mail)**

Mark Bloom, Esq.
John B. Hutton, Esq.
Greenberg Traurig, LLP

Miami, Fl 33132
**(Via U.S. Mail)**

Daniel Mink
Ovadia Levy
c/o Renato Watches, Inc
14051 NW 14th Street
Sunrise, Florida 33323
**(Via U.S. Mail)**

William George Salim, Jr.
Moskowitz Mandell & Salim
800 Corporate Dr Ste 510
Fort Lauderdale, Florida 33334
wsalim@mmsslaw.com
**(VIA CM/ECF and EMAIL)**

USI
Attn: Anthony Gruppo
200 West Cypress Creek Road
Suite 500
Fort Lauderdale, FL 33309
Anthony.gruppo@usi.biz
**(VIA EMAIL)**

Marc Nurik, Esq.
1 East Broward Blvd
Suite 700
Fort Lauderdale, FL 33301
marc@nuriklaw.com
**(VIA EMAIL)**

BAST AMRON LLP
SunTrust International Center
One Southeast Third Avenue
Suite 1440
Miami, Florida 33131
bamron@bastamron.com
jbast@bastamron.com
**(VIA CM/ECF and EMAIL)**

The Florida Bar
Adria E. Quintela, Esq.
Alan Anthony Pascal, Esq.
Lake Shore Plaza II

19

1221 Brickell Avenue
Miami, FL 33131
bloomm@gtlaw.com
huttonj@gtlaw.com
**(VIA CM/ECF and EMAIL)**

Robert D. Critton, Esq.
Burman, Critton, Luttier & Coleman
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
rcrit@bclclaw.com
**(VIA CM/ECF and EMAIL)**

Roth & Scholl
Attn: Jeffrey C. Roth, Esq.
Attorneys For Creditor Blue
Capital Us East Coast Properties, L.P.
866 South Dixie Highway
Coral Gables, Fl 33146
jeff@rothandscholl.com
**(VIA CM/ECF and EMAIL)**

Rogers, Morris & Ziegler, LLP
1401 East Broward Blvd
Suite 300
Fort Lauderdale, FL 33301
mfbooth@rmzlaw.com
**(VIA CM/ECF and EMAIL)**

Arthur C. Neiwirth, Esq.
One E. Broward Blvd., Suite 1400
Ft. Lauderdale, FL 33301
aneiwirth@qpwblaw.com
**(VIA CM/ECF and EMAIL)**

Ira Sochet, Trustee
Revocable Intervivos Trust of Ira Sochet
c/o Phil Hudson, Esq.
200 South Biscayne Blvd, Suite 3600
Miami, Florida 33130
E-Mail: pmhudson@arnstein.com
**(VIA CM/ECF and EMAIL)**

1300 Concord Terrace, Suite 130
Sunrise, FL 33323
aquintel@flabar.org
apascal@flabar.org
**(VIA CM/ECF and EMAIL)**

Micheal W. Moskowitz, Esq.
800 Corporate Drive, Suite 500
Ft. Lauderdale, FL 33234
mmoskowitz@mmsslaw.com
**(VIA CM/ECF and EMAIL)**

Francis L. Carter, Esq.
Katz Barron Squitero Faust
2699 S. Bayshore Drive, 7th Floor
Miami, Florida 33133
flc@katzbarron.com
**(VIA CM/ECF and EMAIL)**

Bradley S. Shraiberg, Esq.
2385 NW Executive Drive
Suite 300
Boca Raton, Florida 33431
bshraiberg@sfl-pa.com
**(VIA CM/ECF and EMAIL)**

Henry S. Wulf, Esq.
CARLTON FIELDS, P.A.
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401
E-Mail: hwulf@carltonfields.com
**(VIA CM/ECF and EMAIL)**

EMESS Capital, LLC
c/o Bruce A. Katzen, Esq.
201 S. Biscayne Blvd., 17th Floor
Miami, Florida 33131
E-Mail: bkatzen@klugerkaplan.com
jberman@klugerkaplan.com
**(VIA CM/ECF and EMAIL)**

Steven J. Solomon, Esq.
Gray Robinson, P.A.
1221 Brickell Ave, Suite 1600
Miami, Florida 33131

Coquina Investments
c/o Patricia A. Redmond, Esq.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
E-Mail: predmond@stearnsweaver.com
**(VIA CM/ECF and EMAIL)**

Michael I. Goldberg, Esq.
Las Olas Centre - Suite 1600
350 East Las Olas Blvd
Fort Lauderdale, FL 33301
E-Mail: Michael.goldberg@akerman.com
Eyal.berger@akerman.com
**(VIA CM/ECF and EMAIL)**

LMB Funding Group
c/o Robert C. Furr, Esq.
2255 Glades Road, Suite 337W
Boca Raton, Florida 33431
E-Mail: rfurr@furrcohen.com
**(VIA CM/ECF and EMAIL)**

Lawrence A. Gordich, Esq.
Melissa Alagna, Esq.
SEGALL/GORDICH P.A.
801 Brickell Avenue, Suite 900
Miami, Florida 33131
Email: lag@segallgordich.com
Email: mma@segallgordich.com
**(VIA CM/ECF and EMAIL)**

Broward County - Attn: Hollie N. Hawn, Esq.
Government Center
115 South Andrews Avenue
Fort Lauderdale, FL 33301
E-Mail: hhawn@broward.org
**(VIA CM/ECF and EMAIL)**
Leon County Tax Collector
315 S. Calhoun Street, Suite 210
Tallahassee, FL 32301
**(Via US Mail)**

Miami-Dade County Tax Collectors
140 West Flagler Street, 14th Floor
Miami, FL 33130

E-Mail – steven.solomon@gray-robinson.
com
**(VIA CM/ECF and EMAIL)**

Peter F. Valori, Esq.
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
E-mail: pvalori@dvllp.com
**(VIA CM/ECF and EMAIL)**

Canon Financial Services, Inc.
158 Gaither Drive, #200
Mount Laurel, NJ 08054
**(Via US Mail)**

CIT Technology Financing Services I,
LLC
10201 Centurion Parkway North
Jacksonville, FL 32256
**(Via US Mail)**

Gibraltar Private Bank & Trust
Company
220 Alhambra Circle, Suite 500
Coral Gables, FL 33134
**(Via US Mail)**

Inter-Tel Leasing, Inc.
1140 West Loop North
Houston, TX 77055
**(Via US Mail)**

Florida Department of Revenue
501 S. Calhoun Street
Room 201
Carlton Building
Tallahassee, FL 32399
**(Via US Mail)**

Roderick F. Coleman, Esq.
400 South Dixie Highway, Suite 121
Boca Raton, FL 33432
rfc@colemanattorneys.com
**(VIA CM/ECF and EMAIL)**

21

**(Via US Mail)**

Palm Beach County Tax Collector
P.O. Box 3715
West Palm Beach, FL 33402-3715
**(Via US Mail)**

THE LAW OFFICES OF
GEOFFREY D. ITTLEMAN, P.A.
440 North Andrews Avenue
Fort Lauderdale, Florida 33301
**(Via US Mail)**

Carpenter & Berger, PL
6400 N. Andrew Ave, suite 370
Fort Lauderdale, FL 33309
**(Via US Mail)**

Frank F. McGinn, Esq.
Bartlett Hackett Feinberg, P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
ffm@bostonbusinesslaw.com
**(VIA CM/ECF and EMAIL)**

Darol H. M. Carr, Esq.
99 Nesbit Street
Punta Gorda, FL 33950
dcarr@farr.com
**(VIA CM/ECF and EMAIL)**

Jane A. Bee, Esq.
Blank Rome LLP
130 North 18th Street
Philadelphia, PA 19103-6998
bee@blankrome.com
**(VIA EMAIL)**
Melinda S. Thornton, Esq.
Assistant County Attorney
County Attorney's Office
2810 Stephen P. Clark Center
111 N.W. First Street
Miami, Fl 33128-1993
Email: cao.bkc@miamidade.gov
**(VIA CM/ECF and EMAIL)**

Mark S. Haltzman, Esq.
Lamm Rubenstone, LLC
3600 Horizon Blvd, Suite 200
Trevose, PA 19053
mhaltzman@lammrubenstone.com
**(VIA CM/ECF and EMAIL)**

Robert C. Buschel, Esq.
100 S.E. Third Ave, Suite 1300
Fort Lauderdale, FL 33394
**buschel@bglaw-pa.com**
**(VIA CM/ECF and EMAIL)**

Berkowitz Dick Pollack & Brant
Certified Public Accountants & Consultants,
LLP
200 S Biscayne Boulevard, Sixth Floor
Miami, FL 33131-2310
Attn: Richard Pollack
**(Via Email and U.S. Mail)**

MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Attn: James C. Moon, Esq.
jmoon@melandrussin.com
Attn: Peter D. Russin, Esq.
prussin@melandrussin.com
Attn: Michael S. Budwick, Esq.
mbudwick@melandrussin.com
**(VIA CM/ECF and EMAIL)**

Gary S. Blake, Esq.
1499 W. Palmetto Park Rd, Suite 300
Boca Raton, FL 33486
gblake@lglaw.net
**(VIA CM/ECF and EMAIL)**

Maryann Gallagher, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061

SLATKIN & REYNOLDS, P.A.
Attorneys for Russell Adler and Katie Adler
One East Broward Boulevard, Suite 609
Fort Lauderdale, Florida 33301
jslatkin@slatkinreynolds.com
**(VIA CM/ECF and EMAIL)**

ASSOULINE & BERLOWE, P.A.
213 East Sheridan Street, Ste. 3
Dania Beach, FL 33004
Attn: Eric N. Assouline, Esq.
ena@assoulineberlowe.com
**(VIA CM/ECF and EMAIL)**

Steven J. Reisman, Esq.
CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
E-mail: sreisman@curtis.com
**(Via Email and U.S. Mail)**

Turner P. Smith, Esq.
CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
E-mail: tsmith@curtis.com
**(Via Email and U.S. Mail)**

Heather L. Ries, Esq.
Fox Rothschild, LLP
222 Lakeview Ave, Suite 700
West Palm Beach, Fl 33401
hries@foxrothschild.com
**(VIA CM/ECF and EMAIL)**

E-mail: mgallagher@curtis.com
**(Via Email and U.S. Mail)**

ILEANA CRUZ BONGINI, ESQ.
icruz@stearnsweaver.com
STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON, P.A.
Coquina Investments
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
**(VIA CM/ECF and EMAIL)**

Lynn Maynard Gollin
lgollin@gordonrees.com
Gordon & Rees LLP
Four Seasons Tower, 15th Floor
1441 Brickell Avenue
Miami, FL 33131
**(VIA CM/ECF and EMAIL)**

Paul J. McMahon, Esq.
Paul Joseph McMahon, P.A.
2840 S.W. Third Ave
Miami, Florida 33129
pjm@pjmlawmiami.com
**(VIA CM/ECF and EMAIL)**

Robert P. Avolio, Esq.
Crossroads Corporate Center
3150 Brunswick Pike, Ste. 120
Lawrenceville, NJ 08648
ravolio@avoliohanlon.com
**(Via Email and U.S. Mail)**

Mark S. Shipman, Esq.
20 Batterson Park Road, Suite 120
Farmington, CT 06032
mark@shipso.com
**(Via Email and U.S. Mail)**