UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.,     Case No. 09-34791-BKC-RBR
    Chapter 11
    Debtor.
_____/

HERBERT STETTIN, Chapter 11 Trustee,

    Plaintiff,     Adv. Pro. No. 11-02780-RBR[1]

v.

GERALD A. BRAUSER, BERNICE
BRAUSER, LEON BRAUSER, LEONA
BRAUSER, BRAUSER ENTERPRISES and
RENEE ZONENSHINE,

    Defendants.
_____/

**The Settling Adversary Brauser Defendants' Response to the
Limited Objection of Robert C. Furr, Trustee of Banyon 1030-32, LLC and Banyon
Income Fund, L.P. to Motion to Approve [Brauser] Settlement and Release [DE# 3562]**

    Defendants, GERALD A. BRAUSER, BERNICE BRAUSER, LEON BRAUSER, LEONA BRAUSER, BRAUSER ENTERPRISES and RENEE ZONENSHINE (collectively "Defendants"), by and through undersigned counsel, hereby file their response to the Limited Objection of Robert C. Furr, Trustee of Banyon 1030-32, LLC and Banyon Income Fund, L.P. ("Banyon Trustee" or "Furr") to the Settlement Agreement between the RRA Trustee and the Brausers (DE# 3562).

    As this Court is well aware, the RRA Trustee sued the Brausers under fraudulent transfer theories to recover *over* $4.25 million in Adversary Proceeding No. 11-02780-RBR (the

---

[1] This Response has been filed both in the Adversary Proceeding and in the main proceeding.

*Stettin vs. Brauser, et al.*
Case No.: 09-34791-BKC-RBR
Adv. Pro. No.: 11-02780-RBR

"Adversary Proceeding"). According to the Adversary Complaint, RRA caused *over* $4.25 million to be disbursed to the Brausers in connection with the Brausers investments, *through Banyon 1030-32*, in the RRA-run Ponzi scheme. In addition, it was developed during discovery that *over* $327,000 was disbursed to the Brausers as interest payments. Likewise, discovery revealed additional monies invested by the Brausers through Banyon 1030-32.

The Brausers strongly denied *any* liability.[2] The Brausers defended against the allegations primarily on the basis that their statutory "good faith" barred the claims for the return of principal;[3] the claims for interest were further barred because the Brausers were entitled to a return of reasonable interest;[4] and further, a release signed by RRA, *Banyon 1030-32*, their respective principals, and the Brausers, barred the claims.[5] Suffice it to say, the Adversary Proceeding was hotly contested.

*Significantly, Banyon filed broad-based claims in the instant Bankruptcy which seeks monies collected by RRA which are owed to Banyon, and are creditors of the RRA Estate.* See Exhibits 1 (Claim 132-1) and 2 (Claim 133-1), respectively, which are attached hereto. The Claims are broadly worded and encompass potential claims which would involve the Brausers' investments.

---

[2] Quite significantly, the Brausers moved to dismiss the Adversary Proceeding, *inter alia*, because the complaint did not name Banyon 1030-32 as a necessary party. This Court denied the Motion, thus implicitly finding that Stettin had the power to litigate the claims, and the Court had the power to disburse the proceeds, if any, collected by the RRA Trustee to creditors, such as entitled to the money.
[3] *See, e.g.*, Perkins v. Haines, 661 F.3d 623, 626 (11th Cir. 2011).
[4] *See*, *e.g.*, In re Unified Commercial Capital, Inc., 260 B.R. 343 (Bankr.W.D.N.Y. 2001).
[5] *See*, *e.g.*, In re Jordan, 392 B.R. 428, 442-443 (D. Idaho 2008) (A release constitutes "value" for purposes of the fraudulent transfer actions); Steinberg v. Alpha Fifth Group, 2008 WL 906270 (S.D. Fla. 2008) (release barred fraudulent transfer action).

*Stettin vs. Brauser, et al.*
Case No.: 09-34791-BKC-RBR
Adv. Pro. No.: 11-02780-RBR

Now, having waived its right to intervene in the Adversary Proceeding, and after sitting on the sideline for the entire course of the hotly contested Adversary Proceeding, the Banyon Trustee objects to the settlement because it now wishes to bring its own adversary proceeding seeking the return of the very same money that was the subject of the *Stettin v. Brauser* Adversary. The Banyon Trustee's efforts to double-dip must be rejected.

**A. The Banyon Trustee is Impermissibly Asking This Court to Re-Write the Agreement**

As Banyon correctly points out, the RRA-Brauser Settlement contains broadly written releases which were negotiated to include "any and all claims, causes of action … remedies, whether now known or unknown, and whether pending or not yet asserted … relating to the Transfers in any manner whatsoever, directly or indirectly, to the Case, RRA, Scott Rothstein, and/or his/its business operations." The net effect of the Release is to bar *any* further action against the Brausers for *any* claims which may *ever* exist for their investment, directly *or indirectly*, in the Ponzi scheme.

Recognizing the breadth of this Release, which cost the Brausers **$150,000** of money which they vehemently contend is not owed by them to anyone, Banyan is attempting to *rewrite* the negotiated release. Indeed, as requested in ¶6 of its Objection, Banyon expressly "requests that any order approving the compromise expressly provide that the Banyon Trustee's claims against the Brauser Group be preserved and unaffected by the compromise."

With all due respect to the Banyon Trustee, who is a creditor of the RRA Estate, it is not the function of a Creditor, or this Court, to rewrite the terms of the agreement. Instead, this Court must either approve the negotiated settlement, or reject the negotiated settlement. Indeed, Banyon provides no authority for the authority of the Court to engage in such a re-write.

*Stettin vs. Brauser, et al.*
Case No.: 09-34791-BKC-RBR
Adv. Pro. No.: 11-02780-RBR

Thus, because the Objection asks the Court to *re-write* the terms of the settlement agreement, the Objection must be overruled.

### B. The Settlement Should Be Approved

The RRA Trustee's Motion sets forth the criteria which this Court must analyze to determine whether to approve the Settlement. Specifically, "the Court must determine whether a proposed settlement is fair and equitable." Noticeably absent from Banyon's objection is any claim, statement, or reason which challenges whether the instant settlement is "fair and equitable."[6] Indeed, none of the <u>Justice Oaks</u>[7] guidelines are even mentioned.[8] Instead, Banyon endeavors only to *renegotiate* to add additional terms, or delete existing terms, which essentially frustrate the entire rationale behind the Brausers' willingness to settle the case along the terms which were finally reached. Because there is no factual predicate as to why the settlement does not rise to the level of "fair and equitable," the Banyon Objection should be overruled.

### C. The Banyon Trustee Correctly Construes the Release to Bar Future Claims *by the Banyon Trustee* Against the Brausers for Claims related (directly or indirectly) to the Brauser's Investment in the Ponzi-Scheme

The Banyon Trustee is correct that the release in question bars *any* future claim against the Brausers for *any* claims, directly *or indirectly*, associated with the Rothstein-Ponzi scheme.[9]

---

[6] Frankly, the absence of any such attack is understandable given the overwhelming evidence of the Brausers' "good faith."

[7] <u>In re Justice Oaks II, Ltd.</u>, 898 F.2d 1544, 1549 (11th Cir. 1990), cert denied 498 U.S. 959 (1990).

[8] Conversely, had Banyon asserted a proper objection, and if after taking all of the factors into consideration, expressly including the fact that Judge Stettin thoroughly analyzed the facts, defenses, and other issues pertaining to the case, the Court finds that the settlement is not in the best interests of the creditors, including Banyon, then the settlement should not be approved.

[9] The monies sought by both Trustees were invested by the Brausers through Banyon, who in turn used the money to "feed" the RRA-investments. RRA, of course, provided the Brausers directly with letters of protection. All parties are intertwined.

FUERST ITTLEMAN DAVID AND JOSEPH, PL
1001 BRICKELL BAY DRIVE, 32ND FLOOR, MIAMI, FL 33131 • T: 305.350.5690 • F: 305.371.8989 • WWW.FUERSTLAW.COM

*Stettin vs. Brauser, et al.*
Case No.: 09-34791-BKC-RBR
Adv. Pro. No.: 11-02780-RBR

As set forth above, Banyon filed broad-based claims in the RRA Estate. *See, e.g.*, Exhibit 1 (Claim Nos. 132-1) and Exhibit 2 (133-1), respectively. Banyan has thus put its trust and confidence in the RRA Trustee to collect the monies which it may be entitled. Banyon is not entitled, however, to sit on the sideline and let the RRA Trustee do his job, at his expense, and then after Banyon reaps the benefits (through its claim), bring yet another case against Brausers for the return of the same pool of money that the RRA Trustee sought.

A review of the Justice Oaks factors sets forth the basis as to why the Banyon Trustee is foreclosed from suing the Brausers for the same or related claims. The factors include:

> The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d*) the paramount interest of the creditors and a proper deference to their reasonable views in the premises*.

Here, the fourth factor reflects that the RRA Trustee entered into this settlement with "the paramount interest of the creditors and a proper deference to their *reasonable* views in the premises." *Banyon is a creditor of the RRA Estate.*[10] Having considered all of the elements to discern whether the settlement is "fair and equitable," the RRA Trustee verily believed that the instant settlement is in the best interest of the Creditors of the Estate. And, frankly, the Banyon Trustee has not come up with any basis, fact, or rationale as to why the RRA Trustee's analysis is flawed. Instead, Banyon's sole objection is predicated on a desire to re-write the settlement to afford that creditor the opportunity to sue the Brausers again. That is not a sufficient basis to object to this settlement.

---

[10] Banyon clearly is a "creditor" and is bound by the results of the RRA Trustee. *See* Justice Oaks, fn5.

*Stettin vs. Brauser, et al.*
Case No.: 09-34791-BKC-RBR
Adv. Pro. No.: 11-02780-RBR

Equally important is the fact Banyon had notice of the Brauser Adversary, and voluntarily sat on the sideline allowing the RRA Trustee to do all of the work. If Banyon was fearful that the RRA Trustee would not thoroughly and diligently prosecute the claims, Banyon had every right to seek to intervene in the case as an interested party.[11] Banyon did nothing but wait for the benefits of the RRA Trustee's efforts (and expenditures) to flow through the process.

Regardless, Banyon is correct that any claims which it may have against the Brausers for the Brausers' investment, "directly or indirectly" (which by definition includes through the Banyon feeder fund), will be barred upon this Court approving the settlement. *See* In re Martin, 490 F.3d 1272, 1276-77 (11th Cir. 2007) (a Bankruptcy Court's approval of a settlement agreement barred all "related" claims by creditors of the Debtor Estate). *See further* Matthews, Wilson & Matthews, Inc. v. Capital City Bank, 312 Fed. Appx. 174, 175-76 (11th Cir. 2008); In re Gosman, 382 B.R. 826, 839-42 (S.D. Fla. 2007).

## CONCLUSION

The RRA Trustee and the Brausers have fought for over a year. At all times, the Brausers steadfastly, and vehemently, denied any liability *to anyone* for anything that transpired in connection with their investments *through Banyon* in the RRA-Ponzi scheme. On the eve of trial, the parties sat for a full, long day before a neutral mediator, and fully balanced the risks against the rewards of trying the case. At the conclusion of that arduous day, the Brausers bargained for an end to the claims against them. The Brausers negotiated for, and agreed to purchase peace *and **finality*** to the claw-backs. The Brausers agreed to pay an expensive, six-

---

[11] Ironically, the Brausers initially moved to dismiss the case claiming that Banyon was an indispensable party. The Court denied the motion, implying that the RRA Trustee was perfectly capable of prosecuting the claims on behalf of such a creditor.

*Stettin vs. Brauser, et al.*
Case No.: 09-34791-BKC-RBR
Adv. Pro. No.: 11-02780-RBR

figure price for such peace and finality. A settling party is entitled to receive what was purchased. If this Court finds that the RRA Trustee has met its burden of establishing that the settlement is "fair and equitable," this Court is compelled to approve the Settlement, without restriction or re-write. Likewise, if the Court finds that the Settlement falls below the "fair and equitable" threshold, the Settlement should be rejected. However, under no circumstance should the Banyon Trustee's objection be sustained, because the settlement cannot be rewritten.

WHEREFORE, Defendants respectfully request that their Settlement be approved, that they be allowed to pay the Settlement, and that they be allowed to move on with their lives without further expense in this or any other related case, and that this Court enter such further relief as it deems just and proper.

Respectfully submitted,

FUERST ITTLEMAN DAVID AND JOSEPH, P.L.
Attorney for Defendants
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
Telephone:  (786) 364-7990
Facsimile:  (786) 364-7995
Email:  ajoseph@fuerstlaw.com

By:____/s/*Allan A. Joseph*_____
ALLAN A. JOSEPH
Florida Bar Number: 893137

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record and/or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:____/s/*Allan A. Joseph*_____
ALLAN A. JOSEPH

B10 (Official Form 10) (4/10)

| United States Bankruptcy Court - Southern District of Florida | PROOF OF CLAIM |
|---|---|
| Name of Debtor: Rothstein Rosenfeldt Adler, P.A. | Case Number: 09-34791-RBR |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Banyon 1030-32, LLC**

Name and address where notices should be sent:
Banyon 1030-32, LLC
c/o Michael S. Budwick, Esquire
Meland Russin & Budwick, P.A.
200 S. Biscayne Blvd., Ste 3000
Miami, FL 33131
Telephone number: 305-358-6363

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ **see attached**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: **see attached**
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:_____

3a. Debtor may have scheduled account as:_____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property:$_____ Annual Interest Rate_____

Amount of arrearage and other charges as of time case filed included in secured claim,
if any: $_____ Basis for perfection:_____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

FOR COURT USE ONLY

Date: May 11, 2010

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

By George Levin Its: Managing Member (and not individually)

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

Ex. 1

## EXHIBIT A
## To Proof of Claim of
## Banyon 1030-32, LLC

### INTRODUCTION

Pursuant to various *Acknowledgement of Assignment/Purchase of Settlement Proceeds* ( the "Assignments")[1], Debtor represented to Claimant that Debtor was attorney of record and escrow agent (trustee) for various plaintiffs in certain confidential matters, and that such plaintiffs desired to assign and sell their settlement proceeds to Claimant. Based on Debtor's representations upon which Claimant detrimentally relied, Banyon 1030-32, LLC ("Claimant") was fraudulently induced by Debtor to enter into the Assignments as Transferee, purchasing settlement proceeds from plaintiffs whose identity could not be revealed, due to what was represented by Debtor to be the confidential nature of the transaction. However, the plaintiffs and the settlements ultimately proved fictitious, and Claimant has been damaged by Debtor's fraudulent ponzi-style scheme as set forth below.

### THE CLAIMS

**A.   Breach of Contract**

Claimant asserts a claim for the following breaches of the Assignments:

The Assignment and related documents comprising a "Deal Package" represents the existence of a contract between Debtor and Claimant. Debtor breached the Assignments by failing to abide by the obligations set forth therein. Specifically, Debtor made false representations and warranties. For example, Debtor "acknowledged" that it would hold proceeds received by Claimant in trust for plaintiffs, but such plaintiffs and their settlements were fictions created by Debtor to induce Claimant to transfer funds to Debtor.

Accordingly, Claimant asserts both liquidated and contingent/unliquidated claims against Debtor as set forth below:

---

[1] Although the Assignments establish the relationship between Claimant and Debtor, the Assignments represent only one part of a "Deal Package" provided to Claimant by Debtor. Prior to Claimant executing an Assignment, Debtor provided Claimant with a redacted copy of Debtor's retention agreement with plaintiff and a redacted copy of the settlement agreement between plaintiff and defendant. In addition, the Assignment included as exhibits redacted Form of Sale and Transfer Agreements – one for plaintiff and one for Claimant as Transferee. Upon execution of the Assignment, Claimant would issue a "Request for Advance" from its investor(s) to purchase the settlement proceeds which were placed in an IOTA trust account with Debtor. These documents comprise the "Deal Package." The total number of Deal Packages are voluminous and thus not attached hereto, but are available for review upon request. Each Deal Package, including the Assignments, is nearly identical (tracking numbers assigned by Debtor, payment terms and amounts would change). Accordingly, reference to the provisions of the Assignments herein are equally applicable to all Assignments.

|  | **Liquidated Claims** | **Estimated Claims (C/U)**[2] |
|---|---|---|
| Breach of Assignments | $6,000,000.00 | Unknown (C/U) |

### B. Fraud/ Fraud in the Inducement

Debtor made multiple representations in the Assignments which proved to be fraudulent. For example, Debtor acknowledged that it was attorney of record for the plaintiffs, which was false, because the plaintiffs did not exist. Debtor acknowledged it would transfer funds received from Claimant to plaintiff, which was false, because plaintiffs did not exist. Debtor further acknowledged, as attorney of record, that the documents provided to Claimant represented a *bona fide* settlement transaction, when in fact; the settlement documents were manufactured by Debtor and were fraudulent. In addition, Debtor acknowledged that it had "no entitlement to any of the proceeds from such sale," yet it retained and used the proceeds received from Claimant to further its fraudulent activities to the detriment of Claimant.

Debtor's fraudulent representations were deliberate. Debtor knew at the time it made its "acknowledgements" that such acknowledgements were false, and designed to cause, and actually caused, Claimant's detrimental reliance.

Accordingly, Claimant asserts both liquidated and contingent/unliquidated claims against Debtor as set forth below:

|  | **Liquidated Claims** | **Estimated Claims (C/U)** |
|---|---|---|
| Fraud/Fraud in the Inducement Claims | $6,000,000.00 | Unknown (C/U) |

### C. Indemnification

Pursuant to the Assignments, Debtor acknowledged the following:

18. As attorney of record, I [Scott Rothstein] have the power to bind the law firm of RRA [Debtor] and I and RRA agree to indemnify, defend and hold Transferee [Claimant], Transferee's Assignee, and their affiliates, and their respective directors, officers, employees, shareholders, partners and agents (collectively, the "Indemnified Parties") harmless from and against any and all claims, liability, losses, costs and expenses (which include attorneys fees and costs) incurred by any Indemnified Party in connection with any breach by the Attorney of Record and/or RRA Law Firm of the above acknowledgement including all of its representations and warranties, unless same is caused by any intentional act of the applicable Indemnified Party.

---

[2] Claims designated "U" are unliquidated, "C" are contingent, and "C/U" are both contingent and unliquidated. Claims designated "C" may be both partially fixed and partially contingent.

2

Claimant asserts a contingent and unliquidated claim for any claims, liability, losses, costs and expenses (including attorneys fees and costs) incurred by Claimant as a result of Debtor's breaches of, and fraudulent representations made in, the Assignments.

|                 | **Liquidated Claims** | **Estimated Claims (C/U)** |
| --------------- | --------------------- | -------------------------- |
| Indemnification | N/A                   | Unknown (C/U)              |

## SUMMARY OF CLAIM TOTALS

The claim(s) set forth herein (the "Claim") is for amounts owing to Claimant as a result of, inter alia, Debtor's failure to meet its obligations pursuant to the Assignments. Claimant hereby claims the amounts set forth below:

|                             | Liquidated Claims[±] | Estimated Claims (C/U) |
| --------------------------- | -------------------- | ---------------------- |
| Breach of Contract          | $6,000,000.00        | Unknown (C/U)          |
| Fraud/Fraudulent Inducement | $6,000,000.00        | Unknown (C/U)          |
| Indemnification             | N/A                  | Unknown (C/U)          |
| AGGREGATED TOTAL:           | $6,000,000.00[3]     | Unknown (C/U)          |

In addition to the liquidated and/or estimated sums set forth above, claim is made against the Debtor for all reimbursement, set-off, and other obligations arising under the Assignments. Further, in addition to the liquidated and/or estimated amounts set forth above, claim is made for (i) prepetition interest and costs and expenses in an as yet unliquidated amount (which, for the avoidance of doubt, shall include any prejudgment interest allowable under the Assignments or applicable law) and (ii) to the extent permitted by sections 502 and 506 of the Bankruptcy Code and other applicable authority, any and all post-petition interests and costs and expenses incurred by the Claimant on and after the date on which the debtor filed its petition under chapter 11 of the Bankruptcy Code. Claimant has not discovered (or does not anticipate) further material breaches by Debtor of the Assignments. Nonetheless, Claimant reserves the right to amend this Proof of Claim to the extent necessary to reflect any breaches or other claims in respect of the Assignments in addition to those specified herein, including breaches discovered by Claimant after the filing hereof (whether such breaches occurred prior to or after the filing hereof), and Claimant hereby claims for such breaches or other claims in an unknown amount to the extent necessary to preserve its rights.

---

± Claims for Breach of Contract and Fraud/Fraudulent Inducement are sought in the alternative.

[3] Plus pre and post-judgment interest to the extent available pursuant to Fla. Stat. §55.03 or otherwise, plus unliquidated and unknown amounts.

3

## RESERVATION OF RIGHTS

Claimant reserves the right to amend this Proof of Claim and to file further pleadings and documents from time to time to (i) restate liquidated and unliquidated components of the Claim, (ii) update the total estimated exposure with respect to any unliquidated claims asserted herein, (iii) request payment of administrative expenses (whether in respect of claims asserted herein or otherwise), (iv) reflect additional claims to the extent discovered after the filing hereof, or (v) for any other reason should Claimant deem it appropriate, including, without limitation, to claim all amounts due in respect of any prepetition or postpetition professional fees and/or expenses and interest.

To the extent the Assignments are determined by the bankruptcy court to be executory contracts, Claimant reserves all rights respecting executory contracts under applicable bankruptcy and non-bankruptcy law, including without limitation the right to (i) object to the assumption, assumption and assignment, or rejection of any such contract, (ii) amend this Proof of Claim or its exhibits to reflect the Debtor's rejection or assumption of any executory contract (or to reflect a similar rejection or assumption by any relevant Debtor affiliate), and (iii) assert cure claims and be assured of future performance in connection with the assumption or assumption and assignment of any executory contract.

This Proof of Claim is filed under the compulsion of the bar date established in this chapter 11 case and is filed to protect Claimant from forfeiture of claims by reason of said bar date. The description of the Assignments provided above is for reference purposes only and is not intended as, and shall not be construed as, an interpretation by Claimant of the relevant provisions of the Assignments (other than the calculation of damages noted therein). Filing of this proof of claim is not and shall not be deemed or construed as (a) an election of remedies, (b) a consent by Claimant to a jury trial in this court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(b) or otherwise, (c) a waiver of the right of Claimant to a trial by jury in any proceeding so triable herein or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant 28 U.S.C. § 157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution, (d) a waiver of the right of Claimant to have final orders in non-core proceedings entered only after *de novo* review by a District Court, (e) a waiver of the right of Claimant to have the reference withdrawn by the District Court in any matter subject to mandatory or discretionary withdrawal, (f) a waiver of any past, present or future event of default, (g) a waiver or limitation of any rights of Claimant, including without limitation, a waiver of rights, claims, actions, defenses, set-offs or recoupments to which Claimant is or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, set-offs and recoupments are expressly reserved by Claimant, or (h) an admission by Claimant that any property held by the Debtor (or any Debtor affiliate) is property of the estate. In addition, Claimant reserves its right to an administrative expense priority claim for all amounts set forth or owing under the Assignments which are due and owing as administrative expenses pursuant to, *inter alia*, sections 503, 507 or other applicable provisions of the Bankruptcy Code.

4

In executing and filing this Proof of Claim, Claimant does not waive any obligation owing to him, any right to any security held by him or for his benefit, any right to claim specific assets, or any other right or rights of action that he has or may have against the Debtor or any other person, including without limitation, rights against guarantors, officers and directors.

5

B10 (Official Form 10) (4/10)

| United States Bankruptcy Court - Southern District of Florida | PROOF OF CLAIM |
|---|---|
| Name of Debtor:<br>Rothstein Rosenfeldt Adler, P.A. | Case Number:<br>09-34791-RBR |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Banyon Income Fund, LP**

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Banyon Income Fund, LP
c/o Michael S. Budwick, Esquire
Meland Russin & Budwick, P.A.
200 S. Biscayne Blvd., Ste 3000
Miami, FL 33131
Telephone number: 305-358-6363

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

1. Amount of Claim as of Date Case Filed: $ see attached

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim: see attached
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:_____

3a. Debtor may have scheduled account as:_____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate _____

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

FOR COURT USE ONLY

Date:
May 11, 2010

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. By: Banyon 1030-32, LLC
Its General Partner
By George Levin, Its: Mg Member of 1030-32, LLC (and not individually)

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Ex. 2

**EXHIBIT A**
**To Proof of Claim of**
**Banyon Income Fund, LP**

## INTRODUCTION

Pursuant to various *Acknowledgement of Assignment/Purchase of Settlement Proceeds* ( the "<u>Assignments</u>")[1], Debtor represented to Claimant that Debtor was attorney of record and escrow agent (trustee) for various plaintiffs in certain confidential matters, and that such plaintiffs desired to assign and sell their settlement proceeds to Claimant. Based on Debtor's representations upon which Claimant detrimentally relied, Banyon Income Fund, LP ("<u>Claimant</u>") was fraudulently induced by Debtor to enter into the Assignments as Transferee, purchasing settlement proceeds from plaintiffs whose identity could not be revealed, due to what was represented by Debtor to be the confidential nature of the transaction. However, the plaintiffs and the settlements ultimately proved fictitious, and Claimant has been damaged by Debtor's fraudulent ponzi-style scheme as set forth below.

## THE CLAIMS

A. **Breach of Contract**

Claimant asserts a claim for the following breaches of the Assignments:

The Assignment and related documents comprising a "Deal Package" represents the existence of a contract between Debtor and Claimant. Debtor breached the Assignments by failing to abide by the obligations set forth therein. Specifically, Debtor made false representations and warranties. For example, Debtor "acknowledged" that it would hold proceeds received by Claimant in trust for plaintiffs, but such plaintiffs and their settlements were fictions created by Debtor to induce Claimant to transfer funds to Debtor.

Accordingly, Claimant asserts both liquidated and contingent/unliquidated claims against Debtor as set forth below:

---

[1] Although the Assignments establish the relationship between Claimant and Debtor, the Assignments represent only one part of a "Deal Package" provided to Claimant by Debtor. Prior to Claimant executing an Assignment, Debtor provided Claimant with a redacted copy of Debtor's retention agreement with plaintiff and a redacted copy of the settlement agreement between plaintiff and defendant. In addition, the Assignment included as exhibits redacted Form of Sale and Transfer Agreements – one for plaintiff and one for Claimant as Transferee. Upon execution of the Assignment, Claimant would issue a "Request for Advance" from its investor(s) to purchase the settlement proceeds which were placed in an IOTA trust account with Debtor. These documents comprise the "Deal Package." The total number of Deal Packages are voluminous and thus not attached hereto, but are available for review upon request. Each Deal Package, including the Assignments, is nearly identical (tracking numbers assigned by Debtor, payment terms and amounts would change). Accordingly, reference to the provisions of the Assignments herein are equally applicable to all Assignments.

|  | **Liquidated Claims** | **Estimated Claims (C/U)**[2] |
|---|---|---|
| Breach of Assignments | $89,098,482.97 | Unknown (C/U) |

**B.  Fraud/ Fraud in the Inducement**

Debtor made multiple representations in the Assignments which proved to be fraudulent. For example, Debtor acknowledged that it was attorney of record for the plaintiffs, which was false, because the plaintiffs did not exist. Debtor acknowledged it would transfer funds received from Claimant to plaintiff, which was false, because plaintiffs did not exist. Debtor further acknowledged, as attorney of record, that the documents provided to Claimant represented a *bona fide* settlement transaction, when in fact; the settlement documents were manufactured by Debtor and were fraudulent. In addition, Debtor acknowledged that it had "no entitlement to any of the proceeds from such sale," yet it retained and used the proceeds received from Claimant to further its fraudulent activities to the detriment of Claimant.

Debtor's fraudulent representations were deliberate. Debtor knew at the time it made its "acknowledgements" that such acknowledgements were false, and designed to cause, and actually caused, Claimant's detrimental reliance.

Accordingly, Claimant asserts both liquidated and contingent/unliquidated claims against Debtor as set forth below:

|  | **Liquidated Claims** | **Estimated Claims (C/U)** |
|---|---|---|
| Fraud/Fraud in the Inducement Claims | $89,098,482.97 | Unknown (C/U) |

**C.  Indemnification**

Pursuant to the Assignments, Debtor acknowledged the following:

> 18. As attorney of record, I [Scott Rothstein] have the power to bind the law firm of RRA [Debtor] and I and RRA agree to indemnify, defend and hold Transferee [Claimant], Transferee's Assignee, and their affiliates, and their respective directors, officers, employees, shareholders, partners and agents (collectively, the "Indemnified Parties") harmless from and against any and all claims, liability, losses, costs and expenses (which include attorneys fees and costs) incurred by any Indemnified Party in connection with any breach by the Attorney of Record and/or RRA Law Firm of the above acknowledgement including all of its representations and warranties, unless same is caused by any intentional act of the applicable Indemnified Party.

---

[2] Claims designated "U" are unliquidated, "C" are contingent, and "C/U" are both contingent and unliquidated. Claims designated "C" may be both partially fixed and partially contingent.

2

  Claimant asserts a contingent and unliquidated claim for any claims, liability, losses, costs and expenses (including attorneys fees and costs) incurred by Claimant as a result of Debtor's breaches of, and fraudulent representations made in, the Assignments.

|  | **Liquidated Claims** | **Estimated Claims (C/U)** |
|---|---|---|
| Indemnification | N/A | Unknown (C/U) |

## SUMMARY OF CLAIM TOTALS

  The claim(s) set forth herein (the "<u>Claim</u>") is for amounts owing to Claimant as a result of, inter alia, Debtor's failure to meet its obligations pursuant to the Assignments. Claimant hereby claims the amounts set forth below:

|  | Liquidated Claims$^{\pm}$ | Estimated Claims (C/U) |
|---|---|---|
| Breach of Contract | $89,098,482.97 | Unknown (C/U) |
| Fraud/Fraudulent Inducement | $89,098,482.97 | Unknown (C/U) |
| Indemnification | N/A | Unknown (C/U) |
| AGGREGATED TOTAL: | $89,098,482.97$^{3}$ | Unknown (C/U) |

  In addition to the liquidated and/or estimated sums set forth above, claim is made against the Debtor for all reimbursement, set-off, and other obligations arising under the Assignments. Further, in addition to the liquidated and/or estimated amounts set forth above, claim is made for (i) prepetition interest and costs and expenses in an as yet unliquidated amount (which, for the avoidance of doubt, shall include any prejudgment interest allowable under the Assignments or applicable law) and (ii) to the extent permitted by sections 502 and 506 of the Bankruptcy Code and other applicable authority, any and all post-petition interests and costs and expenses incurred by the Claimant on and after the date on which the debtor filed its petition under chapter 11 of the Bankruptcy Code. Claimant has not discovered (or does not anticipate) further material breaches by Debtor of the Assignments. Nonetheless, Claimant reserves the right to amend this Proof of Claim to the extent necessary to reflect any breaches or other claims in respect of the Assignments in addition to those specified herein, including breaches discovered by Claimant after the filing hereof (whether such breaches occurred prior to or after the filing hereof), and Claimant hereby claims for such breaches or other claims in an unknown amount to the extent necessary to preserve its rights.

---

  $\pm$ Claims for Breach of Contract and Fraud/Fraudulent Inducement are sought in the alternative.

$^{3}$ Plus pre and post-judgment interest to the extent available pursuant to Fla. Stat. §55.03 or otherwise, plus unliquidated and unknown amounts.

3

## RESERVATION OF RIGHTS

Claimant reserves the right to amend this Proof of Claim and to file further pleadings and documents from time to time to (i) restate liquidated and unliquidated components of the Claim, (ii) update the total estimated exposure with respect to any unliquidated claims asserted herein, (iii) request payment of administrative expenses (whether in respect of claims asserted herein or otherwise), (iv) reflect additional claims to the extent discovered after the filing hereof, or (v) for any other reason should Claimant deem it appropriate, including, without limitation, to claim all amounts due in respect of any prepetition or postpetition professional fees and/or expenses and interest.

To the extent the Assignments are determined by the bankruptcy court to be executory contracts, Claimant reserves all rights respecting executory contracts under applicable bankruptcy and non-bankruptcy law, including without limitation the right to (i) object to the assumption, assumption and assignment, or rejection of any such contract, (ii) amend this Proof of Claim or its exhibits to reflect the Debtor's rejection or assumption of any executory contract (or to reflect a similar rejection or assumption by any relevant Debtor affiliate), and (iii) assert cure claims and be assured of future performance in connection with the assumption or assumption and assignment of any executory contract.

This Proof of Claim is filed under the compulsion of the bar date established in this chapter 11 case and is filed to protect Claimant from forfeiture of claims by reason of said bar date. The description of the Assignments provided above is for reference purposes only and is not intended as, and shall not be construed as, an interpretation by Claimant of the relevant provisions of the Assignments (other than the calculation of damages noted therein). Filing of this proof of claim is not and shall not be deemed or construed as (a) an election of remedies, (b) a consent by Claimant to a jury trial in this court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto, pursuant to 28 U.S.C. § 157(b) or otherwise, (c) a waiver of the right of Claimant to a trial by jury in any proceeding so triable herein or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant 28 U.S.C. § 157(b)(2), and whether such jury trial is pursuant to statute or the United States Constitution, (d) a waiver of the right of Claimant to have final orders in non-core proceedings entered only after *de novo* review by a District Court, (e) a waiver of the right of Claimant to have the reference withdrawn by the District Court in any matter subject to mandatory or discretionary withdrawal, (f) a waiver of any past, present or future event of default, (g) a waiver or limitation of any rights of Claimant, including without limitation, a waiver of rights, claims, actions, defenses, set-offs or recoupments to which Claimant is or may be entitled under agreements, in law or in equity, all of which rights, claims, actions, defenses, set-offs and recoupments are expressly reserved by Claimant, or (h) an admission by Claimant that any property held by the Debtor (or any Debtor affiliate) is property of the estate. In addition, Claimant reserves its right to an administrative expense priority claim for all amounts set forth or owing under the Assignments which are due and owing as administrative expenses pursuant to, *inter alia*, sections 503, 507 or other applicable provisions of the Bankruptcy Code.

   In executing and filing this Proof of Claim, Claimant does not waive any obligation owing to him, any right to any security held by him or for his benefit, any right to claim specific assets, or any other right or rights of action that he has or may have against the Debtor or any other person, including without limitation, rights against guarantors, officers and directors.