## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                          CASE NO.:  09-34791-BKC-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,               CHAPTER 11

      Debtor.

_____/

### SECOND AMENDED JOINT PLAN OF LIQUIDATION
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY
### CODE PROPOSED JOINTLY BY THE TRUSTEE AND THE
### OFFICIAL COMMITTEE OF UNSECURED CREDITORS (AS MODIFIED)

**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Paul Steven Singerman
Florida Bar No. 378860
singerman@bergersingerman.com
Jordi Guso
Florida Bar No. 0863580
jguso@bergersingerman.com
Christopher A. Jarvinen
Florida Bar No. 0021745
cjarvinen@bergersingerman.com
Isaac M. Marcushamer
Florida Bar No. 60373
imarcushamer@bergersingerman.com

*Counsel for Herbert Stettin, Chapter 11 Trustee*

**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Michael I. Goldberg
Florida Bar No. 886602
michael.goldberg@akerman.com
Eyal Berger
Florida Bar No. 11069
eyal.berger@akerman.com

*Counsel for the Official Committee of
Unsecured Creditors*

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Miami Tower
100 S.E. Second Street, Suite 4400
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
John H. Genovese
Florida Bar No. 280852
jgenovese@gjb-law.com
Jesus M. Suarez
Florida Bar No. 60086
jsuarez@gjb-law.com

*Special Counsel/Conflicts Counsel for Herbert
Stettin, Chapter 11 Trustee*

**Dated: May 29, 2013**

# TABLE OF CONTENTS

**Page**

INTRODUCTION..........................................................................................................................1

**ARTICLE 1      DEFINITIONS, INTERPRETATION AND RULES OF
CONSTRUCTION**................................................................2

   **A.      Scope of Definitions**.......................................................2

   **B.      Definitions**..................................................................2

1.1    9019 Motion.......................................................................2
1.2    9019 Order........................................................................3
1.3    Abandoned Assets................................................................3
1.4    Additional Recoveries............................................................3
1.5    Administrative Expense Claim....................................................3
1.6    Administrative Expense Claim Bar Date(s).......................................4
1.7    Affiliate...........................................................................4
1.8    Allowed...........................................................................4
1.9    Assets.............................................................................6
1.10   Available Cash....................................................................6
1.11   Ballot..............................................................................6
1.12   Bankruptcy Code..................................................................6
1.13   Bankruptcy Court.................................................................6
1.14   Bankruptcy Rules.................................................................7
1.15   Banyon Asserted Claims..........................................................7
1.16   Banyon Bankruptcy Cases........................................................7
1.17   Banyon Bankruptcy Estates.......................................................7
1.18   [Intentionally Omitted]............................................................7
1.19   Banyon Creditor Collateral Source Recoveries..................................7
1.20   Banyon Distribution...............................................................7
1.21   Banyon Releasors.................................................................7
1.22   Banyon Trustee...................................................................8
1.23   Banyon Unsecured Claim.........................................................8
1.24   Banyon Unsecured Creditor Fund................................................8
1.25   Bar Date..........................................................................8
1.26   Bar Order Hearing................................................................8
1.27   Beneficiary or Beneficiaries......................................................8
1.28   Business Day......................................................................8
1.29   Cases.............................................................................8
1.30   Cash..............................................................................8
1.31   Chapter 11 Case..................................................................8
1.32   Claim.............................................................................9
1.33   Claim Objection Procedures Order...............................................9
1.34   Class.............................................................................9
1.35   Client Files Order................................................................9

# TABLE OF CONTENTS
### (continued)

| | | |
|---|---|---|
| 1.36 | Collateral Source Recoveries | 9 |
| 1.37 | Committee | 9 |
| 1.38 | Confirmation | 10 |
| 1.39 | Confirmation Date | 10 |
| 1.40 | Confirmation Hearing | 10 |
| 1.41 | Confirmation Order | 10 |
| 1.42 | Coquina Settlement Agreement | 10 |
| 1.43 | Court of Appeals | 10 |
| 1.44 | Creditor | 10 |
| 1.45 | Debtor | 10 |
| 1.46 | Disallowed | 11 |
| 1.47 | Disclosure Statement | 11 |
| 1.48 | Disclosure Statement Approval Order | 11 |
| 1.49 | Disputed Claim | 11 |
| 1.50 | Disputed Claims Reserve | 11 |
| 1.51 | Distribution | 12 |
| 1.52 | Distribution Record Date | 12 |
| 1.53 | District Court | 12 |
| 1.54 | Effective Date | 12 |
| 1.55 | Entity | 12 |
| 1.56 | [Intentionally Omitted] | 12 |
| 1.57 | Estate | 12 |
| 1.58 | File or Filed | 12 |
| 1.59 | Final Distribution | 12 |
| 1.60 | Final Distribution Date | 12 |
| 1.61 | Final Order | 13 |
| 1.62 | [Intentionally omitted] | 13 |
| 1.63 | Forfeiture Action | 13 |
| 1.64 | Full Amount | 13 |
| 1.65 | Funds | 14 |
| 1.66 | Funds' Settlement Agreement | 14 |
| 1.67 | Funds' Subordinated Claim | 14 |
| 1.68 | General Unsecured Claims | 14 |
| 1.69 | Gibraltar Settlement Agreement | 14 |
| 1.70 | Gibraltar Subordinated Claim | 15 |
| 1.71 | Governmental Unit | 15 |
| 1.72 | Government Unit Bar Date | 15 |
| 1.73 | Impaired | 15 |
| 1.74 | Indemnification Obligations | 15 |
| 1.75 | Interest | 15 |
| 1.76 | IRC | 15 |
| 1.77 | Levin Claims | 15 |
| 1.78 | Levy Settlement Agreement | 16 |

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 1.79 | Levy Subordinated Unsecured Claims | 16 |
| 1.80 | Lien | 16 |
| 1.81 | Liquidating Trust | 16 |
| 1.82 | Liquidating Trust Agreement | 16 |
| 1.83 | Liquidating Trustee | 17 |
| 1.84 | Liquidating Trust Oversight Committee | 17 |
| 1.85 | Litigation Claims | 18 |
| 1.86 | Miscellaneous Subordinated Claims | 19 |
| 1.87 | Multiple Source Recovery Allowed Unsecured Claim | 20 |
| 1.88 | Non-Governmental Unit Bar Date | 20 |
| 1.89 | Notice of Effective Date | 20 |
| 1.90 | October Mediation Expense | 20 |
| 1.91 | Order for Relief | 20 |
| 1.92 | Parties | 20 |
| 1.93 | Person | 20 |
| 1.94 | Petition Date | 20 |
| 1.95 | Plan | 21 |
| 1.96 | Plan Proponents | 21 |
| 1.97 | Post-Confirmation Professional | 21 |
| 1.98 | Priority Claim | 21 |
| 1.99 | Priority Non-Tax Claim | 21 |
| 1.100 | Priority Tax Claim | 21 |
| 1.101 | Professional | 21 |
| 1.102 | Professional Claim | 22 |
| 1.103 | Pro Rata | 22 |
| 1.104 | Razorback Plaintiffs | 22 |
| 1.105 | Razorback Settlement Agreement | 22 |
| 1.106 | Razorback Substantial Contribution Claim | 23 |
| 1.107 | Razorback Subordinated Unsecured Claim | 23 |
| 1.108 | Razorback Unsecured Claim | 23 |
| 1.109 | Razorback Unsecured Rising Tide Claim | 23 |
| 1.110 | Rejection Claim Bar Date | 23 |
| 1.111 | Released Claims | 23 |
| 1.112 | Reserves | 23 |
| 1.113 | Rothstein | 23 |
| 1.114 | RRA | 23 |
| 1.115 | RRA Banyon Senior Subordinated Claim | 23 |
| 1.116 | RRA Complaint | 23 |
| 1.117 | RRA Releasors | 24 |
| 1.118 | Scheduled | 24 |
| 1.119 | Schedules | 24 |
| 1.120 | Section 502(h) Bar Date | 24 |
| 1.121 | Secured Claim | 24 |

# TABLE OF CONTENTS
(continued)

1.122    Settlement Agreement ................................................................ 24
1.123    Single Source Recovery Allowed Unsecured Claim ........................... 25
1.124    Statutory Fees ........................................................................ 25
1.125    TD Bank ............................................................................... 25
1.126    TD Bank Contribution ............................................................... 25
1.127    TD Bank Indemnitee ................................................................. 25
1.128    TD Bank Releasees .................................................................. 25
1.129    TD Bank Junior Subordinated Claim ............................................. 26
1.130    Third Party Claims .................................................................. 26
1.131    Trustee ................................................................................. 26
1.132    Trust Assets .......................................................................... 26
1.133    Unclaimed Property ................................................................. 26
1.134    Unclassified Claims ................................................................. 27
1.135    Unimpaired ........................................................................... 27
1.136    United States Trustee ............................................................... 27
1.137    Verified Banyon Creditor Collateral Source Recovery Disclosure ......... 27
1.138    Verified Collateral Source Recovery Disclosure ............................... 28
1.139    Voting Agent .......................................................................... 28
1.140    Voting Deadline ...................................................................... 28

C.        Rules of Interpretation ............................................................ **28**

D.        Computation of Time ............................................................... **30**

ARTICLE 2      TREATMENT OF UNCLASSIFIED CLAIMS ......................... **30**

2.1      Administrative Expense Claims ................................................... 30
2.2      Statutory Fees ........................................................................ 30
2.3      Professional Claims ................................................................. 31
2.4      Trustee and Liquidating Trustee Compensation ............................... 32
         2.4.1   Trustee Compensation .................................................. 32
         2.4.2   Liquidating Trustee Compensation ................................... 34
2.5      Deadline for Filing Administrative Expense Claims .......................... 34
2.6      Allowed Priority Non-Tax Claims ............................................... 35
2.7      Allowed Priority Tax Claims ...................................................... 35

ARTICLE 3      CLASSIFICATION AND TREATMENT OF CLASSIFIED
               CLAIMS AND INTERESTS ............................................ **36**

3.1      General ................................................................................. 36
3.2      Class 1: Allowed Secured Claims ................................................ 37
3.3      Class 2: Single Source Recovery Allowed Unsecured Claims ............... 37
3.4      Class 3: Multiple Source Recovery Allowed Unsecured Claims ............ 39
3.5      Class 4: Razorback Unsecured Rising Tide Claim ............................ 41

# TABLE OF CONTENTS
### (continued)

**Page**

3.6      Class 5:  Banyon Unsecured Claim ................................................. 42
3.7      Class 6:  Funds' Subordinated Claim.............................................. 48
3.8      Class 7:  Miscellaneous Subordinated Claims .................................... 49
3.9      Class 8:  TD Bank Junior Subordinated Claim.................................... 51
3.10    Class 9:  Allowed Interests in the Debtor ........................................ 51

**ARTICLE 4         IDENTIFICATION OF CLASSES OF CLAIMS AND
                              INTERESTS  IMPAIRED AND NOT IMPAIRED BY THE
                              PLAN.............................................................................. 52**

4.1      Unimpaired Classes of Claims and Interests ..................................... 52
4.2      Impaired Classes of Claims and Interests ........................................ 52

**ARTICLE 5         TREATMENT OF EXECUTORY CONTRACTS.................................. 52**

5.1      Rejection ............................................................................. 52
5.2      Approval of Rejection; Rejection Damages Claims Bar Date..................... 52
5.3      Indemnification Obligations ....................................................... 53

**ARTICLE 6         MEANS FOR EXECUTION AND IMPLEMENTATION OF
                              THIS PLAN ..................................................................... 53**

6.1      Settlement Agreement............................................................... 53
6.2      The Liquidating Trust .............................................................. 58

          6.2.1    Establishment of the Liquidating Trust.................................. 58
          6.2.2    Purpose of Liquidating Trust ............................................ 58
          6.2.3    Contribution of Assets to the Liquidating Trust ...................... 59
          6.2.4    Certain Federal Tax Matters ............................................ 60
          6.2.5    Liquidating Trust Bond ................................................. 61
          6.2.6    Liquidating Trust Management........................................... 61
          6.2.7    Liquidating Trust Oversight Committee.................................. 62
          6.2.8    Litigation Approval Rights of Liquidating Trust Oversight
                      Committee................................................................ 63
          6.2.9    Costs and Expenses of the Liquidating Trust .......................... 63
          6.2.10  [Intentionally Omitted] ................................................. 64
          6.2.11  Retention and Compensation of Professionals by the Liquidating
                      Trustee.................................................................. 64
          6.2.12  Resignation and Removal of the Liquidating Trustee ................... 65
          6.2.13  Resignation and Removal of the Liquidating Trust Oversight
                      Committee Members...................................................... 66
          6.2.14  Conflicts of Interest.................................................... 67
          6.2.15  Initial Appointment of the Liquidating Trustee ....................... 67

6.3      Continuation of Automatic Stay ................................................... 68
6.4      Continuation of Bankruptcy Rule 2004 Rights...................................... 68
6.5      Wind-Down of Debtor ............................................................... 68
6.6      Disposition of Abandoned Assets................................................... 70

# TABLE OF CONTENTS

(continued)

Page

6.7   Closing of the Chapter 11 Case ................................................................ 70
6.8   Dissolution of Committee .......................................................................... 71
6.9   Client Files ................................................................................................ 71
6.10  Immediate Binding Effect ......................................................................... 71
6.11  Additional Documents ............................................................................... 71
6.12  [Intentionally Omitted] ............................................................................. 72
6.13  Collateral Source Recovery Calculations ................................................. 73
6.14  Collateral Source Recovery Remittance .................................................... 73
6.15  Bar Order Hearing ..................................................................................... 74
6.16  Certain Settlement Issues ......................................................................... 74

**ARTICLE 7      POST-CONFIRMATION LITIGATION ................................. 75**

7.1   Transfer and Enforcement of Causes of Action ........................................ 75
7.2   Preservation of Rights ............................................................................... 76
7.3   Objections to Claims ................................................................................. 76
7.4   Disallowance of Late Claims .................................................................... 77
7.5   Recovery of Distributions on Disallowed Claims ..................................... 77
7.6   Equitable Defenses Not Assertable Against Liquidating Trust .................. 78

**ARTICLE 8      DISTRIBUTIONS ...................................................................... 78**

8.1   Delivery of Distributions in General ......................................................... 78
8.2   Cash Payments ........................................................................................... 79
8.3   Interest on Claims ...................................................................................... 79
8.4   No de Minimis Distributions ..................................................................... 79
8.5   Face Amount .............................................................................................. 79
8.6   Unclaimed and Undeliverable Distributions ............................................. 80
8.7   Interim Distributions ................................................................................. 80
8.8   Final Distribution ...................................................................................... 81
8.9   Disputed Claims Reserves ......................................................................... 81
8.10  Compliance with Tax Requirements .......................................................... 81
8.11  Certain Rights of Setoff ............................................................................ 82

**ARTICLE 9      CONDITIONS PRECEDENT ..................................................... 82**

9.1   Conditions to Confirmation ....................................................................... 82
9.2   Conditions to the Effective Date ............................................................... 82
9.3   Termination of Plan for Failure To Become Effective .............................. 84
9.4   Waiver of Conditions ................................................................................. 85
9.5   Notice of Effective Date ............................................................................ 85

**ARTICLE 10     EFFECT OF CONFIRMATION AND RELEASES ................ 85**

10.1  Jurisdiction of Court .................................................................................. 85
10.2  Binding Effect ............................................................................................ 85
10.3  Exculpation ................................................................................................ 86
10.4  Injunction ................................................................................................... 87

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 10.5 | Limitation of Liability | 88 |
| 10.6 | Release of TD Bank Releasees | 89 |
| 10.7 | Unknown Claims | 90 |
| 10.8 | TD Bank Releasee Injunction and Bar Order | 92 |
| 10.9 | TD Bank Release | 94 |
| **ARTICLE 11** | **RETENTION OF JURISDICTION** | **97** |
| 11.1 | Ongoing Bankruptcy Court Jurisdiction | 97 |
| **ARTICLE 12** | **ACCEPTANCE OR REJECTION OF THIS PLAN** | **101** |
| 12.1 | Persons Entitled to Vote | 101 |
| 12.2 | Acceptance by Impaired Classes | 101 |
| 12.3 | Cramdown | 101 |
| **ARTICLE 13** | **MISCELLANEOUS PROVISIONS** | **101** |
| 13.1 | Modification of this Plan | 101 |
| 13.2 | Revocation of this Plan | 102 |
| 13.3 | Governing Law | 102 |
| 13.4 | No Admissions | 102 |
| 13.5 | Pre-Confirmation Modification | 102 |
| 13.6 | Successors and Assigns | 103 |
| 13.7 | Exemption from Certain Transfer Taxes | 103 |
| 13.8 | Exemption from Securities Laws | 103 |
| 13.9 | Preservation of Rights of Setoffs | 104 |
| 13.10 | No Injunctive Relief | 104 |
| 13.11 | Non Business Day | 104 |
| 13.12 | Entire Agreement | 104 |
| 13.13 | Notices | 104 |

**TABLE OF CONTENTS**
(continued)

**Page**

**APPENDICES**

Appendix 1.82    Liquidating Trust Agreement

Appendix 1.85    List of Certain Litigation Claims

Appendix 1.122   Settlement Agreement

Appendix 1.137   Form of Verified Banyon Creditor Collateral Source Recovery Disclosure

Appendix 1.138   Form of Verified Collateral Source Recovery Disclosure

Appendix 10.8    Litigation Pending Against TD Bank Releasees

Appendix 11.1.2  Stipulation and Order Regarding The Policies

## INTRODUCTION

Herbert Stettin, the Chapter 11 Trustee ("**Trustee**") for Rothstein Rosenfeldt Adler, P.A. (the "**Debtor**" or "**RRA**") and the Official Committee of Unsecured Creditors (the "**Committee**" and together with the Trustee, collectively, the "**Plan Proponents**") are the joint proponents of this *Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (as Modified)* (the "**Plan**") providing for the treatment, resolution and satisfaction of all Claims against and Interests in the Debtor. All capitalized terms used herein shall have the meanings ascribed to them in Article 1 of this Plan. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, business, resolution of material disputes, financial projections for the liquidation and Distribution of the Debtor's remaining Assets, and a summary and analysis of this Plan and certain related matters.

This is a liquidating plan pursuant to which all of the Debtor's Assets, except for the Levin Claims, are to be transferred to the Liquidating Trust which will monetize any remaining non-Cash Assets, resolve Claims, and prosecute Litigation Claims held by the Debtor. The Liquidating Trust shall be administered by the Liquidating Trustee. All Available Cash will be distributed to the holders of Allowed Claims as set forth herein, whose Allowed Claims against the Debtor will be exchanged for a beneficial interest in the Liquidating Trust.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of claims or interests until such time as the Disclosure Statement has been approved by the Bankruptcy Court. The Plan Proponents urge all holders of Claims entitled to vote on the Plan to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. The Plan Proponents are not soliciting the votes of any equity interest holders, who shall receive nothing under the Plan and whose Interests shall be extinguished on

the Effective Date.  No solicitation materials other than the Disclosure Statement and any

schedules, appendices and exhibits attached thereto or referenced therein, or otherwise enclosed

with the Disclosure Statement served by the Plan Proponents on interested parties, or as

otherwise ordered by the Bankruptcy Court, have been authorized by the Plan Proponents or the

Bankruptcy Court for use in soliciting acceptances of this Plan.  Subject to certain restrictions

and requirements set forth in Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and

Sections 13.1 and 13.2 of this Plan, the Plan Proponents expressly reserve the right to alter,

amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ARTICLE 1**

**<u>DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION</u>**

**A.**     **Scope of Definitions.**  For the purposes of this Plan, except as expressly provided or

unless the context otherwise requires, all capitalized terms not otherwise defined shall have the

meanings ascribed to them in Article 1 of this Plan.  Any term used in this Plan that is not

defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the

meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively.

Whenever the context requires, capitalized terms shall include the plural as well as the singular

number, the masculine gender shall include the feminine, and the feminine gender shall include

the masculine.

**B.**     **Definitions.**  In addition to such other terms as are defined in other Sections of this Plan,

the following terms (which appear in the Plan as capitalized terms) shall have the meanings

ascribed to them in this Article 1 of this Plan.

        1.1     **9019 Motion.**  The motion filed by the Banyon Trustee in the Banyon Bankruptcy

Cases seeking Bankruptcy Court approval of the compromise and settlement set forth in the

4999213-2

2

Settlement Agreement, providing for the notice of such compromise and settlement to parties in interest, and authorizing and directing the consummation by the Banyon Trustee and the Banyon Bankruptcy Estates of the transactions contemplated therein by the Banyon Bankruptcy Estates, which motion must be in form and substance agreeable to TD Bank, the Committee, the Trustee and the Banyon Trustee.

   1.2 **9019 Order.** The order or orders of the Bankruptcy Court approving the 9019 Motion and implementing the terms of the Settlement Agreement, including, but not limited to, the provisions of Article 3 of the Settlement Agreement, which order or orders shall be in form and substance agreeable to TD Bank, the Committee, the Trustee and the Banyon Trustee.

   1.3 **Abandoned Assets**. Shall have the meaning set forth in Section 6.5.1 of this Plan.

   1.4 **Additional Recoveries**. The Cash portion of settlement agreements negotiated by the Trustee and approved by the Bankruptcy Court prior to the Effective Date where such Cash is anticipated to be collected by the Liquidating Trustee after the Effective Date, but excluding Cash disbursed, turned over, transferred or delivered by the Trustee to the Liquidating Trustee on the Effective Date.

   1.5 **Administrative Expense Claim.** A Claim for any cost or expense of administration (including Professional Claims) of the Chapter 11 Case asserted or arising under Sections 503, 507(a)(2), or 507(b) of the Bankruptcy Code, including any (a) actual and necessary cost or expense of preserving the Estate arising on or after the Petition Date, (b) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code, (c) compensation or reimbursement for actual, necessary expenses in making

4999213-2

a substantial contribution in the Chapter 11 Case, and (d) fees or charges assessed against the Estate under Section 1930 of Title 28 of the United States Code.

1.6    **Administrative Expense Claim Bar Date(s).**  The date(s) established by one or more orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court approved pleading for allowance of any Administrative Expense Claim, including as established in the Disclosure Statement Approval Order; provided, however, that (a) unless otherwise ordered by the Bankruptcy Court, the Administrative Expense Claim Bar Date for the filing by any Professional of an application for any Administrative Expense Claim not yet Filed as of the date of this Plan shall be no later than the deadline set forth in the Disclosure Statement Approval Order, and (b) to the extent the Bankruptcy Court has entered an order establishing a different and specific deadline for a Creditor or other party in interest to file an Administrative Expense Claim, the date set forth in such order shall be deemed to be the Administrative Expense Claim Bar Date as to such Creditor or other party in interest.

1.7    **Affiliate.**  Shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.8    **Allowed.**  A Claim against or Interest in the Debtor or any portion thereof (a) that (i) has been allowed by a Final Order, (ii) for which a completed and duly executed Verified Collateral Source Recovery Disclosure, if applicable, has been timely submitted by the Voting Deadline, and (iii) is not subject to a motion under Section 502(j) of the Bankruptcy Code or Bankruptcy Rules 9023 or 9024 on or before the last date on which objections to Claims are required to be Filed pursuant to Section 7.3 of this Plan; provided, however, that the Liquidating Trustee shall not be precluded from filing motions pursuant to Section 502(j) of the Bankruptcy

4999213-2

4

Code or Bankruptcy Rules 9023 or 9024 after the deadline for filing objections to Claims set forth in Section 7.3 of this Plan; or (b) as to which a completed and duly executed Verified Collateral Source Recovery Disclosure has been timely submitted by the Voting Deadline and, on or by the Effective Date, (i) no proof of Claim or Interest has been timely Filed with the Bankruptcy Court and (ii) the liquidated and non-contingent amount of such Claim is Scheduled, other than a Claim that is Scheduled at zero, in an unknown or unliquidated amount, or as disputed, or (c) for which a proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court by the applicable Bar Date, a completed and duly executed Verified Collateral Source Recovery Disclosure has been timely submitted by the Voting Deadline, and as to which (i) no objection to its allowance has been Filed within the applicable periods of limitation fixed by Section 7.3 of the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been overruled by a Final Order; or (iii) the holder of such Claim has received an interim Distribution on account of such Claim, but only to the extent of the interim Distribution received on such Claim,  or (d) that is expressly allowed in the Plan; or (e) that is agreed in an allowed amount by written stipulation between the holder of such Claim and the Liquidating Trustee, and subject to the consent of the Liquidating Trust Oversight Committee; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims for any other purpose under the Plan or otherwise, except if and to the extent otherwise determined to be Allowed as provided herein; provided further, however, that the possibility that a future motion under Section 502(j) of the Bankruptcy Code or Bankruptcy Rules 9023 or 9024 may be Filed with respect to such Claim subsequent to the date by which objections to Claims must be Filed pursuant to Section 7.3 of this Plan, shall not cause such Claim not to be an Allowed Claim.

4999213-2

Unless otherwise specified under the Plan, under the Bankruptcy Code or by Final Order of the Bankruptcy Court in the Chapter 11 Case, Allowed Claims shall not, for any purpose under the Plan, include any interest, costs, fees or charges on such Claim from and after the Petition Date. Subsequent to the Effective Date, only the Liquidating Trustee shall be permitted to seek to reconsider a Claim previously Allowed by Final Order in the Chapter 11 Case pursuant to applicable law or procedure, including, but not limited to Section 502(j) of the Bankruptcy Code, Federal Rule of Civil Procedure 60(b) and Bankruptcy Rules 9023 or 9024.

1.9    **Assets.**  All legal or equitable interests of the Debtor or the Estate in any and all real or personal property of any nature, tangible or intangible, including, without limitation, the Litigation Claims, rights under the Settlement Agreement, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, causes of actions, and any other general intangibles, and the proceeds, product, offspring, rents or profits thereof, whensoever and howsoever arising.

1.10    **Available Cash.**  All Cash available for Distribution to Beneficiaries under the Liquidating Trust Agreement, less the amount of Cash deposited in the Reserves.

1.11    **Ballot.**  The form or forms approved by the Bankruptcy Court and distributed to holders of Impaired Claims on which the acceptance or rejection of the Plan is to be indicated.

1.12    **Bankruptcy Code.**  Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Case.

1.13    **Bankruptcy Court.**  The United States Bankruptcy Court for the Southern District of Florida and, to the extent it may exercise jurisdiction in the Chapter 11 Case, the

District Court, or if either such court ceases to exercise jurisdiction over the Chapter 11 Case, such court or adjunct unit thereof that exercises jurisdiction over the Chapter 11 Case.

1.14 **Bankruptcy Rules.** The Federal Rules of Bankruptcy Procedure, the Local Rules of the Bankruptcy Court and the guidelines and requirements of the United States Trustee, as in effect on the Petition Date and as thereafter amended, as applicable from time to time in the Chapter 11 Case.

1.15 **Banyon Asserted Claims.** Shall have the meaning set forth in the Settlement Agreement.

1.16 **Banyon Bankruptcy Cases.** The bankruptcy cases pending in the Bankruptcy Court for Banyon 1030-32, LLC, Case No. 10-33691-BKC-RBR and Banyon Income Fund, LP, Case No. 11-40929-BKC-RBR.

1.17 **Banyon Bankruptcy Estates.** The estates created by operation of Section 541 of the Bankruptcy Code following the commencement of the Banyon Bankruptcy Cases.

1.18 **[Intentionally Omitted].**

1.19 **Banyon Creditor Collateral Source Recoveries.** In regard to a claim asserted against either of the Banyon Bankruptcy Estates, the amount calculated, determined and applied in accordance with Section 3.6(b) of this Plan.

1.20 **Banyon Distribution**. Shall have the meaning set forth in Section 3.6(b) of this Plan.

1.21 **Banyon Releasors.** Shall mean Banyon 1030-32, LLC, Banyon Income Fund, L.P., the Banyon Bankruptcy Estates, and the Banyon Trustee, and each of their subsidiaries and affiliates and the successors and assigns of any of them and any other Person that claims or might claim through, on behalf of or for the benefit of any of the foregoing.

1.22    **Banyon Trustee.**  Robert C. Furr solely in his capacity as Chapter 7 trustee for each of the Banyon Bankruptcy Estates.

1.23    **Banyon Unsecured Claim.**  An Allowed General Unsecured Claim in favor of the Banyon Bankruptcy Estates in the amount of $39.7 million ($39,700,000) classified and treated in accordance with Section 3.6 of this Plan.

1.24    **Banyon Unsecured Creditor Fund.**  $39.7 million ($39,700,000) in Cash from the TD Bank Contribution held by the Liquidating Trustee to be disbursed in accordance with Section 3.6(b) of this Plan.

1.25    **Bar Date.**  The Non-Governmental Unit Bar Date, the Governmental Unit Bar Date, the Rejection Claim Bar Date, Section 502(h) Bar Date, and the Administrative Expense Claim Bar Date.

1.26    **Bar Order Hearing.**  The hearing to consider the injunction provided in Section 10.8 of this Plan.

1.27    **Beneficiary or Beneficiaries.**  The holder(s) of an Allowed Claim as may be determined from time to time in accordance with the Plan and Liquidating Trust Agreement.

1.28    **Business Day.**  Any day other than a Saturday, Sunday, or "legal holiday" observed in Florida (as such term is defined in Bankruptcy Rule 9006(a)).

1.29    **Cases.**  The Chapter 11 Case and the Banyon Bankruptcy Cases.

1.30    **Cash.**  Legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

1.31    **Chapter 11 Case.**  This chapter 11 bankruptcy case of RRA, Case No. 09-34791-RBR-BKC.

1.32    **Claim**.  A right of a Creditor against the Debtor, whether or not asserted or allowed, of the type described in Bankruptcy Code Section 101(5), as construed by Bankruptcy Code Section 102(2).

1.33    **Claim Objection Procedures Order.**  The Final Order of the Bankruptcy Court Granting Trustee's Motion for Entry of an Order (I) Authorizing the Trustee to Add Claim Objection Categories to Anticipated Omnibus Objections; (II) Waiving the Requirements of Local Rule 3007-1(C) (Limiting Objections to Claims to Five Claims per Pleading); and (III) Establishing Uniform Procedures for the Claims Reconciliation Process dated October 11, 2011 [ECF No. 2119] entered in the Chapter 11 Case, that approves, *inter alia*, certain procedures for omnibus objections to Claims.

1.34    **Class.**  A group of Claims or Interests as classified in a particular class under the Plan pursuant to Bankruptcy Code Section 1122.

1.35    **Client Files Order.**  Any Final Order of the Bankruptcy Court in the Chapter 11 Case regarding the disposition of the files of former clients of the Debtor, including but not limited to the *Amended Agreed Order Granting Trustee's Motion for Approval of Protocol Regarding Notification to Former Clients Regarding Documents Held By Iron Mountain and Approving Abandonment* dated July 31, 2012 [ECF No. 3227] and any future Final Order entered in the Chapter 11 Case by the Bankruptcy Court regarding abandonment of client files.

1.36    **Collateral Source Recoveries.**  In regard to a Claim, the amount calculated in accordance with Section 6.13 of this Plan and determined and applied in accordance with Sections 3.4(b), 3.7(b) and 3.8(b) of this Plan.

1.37    **Committee.**  As defined in the first paragraph of this Plan, the Official Committee of Unsecured Creditors appointed in this Chapter 11 Case as of the date on which the

Disclosure Statement Approval Order is entered.  As of the date hereof, the Official Committee

of Unsecured Creditors appointed in the Chapter 11 Case consists of the following members: (i)

American Express Travel Related Services Company, Inc., (ii) Ira Sochet, Trustee-Revocable

Intervivos Trust of Ira Sochet and (iii) John Mullin, Esq. for Edward J. Morse (or his

testamentary estate as his successor).

      1.38    **Confirmation.**  Entry of the Confirmation Order by the Bankruptcy Court.

      1.39    **Confirmation Date.**  The date on which the Bankruptcy Court enters the

Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

      1.40    **Confirmation Hearing.**  The duly noticed hearing conducted by the Bankruptcy

Court to consider Confirmation of this Plan pursuant to Bankruptcy Code Section 1128,

including any continuances thereof.

      1.41    **Confirmation Order.**  The order or orders of the Bankruptcy Court confirming

pursuant to Section 1129 of the Bankruptcy Code and implementing the terms of this Plan,

including, but not limited to, the provisions of Article 10 of this Plan, which order or orders shall

be in form and substance acceptable to the Plan Proponents and TD Bank.

      1.42    **Coquina Settlement Agreement.**  That certain settlement agreement dated as of

October 17, 2011 between the Trustee and Coquina Investments, and approved by the

Bankruptcy Court in the Chapter 11 Case by Final Order dated October 21, 2011 [ECF No.

2138].

      1.43    **Court of Appeals.**  Shall mean the United States Court of Appeals for the

Eleventh Circuit.

      1.44    **Creditor.**  Any Entity who holds a Claim against the Debtor.

      1.45    **Debtor.**  Rothstein Rosenfeldt Adler, P.A.

1.46    **Disallowed.**  A Claim, or such portion of a Claim, (a) that has been disallowed by a Final Order in the Chapter 11 Case, including, without limitation, any Claims that are disallowed by failing to comply with the applicable Bar Date for filing such Claim, (b) which were included on the Schedules as $0, unliquidated, disputed, or contingent and for which no contrary proof of Claim was timely Filed in accordance with the applicable Bar Date for filing such Claim, (c) that is not listed on the Schedules and as to which no proof of Claim has been Filed in accordance with the applicable Bar Date for filing such Claim, or (d) which has been disallowed pursuant to Section 3.4(b), 3.7(b), or 3.8(b) of this Plan.

1.47    **Disclosure Statement.**  That certain written amended disclosure statement that relates to this Plan as Filed in the Chapter 11 Case by the Plan Proponents, including the schedules and exhibits attached thereto, as any of them may be amended, modified or supplemented from time to time.

1.48    **Disclosure Statement Approval Order.**  That certain order of the Bankruptcy Court, approving, among other things, the Disclosure Statement as containing adequate information pursuant to Section 1125 of the Bankruptcy Code, the notice and balloting procedures for this Plan, and setting various deadlines in connection with Confirmation of this Plan, including the Administrative Expense Claim Bar Date applicable to Professional Claims, which order shall be in form and substance acceptable to the Plan Proponents and TD Bank.

1.49    **Disputed Claim.**  A Claim where any portion thereof is neither an Allowed Claim nor a Disallowed Claim.

1.50    **Disputed Claims Reserve.**  Shall have the meaning set forth in Section 1.32 of the Liquidating Trust Agreement.

4999213-2

11

1.51    **Distribution**.  Any interim or subsequent payment or transfer made under the Plan or from the Liquidating Trust to a Beneficiary.

1.52    **Distribution Record Date.**  The record date for the purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be designated in the Confirmation Order.

1.53    **District Court.**  Shall mean the United States District Court for the Southern District of Florida.

1.54    **Effective Date.**  The first Business Day on which all conditions set forth in Section 9.2 of this Plan have been satisfied or, if waiveable, waived pursuant to Section 9.4 of this Plan.

1.55    **Entity.**  A Person, an estate, a trust, or the United States Trustee as defined in Section 101(15) of the Bankruptcy Code.

1.56    **[Intentionally Omitted].**

1.57    **Estate.**  The estate created pursuant to Section 541 of the Bankruptcy Code by the commencement of the Chapter 11 Case.

1.58    **File or Filed.**  To file, or to have been filed, with the Clerk of the Bankruptcy Court in the Chapter 11 Case.

1.59    **Final Distribution.**  Shall be the Distributions described in Section 8.8 of this Plan.

1.60    **Final Distribution Date.**  Shall be the date upon which the Final Distribution is made.  The Final Distribution Date shall be a date determined by the Liquidating Trustee, (a) which is after the liquidation into Cash of all Trust Assets (other than Abandoned Assets) and

collection of other sums due or otherwise remitted or returned to the Estate, and (b) on or after which the Liquidating Trust makes a Final Distribution from the Reserves.

      1.61    **Final Order.**  An order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal, petition for certiorari or move for reargument, rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed, or (b) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having final appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken; provided, however, the possibility that a party may file a motion for reconsideration of an order or judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Section 502(j) of the Bankruptcy Code, or Bankruptcy Rules 9023 or 9024 shall not preclude an order from being a Final Order.

      1.62    **[Intentionally omitted].**

      1.63    **Forfeiture Action**.  Shall mean the case styled as *USA v. Scott W. Rothstein*, Case No. 0:09-cr-60331-JIC, pending in the District Court or any subsequent court of appeals with jurisdiction over such case.

      1.64    **Full Amount**.  The total amount of a Claim without any interest, costs, fees or charges accruing on such Claim from and after the applicable Petition Date.

1.65    **Funds.**  Collectively, Centurion Structured Growth LLC, Platinum Partners Credit Opportunities Fund LP, Platinum Partners Value Arbitrage Fund LP and Level 3 Capital Fund LP.

1.66    **Funds' Settlement Agreement.**  That certain settlement agreement dated as of June 14, 2012 among the Trustee, the Funds, Regent Capital Partners, LLC, Mark Nordlicht, Dahlia Kalter, Murray Huberfeld, Laura Huberfeld, David Bodner, Naomi Bodner, and the Bodner Family Foundation, and approved by the Bankruptcy Court in the Chapter 11 Case by Final Order dated August 28, 2012 [ECF No. 3352].

1.67    **Funds' Subordinated Claim.**  Shall mean the Funds' unsecured claim in the maximum amount of $26,000,000 which shall be Allowed and subordinated to the extent, and as provided, in the Funds' Settlement Agreement and is treated pursuant to Section 3.7 of this Plan.

1.68    **General Unsecured Claims.**  All unsecured Claims Scheduled by, or Filed against, the Debtor, other than any unsecured Claim that is subordinated under this Plan or by Final Order of the Bankruptcy Court in the Chapter 11 Case.

1.69    **Gibraltar Settlement Agreement**.  That certain settlement agreement between Gibraltar Private Bank & Trust Company, Boston Private Financial Holdings, Inc. and Boston Private Bank and Trust Company and all of such entities' current or former directors, officers, employees, and partners (not including John Harris, Charles Sanders, Steven D. Hayworth, and Lisa Ellis), and any successors and their partners, directors, officers, and employees and the Trustee dated October 9, 2012 and approved in the Chapter 11 Case by Final Order of the Bankruptcy Court dated as of October 10, 2012 [ECF No. 3500].

1.70    **Gibraltar Subordinated Claim**.  The Allowed subordinated General Unsecured Claim of Gibraltar Private Bank & Trust Company in the amount of $7,500,000, which was allowed pursuant to the Gibraltar Settlement and is treated pursuant to Section 3.8 of this Plan.

1.71    **Governmental Unit**.  Shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

1.72    **Government Unit Bar Date.**  August 10, 2010, the date established by Section 502(a)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a proof of Claim in the Chapter 11 Case.

1.73    **Impaired.**  When used with reference to a Claim or an Interest, shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

1.74    **Indemnification Obligations**.  The Debtor's indemnification obligations currently in place (whether in its by-laws, certificates of incorporation, board resolutions, indemnification agreements, or employment contracts) for the current and former directors, officers, and employees of the Debtor.

1.75    **Interest.**  Shall mean the interest of any shareholder or equity holder of the Debtor.

1.76    **IRC.**  Shall mean the Internal Revenue Code of 1986, as amended from time to time.

1.77    **Levin Claims**.  Any and all rights, claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims (including, but not limited to avoidance or recovery actions available through the exercise of the powers granted by Sections 541 – 553 of the Bankruptcy

4999213-2

Code or avoidance or recovery claims recognized under any applicable state law) of the Estate, against Gayla Susan Levin, George Levin or, the bankruptcy estate of George Levin, (including, but not limited to, proofs of claim number 1-1 and 1-2 asserted against George Levin by the Estate in George Levin's chapter 11 bankruptcy case, case number 10-33696-RBR, currently pending in the Bankruptcy Court) and/or any of their Affiliates (with Gayla Susan Levin and/or George Levin considered the "debtor" for the purposes of the definition of Affiliate) or subsidiaries; provided, that the Levin Claims do not include any of the foregoing claims or rights against any Entity that is not Gayla Susan Levin, George Levin, the bankruptcy estate of George Levin and/or any of their Affiliates (with Gayla Susan Levin and/or George Levin considered the "debtor" for the purposes of the definition of Affiliate) or subsidiaries (including, but not limited to, avoidance or recovery actions through the exercise of powers granted by Sections 541-553 of the Bankruptcy Code or avoidance or recovery claims recognized under any applicable state law where such Entity was either an immediate or subsequent transferee); provided further, that the Levin Claims do not include any of the following claims, rights or actions: (a) of the Estate against the Banyon Bankruptcy Estates, and (b) asserted by the Trustee on or before May 29, 2013 through the commencement of an action against any Entity that is an Affiliate or subsidiary of either of Gayla Sue Levin or George Levin (excluding Gayla Susan Levin, George Levin, and the bankruptcy estate of George Levin).

      1.78    **Levy Settlement Agreement.**  That certain settlement agreement dated as of October 31, 2012 by and among the Trustee on the one hand and Shimon Levy, Ovadia Levy, Rachel Levy, Daniel Minkowitz, Mordechai Bar-Adon, Ben-Zion Varon, The 2009 Ovadia Levy Revocable Trust, Renato Watches, Inc. N/K/A DMOL, Inc., Sea Club Ocean Resort Hotel, Inc.,

JUBOT, LLC on the other, and approved in the Chapter 11 Case by Final Order of the Bankruptcy Court dated as of January 23, 2013 [ECF No. 3746].

    1.79    **Levy Subordinated Unsecured Claims.**  The subordinated General Unsecured Claim of: (a) Shimon Levy in the amount of $3,089,861.46, (b) Rachel Levy in the amount of $250,000, (c) Daniel Minkowitz in the amount of $1,895,038.44, (d) Mordechai Bar-Adon in the amount of $195,791.64, and (e) Ben Zion Varon in the amount of $194,791.64, each of which was Allowed pursuant to the Levy Settlement Agreement and are treated pursuant to Section 3.8 of this Plan.

    1.80    **Lien.**  A charge against, interest in or other encumbrance upon property to secure payment of a debt or performance of an obligation.

    1.81    **Liquidating Trust.**  The trust created on the Effective Date upon the execution and delivery of the Liquidating Trust Agreement by the parties thereto.

    1.82    **Liquidating Trust Agreement.**  The trust agreement to be executed by the Trustee and the Liquidating Trustee on the Effective Date, in substantially the same form that is attached as **Appendix 1.82** and which is otherwise in form and substance agreeable to TD Bank and the Plan Proponents.

    1.83    **Liquidating Trustee**.  Michael I. Goldberg.

    1.84    **Liquidating Trust Oversight Committee.**  The committee of three Persons selected in accordance with Section 6.2.7 of this Plan.  The members of the Liquidating Trust Oversight Committee shall be identified no later than ten (10) Business Days subsequent to entry of the Disclosure Statement Approval Order.  The appointment of the Liquidating Trust Oversight Committee shall be ratified by the Confirmation Order and effective as of the Effective Date.

4999213-2

1.85    **Litigation Claims.**  Includes, except as provided otherwise herein, the

Confirmation Order or any document, instrument, release or other agreement entered into in

connection with the Plan, all claims, actions, choses in action, causes of action, suits, debts, dues,

sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies,

variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims

(including, but not limited to avoidance or recovery actions available through the exercise of the

powers granted by Sections 541 - 553 of the Bankruptcy Code or avoidance or recovery claims

recognized under any applicable state law) of the Estate, whether known or unknown, fixed,

contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether

assertable directly or derivatively in law, equity, or otherwise, that are or may be pending on the

Effective Date or instituted after the Effective Date against any Entity based on law or equity.

Litigation Claims include, without limitation, those specifically enumerated on **Appendix 1.85**,

and those which are:  (a) property of the bankruptcy estate under and pursuant to Section 541 of

the Bankruptcy Code; (b) for subrogation and contribution; (c) for turnover; (d) to recover

avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of

the Bankruptcy Code or any applicable state law; (e) to determine the extent, validity and priority

of Liens and encumbrances; (f) for surcharge under Section 506(c) of the Bankruptcy Code;

(g) for subordination under Section 510 of the Bankruptcy Code; (h) related to federal or state

securities laws; (i) direct or derivative claims or causes of action of any type or kind; (j) against

any and all current and/or former officers, directors and equity holders of the Debtor; (k) for

breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (l) under and pursuant to

any policies for insurance, including for bad faith, maintained by the Debtor, including, without

limitation, any liability insurance policy; (m) for theft of corporate opportunity; (n) for collection

on accounts, accounts receivables, loans, notes receivables or other rights to payment; (o) for the

right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax,

or any addition to a tax, under Section 505 of the Bankruptcy Code; (p) which arise under or as a

result of any Section of the Bankruptcy Code; (q) for common law torts or aiding and abetting

common law torts; (r) contract or quasi contract; (s) derivative based; (t) statutory claims; (u)

arise out of or are related in any way to actions or claims pending as of the Effective Date,

including, but not limited to, any constructive trust or equitable lien claims the Debtor has or

may assert in regard to RRA; (v) for negligence including professional negligence; (w) for unjust

enrichment; (x) to recover an avoidable transfer from any mediate or subsequent transferee;  (y)

any claims that may be asserted against the Banyon Bankruptcy Estates for breach of  the

Settlement Agreement or the 9019 Order, and claims that may be asserted in the Banyon

Bankruptcy Cases for any violation of the terms of this Plan or the Confirmation Order; or (z) to

seek reconsideration, reduction or disallowance of any previously Allowed Claim pursuant to

Section 502(j) of the Bankruptcy Code or Bankruptcy Rules 9023 or 9024; provided that the TD

Bank Junior Subordinated Claim shall not be subject to objection, reconsideration, reduction,

recharacterization, further subordination, impairment, disallowance or reduction in Distribution

on account of a Collateral Source Recovery or otherwise; provided further that, the Levin Claims

shall not be Litigation Claims.

       1.86    **Miscellaneous Subordinated Claims.**  Any Allowed subordinated, unsecured

Claim not classified and treated in Classes 6 and 8 of this Plan, including, without limitation, the

Levy Subordinated Unsecured Claims, the Gibraltar Subordinated Unsecured Claim, and the

Razorback Subordinated Unsecured Claims.

1.87    **Multiple Source Recovery Allowed Unsecured Claim.**  An Allowed General Unsecured Claim, including any Claim that is subordinated pursuant to Section 510 of the Bankruptcy Code, this Plan or by Final Order of the Bankruptcy Court in the Chapter 11 Case, as to which the holder has as of the date of the Confirmation Hearing received or may in the future receive one or more Collateral Source Recoveries.

1.88    **Non-Governmental Unit Bar Date.**  May 12, 2010, the deadline for filing all proofs of Claim for non-governmental entities against the Debtor as established by the Bankruptcy Court.

1.89    **Notice of Effective Date**.  Shall have the meaning set forth in Section 9.5 of this Plan.

1.90    **October Mediation Expense.**  $67,182.10, which is the Estate's and Banyon Bankruptcy Estates' allocable share of the fees and expenses incurred in regard to the October 9-10, 2012, mediation among TD Bank, the Estate and the Banyon Bankruptcy Estates, which were previously funded by TD Bank.

1.91    **Order for Relief.**  The order granting relief against the Debtor under Chapter 11 of the Bankruptcy Code dated December 18, 2009.

1.92    **Parties**.  The Plan Proponents, TD Bank and the Banyon Trustee.

1.93    **Person.**  An individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization, or a governmental unit as defined in Section 101(41) of the Bankruptcy Code.

1.94    **Petition Date.**  November 10, 2009, the date the petitioning creditors commenced this case by filing an involuntary petition against the Debtor under Chapter 11 of the Bankruptcy Code.

4999213-2

1.95     **Plan.**  This liquidating plan, and all appendices, schedules, exhibits and supplements annexed hereto or referenced herein, as any of them may be amended, modified or supplemented from time to time in accordance with the provisions of this Plan or the Bankruptcy Code and Bankruptcy Rules.

1.96     **Plan Proponents.**  Plan Proponents shall have the meaning ascribed to such term in the introductory paragraph of this Plan.  Whenever rights are conferred upon the Plan Proponents under the Plan, such rights are conferred jointly and may not be exercised by one of the Plan Proponents without the consent of the other Plan Proponent.

1.97     **Post-Confirmation Professional**.  A professional retained by the Liquidating Trustee and/or the Liquidating Trust Oversight Committee subsequent to the Effective Date.

1.98     **Priority Claim**.  An Allowed Claim that is either a Priority Non-Tax Claim or a Priority Tax Claim.

1.99     **Priority Non-Tax Claim**.  Any Allowed unsecured Claim entitled to priority in payment as specified in Section 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

1.100     **Priority Tax Claim**.  Any Allowed Claim, whether secured or unsecured, that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

1.101     **Professional.**  A Person, other than a Post-Confirmation Professional, (a) employed in the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327 or 1102 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant to Sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.102   **Professional Claim.**  A Claim of a Professional (a) for compensation or reimbursement of actual and necessary costs and expenses relating to services incurred after the Petition Date and prior to and including the Effective Date or (b) which seeks compensation and reimbursement pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.103   **Pro Rata.**  Proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class, but in any event the amount of consideration distributed on account of an Allowed Claim shall not exceed the Full Amount of the Allowed Claim.

1.104   **Razorback Plaintiffs.**  Collectively, Razorback Funding, LLC; D3 Capital Club, LLC; BFMC Investment, LLC; Linda Von Allmen, as Trustee of the Von Allmen Dynasty Trust; D&L Partners, LP; David Von Allmen, as Trustee of the David Von Allmen Living Trust; Ann Von Allmen, as Trustee of the Ann Von Allmen Living Trust; Dean Kretschmar; Cooper Management, LLC; Anthony Degennaro, as Trustee of the Extra Inning Dynasty Trust; Adele Mussry; Jack Mussry; Nassim Mussry; Melina El-Ani; Danielle El-Ani; H&N Associates; Aretz Associates; Park National Capital Funding, LLC; Park National Mortgage Servicing; Scott Morgan; Viceroy Global Investments, Inc.; Concord Capital, Inc.; Edward Paley; Florence Paley; the Edward and Florence Paley Foundation; Steven Paley; Laura Paley; Jane Zaretsky, The Jane Zaretsky Dynasty Trust, and Lawrence E. Dekelbaum.

1.105   **Razorback Settlement Agreement.**  The Settlement Agreement dated as of August 4, 2012 between the Trustee and the Razorback Plaintiffs and approved in the Chapter 11 Case by Final Order of the Bankruptcy Court dated October 10, 2012 [ECF No. 3510].

1.106  **Razorback Substantial Contribution Claim.**  The substantial contribution Claim, to the extent Filed by the applicable Bar Date and to the extent such Claim is Allowed, in the maximum amount of $8 million, asserted by the Razorback Plaintiffs in the Chapter 11 Case.

1.107  **Razorback Subordinated Unsecured Claim.**  The Razorback Plaintiffs' unsecured claim in the amount of $30,093,125 which is subordinated as provided in the Razorback Settlement Agreement and is treated pursuant to Section 3.8 of this Plan.

1.108  **Razorback Unsecured Claim.**  The Razorback Plaintiffs' General Unsecured Claim in the amount of $250,000 which shall be treated pursuant to Section 3.4 of this Plan.

1.109  **Razorback Unsecured Rising Tide Claim.**  The Razorback Plaintiffs' Unsecured Claim in the amount of $9,895,000 allowed pursuant and subject to the terms of the Razorback Settlement Agreement, as classified and treated in Section 3.5 of this Plan.

1.110  **Rejection Claim Bar Date.**  Has the meaning set forth in Section 5.2 of this Plan.

1.111  **Released Claims.**  Shall have the meaning set forth in Section 10.6 of this Plan.

1.112  **Reserves.**  Shall have the meaning set forth in Section 1.3.6 of the Liquidating Trust Agreement.

1.113  **Rothstein.**  Scott W. Rothstein.

1.114  **RRA.**  Rothstein Rosenfeldt Adler, P.A.

1.115  **RRA Banyon Senior Subordinated Claim**.  Shall have the meaning set forth in Section 3.6(b) of this Plan.

1.116  **RRA Complaint.**  The complaint Filed by the Estate to Avoid and Recover Preferential and Fraudulent Transfers and Damages against TD Bank on July 25, 2011 (Adversary Proceeding No. 11-02368-RBR).

1.117 **RRA Releasors.**  The Debtor, the Estate, the Trustee, the Committee and each of their subsidiaries and affiliates and the successors and assigns of any of them and any other Person that claims or might claim through, on behalf of or for the benefit of any of the foregoing.

1.118 **Scheduled.**  Set forth on the Schedules.

1.119 **Schedules.**  The Schedules of Assets and Liabilities Filed by the Trustee on behalf of the Debtor in accordance with Bankruptcy Code Section 521 and Bankruptcy Rule 1007, as the same may be amended from time to time prior to the Effective Date in accordance with Bankruptcy Rule 1009.

1.120 **Section 502(h) Bar Date.**  The date by which a proof of Claim arising pursuant to Section 502(h) of the Bankruptcy Code is required to be submitted as set forth in a Final Order of the Bankruptcy Court in the Chapter 11 Case.

1.121 **Secured Claim**.  A Claim (a) secured by a Lien on any Assets, which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Cases, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim as determined in accordance with Section 506(a) of the Bankruptcy Code; or (b) against the Debtor that is subject to a valid right of setoff under Section 553 of the Bankruptcy Code.

1.122 **Settlement Agreement.**  The amended and restated settlement agreement dated as of May 29,  2013 among the Banyon Trustee, the Banyon Bankruptcy Estates, the Estate, the Trustee, and TD Bank, in the form that is attached hereto as **Appendix 1.122** and which is otherwise in form and substance agreeable to TD Bank, the Committee, the Banyon Trustee, and the Trustee.

4999213-2

1.123   **Single Source Recovery Allowed Unsecured Claim.**  An Allowed General Unsecured Claim on account of which the holder does not have Collateral Source Recoveries, and its sole source of recovery, as certified by the holder of such Claim on its completed and duly executed Verified Collateral Source Recovery Disclosure, is the Distribution to be made from property of the Estate or the Liquidating Trust, as applicable, on account of such Allowed Claim pursuant to Section 3.3 of this Plan.

1.124   **Statutory Fees.**  The fees due the United States Trustee pursuant to 28 U.S.C. § 1930 as set forth in Section 2.2 of this Plan.

1.125   **TD Bank.**  TD Bank, N.A.

1.126   **TD Bank Contribution.**  Cash in the amount of SEVENTY TWO MILLION, THREE HUNDRED AND EIGHTY-TWO THOUSAND, EIGHT HUNDRED AND SEVENTEEN DOLLARS AND NINETY CENTS ($72,382,817.90), which is the difference between SEVENTY TWO MILLION, FOUR HUNDRED AND FIFTY THOUSAND DOLLARS ($72,450,000.00) and the October Mediation Expense ($67,182.10), to be delivered by TD Bank to the Trustee by the third Business Day after the Confirmation Date, subject to and in accordance with Section 6.1.1 of this Plan.

1.127   **TD Bank Indemnitee**.  Shall mean (i) any current or former director, officer, or employee of TD Bank to whom TD Bank has an indemnification obligation (whether in by-laws, certificates of incorporation, board resolutions, or by agreement), and (ii) Emess Capital, L.L.C.

1.128   **TD Bank Releasees.**  TD Bank, The Toronto-Dominion Bank, and each of their current and former affiliates, officers, directors, principals, shareholders, parents, subsidiaries, members, auditors, accountants, financial advisors, predecessors, successors, servants, employees, agents, consultants, counsel, attorneys, partners, insurers, underwriters,

administrators, executors, representatives, the TD Bank Indemnitees, and the assigns of each of the foregoing.

1.129   **TD Bank Junior Subordinated Claim.**  An Allowed General Unsecured Claim in favor of TD Bank, which is subordinated pursuant to Section 510 of the Bankruptcy Code, this Plan and the Settlement Agreement, in an amount equal to $132,450,000.00. The aggregate amount of the TD Bank Junior Subordinated Claim shall be classified and treated in accordance with Section 3.9 of this Plan.

1.130   **Third Party Claims.**  Shall have the meaning set forth in the Settlement Agreement.

1.131   **Trustee.**  Herbert Stettin solely in his capacity as Chapter 11 trustee of the Debtor.

1.132   **Trust Assets.**  The Assets, including, but not limited to, the Litigation Claims, the rights of the Estate under the Settlement Agreement, the rights of the Estate under any other settlement agreements approved by the Bankruptcy Court prior to the Effective Date and the TD Bank Contribution, all of which shall be assigned, transferred and conveyed to the Liquidating Trust pursuant to this Plan on the Effective Date, plus any and all interest or other net income earned on the foregoing; provided, however that the Levin Claims shall not be a Trust Asset; provided, further, however, any distribution made by the Trustee prior to the Effective Date shall not be a Trust Asset.

1.133   **Unclaimed Property.**  Any Distribution of Cash or any other property made to the holder of an Allowed Claim pursuant to the Plan that (i) is returned to the Trustee or the Liquidating Trustee, as applicable, as undeliverable and no appropriate forwarding address is received within the later of (a) 90 days after the Effective Date and (b) 90 days after such

4999213-2

attempted Distribution by the Trustee or the Liquidating Trustee, as applicable, is made to such holder, or (ii) in the case of a Distribution made in the form of a check, is not negotiated within 90 days and no request for re-issuance is made within such 90-day period, at which time, such Distribution shall be subject of a stop payment order.  The Trustee and the Liquidating Trustee, as applicable, are under no affirmative obligation to attempt to locate any holder of an Allowed Claim and may rely upon the procedures set forth in Section 8.1 in the Plan ("Delivery of Distributions in General")

1.134  **Unclassified Claims.**  The Claims treated in Article 2 of this Plan.

1.135  **Unimpaired.**  Has the meaning set forth in Section 1124 of the Bankruptcy Code.

1.136  **United States Trustee.**  The United States Trustee appointed under Section 581(a)(3) of title 28 of the United States Code to serve in the Southern District of Florida.

1.137  **Verified Banyon Creditor Collateral Source Recovery Disclosure**.  The form disclosure required under Section 3.6(b) hereof and substantially in the form attached hereto as **Appendix 1.137**, which discloses (a) the holder of a claim against one of the Banyon Bankruptcy Estates' full legal name and complete street address and mailing address, (b) the identity and contact information of any party that is not a Banyon Bankruptcy Estate against whom the holder of such claim has made a demand that has given rise or may give rise to a Banyon Creditor Collateral Source Recovery, (c) the amount of all Banyon Creditor Collateral Source Recoveries actually received directly, indirectly, or for the benefit of the holder of such claim prior to the date on which such Verified Banyon Creditor Collateral Source Recovery Disclosure is submitted to the Banyon Trustee, (d) the legal basis for all Banyon Creditor Collateral Source Recoveries received by the holder of such claim, and (e) the existence, without quantification, of any future or anticipated Banyon Creditor Collateral Source Recovery.

4999213-2

1.138   **Verified Collateral Source Recovery Disclosure**.  The form disclosure required under Sections 3.3(b), 3.4(b), 3.7(b), and 3.8(b) hereof and substantially in the form attached hereto as **Appendix 1.138**, which discloses (a) the holder of a Class 2, Class 3, Class 6 and Class 7, as applicable, Claim's full legal name and complete street address and mailing address, (b) the identity and contact information of any non-Debtor party against whom the holder of such Claim has made a demand that has given rise or may give rise to a Collateral Source Recovery, (c) the amount of all Collateral Source Recoveries actually received directly, indirectly or for the benefit of the holder of such Claim prior to the date on which such Verified Collateral Source Recovery Disclosure is submitted to the Voting Agent, (d) the legal basis for all Collateral Source Recoveries received by the holder of such Claim, and (e) the existence, without quantification, of any future or anticipated Collateral Source Recovery.

1.139   **Voting Agent**.  Trustee Services, Inc., the entity authorized by the Bankruptcy Court to serve as the claims, noticing, and balloting agent in the Chapter 11 Case.

1.140   **Voting Deadline**.  The deadline set forth in the Disclosure Statement Approval Order by which Ballots on this Plan must have actually been received by the Voting Agent.

**C.**      **Rules of Interpretation.**

1.      To the extent of any inconsistency: (i) the provisions of this Plan shall control over the contents of the Disclosure Statement, the Liquidating Trust Agreement and the Settlement Agreement; and (ii) the provisions of the Confirmation Order shall control over the contents of this Plan, the Disclosure Statement, the Liquidating Trust Agreement and the Settlement Agreement.

2.      For the purposes of this Plan:

(a)    any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms or conditions that is material to a party to such document shall not be modified without such party's consent unless such document expressly provides otherwise, or is modified pursuant to court order; provided further, however, that notwithstanding any of the foregoing, any change to any such form, terms or conditions prior to the Effective Date or that materially affects TD Bank shall remain subject to the consent of TD Bank;

(b)    any reference in the Plan to an existing document, exhibit, appendix or schedule Filed or to be Filed means such document, exhibit, appendix or schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c)    unless otherwise specified, all references in the Plan to "Sections," "Articles," and "Appendices" are references to Sections, Articles, and Appendices of or to the Plan;

(d)    the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of this Plan;

(e)    captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be part of or to affect interpretations of this Plan;

(f)    the rules of construction set forth in Bankruptcy Code Section 102 shall apply, except to the extent inconsistent with the provisions of this Article of this Plan; and

4999213-2

(g)      the word "including" means "including without limitation."

3.     Whenever a Distribution of property is required to be made on a particular date, the Distribution shall be made on such date or as soon as reasonably practicable thereafter.

**D.    Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1    **Administrative Expense Claims.**  Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable, the holder of an unpaid Allowed Administrative Expense Claim shall receive from the Liquidating Trustee on account of the Allowed Administrative Expense Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Expense  Claim, (a) Cash equal to the unpaid portion of such Allowed Expense Administrative Claim, or (b) such other treatment as to which the Plan Proponents or the Liquidating Trustee, as applicable, and the holder of such Allowed Administrative Expense Claim have agreed to writing; provided, however, that Professional Claims shall be paid in accordance with Section 2.3.

2.2    **Statutory Fees.**  The Liquidating Trustee, on behalf of the Debtor, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within five (5) Business Days after the Effective Date for pre-Confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the Cash disbursements for the relevant period.  The Liquidating Trustee shall further pay the United States Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of

4999213-2

30

the Liquidating Trust for post-Confirmation periods within the time period set forth in 28 U.S.C.

§ 1930(a)(6), until the closing of the Chapter 11 Case by the issuance of a final decree by the

Bankruptcy Court.  The Liquidating Trustee shall provide to the United States Trustee upon the

payment of each post-Confirmation payment an appropriate affidavit indicating all the Cash

disbursements for the relevant period.  In addition, the affidavit provided by the Liquidating

Trustee to the United States Trustee shall be filed on the docket with the Bankruptcy Court and

shall set forth each Distribution made to each of the Beneficiaries of the Liquidating Trust

(indicating the Class, identity, applicable claim number and the amount of the Distribution).  The

affidavit described in this section shall also indicate all Cash remaining on hand in the

Liquidating Trust.

     2.3    **Professional Claims.**  On or prior to the Administrative Expense Claim Bar Date

applicable to Professional Claims for the filing of final applications for compensation, each

Professional shall file with the Bankruptcy Court its final fee application seeking final approval

of all fees and expenses incurred from the Petition Date to the date of the Confirmation Hearing

which shall be considered by the Bankruptcy Court at the Confirmation Hearing. All such final

fee applications may be supplemented in advance of the Confirmation Hearing to provide for

estimates of the fees and costs to be incurred by each Professional from the date of the final

applications for compensation up to the date of Confirmation Hearing (or to correct estimates in

respect of such fees and costs provided for in the final applications for compensation) and

supplements may include an upward or downward adjustment to prior fee and cost estimates, in

accordance with the Administrative Expense Claim Bar Date applicable to Professional Claims.

Professional Claims shall be paid by the Trustee or the Liquidating Trustee, as applicable,

pursuant to Final Orders in the Chapter 11 Case awarding final compensation to such

4999213-2

Professional.  From and after the Confirmation Date until the Effective Date, the Trustee, in the ordinary course of business, shall pay the reasonable fees and expenses of Professionals incurred by them during such period.

      2.4      **Trustee and Liquidating Trustee Compensation.**

      2.4.1      **Trustee Compensation.**  On or prior to the Administrative Expense Claim Bar Date applicable to Professional Claims for the filing of final applications for compensation, the Trustee shall file with the Bankruptcy Court his final fee application seeking final approval of all fees and expenses incurred covering the period from the Petition Date through the Effective Date (including, but not limited to, fees associated with the TD Bank Contribution and the Additional Recoveries) and such fee application shall be considered by the Bankruptcy Court at the Confirmation Hearing.

The Trustee's final application for compensation may seek an award of compensation in Cash based on the formula contained in Section 326(a) of the Bankruptcy Code and otherwise provided for by any other provision of the Bankruptcy Code and may include a request to be paid compensation calculated on (a) the amount of all Assets disbursed, turned over or transferred by the Trustee after the Order for Relief and prior to the Effective Date, and (b) the amount of all Assets disbursed, turned over or transferred by the Trustee on the Effective Date, including the TD Bank Contribution, the Additional Recoveries, and any other Assets delivered by the Trustee to the Liquidating Trustee following execution of the Liquidating Trust Agreement; provided, however, that for the avoidance of any doubt, the Trustee's entitlement to seek an award of compensation is without prejudice to the rights of the Committee, the United States Trustee or any other party in interest to object to the Trustee's application for fees.

4999213-2

32

Interim compensation awarded and paid to the Trustee prior to the Effective Date shall be credited against the compensation payable to the Trustee pursuant to the Plan.  The amount of the Trustee's compensation shall be subject to approval by the Bankruptcy Court and shall be paid by the Estate or the Liquidating Trustee, as applicable, to the Trustee as soon as practicable after approval by the Bankruptcy Court; provided, however, that for the avoidance of any doubt, the amount of the Trustee's compensation and the payment terms will be determined by the Bankruptcy Court in the Chapter 11 Case by Final Order; provided, further, however  that for purposes of calculating the amount of compensation payable to the Trustee or the Liquidating Trustee, as applicable, on account of the disbursements made on the Banyon Unsecured Claim, to the extent that any such compensation is payable to the Trustee or the Liquidating Trustee, as applicable, on account of the Banyon Unsecured Claim, only 30% of the amount Distributed on account of the Banyon Unsecured Claim may be included as a disbursement by the Trustee or the Liquidating Trustee, as applicable.

Notwithstanding anything contained herein, any party in interest, including the United States Trustee and the Committee, may object to the Trustee's final fee application, including but not limited to, in regard to which Assets disbursed, turned over or transferred by the Trustee are properly included in the formula used to calculate the Trustee's compensation.

The Committee's agreement herein that the Trustee may request compensation based on certain Assets disbursed, turned over or transferred by the Trustee shall not be construed as the Committee's agreement that the Trustee is entitled to compensation based on any such Assets disbursed, turned over or transferred by the Trustee and the Committee reserves the right to object to the Trustee's final fee application.

4999213-2

33

Notwithstanding any provision of this Plan to the contrary, the precise manner in which the Assets are disbursed, turned over or transferred to the Liquidating Trust shall not affect the rights of the Trustee to seek compensation for the amounts of Assets which ultimately are disbursed, turned over or transferred to the Liquidating Trust prior to, on, or in conjunction with the Effective Date.

The foregoing provisions regarding the Trustee's entitlement to seek fees is without prejudice to the rights of the Committee, the United States Trustee or any other party in interest to object to the Trustee's application for fees at the Confirmation Hearing or thereafter in connection with the Trustee's fee application(s) in respect of Additional Recoveries.

2.4.2    **Liquidating Trustee Compensation**.  Subject to Bankruptcy Court approval following application and a hearing, the Liquidating Trustee shall be entitled to receive reasonable compensation at the rate of $500.00 per hour (adjusted annually) for all time reasonably spent by the Liquidating Trustee in administering the Liquidating Trust.

2.5    **Deadline for Filing Administrative Expense Claims**.  Any and all requests for allowance or payment of Administrative Expense Claims must be Filed and served on each of the Plan Proponents, the Liquidating Trustee, their respective counsel, and the United States Trustee no later than the applicable Administrative Expense Claim Bar Date; provided, however, that the Administrative Expense Claim Bar Date shall not apply to liabilities incurred in the ordinary course of business (other than Professional Claims).  Objections to Administrative Expense Claims (other than Professional Claims) must be Filed and served on the claimant no later than thirty (30) days after the Administrative Expense Claim Bar Date; provided that objections to Administrative Expense Claims that constitute Professional Claims shall be due in accordance with the Disclosure Statement Approval Order.

4999213-2

Administrative Expense Claims incurred in the ordinary course of business (other than Professional Claims) shall be paid by the Liquidating Trustee or the Trustee, as applicable, in the ordinary course of business between such parties, without application to or approval of the Bankruptcy Court.

Any holder of an Administrative Expense Claim (including a holder of a Professional Claim or a Claim for federal, state or local taxes arising subsequent to the Petition Date) that is required to File, but does not File an application, motion, request or other Bankruptcy Court approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtor, the Estate, the Liquidating Trust, the Liquidating Trustee, or any of their respective Assets, and such holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

2.6     **Allowed Priority Non-Tax Claims.**  Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, and (iii) a date agreed to by the Liquidating Trustee and the holder of such Allowed Priority Non-Tax Claim, the Liquidating Trustee shall pay each holder of an Allowed Priority Non-Tax Claim Cash equal to the amount of its Allowed Priority Non-Tax Claim in full satisfaction, release, and discharge of the Allowed Priority Non-Tax Claim.

2.7     **Allowed Priority Tax Claims.**  Subject to the allowance procedures and deadlines provided herein, on the Effective Date or as soon thereafter as is practicable, each holder of an Allowed Priority Tax Claim shall receive at the option of the Liquidating Trustee, in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Priority Tax

Claim: (a) Cash equal to the amount of such unpaid Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (iii) a date agreed to by the Liquidating Trustee and the holder of such Allowed Priority Tax Claim; (b) equal Cash payments of a total value, as of the Effective Date, equal to the Allowed amount of such Allowed Priority Tax Claim from the Liquidating Trustee made on the last Business Day of every (3) month period following the Effective Date and terminating on February 28, 2015; or (c) such other treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Allowed Priority Tax Claim and the Liquidating Trustee or as the Bankruptcy Court may order.  The Liquidating Trustee shall have the right, in his sole discretion, to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature.

## ARTICLE 3

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

3.1     **General.**  Pursuant to Section 1122 of the Bankruptcy Code, below is a designation of the Classes of Claims against and Interests in the Debtor.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class.  A Claim or Interest is also placed in a particular Class for purposes of receiving a Distribution under the Plan, but only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released, or otherwise settled prior to the Effective Date.  Except as otherwise expressly set forth in this Plan, a Claim or Interest which is not an Allowed Claim or Allowed Interest shall not receive any payments, rights or Distributions under this Plan.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Claims specified in Sections 507(a)(2), 507(a)(3) or

507(a)(8) of the Bankruptcy Code have not been classified and are treated as set forth in Article 2 above.

    3.2    **Class 1:  Allowed Secured Claims.**

        (a)    Definition of Class 1

Class 1 consists of Allowed Secured Claims.  The Plan Proponents are not aware of any Secured Claims that are or will be Allowed.

        (b)    Treatment of Class l

Each holder of an Allowed Secured Claim shall receive, in the sole discretion of the Liquidating Trustee, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim: (a) Cash equal to the amount of such Allowed Secured Claim on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that such Secured Claim becomes Allowed, and (iii) a date agreed to by the Liquidating Trustee and the holder of such Allowed Secured Claim; (b) treatment such that such Allowed Secured Claim is reinstated; (c) the property securing such Allowed Secured Claim; or (d) such other treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Claim and the Liquidating Trustee or as the Bankruptcy Court may order in the Chapter 11 Case by Final Order.

        (c)    Voting Status of Class 1

Class 1 is Unimpaired under the Plan and the holders of such Claims are not entitled to vote on the Plan.

    3.3    **Class 2:  Single Source Recovery Allowed Unsecured Claims.**

        (a)    Definition of Class 2

Class 2 consists of all Single Source Recovery Allowed Unsecured Claims.

        (b)    Treatment of Class 2

Subject to the payments provided for in Section 2.1 through 2.7, and Section 3.2 of this Plan, and except as otherwise provided in this Section 3.3(b), each holder of an Allowed Class 2 Claim shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Class 2 Claim, Pro Rata Distributions of Cash from the Liquidating Trust pursuant to the Liquidating Trust Agreement until such Allowed Class 2 Claim has been paid the Full Amount of such Allowed Claim. Allowed Class 2 Claims shall receive the same Pro Rata Distribution as the holders of Allowed Class 3 Claims, after application of Collateral Source Recoveries, which are classified and treated in Section 3.4 of this Plan.

**<u>As a condition precedent to the receipt of a Distribution under the Plan or the Liquidating Trust, each holder of an Allowed Class 2 Claim shall deliver to the Voting</u>**

4999213-2

37

**Agent a completed and duly executed Verified Collateral Source Recovery Disclosure, in the form attached to this Plan as Appendix 1.137, by the Voting Deadline.** The Liquidating Trustee is authorized to make interim Distributions to the holders of Allowed Class 2 Claims after the Effective Date and before finalization of Collateral Source Recovery calculations; provided, however, that any such Distributions by the Liquidating Trustee will be limited in amounts that, in the Liquidating Trustee's reasonable judgment, are designed to avoid the payment of excess Distributions to the holders of Allowed Class 2 Claims.

If the holder of a Class 2 Claim (i) fails or refuses to timely deliver to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure on or before the Voting Deadline, or (ii) after notice and a hearing, is determined to have knowingly provided false information in a Verified Collateral Source Recovery Disclosure, then (a) such holder shall be deemed to irrevocably waive its rights to receive, and shall be forever barred from receiving, a Distribution from the Liquidating Trust, (b) such holder's Class 2 Claim shall be deemed Disallowed without further order of the Bankruptcy Court, and (c) such holder's Ballot shall not be counted for purposes of determining whether Class 2 has accepted or rejected this Plan. All Entities submitting a Verified Collateral Source Recovery Disclosure shall have an obligation to correct and/or update such Verified Collateral Source Recovery Disclosure as and when such Entity has knowledge that such disclosure was incorrect or has changed, including, but not limited to, when such Entity actually receives a previously anticipated Verified Collateral Source Recovery. Such obligation to correct and/or update shall terminate on the Final Distribution Date.

On or by the Effective Date, the Trustee or the Liquidating Trustee, as applicable, shall provide the Liquidating Trust Oversight Committee with copies of all Verified Collateral Source Recovery Disclosures that are timely received by the Voting Agent.

Any Holder of a Class 2 Claim that receives Distributions in excess of the amount such holder of a Class 2 Claim was entitled to receive in Distributions shall repay such amount that it received that was in excess of the Distributions such holder was entitled to receive to the Liquidating Trust within thirty (30) days after such holder has been directed by a Final Order of the Bankruptcy Court in the Chapter 11 Case to repay such excess Distributions to the Liquidating Trust. Section 6.14 of this Plan sets forth additional obligations of holders of Class 2 Claims to remit Collateral Source Recoveries to the Liquidating Trust.

Holders of Class 2 Claims that are Disallowed subsequent to a Distribution being made to such holders shall repay any such Distribution to the Liquidating Trust within thirty (30) days after the Class 2 Claim becoming Disallowed.

If the holder of a Claim timely delivers to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure that discloses that if its Claim is Allowed, it would be a Single Source Recovery Allowed Unsecured Claim, such Claim shall be classified as a Class 2 Claim. If the holder of a Claim timely delivers to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure that discloses that if its Claim is Allowed, it would be a Multiple Source Recovery Allowed Unsecured Claim, such Claim shall be classified as a Class 3 Claim.

4999213-2

(c)      Voting Status of Class 2

Class 2 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

3.4      **Class 3:  Multiple Source Recovery Allowed Unsecured Claims.**

(a)      Definition of Class 3

Class 3 consists of all Multiple Source Recovery Allowed Unsecured Claims, excluding those Claims classified in Classes 4, 5, 6, 7, and 8.

(b)      Treatment of Class 3

Subject to the payments provided for in Sections 2.1 through 2.7, and Section 3.2 of this Plan, and except as otherwise provided in this Section 3.4(b), each holder of an Allowed Class 3 Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Class 3 Claim Pro Rata Distributions of Cash from the Liquidating Trust pursuant to the Liquidating Trust Agreement until such Allowed Class 3 Claim has been paid the Full Amount of such Allowed Claim.

**As a condition precedent to the receipt of a Distribution under the Plan or the Liquidating Trust, each holder of an Allowed Class 3 Claim shall deliver to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure, in the form attached to this Plan as Appendix 1.138, by the Voting Deadline.**  Notice regarding the receipt of Collateral Source Recoveries received by the holders of the Funds' General Unsecured Claim shall be provided in accordance with the terms of the Funds' Settlement Agreement.  To the extent not otherwise provided herein, the Liquidating Trustee shall succeed to the rights of the Trustee under the provisions of the Funds' Settlement Agreement.  Notice regarding the receipt of Collateral Source Recoveries received by the holders of Coquina Investments' General Unsecured Claim shall be provided in accordance with the terms of the Coquina Settlement Agreement.  To the extent not otherwise provided herein, the Liquidating Trustee shall succeed to the rights of the Trustee under the provisions of the Coquina Settlement Agreement.

If the holder of a Class 3 Claim (i) fails or refuses to timely deliver to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure on or before the Voting Deadline, or (ii) after notice and a hearing, is determined to have knowingly provided false information in a Verified Collateral Source Recovery Disclosure, then (a) such holder shall be deemed to irrevocably waive its rights to receive, and shall be forever barred from receiving, a Distribution from the Liquidating Trust, (b) such holder's Class 3 Claim shall be deemed Disallowed without further order of the Bankruptcy Court, and (c) such holder's Ballot shall not be counted for purposes of determining whether Class 3 has accepted or rejected this Plan. All Entities submitting a Verified Collateral Source Recovery Disclosure shall have an obligation to correct and/or update such Verified Collateral Source Recovery Disclosure as and when such Entity has knowledge that such disclosure was incorrect or has changed, including, but not limited to, when such Entity actually receives a previously anticipated Verified Collateral Source

4999213-2

Recovery. Such obligation to correct and/or update shall terminate on the Final Distribution Date.

The amount of the Distributions to be made on account of each Allowed Class 3 Claim shall be reduced, on a dollar for dollar basis, by the amount of all Collateral Source Recoveries received from any source; provided, however, that the Liquidating Trustee is authorized to make interim Distributions to the holders of Allowed Class 3 Claims after the Effective Date and before finalization of Collateral Source Recovery calculations; provided further, however, that any such Distributions by the Liquidating Trustee will be limited in amounts that, in the Liquidating Trustee's reasonable judgment, are designed to avoid the payment of excess Distributions to the holders of Allowed Class 3 Claims.  The amount of the reduction of the Distributions on account of each Allowed Class 3 Claim's Collateral Source Recovery shall be calculated in accordance with Section 6.13 of this Plan and established in the following manner: on or before the date that is 60 days after the Effective Date (without prejudice to the Liquidating Trustee's right to request an extension of this deadline for cause from the Bankruptcy Court), the Liquidating Trustee shall, after consultation with the Liquidating Trust Oversight Committee, File and serve a notice on all affected parties which (A) provides a schedule of the aggregate Collateral Source Recoveries received from all sources by each holder of a Claim in Class 3, and (B) explicitly identifies the amount by which Distributions on account of each such holder's Class 3 Claim will be reduced on account of all of such holder's Collateral Source Recoveries, and such notice shall also provide that: (a) the Liquidating Trust Oversight Committee and the holder of a Class 3 Claim whose Distribution is sought to be reduced shall have 30 days from the Filing of such notice to object to the relief sought in such notice; (b) all objections to such notice shall be Filed with the Bankruptcy Court and served upon the Liquidating Trustee and the Liquidating Trust Oversight Committee; (c) if no timely objection to such notice is Filed and served, the Liquidating Trustee shall use the amount of the applicable Collateral Source Recovery indicated on such notice to calculate the reductions to Distributions to each such holder of a Class 3 Claim; and (d) if a timely objection to such notice is Filed and served, such objection and the amount of the applicable Collateral Source Recovery shall be resolved by the Bankruptcy Court in accordance with the provisions of this Section 3.4(b) after notice and opportunity for a hearing.

The holder of an Allowed Class 3 Claim shall not receive Distributions on account of such Class 3 Claim until the amount of such holder's Collateral Source Recoveries is less than or equal to the amount such holder would have received in Distributions on account of its Class 3 Claim if such holder did not have any Collateral Source Recoveries.

The holder of such Class 3 Claim shall receive Distributions on account of its Class 3 Claim so that such holder receives the same Pro Rata Distribution (after inclusion of such holder's Collateral Source Recoveries as if they were a Distribution) as the holders of Allowed Class 2 Claims.

On or by the Effective Date, the Trustee or the Liquidating Trustee, as applicable, shall provide the Liquidating Trust Oversight Committee with copies of all Verified Collateral Source Recovery Disclosures that are timely received by the Voting Agent.

4999213-2

Any holder of a Class 3 Claim that receives Distributions in excess of the amount such holder of a Class 3 Claim was entitled to receive in Distributions shall repay such amount that it received that was in excess of the Distributions such holder was entitled to receive to the Liquidating Trust within thirty (30) days after such holder has been directed by a Final Order of the Bankruptcy Court in the Chapter 11 Case to repay such excess Distributions to the Liquidating Trust.  Section 6.14 of this Plan sets forth additional obligations of holders of Class 3 Claims to remit Collateral Source Recoveries to the Liquidating Trust.

Holders of Class 3 Claims that are Disallowed subsequent to a Distribution being made to such holders shall repay any such Distribution to the Liquidating Trust within thirty (30) days after the Class 3 Claim becoming Disallowed.

If the holder of a Claim timely delivers to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure that discloses that if its Claim is Allowed, it would be a Single Source Recovery Allowed Unsecured Claim, such Claim shall be classified as a Class 2 Claim. If the holder of a Claim timely delivers to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure that discloses that if its Claim is Allowed, it would be a Multiple Source Recovery Allowed Unsecured Claim, such Claim shall be classified as a Class 3 Claim.

Nothing in the foregoing is intended to modify or supersede, and nothing herein shall modify or supersede, any settlement agreements that have been approved by Final Order of the Bankruptcy Court in the Chapter 11 Case on or before May 8, 2013.  Nothing contained herein shall preclude the Liquidating Trustee from reducing Distributions pursuant to Collateral Source Recoveries as stated in this Section 3.4(b), to the extent not inconsistent with any relevant provisions of such settlement agreements.  Collateral Source Recoveries received by the holders of the Funds' General Unsecured Claim shall be calculated and treated exclusively in accordance with the Funds' Settlement Agreement and the Funds or their assignee(s) (if any) shall receive Distributions on account of such Claim as, and to the extent, provided in the Funds' Settlement Agreement and this Plan, to the extent not inconsistent with the Funds' Settlement Agreement. Collateral Source Recoveries received by the holders of Coquina Investments' General Unsecured Claim shall be calculated and treated exclusively in accordance with the Coquina Settlement Agreement and Coquina Investments or their assignee(s) (if any) shall receive Distributions on account of such Claim as, and to the extent, provided in the Coquina Settlement Agreement and this Plan, to the extent not inconsistent with the Coquina Settlement Agreement.

(c)    Voting Status of Class 3

Class 3 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

3.5    **Class 4:  Razorback Unsecured Rising Tide Claim.**

(a)    Definition of Class 4

Class 4 consists of the Razorback Unsecured Rising Tide Claim, as Allowed in the Razorback Settlement Agreement.

4999213-2

41

(b)    Treatment of Class 4

Subject to the payments provided for in Sections 2.1 through 2.7, and Sections 3.2 through 3.4 of this Plan, and except as otherwise provided in this Section 3.5(b), the Allowed Class 4 Claim shall not receive any Distribution under this Plan or the Liquidating Trust until such time as the holders of Allowed Class 2 and Allowed Class 3 Claims have received Pro Rata Distributions of Cash from the Liquidating Trust equal to 95% of the Allowed amount of such Claims after the application of Collateral Source Recoveries. Once each of the holders of Allowed Class 2 and Class 3 Claims have received a Pro Rata Distribution of Cash equal to 95% of the Allowed amount of such Class 2 and Class 3 Claims after the application of Collateral Source Recoveries, if any, the Allowed Class 4 Claim shall commence receiving Pro Rata Distributions equal to the Pro Rata Distributions provided thereafter to Allowed Class 2 and Allowed Class 3 Claims after the application of Collateral Source Recoveries; provided, however, that the total amount of Cash distributed pursuant the Plan and Liquidating Trust to the holder of the Allowed Class 4 Claim shall not exceed $494,750 on account of the Allowed Class 4 Claim. The foregoing treatment shall be in full satisfaction, release and discharge of the Razorback Unsecured Rising Tide Claim.

(c)    Voting Status of Class 4

Class 4 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

3.6    **Class 5:  Banyon Unsecured Claim.**

(a)    Definition of Class 5

Class 5 consists of the Banyon Unsecured Claim.

(b)    Treatment of Class 5

1.    Upon the occurrence of the Effective Date, the Banyon Unsecured Claim shall be Allowed in the amount of $39.7 million ($39,700,000) against the Estate.

2.    Upon the transfer of the Trust Assets from the Estate to the Liquidating Trustee, the Liquidating Trustee shall establish the Banyon Unsecured Creditor Fund from the TD Bank Contribution and earmark the Banyon Unsecured Creditor Fund for payment of the Banyon Unsecured Claim.  The Banyon Bankruptcy Estates shall recover on account of the Banyon Unsecured Claim solely from the Banyon Unsecured Creditor Fund.

3.    Within five (5) Business Days after the Effective Date, the Liquidating Trustee shall Distribute the Banyon Unsecured Creditor Fund to the Banyon Trustee for the benefit of the Banyon Bankruptcy Estates (the "**Banyon Distribution**") in full satisfaction, release and discharge of all Claims of the Banyon Bankruptcy Estates, directly or indirectly, against the Debtor or the Estate, including, without limitation, the Banyon Unsecured Claim.  The amount of the Banyon Distribution shall be allocated

between the Banyon Bankruptcy Estates in accordance with the direction of the Banyon Trustee or Final Order of the Bankruptcy Court in either Banyon Bankruptcy Case.

4.  Upon the payment of the Banyon Distribution, RRA shall have an allowed senior subordinated claim against each of the Banyon Bankruptcy Estates in the amount of $39.7 million ($39,700,000.00) (the "**RRA Banyon Senior Subordinated Claim**"). The RRA Banyon Senior Subordinated Claim shall be subordinated in right to payment to the Full Amount of (i) all allowed administrative expenses in each of the Banyon Bankruptcy Cases, respectively, (ii) all allowed priority claims in each of the Banyon Bankruptcy Cases, respectively, and (iii) all allowed non-subordinated general unsecured claims in each of the Banyon Bankruptcy Cases, after the application of Banyon Creditor Collateral Source Recoveries, as applicable; provided, that the Banyon Trustee shall not permit the holders of allowed claims senior to the RRA Banyon Senior Subordinated Claim to receive in excess of the Full Amount of their claims, after the application of Banyon Creditor Collateral Source Recoveries as applicable.  The RRA Banyon Senior Subordinated Claim shall be senior in right of payment to the TD Bank Banyon Junior Subordinated Claim.

5.    (A)    (I)  Within (5) five Business Days after the Effective Date, the Banyon Trustee shall send to all holders of claims asserted or assertable against the Banyon Bankruptcy Estates a Verified Banyon Creditor Collateral Source Recovery Disclosure with instructions to return such Verified Banyon Creditor Collateral Source Recovery Disclosure to the Banyon Trustee so that (i) it is actually received by the Banyon Trustee on or before the date that is 25 days after the Effective Date and (ii) contains the information required in part (II) hereof.

        (II)  **Each holder of a claim asserted or assertable against the Banyon Bankruptcy Estates must deliver to the Banyon Trustee a Verified Banyon Creditor Collateral Source Recovery Disclosure by a date that is no later than 25 days after the Effective Date.**  If the holder of a claim asserted or assertable against the Banyon Bankruptcy Estates (i) fails or refuses to timely deliver to the Banyon Trustee a completed and duly executed Verified Banyon Creditor Collateral Source Recovery Disclosure, or (ii) after notice and a hearing, is determined to have knowingly provided false information in a Verified Banyon Creditor Collateral Source Recovery Disclosure, then (a) such holder shall be deemed to irrevocably waive its rights to receive, and shall be forever barred from receiving, a distribution from the Banyon Bankruptcy Estates, and (b) such holder's claim asserted or assertable against the Banyon Bankruptcy Estates shall be deemed disallowed without further order of the Bankruptcy Court.  All Entities submitting a Verified Banyon Creditor Collateral Source Recovery Disclosure shall have an obligation to correct and/or update such Verified Banyon Creditor Collateral Source Recovery Disclosure as and when such Entity has knowledge that such disclosure was incorrect or has materially changed, including, but not limited to, when such Entity actually receives a previously anticipated Banyon Creditor Collateral Source Recovery. Such obligation to correct and/or update shall terminate on the Final Distribution Date.

        (B)    The Banyon Trustee shall provide the Liquidating Trustee and the Liquidating Trust Oversight Committee copies of each Verified Banyon

4999213-2

43

Creditor Collateral Source Recovery Disclosure submitted to him within five Business Days after the last date on which such Verified Banyon Creditor Collateral Source Recovery Disclosure is required to be submitted to the Banyon Trustee.

(C)     The amount of the distributions, including interim distributions, to be made by the Banyon Bankruptcy Estates on account of each claim asserted or assertable against each Banyon Bankruptcy Estate shall be reduced, on a dollar for dollar basis, by the amount of all Banyon Creditor Collateral Source Recoveries received on account of each such claim.  The amount of the reduction of the distributions, including interim distributions, on account of each such allowed claim's Banyon Creditor Collateral Source Recovery shall be calculated in accordance with Section 3.6(b)(5)(E) of this Plan and established in the following manner: on or before the date that is 45 days after the Effective Date (without prejudice to the Banyon Trustee's right to request an extension of this deadline for cause from the Bankruptcy Court), the Banyon Trustee shall, after consultation with the Liquidating Trustee and the Liquidating Trust Oversight Committee, file and serve upon all affected parties, a motion to make an interim distribution in each of the Banyon Bankruptcy Cases which (I) provides a schedule of the aggregate Banyon Creditor Collateral Source Recoveries received  by each holder of a claim asserted or assertable against each applicable Banyon Bankruptcy Estate, (II) explicitly identifies the amount by which all distributions, including interim distributions, by the Banyon Trustee on account of each such holder's claim will be reduced on account of all of such holder's Banyon Creditor Collateral Source Recoveries applicable to each such claim for all purposes, and (III) seeks authority to make an interim distribution to the creditors in each of the Banyon Bankruptcy Estates in accordance with Section 3.6(b)(8) of this Plan.  Such motion to make an interim distribution shall also provide that: (i) the Liquidating Trustee, the Liquidating Trust Oversight Committee and the holder of a claim against the Banyon Bankruptcy Estates whose distribution is sought to be reduced shall have 15 days from the filing of such motion to object to the relief sought in such motion; (ii) all objections to such motion must be filed with the Bankruptcy Court and served upon the Banyon Trustee, the Liquidating Trustee, and the Liquidating Trust Oversight Committee; (iii) if no timely objection to such motion is filed and served, the Banyon Trustee shall use the amount of the applicable Banyon Creditor Collateral Source Recovery indicated in such motion to calculate the reduction to the distributions, including interim distributions, to each such holder of each such claim asserted or assertable against each of the Banyon Bankruptcy Estates for all purposes; and (iv) if a timely objection to such motion is filed and served, such objection and the amount of the applicable Banyon Creditor Collateral Source Recovery shall be resolved by the Bankruptcy Court in accordance with the provisions of this Section 3.6(b) of the Plan after notice and opportunity for a hearing.

(D)     The holder of a claim asserted or assertable against the Banyon Bankruptcy Estates, once allowed, shall not receive a distribution on account of such a claim asserted or assertable against the Banyon Bankruptcy Estates until the amount of such holder's Banyon Creditor Collateral Source Recoveries are less than or equal to the amount such holder would have received in distributions on account of its

claim asserted against the Banyon Bankruptcy Estates if such holder did not have any Banyon Creditor Collateral Source Recoveries.

(E)     Except to the extent that a settlement agreement approved by Final Order of the Bankruptcy Court in either Banyon Bankruptcy Case between the holder of an allowed claim against either of the Banyon Bankruptcy Estates and such Banyon Bankruptcy Estate provides for differing treatment of Banyon Creditor Collateral Source Recoveries, the amount of a Banyon Creditor Collateral Source Recovery shall be calculated for each applicable allowed claim against a Banyon Bankruptcy Estate as:

I.     The gross amount of Cash and non-Cash assets received by, available to, received for the benefit of or applied to the indebtedness of the holder of an allowed claim against the Banyon Bankruptcy Estates (whether made directly or indirectly to such holder or any agent, attorney or third party associated with such holder), on account of or in any way related to such holder's loss directly or indirectly relating to Banyon 1030-32, LLC, Banyon Income Fund, LP, or Rothstein from all parties and sources, including, without limitation, any payments made to the holder of such claim by TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action.

II.     The amount calculated pursuant to Section 3.6(b)(5)(E)(I) of this Plan shall exclude, without duplication:

(i)     any distributions to be made to the holder of such claim by either of the Banyon Bankruptcy Estates;

(ii)     any tax benefit from a theft loss deduction taken in accordance with the IRC, or other tax benefits received by a holder of such claim, in either case as a result of losses in connection with Banyon Bankruptcy Estates or the Ponzi scheme orchestrated or operated by Rothstein;

(iii)     any amounts paid by TD Bank that result in any claims or recoveries being assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8, 2013, unless TD Bank consents to these amounts being included in the calculation of a Banyon Creditor Collateral Source Recovery;

(iv)     any anticipated, but not yet received, Banyon Creditor Collateral Source Recovery.

III.     The amount calculated pursuant to Section 3.6(b)(5)(E)(I) and (II) of this Plan shall include interest only if and to the extent such interest would be recoverable or allowable as an allowed claim against either Banyon

4999213-2

Bankruptcy Estate or as part of the allowed claim of such holder against either Banyon Bankruptcy Estate.

IV.   No deduction or reduction from the amount of a Banyon Creditor Collateral Source Recovery on account of the fees, costs and other expenses incurred or paid in connection with its pursuit of any Banyon Creditor Collateral Source Recoveries, including, without limitation, attorney's fees and costs, is permissible.

(F)   In connection with the calculation of Banyon Creditor Collateral Source Recoveries, to the extent that the holder of a claim against the Banyon Bankruptcy Estates assigned or assigns any Banyon Creditor Collateral Source Recoveries to another holder of a claim against the Banyon Bankruptcy Estates, the assignor may notify the Banyon Trustee of such assignment.  Subject to the Bankruptcy Court's approval, the Banyon Trustee may, in his discretion, seek to reduce the assignee's distribution, including an interim distribution, from the Banyon Bankruptcy Estates by the amount of the Banyon Creditor Collateral Source Recovery assigned to such assignee and not reduce the assignor's distribution, including an interim distribution, from the Banyon Bankruptcy Estates.

(G)   Without the need of a further order of the Bankruptcy Court and except to the extent that a settlement agreement approved in either Banyon Bankruptcy Case by Final Order of the Bankruptcy Court between either of the Banyon Bankruptcy Estates and the holder of an allowed claim against such Banyon Bankruptcy Estate provides for differing treatment of Banyon Creditor Collateral Source Recoveries, the holder of an allowed claim against a Banyon Bankruptcy Estate shall be required to remit to the Banyon Trustee  an amount of Cash equal to the value of all Banyon Creditor Collateral Source Recoveries it receives that were not disclosed as having been received on such holder's Verified Banyon Creditor Collateral Source Recovery Disclosure or did not then exist, including, without limitation, any applicable payments made to the holder of such claim by TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action; provided, however that in no event shall the holder of an allowed claim against either Banyon Bankruptcy Estate be required to remit Cash to the Banyon Trustee in an amount that is greater than the sum of such holder's distribution on account of such allowed claim from the applicable Banyon Bankruptcy Estate.  The holder of an allowed claim against either Banyon Bankruptcy Estate that has received or will receive a distribution from the Banyon Trustee shall fully cooperate with the Banyon Trustee and execute any documents reasonably required by the Banyon Trustee to evidence the obligation.

6.    All objections to claims in the Banyon Bankruptcy Estates shall be filed within 60 days after the Effective Date.

7.    The Banyon Trustee shall provide the Liquidating Trustee and the Liquidating Trust Oversight Committee periodic reports on (I) the status of the objections to and reconciliation of the claims asserted in the Banyon Bankruptcy Cases, (II) the status of the objections, if any, asserted to the Banyon Creditor Collateral Source

Recoveries in the motion required to be filed in accordance with Section 3.6(b)(5)(C) of this Plan, and (III) the estimated administrative expenses that are projected to arise in the subsequent quarter and be allowed in the Banyon Bankruptcy Cases, each quarter commencing on the last Business Day of the month in which the 90th day after the Effective Date occurs and concluding on the date in which the Banyon Bankruptcy Cases are closed.

8.      The Banyon Trustee shall, in the motion to make an interim distribution required by Section 3.6(b)(5)(C) of this Plan, seek the authority to make an interim distribution of not less than 60% of the allowed amount of each creditor's Claim against a Banyon Estate from such Banyon Estate, and shall use his best efforts to distribute an additional 10% of the allowed amount of each creditor's Claim against a Banyon Estate from such Banyon Estate, within five (5) Business Days after the approval of such motion, subject to Bankruptcy Court approval; provided, however, that any such interim distributions by the Banyon Trustee shall be limited in amounts that, in the Banyon Trustee's reasonable judgment, are designed to avoid the payment of excess distributions to a creditor of the Banyon Bankruptcy Estates; provided, further, however, that the Banyon Trustee may seek authority from the Bankruptcy Court, after notice and a hearing, to reduce the percentage of the interim distribution required by this Section 3.6(b)(8) for good cause shown.  The Banyon Trustee may rely on the amount of Banyon Creditor Collateral Source Recoveries disclosed on a Verified Banyon Creditor Collateral Source Recovery Disclosure as a Banyon Creditor Collateral Source Recovery that would reduce a creditor's distribution for the purpose of making any reserve or distribution, including any interim distribution.

9.      If the Banyon Bankruptcy Estates are not substantively consolidated, the Banyon Trustee shall allocate any Distribution received on account of the Banyon Unsecured Claim in a manner that shall result in the holders of allowed non-subordinated general unsecured claims against each of the Banyon Bankruptcy Estates receiving the same Pro Rata Distribution on account of their allowed claims after the application of the Banyon Creditor Collateral Source Recoveries.

10.     The Banyon Trustee shall file a notice that sets forth each distribution, including any interim distributions, made to a creditor of either of the Banyon Bankruptcy Estates (indicating the identity of such creditor, the applicable Banyon Bankruptcy Estate against which the creditor has asserted a claim, the applicable claim number and the amount of the distributions made to such creditor) within 30 days after the making of any such distribution to unsecured creditors in either of the Banyon Bankruptcy Cases.

(c)      Voting Status of Class 5

Class 5 is Impaired under the Plan and the Banyon Trustee is entitled to vote the Banyon Unsecured Claim on the Plan.

3.7    **Class 6:  Funds' Subordinated Claim.**

(a)    Definition of Class 6

Class 6 consists of the Funds' Subordinated Claim.

(b)    Treatment of Class 6

Subject to the payments provided for in Sections 2.1 through 2.7, and Sections 3.2 through 3.6 of this Plan, the Allowed Class 6 Claim is subordinate in right of payment to all Allowed Class 2, Class 3, Class 4, and Class 5 Claims, and will be paid, if at all, after all Allowed Claims in such senior classes are paid the Full Amount of such Allowed Claims in Cash after application of Collateral Source Recoveries, as applicable. If all Allowed Class 2, Class 3, Class 4 and Class 5 Claims have been paid the Full Amount of such Allowed Claims in Cash after application of Collateral Source Recoveries, as applicable, the Allowed Class 6 Claim shall receive Pro Rata Distributions from the Liquidating Trust pursuant to the Liquidating Trust Agreement if available until such Claims have been paid the Full Amount of such Allowed Claims in Cash in accordance with the terms of the Funds' Settlement Agreement.

Notice regarding the receipt of Collateral Source Recoveries received by the holders of the Funds' Subordinated Claim shall be provided in accordance with the terms of the Funds' Settlement Agreement.  To the extent not otherwise provided herein, the Liquidating Trustee shall succeed to the rights of the Trustee under the provisions of the Funds' Settlement Agreement.

Collateral Source Recoveries received by the holders of the Funds' Subordinated Claim shall be calculated and treated exclusively in accordance with the Funds' Settlement Agreement and the Funds or their assignee(s) (if any) shall receive Distributions on account of such Claim as, and to the extent, provided in the Funds' Settlement Agreement and this Plan, to the extent not inconsistent with the Funds' Settlement Agreement.

Any holder of a Class 6 Claim that receives Distributions in excess of the amount such holder of a Class 6 Claim was entitled to receive in Distributions shall repay such amount that it received that was in excess of the Distributions such holder was entitled to receive to the Liquidating Trust within thirty (30) days after such holder has been directed by a Final Order of the Bankruptcy Court in the Chapter 11 Case to repay such excess Distributions to the Liquidating Trust.

Holders of the Class 6 Claim, if Disallowed subsequent to a Distribution being made to such holders, shall repay any such Distribution to the Liquidating Trust within thirty (30) days after the Class 6 Claim becomes Disallowed.

(c)    Voting Status of Class 6

Class 6 is Impaired under the Plan and the holders of such Claim are entitled to vote on the Plan.

3.8    **Class 7:  Miscellaneous Subordinated Claims.**

(a)    Definition of Class 7

Class 7 consists of the Miscellaneous Subordinated Claims.

(b)    Treatment of Class 7

Subject to the payments provided for in Sections 2.1 through 2.7, and Sections 3.2 through 3.7 of this Plan, Allowed Class 7 Claims are subordinate in right of payment to all Allowed Class 2, Class 3, Class 4, Class 5, and Class 6 Claims, and will be paid, if at all, after all Allowed Claims in such senior classes are paid the Full Amount of such Allowed Claims in Cash after application of Collateral Source Recoveries, as applicable. If all Allowed Class 2, Class 3, Class 4, Class 5, and Class 6 Claims have been paid the Full Amount of such Allowed Claims in Cash after application of Collateral Source Recoveries, as applicable, the Allowed Class 7 Claims shall receive Pro Rata Distributions from the Liquidating Trust pursuant to the Liquidating Trust Agreement if available until such Claims have been paid the Full Amount of such Allowed Claims in Cash.

**As a condition precedent to the receipt of a Distribution under the Plan or the Liquidating Trust, the holders of Class 7 Claims shall deliver to the Voting Agent completed and duly executed Verified Collateral Source Recovery Disclosures, in the form attached to this Plan as Appendix 1.138, by the Voting Deadline.**

If a holder of a Class 7 Claim (i) fails or refuses to timely deliver to the Voting Agent a completed and duly executed Verified Collateral Source Recovery Disclosure on or before the Voting Deadline, or (ii) after notice and a hearing, is determined to have knowingly provided false information in a Verified Collateral Source Recovery Disclosure, then (a) the holders of the Class 7 Claim shall be deemed to irrevocably waive their rights to receive, and shall be forever barred from receiving, a Distribution from the Liquidating Trust, (b) the Class 7 Claim shall be deemed Disallowed without further order of the Bankruptcy Court, and (c) the Ballot for the Class 7 Claim shall not be counted for purposes of determining whether Class 7 has accepted or rejected this Plan. All Entities submitting a Verified Collateral Source Recovery Disclosure shall have an obligation to correct and/or update such Verified Collateral Source Recovery Disclosure as and when such Entity has knowledge that such disclosure was incorrect or has changed, including, but not limited to, when such Entity actually receives a previously anticipated Verified Collateral Source Recovery. Such obligation to correct and/or update shall terminate on the Final Distribution Date.

The amount of the Distributions to be made on account of each Allowed Class 7 Claim shall be reduced, on a dollar for dollar basis, by the amount of all Collateral Source Recoveries received from any source.  The amount of the reduction of the Distributions on account of each Allowed Class 7 Claim's Collateral Source Recovery shall be established in the following manner: on or before the date that is 60 days after the Effective Date (without prejudice to the Liquidating Trustee's right to request an extension of this deadline for cause from the Bankruptcy Court), the Liquidating Trustee shall, after consultation with the Liquidating Trust Oversight Committee, File and serve a notice on all affected parties which (A) provides a

schedule of the aggregate Collateral Source Recoveries received from all sources by each holder of a Claim in Class 7, and (B) explicitly identifies the amount by which Distributions on account of each such holder's Class 7 Claim will be reduced on account of all of such holder's Collateral Source Recoveries, and such notice shall also provide that: (a) the Liquidating Trust Oversight Committee and the holder of a Class 7 Claim whose Distribution is sought to be reduced shall have 30 days from the Filing of such notice to object to the relief sought in such notice; (b) all objections to such notice shall be Filed with the Bankruptcy Court and served upon the Liquidating Trustee and the Liquidating Trust Oversight Committee; (c) if no timely objection to such notice is Filed and served, the Liquidating Trustee shall use the amount of the applicable Collateral Source Recovery indicated on such notice to calculate the reductions to Distributions to each such holder of a Class 7 Claim; and (d) if a timely objection to such notice is Filed and served, such objection and the amount of the applicable Collateral Source Recovery shall be resolved by the Bankruptcy Court in accordance with the provisions of this Section 3.8(b) after notice and opportunity for a hearing.

Nothing in the foregoing is intended to modify or supersede, and nothing herein shall modify or supersede, any settlement agreements that have been approved in the Chapter 11 Case by Final Order of the Bankruptcy Court on or before May 8, 2013, including, without limitation, the Gibraltar Settlement Agreement, the Levy Settlement Agreement, and the Razorback Settlement Agreement. Nothing contained herein shall preclude the Liquidating Trustee from reducing Distributions pursuant to Collateral Source Recoveries as stated in this Section 3.8(b), to the extent not inconsistent with any relevant provisions of such settlement agreements. For the avoidance of any doubt, Collateral Source Recoveries received by the holders of the Miscellaneous Subordinated Claims shall be calculated and applied in accordance with the applicable terms of any settlement agreement with the Estate that has been approved in the Chapter 11 Case by Final Order on or before May 8, 2013 and is applicable to such Miscellaneous Subordinated Claim, including, without limitation, the Gibraltar Settlement Agreement, the Levy Settlement Agreement, and the Razorback Settlement Agreement, and such holders shall receive Distributions on account of such Miscellaneous Subordinated Claims as, and to the extent, provided in such settlement agreements and this Plan, to the extent not inconsistent with such settlement agreements.

The holder of an Allowed Class 7 Claim shall not receive a Distribution on account of such Class 7 Claim until the amount of such holder's Collateral Source Recoveries is less than or equal to the amount such holder would have received in Distributions on account of its Class 7 Claim if such holder did not have any Collateral Source Recoveries.

On or by the Effective Date, the Trustee or the Liquidating Trustee, as applicable, shall provide the Liquidating Trust Oversight Committee with copies of all Verified Collateral Source Recovery Disclosures that are timely received by the Voting Agent.

Any Holder of a Class 7 Claim that receives Distributions in excess of the amount such holder of a Class 7 Claim was entitled to receive in Distributions shall repay such amount that it received that was in excess of the Distributions such holder was entitled to receive to the Liquidating Trust within thirty (30) days after such holder has been directed by a Final Order of the Bankruptcy Court in the Chapter 11 Case to repay such excess Distributions to the Liquidating Trust.

4999213-2

Holders of Class 7 Claims, if Disallowed subsequent to a Distribution being made to such holders, shall repay any such Distribution to the Liquidating Trust within thirty (30) days after a Class 7 Claim becomes Disallowed.

(c)     Voting Status of Class 7

Class 7 is Impaired under the Plan and the holders of such Claim are entitled to vote on the Plan.

3.9     **Class 8:  TD Bank Junior Subordinated Claim.**

(a)     Definition of Class 8

Class 8 consists of the TD Bank Junior Subordinated Claim.

(b)     Treatment of Class 8

Subject to the payments provided for in Sections 2.1 through 2.7, and Sections 3.2 through 3.8 of this Plan, the Allowed Class 8 Claim is subordinate in right of payment to all Allowed Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 Claims, and will be paid, if at all, after all Allowed Claims in such senior classes are paid the Full Amount of such Allowed Claims in Cash after application of Collateral Source Recoveries, as applicable.  If the holders of all Allowed Class 2, Class 3, Class 4, Class 5, Class 6, and Class 7 Claims have been paid the Full Amount of such Allowed Claims in Cash after application of Collateral Source Recoveries, as applicable, the Allowed Class 8 Claim shall receive Distributions from the Liquidating Trust if available pursuant to the Liquidating Trust Agreement until such Claim has been paid the Full Amount of such Allowed Claim in Cash.

(c)     Voting Status of Class 8

Class 8 is Impaired under the Plan, but the holder of the Allowed Class 8 Claim has agreed to have such Claim deemed to have voted to accept the Plan; provided, however that the Plan Proponents shall not rely on Class 8 as an impaired accepting class for purposes of determining whether the Plan complies with Section 1129(a)(10) of the Bankruptcy Code.

3.10     **Class 9:  Allowed Interests in the Debtor.**

(a)     Definition of Class 9

Class 9 consists of all Interests in the Debtor.

(b)     Treatment of Class 9

All Interests shall be cancelled on the Effective Date.  Class 9 Interests shall not receive or retain any property under this Plan**.**

4999213-2

(c)     Voting Status of Class 9

Class 9 is Impaired under the Plan and will be deemed to have rejected the Plan.

## ARTICLE 4

## IDENTIFICATION OF CLASSES OF CLAIMS AND INTERESTS IMPAIRED AND NOT IMPAIRED BY THE PLAN

4.1     **Unimpaired Classes of Claims and Interests**.  Class 1 Allowed Secured Claims is Unimpaired under the Plan.

4.2     **Impaired Classes of Claims and Interests**.  Classes 2, 3, 4, 5, 6, 7, 8, and 9 are Impaired.  The Plan Proponents shall solicit votes from the holders of Claims in Classes 2, 3, 4, 5, 6, and 7.

## ARTICLE 5

## TREATMENT OF EXECUTORY CONTRACTS

5.1     **Rejection.**  Unless a motion to assume is Filed prior to the Confirmation Hearing and an order authorizing assumption is entered on or prior to the Effective Date, all executory contracts and unexpired leases of the Debtor shall be rejected pursuant to Section 365 of Bankruptcy Code as of the Effective Date.  For the avoidance of any doubt, this Section 5.1 shall apply to any and all pre-petition contracts or engagements the Debtor may have with professionals, including, but not limited to, attorneys, auditors and accountants.

5.2     **Approval of Rejection; Rejection Damages Claims Bar Date.**  The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of any executory or unexpired leases not assumed in accordance with Section 5.1 of this Plan as of the Effective Date.  Any Claim for damages arising from rejection of any executory contract or unexpired leases must be Filed on the earlier of (i) the deadline established by an order of the Bankruptcy Court, or (ii) thirty (30) days after the mailing of the Notice of Effective Date (the

"**Rejection Claim Bar Date**").  Any Claim not Filed on or before the Rejection Claim Bar Date

shall be forever barred, shall not be enforceable against the Debtor, its Estate, the Liquidating

Trust, the Liquidating Trustee, or any of their respective assets and shall receive no Distribution

under the Plan or otherwise on account of such Claim.

      5.3    **Indemnification Obligations**.  All Indemnification Obligations shall be canceled,

released and discharged on the Effective Date; provided, however, that the cancellation, release

and discharge of the Indemnification Obligations shall not affect whether a Claim made on

account of an Indemnification Obligation Filed by the applicable Bar Date is or may become an

Allowed Claim.

## ARTICLE 6

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THIS PLAN

      6.1    **Settlement Agreement**.  Pursuant to Section 1123 of the Bankruptcy Code and

Bankruptcy Rule 9019, the Plan implements the Settlement Agreement which is a compromise

and settlement of all issues between and among the Estate, the Banyon Bankruptcy Estates and

TD Bank.  The Settlement Agreement is hereby incorporated into the Plan in its entirety.  The

Confirmation Order shall approve the Settlement Agreement in its entirety.  To the extent not

otherwise provided for in the Plan, the Settlement Agreement will further be implemented under

the Plan as follows:

      6.1.1   Within three Business Days after the Confirmation Date, and subject to the

proviso contained in Section 9.2.12 of this Plan, TD Bank shall deliver the TD Bank

Contribution to an account designated by the Trustee.

      6.1.2   The consideration being provided to the Estate and the Banyon

Bankruptcy Estates pursuant to, in accordance with, and as described in, the Plan and the

Settlement Agreement by TD Bank, (including, without limitation, the TD Bank Contribution, the settlement and subordination of the Claims or the portions thereof in which TD Bank has an interest that comprise in part, the TD Bank Junior Subordinated Claim pursuant to this Plan, the settlement and subordination of TD Bank's claims or interest in claims in the Banyon Case pursuant to the terms of the Settlement Agreement, the release of TD Bank's claims against the Estate pursuant to Section 10.9 of this Plan, and the release of TD Bank's claims against Banyon Bankruptcy Estates pursuant to Section 3.4 of the Settlement Agreement) is being provided by TD Bank for the consideration that the Estate and the Banyon Bankruptcy Estates are providing to TD Bank under the Settlement Agreement and this Plan (including, without limitation, the settlement of all of the Estate's claims against TD Bank (including, without limitation, the Estate's avoidance claims against TD Bank), the settlement of all of the Banyon Bankruptcy Estates' claims against TD Bank, the TD Bank Releasee injunction and bar order provided in Section 10.8 of this Plan, the bar order provided for in Section 3.3 of the Settlement Agreement, the release being granted to the TD Bank Releasees provided in Section 10.6 of this Plan, the release being granted to the TD Bank Releasees provided in Section 3.1 of the Settlement Agreement, and the assignment of the Estate's and the Banyon Bankruptcy Estates' claims against the Levins).

       6.1.3   The TD Bank Junior Subordinated Claim is Allowed and shall be classified and treated in Class 8 of this Plan.  The TD Bank Junior Subordinated Claim shall not be subject to objection, reconsideration, reduction, recharacterization, further subordination, impairment, disallowance or reduction in Distribution on account of a Collateral Source Recovery or otherwise; provided, however, that TD Bank shall not be permitted to use the TD Bank Junior Subordinated Claim in any manner adverse to the Liquidating Trust; provided

4999213-2

54

further, however, that nothing in this Section 6.1.3 of the Plan shall in any way impact any right that TD Bank may have to receive a Distribution on the TD Bank Junior Subordinated Claim.

6.1.4    The Liquidating Trustee and the Liquidating Trust Oversight Committee shall not, and shall not cause the Liquidating Trust to, permit the payment or Distribution of any Assets, Trust Assets, or the proceeds thereof on account of any Interest in the Debtor.

6.1.5    The Trustee, the Committee and the Liquidating Trustee, as applicable, shall (i) prosecute the Confirmation Order and the 9019 Order to Final Order and (ii) oppose and fully prosecute any appeal of the Confirmation Order or the 9019 Order that seeks relief that is adverse to any of the Parties or the Liquidating Trust.  Each of the Trustee, the Committee and the Liquidating Trustee, as applicable, shall use its best efforts to have any such appeal (i) dismissed, (ii) resolved in manner that is in form and in substance acceptable to the Parties, or (iii) fully prosecuted so that the relief requested in such appeal is denied.  Notwithstanding anything herein to the contrary, the Trustee, the Committee and the Liquidating Trustee, as applicable, shall not oppose an appeal of the Confirmation Order or the 9019 Order filed by the Trustee, the Banyon Trustee or TD Bank, so long as the relief sought by such appeal is in accordance with the terms of this Plan and the Settlement Agreement.

6.1.6    The TD Bank Junior Subordinated Claim shall only be junior in right of payment of Administrative Expense Claims, Priority Claims and Claims classified in Classes 1 through 7 of this Plan.

6.1.7    TD Bank shall have standing to prosecute and defend any appeal of the Confirmation Order or the 9019 Order.

6.1.8    Subject to the terms of the Settlement Agreement and Section 3.6(b)(6) of the Plan, the Trustee and the Liquidating Trustee, as applicable, and the Banyon Trustee shall have exclusive standing to object to any and all claims in the Banyon Bankruptcy Estates.

6.1.9    Other than those claims expressly set forth in the Settlement Agreement, the Trustee, on behalf of the Debtor and the Estate, hereby waives all claims of the Debtor and the Estate against the Banyon Bankruptcy Estates.

6.1.10   The Trustee, the Liquidating Trustee and the Liquidating Trust Oversight Committee shall not and shall not permit the Debtor, the Estate, or the Liquidating Trust to support, and shall cause the Debtor, the Estate, and the Liquidating Trust, as applicable, to object to (i) any claims under Sections 503(b)(3)(A) through (E) and 503(b)(4) of the Bankruptcy Code, except the Razorback Substantial Contribution Claim, and (ii) any other non-ordinary course Administrative Expense Claims asserted against the Debtor, the Estate or the Liquidating Trust, as applicable, including any claim for a fee enhancement, unless TD Bank consents in writing to such Claims; provided that the Trustee, the Liquidating Trustee, and the Liquidating Trust Oversight Committee may support and shall not be required to object to the fees and expenses sought by the Trustee, the Liquidating Trustee, the Liquidating Trust Oversight Committee or their Professionals.  Nothing contained in this Section 6.1.10 shall in any way prohibit the Committee from objecting to the Razorback Substantial Contribution Claim.

6.1.11   Within three (3) Business Days after the Effective Date, the Liquidating Trustee shall, on behalf of the Trustee, Debtor and Estate, dismiss with prejudice the adversary proceeding brought by the Trustee against TD Bank that is pending in the Bankruptcy Court as adversary proceeding number 11-02368-RBR.

6.1.12  Within three (3) Business Days after the Effective Date, the Liquidating Trustee shall dismiss with prejudice the adversary proceeding brought by the Trustee against Emess Capital, L.L.C. that is pending in the Bankruptcy Court as adversary proceeding number 11-02768-RBR.

6.1.13  Any Claim which is assigned, participated or transferred or has had its recovery assigned, participated or transferred, in whole or in part, to TD Bank on or after the date this Plan is Filed shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction in Distribution on account of a Collateral Source Recovery, or otherwise, due to the payments made by TD Bank or because TD Bank has been assigned, participated or transferred, in whole or in part, such Claim or recovery; provided, however, that such Claim shall be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment or disallowance for any other reason, subject to the other provisions of this Plan.

6.1.14  Upon the occurrence of the Effective Date, without execution of any further documentation, the Trustee or the Liquidating Trustee, as applicable, on behalf of the Estate shall assign, transfer, and convey the Levin Claims, and/or any proceeds thereof, to TD Bank free and clear of all liens, claims and encumbrances.

6.1.15  Upon the occurrence of the Effective Date, without execution of any further documentation, the Levin Claims shall unconditionally and irrevocably vest with TD Bank and TD Bank shall have the exclusive right and standing to enforce any and all of the Levin Claims, including, but not limited to, the rights and powers of a trustee and debtor-in-possession, and shall be entitled to all remedies available to the Trustee in the Chapter 11 Case, for the sole benefit of TD Bank.

4999213-2

6.1.16  The Trustee or the Liquidating Trustee, as applicable, hereby agrees that upon the request of TD Bank, the Trustee or the Liquidating Trustee, as applicable, shall provide or make available any and all data, records and documents regarding the Levin Claims in their actual possession, to TD Bank, subject to entry into mutually acceptable written agreements in order to preserve any applicable attorney client privileges and protections afforded by the work product protection doctrine.

6.1.17  The Confirmation Order shall authorize and direct the Plan Proponents and the Banyon Trustee to take all actions, and execute and deliver all documents, necessary or desirable to implement the provisions of the Settlement Agreement and the Plan, including, without limitation, the Liquidating Trust Agreement.

6.2    **The Liquidating Trust.**

6.2.1    **Establishment of the Liquidating Trust.**  On the Effective Date, the Trustee, on behalf of the Debtor and the Beneficiaries, shall execute the Liquidating Trust Agreement attached hereto and incorporated herein as Appendix 1.82, and take all steps necessary to establish the Liquidating Trust.  In the Confirmation Order, the Bankruptcy Court shall approve the selection of the Liquidating Trustee whose appointment shall be effective on the Effective Date.

6.2.2    **Purpose of Liquidating Trust.**  The Liquidating Trust shall be established for the sole purpose of liquidating the Debtor's Assets, including prosecuting Litigation Claims and distributing the proceeds thereof solely to the Beneficiaries, as identified in and prescribed by this Plan and the Liquidating Trust Agreement.  The Liquidating Trust shall not engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  Unless otherwise required by law, it is

4999213-2

58

intended that all parties treat the Liquidating Trust as a liquidating trust for all federal income tax purposes. The Liquidating Trust is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Treasury Regulation § 301.7701-4(d); (ii) as a grantor trust in favor of the Beneficiaries pursuant to Treasury Regulation § 1.671-4(a); and (iii) to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.  The Beneficiaries of the Liquidating Trust shall be treated as the grantors and deemed owners of the Liquidating Trust.

      6.2.3    **Contribution of Assets to the Liquidating Trust.**  On the Effective Date and subject to the proviso contained in Section 9.2.11 of this Plan, the Trustee on behalf of the Estate shall, pursuant to the terms of the Liquidating Trust Agreement, transfer, disburse and turn over all of the Debtor's Assets, including, but not limited to, the Estate's rights under the Settlement Agreement and the Estate's rights to the Liquidating Trust; provided that the Levin Claims shall not be transferred or otherwise contributed to the Liquidating Trust and shall not be considered or become Trust Assets for any purpose.  Title to all Assets contributed to the Liquidating Trust shall vest in the Liquidating Trust on the Effective Date following the transfer.  For the avoidance of any doubt, following the contribution of Assets to the Liquidating Trust pursuant to this Section 6.2.3 and the Liquidating Trust Agreement, the Liquidating Trustee shall, subject to the terms of this Plan and the Liquidating Trust Agreement, have the exclusive standing to pursue, settle, or otherwise dispose of the Litigation Claims on behalf of the Liquidating Trust for the benefit of the Beneficiaries and shall be entitled to all remedies available to the Trustee in the Chapter 11 Case.  The Liquidating Trustee shall be substituted for the Trustee in all pending litigation without further order of the Bankruptcy Court or any other court where litigation is pending.

4999213-2

6.2.4   **Certain Federal Tax Matters.**  The transfer of the Assets to the Liquidating Trust will be treated for federal income tax purposes as a deemed transfer by the Debtor to the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Liquidating Trust, in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684.  The taxation of the deemed transfers from the Debtor to the Beneficiaries and from the Beneficiaries to the Liquidating Trust will be guided by provisions of IRC §§61(a)(12), 483, 1001, 1012 and 1274. The taxable income or loss of the Liquidating Trust, including the taxable income attributable to the Disputed Claims Reserves, if any, will be allocated to the Beneficiaries on an annual basis pro rata in accordance with their respective entitlement to receive distributions from the Liquidating Trust if the Liquidating Trust terminated and distributed all its assets on the last day of the taxable year (taking into account all prior and concurrent distributions from the Liquidating Trust during such taxable year).  The Liquidating Trustee shall not be required to report such tax information to any Beneficiary unless such Beneficiary provides to the Liquidating Trustee a complete form W-9 or acceptable substitute signed under penalty of perjury.  In determining each Beneficiary's share of income, gain, loss, deductions and credits, the Liquidating Trustee shall not allocate such items to any Beneficiary who is the holder of a Claim which has no value until such time, if at all, as a value of the Claim arises.  For this purpose, a Claim shall have no value for any taxable year in which the Beneficiary who is the holder of the Claim would receive no distribution from the Liquidating Trust if the Liquidating Trust terminated and distributed all its assets on the last day of the taxable year.  The Beneficiaries shall be responsible to report and pay the taxes due on their proportionate share of the Liquidating Trust taxable income, whether or not amounts are actually distributed by the Liquidating Trustee to the Beneficiaries to pay the taxes.  The value of the Trust Assets

transferred into the Liquidating Trust shall be the fair market value of such Assets at the time of such transfer, as reasonably determined by the Liquidating Trustee, in consultation with the Trustee and such advisors as the Liquidating Trustee deems appropriate, within a reasonable period of time after the Effective Date.  Such valuation shall be binding on all parties including, but not limited to, the Debtor, the Debtor's Estate, the Trustee, the Liquidating Trustee, and all Beneficiaries, and these valuations will be used by such parties for all federal income tax purposes.  Notwithstanding anything in this Plan to the contrary, in the event that (i) any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to Treasury Regulation § 1.468B-1, or (ii) the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" pursuant to Treasury Regulation § 1.468B-9(c)(2)(ii), any federal income tax consequences shall be determined under IRC Section 468B and the Treasury Regulations thereunder.

        **6.2.5**  **Liquidating Trust Bond.**  As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida.  For the avoidance of any doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond.

        **6.2.6**  **Liquidating Trust Management.**  Subject at all times to the consent and review rights of the Liquidating Trust Oversight Committee set forth in this Plan and/or the Liquidating Trust Agreement, the Liquidating Trustee shall (A) oversee and direct the Liquidating Trust's operations and activities, in accordance with the Liquidating Trust

4999213-2

61

Agreement, including, but not limited to, the retention of Post-Confirmation Professionals, objecting to Claims, reconciling Claims, resolving Claims, otherwise disposing of Claims, prosecution of Litigation Claims, and the settling of Litigation Claims, and (B) have the authority as set forth in Section 5.12 of the Liquidating Trust Agreement to initiate, prosecute, settle, resolve, dismiss, object to, reconcile or otherwise dispose of any Claim or Litigation Claim, all without the need of Bankruptcy Court approval absent the explicit requirement of such approval set forth in this Plan or the Liquidating Trust Agreement; provided, however, that for the avoidance of any doubt, (i) the Liquidating Trustee shall be bound by all prior settlement agreements that have been approved in the Chapter 11 Case by Final Order of the Bankruptcy Court as of May 8, 2013, subject to the Collateral Source Recovery provisions set forth in Sections 1.19, 1.36, 1.137 and 1.138, as well as Article 3, of this Plan, except to the extent such Collateral Source Recovery provisions are inconsistent with such prior settlement agreements, and (ii) TD Bank shall not have any right (a) to contest any prior settlements agreements that have been approved in the Chapter 11 Case by a Final Order of the Bankruptcy Court as of the Effective Date, or (b) to object to any Claims.

6.2.7    **Liquidating Trust Oversight Committee.**  The Committee shall designate the members of the Liquidating Trust Oversight Committee.  The members of the Liquidating Trust Oversight Committee shall be identified no later than ten (10) Business Days subsequent to entry of the Disclosure Statement Approval Order.  The appointment of the Liquidating Trust Oversight Committee shall be ratified by the Confirmation Order and effective as of the Effective Date.  The Liquidating Trust Oversight Committee shall review the actions of the Liquidating Trustee as provided in this Plan and as set forth in the Liquidating Trust Agreement. The Liquidating Trust Oversight Committee and its members shall have a fiduciary

duty to the Beneficiaries in accordance with this Plan. The Liquidating Trust Oversight Committee may employ, pursuant to the terms of the Liquidating Trust Agreement, Post-Confirmation Professionals whose services may be reasonably necessary or advisable, to advise or assist the Liquidating Trust Oversight Committee in the discharge of its duties. Members of the Liquidating Trust Oversight Committee shall serve without compensation but shall be reimbursed for their reasonable and necessary out-of-pocket expenses incurred in performing their duties pursuant to Section 8.3(b) of the Liquidating Trust Agreement. Post-Confirmation Professionals may be retained by the Liquidating Trust Oversight Committee in the ordinary course of business and without prior approval of the Bankruptcy Court pursuant to Section 8.3(b) of the Liquidating Trust Agreement.  The actual fees and expenses of such Post-Confirmation Professionals of the Liquidating Trust Oversight Committee shall be reimbursed and shall be solely paid from Trust Assets without further order of the Bankruptcy Court pursuant to the terms of the Liquidating Trust Agreement.

### 6.2.8    Litigation Approval Rights of Liquidating Trust Oversight

**Committee.**  The Liquidating Trustee shall, prior to taking any action with respect to the initiation, prosecution, settlement, resolution, dismissal, objection to, reconciliation of or other disposition of a Claim or Litigation Claim, or with respect to any action concerning the Forfeiture Action, provide the Liquidating Trust Oversight Committee with written notice of such actions that meet the criteria set forth in subparts (a), (b), and (c) to Section 5.12 of the Liquidating Trust Agreement. If any such proposed action meets the thresholds stated in subparts (b) and (c) to Section 5.12 of the Liquidating Trust Agreement, the Liquidating Trust Oversight Committee shall have ten (10) Business Days to object in writing to any such proposed action. The Liquidating Trust Oversight Committee and the Liquidating Trustee shall confer in good

faith to resolve the objection to such proposed action.  Should any dispute between the

Liquidating Trustee and the Liquidating Trust Oversight Committee remain unresolved after

such conference, such dispute shall be resolved by the Bankruptcy Court.

6.2.9    **Costs and Expenses of the Liquidating Trust.**  All costs and expenses

incurred by the Liquidating Trust shall be the obligation of the Liquidating Trust and, subject at

all times to the consent and review rights of the Liquidating Trust Oversight Committee, be

payable from the Trust Assets of the Liquidating Trust in accordance with the Liquidating Trust

Agreement, the Settlement Agreement and this Plan.  Compensation of the Liquidating Trustee

shall be paid from the Trust Assets pursuant to the terms of the Liquidating Trust Agreement and

Section 2.4.2 of this Plan.

6.2.10  **[Intentionally Omitted].**

6.2.11  **Retention and Compensation of Professionals by the Liquidating**

**Trustee.**  The Liquidating Trustee may employ, without further order of the Bankruptcy Court,

Post-Confirmation Professionals or other persons whose services may be reasonably necessary or

advisable, subject to approval of the Liquidating Trust Oversight Committee, to advise or assist

the Liquidating Trustee in the discharge of his duties as Liquidating Trustee, or otherwise in the

exercise of any powers vested in the Liquidating Trustee, and to pay reasonable compensation

solely from the Trust Assets, to such attorneys, accountants, appraisers, expert witnesses,

insurance adjusters or other persons. However, the Liquidating Trustee may not retain as a Post-

Confirmation Professional any member of the Liquidating Trust Oversight Committee or any

firm which employs such member.  On the Effective Date, in the discretion of the Liquidating

Trustee and the Liquidating Trust Oversight Committee, the Voting Agent may continue in its

role as noticing and claims agent with its fees and expenses being paid by the Liquidating

4999213-2

64

Trustee on the same terms and conditions that were in effect on the Effective Date.  Subject to

the provisions of this Plan, prior representation of the Trustee or the Committee during the

Chapter 11 Case shall not disqualify any professional from representing the Liquidating Trustee

or the Liquidating Trust Oversight Committee.  No professional that represented TD Bank during

the Chapter 11 Case on matters related to the Chapter 11 Case shall be authorized to represent

either the Liquidating Trustee or the Liquidating Trust Oversight Committee.  Notwithstanding

anything herein to the contrary, without providing notice to or obtaining the approval of any

party other than the Liquidating Trust Oversight Committee, the Liquidating Trustee shall be

authorized pursuant to the Liquidating Trust Agreement to pay the fees and expenses incurred

after the Effective Date by his Post-Confirmation Professionals without further order of the

Bankruptcy Court.

   6.2.12  **Resignation and Removal of the Liquidating Trustee.**  The Liquidating

Trustee may resign and be discharged from any future obligations and liabilities under the

Liquidating Trust Agreement and this Plan by giving written notice thereof to the Liquidating

Trust Oversight Committee.  Any resignation hereunder shall become effective on the date

specified in the written notice, which shall be no less than thirty (30) days after such written

notice is given.  The Liquidating Trustee may be removed at any time only by order of the

Bankruptcy Court for cause.  Upon any such resignation, such Liquidating Trustee shall be

entitled to any compensation, reimbursement and indemnification set forth in the Liquidating

Trust Agreement or this Plan which remains due and owing to such Liquidating Trustee at the

time of such resignation.  In the event the Liquidating Trustee is removed, the Liquidating

Trustee shall not be entitled to any compensation or reimbursement that is due and owing to such

Liquidating Trustee at the time of such removal.  If, at any time, the Liquidating Trustee shall

4999213-2

give notice of his intent to resign pursuant to the Liquidating Trust Agreement, or shall become

incapable of acting, counsel to the Liquidating Trustee shall provide notice thereof to the

Bankruptcy Court.  Upon the resignation or removal of the Liquidating Trustee, the Liquidating

Trust Oversight Committee shall select a replacement Liquidating Trustee.  If the Liquidating

Trustee resigns, the Liquidating Trust Oversight Committee shall name the replacement

Liquidating Trustee prior to the date of the Liquidating Trustee's resignation specified in the

written notice.  Any successor to the Liquidating Trustee shall be bound by the terms of the

Liquidating Trust Agreement, the Settlement Agreement and this Plan.

6.2.13  **Resignation and Removal of the Liquidating Trust Oversight**

**Committee Members.**  Any member of the Liquidating Trust Oversight Committee may resign

and be discharged from any future obligations and liabilities hereunder by giving written notice

thereof to the Bankruptcy Court with a copy to the Liquidating Trustee and the other members of

the Liquidating Trust Oversight Committee.  Any resignation hereunder shall become effective

on the date specified in the written notice, which shall be no less than thirty (30) days after such

written notice is given.  A member of the Liquidating Trust Oversight Committee may be

removed at any time only by order of the Bankruptcy Court for cause.  Upon the proposed

resignation or removal of a member of the Liquidating Trust Oversight Committee, the

remaining members of the Liquidating Trust Oversight Committee shall select a successor who

shall agree to be bound by the terms of this Plan, the Liquidating Trust Agreement, and the

Settlement Agreement.  Any successor member of the Liquidating Trust Oversight Committee

appointed hereunder shall execute an instrument accepting such appointment hereunder and shall

deliver counterparts thereof to the Bankruptcy Court.

6.2.14  **Conflicts of Interest.**  The Liquidating Trustee shall disclose to the Liquidating Trust Oversight Committee any connections, conflicts or potential conflicts of interest that the Liquidating Trustee and/or the firm by whom the Liquidating Trustee is employed, has with respect to the exercise of any rights, powers, duties and privileges under this Plan or the Liquidating Trust Agreement. In the event that the Liquidating Trustee cannot take any action by reason of an actual or potential conflict of interest, the Liquidating Trust Oversight Committee acting by majority shall be authorized to take any such action(s) in the Liquidating Trustee's place and stead, including without limitation the retention of Post-Confirmation Professionals (which may include Post-Confirmation Professionals retained by the Liquidating Trustee) for the purpose of taking such action.  Also, if any matter under consideration by the Liquidating Trust Oversight Committee appears to involve a conflict of interest with any member(s) serving on the Liquidating Trust Oversight Committee or any such member's professional firm or client in this matter, the member(s) with the conflicting interest shall:  (i) disclose to the Liquidating Trustee and the Liquidating Trust Oversight Committee the existence of any actual or potential conflict of which the member has knowledge; and (ii) abstain from participating in the discussion of and/or voting on the matter being considered by the Liquidating Trust Oversight Committee if a majority of the other members of the Liquidating Trust Oversight Committee determines such abstention is appropriate.

6.2.15  **Initial Appointment of the Liquidating Trustee.**  Michael I. Goldberg was selected by the Committee, after consultation with the United States Trustee, to be the Liquidating Trustee. The appointment of the Liquidating Trustee shall be ratified by the Confirmation Order and effective as of the Effective Date.

6.3     **Continuation of Automatic Stay.**  In furtherance of the implementation of this Plan, except as otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and shall apply to the Estate, the Assets, the Liquidating Trustee, the Liquidating Trust and the Trust Assets.

6.4     **Continuation of Bankruptcy Rule 2004 Rights.**  The Liquidating Trustee shall retain the same rights under Bankruptcy Rule 2004 and Local Rule 2004-1 of the Local Rules of the Bankruptcy Court as the Trustee had prior to the Effective Date.

6.5     **Wind-Down of Debtor.**  On the Effective Date, the Debtor will be deemed dissolved and shall cease to exist for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith.

6.5.1     From and after the Effective Date, the Debtor (i) for all purposes shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or was registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.  The Liquidating Trustee is authorized and directed to:  (1) take any action reasonably necessary to effectuate the wind down and dissolution of the Debtor in all respects without further corporate action under applicable law, regulation, order or rule required, including any action by the Debtor or the holders of the Debtor's Interests or the board of directors, as applicable; (2) file a certificate of dissolution for the Debtor, together with all other necessary corporate and company documents,

4999213-2

to effect the dissolution of the Debtor under applicable non-bankruptcy law without further corporate action required; (3) complete and file all of the Debtor's final or otherwise required federal, state and local tax returns, as applicable; (4) pursuant to Section 505(b) of the Bankruptcy Code, request an expedited determination for any of the Debtor, the Estate or the Liquidating Trust's unpaid tax liability regarding any tax incurred during the administration of this Chapter 11 Case, as determined under applicable law; (5) take such other actions as the Liquidating Trustee may determine to be necessary or desirable to carry out the purposes of this Plan; (6) comply with any regulatory requirements imposed on the Liquidating Trust under applicable law; (7) with the consent of the Liquidating Trust Oversight Committee, which consent will not be unreasonably withheld, cause the Liquidating Trust to abandon in any commercially reasonable manner any Trust Assets that the Liquidating Trustee determines are of no benefit, or are of *de minimis* value, to the Liquidating Trust ("**Abandoned Assets**"); (8) with the consent of the Liquidating Trust Oversight Committee and notwithstanding any applicable federal or state laws, destroy any books and records of the Debtor, including, but not limited to, personnel files of former employees and financial records; (9) preserve the Debtor's documents, as necessary, to pursue Litigation Claims and conduct the wind down of the Debtor, and to abandon or destroy documents, subject to consent by the Liquidating Trust Oversight Committee upon the Liquidating Trustee's determination that the documents are no longer necessary or beneficial to the Liquidating Trust; and (10) with the consent of the Liquidating Trust Oversight Committee, take any action he deems necessary and appropriate with respect to any employee benefit or 401(k) plan, including, but not limited to, performing any acts necessary or appropriate with respect to terminating such employee benefit or 401(k) plan.

6.5.2    Upon the Effective Date, the Trustee shall be required to cooperate with the Liquidating Trustee in order to implement the Settlement Agreement and this Plan, including, without limitation, providing the Liquidating Trustee prompt access to the books and records of the Estate, aiding the Liquidating Trustee in making payments required by Estate and/or the Liquidating Trust under the Plan, and aiding in the wind down of the Estate.

6.5.3    Except as required by Section 6.5.2 of this Plan, on or as soon as practicable after the Effective Date, the Trustee shall be discharged from his duties to the Estates, the creditors of the Estate, the Liquidating Trust, and its Beneficiaries; provided, however, the discharge of the Trustee shall not in any respect impair  his (i) entitlement to payment of the fees due to him or the enforcement of any rights he may have against  the Liquidating Trust, including his rights to indemnification or (ii) his legal rights and immunities under the Bankruptcy Code and applicable bankruptcy and non-bankruptcy law.

6.6    **Disposition of Abandoned Assets.**  The Liquidating Trustee shall have no further obligations with respect to any Abandoned Asset upon its abandonment.

6.7    **Closing of the Chapter 11 Case.**  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all Assets contributed to the Liquidating Trust have been liquidated and converted into Cash (other than the Abandoned Assets), and such Cash has been distributed in accordance with the Liquidating Trust Agreement and this Plan, and the Final Distribution made, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.  Upon the later to occur of the entry of a Final Order closing the Chapter 11 Case or the dissolution of the Liquidating Trust, the Liquidating

4999213-2

Trustee and the Liquidating Trust Oversight Committee and its members shall be discharged from their duties to the Liquidating Trust and its Beneficiaries as applicable.

6.8 **Dissolution of Committee.** On the Effective Date, the Committee shall be dissolved without any further order of the Bankruptcy Court. The Committee's members, Professionals, and agents shall be discharged from any further duties and responsibilities in regard to the Chapter 11 Case and the Liquidating Trust. Notwithstanding anything to the contrary herein, the dissolution of the Committee shall in no way act as a waiver of the Committee's attorney-client and work product privileges, which will expressly survive the dissolution of the Committee.

6.9 **Client Files**. Pursuant to the authority granted to the Trustee in the Client File Orders, the Trustee and the Liquidating Trustee, as applicable, shall be permitted to dispose of client files in accordance with the Client File Orders.

6.10 **Immediate Binding Effect.** Subject to Article 9 hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtor and the Liquidating Trust, as applicable, and any and all holders of Claims or Interests (regardless of whether such Claims or Interests are Allowed or the holders of such Claims have accepted or rejected the Plan), and all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan. All Claims and debts shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

6.11 **Additional Documents.** On or before the Effective Date, the Debtor may File with the Court such agreements and other documents as may be necessary or appropriate to

4999213-2

effectuate and further evidence the terms and conditions of the Plan or the Settlement

Agreement.  The Debtor, Trustee or Liquidating Trustee, as applicable, and all holders of Claims

or Interests receiving Distributions pursuant to the Plan and all other parties in interest shall,

from time to time, prepare, execute, and deliver any agreements or documents and take any other

actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

6.12    **[Intentionally Omitted].**

6.13    **Collateral Source Recovery Calculations.**

6.13.1  Except to the extent provided in Section 3.4(b), 3.7(b) or 3.8(b) of this

Plan, the amount of a Collateral Source Recovery shall be calculated for each applicable

Allowed Claim as:

**A.**    the sum of, without duplication:

1.    the gross amount of Cash and non-Cash assets received by, available to, received for the benefit of or applied to the indebtedness of the holder of an Allowed Claim (whether made directly or indirectly to such holder or any agent, attorney or third party associated with such holder), on account of or in any way related to such holder's loss directly or indirectly relating to the Debtor or Rothstein from all parties and sources, including, without limitation, any payments made to the holder of such Claim by TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action; and

2.    any amounts that would be required to be paid by or on behalf of the holder of an Allowed Claim to TD Bank related to the Debtor or Rothstein pursuant to any agreement between or on behalf of such holder and TD Bank including on account of the Distributions such holder would receive under this Plan.

**B.**    The amount calculated pursuant to Section 6.13.1(A) of this Plan shall exclude, without duplication:

1.    any Distributions to be made to the holder of such Claim under this Plan;

2.    any tax benefit from a theft loss deduction taken in accordance with the IRC, or other tax benefits received by a holder of a Claim, in either case as a result of losses in connection with the Ponzi scheme orchestrated or operated by Rothstein;

3.    any amounts paid by TD Bank that result in any claims or recoveries being assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8,

4999213-2

2013, unless TD Bank consents to these amounts being included in the calculation of a Collateral Source Recovery; and

        4.        any anticipated, but not yet received, Collateral Source Recoveries.

**C.**      The amount calculated pursuant to Section 6.13.1(A) and (B) of this Plan shall include interest only if and to the extent such interest would be recoverable or allowable as an Allowed Claim or as part of the Allowed Claim of such holder.

**D.**      No deduction or reduction from the amount of a Collateral Source Recovery on account of the fees, costs and other expenses incurred or paid in connection with its pursuit of any Collateral Source Recoveries, including, without limitation, attorney's fees and costs, is permissible.

6.13.2  The Liquidating Trustee shall not deduct or reserve from Distributions on account of any anticipated Collateral Source Recoveries.

6.13.3  In connection with the calculation of Collateral Source Recoveries, to the extent that the holder of a Claim assigned or assigns any Collateral Source Recoveries to another holder of a Claim, the assignor may notify the Liquidating Trustee of such assignment.  Subject to the Bankruptcy Court's approval, the Liquidating Trustee may, in his discretion, seek to reduce the assignee's Distribution by the amount of the Collateral Source Recovery assigned to such assignee and not reduce the assignor's Distribution.

6.14    **Collateral Source Recovery Remittance.**  Without the need of a further order of the Bankruptcy Court or a formal assignment and except to the extent that a settlement agreement approved in the Chapter 11 Case by Final Order of the Bankruptcy Court between the Estate and the holder of an Allowed Claim provides for differing treatment of Collateral Source Recoveries, the holder of an Allowed Claim shall be required to remit to the Liquidating Trust an amount of Cash equal to the value of all Collateral Source Recoveries it receives that were not disclosed as having been received on such holder's Verified Collateral Source Recovery Disclosure or did not then exist, including, without limitation, any applicable payments made to the holder of such Claim by TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld

4999213-2

Spritzer Shechter & Sheer, LLP or in the Forfeiture Action; provided, however that in no event shall the holder of an Allowed Claim be required to remit Cash to the Liquidating Trust in an amount that is greater than the sum of such holder's Distributions.  The holder of an Allowed Claim that has received a Distribution under the Plan shall fully cooperate with the Liquidating Trustee and execute any documents reasonably required by the Liquidating Trustee to evidence the obligation.

6.15    **Bar Order Hearing.**  Absent reconsideration of or relief from the Order (I) Denying, Without Prejudice, Approval of Amended Disclosure Statement and (II) Granting Bifurcation Motion [ECF No. 4292], the Bankruptcy Court shall hold the Bar Order Hearing after the approval of the Disclosure Statement, but prior to solicitation of acceptances or rejections of this Plan.  Should reconsideration of or relief from the Order (I) Denying, Without Prejudice, Approval of Amended Disclosure Statement and (II) Granting Bifurcation Motion [ECF No. 4292] be granted, the Bar Order Hearing shall be held in accordance with the relief granted with respect thereto.

6.16    **Certain Settlement Issues.**  Any settlement of (i) the Trustee's Motion to Reconsider the Order Allowing Claim of Ira Sochet Inter Vivos Revocable Trust, in addition to Objection to Claim of Ira Sochet Inter Vivos Revocable Trust [ECF No. 3603], or (ii) the Trustee's Motion to Reconsider Order Allowing Claim of Investors Risk Advantage, LP, in addition to Objection to Claim of Investors Risk Advantage, LP [ECF No. 3604], or (iii) the Sochet claims against the Estate, shall be acceptable in all respects to the Plan Proponents or the Liquidating Trustee, as applicable.

## ARTICLE 7

## POST-CONFIRMATION LITIGATION

7.1 **Transfer and Enforcement of Causes of Action**.  Pursuant to Section

1123(b)(3) of the Bankruptcy Code, except as otherwise provided in this Plan or the

Confirmation Order, after transfer of the Assets to the Liquidating Trust pursuant to the Plan, the

Litigation Claims shall vest in the Liquidating Trust and the Liquidating Trustee shall, subject to

the provisions of this Plan, the Settlement Agreement, and the Liquidating Trust Agreement,

have the exclusive right to enforce any and all Litigation Claims against any Entity and rights of

the Debtor that arose before or after the Petition Date, including, but not limited to, the rights and

powers of a trustee and debtor-in-possession, against any Entity whatsoever and shall be entitled

to all remedies available to the Trustee in the Chapter 11 Case.  Notwithstanding the foregoing,

in the event the Liquidating Trustee opts not to pursue a Litigation Claim, the Liquidating Trust

Oversight Committee may make a written demand upon the Liquidating Trustee that the

Liquidating Trustee pursue such Litigation Claim.  In the event the Liquidating Trustee refuses

to pursue such Litigation Claim, the Liquidating Trust Oversight Committee may File and serve

a motion in the Chapter 11 Case seeking authority to pursue such Litigation Claim on behalf of

the Liquidating Trust with the same rights possessed by the Liquidating Trustee.  On the

Effective Date, the Levin Claims shall unconditionally vest with TD Bank and TD Bank shall

have the exclusive right and standing to enforce any and all of the Levin Claims, including, but

not limited to, the rights and powers of a trustee and debtor-in-possession, and shall be entitled to

all remedies available to the Trustee in the Chapter 11 Case. Neither the Liquidating Trustee nor

the Liquidating Trust Oversight Committee shall have the power or authority to seek or consent

to allowance of a Claim in favor of any entity that is not, as of the Effective Date, either the

4999213-2

holder of an Allowed Claim or a Disputed Claim, except as expressly authorized by Section 502(h) of the Bankruptcy Code.

7.2    **Preservation of Rights.**  Except to the extent that any Claim is Allowed during the Chapter 11 Case or expressly by this Plan, nothing, including, but not limited to, the failure of the Trustee to object to a Claim or Interest for any reason during the pendency of the Chapter 11 case shall affect, prejudice, diminish, or impair the rights and legal and equitable defenses of the Liquidating Trustee to contest or defend against such Claims or Interests in any lawful manner or forum, including pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Section 502(j) of the Bankruptcy Code or Bankruptcy Rules 9023 or 9024, provided, however, that subsequent to the Effective Date, only the Liquidating Trustee shall have the right to seek reconsideration of a Claim Allowed in the Chapter 11 Case by a Final Order of the Bankruptcy Court under applicable law or procedure, including, but not limited to Rule 60(b) of the Federal Rules of Civil Procedure, Section 502(j) of the Bankruptcy Code and Bankruptcy Rules 9023 or 9024.

7.3    **Objections to Claims**.  Except as otherwise set forth in this Plan and the Liquidating Trust Agreement, from and after the Effective Date, the Liquidating Trustee shall have the sole authority to object to Claims pursuant to applicable procedures established by, or grounds set forth in the Bankruptcy Code, the Bankruptcy Rules, the Liquidating Trust Agreement, this Plan and the Claim Objection Procedures Order.  Any compromise of any Claim objection by the Liquidating Trustee shall be subject to approval by the Liquidating Trust Oversight Committee pursuant to this Plan, the Settlement Agreement and/or the Liquidating Trust Agreement; provided, however, that the Liquidating Trustee may seek Bankruptcy Court approval of any compromise or settlement of a Claim objection over the objection of the

4999213-2

Liquidating Trust Oversight Committee as provided in Section 6.2.8 of this Plan and the

Liquidating Trust Agreement.  Any such contested matter shall be governed by Bankruptcy

Rules 9014 and 9019, other applicable Bankruptcy Rules and applicable orders of the

Bankruptcy Court.  The deadline within which objections to Claims or Interests may be Filed

shall be the first Business Day that is 360 days after the Effective Date, subject to extension by

the Bankruptcy Court for cause shown; provided, however, that the Liquidating Trustee shall be

authorized to seek reconsideration of any order allowing a Claim pursuant to Rule 60(b) of the

Federal Rules of Civil Procedure, Section 502(j) of the Bankruptcy Code and Bankruptcy Rules

9023 or 9024, or as otherwise permitted by applicable law after such deadline.  Nothing

contained herein shall preclude the Liquidating Trustee from reducing Distributions to holders of

Allowed Claims under Section 3.4(b), 3.7(b) or 3.8(b), based upon their receipt of Collateral

Source Recoveries.  The TD Bank Junior Subordinated Claim shall not be subject to objection,

reconsideration, reduction, recharacterization, further subordination, impairment, disallowance or

reduction in Distribution on account of a Collateral Source Recovery or otherwise.

       7.4     **Disallowance of Late Claims**.  Except as provided herein, any and all Claims

submitted after the applicable Bar Date shall be deemed disallowed and expunged as of the

Effective Date without any further notice to or action, order, or approval of the Court, and

holders of such Claims may not receive any Distributions on account of any such Claim, unless

on or before the Effective Date, such late Claim has been deemed timely submitted by a Final

Order in the Chapter 11 Case.

       7.5     **Recovery of Distributions on Disallowed Claims.**  The Liquidating Trustee is

permitted, but shall not be required, to seek the repayment or disgorgement of any and all

Distributions made on account of any Claim that is or becomes Disallowed, including, but not

limited to, seeking the repayment of any Distribution that is required to be repaid by the recipient of the Distribution under Sections 3.3(b), 3.4(b), 3.7(b), and 3.8(b) of this Plan.

  7.6 **Equitable Defenses Not Assertable Against Liquidating Trust.**  No Person that is subject to a Litigation Claim or has had their Claim objected to or otherwise reconciled may assert a defense, equitable or otherwise, to such Litigation Claim based in whole or in part on TD Bank's potential recovery as a Beneficiary under the Liquidating Trust, or TD Bank's recovery on account of its Claims in the Chapter 11 Case.

## ARTICLE 8

## DISTRIBUTIONS

  8.1 **Delivery of Distributions in General.**  The Liquidating Trustee shall make Distributions solely to the holders of record of Allowed Claims without regard to any claim or interest asserted by any third party in such Distributions.  Distributions shall be made to the holders of Allowed Claims:  (a) at the addresses set forth in the proofs of Claim Filed by such holders; (b) at the addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Liquidating Trustee after the date on which any related proof of Claim was Filed; (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim or Interest if no proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address; or (d) the address reflected on the timely submitted Verified Collateral Source Recovery Disclosure delivered to the Liquidating Trustee pursuant to Sections 3.4(b), 3.7(b) or 3.8(b) of this Plan.  The Liquidating Trustee shall distribute at least annually to the Beneficiaries the net income of the Liquidating Trust, plus all net proceeds from the sale of assets, except that the Liquidating Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Trust Assets or to meet

claims and contingent liabilities (including Disputed Claims).  All full or partial payments made by the Trustee and received by the holder of a Claim before the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Liquidating Trustee pursuant to the Plan.

8.2    **Cash Payments.**  Except as otherwise provided in the Liquidating Trust Agreement or the Confirmation Order, Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

8.3    **Interest on Claims.**  Interest shall not accrue or be paid on Claims subsequent to the Petition Date, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.  To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

8.4    **No *de Minimis* Distributions.**  Other than in the Final Distribution, no payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim.

8.5    **Face Amount.**  Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article, the face

4999213-2

79

amount of a Disputed Claim means the amount set forth on the proof of Claim, unless no proof of Claim has been timely Filed or deemed Filed, in which case the face amount shall be zero.

       8.6    **Unclaimed and Undeliverable Distributions.**  As authorized by Local Rule 3011-1(C)(2), if the combined total of Unclaimed Property related to Allowed Claims under the Plan totals (i) $10,000 or more, the Unclaimed Property shall, subject to Section 8.4 ("No de Minimis Distributions") and other provisions of the Plan, be distributed by the Liquidating Trustee, at the time of Final Distribution Date, to the Beneficiaries in Class 2 and Class 3 until such Beneficiaries are paid in full on account of their Allowed Claims in Class 2 or Class 3 after application of Collateral Source Recoveries, if any, respectively, and, thereafter, distributed by the Liquidating Trustee to other Beneficiaries in the order of priority set forth in, and pursuant to the terms of, the Plan, or (ii) less than $10,000, the Unclaimed Property shall be donated to the Bankruptcy Bar Foundation, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent; provided that, pursuant to Section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed, and the holder or successor to such holder of any Claim Disallowed will be forever barred, expunged, estopped and enjoined from asserting any such Disallowed Claim in any manner against the Trustee, the Estate, the Liquidating Trust, the Liquidating Trustee, Trust Assets, or their respective property, notwithstanding any federal or state escheat laws to the contrary.

       8.7    **Interim Distributions.**  Unless otherwise provided in this Plan and as required by this Section 8.7, the Liquidating Trustee in his discretion may make Distributions to the Beneficiaries entitled thereto in accordance with Article 6 of the Liquidating Trust Agreement and this Plan.  The Liquidating Trustee shall make an interim Distribution of not less than 72.5%

4999213-2

of the Allowed amount of a Beneficiary's Claim to all Beneficiaries entitled thereto within thirty (30) days after the Effective Date in accordance with Article 6 of the Liquidating Trust Agreement; provided, however, that any such interim Distributions by the Liquidating Trustee shall be limited in amounts that, in the Liquidating Trustee's reasonable judgment, are designed to avoid the payment of excess Distributions to such Beneficiary; provided, further, however, that the Liquidating Trustee may seek authority from the Bankruptcy Court, after notice and a hearing, to reduce the percentage of the interim Distribution required by this Section 8.7 for good cause shown.  The Liquidating Trustee may rely on the amount of Collateral Source Recoveries disclosed on a Verified Collateral Source Recovery Disclosure as a Collateral Source Recovery that would reduce a creditor's Distribution for the purpose of making any reserve or Distribution, including any interim Distribution.

8.8    **Final Distribution.**  The Liquidating Trustee shall make a final Distribution in accordance with Article 6 of the Liquidating Trust Agreement.

8.9    **Disputed Claims Reserves.**  The Liquidating Trustee shall establish reserves for Disputed Claims in accordance with the terms of the Liquidating Trust Agreement.

8.10    **Compliance with Tax Requirements.**  In connection with the Plan and the Distributions made in accordance thereto, to the extent applicable, the Liquidating Trust shall comply with all tax withholding and reporting requirements imposed by any governmental unit, if any, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

4999213-2

8.11    **Certain Rights of Setoff.**  To the extent possible and in the Liquidating Trustee's discretion, the Liquidating Trustee will net amounts owed by a holder of an Allowed Claim to the Liquidating Trust against Distributions owed by the Liquidating Trust to the holder of any such Allowed Claim; provided that any such netting shall not be permissible if it would be detrimental to the Liquidating Trust.

**ARTICLE 9**

**CONDITIONS PRECEDENT**

9.1    **Conditions to Confirmation.**  As a condition to entry of the Confirmation Order:

9.1.1    The Disclosure Statement shall be in form and substance agreeable to TD Bank, the Plan Proponents and the Banyon Trustee;

9.1.2    The Disclosure Statement Approval Order shall be in form and substance agreeable to TD Bank, the Plan Proponents and the Banyon Trustee and the Disclosure Statement Approval Order shall have become a Final Order in the Chapter 11 Case;

9.1.3    The Plan shall be in form and substance agreeable to TD Bank, the Plan Proponents and the Banyon Trustee;

9.1.4    The Confirmation Order shall be in form and substance agreeable to TD Bank, the Plan Proponents and the Banyon Trustee;

9.1.5    The 9019 Motion shall be in form and substance satisfactory to TD Bank, the Plan Proponents and the Banyon Trustee; and

9.1.6    The 9019 Order shall be in form and substance agreeable to TD Bank, the Plan Proponents and the Banyon Trustee.

9.2    **Conditions to the Effective Date.**  The Plan shall not become effective and the Effective Date shall not occur unless and until:

4999213-2

9.2.1    The Bankruptcy Court shall have entered the Confirmation Order which, *inter alia*, confirms this Plan, ratifies the Committee's selection of the Liquidating Trustee and the Liquidating Trust Oversight Committee, and authorizes and directs the Trustee, the Committee, the Liquidating Trustee and the Estate to perform all of their obligations under the Settlement Agreement, and is in form and substance satisfactory to TD Bank, the Plan Proponents and the Banyon Trustee;

9.2.2    The Confirmation Order shall not have been stayed and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such Confirmation Order;

9.2.3    The executed and approved Settlement Agreement is in form and substance agreeable to TD Bank, the Plan Proponents and the Banyon Trustee;

9.2.4    The Bankruptcy Court shall have approved, in all respects, the Settlement Agreement;

9.2.5    The Bankruptcy Court shall have entered the 9019 Order which, *inter alia*, authorizes and directs the Banyon Trustee, the Trustee, the Committee, the Liquidating Trustee, the Banyon Bankruptcy Estates and the Estate to perform all of their obligations under the Settlement Agreement, and is in form and substance satisfactory to TD Bank, the Plan Proponents and the Banyon Trustee;

9.2.6    The 9019 Order shall not have been stayed and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such 9019 Order;

9.2.7    [Intentionally Omitted];

9.2.8    [Intentionally Omitted];

9.2.9    The Liquidating Trust Agreement is in form and substance satisfactory to TD Bank and the Plan Proponents;

9.2.10  The Liquidating Trust Agreement shall have been executed and delivered by the Liquidating Trustee and the Trustee;

9.2.11  Subject to Section 6.1.14 of this Plan, the Trustee on behalf of the Estate has transferred the Assets to the Liquidating Trust; **provided that** the Trustee shall not have any obligation to transfer the Assets to the Liquidating Trust unless and until all other conditions to effectiveness contained in this Section 9.2, except the condition set forth in Section 9.2.12 of this Plan, shall have been satisfied or waived in accordance with Section 9.4 of the Plan; and

9.2.12  TD Bank shall have made the TD Bank Contribution; **provided that** TD Bank shall not have any obligation to make the TD Bank Contribution unless and until all other conditions to effectiveness contained in this Section 9.2 shall have been satisfied or waived in accordance with Section 9.4 of the Plan.

9.2.13  All other documents, instruments and agreements, in form and substance satisfactory to TD Bank, the Plan Proponents, and the Banyon Trustee, provided for under this Plan or necessary to implement this Plan, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

9.3      **Termination of Plan for Failure To Become Effective.**  If the Effective Date shall not have occurred on or prior to July 31, 2013, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section are waived or extended in writing by each of TD Bank, the Plan Proponents and the Banyon Trustee.

9.4    **Waiver of Conditions.**  The Plan Proponents, the Banyon Trustee and TD Bank may collectively waive any or all of the conditions set forth in Sections 9.1 or 9.2 of this Plan. Any such waiver shall be in writing and signed by each of the Parties.

9.5    **Notice of Effective Date.**  As soon as reasonably practicable after the Effective Date**,** the Liquidating Trustee shall File with the Bankruptcy Court a "**Notice of Effective Date**" in a form reasonably acceptable to the Liquidating Trustee and TD Bank, which notice shall constitute appropriate and adequate notice that this Plan has become effective.  The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern Time, on the Effective Date specified in such filing.  A courtesy copy of the Notice of Effective Date may, but is not required to, be sent by first class mail, postage prepaid (or at the Liquidating Trustee's option, by courier or facsimile) to those Persons who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE 10

## EFFECT OF CONFIRMATION AND RELEASES

10.1    **Jurisdiction of Court.**  Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 11 of this Plan.

10.2    **Binding Effect.**  Except as otherwise provided in Section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtor and their respective successors and assigns,

whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan.

**10.3    Exculpation.  Except as otherwise specifically provided in the Plan, neither the Trustee, the Liquidating Trustee, the Liquidating Trust Oversight Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (only in their capacity as  members of the Official Committee of Unsecured Creditors  and not in their individual capacities (e.g., as a creditor)) nor any of each such foregoing party's employees, representatives, members, advisors, attorneys, financial advisors or agents or any of such parties' successors and assigns (as pertaining to such foregoing party in their foregoing capacities), shall have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under the Plan, except for their gross negligence, willful misconduct or actual fraud and in all respects shall be entitled to reasonably rely upon the advice of their respective Professionals or Post-Confirmation Professionals with respect to their duties and responsibilities (if any) under the Plan.**

**Except as otherwise specifically provided in the Plan, neither any holder of a Claim or Interest, regardless of whether each has Filed a proof of Claim or Interest in the**

Chapter 11 Case or other party in interest, nor any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Trustee, the Liquidating Trustee, the Liquidating Trust Oversight Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (only in their capacity as members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)) or any of such foregoing parties' employees, representatives, advisors, attorneys, financial advisors, or agents or such parties successors and assigns (as pertaining to such foregoing party in their foregoing capacities), for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under the Plan, except for such persons' gross negligence, willful misconduct, or actual fraud.

      10.4    **Injunction.  Except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold or may hold Claims, rights, causes of action, liabilities or any Interests based upon any act or omission, transaction or other activity of any kind or nature related to the Debtor or the Chapter 11 Case that occurred prior to the Effective Date, other than as expressly provided in this Plan or the Confirmation Order, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such entity has voted to accept the Plan, and any successors, assigns or representatives of such entities shall be precluded and permanently enjoined on and after the Effective Date from (a) the commencement or**

4999213-2

continuation in any manner of any Claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or Claim against any assets of the Debtor which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any claim, interest or any other right or claim against any assets of the Debtor which such Entities possessed or may possess prior to the Effective Date, (c) the creation, perfection or enforcement of any encumbrance or Lien of any kind with respect to any Claim, Interest or any other right or Claim against the Debtor or any assets of the Debtor which they possessed or may possess prior to the Effective Date, and (d) the assertion of any Claims that are released hereby.

      10.5    **Limitation of Liability.**  Except as expressly set forth in the Plan, following the Effective Date, neither the Trustee, the Liquidating Trustee, the Liquidating Trust Oversight Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (only in their capacity as members of the Official Committee of Unsecured Creditors  and not in their individual capacities (e.g., as a creditor)) nor any of such foregoing parties' employees, advisors, members, attorneys, professionals or agents (as pertaining to such foregoing party in their foregoing capacities), shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan or any contract, instrument, release or other agreement or document created in connection with the Plan, or the administration of this Plan or the property to be distributed under the Plan, except for gross negligence, willful misconduct or actual fraud.

4999213-2

10.6 **Release of TD Bank Releasees. Upon the occurrence of the Effective Date, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, except as expressly provided in this Plan or the Settlement Agreement, the RRA Releasors shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the TD Bank Releasees from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever (including Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which the RRA Releasors, or any of them, or anyone claiming through them, on their behalf or for their benefit may have or claim to have, now or in the future, against any TD Bank Releasee that are based upon, relate to, or arise out of, in connection with or pertain to (a)(i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors; (b) any act, fact, transaction, event, occurrence, statement or omission in connection with (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors; or (c) anything alleged in any complaint asserted by an RRA Releasor against a TD Bank Releasee, including, but not limited to, those alleged in**

the RRA Complaint, or that could have been alleged in any such complaint or other similar proceedings, including, without limitation, the Banyon Asserted Claims and Unknown Claims (collectively, the "Released Claims"); provided, however, the release in favor of the TD Bank Releasees described herein shall not (A) effect a release of any claim by the United States Government or any of its agencies or any state and local governmental authority whatsoever against the TD Bank Releasees, or (B) enjoin the United States Government or any of its agencies or any state and local governmental authority whatsoever from bringing any claim, suit, action or other proceedings against the TD Bank Releasees asserting any other liability, including without limitation any claim, suit or action arising under the IRC, securities laws, environmental laws or any criminal laws of the United States or any state or local jurisdiction.  Notwithstanding anything contained in this Section 10.6 or elsewhere in this Plan, or in the Settlement Agreement to the contrary, the foregoing is not intended to release, nor shall it have the effect of releasing, (x) TD Bank from the performance of its obligations in accordance with this Plan or the Settlement Agreement, including, without limitation, any claim, demand or cause of action relating to the payment of the TD Bank Contribution; or (y) any Released Claim held by TD Bank or its affiliates, including, but not limited to, the release of any Claim that would otherwise be a Released Claim by TD Bank or its affiliates against another TD Bank Releasee.

      10.7    Unknown Claims.  An "Unknown Claim" is any Released Claim that any RRA Releasor does not know or suspect to exist in his, her or its favor at the time of giving the release required by Section 10.6 of this Plan and 3.1 of the Settlement Agreement that if known by him, her or it, might have affected his, her or its settlement and release.  With respect to any and all Released Claims, each RRA Releasor shall expressly waive or be

deemed to have waived, and by operation of the Confirmation Order and the 9019 Order shall have waived the provisions, rights and benefits of California Civil Code § 1542 (to the extent it applies herein), which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

Each RRA Releasor expressly waives, and shall be deemed to have waived, and by operation of the Confirmation Order and the 9019 Order shall have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code § 1542.  The RRA Releasors may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but each RRA Releasor shall expressly have and shall be deemed to have, and by operation of the Confirmation Order and the 9019 Order shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery of existence of such different or additional facts.  Each RRA Releasor acknowledges and shall be deemed to have acknowledged, and by operation of the Confirmation Order and the 9019

Order shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

10.8    **TD Bank Releasee Injunction and Bar Order.  (A) Upon the occurrence of the Effective Date, the Confirmation Order and 9019 Order shall act as an injunction against each and every Entity, including, without limitation, the plaintiffs in regard to the lawsuits enumerated on Appendix 10.8 hereof, and each and every Entity is hereby permanently enjoined, barred and restrained from instituting, prosecuting, continuing, pursuing or litigating in any manner:**

1.  **any Released Claim; and**

2.  **any action, suit or proceeding against any TD Bank Releasee (except as against Emess Capital, L.L.C.), including, without limitation (in each case, whether pre-judgment or post-judgment) enforcing, levying, employing legal process, attaching, garnishing, sequestering, bringing proceedings supplementary to execution, collecting or otherwise recovering by any means or in any manner from any TD Bank Releasee based upon any liability or responsibility, or asserted or potential liability or responsibility, directly or indirectly, of any TD Bank Releasee to or for the benefit of any Entity arising from, in any way related to, based upon, arising in connection with or pertaining to:**

    **(a)(i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors;**

**(b) the Released Claims; and/or**

**(c) any other claims, acts, facts, transactions, events, occurrences, statements or omissions that are, could have been or may be alleged against the TD Bank Releasees, including, without limitation, those asserted in the RRA Complaint, the Banyon Asserted Claims and the Third Party Claims or in any other complaint, action, suit or proceeding brought or that might be brought by, through, on behalf of, or for the benefit of any Entity (whether arising under federal, state or foreign law and regardless of where asserted), including, without limitation, any Unknown Claims, that is in any way related to: (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors;**

**(B) Notwithstanding the foregoing subsection (A), Section 10.8:**

**1.      Shall not enjoin or bar any action or claim by TD Bank or its affiliates, including, but not limited to, the assertion of any claim that would otherwise be a Released Claim by TD Bank or its affiliates against another TD Bank Releasee;**

**2.      Shall not enjoin or bar any action or claim against TD Bank filed by Coquina Investments in the matter captioned *Coquina Investments v. Rothstein, et al.*, 10-cv-60786 (S.D. Fla.), including, but not limited to, the pending appeal and cross-appeal of the decisions and orders issued in the U.S. District Court for the Southern District of**

Florida (Miami Division) that is currently pending in the Court of Appeals docketed at case no. 12-11161, including any subsequent related appeal, review or remand;

       3.      Shall not (i) enjoin any claim by the United States Government or any of its agencies or any state and local governmental authority whatsoever against the TD Bank Releasees, or (ii) enjoin the United States Government or any of its agencies or any state and local governmental authority whatsoever from bringing any claim, suit, action or other proceedings against the TD Bank Releasees asserting any other liability, including without limitation any claim, suit or action arising under the IRC, securities laws, environmental laws or any criminal laws of the United States or any state or local jurisdiction;

       4.      Shall not enjoin or bar the prosecution of that certain *Plaintiffs' Amended Motion for Sanctions Against TD Bank, N.A.* dated as of December 10, 2012 currently pending in the Broward County Circuit Court before the Honorable Judge Jeffrey E. Streitfeld in the case captioned *Razorback Funding et al. v. Scott W. Rothstein, et al.,* Case No. 09-062943 (07); and

       5.      Shall not bar any claim or action which is not, or was not, within the subject matter jurisdiction of the Bankruptcy Court as determined by Final Order of the Bankruptcy Court or of the District Court (which Final Order may be entered after the Effective Date), including any claim or action that is an independent claim not permitted to be barred under controlling Eleventh Circuit precedent.

     10.9    **TD Bank Release.**  Upon the occurrence of the Effective Date, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, except as expressly provided in this Plan or in

the Settlement Agreement, TD Bank shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Estate, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (only in their capacity as members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustee and any Professionals retained by the Estate by Final Order of the Bankruptcy Court in the Chapter 11 Case on or before May 8, 2013, from any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which TD Bank, or anyone claiming through it, on its behalf or for its benefit, may have or claim to have, now or in the future, against the Estate, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (but only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustee and any Professionals retained in the Chapter 11 Case by the Estate by Final Order of the Bankruptcy Court on or before May 8, 2013 that are based upon, relate to, or arise out of, in connection with or pertain to (a) (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the

Banyon Releasors, or (b) any act, fact, transaction, event, occurrence, statement or omission in connection with (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors, or (c) anything alleged in the RRA Complaint or that could have been alleged in the RRA Complaint or other similar proceedings. Notwithstanding anything contained in this Section 10.9, elsewhere in this Plan or in the Settlement Agreement to the contrary, the foregoing is not intended to release, nor shall it have the effect of releasing, (x) the Estate, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (but only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustee and any Professionals retained by the Estate, or the Liquidating Trustee from the performance of their respective obligations in accordance with this Plan or the Settlement Agreement, or (y) the Estate, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case as of the Confirmation Date (but only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustee and any Professionals retained by the Estate, or the Liquidating Trustee from making any Distribution to TD Bank on account of (A) the TD Bank Junior Subordinated Claims, or (B) on any Claim or recovery assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8, 2013.

## ARTICLE 11

## RETENTION OF JURISDICTION

11.1     **Ongoing Bankruptcy Court Jurisdiction.**  Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and the disbursement, turning over and/or transfer of the Assets to the Liquidating Trust, the Bankruptcy Court shall have exclusive jurisdiction over the Chapter 11 Case after the Effective Date, including but not limited to jurisdiction to, among other things:

11.1.1  Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to Section 510 of the Bankruptcy Code, any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim, request for attorneys' fees and costs, and the resolution of any and all objections to the allowance or priority of all Claims and Interests, including the resolution of the reconsideration, recharacterization, subordination, impairment, reduction or disallowance of a Claim, or the reconsideration of the allowance of any Claim pursuant to Section 502(j) of the Bankruptcy Code or Bankruptcy Rules 9023 or 9024;

11.1.2  Hear and determine any and all causes of action and rights of the Debtor that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, Section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Liquidating Trustee or other appropriate party in interest, including any designee or successor, against any Person whatsoever, on account of any and all Litigation Claims defined herein (including, but not limited to, all avoidance powers granted to the Debtor under the Bankruptcy Code and all causes of action and remedies granted pursuant to Sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and

all non-avoidance actions owned by the Estate including, but not limited to, claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state's law, Federal law or otherwise); provided, however, that notwithstanding anything in this Section 11.1.2 or the Plan to the contrary, the Plan shall incorporate the stipulation and order relating to the insurance policy issued to Gibraltar Bank & Trust Company by National Union Fire Insurance Company of Pittsburgh, PA (Policy No. 01-232-51-05) and the insurance policy issued by Twin City Fire Insurance Company to Gibraltar Bank & Trust Company (Policy No. 00 DA 0259335-09) (together, the "**Policies**"), and any actions relating to the Policies shall be filed and litigated exclusively in the District Court. The stipulation and order are attached to this Plan as Appendix 11.1.2;

11.1.3   Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract to which the Debtor is a party or with respect to which the Debtor may be liable, including without limitation the determination of whether such contract is executory for the purposes of Section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

11.1.4   Enter orders as necessary to facilitate the Liquidating Trust's post-Confirmation sale or other disposition of Trust Assets;

11.1.5   Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and the Liquidating Trust Agreement;

11.1.6   Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Trustee or the Bankruptcy Estate  that may be pending in the Chapter 11 Case on the Effective Date;

11.1.7  Decide or resolve any disputes regarding the assignment, ownership of Claims, and remission to the Liquidating Trust of Collateral Source Recoveries;

11.1.8  Decide or resolve any disputes regarding a party's entitlement to a Distribution from the Liquidating Trust, including application of Collateral Source Recoveries to reduce Distributions on account of Allowed Claims;

11.1.9  Hear and determine matters concerning state, local or federal taxes in accordance with Sections 346, 505 or 1146 of the Bankruptcy Code;

11.1.10  Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreement, the Plan and the Confirmation Order;

11.1.11  Resolve any disputes relating to objections to monthly fee invoices for submitted by the Liquidating Trustee, Liquidating Trust Oversight Committee or their Post-Confirmation Professionals;

11.1.12  Hear and determine any matters concerning the enforcement of the provisions of Article 10 of this Plan and any other exculpations, limitations of liability or injunctions contemplated by the Plan;

11.1.13   Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order;

11.1.14  Permit the Plan Proponents, to the extent authorized pursuant to Section 1127 of the Bankruptcy Code and with the consent of TD Bank, to modify the Plan or any agreement or document created in connection with the Plan or remedy any defect or omission or

reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

11.1.15  Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order and the Distributions thereunder;

11.1.16  Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

11.1.17  Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or Distributions pursuant to the Liquidating Trust Agreement or the Plan are enjoined or stayed;

11.1.18  Determine any other matters that may arise in connection with or relating to the Plan or any settlement or compromise approved by prior order the Bankruptcy Court;

11.1.19  Order the imposition of a bar order in favor of any Entity entering into a compromise of a Litigation Claim with the Liquidating Trustee with identical scope, breadth and reach as that provided in connection with prior settlement agreements approved in the Confirmation Order or  in the Chapter 11 Case as may be necessary;

11.1.20  Decide or resolve any disputes regarding Distributions, including, but not limited to, any disputes between a Beneficiary and its counsel regarding the fees and costs of such counsel;

11.1.21  Enter any orders in aid of prior orders of the Bankruptcy Court; and

11.1.22  Enter a final decree closing the Chapter 11 Case.

## ARTICLE 12

## ACCEPTANCE OR REJECTION OF THIS PLAN

12.1    **Persons Entitled to Vote.**  Classes 2, 3, 4, 5, 6, 7, 8, and 9 are Impaired.  The

Plan Proponents shall solicit votes from the holders of Claims in Classes 2, 3, 4, 5, 6, and 7.

Class 1 and Class 8 are deemed to accept the Plan.  Class 9, Interest holders, shall be deemed to

have rejected the Plan and the Plan Proponents shall not solicit their vote on the Plan.

12.2    **Acceptance by Impaired Classes.**  An Impaired Class of Claims shall have

accepted the Plan if (i) the holders (other than any holder designated under Section 1126(e) of

the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in

such Class have voted to accept the Plan and (ii) the holders (other than any holder designated

under Section 1126(e) of the Bankruptcy Code) of at least one-half in number of the Allowed

Claims actually voting in such Class have voted to accept the Plan.

12.3    **Cramdown.**  If any impaired Class of Claims or Interests shall fail to accept the

Plan in accordance with Section 1129(a) of the Bankruptcy Code, then the Plan Proponents

reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with

Section 1129(b) of the Bankruptcy Code.

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1    **Modification of this Plan.**  Subject to the restrictions on Plan modifications set

forth in Section 1127 of the Bankruptcy Code, the Plan Proponents reserve the right to alter,

amend or modify the Plan before its substantial consummation; provided that, such alteration,

amendment or modification to the Plan shall be acceptable to TD Bank.

4999213-2

13.2    **Revocation of this Plan.**  The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Plan Proponents revoke or withdraw the Plan, or if Confirmation does not occur or if the Plan does not become effective in accordance with Article 9, then this Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (b) constitute an admission of any fact or legal conclusion by the Debtor or any other Entity; or (c) prejudice in any manner the rights of any of the Plan Proponents in any further proceedings involving the Estate.

13.3    **Governing Law.**  Unless a rule of law or procedure is supplied by (i) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

13.4    **No Admissions.**  If Confirmation or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by any of the Plan Proponents or any other party with respect to any matter set forth therein or herein including, without limitation, liability on any Claim or the propriety of any Claims classification.

13.5    **Pre-Confirmation Modification.**  If, at the Confirmation Hearing, any term or provision of this Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Plan Proponents, the Banyon Trustee, and TD Bank, the Bankruptcy Court shall have the power to alter and interpret

4999213-2

102

such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted; provided, however, that such provision as altered or interpreted must  be acceptable in form and substance to each of the Plan Proponents, the Banyon Trustee, and TD Bank.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

     13.6    **Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

     13.7    **Exemption from Certain Transfer Taxes.**  Pursuant to Section 1146(a) of Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan, including the transfer of the Assets to the Liquidating Trust, may not be taxed under any law imposing a stamp tax, use tax, sales tax or similar tax. Any sale of any Asset occurring on or after or upon the Effective Date shall be deemed to be in furtherance of this Plan.

     13.8    **Exemption from Securities Laws**.  To the maximum extent provided by Section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of the interests in the Liquidating Trust will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

4999213-2

13.9     **Preservation of Rights of Setoffs.**  The Liquidating Trustee may, in his sole discretion, but shall not be required to, set off against any Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Estate or the Liquidating Trust may have against the holder of such Claim; however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Estate or the Liquidating Trust may have against such holder.

13.10    **No Injunctive Relief.**  Except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable, or other prospective relief.

13.11    **Non Business Day.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.12    **Entire Agreement.**  This Plan, the Settlement Agreement, and their exhibits and appendices (together with the Liquidating Trust Agreement, and the exhibits and schedules thereto) set forth the entire agreement and undertaking relating to the subject matter hereof and supersedes all prior discussions and documents, as modified by the Confirmation Order.  The Estate shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein.

13.13    **Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by electronic mail and either (a) certified mail, return receipt requested,

4999213-2

postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to

be addressed as follows:

If to the Trustee, to:

Herbert Stettin
4000 Ponce de Leon Boulevard
Suite 570
Coral Gables, FL  33146
Tel: (305) 374-3353
Fax: (305) 374-7632
Email c/o:  singerman@bergersingerman.com

and

Herbert Stettin
5401 Hammock Drive
Coral Gables, FL  33156

with a copy to:

Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131
Attn: Paul Steven Singerman
Telephone: (305) 714-4343
Facsimile: (305) 714-4340
Email: singerman@bergersingerman.com

and

John H. Genovese
Genovese Joblove & Battista, P.A.
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 372-2462
Facsimile: (305) 428-8802
Email: jgenovese@gjb-law.com

If to the Committee, to:

Michael I. Goldberg
Akerman Senterfitt
350 E. Las Olas Blvd., Suite 1600

Ft. Lauderdale, FL 33301
Telephone: 954-463-2700
Facsimile: 954-463-2224
michael.goldberg@akerman.com

If to the Banyon Trustee, to:

Robert C. Furr, Trustee
Furr and Cohen, P.A.
2255 Glades Rd. Suite 337w
Boca Raton, FL  33431
Telephone: (561) 395-0500
Facsimile:  561-338-7532
Email: rfurr@furrcohen.com

with copy to:

Russell Blain
Stichter, Riedel, Blain & Prosser, P.A.
110 East Madison Street
Suite 200
Tampa, FL 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email:  rblain@srbp.com

If to TD Bank, to:

TD Bank, N.A.
Legal Department
1701 Route 70 East
Cherry Hill, NJ 08034
Attn: Craig Baldauf
Telephone: (856) 874-2455
Facsimile:  (856) 874-2423
E-mail: craig.baldauf@td.com

with a copy to:

Dion W. Hayes
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Telephone: (804) 775-1144
Facsimile:  (804) 698-2078

4999213-2

106

Email:  dhayes@mcguirewoods.com

If to the Liquidating Trustee, to the address and e-mail address identified on the notice identifying the Liquidating Trustee or his successor, filed with the Bankruptcy Court.

If to the members of the Liquidating Trust Oversight Committee, to the addresses and e-mail addresses identified on the notice identifying the members of the Liquidating Trust Oversight Committee or a member's successor, filed with the Bankruptcy Court.

[Signatures to Follow]

4999213-2

107

Dated:  May 29, 2013

Respectfully Submitted

/s/ Herbert Stettin
By:  Herbert Stettin, Chapter 11 Trustee of RRA

**BERGER SINGERMAN LLP**
1450 Brickell Avenue
Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:    /s/ Paul Steven Singerman
    Paul Steven Singerman
    Florida Bar No. 378860
    singerman@bergersingerman.com
    Jordi Guso
    Florida Bar No. 0863580
    jguso@bergersingerman.com
    Christopher A. Jarvinen
    Florida Bar No. 0021745
    cjarvinen@bergersingerman.com
    Isaac M. Marcushamer
    Florida Bar No. 60373
    imarcushamer@bergersingerman.com

***Counsel for Herbert Stettin, Chapter 11 Trustee***

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Miami Tower
100 S.E. Second Street, Suite 4400
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By: /s/ John H. Genovese
    John H. Genovese
    Florida Bar No. 280852
    jgenovese@gjb-law.com
    Jesus M. Suarez
    Florida Bar No. 60086
    jsuarez@gjb-law.com

***Special Counsel/Conflicts Counsel for Herbert Stettin, Chapter 11 Trustee***

4999213-2

Dated:  May 29, 2013

Respectfully Submitted

/s/ John Mullin
By: John Mullin (counsel for Edward Morse, Committee Chairman)
The Official Committee of Unsecured Creditors

**AKERMAN SENTERFITT**
350 E. Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Telephone: 954-463-2700
Facsimile: 954-463-2224

By:  /s/ Michael I. Goldberg
Michael I. Goldberg
Florida Bar No. 886602
michael.goldberg@akerman.com

***Counsel for the Official Committee of Unsecured Creditors***

Appendix 1.82

<u>Liquidating Trust Agreement</u>

## ROTHSTEIN ROSENFELDT ADLER, P.A.
## LIQUIDATING TRUST AGREEMENT

THIS LIQUIDATING TRUST AGREEMENT dated as of this ____ day of _____ 2013, is entered into by and among Herbert Stettin, as chapter 11 trustee (the "Trustee") for the estate of Rothstein Rosenfeldt Adler, P.A. ("RRA" or "Debtor") in the Chapter 11 bankruptcy case, assigned Case No. 09-34791-BKC-RBR (the "Chapter 11 Case"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), and Michael I. Goldberg, the liquidating trustee (the "Liquidating Trustee") appointed under and pursuant to the Plan (as defined herein).

### W I T N E S S E T H :

WHEREAS, by order dated _____, 2013 (the "Confirmation Order"), the Bankruptcy Court confirmed the Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (the "Plan")[1] proposed pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, the Plan provides for the incorporation of that certain settlement agreement between the Debtor, the Trustee, the Banyon Trustee,the Banyon Bankruptcy Estates, and TD Bank, N.A., dated as of _____ __, 2013 (the "Settlement Agreement"); and

WHEREAS, the Plan and Settlement Agreement provide for the creation of an irrevocable trust for the benefit of the Beneficiaries (as defined herein) under and pursuant to the terms of the Plan; and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed such term in the Plan.

**WHEREAS**, the Plan and Settlement Agreement further provide for the creation of the Banyon Unsecured Creditor Fund in the amount calculated pursuant to the provisions of the Plan; and

**WHEREAS**, this Liquidating Trust Agreement is executed by the parties hereto in order to establish a trust, which trust is to be known as "The RRA Liquidating Trust" (the "Liquidating Trust") in accordance with Treasury Regulation ("Treas. Reg") § 301.7701-4(d), whose sole purpose is to facilitate the implementation of the Plan and the Settlement Agreement and not to otherwise engage in the conduct of an active trade or business; and

**WHEREAS**, the corpus of the Liquidating Trust and all income earned thereon remaining after the satisfaction of all expenses and liabilities of the Liquidating Trust shall be used solely for the purpose of discharging the legal obligations of the Debtor and the Liquidating Trust pursuant to the Plan and the Settlement Agreement; and

**WHEREAS**, the parties to this Liquidating Trust Agreement desire that the Liquidating Trust created pursuant to this Liquidating Trust Agreement qualify as a liquidating trust in accordance with Treas. Reg. § 301.7701-4(d), and that on qualification, the Liquidating Trust shall be taxed as a grantor trust in favor of the Beneficiaries under and in accordance with the relevant provisions of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code" or "IRC") and the Treasury Regulations pertaining thereto.

**NOW, THEREFORE**, in consideration of the premises and for such other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions of this Liquidating Trust Agreement, the Settlement Agreement and the Plan, the Trustee and the Liquidating Trustee have executed this Liquidating Trust Agreement for the sole benefit of the Beneficiaries and no other party as follows:

## ARTICLE 1
## GRANT, ACCEPTANCE, NAME AND DEFINITIONS

1.1    **Grant.**

(i)    The Trustee, on behalf of the Debtor and the Debtor's Estate, hereby grants, assigns, transfers, disburses, turns over, conveys, delivers, delegates and sets over unto the Liquidating Trustee the Trust Assets (as defined herein) in trust for the benefit of the Beneficiaries and subject to the terms and provisions set out below, in the Plan and the Settlement Agreement.   Additionally, subject to the terms hereof, the Plan and Settlement Agreement, the Trustee hereby irrevocably (a) grants, assigns, transfers, disburses, turns over, conveys, delivers, delegates and sets over unto the Liquidating Trustee all of the authority, rights, powers and duties previously vested in the Debtor under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the power to contest, defend or settle all claims, charges and litigation to which the Debtor, the Trustee or the Liquidating Trustee is or hereafter may become subject, and (b) designates the Liquidating Trust as the representative of the Debtor's Estate for all purposes under Section 1123(b)(3)(B) of the Bankruptcy Code.   To the extent that any law, regulation or contractual provision prohibits the transfer of ownership of any of the Trust Assets from the Debtor, the Debtor's Estate or the Trustee to the Liquidating Trust or the Liquidating Trustee, or if for any reason the Trustee shall retain or receive at any point any property which is included in or intended under the Plan, the Settlement Agreement and this Trust Agreement to be included in the definition of Trust Assets, then the Trustee shall and is hereby deemed to hold such property (and any proceeds or products thereof) in trust for the Beneficiaries of the Liquidating Trust and shall promptly notify the Liquidating Trustee of the existence of such property and shall promptly take such actions with respect to such property as the Liquidating Trustee shall direct in writing.   It is intended that the Trust Assets transferred

pursuant to this paragraph shall provide the Beneficiaries with distributions on account of their Allowed Claims pursuant to and in accordance with the Plan and the Settlement Agreement.

(ii)     This transfer will be treated for federal income tax purposes as a deemed transfer by the Debtor to the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Trust, in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684.  The taxation of the deemed transfers from the Debtor to the Beneficiaries and from the Beneficiaries to the Liquidating Trust will be guided by provisions of IRC §§61(a)(12), 483, 1001, 1012 and 1274.

(iii)     The Liquidating Trustee hereby accepts the Trust Assets and the Liquidating Trust created hereunder, subject to the terms and provisions set out below, in the Plan and in the Settlement Agreement, on behalf of and for the benefit of the Beneficiaries.

1.2     **Name.**  The trust created pursuant to the terms hereof shall be known as "The RRA Liquidating Trust" and shall be referred to herein as the "Liquidating Trust."

1.3     **Certain Terms Defined.**   For all purposes of this Trust Agreement, the capitalized terms used herein shall have the following meanings:

1.3.1   "Beneficiaries" shall mean the holders of Allowed Claims as defined in and provided for in the Plan.

1.3.2   "Disputed Claim Reserve" shall mean Cash in an amount determined by the Liquidating Trustee in his reasonable discretion as sufficient to pay any Disputed Claims that are Administrative Expense Claims, Priority Non-Tax Claims, Priority Tax Claims, and Claims in Classes 2 – 5 of the Plan.  To the extent that there are adequate Trust Assets remaining after paying the Full Amount of all Allowed Claims in Classes 2-5 and establishing the Disputed Claims Reserve sufficient to pay the Full Amount of all Disputed Claims in Classes 2 – 5, in Cash, as deemed sufficient by the Liquidating Trustee after consultation with the Liquidating

Trust Oversight Committee, the Liquidating Trustee shall establish a Disputed Claims Reserve for the Class 6 Claim under the Plan. To the extent that there are adequate Trust Assets remaining after paying the Full Amount of the Claim in Class 6 (or reservation sufficient to pay the Full Amount of such Claim), the Liquidating Trustee shall use any additional Trust Assets to establish a Disputed Claims Reserve for the Class 7 Claims under the Plan and fund such Disputed Claims Reserve with any Trust Assets in excess of those used or reserved to pay the Full Amount of the Class 6 Claim. Upon the payment of the Full Amount of the Claims in Class 7 (or reservation sufficient to pay the Full Amount of such Claim), the Liquidating Trustee shall use any additional Trust Assets to establish a Disputed Claims Reserve for the Class 8 Claim under the Plan and fund such Disputed Claims Reserve with any Trust Assets in excess of those used or reserved to pay the Full Amount of all Class 7 Claims. Any amounts reserved for Disputed Claims that are not ultimately paid on account of such Disputed Claims shall be used by the Liquidating Trust for distribution to Beneficiaries or to fund Disputed Claims Reserves in accordance with the Plan.

      1.3.3    "Liquidating Trust" shall have the meaning set forth in Section 1.2 hereof.

      1.3.4    "Liquidating Trustee" shall mean Michael I. Goldberg.

      1.3.5    "Post-Confirmation Administrative Reserve" shall mean Cash in an amount estimated by the Liquidating Trustee to be sufficient as an adequate reserve for the projected fees and expenses of the Liquidating Trustee necessary to carry out the provisions of the Plan and the Settlement Agreement, including, without limitation, the payment of post-confirmation fees due the United States Trustee, fees and expenses of the Post-Confirmation Professionals retained by the Liquidating Trust and the Liquidating Trust Oversight Committee, and costs and expenses incurred by the Liquidating Trustee in connection with the prosecution of

(a) objections to the allowance of any Claims, and (b) Litigation Claims.

      1.3.6  "Reserves" shall mean the Disputed Claim Reserves and the Post-Confirmation Administrative Reserve, collectively.

      1.3.7  "Trustee's Certificate" shall mean the certificate filed by the Liquidating Trustee with the Bankruptcy Court on the Effective Date, or as soon thereafter as is practicable, identifying the initial corpus of the Trust.

      1.3.8  "Trust Agreement" shall mean this Liquidating Trust Agreement as originally executed or as it may from time to time be amended pursuant to the terms hereof.

      1.3.9  "Trust Assets" shall mean all of the Debtor's and the Debtor's Estate's rights, title and interest in and to Assets including, without limitation, all Litigation Claims, the rights of the Estate under the Settlement Agreement, the rights of the Estate under any other settlement agreements approved by the Bankruptcy Court prior to the Effective Date, and the TD Bank Contribution, plus any and all interest or other net income earned on the foregoing.  The Trust Assets shall not include any Assets paid out, distributed or otherwise disposed of by the Liquidating Trustee in accordance with this Trust Agreement and the Plan after the date of any such payment, distribution or disposition except as provided in the Plan; provided that the Levin Claims shall not be Trust Assets; provided further, however, any Distribution made by the Trustee prior to the Effective Date shall not be a Trust Asset.

**ARTICLE 2**
**NATURE OF TRANSFER**

      2.1  **Purpose of Liquidating Trust.**  The Liquidating Trust is created solely to implement the terms of the Plan and the Settlement Agreement.  The purposes of the Liquidating Trust are to manage, conserve and protect the value of the Trust Assets for the benefit of the Beneficiaries, including, but not limited to collecting and liquidating the Trust Assets, filing

objections to Claims asserted against the Debtor or the Debtor's Estates and otherwise bring appropriate proceedings to resolve the same through compromise or litigation, pursuing those claims and causes of actions vested in the Trust, and distributing to the Beneficiaries all proceeds from the liquidation of the Trust Assets pursuant to the terms of the Plan, including, without limitation, in accordance with the priority of payment established pursuant to the Plan, and the Settlement Agreement.  Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein, in the Plan, in the Settlement Agreement or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Trust Assets.

2.2    **Grantor Trust.**    The Liquidating Trust created by this Trust Agreement is intended:  (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d) of the United States Treasury Regulations; (ii) as a grantor trust in favor of the Beneficiaries pursuant to Treas. Reg. § 1.671-4(a), and (iii) to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

2.3    **Liabilities of the Debtor.**    The Liquidating Trustee, solely for and on behalf of the Liquidating Trust, shall utilize all or such part of the Trust Assets as may be necessary to, and shall pay any and all Allowed Claims in accordance with and pursuant to the terms of the Plan and the Settlement Agreement.

2.4    **Representative of the Debtor.**    The Liquidating Trustee, in accordance with the Plan, for the purpose of exercising or carrying out his duties herein, shall be deemed to be a "representative" of the Debtor's Estate within the meaning of 11 U.S.C. § 1123(b)(3).

2.5    **Court Approval Not Required.**    The Liquidating Trustee shall, subject to the

terms of this Trust Agreement, the Plan and the Settlement Agreement, be empowered to exercise all rights and powers granted to the Liquidating Trustee in this Trust Agreement without need of further Bankruptcy Court approval.

## ARTICLE 3
## BENEFICIARIES

3.1 **Rights of Beneficiaries.** Each Beneficiary shall be entitled to participate in the rights and benefits due to a Beneficiary hereunder. The interest of each Beneficiary in the Liquidating Trust is hereby declared and shall be in all respects personal property of such Beneficiary and upon the death of an individual Beneficiary his or her interest shall pass to his or her legal representative and such death shall not terminate the Liquidating Trust or otherwise affect the validity of this Trust Agreement. Each Beneficiary shall have the rights with respect to the Liquidating Trust as are provided by this Trust Agreement, the Plan and the Settlement Agreement. No widower, widow, heir, or devisee of any person who may be a Beneficiary shall have any right of power, homestead, inheritance, or of partition, or any other right, statutory or otherwise, in any property whatever forming a part of the Trust Assets, but the whole title to all the Trust Assets shall be vested in the Liquidating Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such persons under the Plan, the Settlement Agreement and this Trust Agreement.

3.2 **Transfer of Interests of Beneficiaries.** No interest of a Beneficiary may be transferred either by the Beneficiary or by a duly authorized agent or attorney, or by the properly appointed legal representatives of the Beneficiary except as otherwise provided for by the Plan and in accordance with Bankruptcy Rule 3001. In the event of any such transfer, the transferee shall take and hold such interest subject to the terms and provisions of this Trust Agreement and shall give prompt written notice of such transfer to the Liquidating Trustee. The Liquidating

Trustee shall not be liable to any transferee of an interest of a Beneficiary for any distributions provided for hereunder unless such transfer is valid under the terms of the Plan and in accordance with Bankruptcy Rule 3001 and until the Liquidating Trustee receives written notice of such transfer together with appropriate assignment and transfer documents signed by the applicable Beneficiary.

3.3     **Beneficiary Information.**  The Liquidating Trustee may rely upon information relating to each Beneficiary as it appears in records of the Bankruptcy Court.  Upon receipt by the Liquidating Trustee of appropriate assignment or transfer documents signed by a Beneficiary or his or her duly appointed representative and duly filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3001, the Liquidating Trustee shall record such assignment or transfer on the books and records of the Liquidating Trust and shall treat such transferee as a Beneficiary for all purposes hereunder in accordance with such assignment or transfer from and after the date the Liquidating Trustee receives such notice.  Thereafter, the Liquidating Trustee shall have no further liability or obligations to the transferor Beneficiary hereunder.

3.4     **Certification of Interests**.  The Liquidating Trustee shall not be required to issue certificates or other instruments representing or evidencing the interests of the Beneficiaries in the Liquidating Trust, but nothing contained herein shall prohibit him from doing so.

## ARTICLE 4
## DURATION OF TRUST ESTATE

4.1     **Duration.**  The Liquidating Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred:  (a) the entirety of the Trust Assets has been reduced to Cash or the Liquidating Trustee has determined that it is impractical or not in the best interests of the Beneficiaries of the Liquidating Trust to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged;

(c) the Trust Assets have been distributed to the Beneficiaries in accordance with the Plan; and

(d) a Final Report has been filed with the Bankruptcy Court and a final decree closing the Chapter 11 Case has been entered; provided, however, subject to the provisions in the immediately succeeding sentence, the Liquidating Trust shall not remain in existence more than five years after the date of this Trust Agreement.  If warranted by the facts and circumstances provided for in the Plan or the Settlement Agreement, and subject to the approval of the Bankruptcy Court, upon a finding that an extension is necessary to fulfill the purpose of this Liquidating Trust, the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances.  Each extension must be approved by the Bankruptcy Court within six months prior to the beginning of the extended term after notice and opportunity for hearing to all Beneficiaries.

## ARTICLE 5
## ADMINISTRATION OF LIQUIDATING TRUST ESTATE

5.1    **Rights and Powers.**  The Liquidating Trustee shall have all rights and powers of a trustee under sections 1106 and 704 of the Bankruptcy Code and, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code, shall be designated and serve as the sole representative of the Debtor's Estate.

5.2    **Sale of Trust Asset.**  The Liquidating Trustee may, subject to the terms of this Trust Agreement, the Plan, the Settlement Agreement, and the Confirmation Order, at such times and in such manner as he may deem appropriate, transfer, assign, or otherwise dispose of all or any part of the Trust Assets (collectively, "Asset Dispositions") without seeking Bankruptcy Court approval; provided, however, that any such Asset Disposition that exceeds $1,000,000 with respect to Trust Assets shall be subject to the consent of the Liquidating Trust Oversight Committee or the approval by the Bankruptcy Court, upon notice to the Beneficiaries or to such

lesser list of parties ordered by the Bankruptcy Court.

5.3 **Payment of Interest to Beneficiaries.**  The Liquidating Trustee shall hold the Trust Assets without provision for, or the payment of, interest, costs, fees or charges to any Beneficiary.

5.4 **Payment of Claims, Expenses and Liabilities and the Reserve Amounts.**  The Liquidating Trustee shall pay from the Trust Assets all claims, expenses, charges, liabilities, and obligations of the Trust Assets, whether civil or otherwise, and all liabilities and obligations which the Liquidating Trustee, on behalf of the Liquidating Trust, has specifically assumed and agreed to pay pursuant to Article 2 of this Trust Agreement, together with such transferee liabilities which the Liquidating Trust may be obligated to pay as transferee of the Trust Assets, including among the foregoing, and without limiting the generality of the foregoing, interest, taxes, assessments, and public charges of every kind and nature and the costs, charges, and expenses connected with or growing out of the execution or administration of the Liquidating Trust, including, without limitation, the expenses of the Liquidating Trust Oversight Committee, the fees and expenses of its Post-Confirmation Professionals, and such other payments and disbursements as are provided in this Trust Agreement or which may be determined to be a proper charge against the Trust Assets by the Liquidating Trustee or by any court of competent jurisdiction.  In addition, the Liquidating Trustee may, pursuant to the terms of the Plan, the Settlement Agreement, and this Trust Agreement, make provision out of the Trust Assets for the Disputed Claim Reserve and Post-Confirmation Administrative Reserve, amounts to meet present or future claims, expenses and liabilities of the Trust, whether fixed or contingent, known or unknown.

5.5 **Reports to Beneficiaries.**  As soon as practicable (and in no event more than 60

days) after the end of each calendar quarter after the Effective Date, and within 120 days after termination of the Liquidating Trust, the Liquidating Trustee shall file a written report with the Bankruptcy Court containing the information described below.  Such report shall be in addition to the Trustee's Certificate as well as any other report required by the Plan or Settlement Agreement, and shall list the assets and liabilities of the Liquidating Trust, including the Reserves and the amounts contained therein at the end of such calendar quarter or upon termination of the Liquidating Trust, and the receipts and disbursements of the Liquidating Trustee for such period.  Such reports shall (if deemed appropriate by the Liquidating Trustee) be audited or reviewed by the independent public accountants for the Liquidating Trust.

     5.6    **Federal Income Tax Information.**  As soon as practicable after the close of each calendar year, but in no event later than March 15th, the Liquidating Trustee shall mail to each Beneficiary of record during such year, a statement showing information sufficient for each Beneficiary to determine its share of income, gain, loss, deductions and credits for federal income tax purposes in accordance with §§1.671-4(a) and 1.671-4(b)(3) of the United States Treasury Regulations.  The Liquidating Trustee shall not be required to report such tax information to any Beneficiary unless such Beneficiary provides to the Liquidating Trustee a complete form W-9 or acceptable substitute signed under penalty of perjury.  In determining each Beneficiary's share of income, gain, loss, deductions and credits, the Liquidating Trustee shall not allocate such items to any Beneficiary who is the holder of a Claim which has no value until such time, if at all, as a value of the Claim arises.  For this purpose, a Claim shall have no value for any taxable year in which the Beneficiary who is the holder of the Claim would receive no distribution from the Liquidating Trust if the Liquidating Trust terminated and distributed all of its assets on the last day of the taxable year.

5.7    **Required Filing.**  The Liquidating Trustee shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns and Forms 1099) as the Liquidating Trustee shall, with the advice and assistance of his Post-Confirmation Professionals, including but not limited to legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Trust.  The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. §§ 1.671-4(a) and 1.671-4(b)(3)(ii).

5.8    **Tax Attributes and Tax Characteristics of the Trust.**    The Beneficiaries of the Liquidating Trust shall be treated as its grantors and deemed owners.  The Liquidating Trustee shall file or cause to be filed tax returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a), or (b), as appropriate.  Accordingly, the taxable income or loss of the Liquidating Trust, including taxable income attributable to the Reserves, if any, will be allocated to the Beneficiaries on an annual basis, pro rata in accordance with their respective entitlement to receive distributions from the Liquidating Trust if the Liquidating Trust terminated and distributed all its assets on the last day of the taxable year (taking into account all prior and concurrent distributions from the Liquidating Trust during such taxable year), subject to Section 5.6 hereof, and the Beneficiaries shall be responsible to report and pay the taxes due on their proportionate share of the Liquidating Trust taxable income, whether or not any amounts are actually distributed by the Liquidating Trustee to the Beneficiaries.  The value of the Trust Assets transferred into the Liquidating Trust shall be the fair market value of such Assets at the time of such transfer, as reasonably determined by the Liquidating Trustee, in consultation with the Trustee and such advisors as the Liquidating Trustee deems appropriate, within a reasonable

period of time after the Effective Date.  Such valuation shall be binding on all parties including, but not limited to, the Debtor, the Debtor's Estate, the Trustee, the Liquidating Trustee, and all Beneficiaries, and these valuations will be used by such parties for all federal income tax purposes.

5.9    **Revenue Ruling Requests.**  The Liquidating Trustee on behalf of Beneficiaries may, but shall not be required to, file a ruling request (in accordance with the procedures set forth in Revenue Procedure 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the Liquidating Trust classified as a liquidating trust as described in Treas. Reg. §301.7701-4(d).

5.10    **Necessary Documents.**  On the Effective Date, the Trustee shall execute and deliver all documents reasonably required by the Liquidating Trustee including the endorsement of any instruments, all business records of the Debtor, and authorizations to permit the Liquidating Trustee to access all bank records, tax returns, and other files and records of the Debtor, including files held by the Trustee's professionals, the Debtor's Estate or the Trustee as necessary for the administration of the Liquidating Trust.  The Trustee's professionals shall provide the Liquidating Trustee any and all documents or information reasonably requested by Liquidating Trustee for the administration of the Liquidating Trust.

5.11    **Privileges Transferred to Liquidating Trustee.**  The Liquidating Trustee, after the Effective Date, shall control all applicable legal privileges of the Debtor, its Estate, the Trustee, and the Committee, including control over all work product and attorney-client privilege for matters arising from or relating to transactions or activity occurring, in whole or in part, prior to the Effective Date.

5.12    **Disposition of Claims and Litigation Claims**.  Subject to the terms of this section, the Liquidating Trustee shall have the authority to initiate, prosecute, settle, resolve,

dismiss, object to, reconcile or otherwise dispose of any Claim, including an Administrative Expense Claim, or Litigation Claims (collectively, the "Claims/Litigation Claims Resolution"). With respect to any Claims/Litigation Claims Resolution that (a) exceeds $1,000,000 with respect to Trust Assets or (b) involves a Trust Asset that has an alleged claim amount exceeding $1,000,000; or (c) involves a Professional Claim, the Liquidating Trustee shall, prior to taking any such action, provide the Liquidating Trust Oversight Committee with written notice of such action. The Liquidating Trust Oversight Committee shall have ten (10) Business Days to object in writing to any such proposed action. The Liquidating Trust Oversight Committee and the Liquidating Trustee shall confer in good faith to resolve the objection to such proposed action. Should any disputes between them remain unresolved after such conference, such dispute shall be resolved by the Bankruptcy Court, upon notice to the Beneficiaries or to such lesser list of parties ordered by the Bankruptcy Court. All settlements shall be guided by the principles of the settlement standards set forth by Bankruptcy Rule 9019 and the legal standards for settlement set forth in the Eleventh Circuit for such settlements, including *In Re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), cert den., 498 U.S. 959, 1126 L.Ed. 398, 111 S.Ct. 389 (1990), or such other prevailing, binding law.

5.13    **Standing.**  Subject to Sections 5.12 and 5.15 of this Trust Agreement and Section 2.4 of the Plan, and in accordance with the procedures set forth in Section 7.3 of the Plan, the Liquidating Trustee shall have the sole standing and authority to file objections to Administrative Expense Claims, Claims and Interests, or Litigation Claims, and to defend against any and all counterclaims asserted in connection therewith.

5.14    **Qualified Settlement Fund; Disputed Ownership Fund.**  Notwithstanding anything in this Trust Agreement to the contrary, in the event that (i) any portion of the

Liquidating Trust is treated as a "qualified settlement fund" pursuant to Treas. Reg. § 1.468B-1, or (ii) the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" pursuant to Treas. Reg. § 1.468B-9(c)(2)(ii), any federal income tax consequences shall be determined under IRC § 468B and the Treasury Regulations thereunder.

5.15    **Trustee and Liquidating Trustee Compensation.**

(a)    Trustee Compensation.  On or prior to the Administrative Expense Claim Bar Date applicable to Professional Claims for the filing of final applications for compensation, the Trustee shall file with the Bankruptcy Court his final fee application seeking final approval of all fees and expenses incurred covering the period from the Petition Date through the Effective Date (including, but not limited to, fees associated with the TD Bank Contribution and the Additional Recoveries) and such fee application shall be considered by the Bankruptcy Court at the Confirmation Hearing.

The Trustee's final application for compensation may seek an award of compensation in Cash based on the formula contained in Section 326(a) of the Bankruptcy Code and otherwise provided for by any other provision of the Bankruptcy Code and may include a request to be paid compensation calculated on (a) the amount of all Assets disbursed, turned over or transferred by the Trustee after the Order for Relief and prior to the Effective Date, and (b) the amount of all Assets disbursed, turned over or transferred by the Trustee on the Effective Date, including the TD Bank Contribution, the Additional Recoveries, and any other Assets delivered by the Trustee to the Liquidating Trustee following execution of this Trust Agreement; provided, however, that for the avoidance of any doubt, the Trustee's entitlement to seek an award of compensation is

without prejudice to the rights of the Committee, the United States Trustee or any other party in interest to object to the Trustee's application for fees.

Interim compensation awarded and paid to the Trustee prior to the Effective Date shall be credited against the compensation payable to the Trustee pursuant to the Plan.  The amount of the Trustee's compensation shall be subject to approval by the Bankruptcy Court and shall be paid by the Estate or the Liquidating Trustee, as applicable, to the Trustee as soon as practicable after approval by the Bankruptcy Court; provided, however, that for the avoidance of any doubt, the amount of the Trustee's compensation and the payment terms will be determined by the Bankruptcy Court in the Chapter 11 Case by Final Order; provided, further, however that for purposes of calculating the amount of compensation payable to the Trustee or the Liquidating Trustee, as applicable, on account of the disbursements made on the Banyon Unsecured Claim, to the extent that any such compensation is payable to the Trustee or the Liquidating Trustee, as applicable, on account of the Banyon Unsecured Claim, only 30% of the amount Distributed on account of the Banyon Unsecured Claim may be included as a disbursement by the Trustee or the Liquidating Trustee, as applicable.

Notwithstanding anything contained herein, any party in interest, including the United States Trustee and the Committee, may object to the Trustee's final fee application, including but not limited to, in regard to which Assets disbursed, turned over or transferred by the Trustee are properly included in the formula used to calculate the Trustee's compensation.

The Committee's agreement that the Trustee may request compensation based on certain Assets disbursed, turned over or transferred by the Trustee shall not be construed as the Committee's agreement that the Trustee is entitled to compensation based on any such Assets

disbursed, turned over or transferred by the Trustee and the Committee reserves the right to object to the Trustee's final fee application.

Notwithstanding any provision of the Plan to the contrary, the precise manner in which the Assets are disbursed, turned over or transferred to the Liquidating Trust shall not affect the rights of the Trustee to seek compensation for the amounts of Assets which ultimately are disbursed, turned over or transferred to the Liquidating Trust prior to, on, or in conjunction with the Effective Date.

The foregoing provisions regarding the Trustee's entitlement to seek fees is without prejudice to the rights of the Committee, the United States Trustee or any other party in interest to object to the Trustee's application for fees at the Confirmation Hearing or thereafter in connection with the Trustee's fee application(s) in respect of Additional Recoveries.

(b)    Liquidating Trustee Compensation.   Subject to Bankruptcy Court approval following application and a hearing, the Liquidating Trustee shall be entitled to receive reasonable compensation at the rate of $500.00 per hour (adjusted annually) for all time reasonably spent by the Liquidating Trustee in administering the Liquidating Trust.

## ARTICLE 6
## DISTRIBUTIONS TO BENEFICIARIES

6.1    **Allowed Claims.**   Following the establishment of Reserves in such amounts as determined in accordance with Section 1.3.2 of this Trust Agreement, the Liquidating Trustee shall be authorized to make distributions to the Beneficiaries pursuant to and in accordance with the Plan and Settlement Agreement on the later of: (a) as soon as practicable after the Effective Date; or (b) the first date on which Distributions are made after the Claim becomes Allowed pursuant to the Plan; provided, however, that the Liquidating Trustee shall distribute at least annually to such Beneficiaries, in accordance with their allocable share, the net income of the

Liquidating Trust, plus all net proceeds from the sale of Trust Assets, except that the Liquidating Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Trust Assets or to meet claims and contingent liabilities (including Disputed Claims).  All full or partial payments made by the Trustee and received by the holder of a Claim before the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Liquidating Trustee pursuant to the Plan.

6.2    **Distributions.**

(a)    All Distributions under this Trust Agreement to any Beneficiary shall be made at the address of such Beneficiary as set forth in the official register of Claims, and/or at such other address as such Beneficiary shall have specified for payment purposes in a written notice to the Liquidating Trustee at least fifteen (15) days prior to such distribution date.  Nothing contained in this Trust Agreement or the Plan shall require the Trustee or the Liquidating Trustee to attempt to locate any Beneficiary other than by reviewing the proofs of Claim and information contained in any Verified Multiple Source Recovery Disclosure delivered to the Liquidating Trustee pursuant to the Plan.

(b)    As authorized by Local Bankruptcy Rule 3011-1(C)(2), if the combined total of Unclaimed Property related to Allowed Claims under the Plan totals (i) $10,000 or more, the Unclaimed Property shall, subject to Section 8.4 ("No de Minimis Distributions") and other provisions of the Plan, be distributed by the Liquidating Trustee, at the time of Final Distribution Date, to the Beneficiaries in Class 2 and Class 3 until such Beneficiaries are paid in full on account of their Allowed Claims in Class 2 or Class 3 after application of Collateral Source Recoveries, if any, respectively, and, thereafter, distributed by the Liquidating Trustee to other Beneficiaries in the order of priority set forth in, and pursuant to the terms of, the Plan, or (ii)

less than $10,000, the Unclaimed Property shall be donated to the Bankruptcy Bar Foundation, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent; provided that, pursuant to Section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed, and the holder or successor to such holder of any Claim Disallowed will be forever barred, expunged, estopped and enjoined from asserting any such Disallowed Claim in any manner against the Trustee, the Estate, the Liquidating Trust, the Liquidating Trustee, Trust Assets, or their respective property, notwithstanding any federal or state escheat laws to the contrary.

6.3     **Limitation on Distribution Rights**.  If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class may be aggregated into one Claim and one distribution may be made with respect to the aggregated Claim.

6.4     **De Minimis Amount.**  The Liquidating Trustee shall not be obligated to make disbursements in the event any distribution to any Beneficiary is less than $100.  Under such circumstances, the Liquidating Trustee shall not be obligated to disburse such funds until such time as the total distribution to a Beneficiary on any date a Distribution is made is not less than $100.

6.5     **Fractional Dollars**.  Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not be required to make Cash distributions of fractions of dollars; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made may reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.  To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as an unclaimed Distribution pursuant to Section 6.2 herein.

6.6    **Tax Identification Numbers.**    The Liquidating Trustee may require any Beneficiary to provide to the Liquidating Trustee such Beneficiary's employer or tax identification number as assigned by the Internal Revenue Service, and the Liquidating Trustee may condition any distribution to a Beneficiary upon receipt of such identification number and any other information required for the Liquidating Trustee to comply with Internal Revenue Service requirements.

### ARTICLE 7
### POWERS OF AND LIMITATIONS ON THE LIQUIDATING TRUSTEE AND THE LIQUIDATING TRUST OVERSIGHT COMMITTEE

7.1    **Limitations on Liquidating Trustee.**    The Liquidating Trustee shall not do any act or undertake any activity unless he determines, in good faith, that such act or activity is desirable, necessary or appropriate for the management, conservation, and protection of the Trust Assets and is in compliance with this Trust Agreement, the Plan and the Settlement Agreement. The investment powers of the Liquidating Trustee are limited to the powers to invest temporarily cash portions of the Estate in demand and time deposits in banks or savings institutions, temporary investment such as short-term certificates of deposit, investments in United States Treasuries, or money market funds. The Liquidating Trustee shall be restricted to the holding, liquidation, and collection of Trust Assets and the payment and distribution thereof for the purposes set forth in the Plan and Settlement Agreement, and to the conservation and protection of the Liquidating Trust and the Trust Assets, and administration thereof in accordance with the provisions of this Trust Agreement, the Plan and the Settlement Agreement.

7.2    **Specific Powers of Liquidating Trustee.**    Subject to the provisions of the preceding paragraph, the Plan and the Settlement Agreement, the Liquidating Trustee shall have the following specific powers in addition to any powers granted by 11 U.S.C. §§ 1106 and 704 or

conferred upon him by any other provision of this Trust Agreement, the Plan and the Settlement Agreement; **provided, however**, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trustee to act as specifically authorized by any other provisions of this Trust Agreement, the Plan or the Settlement Agreement, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to discharge all obligations of or assumed by the Liquidating Trustee or provided herein, in the Plan or in the Settlement Agreement and to conserve and protect the Liquidating Trust and the Trust Assets or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Trust Agreement, the Plan and the Settlement Agreement, at all times subject to the terms of this Trust Agreement, the Plan and the Settlement Agreement:

(a)    To determine when or on what terms Trust Assets should be sold, liquidated or otherwise disposed of;

(b)    To collect and receive any and all money and other Assets of whatsoever kind or nature due to or owing or belonging to the Liquidating Trust;

(c)    Pending sale or other disposition or distribution, to retain all or any Trust Assets regardless of whether or not such Trust Assets are, or may become, unproductive or a wasting asset.  The Liquidating Trustee shall not be under any duty to reinvest such part of the Liquidating Trust as may be in Cash, or as may be converted into Cash; nor shall the Liquidating Trustee be chargeable with interest thereon except to the extent that interest may be paid to the Liquidating Trust on such Cash amounts;

(d)    To retain and set aside such funds out of the Trust Assets as the Liquidating Trustee shall deem necessary or expedient to pay, or provide for the payment of (i) Allowed Claims pursuant to the Plan and the Settlement Agreement; and (ii) any Reserve

amounts;

(e)    Subject to section 5.12 of this Trust Agreement, to do and perform any acts or things necessary or appropriate for the management, conservation and protection of the Liquidating Trust, including acts or things necessary or appropriate to maintain Trust Assets pending sale or other disposition thereof or distribution thereof to the Beneficiaries, and in connection therewith to employ such agents, including Post-Confirmation Professionals as provided for in this Trust Agreement, the Plan or the Settlement Agreement, and to confer upon them such authority as the Liquidating Trustee may deem expedient, and to pay fees and expenses therefor;

(f)    To cause any investment of the Liquidating Trust to be registered and held in the name of the Liquidating Trustee or in the names of a nominee or nominees, or in the names of a nominee or nominees of another entity, without increase or decrease of liability with respect thereto;

(g)    Subject to section 5.12 of this Trust Agreement, to prepare, file, assert, commence and prosecute, or continue to prosecute in the case of existing actions, any and all Litigation Claims, as the Liquidating Trustee may determine to be of value and benefit to the Liquidating Trust and the Creditors;

(h)    Subject to section 5.12 of this Trust Agreement, to institute or defend actions or declaratory judgments, to substitute the Liquidating Trustee for the Debtor, the Trustee,  the Debtor's Estate or the Committee as the real party in interest in pending litigation, and to take such other action, in the name of the Liquidating Trust if required, as the Liquidating Trustee may deem necessary or desirable to enforce any instruments, contracts, agreements, or causes of action relating to or forming a part of the Liquidating Trust;

(i)    Subject to section 5.12 of this Trust Agreement, to cancel, terminate, or amend any instruments, contracts or agreements relating to or forming a part of the Liquidating Trust to the full extent permitted by such instruments, contracts or agreements and to execute new instruments, contracts, or agreements;

(j)    To perform any act authorized, permitted, or required under any instrument, contract, agreement, or cause of action relating to or forming a part of the Liquidating Trust whether in the nature of an approval, consent, demand, or notice thereunder or otherwise;

(k)    Subject to section 5.12 of this Trust Agreement, to deal in and with all accounts receivable, promissory notes and contracts which form a part of the Trust Assets with full authority to compromise, settle and otherwise deal in and with such Trust Assets as the Liquidating Trustee shall deem appropriate, in his sole discretion and without further order of the Bankruptcy Court;

(l)    To take all actions for and on behalf of the Debtor and the Debtor's Estate, including but not limited to, the preparation, execution and filing of documents, as the Liquidating Trustee shall deem necessary, desirable or appropriate in order to complete, conclude and finalize any filing, reporting or other obligations which the Debtor, the Trustee, the Debtor's Estate, the Liquidating Trustee, or the Liquidating Trust may have to any state or federal governmental authority, including the Liquidating Trustee's required completion and filing of all of the Debtor's final or otherwise required federal, state and local tax returns, which shall be done by the Liquidating Trustee;

(m)    Subject to section 5.12 of this Trust Agreement, to enter into such consulting or employment arrangements or otherwise retain such accountants, agents, attorneys,

consultants or independent contractors as the Liquidating Trustee shall deem necessary, desirable and appropriate to enable the Liquidating Trustee to accomplish the purposes enumerated in this Trust Agreement, the Settlement Agreement and the Plan;

(n)     To make the distributions provided for in this Trust Agreement, the Plan or the Settlement Agreement;

(o)     Subject to the terms of this Trust Agreement, to have control and management of the Liquidating Trust;

(p)     To make the election described in Treas. Reg. § 1.468B-9(c)(2)(ii) to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" for federal income tax purposes.

(q)     To establish one or more "qualified settlement funds" within the meaning of IRC § 468B and the Treasury Regulations thereunder for any claims for which a "qualified settlement fund" is required or permitted by law;

(r)     To request any appropriate tax determination, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;

(s)     To destroy any records of the Debtor as authorized by the Bankruptcy Court (including, without limitation, the Client File Orders) and to request authority to destroy any records of the Debtor not previously authorized by the Bankruptcy Court; and

(t)     To take any action reasonably necessary to effectuate the wind down and dissolution of the Debtor in all respects without further corporate action under applicable law, regulation, order or rule required, including any action by the Debtor or the holders of the Debtor's Interests or the board of directors, as applicable.

        7.3     **Preservation, Prosecution, and Defense of Causes of Action**.    Subject to

Section 5.12 of this Trust Agreement, the Liquidating Trustee shall have the right to pursue any and all Litigation Claims of the Debtor, the Trustee, the Committee, or the Debtor's Estate, whether or not such causes of action had been commenced as of the Effective Date, and shall be substituted as a real party in interest in any actions commenced by or against the Debtor, the Trustee, the Committee or the Debtor's Estate.   Also subject to Section 5.12 of this Trust Agreement, the Liquidating Trustee shall be authorized at any point in any litigation (a) without Bankruptcy Court approval, to enter such settlements as the Liquidating Trustee deems to be in the best interest of the Beneficiaries, or (b) to abandon, dismiss, and/or decide not to prosecute any such litigation if the Liquidating Trustee deems such action to be in the best interest of creditors provided, however, that any such proposed settlement or other action described in subparts "(a)" and "(b)" of this Section 7.3 that (i) exceeds $1,000,000 with respect to Trust Assets; (ii) involves a Trust Asset that has an alleged claim amount exceeding $1,000,000; or (iii) involves a Professional Claim shall be subject to the approval of the Liquidating Trust Oversight Committee or subject to approval by the Bankruptcy Court, upon notice and opportunity for hearing in accordance with Bankruptcy Rule 9019.

   7.4 **Liquidating Trust Oversight Committee**.  The Committee shall designate the members of the Liquidating Trust Oversight Committee.  The members of the Liquidating Trust Oversight Committee shall be identified no later than ten (10) Business Days subsequent to entry of the Disclosure Statement Approval Order.   The appointment of the Liquidating Trust Oversight Committee shall be ratified by the Confirmation Order and effective as of the Effective Date.  The Liquidating Trust Oversight Committee shall review the actions of the Liquidating Trustee as provided in the Plan and as set forth in this Trust Agreement. The Liquidating Trust Oversight Committee and its members shall have a fiduciary duty to the

Beneficiaries in accordance with the Plan.

7.5 **Indemnification of Liquidating Trustee and Liquidating Trust Oversight Committee**. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee, the Liquidating Trust Oversight Committee, their respective employers and their respective actuaries, agents, attorneys, consultants, designees, directors, employees, financial advisors, investment bankers, managers, members, officers, professionals, partners, shareholders, and members of the Liquidating Trust Oversight Committee (but only in their capacity as members and not in their individual capacities) (collectively, all of the above are the "Liquidating Trust Protected Parties") from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses, which such Liquidating Trust Protected Parties may incur or to which such Liquidating Trust Protected Parties may become subject to in connection with any action, suit, proceeding, demand, claim, or investigation brought by or threatened against such Liquidating Trust Protected Parties arising out of or due to their acts or omissions or any consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust, the Plan, the Settlement Agreement or the discharge of their duties hereunder or otherwise related to the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Oversight Committee ("Related Matters"); **provided, however**, that no such indemnification will be provided to any such Liquidating Trust Protected Party for actions or omissions finally and judicially determined to have arisen solely and directly from such Liquidating Trust Protected Party's willful misconduct, gross negligence, or actual fraud. In the sole discretion of the Liquidating Trustee, the Liquidating Trustee may authorize available Cash of the Trust Assets to be advanced to satisfy any documented out-of-pocket costs and expenses (including attorneys' fees and other costs of defense) incurred by any Liquidating Trust Protected Party who is

threatened to be named or made a defendant or a respondent, or is served with formal or informal discovery, in connection with any proceeding, claim, investigation, or demand, concerning the administration, business, and affairs of the Liquidating Trust; **provided**, **however**, that all such payments are subject to disgorgement in the event the expenses relate solely to an underlying claim against the Liquidating Trust Protected Party which has been finally and judicially determined to have resulted solely and directly from the Liquidating Trust Protected Party's own willful misconduct, gross negligence, or actual fraud.  In the event that, at any time whether before or after termination of this Trust Agreement, as a result of or in connection with this Trust Agreement, any Liquidating Trust Protected Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or any Liquidating Trust Protected Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Liquidating Trust Protected Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Liquidating Trust Protected Party shall be reimbursed by the Liquidating Trust for its out of pocket expenses, including the fees and expenses of its counsel, and will be compensated by the Liquidating Trust for the time expended by its personnel based on such personnel's then current standard hourly rate.

7.6    **Liability of Liquidating Trust Protected Parties.**   No Liquidating Trust Protected Party shall have any liability to any party for any Related Matters, unless it shall be proven that such liability arose solely and directly from the gross negligence, willful misconduct or actual fraud of such Liquidating Trust Protected Party.   None of the Liquidating Trust Protected Parties shall be deemed to make any representations or warranties as to the value or condition of the Trust Assets or any part thereof, or as to the validity, execution, enforceability,

legality, or sufficiency of this Trust Agreement or the Plan, and none of the Liquidating Trust Protected Parties shall incur any liability or responsibility to any party in respect of such matters.

## ARTICLE 8
## CONCERNING THE LIQUIDATING TRUSTEE AND
## LIQUIDATING TRUST OVERSIGHT COMMITTEE

8.1 **Generally.** The Liquidating Trustee accepts and undertakes to discharge the Liquidating Trust upon the terms and conditions hereof. In performing his duties hereunder, the Liquidating Trustee may rely on information reasonably believed by him to be accurate and reliable.

8.2 **Reliance by Liquidating Trustee.** The Liquidating Trustee may rely and shall be fully protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties.

8.3 **Counsel and Advisors for Liquidating Trustee and Liquidating Trust Oversight Committee**.

(a) The Liquidating Trustee may, subject to the consent of the Liquidating Trust Oversight Committee but without further order of the Bankruptcy Court, consult with and retain Post-Confirmation Professionals or other persons whose services may be reasonably necessary or advisable to be selected by him, and the Liquidating Trustee shall not be liable for any actions taken or suffered by him in accordance with the advice of such Post-Confirmation Professionals, and may also, subject to consent of the Liquidating Trust Oversight Committee, consult with and retain current and former accountants, consultants or other professionals of the Debtor, the Debtor's Estate, the Committee, the Trustee, present and former officers and directors of the Debtor, the Debtor's Estate and each of their respective affiliates or subsidiaries. However, the

Liquidating Trustee may not retain as a Post-Confirmation Professional any member of the Liquidating Trust Oversight Committee or firm which employs such member.  The actual fees and expenses of Post-Confirmation Professionals retained by the Liquidating Trustee shall be paid from the Trust Assets and in accordance with the Plan, the Settlement Agreement, and the Confirmation Order.

(b)      Members of the Liquidating Trust Oversight Committee shall serve without compensation but shall be reimbursed for their reasonable and necessary out-of-pocket expenses incurred in performing their duties solely from Trust Assets.  The Liquidating Trust Oversight Committee may employ, without further order of the Bankruptcy Court, Post-Confirmation Professionals whose services may be reasonably necessary or advisable, to advise or assist the Liquidating Trust Oversight Committee in the discharge of its duties.  The Liquidating Trust Oversight Committee may consult with and retain current and former accountants, consultants or other professionals of the Debtor, the Debtor's Estate, the Committee, the Trustee, present and former officers and directors of the Debtor, the Debtor's Estate and each of their respective affiliates or subsidiaries, and the Liquidating Trust Oversight Committee shall not be liable for any actions taken in accordance with the advice of such counsel or other professionals.  The actual fees and expenses of the Post-Confirmation Professionals of the Liquidating Trust Oversight Committee shall be reimbursed and shall be solely paid from Trust Assets without further order of the Bankruptcy Court pursuant to the terms of this Trust Agreement.

(c)      Post-Confirmation Professionals retained by the Liquidating Trustee or the Liquidating Trust Oversight Committee need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, the Liquidating Trustee's firm (should the Liquidating Trustee be a part of a professional services firm (the "LT Firm")) and its affiliates, as

well as counsel, employees, interim management, financial advisors, independent contractors or agents of the Trustee, the Committee, the Liquidating Trust Oversight Committee or the LT Firm.  The Liquidating Trustee is hereby expressly authorized to utilize the services of the LT Firm, its affiliates and personnel as Post-Confirmation Professionals (rather than utilizing other similarly situated or available personnel or professional services firms) notwithstanding that (a) the Liquidating Trustee may benefit (directly or indirectly) from the compensation paid to the LT Firm,  and (b) other persons or entities may be available to provide the same or similar work at similar or more competitive prices.  In no event shall the Liquidating Trustee, the LT Firm or their affiliates be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.  No professional that represented TD Bank during the Chapter 11 Case on matters related to the Chapter 11 Case shall be authorized to represent either the Liquidating Trustee or the Liquidating Trust Oversight Committee.

8.4    **Liquidating Trust's Funds**. No provision of this Trust Agreement, the Plan or the Settlement Agreement shall require the Liquidating Trustee to expend or risk his own funds or otherwise incur any financial liability in the performance of any of his duties as Liquidating Trustee hereunder, under the Plan, under the Settlement Agreement, or in the exercise of any of its rights or powers, if the Liquidating Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to him against such risk or liability is not reasonably assured to him.  For the avoidance of doubt, the Liquidating Trustee shall not be required to rely on the security, reimbursement or indemnity of the LT Firm, its affiliates or their respective insurers in determining whether the assurances described in the preceding sentence are available.

8.5    **Conflicts of Interest**.  The Liquidating Trustee shall disclose to the Liquidating Trust Oversight Committee any connections, conflicts or potential conflicts of interest that the Liquidating Trustee and/or the LT Firm has with respect to the exercise of any rights, powers, duties and privileges under the Plan or this Trust Agreement. In the event that the Liquidating Trustee cannot take any action by reason of an actual or potential conflict of interest, the Liquidating Trust Oversight Committee acting by majority shall be authorized to take any such action(s) in the Liquidating Trustee's place and stead, including without limitation the retention of Post-Confirmation Professionals (which may include Post-Confirmation Professionals retained by the Liquidating Trustee) for the purpose of taking such action.  Also, if any matter under consideration by the Liquidating Trust Oversight Committee appears to involve a conflict of interest with any member(s) serving on the Liquidating Trust Oversight Committee or any such member's professional firm or client in this matter, the member(s) with the conflicting interest shall:  (i) disclose to the Liquidating Trustee and the Liquidating Trust Oversight Committee the existence of any actual or potential conflict of which the member has knowledge to the Liquidating Trustee and the Liquidating Trust Oversight Committee; and (ii) abstain from participating in the discussion of and/or voting on the matter being considered by the Liquidating Trust Oversight Committee if a majority of the other members of the Liquidating Trust Oversight Committee determines such abstention is appropriate.

### ARTICLE 9
### PERSONS DEALING WITH THE LIQUIDATING TRUSTEE

9.1    **Liquidating Trustee Not Personally Liable.**    Persons dealing with the Liquidating Trust shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trust, or the Liquidating Trustee, to such person, in carrying out the terms of this Trust Agreement, the Plan, or the Settlement Agreement.  Neither the Liquidating Trust nor the

Liquidating Trustee shall have any personal or individual obligation to satisfy any such liability, unless it is proven that the Liquidating Trustee breached his fiduciary duty, was grossly negligent, acted with willful misconduct or fraud in ascertaining the pertinent facts or in performing any of the rights, powers or duties herein, in the Plan or in the Settlement Agreement.

9.2    **Authority of Liquidating Trustee**.  Any person dealing with the Liquidating Trustee shall be fully protected in relying upon the Trustee's Certificate signed by the Liquidating Trustee that such Liquidating Trustee has authority to take any action under this Trust Agreement.

## ARTICLE 10
## COMPENSATION

10.1    **Compensation for Liquidating Trustee**.  The Liquidating Trustee shall be paid the aggregate sum of (i) his fees on a per hour basis, plus (ii) actual out-of-pocket expenses, to be paid monthly from Trust Assets of the Liquidating Trust without the filing of any fee applications or Bankruptcy Court approval.

10.2    **Payment of Costs/Expenses**.  All costs and expenses incurred by the Liquidating Trust shall be the obligation of the Liquidating Trust and, subject at all times to the consent and review rights of the Liquidating Trust Oversight Committee, be payable from the Trust Assets of the Liquidating Trust in accordance with this Trust Agreement, the Settlement Agreement and the Plan.  Compensation of the Liquidating Trustee shall be paid from the Trust Assets pursuant to the terms of this Trust Agreement.  Notwithstanding anything herein to the contrary, without providing notice to or obtaining the approval of any party other than the Liquidating Trust Oversight Committee, the Liquidating Trustee shall be authorized pursuant to this Trust Agreement to pay the fees and expenses incurred after the Effective Date by the Liquidating Trustee and his Post-Confirmation Professionals, as well as to the actual expenses incurred after

the Effective Date by the members of the Liquidating Trust Oversight Committee and the actual fees and expenses of the Post-Confirmation Professionals of the Liquidating Trust Oversight Committee incurred after the Effective Date, in each case from Trust Assets without further order of the Bankruptcy Court. The Liquidating Trustee shall be authorized pursuant to the terms of the Plan, the Confirmation Order, the Liquidating Trust and any other order of a court of competent jurisdiction to pay the compensation due to the Trustee.

10.3 **Bond/Insurance**. As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida. For the avoidance of doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond. In addition, the Liquidating Trustee is hereby authorized, out of funds available from the Liquidating Trust, to obtain all reasonably necessary insurance coverage for himself and the Liquidating Trust, its agents, representatives, employees or independent contractors whether as a named insured on the Trustee's policies or otherwise, including, but not limited to, coverage with respect to (a) appropriate directors and officers/trustee liability insurance, (b) any property that is or may in the future become the property of the Liquidating Trust and (c) the liabilities, duties, and obligations of the Liquidating Trustee and the Liquidating Trust Protected Parties.

**ARTICLE 11**
**SUCCESSION**

11.1 **Resignation and Removal of the Liquidating Trustee.** The Liquidating Trustee may resign and be discharged from any future obligations and liabilities under this Trust

Agreement and the Plan by giving written notice thereof to the Liquidating Trust Oversight Committee. Any resignation hereunder shall become effective on the date specified in the written notice, which shall be no less than thirty (30) days after such written notice is given. The Liquidating Trustee may be removed at any time only by order of the Bankruptcy Court for cause. Upon any such resignation or removal, such Liquidating Trustee shall be entitled to any compensation, reimbursement and indemnification set forth in this Trust Agreement or the Plan which remains due and owing to such Liquidating Trustee at the time of such resignation. In the event the Liquidating Trustee is removed, the Liquidating Trustee shall not be entitled to any compensation or reimbursement that is due and owing to such Liquidating Trustee at the time of such removal. If, at any time, the Liquidating Trustee shall give notice of his intent to resign pursuant to this Trust Agreement, or shall become incapable of acting, counsel to the Liquidating Trustee shall provide notice thereof to the Bankruptcy Court. Upon the resignation or removal of the Liquidating Trustee, the Liquidating Trust Oversight Committee shall select a replacement Liquidating Trustee. If the Liquidating Trustee resigns, the Liquidating Trust Oversight Committee shall name the replacement Liquidating Trustee prior to the date of the Liquidating Trustee's resignation specified in the notice. Any successor to the Liquidating Trustee shall be bound by the terms of this Trust Agreement, the Plan, and the Settlement Agreement.

11.2 **Resignation and Removal of the Liquidating Trust Oversight Committee Members.** Any member of the Liquidating Trust Oversight Committee may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the Bankruptcy Court with a copy to the Liquidating Trustee and the other members of the Liquidating Trust Oversight Committee. Any resignation hereunder shall become effective on the date specified in the written notice, which shall be no less than thirty (30) days after such

written notice is given upon the appointment of a successor. A member of the Liquidating Trust Oversight Committee may be removed at any time only by order of the Bankruptcy Court for cause. Upon the proposed resignation or removal of a member of the Liquidating Trust Oversight Committee the remaining members of the Liquidating Trust Oversight Committee shall select a successor, who shall agree to be bound by the terms of the Confirmation Order, the Plan, this Trust Agreement, and the Settlement Agreement. Any successor member of the Liquidating Trust Oversight Committee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall deliver counterparts thereof to the Bankruptcy Court.

11.3 **Acceptance of Appointment by Liquidating Trustee**. Each successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment. Thereupon such successor Liquidating Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trust, and duties of his, her, or its predecessor in the Liquidating Trust hereunder with like effect as if originally named therein; but the retiring Liquidating Trustee shall nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any instrument or instruments conveying and transferring to such successor Liquidating Trustee upon the Liquidating Trust herein expressed, all the estates, properties, rights, powers, and trusts of such retiring Liquidating Trustee, and shall duly assign, transfer, and deliver to such successor Liquidating Trustee all property and money held by him hereunder. Notwithstanding the appointment of a successor Liquidating Trustee, the resigning Liquidating Trustee and Liquidating Trust Oversight Committee shall, without limitation, continue to be entitled to the indemnity and other protections provided in Sections 7.4 and 7.5 hereof.

## ARTICLE 12
## CONCERNING THE BENEFICIARIES

12.1    **Limitation on Suits by Beneficiaries**.  No Beneficiaries shall have any right by virtue of any provision of this Trust Agreement, the Plan, or the Settlement Agreement, to institute any action or proceeding at law or in equity against any party upon, under, or with respect to the Liquidating Trust or the Trust Assets.

12.2    **Expenses in Connection with Litigation.**  In connection with any lawsuit or action by or against the Liquidating Trustee regarding any rights, actions, and/or omissions under this Trust Agreement, the Plan, or the Settlement Agreement, the Liquidating Trustee may request any court to require, and any court may in its discretion require, that a party to such action other than the Liquidating Trustee pay all costs and fees associated with such action.

## ARTICLE 13
## AMENDMENTS

13.1    **Amendments.**  The Liquidating Trustee may, with the consent of the Liquidating Trust Oversight Committee,   make and execute such declarations amending this Trust Agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Trust Agreement or amendments hereto; provided, however, that no such amendment shall permit the Liquidating Trustee to act in any manner which is inconsistent with the Plan or the Settlement Agreement, or engage in any activity prohibited by this Trust Agreement or affect the Beneficiaries' rights to receive their share of any Distributions under this Trust Agreement, the Plan or the Settlement Agreement.

13.2    **Notice and Effect of Amendment.**   Promptly after the execution by the Liquidating Trustee of any declaration of amendment permitted by and pursuant to Section 13.1 hereof, the Liquidating Trustee shall give notice of the substance of such amendment to (i) TD

Bank, (ii) all parties who requested copies of pleadings in the Chapter 11 Case, and (iii) all Beneficiaries.  Upon the execution of any such declaration of amendment by the Liquidating Trustee, this Trust Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities of the Liquidating Trustee and the Beneficiaries under this Trust Agreement shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of this Trust Agreement for any and all purposes.

## ARTICLE 14
## MISCELLANEOUS PROVISIONS

14.1    **Further Assurances.**  The Trustee and the Liquidating Trustee shall promptly execute and deliver such further instruments and do such further acts as may be necessary or proper to effectively transfer to the Liquidating Trustee any portion of the Trust Assets intended to be conveyed pursuant to the Plan, the Settlement Agreement and this Trust Agreement or to otherwise carry out the intentions of this Trust Agreement, the Settlement Agreement and the Plan.

14.2    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain exclusive jurisdiction over this Trust Agreement and the Liquidating Trust established hereby as set forth in the Plan, including, without limitation, the enforcement, modification and interpretation of its provisions, for the purpose of determining all amendments, applications, claims or disputes with respect to this Trust Agreement, the substitution of the Liquidating Trustee or the Liquidating Trust Oversight Committee, and all applications, claims and disputes related thereto or otherwise brought against the Liquidating Trustee or the Liquidating Trust Oversight Committee.

14.3    **Filing Documents**.  This Trust Agreement shall be filed or recorded in such office or offices as the Liquidating Trustee may determine to be necessary or desirable.  A copy

of this Trust Agreement and all amendments thereof shall be maintained in the office of the Liquidating Trustee and shall be available during regular business hours for inspection by any Beneficiary or his duly authorized representative.  The Liquidating Trustee shall file or record any amendment of this Trust Agreement in the same places where the original Trust Agreement is filed or recorded.  The Liquidating Trustee shall file or record any instrument which relates to any change in the office of the Liquidating Trustee in the same places where the original Trust Agreement is filed or recorded.

       14.4    **Intention of Parties to Establish Trust.**  This Trust Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership, or joint venture of any kind.

       14.5    **Laws as to Construction.**  This Trust Agreement shall be governed and construed in accordance with the internal laws of the State of Florida, without giving effect to the principles of conflicts of law prevailing in Florida.

       14.6    **Severability.**  In the event any provision of this Trust Agreement or the application thereof to any person or circumstances shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

       14.7    **No Assignment**.  Except as otherwise provided herein, the obligations, duties or rights of the Liquidating Trustee under this Trust Agreement shall not be assignable, voluntarily, involuntarily or by operation of law, and any such attempted assignment shall be void.

       14.8    **Calendar Year**.  The Trust will utilize the calendar year for tax and financial

accounting purposes.

14.9    **Inconsistency with Plan or Settlement Agreement**.   To the extent of any inconsistency: (i) the provisions of the Liquidating Trust Agreement shall control over the provisions of the Disclosure Statement; (ii) the provisions of the Settlement Agreement shall control over the contents of the Liquidating Trust Agreement and the Disclosure Statement; (iii) the provisions of the Plan shall control over the contents of the Settlement Agreement, the Liquidating Trust Agreement, and the Disclosure Statement; and (iv) the provisions of the Confirmation Order shall control over the contents of the Plan, the Settlement Agreement, the Liquidating Trust Agreement, and the Disclosure Statement.

14.10    **Effectiveness**.   This Trust Agreement shall become effective on the Effective Date.

14.11    **Fiscal Year**.   The fiscal year of the Liquidating Trust will begin on the first day of January and end on the last day of December of each year.

14.12    **Confidentiality**.   The Liquidating Trustee, every member of the Liquidating Trust Oversight Committee, and any respective successor for either entity (each a "Covered Person") shall, during the period that they serve in such capacity under this Trust Agreement and following either the termination of this Trust Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, nonpublic information of or pertaining to any entity to which any of the assets of the Liquidating Trust relates or of which it has become aware in its capacity (the "Information"), except to the extent disclosure is required by applicable law, order, regulation or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal

process) to disclose any Information, such Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

14.13   **Notices.**   Any notice or other communication hereunder shall be in writing and shall be mailed United States First Class Mail, postage prepaid, delivered by courier service, transmitted by telecopy, or transmitted electronically, effective upon receipt:

(a)  to any Beneficiary at the most current address as shown on the records of the Liquidating Trustee;

(b)  to the Liquidating Trustee at:

> Michael I. Goldberg
> Akerman Senterfitt
> 350 E. Las Olas Blvd., Suite 1600
> Ft. Lauderdale, FL 33301
> Tel: (954) 463-2700
> Fax: (954) 463-2224
> Email: Michael.goldberg@akerman.com

(c)  to the Liquidating Trust Oversight Committee at _____, with a copy to the Liquidating Trust Oversight Committee's counsel at _____;

(d)  to the Trustee at:

> Herbert Stettin
> 4000 Ponce de Leon Boulevard
> Suite 570
> Coral Gables, FL  33146
> Tel: (305) 374-3353
> Fax: (305) 374-7632
> Email c/o:  singerman@bergersingerman.com

> and

Herbert Stettin
5401 Hammock Drive
Coral Gables, FL  33156

with a copy to the Trustee's counsel at:

Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131
Attn: Paul Steven Singerman
Telephone: (305) 714-4343
Facsimile: (305) 714-4340
Email: singerman@bergersingerman.com

and

John H. Genovese
Genovese Joblove & Battista, P.A.
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 372-2462
Facsimile: (305) 428-8802
Email: jenovese@gjb-law.com

14.14  **Counterparts.**   This Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Trust Agreement to be signed

and acknowledged as of the date set forth in the opening paragraph hereof.

**HERBERT STETTIN, NOT INDIVIDUALLY, BUT
AS CHAPTER 11 TRUSTEE FOR ROTHSTEIN
ROSENFELDT ADLER, P.A.**

_____

**LIQUIDATING TRUSTEE**

_____

Appendix 1.85

List of Certain Litigation Claims

| LIST OF CERTAIN LITIGATION CLAIMS |
|---|
| **Adversary Name and Case No.** |
| 10-03552-RBR Stettin v. Caro Group, L.L.C. |
| 10-03553-RBR Stettin v. Exito Investment Group, L.L.C. |
| 10-03554-RBR Stettin v. Marmarser Investment, L.L,C. |
| 10-03556-RBR Stettin v. New Miami Group, L.L,C, |
| 10-03557-RBR Stettin v. Pirulin Group, L.L.C. |
| 10-03558-RBR Stettin v. OPMonies 2, L.L.C. et al |
| 10-03602-RBR Stettin v. Network Resources Investment Group, L.L.C |
| 10-03710-RBR Stettin v. RL Pearson and Associates, Inc. |
| 10-03775-RBR Stettin v. Alu |
| 10-03823-RBR Thirteen Aqua Holdings Ltd v. Stettin |
| 11-02770-RBR Stettin v. FDS Investments USA, L.L.C. |
| 11-02771-RBR Stettin v. BWS Investments USA, L.L.C. |
| 11-02772-RBR Stettin v. GGTW Investments USA, LLC |
| 11-02773-RBR Stettin v. Viceroy Global Investments, Inc. |
| 11-02779-RBR Stettin v. Casa Casuarina, LLC et al |
| 11-02790-RBR Stettin v. Aran Development, Inc. |
| 12-01836-RBR Stettin v. Qtask |
| 11-02590-RBR Lexington Insurance Company et al v. Stettin et al |
| 11-02604-RBR Stettin v. Maple Leaf Drilling Partners, et, al. |
| 11-02734-RBR Stettin v. Boden |
| 11-02893-RBR Stettin v. Lifshitz |
| 11-02895-RBR Stettin v. Setvest, LLC |
| 11-02897-RBR Stettin v. Weiss |
| 11-02898-RBR Stettin v. Morgan |
| 11-02899-RBR Stettin v. Utica Advisors, LLC |
| 11-02902-RBR Stettin v. Wolinetz |
| 11-02903-RBR Stettin v. Mussry, et, al |
| 11-02906-RBR Stettin v. Pinewski |
| 11-02907-RBR Stettin v. Schreiber |
| 11-02908-RBR Stettin v. Kopelman |
| 11-02909-RBR Stettin v. Schraga |
| 11-02910-RBR Stettin v. Sussco, Inc. |
| 11-02911-RBR Stettin v. Sturm, et, al. |
| 11-02912-RBR Stettin v. Szafranski, et, al. |
| 11-02914-RBR Stettin v. Goldstein |
| 11-02915-RBR Stettin v. Adelsberg |
| 11-02916-RBR Stettin v. Eisenberg Family Foundation |

| |
|---|
| 11-02917-RBR Stettin v. Lifshitz Irrevocable Trust |
| 11-02918-RBR Stettin v. DC Capital Connections |
| 11-02919-RBR Stettin v. Concentrix Capital, LLC |
| 11-02920-RBR Stettin v. Diamond Street Equities |
| 11-02921-RBR Stettin v. Ber Group, LLC |
| 11-02922-RBR Stettin v. Kavana, et, al. |
| 11-02924-RBR Stettin v. Godin |
| 11-02926-RBR Stettin v. El Equities, LLC |
| 11-02927-RBR Stettin v. Krivoposk |
| 11-02928-RBR Stettin v. HN Associates |
| 11-02929-RBR Stettin v. Ballamor Capital Management, Inc, et, al. |
| 11-03014-RBR Stettin v. Preve, et, al. |
| 11-03018-RBR Stettin v. Leon |
| 11-03036-RBr Stettin v. Banyon Funding, LLC, et, al. |
| 11-03040-RBR Stettin v. Daniel Courtney, P.A. |
| 11-03034-RBR Stettin v. Banyon Capital, LLC |
| 11-03040-RBR Stettin v. Daniel Courtney, P.A. |
| 11-02900-RBR Stettin v. Neiss |
| 11-02908-RBR Stettin v. Paul, et, al. |
| 11-3013-RBR Stettin v. Intracoastal |
| 11-03021-RBR Stettin v. Harris, et, al. |
| 11-02896-RBR Stettin v. Menchel |
| All property and assets, as listed in the Preliminary Order of Forfeiture [ECF No. 134] and any other subsequent order, In *United States v. Rothstein*, 09-cr-60331-JIC (S.D. Fla) |
| All Forfeiture and Restitution related claims in *United States v. Kim Rothstein,* 12-cr-60204 (S.D. Fla) |
| All claims against Marc Nurik |
| All claims and rights relating to the appeal styled as *Stettin v. United States*, 11-10676 (11th Cir. 2011) and any litigation that may result from or after any ruling in respect of the appeal. |
| Any and all assigned claims against AON Risk Services Central, Inc., National Union Fire Insurance Company of Pittsburgh, Pa. and The Hartford arising from Settlement with Gibraltar Private Bank & Trust Co. and certain current and former officers and directors. |
| Any and all rights and remedies, including but not limited to specific performance or default remedies under existing but not fully consummated settlement agreements. |
| Any and all rights and Litigation Claims, known or unknown, which are property of the Estate. |
| Any and all claims known or unknown, filed or unfiled relating to *In re Rothstein Rosenfeldt Adler, P.A.*, 09-34791-RBR (Bankr. S.D. Fla) |
| Any and all rights under any settlement agreement between the Trustee and any third party ("Parties") filed or reached in *In re Rothstein Rosenfeldt Adler, P.A.*, 09-34791-RBR (Bankr. S.D. Fla) |

| |
|---|
| Any and all appellate remedies regarding the foregoing. |
| Any and all collection and/or enforcement proceedings relating to the foregoing. |

Appendix 1.122

<u>Settlement Agreement</u>

## SECOND AMENDED AND RESTATED SETTLEMENT AGREEMENT AND GENERAL RELEASE (AS MODIFIED)

THIS SECOND AMENDED AND RESTATED SETTLEMENT AGREEMENT AND GENERAL RELEASE (AS MODIFIED) (the "***Agreement***"), dated May 29, 2013, is by and among Herbert Stettin, as the Chapter 11 trustee (including any successor, the "***RRA Trustee***") of the bankruptcy estate of Rothstein Rosenfeldt Adler, P.A. (the "***RRA Estate***"), Robert C. Furr, as the Chapter 7 trustee (including any successor, the "***Banyon Trustee***" and with the RRA Trustee, the "***Trustees***") of the bankruptcy estates of Banyon 1030-32, LLC (the "***Banyon 1030-32 Estate***") and Banyon Income Fund, L.P. (the "***BIF Estate***", together with Banyon 1030-32 Estate, the "***Banyon Estates***"; the RRA Estate and the Banyon Estates are collectively referred to as the "***Estates***"), and TD Bank, N.A. ("***TD Bank***"). The RRA Estate, the RRA Trustee, each of the Banyon Estates, the Banyon Trustee and TD Bank are referred to hereinafter collectively as the "***Parties***" or individually as a "***Party***".  Capitalized terms used but not otherwise defined herein shall have the meanings set forth in Article I below.

## RECITALS

A.    In 2005, Scott W. Rothstein ("***Rothstein***"), the 50% shareholder of RRA, began perpetrating a Ponzi scheme through the sale of fictitious structured settlements with non-existent clients of RRA.

B.    Each of Banyon 1030-32, LLC ("***Banyon 1030-32***") and Banyon Income Fund, L.P. ("***BIF***" and with Banyon 1030-32, the "***Banyon Funds***") acted as an investment fund that placed investments in the Ponzi scheme orchestrated or operated by Rothstein.

C.    RRA began to use TD Bank's predecessor in interest, Commerce Bank, for certain of its banking activities in 2007.

D.    On November 10, 2009 (the "***RRA Petition Date***"), certain creditors of RRA filed an involuntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "***Bankruptcy Code***"), with the Bankruptcy Court against RRA, which created the RRA Estate.  The RRA Estate's bankruptcy case was assigned case number 09-34791-RBR (the "***RRA Case***").

E.    On November 20, 2009, the Office of the United States Trustee selected the RRA Trustee as the chapter 11 trustee for the RRA Estate.

F.    On November 30, 2009, the Bankruptcy Court entered an order for relief in the RRA Case.

G.    On August 12, 2010 (the "***Banyon 1030-32 Petition Date***"), certain creditors of Banyon 1030-32 filed an involuntary petition against Banyon 1030-32 in the Bankruptcy Court, which created the Banyon 1030-32 Estate.  The bankruptcy case of Banyon 1030-32 was assigned case number 10-33691-RBR (the "***Banyon 1030-32 Case***").

H.      The RRA Estate filed a Complaint to Avoid and Recover Preferential and Fraudulent Transfers and for Damages against TD Bank (Adversary Proceeding No. 11-02368-RBR) (the "*RRA Complaint*") on July 25, 2011.

I.      On November 4, 2011(the "*BIF Petition Date*", and collectively with the RRA Petition Date and the Banyon 1030-32 Petition Date the "*Petition Dates*"), certain creditors of BIF filed an involuntary petition against BIF in the Bankruptcy Court, which created the BIF Estate.  The bankruptcy case of BIF (the "*BIF Case*" and together with the RRA Case and the Banyon 1030-32 Case, collectively the "*Cases*") was assigned case number 11-40929-RBR.

J.      On November 29, 2011, the Bankruptcy Court entered an order for relief in the Banyon 1030-32 Case, and the Office of the United States Trustee appointed the Banyon Trustee as the chapter 7 trustee in the Banyon 1030-32 Case.

K.      On January 31, 2012, the Bankruptcy Court entered an order for relief in the BIF Case.

L.      On February 6, 2012, the Office of the United States Trustee appointed the Banyon Trustee as the chapter 7 trustee in the BIF Case.

M.      On April 10, 2012, the Bankruptcy Court authorized the joint administration of the BIF Case and the Banyon 1030-32 Case under case number 10-33691-RBR (the "*Banyon Cases*").

N.      The Banyon Trustee has informally asserted that TD Bank is liable for damages the Banyon Estates incurred in regard to the Ponzi scheme orchestrated or operated by Rothstein because of TD Bank's alleged actions or failure to act in connection with the Ponzi scheme orchestrated or operated by Rothstein (the "*Banyon Asserted Claims*").

O.      Certain third parties have claimed that TD Bank is liable for damages caused to such third parties by the Ponzi scheme orchestrated or operated by Rothstein because of TD Bank's alleged actions or failures to act in connection with the Ponzi scheme orchestrated or operated by Rothstein (the "*Third Party Claims*").

P.      TD Bank has settled certain of the Third Party Claims.  As part of those settlements, certain holders of Third Party Claims have assigned, participated or transferred, in whole or in part, certain of the recoveries such parties will receive from the Estates and other sources to TD Bank (the "*TD Bank Controlled Claims*").  Each of the Trustees has asserted that he has various objections to the TD Bank Controlled Claims.

Q.      The RRA Complaint, the Banyon Asserted Claims and the objections to the TD Bank Controlled Claims, and the objections, defenses and counterclaims that TD Bank could assert thereto, raise complex legal and factual issues for TD Bank and the Estates.

R.      Each Estate has asserted substantial Claims against each other Estate.  The RRA Trustee has asserted that the RRA Estate has numerous Claims against each of the Banyon Estates  arising from or in connection with the Ponzi scheme orchestrated or operated by Rothstein, including, but not limited to, those Claims asserted by the RRA Estate in (i) proof of

2

Claim number 1 asserted against the Banyon 1030-32 Estate and listed on the claims register maintained for the Banyon 1030-32 Case and (ii) proof of Claim number 1 asserted against the BIF Estate and listed on the claims register maintained for the BIF Case. The Banyon Trustee has asserted that each of the Banyon Estates has numerous Claims against the RRA Estate arising from or in connection with the Ponzi scheme orchestrated or operated by Rothstein, including, but not limited to, those Claims asserted by (i) the Banyon 1030-32 Estate in proof of Claim number 336 asserted against the RRA Estate and listed on the claims register maintained in the RRA Case and (ii) the BIF Estate in proof of Claim number 337 asserted against the RRA Estate and listed on the claims register maintained in the RRA Case.

S.    Each Trustee asserts that he has objections, defenses and counterclaims to each such Claim asserted against each such Estate.

T.    The Trustees and the Estates have concluded that, because of the substantial expense of litigating the issues associated with the RRA Complaint, the Banyon Asserted Claims, the TD Bank Controlled Claims, TD Bank's objections, defenses and counterclaims thereto, and the Claims of each Estate against each other Estate, the length of time necessary to resolve the issues presented therein, and the uncertainty as to the result of any such litigation, the compromise and settlement provided herein is fair and reasonable, and in the best interests of the Estates, their creditors and the holders of Third Party Claims.

U.    The Trustees and the Estates have concluded that permitting the Third Party Claims to proceed against TD Bank will further protract the Estates' litigation against TD Bank, will disrupt the efforts of the RRA Trustee to confirm a plan of liquidation in the RRA Case and the efforts of the Trustees to provide distributions in the RRA Case and the Banyon Cases, and will further complicate the determination of the amounts that creditors will be able to recover from the Estates.

V.    TD Bank has denied, and continues to deny, each and all of the Claims and allegations of wrongdoing made by the Trustees, including those asserted in the RRA Complaint and the Banyon Asserted Claims, and maintains that it has meritorious defenses and counterclaims against the Estates. TD Bank has expressly denied, and continues to deny, all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged or that could have been alleged in the RRA Complaint, the Banyon Asserted Claims and the Third Party Claims, and TD Bank vigorously contends that many of the factual allegations of the RRA Complaint, the Banyon Asserted Claims and the Third Party Claims relating to it are materially inaccurate. TD Bank also has denied and continues to deny, *inter alia*, the allegations that the Trustees and their Estates or their creditors were harmed by TD Bank's conduct as alleged in the RRA Complaint, the Banyon Asserted Claims, the Third Party Claims or otherwise.

W.    TD Bank has concluded that further litigation of the RRA Complaint, the Banyon Asserted Claims, the TD Bank Controlled Claims, and the Third Party Claims would be protracted and expensive, and that it is desirable and beneficial to it that the allegations made in the RRA Complaint, the Banyon Asserted Claims, the TD Bank Controlled Claims, and the Third Party Claims be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

X.    The Parties acknowledge that TD Bank has required, *inter alia*, the bar order and releases to be provided in accordance with Article III hereof as the central consideration for inducing TD Bank to enter into the settlement contemplated by this Agreement.  Absent the bar order and releases contemplated by Article III, TD Bank would not have been induced into entering this Agreement.  Absent the settlement contemplated by this Agreement, the consummation of the RRA Plan would not be possible.

Y.    On February 4, 2013, the Parties entered into the original Settlement Agreement and General Release dated February 4, 2013 (the "***Original Agreement***").

Z.    On March 25, 2013, the Parties entered into the Amended and Restated Settlement Agreement and General Release dated March 25, 2013 that amended and restated the Original Agreement in its entirety (the "***First Amended Agreement***").

AA.    On May 8, 2013, the Parties entered into the Second Amended and Restated Settlement Agreement and General Release dated May 8, 2013 that amended and restated the First Amended Agreement (the "***Initial Second Amended Agreement***").

NOW, THEREFORE, IT IS HEREBY AGREED, by and among the undersigned that the Original Agreement, the First Amended Agreement and the Initial Second Amended Agreement are hereby amended and restated in their entireties as follows:

## ARTICLE I
### *DEFINITIONS*

Section 1.1    <u>Recitals</u>.  The recitals set forth above are an integral part of this Agreement and are incorporated herein by reference and are explicitly made a part of this Agreement.

Section 1.2    <u>Definitions</u>.  The following definitions shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

"***9019 Motion***" shall mean the motion filed by the Banyon Trustee in the Banyon Cases seeking Bankruptcy Court approval of the compromise and settlement set forth in this Agreement, providing for the notice of such compromise and settlement to parties in interest, and authorizing and directing the consummation by the Banyon Trustee and the Banyon Estates of the transactions contemplated herein by the Banyon Estates, which motion must be in form and substance satisfactory to the Parties and the Committee.

"***9019 Order***" shall mean the order or orders of the Bankruptcy Court approving the 9019 Motion and implementing the terms of this Agreement, including, but not limited to, the provisions of Article 3 of this Agreement, which order or orders, shall be in form and substance satisfactory to the Parties and the Committee.

"***Affiliate***" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

"***Allowed Banyon TD Bank Claim***" shall have the meaning set forth in Section 2.7.

4

"***Allowed Claim***" shall (A) in regard to the RRA Estate, mean a Claim (as defined in the RRA Plan) that has been Allowed (as defined in the RRA Plan), or (B) in regard to the Banyon Estates, mean a Claim for which a completed and duly executed Verified Banyon Creditor Collateral Source Recovery Disclosure has been timely submitted and (i) a timely proof of Claim has been filed and such Claim is not disputed, (ii) the Bankruptcy Court has allowed such Claim in a Final Order in the applicable Banyon Case, or (iii) the holder of such Claim has received an interim distribution on account of such Claim, but only to the extent of the interim distribution received on such Claim.

"***Allowed RRA TD Bank Claim***" shall have the meaning set forth in Section 2.3.

 "***Bankruptcy Code***" shall have the meaning set forth in Recital D.

"***Bankruptcy Court***" shall mean The United States Bankruptcy Court for the Southern District of Florida and, to the extent it may exercise jurisdiction in any of the Cases, the District Court, or if either such court ceases to exercise jurisdiction over the any of the Cases, such court or adjunct unit thereof that exercises jurisdiction over such Cases.

"***Banyon 1030-32 Case***" shall have the meaning set forth in Recital G.

"***Banyon 1030-32 Petition Date***" shall have the meaning set forth in Recital G.

"***Banyon Asserted Claims***" shall have the meaning set forth in Recital N.

"***Banyon Cases***" shall have the meaning set forth in Recital M.

 "***Banyon Creditor Collateral Source Recoveries***" shall mean in regard to a Claim asserted against either of the Banyon Estates, the amount calculated, determined and applied in accordance Section 3.6(b) of the RRA Plan and Section 2.13 of this Agreement.

"***Banyon Distribution***" shall have the meaning set forth in section 2.13 of this Agreement.

"***Banyon Funds***" shall have the meaning set forth in Recital B.

"***Banyon Levin Claims***" shall mean any and all rights, Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party Claims, counterclaims and cross Claims (including, but not limited to avoidance or recovery actions available through the exercise of the powers granted by Sections 541 – 553 of the Bankruptcy Code or avoidance or recovery Claims recognized under any applicable state law) of each of the Banyon Estates against Gayla Susan Levin, George Levin, the bankruptcy estate of George Levin (including, but not limited to, proofs of Claim number 60 and 61 asserted against George Levin by the applicable Banyon Estate in George Levin's chapter 11 bankruptcy case, case number 10-33696-RBR, currently pending in the Bankruptcy Court) and/or any of their Affiliates (with  Gayla Susan Levin and/or George Levin considered the "debtor" for the purposes of the definition of Affiliate) or subsidiaries; <u>provided, that</u> Banyon Levin Claims do not include any of the foregoing Claims or rights against any Entity that is not Gayla Susan

5

Levin, George Levin, the bankruptcy estate of George Levin and/or any of their Affiliates (with Gayla Susan Levin and/or George Levin considered the "debtor" for the purposes of the definition of Affiliate) or subsidiaries (including, but not limited to, avoidance or recovery actions through the exercise of powers granted by Sections 541-553 of the Bankruptcy Code or avoidance or recovery Claims recognized under any applicable state law where such Entity was either an immediate or subsequent transferee).

"***Banyon Litigation Claims***" shall mean the Claims, causes of action, avoidance actions, damages, rights and interests, owned by the Banyon Estates assertable against any Entity that is not a TD Bank Releasee; **provided**, **however**, that all payments and distributions from and in connection with the Gibraltar Settlement Agreement allocable to the Banyon Estates shall not be included within the definition of Banyon Litigation Claims; **provided further that** the Banyon Levin Claims are not Banyon Litigation Claims.

"***Banyon Releasors***" shall mean Banyon 1030-32, LLC, Banyon Income Fund, L.P., the Banyon Estates, and the Banyon Trustee, and each of their subsidiaries and affiliates and the successors and assigns of any of them and any other Entity that claims or might claim through, on behalf of or for the benefit of any of the foregoing.

"***Banyon Unsecured Claim***" shall mean the unsecured Allowed Claim held by the Banyon Estates against the RRA Estate in the amount of $39.7 million ($39,700,000.00).

"***Banyon Unsecured Creditor Fund***" shall mean $39.7 million ($39,700,000.00) in Cash from the TD Bank Contribution held by the Liquidating Trustee to be distributed in accordance with Section 3.6(b) of the RRA Plan.

"***Beneficiary or Beneficiaries***" shall mean the holder(s) of an Allowed Claim against the RRA Estate as may be determined from time to time in accordance with the RRA Plan and the Liquidating Trust Agreement.

"***BIF Petition Date***" shall have the meaning set forth in Recital I.

"***BIF Case***" shall have the meaning set forth in Recital I.

"***Business Day***" shall mean any day other than a Saturday, Sunday or other day on which banks in the State of Florida are required or permitted to close.

"***Cases***" shall have the meaning set forth in Recital I.

"***Cash***" shall mean legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

"****Claim***" shall have the meaning ascribed to it in Section 101 of the Bankruptcy Code.

"****Committee***" shall mean the Official Committee of Unsecured Creditors appointed in the RRA Case as of the date the Disclosure Statement Approval Order is entered. As of the date hereof, the Official Committee of Unsecured Creditors appointed in the RRA Case consists of the following members: (i) American Express Travel Related Services Company, Inc., (ii) Ira

6

Sochet, Trustee-Revocable Intervivos Trust of Ira Sochet and (iii) John Mullin, Esq. for Edward J. Morse (or his testamentary estate as his successor).

"*Confirmation Hearing*" shall mean the hearing conducted by the Bankruptcy Court to consider the confirmation of the RRA Plan.

"*Confirmation Order*" shall mean the order or orders of the Bankruptcy Court confirming pursuant to Bankruptcy Code Section 1129 and implementing the terms of the RRA Plan and authorizing and directing the consummation by the RRA Trustee, the RRA Estate, the Liquidating Trust and the Liquidating Trustee of the transactions contemplated herein, which order or orders shall be in form and substance satisfactory to the Parties and the Committee.

"*Coquina Settlement Agreement*" shall mean that certain settlement agreement dated as of October 17, 2011 between the RRA Trustee and Coquina Investments, and approved by the Bankruptcy Court by Final Order in the RRA Case dated October 21, 2011 [RRA ECF No. 2138].

"*Court of Appeals*" shall mean the United States Court of Appeals for the Eleventh Circuit.

"*Disclosure Statement*" shall mean that certain written amended disclosure statement that relates to the RRA Plan as filed in the RRA Case by the Plan Proponents, including the schedules and exhibits attached thereto, as any of them may be amended, modified or supplemented from time to time.

"*Disclosure Statement Approval Order*" shall mean that certain order of the Bankruptcy Court approving, among other things, the notice and balloting procedures for the RRA Plan, and the Disclosure Statement as containing adequate information pursuant to Section 1125 of the Bankruptcy Code which order or orders shall be in form and substance satisfactory to the Parties and the Committee.

"*District Court*" shall mean the United States District Court for the Southern District of Florida.

"*Effective Date*" shall mean the first Business Day on which all conditions to effectiveness set forth in Section 6.2 of this Agreement shall have been satisfied or, if waiveable, waived in accordance with Section 6.2 of this Agreement.

"*Emess Litigation*" shall mean the adversary proceeding brought by the RRA Trustee against Emess Capital, L.L.C. that is pending in the Bankruptcy Court as adversary proceeding number 11-02768-RBR.

"*Entity*" shall mean a Person, an estate, a trust, or the United States Trustee as defined in Section 101(15) of the Bankruptcy Code.

"*Final Order*" shall mean an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on its docket, that has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal, petition for certiorari or move for reargument,

7

rehearing or a new trial has expired and no appeal, petition for certiorari or motion for reargument, rehearing or a new trial, respectively, has been timely filed, or (b) any appeal, any petition for certiorari or any motion for reargument, rehearing or a new trial that has been or may be filed has been resolved by the highest court (or any other tribunal having final appellate jurisdiction over the order or judgment) to which the order or judgment was appealed or from which certiorari or reargument, rehearing or a new trial was sought, and the time to take any further appeal, petition for certiorari or move for reargument, rehearing or a new trial shall have expired without such actions having been taken; provided, however, the possibility that a party may file a motion for reconsideration of an order or judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Section 502(j) of the Bankruptcy Code, or Bankruptcy Rules 9023 and 9024 shall not preclude an order from being a Final Order.

"***Forfeiture Action***"   shall mean the case styled as *USA v. Scott W. Rothstein*, Case No. 0:09-cr-60331-JIC, pending in the District Court or any subsequent court of appeals with jurisdiction over such case.

"***Full Amount***" shall mean the total amount of a Claim without any interest, costs, fees or charges accruing on such Claim from and after the applicable Petition Date.

"***Funds***" shall mean Centurion Structured Growth LLC, Platinum Partners Credit Opportunities Fund LP, Platinum Partners Value Arbitrage Fund LP and Level 3 Capital Fund LP.

"***Funds' Settlement Agreement***" shall mean that certain settlement agreement dated as of June 14, 2012 among the Trustee, the Funds, Regent Capital Partners, LLC, Mark Nordlicht, Dahlia Kalter, Murray Huberfeld, Laura Huberfeld, David Bodner, Naomi Bodner, and the Bodner Family Foundation, and approved by the Bankruptcy Court by Final Order in the RRA Case dated August 28, 2012 [RRA ECF No. 3352].

"***Funds Senior Subordinated Claim***" shall mean that certain unsecured subordinated Claim of the Funds' in the maximum amount of $26,000,000 which shall be allowed and subordinated to the extent, and as provided, in the Funds' Settlement Agreement.

"***Gibraltar Settlement Agreement***" shall mean that certain settlement agreement between Gibraltar Private Bank & Trust Company, Boston Private Financial Holdings, Inc. and Boston Private Bank and Trust Company and all of such entities' current or former directors, officers, employees, and partners (not including John Harris, Charles Sanders, Steven D. Hayworth, and Lisa Ellis), and any successors and their partners, directors, officers, and employees and the RRA Trustee dated October 9, 2012 and approved by Final Order of the Bankruptcy Court in the RRA Case dated as of October 10, 2012 [RRA ECF No. 3500].

"***Interest***" shall mean the interest of any shareholder or equity holder against the Banyon Funds or RRA, as applicable.

"****IRC***"* shall mean the Internal Revenue Code of 1986, as amended from time to time.

"***Levin Claims***" shall mean the Banyon Levin Claims and the RRA Levin Claims.

8

"***Levy Settlement Agreement***" shall mean that certain settlement agreement dated as of October 31, 2012 by and among the RRA Trustee on the one hand and Shimon Levy, Ovadia Levy, Rachel Levy, Daniel Minkowitz, Mordechai Bar-Adon, Ben-Zion Varon, The 2009 Ovadia Levy Revocable Trust, Renato Watches, Inc. N/K/A DMOL, Inc., Sea Club Ocean Resort Hotel, Inc., JUBOT, LLC on the other, and approved by Final Order of the Bankruptcy Court in the RRA Case dated as of January 23, 2013 [RRA ECF No. 3746].

"***Liquidating Trust***" shall mean the trust created on the Effective Date pursuant to the RRA Plan.

"***Liquidating Trust Agreement***" shall mean the agreement governing the Liquidating Trust and the Liquidating Trustee, which shall be included as an appendix to the RRA Plan, and which shall be in form and substance that is agreeable to the Parties and the Committee.

"***Liquidating Trustee***" shall mean Michael I. Goldberg.

"***Liquidating Trust Oversight Committee***" shall mean the committee of three Persons selected in accordance with Section 2.29 of this Agreement and appointed pursuant to the Confirmation Order, each of whom shall be identified ten (10) Business Days subsequent to entry of the Disclosure Statement Approval Order.

"***October Mediation Expense***" shall mean $67,182.10, which is the Estates' allocable share of the fees and expenses incurred in regard to the October 9-10, 2012 mediation among TD Bank, the RRA Estate and the Banyon Estates, which were previously funded by TD Bank.

"***Person***" shall mean an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.

"***Petition Dates***" shall have the meaning set forth in Recital I.

"***Plan Proponents***" shall mean the RRA Trustee and the Committee.

"***Pro Rata***" shall mean proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class, but in any event the amount of consideration distributed on account of an Allowed Claim shall not exceed the Full Amount of such Claim.

"***Razorback Plaintiffs***" shall mean, collectively, Razorback Funding, LLC; D3 Capital Club, LLC; BFMC Investment, LLC; Linda Von Allmen, as Trustee of the Von Allmen Dynasty Trust; D&L Partners, LP; David Von Allmen, as Trustee of the David Von Allmen Living Trust; Ann Von Allmen, as Trustee of the Ann Von Allmen Living Trust; Dean Kretschmar; Cooper Management, LLC; Anthony Degennaro, as Trustee of the Extra Inning Dynasty Trust; Adele Mussry; Jack Mussry; Nassim Mussry; Melina El-Ani; Danielle El-Ani; H&N Associates; Aretz

9

Associates; Park National Capital Funding, LLC; Park National Mortgage Servicing; Scott Morgan; Viceroy Global Investments, Inc.; Concord Capital, Inc.; Edward Paley; Florence Paley; the Edward and Florence Paley Foundation; Steven Paley; Laura Paley; Jane Zaretsky, The Jane Zaretsky Dynasty Trust and Lawrence E. Dekelbaum.

"*Razorback Settlement Agreement*" shall mean the Settlement Agreement dated as of August 4, 2012 between the RRA Trustee and the Razorback Plaintiffs and approved by Final Order of the Bankruptcy Court dated October 10, 2012 [RRA ECF No. 3510].

"*Razorback Substantial Contribution Claim*" shall mean the substantial contribution Claim, to the extent filed by the applicable bar date and to the extent such Claim becomes an Allowed Claim, and in the maximum amount of $8 million, asserted by the Razorback Plaintiffs in the RRA Case.

"*Released Claims*" shall have the meaning set forth in Section 3.1.

"*Releasors*" shall have the meaning set forth in Section 3.1.

"*RRA*" shall mean Rothstein Rosenfeldt Adler, P.A.

"*RRA Banyon Senior Subordinated Claim*" shall have the meaning set forth in section 2.13(d) of this Agreement.

"*RRA Case*" shall have the meaning set forth in Recital D.

"*RRA Collateral Source Recoveries*" shall mean in regard to an Allowed Claim against the RRA Estate, the amount calculated in accordance with Section 2.16 of this Agreement and Section 6.13 of the RRA Plan and determined and applied in accordance with Sections 3.4(b), 3.7(b) and 3.8(b) of the RRA Plan.

"*RRA Complaint*" shall have the meaning set forth in Recital H.

"*RRA Levin Claims*" shall mean any and all rights, Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party Claims, counterclaims and cross Claims (including, but not limited to avoidance or recovery actions available through the exercise of the powers granted by Sections 541 – 553 of the Bankruptcy Code or avoidance or recovery Claims recognized under any applicable state law) of the RRA Estate, against Gayla Susan Levin, George Levin or, the bankruptcy estate of George Levin, (including, but not limited to, proofs of Claim number 1-1 and 1-2 asserted against George Levin by the RRA Estate in George Levin's chapter 11 bankruptcy case, case number 10-33696-RBR, currently pending in the Bankruptcy Court) and/or any of their Affiliates (with Gayla Susan Levin and/or George Levin considered the "debtor" for the purposes of the definition of Affiliate) or subsidiaries; provided, that  the RRA Levin Claims do not include any of the foregoing Claims or rights against any Entity that is not Gayla Susan Levin, George Levin, the bankruptcy estate of George Levin and/or any of their Affiliates (with  Gayla Susan Levin and/or George Levin considered the "debtor" for the purposes of the definition of Affiliate) or subsidiaries (including, but not limited to, avoidance or recovery actions through the exercise of

powers granted by Sections 541-553 of the Bankruptcy Code or avoidance or recovery Claims recognized under any applicable state law where such Entity was either an immediate or subsequent transferee); provided further, that the RRA Levin Claims do not include any of the following Claims, rights or actions: (a) of the RRA Estate against the Banyon Estates, and (b) asserted by the Trustee on or before May 29, 2013 through the commencement of an action against any Entity that is an Affiliate or subsidiary of either of Gayla Sue Levin or George Levin (excluding Gayla Susan Levin, George Levin, and the bankruptcy estate of George Levin).
.

"**RRA Litigation Claims**" shall mean the Claims, causes of action, avoidance actions, damages, rights and interests, owned by the RRA Estate assertable against any Entity that is not a TD Bank Releasee; provided that the RRA Levin Claims are not RRA Litigation Claims.

"**RRA Petition Date**" shall have the meaning set forth in Recital D.

"**RRA Plan**" shall mean the plan of liquidation for the RRA Estate, including any exhibits, supplements, and appendices thereto, that, *inter alia*, authorizes and directs the RRA Trustee, the RRA Estate, the Liquidating Trust and the Liquidating Trustee to consummate the compromise and settlement set forth in this Agreement and authorizes and directs the RRA Trustee, the RRA Estate, the Liquidating Trust and the Liquidating Trustee to enter into the transactions contemplated herein, which shall be in the form annexed hereto as Exhibit "A" or in form and substance that is otherwise satisfactory to the Parties and the Committee; provided, however, that any modifications to the form of RRA Plan annexed hereto as Exhibit "A" must be in form and substance satisfactory to the Parties and the Committee.

"**RRA Releasors**" shall mean RRA, the RRA Estate, the RRA Trustee, and the Committee and each of their subsidiaries and affiliates and the successors and assigns of any of them and any other Entity that claims or might claim through, on behalf of or for the benefit of any of the foregoing.

"**TD Bank Banyon Junior Subordinated Claim**" shall have the meaning set forth in Section 2.8 hereof.

"**TD Bank Contribution**" shall mean Cash in the amount of SEVENTY TWO MILLION, THREE HUNDRED AND EIGHTY-TWO THOUSAND, EIGHT HUNDRED AND SEVENTEEN DOLLARS AND NINETY CENTS ($72,382,817.90), which is the difference between SEVENTY TWO MILLION, FOUR HUNDRED AND FIFTY THOUSAND DOLLARS ($72,450,000.00) and the October Mediation Expense ($67,182.10), to be delivered by TD Bank to the RRA Trustee by the third Business Day after the Confirmation Date, subject to and in accordance with Section 6.1.1 of the RRA Plan and the proviso contained in Section 6.2(p) of this Agreement.

"**TD Bank Controlled Claims**" shall have the meaning set forth in Recital P.

"**TD Bank Indemnitee**" shall mean (i) any current or former director, officer, or employee of TD Bank to whom TD Bank has an indemnification obligation (whether in its by-

11

laws, certificates of incorporation, board resolutions, or by agreement), and (ii) Emess Capital, L.L.C.

"***TD Bank Releasees***" shall mean TD Bank, The Toronto-Dominion Bank and each of its current and former affiliates, officers, directors, principals, shareholders, parents, subsidiaries, members, auditors, accountants, financial advisors, predecessors, successors, servants, employees, agents, consultants, counsel, attorneys, partners, insurers, underwriters, administrators, executors, representatives, the TD Bank Indemnitees and the assigns of each of the foregoing.

"***TD Bank RRA Junior Subordinated Claim***" shall have the meaning set forth in Section 2.4 hereof.

"***TD Bank Junior Subordinated Claims***" shall mean the TD Bank RRA Junior Subordinated Claim and the TD Bank Banyon Junior Subordinated Claim.

"***Third Party Claims***" shall have the meaning set forth in Recital O.

"***Trust Assets***" shall have the meaning set forth in the RRA Plan.

"***Unknown Claims***" shall have the meaning set forth in Section 3.2.

"***Verified Banyon Creditor Collateral Source Recovery Disclosure***" shall mean the form disclosure required under Section 2.13 hereof and Section 3.6(b) of the RRA Plan and substantially in the form attached hereto as Exhibit "B", which discloses (a) the holder of a Claim against one of the Banyon Estates' full legal name and complete street address and mailing address, (b) the identity and contact information of any party that is not a Banyon Estate against whom the holder of such Claim has made a demand that has given rise or may give rise to a Banyon Creditor Collateral Source Recovery, (c) the amount of all Banyon Creditor Collateral Source Recoveries actually received directly, indirectly, or for the benefit of the holder of such Claim prior to the date on which such Verified Banyon Creditor Collateral Source Recovery Disclosure is submitted to the Banyon Trustee, (d) the legal basis for all Banyon Creditor Collateral Source Recoveries received by the holder of such Claim, and (e) the existence, without quantification, of any future or anticipated Banyon Creditor Collateral Source Recovery.

"***Verified RRA Collateral Source Recovery Disclosure***" shall mean the form disclosure required under Section 2.16 hereof and Sections 3.3(b), 3.4(b), 3.7(b), and 3.8(b) of the RRA Plan and substantially in the form attached hereto as Exhibit "C", which discloses (a) the full legal name and complete street address and mailing address of the holder of a Class 2, Class 3 and Class 7, as applicable, Claim as classified under the RRA Plan, (b) the identity and contact information of any non-RRA party against whom the holder of such Claim has made a demand that has given rise to an RRA Collateral Source Recovery or may give rise to a RRA Collateral Source Recovery, (c) the amount of all RRA Collateral Source Recoveries actually received directly, indirectly or for the benefit of the holder of such Claim prior to the date on which such Verified RRA Collateral Source Recovery Disclosure is submitted to the Voting Agent, (d) the

12

legal basis for all RRA Collateral Source Recoveries received by the holder of such Claim, and (e) the existence, without quantification, of any future or anticipated Collateral Source Recovery.

"**_Voting Agent_**" shall mean Trustee Services, Inc., the entity authorized by the Bankruptcy Court to serve as the Claims, noticing, and balloting agent in the RRA Case.

"**_Voting Deadline_**" shall mean the deadline set forth in the Disclosure Statement Approval Order by which ballots on the RRA Plan must have actually been received by the Voting Agent.

Section 1.3    Other Terms.  Other terms may be defined elsewhere in this Agreement and, unless otherwise indicated, shall have such meaning throughout this Agreement.  As used in this Agreement, any reference to any federal, state, local, or foreign law, including any applicable law, will be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise.  The words "**_include_**", "**_includes_**", and "**_including_**" will be deemed to be followed by "**_without limitation_**".  Pronouns in masculine, feminine, or neutral genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires.  The words "**_this Agreement_**", "**_herein_**", "**_hereof_**", "**_hereby_**", "**_hereunder_**", and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

Section 1.4    Interpretation.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any Party hereto because of the authorship of any provision of this Agreement.

## ARTICLE II
## SETTLEMENT TERMS

Section 2.1    TD Bank Contribution.  Within three Business Days after the Confirmation Date, and subject to and in accordance with Section 6.1.1 of the RRA Plan and the proviso contained in Section 6.2(p) of this Agreement, TD Bank shall deliver the TD Bank Contribution to an account designated by the RRA Trustee.

Section 2.2    Intentionally Omitted.

Section 2.3    Allowance of TD Bank Claims in the RRA Estate.  On the Effective Date, on account of the TD Bank Controlled Claims pertaining to the RRA Estate and on account of the TD Bank Contribution, TD Bank shall have an allowed unsecured Claim against the RRA Estate in the aggregate principal amount of $132.45 million ($132,450,000.00) (the "**_Allowed RRA TD Bank Claim_**"), albeit subordinated pursuant to Section 2.4 of this Agreement; provided, that no Claims or recoveries assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8, 2013 shall be included in the Allowed RRA TD Bank Claim.

Section 2.4    Subordination of Allowed RRA TD Bank Claim Against the RRA Estate.  On the Effective Date, the Allowed RRA TD Bank Claim shall be deemed subordinated in

13

accordance with the terms and provisions of Section 510 of the Bankruptcy Code and the RRA Plan to the payment of the Full Amount of all other Allowed Claims in the RRA Case, after the application of RRA Collateral Source Recoveries as applicable (the "***TD Bank RRA Junior Subordinated Claim***"); provided that the RRA Plan shall not permit the holders of Allowed Claims senior to the TD Bank RRA Junior Subordinated Claim to receive in excess of the Full Amount of their Claims, after the application of RRA Collateral Source Recoveries as applicable; provided further that the Liquidating Trustee shall not, and shall cause the Liquidating Trust to not, permit the payment or distribution of any property of the RRA Estate or the Liquidating Trust (or the proceeds thereof) on account of any Interest against RRA.

Section 2.5      RRA Interim Distribution The Liquidating Trustee shall make an interim distribution of not less than 72.5% of the allowed amount of a Beneficiary's Claim to each such Beneficiary entitled thereto within thirty (30) days after the Effective Date in accordance with Article 6 of the Liquidating Trust Agreement; provided, however, that any such interim distributions by the Liquidating Trustee shall be limited in amounts that, in the Liquidating Trustee's reasonable judgment, are designed to avoid the payment of excess distributions to such Beneficiary; provided, further, however, that the Liquidating Trustee may seek authority from the Bankruptcy Court, after notice and a hearing, to reduce the percentage of the interim distribution required by Section 8.7 of the RRA Plan and this Section 2.5 of this Agreement for good cause shown.  The Liquidating Trustee may rely on the amount of RRA Collateral Source Recoveries disclosed on a Verified RRA Collateral Source Recovery Disclosure as an RRA Collateral Source Recovery that will reduce a creditor's distribution for the purpose of making any reserve or distribution, including any interim distribution.

Section 2.6      Intentionally Omitted.

Section 2.7      Allowance of TD Bank Claims in the Banyon Estates.  On the Effective Date, on account of the TD Bank Controlled Claims pertaining to either of the Banyon Estates and on account of the TD Bank Contribution, TD Bank shall have an allowed unsecured Claim against each of the Banyon Estates in the aggregate principal amount of $97.45 Million ($97,450,000.00) "***Allowed Banyon TD Bank Claim***"), albeit subordinated pursuant to Section 2.8 of this Agreement; provided, that no Claims or recoveries assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8, 2013 shall be included in the Allowed Banyon TD Bank Claim.

Section 2.8      Subordination of Allowed Banyon TD Bank Claim Against the Banyon Estates.  On the Effective Date, the Allowed Banyon TD Bank Claim shall be deemed subordinated in accordance with the terms and provisions of Section 510 of the Bankruptcy Code to the payment of the Full Amount of (i) all allowed administrative expenses in each of the Banyon Cases, respectively, (ii) all allowed priority Claims in each of the Banyon Cases, respectively, (iii) all allowed non-subordinated general unsecured Claims in each of the Banyon Cases, after the application of Banyon Creditor Collateral Source Recoveries, as applicable, and (iv) the RRA Banyon Senior Subordinated Claim (the "***TD Bank Banyon Junior Subordinated Claim***"); provided, that the Banyon Trustee shall not permit the holders of Allowed Claims senior to the TD Bank Banyon Junior Subordinated Claim to receive in excess of the Full Amount of their Claims, after the application of Banyon Creditor Collateral Source Recoveries as applicable; provided further that the Banyon Trustee shall not permit the payment or

14

distribution of any property of the Banyon Estates (or the proceeds thereof) on account of any Interest against a Banyon Estate.

Section 2.9    [Intentionally Omitted].

Section 2.10    [Intentionally Omitted].

Section 2.11    Claims Transferred to TD Bank.  Any Claim against any of the Estates, which is assigned, participated or transferred or has had its recovery assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8, 2013 shall not be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment, disallowance, offset or reduction in distribution, including an interim distribution, on account of an RRA Collateral Source Recovery or a Banyon Creditor Collateral Source Recovery, as applicable, or otherwise, due to the payments made by TD Bank or because TD Bank has been assigned, participated or transferred, in whole or in part, such Claim or recovery; provided, however, that such Claim shall be subject to objection, reconsideration, reduction, recharacterization, subordination, impairment or disallowance for any other reason, subject to the other provisions of this Agreement and the RRA Plan.

Section 2.12    Banyon Estates Anti-layering Agreement.  The TD Bank Banyon Junior Subordinated Claim shall be junior to all Claims in each Banyon Estate to the extent specified in Section 2.8(i)-(iv) of this Agreement.  The TD Bank Banyon Junior Subordinated Claim shall be senior to all Claims not specified in Section 2.8(i)-(iv) of this Agreement.  The Banyon Trustee shall not, and shall cause the Banyon Estates to not, permit any Claim to be treated on a pari passu basis with the TD Bank Banyon Junior Subordinated Claims in either of the Banyon Estates absent the prior written consent of TD Bank.

Section 2.13    Treatment of the Banyon Unsecured Claim.  In accordance with and subject to Section 3.6(b) of the RRA Plan and this Section, the Banyon Unsecured Claim against the RRA Estate shall be treated in the following manner:

(a)    Allowance of the Banyon Unsecured Claim.  In accordance with and subject to Section 3.6(b) of the RRA Plan, upon the occurrence of the Effective Date, the Banyon Unsecured Claim shall be Allowed in the amount of $39.7 million ($39,700,000.00) against the RRA Estate.

(b)    Establishment of the Banyon Unsecured Creditor Fund.  In accordance with and subject to Section 3.6(b) of the RRA Plan, upon the transfer of the Trust Assets from the RRA Estate to the Liquidating Trustee, the Liquidating Trustee shall establish the Banyon Unsecured Creditor Fund from the TD Bank Contribution and earmark the Banyon Unsecured Creditor Fund for payment of the Banyon Unsecured Claim.  The Banyon Estates shall recover on account of the Banyon Unsecured Claim solely from the Banyon Unsecured Creditor Fund.

(c)    Banyon Distribution.  Within five (5) Business Days after the Effective Date, the Liquidating Trustee shall Distribute the Banyon Unsecured Creditor Fund to the Banyon Trustee for the benefit of the Banyon Estates (the "**Banyon Distribution**") in full

15

satisfaction, release and discharge of all Claims of the Banyon Estates, directly or indirectly, against the Debtor or the Estate, including, without limitation, the Banyon Unsecured Claim.  The amount of the Banyon Distribution shall be allocated between the Banyon Estates in accordance with the direction of the Banyon Trustee or Final Order of the Bankruptcy Court in the Banyon Cases.

(d)     Allowance of RRA Banyon Senior Subordinated Claim  Upon the payment of the Banyon Distribution, the RRA Estate shall have an allowed senior subordinated Claim against each of the Banyon Estates in the amount of $39.7 million ($39,700,000.00) (the "**RRA Banyon Senior Subordinated Claim**"). The RRA Banyon Senior Subordinated Claim shall be subordinated in right to payment to the Full Amount of (i) all allowed administrative expenses in each of the Banyon Cases, respectively, (ii) all allowed priority Claims in each of the Banyon Cases, respectively, and (iii) all allowed non-subordinated general unsecured Claims in each of the Banyon Cases, after the application of Banyon Creditor Collateral Source Recoveries, as applicable; provided, that the Banyon Trustee shall not permit the holders of Allowed Claims senior to the RRA Banyon Senior Subordinated Claim to receive in excess of the Full Amount of their Claims, after the application of Banyon Creditor Collateral Source Recoveries as applicable.  The RRA Banyon Senior Subordinated Claim shall be senior in right of payment to the TD Bank Banyon Junior Subordinated Claim.

(e)     Banyon Creditor Collateral Source Recovery Distribution Reductions.

(1)  (A) Within (5) five Business Days after the Effective Date, the Banyon Trustee shall send to all holders of Claims asserted or assertable against the Banyon Estates a Verified Banyon Creditor Collateral Source Recovery Disclosure with instructions to return such Verified Banyon Creditor Collateral Source Recovery Disclosure to the Banyon Trustee so that (i) it is actually received by the Banyon Trustee on or before the date that is 25 days after the Effective Date and (ii) contains the information required in part (B) hereof.

(B)  **Each holder of a Claim asserted or assertable against the Banyon Estates must deliver to the Banyon Trustee a Verified Banyon Creditor Collateral Source Recovery Disclosure by a date that is no later than 25 days after the Effective Date.**  If the holder of a Claim asserted or assertable against the Banyon Estates (i) fails or refuses to timely deliver to the Banyon Trustee a completed and duly executed Verified Banyon Creditor Collateral Source Recovery Disclosure, or (ii) after notice and a hearing, is determined to have knowingly provided false information in a Verified Banyon Creditor Collateral Source Recovery Disclosure, then (a) such holder shall be deemed to irrevocably waive its rights to receive, and shall be forever barred from receiving, a distribution from the Banyon Estates, and (b) such holder's Claim asserted or assertable against the Banyon Estates shall be deemed disallowed without further order of the Bankruptcy Court.  All Entities submitting a Verified Banyon Creditor Collateral Source Recovery Disclosure shall have an obligation to correct and/or update such Verified Banyon

16

Creditor Collateral Source Recovery Disclosure as and when such Entity has knowledge that such disclosure was incorrect or has materially changed, including, but not limited to, when such Entity actually receives a previously anticipated Banyon Creditor Collateral Source Recovery.  Such obligation to correct and/or update shall terminate on the date on which the Liquidating Trustee makes the final distribution from the Liquidating Trust.

(2)    The Banyon Trustee shall provide the Liquidating Trustee and the Liquidating Trust Oversight Committee copies of each Verified Banyon Creditor Collateral Source Recovery Disclosure submitted to him within five Business Days after the last date on which such Verified Banyon Creditor Collateral Source Recovery Disclosure is required to be submitted to the Banyon Trustee.

(3)    The amount of the distributions, including interim distributions, to be made by the Banyon Estates on account of each Claim asserted or assertable against each Banyon Estate shall, be reduced, on a dollar for dollar basis, by the amount of all Banyon Creditor Collateral Source Recoveries received on account of each such Claim.   The amount of the reduction of the distributions, including interim distributions, on account of each such allowed Claim's Banyon Creditor Collateral Source Recovery shall be calculated in accordance with Section 2.13(5)(e) of this Agreement and established in the following manner: on or before the date that is 45 days after the Effective Date (without prejudice to the Banyon Trustee's right to request an extension of this deadline for cause from the Bankruptcy Court), the Banyon Trustee shall, after consultation with the Liquidating Trustee and the Liquidating Trust Oversight Committee, file and serve upon all affected parties, a motion to make an interim distribution in each of the Banyon Cases which (I) provides a schedule of the aggregate Banyon Creditor Collateral Source Recoveries received  by each holder of a Claim asserted or assertable against each applicable Banyon Estate, (II) explicitly identifies the amount by which all distributions, including interim distributions, by the Banyon Trustee on account of each such holder's Claim will be reduced on account of all of such holder's Banyon Creditor Collateral Source Recoveries applicable to each such Claim for all purposes, and (III) seeks authority to make an interim distribution to the creditors in each of the Banyon Estates in accordance with Section 2.13(h) of this Agreement.  Such motion to make an interim distribution shall also provide that: (i) the Liquidating Trustee, the Liquidating Trust Oversight Committee and the holder of a Claim against the Banyon Estates whose distribution, including an interim distribution, is sought to be reduced shall have 15 days from the filing of such motion to object to the relief sought in such motion; (ii) all objections to such motion must be filed with the Bankruptcy Court and served upon the Banyon Trustee, the Liquidating Trustee, and the Liquidating Trust Oversight Committee; (iii) if no timely objection to such motion is filed and served, the Banyon Trustee shall use the amount of the applicable Banyon Creditor Collateral Source Recovery indicated in such motion to calculate the reduction to the distributions, including an interim distribution, to each such holder of

17

each such Claim asserted or assertable against each of the Banyon Estates for all purposes; and (iv) if a timely objection to such motion is filed and served, such objection and the amount of the applicable Banyon Creditor Collateral Source Recovery shall be resolved by the Bankruptcy Court in accordance with the provisions of this Section 2.13 and Section 3.6(b) of the RRA Plan after notice and opportunity for a hearing.

(4)    The holder of a Claim asserted or assertable against the Banyon Estates, once allowed, shall not receive a distribution on account of such a Claim asserted or assertable against the Banyon Estates until the amount of such holder's Banyon Creditor Collateral Source Recoveries are less than or equal to the amount such holder would have received in distributions on account of its Claim asserted against the Banyon Estates if such holder did not have any Banyon Creditor Collateral Source Recoveries.

(5)  Except to the extent that a settlement agreement approved by Final Order of the Bankruptcy Court between the holder of an allowed Claim against either of the Banyon Estates and such Banyon Estate in either of the Banyon Case provides for differing treatment of Banyon Creditor Collateral Source Recoveries, the amount of a Banyon Creditor Collateral Source Recovery shall be calculated for each applicable allowed Claim against a Banyon Estate as:

I.     The gross amount of Cash and non-Cash assets received by, available to, received for the benefit of or applied to the indebtedness of the holder of an Allowed Claim against the Banyon Estates (whether made directly or indirectly to such holder or any agent, attorney or third party associated with such holder), on account of or in any way related to such holder's loss directly or indirectly relating to Banyon 1030-32, LLC, Banyon Income Fund, LP, or Rothstein from all parties and sources, including, without limitation, any payments made to the holder of such Claim by TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action.

II.    The amount calculated pursuant to Section 2.13(e)(5)(I) of this Agreement shall exclude, without duplication:

(i)     any distributions to be made to the holder of such Claim by either of the Banyon Estates;

(ii)    any tax benefit from a theft loss deduction taken in accordance with the IRC, or other tax benefits received by a holder of such Claim, in either case as a result of losses in connection with Banyon Estates or the Ponzi scheme orchestrated or operated by Rothstein;

(iii)   any amounts paid by TD Bank that result in any Claims or recoveries being assigned, participated or transferred, in whole or

18

in part, to TD Bank on or after May 8, 2013, unless TD Bank consents to these amounts being included in the calculation of a Banyon Creditor Collateral Source Recovery; and

(iv)    any anticipated, but not yet received, Banyon Creditor Collateral Source Recovery.

III.    The amount calculated pursuant to Section 2.13(e)(5)(I) and (II) of this Agreement shall include interest only if and to the extent such interest would be recoverable or allowable as an Allowed Claim against either Banyon Estate or as part of the Allowed Claim of such holder against either Banyon Estate.

IV.    No deduction or reduction from the amount of a Banyon Creditor Collateral Source Recovery on account of the fees, costs and other expenses incurred or paid in connection with its pursuit of any Banyon Creditor Collateral Source Recoveries, including, without limitation, attorney's fees and costs, is permissible.

(6)    In connection with the calculation of Banyon Creditor Collateral Source Recoveries, to the extent that the holder of a Claim against the Banyon Estates assigned or assigns any Banyon Creditor Collateral Source Recoveries to another holder of a Claim against the Banyon Estates, the assignor may notify the Banyon Trustee of such assignment. Subject to the Bankruptcy Court's approval, the Banyon Trustee may, in his discretion, seek to reduce the assignee's distribution, including an interim distribution, from the Banyon Estates by the amount of the Banyon Creditor Collateral Source Recovery assigned to such assignee and not reduce the assignor's distribution, including an interim distribution, from the Banyon Estates.

(7)    Without the need of a further order of the Bankruptcy Court and except to the extent that a settlement agreement approved in either of the Banyon Cases by Final Order of the Bankruptcy Court between either of the Banyon Estates and the holder of an Allowed Claim against such Banyon Estate provides for differing treatment of Banyon Creditor Collateral Source Recoveries, the holder of an Allowed Claim against a Banyon Estate shall be required to remit to the Banyon Trustee an amount of Cash equal to the value of all Banyon Creditor Collateral Source Recoveries it receives that were not disclosed as having been received on such holder's Verified Banyon Creditor Collateral Source Recovery Disclosure or did not then exist, including, without limitation, any applicable payments made to the holder of such Claim by TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action; provided, however that in no event shall the holder of an Allowed Claim against either Banyon Estate be required to remit Cash to the Banyon Trustee in an amount that is greater than the sum of such holder's distribution on account of such Allowed Claim from the

19

applicable Banyon Estate.  The holder of an Allowed Claim against either Banyon Estate that has received or will receive a distribution from the Banyon Trustee shall fully cooperate with the Banyon Trustee and execute any documents reasonably required by the Banyon Trustee to evidence the obligation.

(f)    Banyon Claim Objections.  All objections to Claims in the Banyon Estates shall be filed within 60 days after the Effective Date.

(g)    Banyon Status Reports.  The Banyon Trustee shall provide the Liquidating Trustee and the Liquidating Trust Oversight Committee, periodic reports on (i) the status of the objections to and reconciliation of the Claims asserted in the Banyon Cases, (ii) the status of the objections, if any, asserted to the Banyon Creditor Collateral Source Recoveries asserted in the motion required to be filed in accordance with Section 2.13(e)(3) of this Agreement, and (iii) the estimated administrative expenses that are projected to arise in the subsequent quarter and be allowed in the Banyon Cases, each quarter commencing on the last Business Day of the month in which the 90th day after the Effective Date occurs and concluding on the date in which the Banyon Cases are closed.

(h)    Banyon Estate Interim Distribution.  The Banyon Trustee shall, in the motion to make an interim distribution required by Section 2.13(e)(3) of this Agreement, seek the authority to make an interim distribution of not less than 60% of the allowed amount of each creditor's Claim against a Banyon Estate from such Banyon Estate, and shall use his best efforts to distribute an additional 10% of the allowed amount of each creditor's Claim against a Banyon Estate from such Banyon Estate, subject to Bankruptcy Court approval, within five (5) Business Days after the approval of such motion. provided, however, that any such interim distributions by the Banyon Trustee shall be limited in amounts that, in the Banyon Trustee's reasonable judgment, are designed to avoid the payment of excess distributions to the creditors of the Banyon Estates; provided, further, however, that the Banyon Trustee may seek authority from the Bankruptcy Court, after notice and a hearing, to reduce the percentage of the interim distribution required by this Section 2.13(h) for good cause shown.  The Banyon Trustee may rely on the amount of Banyon Creditor Collateral Source Recoveries disclosed on a Verified Banyon Creditor Collateral Source Recovery Disclosure as a Banyon Creditor Collateral Source Recovery that would reduce a creditor's distribution for the purpose of making any reserve or distribution, including any interim distribution.

(i)    Banyon Unsecured Claim Allocation.  If the Banyon Estates are not substantively consolidated, the Banyon Trustee shall allocate any distribution received on account of the Banyon Unsecured Claim in a manner that shall result in the holders of allowed non-subordinated general unsecured Claims against each of the Banyon Estates receiving the same Pro Rata distribution on account of their allowed Claims after applying the Banyon Creditor Collateral Source Recoveries identified in this Section 2.13 of this Agreement, if any.

20

(j)     Banyon Distribution Reporting Obligation.  The Banyon Trustee shall file a notice that sets forth each distribution made to a creditor of either of the Banyon Estates (indicating the identity of such creditor, the applicable Banyon Estate against which the creditor has asserted a Claim, the applicable Claim number and the amount of the distributions made to such creditor) within 30 days after the making of any such distribution to unsecured creditors in either of the Banyon Cases.

Section 2.14    Inter-Estate Claims.  Upon the Effective Date, other than the Banyon Unsecured Claim, the RRA Banyon Senior Subordinated Claim, and as otherwise provided in this Agreement, all inter-estate Claims (including, without limitation, administrative expenses, general unsecured Claims, and Claims on behalf of any trustee or his professionals) between the RRA Estate and either of the Banyon Estates shall be waived and released in their entirety and, except as otherwise provided for in this Section, any and all proofs of Claim asserted against an Estate by another Estate shall be expunged.

Section 2.15    Substantial Contribution Claims.  Other than the Razorback Substantial Contribution Claim, the Trustees and the Liquidating Trustee, as applicable, shall not and shall not permit the Estates and the Liquidating Trust to support, and shall cause the Estates and Liquidating Trust to object to (i) any Claims under Sections 503(b)(3)(A) through (E) and 503(b)(4) of the Bankruptcy Code and (ii) any other non-ordinary course administrative expenses asserted against their respective Estates or the Liquidating Trust, as applicable, including any Claim for a fee enhancement, unless TD Bank consents in writing to such Claims; provided, that the Trustees and the Liquidating Trustee may support and shall not be required to object to the fees and expenses sought by the RRA Trustee, the Liquidating Trustee, the Banyon Trustee or their professionals in their applicable cases whose employment was authorized by Final Order of the Bankruptcy Court in such Case or the RRA Plan.

Section 2.16    (A) RRA Collateral Source Recovery Verification.  The Disclosure Statement Approval Order shall provide that as a condition precedent to the receipt of a distribution from the RRA Estate or the Liquidating Trust, each holder of a Class 2, Class 3 or Class 7 Claim against the RRA Estate must deliver to the Voting Agent by the Voting Deadline a Verified RRA Collateral Source Recovery Disclosure.  On or by the Effective Date, the RRA Trustee or the Liquidating Trustee, as applicable, shall provide the Liquidating Trust Oversight Committee with copies of all Verified RRA Collateral Source Recovery Disclosures that are received by the RRA Trustee.

(B)  Disallowance of Claims.  If the holder of a Claim classified in Class 2, Class 3, or Class 7 under the RRA Plan (i) fails or refuses to timely deliver to the Voting Agent a completed and duly executed Verified RRA Collateral Source Recovery Disclosure on or before the Voting Deadline, or (ii) after notice and hearing is determined to have knowingly provided false information in a Verified RRA Collateral Source Recovery Disclosure, then (a) such holder shall be deemed to irrevocably waive its right to receive, and shall be forever barred from receiving, a distribution from the Liquidating Trust on account of such Claim, (b) such Claim shall be deemed disallowed without further order of the Bankruptcy Court, and (c) the Ballot on account of such Claim shall not be counted for purposes of determining whether the applicable Class of Claims has accepted or rejected the RRA Plan. All Entities submitting a Verified RRA Collateral Source Recovery Disclosure shall have an obligation to correct and/or update such

21

Verified RRA Collateral Source Recovery Disclosure as and when such Entity has knowledge that such disclosure was incorrect or has changed, including, but not limited to, when such Entity actually receives a previously anticipated Verified RRA Collateral Source Recovery. Such obligation to correct and/or update shall terminate on the date that the Liquidating Trust makes its final distribution.

(C)  Prior Settlement Agreements.  Nothing in this Agreement is intended to modify or supersede, and nothing herein shall modify or supersede, any settlement agreements that have been approved in the RRA Case by Final Order of the Bankruptcy Court on or before May 8, 2013, including, without limitation the Coquina Settlement Agreement, Funds' Settlement Agreement, the Gibraltar Settlement Agreement, the Levy Settlement Agreement, and the Razorback Settlement Agreement.  The Liquidating Trustee shall reduce distributions, including interim distributions, pursuant to RRA Collateral Source Recoveries as stated in the RRA Plan, to the extent not inconsistent with any relevant provisions of such settlement agreements.  For the avoidance of any doubt, RRA Collateral Source Recoveries received by the holders of Allowed Claims against the RRA Estate shall be calculated and applied in accordance with the applicable terms of any settlement agreement with the RRA Estate that has been approved in the RRA Case by Final Order on or before May 8, 2013 and is applicable to such Allowed Claim, and such holders shall receive distributions on account of such Allowed Claims as, and to the extent, provided in such settlement agreements and the RRA Plan, to the extent not inconsistent with such settlement agreements.

(D)  RRA Collateral Source Recovery Distribution Reductions.  The amount of the distributions, including interim distributions, to be made on account of each Allowed Class 3 or Class 7 Claim in the RRA Plan shall be reduced, on a dollar for dollar basis, by the amount of all RRA Collateral Source Recoveries received from any source.  The amount of the reduction of the distributions, including interim distributions, on account of each Allowed Class 3 or Class 7 Claim's RRA Collateral Source Recovery shall be established in the following manner: on or before the date that is 60 days after the Effective Date (without prejudice to the Liquidating Trustee's right to request an extension of this deadline for cause from the Bankruptcy Court), the Liquidating Trustee shall, after consultation with the Liquidating Trust Oversight Committee, file and serve a notice on all affected parties which (A) provides a schedule of the aggregate RRA Collateral Source Recoveries received from all sources by each holder of a Claim in Class 3 and Class 7, and (B) explicitly identifies the amount by which distributions, including interim distributions, on account of each such holder's Class 3 or Class 7 Claim, as applicable, will be reduced on account of all of such holder's RRA Collateral Source Recoveries. Such notice shall also provide that: (a) the Liquidating Trust Oversight Committee and the holder of a Class 3 or Class 7 Claim whose distribution, including an interim distribution,  is sought to be reduced shall have 30 days from the filing of such notice to object to the relief sought in such notice; (b) all objections to such notice shall be filed with the Bankruptcy Court and served upon the Liquidating Trustee and the Liquidating Trust Oversight Committee; (c) if no timely objection to such notice is filed and served, the Liquidating Trustee shall use the amount of the applicable RRA Collateral Source Recovery indicated on such notice to calculate the reductions to distributions, including interim distributions, to each such holder of a Class 3 or Class 7 Claim, as applicable; and (d) if a timely objection to such notice is filed and served, such objection and the amount of the applicable RRA Collateral Source Recovery shall be resolved by the

22

Bankruptcy Court in accordance with the provisions of this Section 2.16 and the RRA Plan after notice and opportunity for a hearing.

Section 2.17    Claims Objections in Banyon Cases. Subject to the terms of Section 2.13(f) of this Agreement, the RRA Trustee and the Liquidating Trustee, as applicable, and the Banyon Trustee shall have exclusive standing to object to any and all Claims in the Banyon Estates.

Section 2.18    Banyon Estates' Support of the RRA Plan. The Banyon Trustee shall, and shall cause the Banyon Estates to, support, not object to, and vote in favor of the RRA Plan.

Section 2.19    Agreement on Certain Trustees' Commissions. With respect to the moneys disbursed by the Liquidating Trust to the Banyon Estates on account of the Banyon Unsecured Claim and the corresponding Banyon Unsecured Claim moneys disbursed by the Banyon Trustee to creditors of the Banyon Estates, the RRA Trustee and the Banyon Trustee agree (a) to seek in their respective Bankruptcy Cases an allocable share of compensation attributable to a unitary disbursement of the Banyon Unsecured Claim (and not based upon disbursements of such amounts from both the Liquidating Trust and the Banyon Estates), and (b) to allocate such compensation, 30% to the RRA Trustee (or the Liquidating Trustee, as applicable) and 70% to the Banyon Trustee.

Section 2.20    Selection of Liquidating Trustee. Michael I. Goldberg was selected by the Committee, after consultation with the United States Trustee, to be the Liquidating Trustee. The appointment of the Liquidating Trustee shall be ratified by the Confirmation Order and effective as of the Effective Date.

Section 2.21    Liquidating Trust Consent and Review Rights. Subject at all times to the consent and review rights of the Liquidating Trust Oversight Committee set forth in the RRA Plan and/or the Liquidating Trust Agreement, the Liquidating Trustee shall (A) oversee and direct the Liquidating Trust's operations and activities, in accordance with the Liquidating Trust Agreement, including, but not limited to, the retention of post-confirmation professionals, objecting to Claims, reconciling Claims, resolving Claims, otherwise disposing of Claims, prosecution of RRA Litigation Claims, and the settling of RRA Litigation Claims, and (B) have the authority as set forth in Section 5.12 of the Liquidating Trust Agreement to initiate, prosecute, settle, resolve, dismiss, object to, reconcile or otherwise dispose of any Claim or RRA Litigation Claim, all without the need of Bankruptcy Court approval absent the explicit requirement of such approval set forth in the RRA Plan, this Agreement or the Liquidating Trust Agreement; provided, however, that for the avoidance of any doubt, (i) the Liquidating Trustee shall be bound by all prior settlement agreements that have been approved in the RRA Case by Final Order of the Bankruptcy Court as of May 8, 2013, subject to the RRA Collateral Source Recovery provisions set forth in Section 2.16 of this Agreement and Sections 1.19, 1.36, 1.137 and 1.138, as well as Article 3, of the RRA Plan, except to the extent such RRA Collateral Source Recovery provisions are inconsistent with such prior settlement agreements, and (ii) TD Bank shall not have any right (a) to contest any prior settlements agreements that have been approved by a Final Order of the Bankruptcy Court in the RRA Case as of the Effective Date, or (b) to object to any Claims in the RRA Case.

23

Section 2.22    Hiring of Professionals by the Liquidating Trust.  Subsequent to the Effective Date, the Liquidating Trust Oversight Committee shall have review and consent rights regarding the hiring and retention terms of professionals by the Liquidating Trust; provided that, the hiring of certain professionals by the Liquidating Trust remains subject to the applicable provisions of the Gibraltar Settlement Agreement.

Section 2.23    Intentionally Omitted.

Section 2.24    RRA Banyon Senior Subordinated Claims.  The RRA Banyon Senior Subordinated Claims shall not be subject to further objection, reconsideration, reduction, recharacterization, further subordination, impairment, disallowance or reduction in distribution on account of a Banyon Creditor Collateral Resource Recovery, or otherwise in any manner.

Section 2.25    Emess Litigation Dismissal.  Within three (3) Business Days after the Effective Date, the Liquidating Trustee shall dismiss the Emess Litigation with prejudice.

Section 2.26    Obligations Regarding Appeals.  The Trustees, the Committee and the Liquidating Trustee, as applicable, shall (i) prosecute the RRA Plan and the 9019 Motion until the Confirmation Order and the 9019 Order are Final Orders and (ii) oppose and fully prosecute any appeal of the Confirmation Order or the 9019 Order that seeks relief that is adverse to any of the Parties or the Liquidating Trust.  The Trustees, the Committee and the Liquidating Trustee, as applicable, shall use their respective best efforts to have any such appeal (i) dismissed, (ii) resolved in manner that is in form and in substance acceptable to the Parties, or (iii) fully prosecuted so that the relief requested in such appeal is denied Notwithstanding anything herein to the contrary, the Trustees, the Committee and the Liquidating Trustee, as applicable, shall not oppose an appeal of the Confirmation Order or the 9019 Order filed by the Trustees or TD Bank, so long as the relief sought by such appeal is in accordance with the terms of the RRA Plan and this Agreement.

Section 2.27    TD Bank Standing Regarding Appeals.  TD Bank shall have standing to prosecute or defend any appeal of the Confirmation Order or the 9019 Order.

Section 2.28    TD Bank Junior Subordinated Claims.  The TD Bank Junior Subordinated Claims shall not be subject to further objection, reconsideration, reduction, recharacterization, further subordination, impairment, disallowance or reduction in distribution on account of an RRA Collateral Source Recovery or a Banyon Creditor Collateral Resource Recovery, or otherwise in any manner.

Section 2.29    Selection of Liquidating Trust Oversight Committee.  The Committee shall designate the members of the Liquidating Trust Oversight Committee.  The members of the Liquidating Trust Oversight Committee shall be identified no later than ten (10) Business Days subsequent to entry of the Disclosure Statement Approval Order.  The appointment of the Liquidating Trust Oversight Committee shall be ratified by the Confirmation Order and effective as of the Effective Date.  Any successor members of the Liquidating Trust Oversight Committee shall be appointed in accordance with the RRA Plan.

Section 2.30    TD Bank Litigation Dismissal.  Within three (3) Business Days after the Effective Date, the Liquidating Trustee shall, on behalf of the RRA Trustee, RRA and the RRA Estate, dismiss with prejudice the RRA Complaint in the adversary proceeding brought by the RRA Trustee against TD Bank that is pending in the Bankruptcy Court as adversary proceeding number 11-02368-RBR.

Section 2.31    Temporary Stay.  The RRA Trustee and/or the Banyon Trustee shall, upon the reasonable request of TD Bank, file pleadings in support of and cooperate in obtaining a stay of litigation and discovery against or from any TD Bank Releasee in any litigation brought against such TD Bank Releasee in connection with, pertaining to, arising out of or related to the Cases, Rothstein or the Ponzi scheme orchestrated or operated by Rothstein, while approval of this Agreement and the RRA Plan is sought.

Section 2.32    Approval of Terms of this Agreement.  The Confirmation Order and the 9019 Order shall contain provisions which authorize and direct the implementation of all of the terms and provisions of this Agreement.

Section 2.33    Assignment of Banyon Levin Claims.  Upon the occurrence of the Effective Date, without execution of any further documentation, each of the Banyon Estates hereby irrevocably assigns, transfers, and conveys the Banyon Levin Claims and/or any proceeds thereof to TD Bank free and clear of all liens, Claims and encumbrances.  Upon the occurrence of the Effective Date, the Banyon Levin Claims shall unconditionally and irrevocably vest with TD Bank and TD Bank shall have the exclusive right and standing to enforce any and all of the Banyon Levin Claims, including, but not limited to, the rights and powers of a trustee and debtor-in-possession, and shall be entitled to all remedies available to the Banyon Trustee in the Banyon Cases, for the sole benefit of TD Bank.

Section 2.34    Assignment of RRA Levin Claims.  Upon the occurrence of the Effective Date, without execution of any further documentation, the RRA Estate hereby irrevocably assigns, transfers, and conveys the RRA Levin Claims and/or any proceeds thereof to TD Bank free and clear of all liens, Claims and encumbrances.  Upon the occurrence of the Effective Date, the RRA Levin Claims shall unconditionally and irrevocably vest with TD Bank and TD Bank shall have the exclusive right and standing to enforce any and all of the RRA Levin Claims, including, but not limited to, the rights and powers of a trustee and debtor-in-possession, and shall be entitled to all remedies available to the RRA Trustee in the RRA Case, for the sole benefit of TD Bank.

Section 2.35    Levin Claims Cooperation.  The Trustees and the Liquidating Trustee hereby agree that upon the reasonable request of TD Bank, the Trustees shall provide or make available any and all data, records and documents regarding the Levin Claims in their actual possession, to TD Bank, subject to entry into mutually acceptable written agreements in order to preserve any applicable attorney client privileges and protections afforded by the work product protection doctrine.

Section 2.36    Hearings on 9019 Motion and Confirmation Hearing.  The Parties and the Committee intend that the hearing on the approval of the 9019 Motion and the Confirmation Hearing shall be held substantially contemporaneously.

25

Section 2.37    Stay.  The Trustees shall stay any and all litigation and/or discovery brought by any of the Estates against any TD Bank Releasee while approval of this Agreement and the RRA Plan is sought.

## ARTICLE III
## RELEASES AND BAR ORDERS

Section 3.1    Release of TD Bank Releasees.  Upon the occurrence of the Effective Date, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, except as expressly provided in the RRA Plan or this Agreement, the RRA Releasors and the Banyon Releasors (collectively, the "*Releasors*") shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the TD Bank Releasees from any and all Claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever (including Unknown Claims), whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which the Releasors, or any of them, or anyone claiming through them, on their behalf or for their benefit may have or claim to have, now or in the future, against any TD Bank Releasee that are based upon, relate to, or arise out of, in connection with or pertain to (a)(i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors; (b) any act, fact, transaction, event, occurrence, statement or omission in connection with (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors; or (c) anything alleged in any complaint asserted by a Releasor against a TD Bank Releasee, including, but not limited to, those alleged in the RRA Complaint, or that could have been alleged in any such complaint, or other similar proceedings, including, without limitation, the Banyon Asserted Claims and Unknown Claims (collectively, the "*Released Claims*"); provided, however, the release in favor of the TD Bank Releasees described herein shall not (A) effect a release of any Claim by the United States Government or any of its agencies or any state and local governmental authority whatsoever against the TD Bank Releasees, or (B) enjoin the United States Government or any of its agencies or any state and local governmental authority whatsoever from bringing any Claim, suit, action or other proceedings against the TD Bank Releasees asserting any other liability, including without limitation any Claim, suit or action arising under the IRC, securities laws, environmental laws or any criminal laws of the United States or any state or local jurisdiction.  Notwithstanding anything contained in this Section 3.1 or elsewhere in this Agreement, or in the RRA Plan to the contrary, the foregoing is not intended to release, nor shall it have the effect of releasing, (x) TD Bank from the performance of its obligations in accordance with the RRA Plan or the Settlement Agreement, including, without limitation, any Claim, demand or cause of action relating to the payment of the TD Bank Contribution; or (y) any Released Claim held by TD Bank or its affiliates, including, but not limited to, the release of any Claim that would otherwise be a Released Claim by TD Bank or its affiliates against another TD Bank Releasee.

26

Section 3.2    Unknown Claims.  An "*Unknown Claim*" is any Released Claim that any Releasor does not know or suspect to exist in his, her or its favor at the time of giving the release required by Section 3.1 of this Agreement and Section 10.6 of the RRA Plan that if known by him, her or it, might have affected his, her or its settlement and release.  With respect to any and all Released Claims, each Releasor shall expressly waive or be deemed to have waived, and by operation of the 9019 Order and the Confirmation Order shall have waived the provisions, rights and benefits of California Civil Code § 1542 (to the extent it applies herein), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

Each Releasor expressly waives, and shall be deemed to have waived, and by operation of the 9019 Order and the Confirmation Order shall have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to California Civil Code § 1542.  The Releasors may hereafter discover facts in addition to or different from those that any of them now knows or believes to be true with respect to the subject matter of the Released Claims, but each Releasor shall expressly have and shall be deemed to have, and by operation of the 9019 Order and the Confirmation Order shall have fully, finally and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or noncontingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery of existence of such different or additional facts.  Each Releasor acknowledges and shall be deemed to have acknowledged, and by operation of the 9019 Order and the Confirmation Order shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

Section 3.3    TD Bank Releasee Injunction and Bar Order.  (A) The effectiveness of the compromise and settlement set forth in this Agreement is conditioned upon, among other things, the Bankruptcy Court entering the 9019 Order and Confirmation Order which, upon the occurrence of the Effective Date, shall act as an injunction against each and every Entity, including, without limitation, the plaintiffs in regard to the lawsuits enumerated on Exhibit "D" hereof, and each and every Entity is hereby permanently enjoined, barred and restrained from instituting, prosecuting, continuing, pursuing or litigating in any manner:

1.  any Released Claim; and

2.  any action, suit or proceeding against any TD Bank Releasee (except as against Emess Capital, L.L.C.), including, without limitation (in each case, whether pre-judgment or post-judgment) enforcing, levying, employing legal process, attaching, garnishing, sequestering, bringing proceedings supplementary to execution, collecting or otherwise recovering by any means or in any manner from any TD

27

Bank Releasee based upon any liability or responsibility, or asserted or potential liability or responsibility, directly or indirectly, of any TD Bank Releasee to or for the benefit of any Entity arising from, in any way related to, based upon, arising in connection with or pertaining to:

(a)(i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors;

(b) the Released Claims; or

(c) any other Claims, acts, facts, transactions, events, occurrences, statements or omissions that are, could have been or may be alleged against the TD Bank Releasees, including, without limitation, those asserted in the RRA Complaint, the Banyon Asserted Claims and the Third Party Claims or in any other complaint, action, suit or proceeding brought or that might be brought by, through, on behalf of, or for the benefit of any Entity (whether arising under federal, state or foreign law and regardless of where asserted), including, without limitation, any Unknown Claims, that is in any way related to: (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors;

(B) Notwithstanding the foregoing subsection (A), Section 3.3:

1.      Shall not enjoin or bar any action or Claim by TD Bank or its affiliates, including, but not limited to, the assertion of any Claim that would otherwise be a Released Claim by TD Bank or its affiliates against another TD Bank Releasee;

2.      Shall not enjoin or bar any action or Claim against TD Bank filed by Coquina Investments in the matter captioned *Coquina Investments v. Rothstein, et al.*, 10-cv-60786 (S.D. Fla.), including, but not limited to, the pending appeal and cross-appeal of the decisions and orders issued in the U.S. District Court for the Southern District of Florida (Miami Division) that is currently pending in the Court of Appeals docketed at case no. 12-11161, including any subsequent related appeal, review or remand;

3.      Shall not (i) enjoin any Claim by the United States Government or any of its agencies or any state and local governmental authority whatsoever against the TD Bank Releasees, or (ii) enjoin the United States Government or any of its agencies or any state and local governmental authority whatsoever from bringing any Claim, suit, action or other proceedings against the TD Bank Releasees asserting any other liability, including without limitation any Claim, suit or action arising under the IRC, securities laws, environmental laws or any criminal laws of the United States or any state or local jurisdiction;

28

4.     Shall not enjoin or bar the prosecution of that certain *Plaintiffs' Amended Motion for Sanctions Against TD Bank, N.A.* dated as of December 10, 2012 currently pending in the Broward County Circuit Court before the Honorable Judge Jeffrey E. Streitfeld in the case captioned *Razorback Funding et al. v. Scott W. Rothstein, et al.,* Case No. 09-062943 (07); and

5.     Shall not bar any claim or action which is not, or was not, within the subject matter jurisdiction of the Bankruptcy Court as determined by Final Order of the Bankruptcy Court or of the District Court (which Final Order may be entered after the Effective Date), including any claim or action that is an independent claim not permitted to be barred under controlling Eleventh Circuit precedent.

Section 3.4     <u>Bar of Equitable Defenses</u>.  The assertion of any and all defenses, equitable or otherwise, against the RRA Estate, the Liquidating Trust or the Banyon Estates in any litigation, including the RRA Litigation Claims and the Banyon Litigation Claims, or the Claims reconciliation and objection process brought by the Trustees, any Liquidating Trust, the Liquidating Trustee or other similar estate representative based in whole or in part on TD Bank's interest in the Liquidating Trust, TD Bank's potential recovery as a beneficiary under the Liquidating Trust, or TD Bank's recovery on account of its Claims against any of the Estates shall be barred.

Section 3.5     <u>TD Bank Release</u>.  Upon the occurrence of the Effective Date, and without the need for the execution and delivery of additional documentation or the entry of any additional orders of the Bankruptcy Court, except as expressly provided in the RRA Plan or this Agreement, TD Bank shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Estates, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the RRA Case as of the Confirmation Date (only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustees and any professionals retained by the Estates in the Cases by Final Order of the Bankruptcy Court on or before May 8, 2013 from any and all Claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, covenants, contracts, agreements, promises, damages, judgments, debts, encumbrances, liens, remedies and demands, of any and every kind, character or nature whatsoever, whether liquidated or unliquidated, asserted or unasserted, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, at equity or otherwise, which TD Bank, or anyone claiming through it, on its behalf or for its benefit, may have or Claim to have, now or in the future, against the Estates, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the RRA Case as of the Confirmation Date (only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustees and any professionals retained by the Estates in the Cases by Final Order of the Bankruptcy Court on or before May 8, 2013 that are based upon, relate to, or arise out of, in connection with or pertain to (a)(i) the Cases, (ii) the Ponzi scheme orchestrated or operated by Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors, or (b) any act, fact, transaction, event, occurrence, statement or omission in connection with (i) the Cases, (ii) the Ponzi scheme orchestrated or operated by

29

Rothstein, (iii) Rothstein and any other co-conspirator or aider and abettor, (iv) the RRA Releasors, (v) the principals of the RRA Releasors, (vi) the Banyon Releasors, or (vii) the principals of the Banyon Releasors, or (c) anything alleged in the RRA Complaint, or that could have been alleged in the RRA Complaint, or other similar proceedings.  Notwithstanding anything contained in this Section 3.5 or elsewhere in this Agreement or the RRA Plan to the contrary, the foregoing is not intended to release, nor shall it have the effect of releasing, (x) the Estates, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the RRA Case as of the Confirmation Date (but only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustees and any professionals retained by the Estates, or the Liquidating Trustee from the performance of their respective obligations in accordance with the RRA Plan or this Agreement, or (y) the Estates, the Committee, the members of the Official Committee of Unsecured Creditors appointed in the RRA Case as of the Confirmation Date (but only in their capacity as  members of the Official Committee of Unsecured Creditors and not in their individual capacities (e.g., as a creditor)), the Trustees and any professionals retained by the Estates, or the Liquidating Trustee from making any distribution to TD Bank on account of (A) the TD Bank Junior Subordinated Claims, or (B) on any Claim or recovery assigned, participated or transferred, in whole or in part, to TD Bank on or after May 8, 2013.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES

Section 4.1    <u>Representation and Warranties of TD Bank</u>. TD Bank hereby represents and warrants that as of the Effective Date: (a) it is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with all requisite power and authority to carry on the business in which it is engaged, to own the properties it owns, to execute this Agreement and to consummate the transactions contemplated hereby; (b) it has full requisite power and authority to execute and deliver and to perform its obligations under this Agreement, and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith (i) have been duly and validly authorized by it and (ii) are not in contravention of its organizational documents or any agreements specifically applicable to it; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it which would adversely affect its ability to enter into this Agreement or to perform its obligations hereunder.

Section 4.2    <u>Representation and Warranties of the Trustees</u>.  Each of the Trustees and the Estates hereby represent and warrant that as of the Effective Date: (a) subject to entry of the 9019 Order and/or the Confirmation Order, it or he is not precluded from executing this Agreement and consummating the transactions contemplated hereby; (b) subject to entry of the 9019 Order and/or the Confirmation Order, it or he has full requisite power and authority to execute and deliver and to perform its or his obligations under this Agreement and the execution, delivery and performance hereof, and the instruments and documents required to be executed by it in connection herewith; (c) no proceeding, litigation or adversary proceeding before any court, arbitrator or administrative or governmental body is pending against it or him which would adversely affect its or his ability to enter into this Agreement or to perform its or his obligations hereunder; (d) subject to the entry of the 9019 Order and/or the Confirmation Order, it or he has

30

the power and authority to bind the applicable Estate to the terms of this Agreement or otherwise has been duly authorized to execute and deliver this Agreement on its behalf; and (e) each of the Trustees has and will pursue the approval of this Agreement in good faith.

## ARTICLE V
## COVENANTS

Section 5.1    Covenants of TD Bank.  TD Bank hereby covenants and agrees that it shall cause its subsidiaries and affiliates to take all actions reasonably necessary to obtain and shall take no action to impede or preclude the entry of the Confirmation Order, the 9019 Order, the administration of the RRA Case or the Banyon Cases, or the implementation and administration of the RRA Plan subject to the provisions hereof.

Section 5.2    Covenants of the Estates.  Each of the Trustees, for themselves and, as applicable, on behalf of the Estates, hereby covenants and agrees as follows:

(a)    The Estates shall take, and shall cause their subsidiaries and affiliates to take, all actions reasonably necessary to obtain and shall take no action to impede or preclude, the entry of the Confirmation Order or the 9019 Order.

(b)    None of the Trustees of the Estates or the Liquidating Trustee shall: (i) file any additional Claims, commence or prosecute any pending or additional litigation, proceeding, action, or matter or seek to recover damages or to seek equitable relief against any TD Bank Releasee; and (ii) directly or indirectly aid any Entity in taking any act prohibited by clause (i) of this Section 5.2(b).

(c)    On the Effective Date, and without limiting the generality of the foregoing, the Trustees, the Liquidating Trustee, the Estates, and the Liquidating Trust shall be deemed to have covenanted not to sue the TD Bank Releasees and to be permanently barred and enjoined from instituting, prosecuting, pursuing or litigating in any manner against the TD Bank Releasees.

## ARTICLE VI
## EFFECTIVENESS AND TERMINATION OF AGREEMENT

Section 6.1    Closing.  The consummation of the transactions contemplated hereby shall take place at 10:00 a.m., prevailing Eastern time, on the Effective Date at the offices of Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, or such other date or place as is mutually agreed upon in writing by the Parties hereto.

Section 6.2    Conditions to Effective Date.  The terms and provisions of this Agreement are expressly subject to the occurrence of the following conditions:

(a)    each of the entities identified on the signature pages of this Agreement shall have executed and delivered this Agreement;

(b)    the representations and warranties of each Party contained in Article IV hereof shall be true and correct as of the date hereof, and as of the Effective Date;

48254260-3

(c)    the Disclosure Statement for the RRA Plan shall be in form and substance agreeable to TD Bank, the Banyon Trustee, and the Plan Proponents;

(d)    the Disclosure Statement Approval Order shall be in form and substance agreeable to TD Bank, the Banyon Trustee, and the Plan Proponents and the Disclosure Statement Approval Order shall have become a Final Order;

(e)    the RRA Plan shall be in form and substance agreeable to TD Bank, the Banyon Trustee, and the Plan Proponents;

(f)    the 9019 Motion shall be in form and substance satisfactory to TD Bank, the Banyon Trustee, and the Plan Proponents;

(g)    the Bankruptcy Court shall have entered the Confirmation Order which, *inter alia*, confirms the RRA Plan, ratifies the Committee's selection of the Liquidating Trustee and the Liquidating Trust Oversight Committee, and authorizes and directs the RRA Trustee, the Liquidating Trustee and the RRA Estate to perform all of their obligations under this Agreement and is in form and substance satisfactory to TD Bank, the Banyon Trustee, and the Plan Proponents;

(h)    the Confirmation Order shall not have been stayed and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such Confirmation Order;

(i)    this Agreement shall be in form and substance agreeable to TD Bank, the Banyon Trustee, and the Plan Proponents;

(j)    the Bankruptcy Court shall have approved, in all respects, this Agreement;

(k)    the Bankruptcy Court shall have entered the 9019 Order, which, *inter alia*, authorizes and directs the Trustees, the Liquidating Trustee, and the Estates to perform all of their obligations under this Agreement and is in form and substance satisfactory to TD Bank, the Banyon Trustee, and the Plan Proponents;

(l)    the 9019 Order shall not have been stayed and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such 9019 Order;

(m)    the Liquidating Trust Agreement is in form and substance satisfactory to TD Bank and the RRA Trustee;

(n)    the Liquidating Trust Agreement shall have been executed and delivered by the Liquidating Trustee and the RRA Trustee;

(o)    the RRA Trustee on behalf of the RRA Estate has transferred the Assets (as such term is defined in the RRA Plan) to the Liquidating Trust; provided that the RRA Trustee shall not have any obligation to transfer the Assets unless and until all other conditions to effectiveness contained in this Section of the Agreement, except the

32

condition set forth in Section 6.2(p) of this Agreement,  shall have been satisfied or waived in accordance with this Section of the Agreement;

(p)     TD Bank shall have made the TD Bank Contribution; provided that TD Bank shall not have any obligation to make the TD Bank Contribution unless and until all other conditions to effectiveness contained in this Section of the Agreement and the RRA Plan have been satisfied or waived in accordance with this Section of the Agreement;

(q)     all other documents, instruments and agreements, in form and substance satisfactory to TD Bank, the Banyon Trustee, and the Plan Proponents, provided for under this Agreement, the RRA Plan or necessary to implement the RRA Plan, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby; and

(r)     the RRA Plan shall have become effective by its terms.

Provided that any of the conditions to the Effective Date contained in this Section 6.2 may be waived by written agreement among and signed by all of the Parties.

Section 6.3     Termination of this Agreement.  This Agreement may be terminated by any of the Parties, at each Party's option and discretion, in the event that (i) each of the 9019 Order and the Confirmation Order are not entered by the Bankruptcy Court on or before July 19, 2013; or (ii) the Effective Date of the Agreement has not occurred or the RRA Plan has not become effective by its terms, on or before July 31, 2013.  In addition, TD Bank may terminate this Agreement in the event the RRA Case is converted to a case under Chapter 7 of the Bankruptcy Code.  If this Agreement is terminated pursuant to this Section 6.3, no Party hereto shall have any obligation or liability to any other Party; provided, that nothing herein shall relieve a defaulting or breaching Party from any liability or damages arising out of its breach of any provision of this Agreement.

## ARTICLE VII
## MISCELLANEOUS

Section 7.1     Amendments. This Agreement may not be modified, amended or supplemented except by a written agreement executed by each Party to be affected by such modification, amendment or supplement.

Section 7.2     No Admission of Liability; No Estoppel Effect.

(a)     The execution of this Agreement is not intended to be, nor shall it be construed as, an admission or evidence in any pending or subsequent suit, action, proceeding or dispute of any liability, wrongdoing, or obligation whatsoever (including as to the merits of any Claim or defense) by any Party to any other Party or any other Person with respect to any of the matters addressed in this Agreement.

(b)     None of this Agreement, the settlement or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement: (i) is or may be deemed to be or may be used as an admission or evidence of the validity of any Claim, or any

33

allegation made in the RRA Complaint, the Banyon Asserted Claims, the Third Party Claims or of any wrongdoing or liability of any TD Bank Releasee; (ii) is or may be deemed to be or may be used as an admission or evidence of any liability, fault or omission of any TD Bank Releasee, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or used as admission or evidence against the Estates, the Liquidating Trust, the Liquidating Trustee or a Trustee with respect to the validity of any of the Claims; or (iv) is or may be deemed to be or used as admission or evidence of or have any evidentiary, res judicata, or collateral estoppel effect on the Estates', the Liquidating Trust's, the Trustees', or the Liquidating Trustee's ability to assert RRA Collateral Source Recoveries or Banyon Creditor Collateral Source Recoveries, as applicable, against any party other than a TD Bank Releasee.  None of this Agreement, the settlement, or any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement shall be admissible in any proceeding for any purposes, except to enforce the terms of the Agreement, and except that any TD Bank Releasee may file this Agreement in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of Claim preclusion or issue preclusion or similar defense of counterclaim.

Section 7.3    Good Faith Negotiations.  The Parties further recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement.  Each of the Parties acknowledges that the negotiations leading up to this Agreement were conducted regularly, at arm's length, and in good faith; this Agreement is made and executed by and of each Party's own free will; that each knows all of the relevant facts and his or its rights in connection therewith; and that he or it has not been improperly influenced or induced to make this settlement as a result of any act or action on the part of any party or employee, agent, attorney or representative of any party to this Agreement.  The Parties further acknowledge that they entered into this Agreement because of their desire to avoid the further expense and inconvenience of litigation and other disputes, and to compromise permanently and settle the Claims between the Parties that are settled by the execution of this Agreement.

Section 7.4    Third Party Beneficiaries.  Nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties hereto, the TD Bank Releasees, and their respective successors and assigns, any right, remedy or Claim under or by reason of this Agreement or any covenant, condition or stipulation thereof, and the covenants, stipulations and agreements contained in this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto, the TD Bank Releasees and their respective successors and assigns.  For the avoidance of doubt, only the signatories hereto and the Liquidating Trustee may seek to enforce this Agreement.

Section 7.5    Governing Law; Retention of Jurisdiction; Service of Process.  This Agreement shall be governed by and construed in accordance with the federal law as it pertains to bar orders and the Bankruptcy Code and administration of estates in bankruptcy, as well as the internal laws of the State of Florida, without giving effect to any principles of conflicts of law.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees that any legal action, suit or proceeding between the Parties with respect to any matter under or arising out of or in connection with this Agreement or for recognition or

34

enforcement of any judgment rendered in any such action, suit or proceeding shall be brought in the Bankruptcy Court for that purpose only, and, by execution and delivery of this Agreement, each Party hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding.  In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 7.12 hereof, unless another address had been designated by such Party in a notice given to the other Parties in accordance with Section 7.12 hereof.

Section 7.6    Specific Performance.  Subject to the entry of the 9019 Order and the Confirmation Order by the Bankruptcy Court, and each of them becoming Final Orders, it is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach.

Section 7.7    Fees and Expenses.  If any Party brings an action against any other Party based upon a breach by the other Party of its obligations under this Agreement, the prevailing Party shall be entitled to all reasonable expenses incurred, including reasonable attorneys' fees and expenses.

Section 7.8    Headings.  The headings of the Sections, paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way limit or modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 7.9    Binding Agreement Successors and Assigns; Joint and Several Obligations.  This Agreement shall be binding upon the Estates and TD Bank only upon the occurrence of the Effective Date.  This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, constituents and representatives.  This Agreement shall be binding on the Liquidating Trust and the Liquidating Trustee as the successors to the RRA Estate and the RRA Trustee, respectively.  The agreements, representations, covenants and obligations of the Parties under this Agreement are several only and not joint in any respect and none shall be responsible for the performance or breach of this Agreement by another.

Section 7.10    Entire Agreement.  This Agreement constitutes the full and entire agreement among the Parties with regard to the subject hereof, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof.  No Party has entered into this Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Agreement.

Section 7.11    Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which,

35

when taken together, shall constitute one and the same Agreement.  Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

    Section 7.12    Notices.  Any notice required or permitted to be provided under this Agreement shall be in writing and served by electronic mail and either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

    If to the RRA Trustee, to:

        Herbert Stettin
        4000 Ponce de Leon Boulevard
        Suite 570
        Coral Gables, FL  33146
        Tel: (305) 374-3353
        Fax: (305) 374-7632
        Email c/o:   singerman@bergersingerman.com

        and

        Herbert Stettin
        5401 Hammock Drive
        Coral Gables, FL  33156

        with a copy to:

        Berger Singerman LLP
        1450 Brickell Avenue
        Suite 1900
        Miami, FL 33131
        Attn: Paul Steven Singerman
        Telephone: (305) 714-4343
        Facsimile: (305) 714-4340
        Email: singerman@bergersingerman.com

        and

        John H. Genovese

48254260-3

Genovese Joblove & Battista, P.A.
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 372-2462
Facsimile: (305) 428-8802
Email: jgenovese@gjb-law.com

If to the Banyon Trustee, to:

Robert C. Furr, Trustee
Furr and Cohen, P.A.
2255 Glades Rd. Suite 337w
Boca Raton, FL  33431
Telephone: (561) 395-0500
Facsimile:  561-338-7532
Email: rfurr@furrcohen.com
with copy to:

Russell Blain
Stichter, Riedel, Blain & Prosser, P.A.
110 East Madison Street
Suite 200
Tampa, FL 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
Email:  rblain@srbp.com

If to TD Bank, to:

TD Bank, N.A.
Legal Department
1701 Route 70 East
Cherry Hill, NJ 08034
Attn: Craig Baldauf
Telephone: (856) 874-2455
Facsimile:  (856) 874-2423
E-mail: craig.baldauf@td.com

with a copy to:

Dion W. Hayes
McGuireWoods LLP
One James Center
901 East Cary Street
Richmond, VA 23219
Telephone: (804) 775-1144

37

Facsimile:  (804) 698-2078
Email:  dhayes@mcguirewoods.com

If to the Liquidating Trustee, to the address and e-mail address identified on the notice identifying the Liquidating Trustee or his successor, filed with the Bankruptcy Court.

If to the members of the Liquidating Trust Oversight Committee, to the addresses and e-mail addresses identified on the notice identifying the members of the Liquidating Trust Oversight Committee or a member's successor, filed with the Bankruptcy Court.

Section 7.13   Further Assurances.  Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Agreement.

Section 7.14   Publicity.  In connection with the filing of the 9019 Motion and the RRA Plan with the Bankruptcy Court, neither of the Trustees shall issue any press release or otherwise make any statement to the media regarding this Agreement or the transactions contemplated hereby unless it is mutually acceptable to such Trustee and TD Bank.

38

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the dates set forth above.

DATED:  May 29, 2013

TD BANK, N.A.

By: _____

Name: Craig R. Baldauf

Title:   Global Head of Litigation


_____

HERBERT STETTIN, not individually but
solely as Chapter 11 Trustee of
ROTHSTEIN ROSENFELDT ADLER, P.A.


_____

ROBERT C. FURR, not individually but solely
as Chapter 7 Trustee of
BANYON 1030-32, LLC, and Chapter 7 Trustee of
BANYON INCOME FUND, L.P.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the dates set forth above.

DATED:  May 29, 2013


TD BANK, N.A.


By:_____

Name: _____

Title:_____


_____

HERBERT STETTIN, not individually but
solely as Chapter 11 Trustee of
ROTHSTEIN ROSENFELDT ADLER, P.A.



_____

ROBERT C. FURR, not individually but solely
as Chapter 7 Trustee of
BANYON 1030-32, LLC, and Chapter 7 Trustee of
BANYON INCOME FUND, L.P.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the dates set forth above.

DATED:  May 29, 2013


TD BANK, N.A.


By:_____

Name:_____

Title:_____



_____

HERBERT STETTIN, not individually but
solely as Chapter 11 Trustee of
ROTHSTEIN ROSENFELDT ADLER, P.A.


_____

ROBERT C. FURR, not individually but solely
as Chapter 7 Trustee of
BANYON 1030-32, LLC, and Chapter 7 Trustee of
BANYON INCOME FUND, L.P.


48254260-3

EXHIBIT A

Second Amended Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code
Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors
(as Modified) Dated May 29, 2013 and Filed in the RRA Case

EXHIBIT B

VERIFIED BANYON CREDITOR COLLATERAL SOURCE RECOVERY DISCLOSURE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 7 |
| BANYON 1030-32, LLC,<br>BANYON INCOME FUND, L.P., | Case Nos.  10-33691-RBR<br>            11-40929-RBR |
| Debtors. | *Jointly Administered under*<br>*Case No. 10-33691-RBR* |

## VERIFIED BANYON CREDITOR COLLATERAL SOURCE RECOVERY DISCLOSURE

YOU ARE RECEIVING THIS FORM BECAUSE THE BANYON TRUSTEE BELIEVES
YOU MAY HOLD A CLAIM IN EITHER OF THE ABOVE-CAPTIONED JOINTLY
ADMINISTERED CHAPTER 7 BANKRUPTCY CASES.

By Order entered on _____, 2013 (the "Settlement Order"), the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "Bankruptcy Court") approved the *Banyon Trustee's Motion to Approve (1) Agreement with TD Bank, N.A. and Herbert Stettin, as Chapter 11 Trustee of the Rothstein Rosenfeldt Adler, P.A. Bankruptcy Estate, (2) Entry of Bar Order, and (3) Approval of the Banyon Estates' Vote to Accept the RRA Plan* (the Settlement Agreement approved in the Settlement Order is referred to herein as the "Settlement Agreement").[1]

Under the terms of the Settlement Order, in order to receive a distribution from the bankruptcy estates of Banyon 1030-32, LLC or Banyon Income Fund, L.P. (collectively, the "Banyon Estates"), you must deliver this Verified Banyon Creditor Collateral Source Recovery Disclosure to Robert C. Furr, chapter 7 trustee for the Bankruptcy Estates (the "Banyon Trustee"), 2255 Glades Road, Suite 337w, Boca Raton, Florida 33431, so that it is actually received by the Banyon Trustee not later than _____, 2013.

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

> **IF YOU FAIL OR REFUSE TO DELIVER THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE TO THE BANYON TRUSTEE SO THAT IT IS ACTUALLY RECEIVED BY THE BANYON TRUSTEE NOT LATER THAN_____, 2013, OR IF, AFTER NOTICE AND A HEARING, IT IS DETERMINED THAT YOU PROVIDED MATERIALLY FALSE INFORMATION IN THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE, THEN YOUR RIGHT TO RECEIVE ANY DISTRIBUTION FROM THE BANYON ESTATES MAY BE IRREVOCABLY WAIVED, AND YOUR CLAIM AGAINST THE BANYONS ESTATES MAY BE DISALLOWED.**

## <u>DEFINITIONS:</u>

A.      "You" and "Your" refers to the Entity or Person filling out this Verified Collateral Source Recovery Disclosure and all agents, attorneys, third parties or other person or legal entity acting, or purporting to act on your behalf, in concert with you or under your control.

B.      "Collateral Source Recoveries" for the purpose of this Verified Banyon Creditor Collateral Source Recovery Disclosure means the gross amount (before deducting any fees, costs or other expenses incurred or paid in connection with your pursuit of any Collateral Source Recovery) of Cash and non-Cash assets received by you, available to you, received for your benefit, applied to your indebtedness (whether made or to be made directly or indirectly to such holder or any agent, attorney, or other third party associated with the holder), from all parties and sources, including, without limitation, TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action, on account of or in any way related to any loss that you have that is directly or indirectly related to: (i) the Ponzi scheme orchestrated or operated by Scott W. Rothstein; (ii) Scott W. Rothstein and/or his co-conspirators, (iii) Rothstein Rosenfeldt Adler, P.A, and (iv) Banyon 1030-32, LLC and Banyon Income Fund, L.P.; <u>provided however</u>, that for the avoidance of any doubt, Collateral Source Recoveries do not include any tax benefit from a theft loss deduction taken in accordance with the Internal Revenue Code, or other tax benefits received by a holder of a Claim, in either case as a result of losses in connection with the Ponzi scheme orchestrated or operated by Rothstein.

Disclosure:

1.  Creditor's Contact Information

    a.   Your full legal name:

    _____

    b.   Your complete street address:

    _____

    c.   Your complete mailing address:

    _____

2

2. Have You:

    a. Filed or otherwise made a claim for restitution or return of forfeited assets with the Federal Bureau of Investigations ("FBI"), the United States Attorney's Office, or any other federal agency in connection with the case of *United States v. Scott W. Rothstein*, 09-60331-JIC (S.D. Fla. 2009).

☐ YES.   ☐ NO.

    b. Sought compensation, recovery, redress, damages, or any other form of relief against any party other than the Banyon Estates as a result of the alleged actions, inactions or omissions of any or all of: (i) Scott W. Rothstein and/or his co-conspirators, (ii) Rothstein Rosenfeldt Adler, P.A, (iii) Banyon 1030-32, LLC and Banyon Income Fund, L.P., and (iv) TD Bank, N.A. as related to any of (a) Scott W. Rothstein and/or his co-conspirators, (b) Rothstein Rosenfeldt Adler, P.A., and (c) Banyon 1030-32, LLC and Banyon Income Fund, L.P.

☐ YES.   ☐ NO.

If You answered "YES" to question 2(a) or 2(b) then proceed to question 3.

If You answered "NO" to both question 2(a) and 2(b) then proceed to sign the attestation at the end of this document.

3. The name and address of each party other than the above-captioned debtor against whom You have made a demand that has given rise to a Collateral Source Recovery:

_____
_____

4. As of the date this form is completed, provide the gross recoveries You have received (before deducting any cost or expense, including attorneys' fees and costs paid or incurred by the holder):

Amount: _____

5. The Collateral Source Recoveries that the undersigned has received, as disclosed in response to question number 4 above, were premised on the following legal claims or theories:

_____
_____

6. The name and address of each party other than the above-captioned debtor against whom You have made a demand that may give rise to a Collateral Source Recovery:

_____
_____

7.  Do you anticipate receiving Collateral Source Recoveries from any of the sources disclosed in question number 6?

☐ YES. ☐ NO.

8.  If you answered "Yes" to question number 7, from which source(s) do you anticipate receiving Collateral Source Recoveries:

_____

_____

BY EXECUTING THIS DISCLOSURE, I UNDERSTAND THAT I AM REQUIRED TO REMIT TO THE BANYON TRUSTEE:  (I) DISTRIBUTIONS I RECEIVE IN EXCESS OF THE AMOUNT I WAS ENTITLED TO RECEIVE ON ACCOUNT OF MY CLAIM IF ALLOWED; (II) DISTRIBUTIONS I RECEIVED ON ACCOUNT OF MY CLAIM THAT IS DISALLOWED SUBSEQUENT TO A DISTRIBUTION BEING MADE; AND (III) AN AMOUNT OF CASH EQUAL TO THE VALUE OF ALL COLLATERAL SOURCE RECOVERIES I RECEIVE ON ACCOUNT OF MY CLAIM THAT WERE NOT DISCLOSED AS HAVING BEEN RECEIVED AS OF THE DATE OF THIS DISCLOSURE (WHETHER EXISTING AT THE TIME OF THIS DISCLOSURE OR ARISING IN THE FUTURE); PROVIDED, HOWEVER THAT IN NO EVENT SHALL I BE REQUIRED TO REMIT CASH TO THE BANYON TRUSTEE IN AN AMOUNT THAT IS GREATER THAN THE AMOUNT OF MY DISTRIBUTIONS ON SUCH CLAIM.

I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED STATES OF AMERICA THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

Name of Creditor: _____

By:_____
      [Print Name]

Title:_____

Signature:_____

Sign and Return To:

**Robert C. Furr, Trustee**
**Furr and Cohen, P.A.**
**2255 Glades Road, Suite 337w**
**Roca Raton, Florida 33431**

4

48254260-3

EXHIBIT C

VERIFIED RRA COLLATERAL SOURCE RECOVERY DISCLOSURE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.                Case No. 09-34791-BKC-RBR
                                                Chapter 11

       Debtor.
_____/

**VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE**

On May 29, 2013, Herbert Stettin, as chapter 11 trustee for the above-captioned debtor (the "Trustee") and the Official Committee of Unsecured Creditors for the above-captioned debtor, filed a plan of liquidation (the "Plan")[1] in the above-captioned case.

YOU ARE RECEIVING THIS FORM BECAUSE THE TRUSTEE BELIEVES YOU MAY
HOLD A CLAIM IN CLASS 2, CLASS 3, OR CLASS 7.

---

**IF YOU FAIL OR REFUSE TO DELIVER THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT NOT LATER THAN_____, 2013 (THE "VOTING DEADLINE"), OR IF, AFTER NOTICE AND A HEARING, IT IS DETERMINED THAT YOU PROVIDED MATERIALLY FALSE INFORMATION IN THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE, THEN:**
    **1.     YOUR RIGHT TO RECEIVE ANY DISTRIBUTION UNDER THE PLAN MAY BE IRREVOCABLY WAIVED;**
    **2.     YOUR CLAIM MAY BE DISALLOWED; AND**
    **3.     YOUR BALLOT IN REGARD TO THE PLAN MAY NOT BE COUNTED.**

---

[1]      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

### DEFINITIONS:

C.      "You" and "Your" refers to the Entity or Person filling out this Verified Collateral Source Recovery Disclosure and all agents, attorneys, third parties or other person or legal entity acting, or purporting to act on your behalf, in concert with you or under your control.

D.      "Collateral Source Recoveries" for the purpose of this Verified Collateral Source Recovery Disclosure means the gross amount (before deducting any fees, costs or other expenses incurred or paid in connection with your pursuit of any Collateral Source Recovery) of Cash and non-Cash assets received by you, available to you, received for your benefit, applied to your indebtedness, (whether made or to be made directly or indirectly to such holder or any agent, attorney, or other third party associated with the holder), from all parties and sources, including, without limitation, TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action, on account of or in any way related to any loss that you have that is directly or indirectly related to: (i) the Ponzi scheme orchestrated or operated by Scott W. Rothstein; (ii) Scott W. Rothstein and/or his co-conspirators, (iii) Rothstein Rosenfeldt Adler, P.A, and (iv) Banyon 1030-32, LLC and Banyon Income Fund, L.P.; provided however, that for the avoidance of any doubt, Collateral Source Recoveries do not include any tax benefit from a theft loss deduction taken in accordance with the Internal Revenue Code, or other tax benefits received by a holder of a Claim, in either case as a result of losses in connection with the Ponzi scheme orchestrated or operated by Rothstein.

Disclosure:

1.  Creditor's Contact Information

    a.   Your full legal name:

    _____

    b.   Your complete street address:

    _____

    c.   Your complete mailing address:
    _____


2.  Have You:

    a.   Filed or otherwise made a claim for restitution or return of forfeited assets with the Federal Bureau of Investigations ("FBI"), the United States Attorney's Office, or any other federal agency in connection with the case of *United States v. Scott W. Rothstein*, 09-60331-JIC (S.D. Fla. 2009).

    ☐ YES.  ☐ NO.

2

48254260-3

b. Sought compensation, recovery, redress, damages, or any other form of relief against any party other than the bankruptcy estate of Rothstein Rosenfeldt Adler, P.A. as a result of the alleged actions, inactions or omissions of any or all of: (i) Scott W. Rothstein and/or his co-conspirators, (ii) Rothstein Rosenfeldt Adler, P.A, (iii) Banyon 1030-32, LLC and Banyon Income Fund, L.P., and (iv) TD Bank, N.A. as related to any of (a) Scott W. Rothstein and/or his co-conspirators, (b) Rothstein Rosenfeldt Adler, P.A., and (c) Banyon 1030-32, LLC and Banyon Income Fund, L.P.

☐ YES.  ☐ NO.

If You answered "YES" to question 2(a) or 2(b) then proceed to question 3.

If You answered "NO" to both question 2(a) and 2(b) then proceed to sign the attestation at the end of this document.

3. The name and address of each party other than the above-captioned debtor against whom You have made a demand that has given rise to a Collateral Source Recovery:

_____
_____

4. As of the date this form is completed, provide the gross recoveries You have received (before deducting any cost or expense, including attorneys' fees and costs paid or incurred by the holder):

Amount: _____

5. The Collateral Source Recoveries that the undersigned has received, as disclosed in response to question number 4 above, were premised on the following legal claims or theories:

_____
_____

6. The name and address of each party other than the above-captioned debtor against whom You have made a demand that may give rise to a Collateral Source Recovery:

_____
_____

7. Do you anticipate receiving Collateral Source Recoveries from any of the sources disclosed in question number 6?

☐ YES.  ☐ NO.

8. If you answered "Yes" to question number 7, from which source(s) do you anticipate receiving Collateral Source Recoveries:

3

_____

_____

BY EXECUTING THIS DISCLOSURE, I UNDERSTAND THAT I AM REQUIRED TO REMIT TO THE LIQUIDATING TRUST:  (I) DISTRIBUTIONS I RECEIVE IN EXCESS OF THE AMOUNT I WAS ENTITLED TO RECEIVE ON ACCOUNT OF MY CLAIM IF ALLOWED; (II) DISTRIBUTIONS I RECEIVED ON MY CLAIM THAT IS DISALLOWED SUBSEQUENT TO A DISTRIBUTION BEING MADE; AND (III) AN AMOUNT OF CASH EQUAL TO THE VALUE OF ALL COLLATERAL SOURCE RECOVERIES I RECEIVE THAT WERE NOT DISCLOSED AS HAVING BEEN RECEIVED AS OF THE DATE OF THIS DISCLOSURE (WHETHER EXISTING AT THE TIME OF THIS DISCLOSURE OR ARISING IN THE FUTURE); PROVIDED, HOWEVER THAT IN NO EVENT SHALL I BE REQUIRED TO REMIT CASH TO THE LIQUIDATING TRUST IN AN AMOUNT THAT IS GREATER THAN THE SUM OF SUCH HOLDER'S DISTRIBUTIONS.

I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED STATES OF AMERICA THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

Name of Creditor: _____

By:_____
      [Print Name]

Title:_____

Signature:_____

Sign and Return To:

**Trustee Services, Inc.**
**1844 N. Nob Hill Road, #613**
**Plantation, FL  33322**

4

48254260-3

EXHIBIT D

PENDING LITIGATION

*Arvidson, et al. v. TD Bank, N.A., et al.*, Case No. 12-30370, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Beverly, et al. v. TD Bank, N.A., et al.*, Case No. 13-60176, United States District Court for the Southern District of Florida (this case was referred to the United States Bankruptcy Court for the Southern District of Florida by order entered January 30, 2013 [ECF Doc. No. 5] as a proceeding related to the Chapter 11 Case, but it has not been docketed as a separate adversary proceeding) and, as remanded, Case No. 12-32710, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Gayla Susan Levin v. TD Bank, et al.* (*In re George Levin*), Case No.  10-33696, AP Case No. 13-01061, United States Bankruptcy Court for the Southern District of Florida, and, as remanded, Case No. 12-35089, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*George G. Levin v. TD Bank, et al.* (*In re George Levin*), Case No. 10-33696, AP Case No. 13-01060, United States Bankruptcy Court for the Southern District of Florida, and, as remanded, Case No. Case No. 12-35407, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Harbeson, et al. v. TD Bank, N.A.*, Case No. _____, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Deborah Marlin as Trustee of the Deborah Marlin Revocable Trust U/A 06/01/98, et al. v. TD Bank, et al.*, Case No. 13-6202, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Platinum Partners Value Arbitrage Fund, LP, et al. v. TD Bank, N.A.*, Case No. 12-023947, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Razorback Funding, LLC, et al. v. Scott W. Rothstein, et al.*, Case No. 09-062943 (07), Circuit Court for the 17th Judicial District in Broward County, Florida., except the *Plaintiffs' Amended Motion for Sanctions Against TD Bank, N.A.* dated as of December 10, 2012;

*RWRK Investments, LLC, et al. v. TD Bank, N.A., et al.*, Case No. 12-15605 (13), Circuit Court for the 17th Judicial District in Broward County, Florida.

*Stettin v. TD Bank, N.A.* (*In re Rothstein Rosenfeldt Adler, P.A.*), Case No. 09-34791, AP Case No. 11-02368, United States Bankruptcy Court for the Southern District of Florida.

Appendix 1.137

Form of Verified Banyon Creditor Collateral Source Recovery Disclosure

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>BANYON 1030-32, LLC,<br>BANYON INCOME FUND, L.P.,<br><br>      Debtors. | Chapter 7<br><br>Case Nos.     10-33691-RBR<br>               11-40929-RBR<br><br>***Jointly Administered under<br>Case No. 10-33691-RBR*** |

## VERIFIED BANYON CREDITOR COLLATERAL SOURCE RECOVERY DISCLOSURE

YOU ARE RECEIVING THIS FORM BECAUSE THE BANYON TRUSTEE BELIEVES YOU MAY HOLD A CLAIM IN EITHER OF THE ABOVE-CAPTIONED JOINTLY ADMINISTERED CHAPTER 7 BANKRUPTCY CASES.

By Order entered on _____, 2013 (the "Settlement Order"), the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division (the "Bankruptcy Court") approved the *Banyon Trustee's Motion to Approve (1) Agreement with TD Bank, N.A. and Herbert Stettin, as Chapter 11 Trustee of the Rothstein Rosenfeldt Adler, P.A. Bankruptcy Estate, (2) Entry of Bar Order, and (3) Approval of the Banyon Estates' Vote to Accept the RRA Plan* (the Settlement Agreement approved in the Settlement Order is referred to herein as the "Settlement Agreement").[1]

Under the terms of the Settlement Order, in order to receive a distribution from the bankruptcy estates of Banyon 1030-32, LLC or Banyon Income Fund, L.P. (collectively, the "Banyon Estates"), you must deliver this Verified Banyon Creditor Collateral Source Recovery Disclosure to Robert C. Furr, chapter 7 trustee for the Bankruptcy Estates (the "Banyon Trustee"), 2255 Glades Road, Suite 337w, Boca Raton, Florida 33431, so that it is actually received by the Banyon Trustee not later than _____, 2013.

---

[1] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

**IF YOU FAIL OR REFUSE TO DELIVER THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE TO THE BANYON TRUSTEE SO THAT IT IS ACTUALLY RECEIVED BY THE BANYON TRUSTEE NOT LATER THAN_____, 2013, OR IF, AFTER NOTICE AND A HEARING, IT IS DETERMINED THAT YOU PROVIDED MATERIALLY FALSE INFORMATION IN THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE, THEN YOUR RIGHT TO RECEIVE ANY DISTRIBUTION FROM THE BANYON ESTATES MAY BE IRREVOCABLY WAIVED, AND YOUR CLAIM AGAINST THE BANYONS ESTATES MAY BE DISALLOWED.**

## DEFINITIONS:

A.     "You" and "Your" refers to the Entity or Person filling out this Verified Collateral Source Recovery Disclosure and all agents, attorneys, third parties or other person or legal entity acting, or purporting to act on your behalf, in concert with you or under your control.

B.     "Collateral Source Recoveries" for the purpose of this Verified Banyon Creditor Collateral Source Recovery Disclosure means the gross amount (before deducting any fees, costs or other expenses incurred or paid in connection with your pursuit of any Collateral Source Recovery) of Cash and non-Cash assets received by you, available to you, received for your benefit, applied to your indebtedness (whether made or to be made directly or indirectly to such holder or any agent, attorney, or other third party associated with the holder), from all parties and sources, including, without limitation, TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action, on account of or in any way related to any loss that you have that is directly or indirectly related to: (i) the Ponzi scheme orchestrated or operated by Scott W. Rothstein; (ii) Scott W. Rothstein and/or his co-conspirators, (iii) Rothstein Rosenfeldt Adler, P.A, and (iv) Banyon 1030-32, LLC and Banyon Income Fund, L.P.; provided however, that for the avoidance of any doubt, Collateral Source Recoveries do not include any tax benefit from a theft loss deduction taken in accordance with the Internal Revenue Code, or other tax benefits received by a holder of a Claim, in either case as a result of losses in connection with the Ponzi scheme orchestrated or operated by Rothstein.

Disclosure:

1.   Creditor's Contact Information

     a.   Your full legal name:

_____

     b.   Your complete street address:

_____

     c.   Your complete mailing address:

_____

\48246798.1
4999213-2

2. Have You:

    a. Filed or otherwise made a claim for restitution or return of forfeited assets with the Federal Bureau of Investigations ("FBI"), the United States Attorney's Office, or any other federal agency in connection with the case of *United States v. Scott W. Rothstein*, 09-60331-JIC (S.D. Fla. 2009).

    ☐ YES. ☐ NO.

    b. Sought compensation, recovery, redress, damages, or any other form of relief against any party other than the Banyon Estates as a result of the alleged actions, inactions or omissions of any or all of: (i) Scott W. Rothstein and/or his co-conspirators, (ii) Rothstein Rosenfeldt Adler, P.A, (iii) Banyon 1030-32, LLC and Banyon Income Fund, L.P., and (iv) TD Bank, N.A. as related to any of (a) Scott W. Rothstein and/or his co-conspirators, (b) Rothstein Rosenfeldt Adler, P.A., and (c) Banyon 1030-32, LLC and Banyon Income Fund, L.P.

    ☐ YES. ☐ NO.

If You answered "YES" to question 2(a) or 2(b) then proceed to question 3.

If You answered "NO" to both question 2(a) and 2(b) then proceed to sign the attestation at the end of this document.

3. The name and address of each party other than the above-captioned debtor against whom You have made a demand that has given rise to a Collateral Source Recovery:

    _____
    _____

4. As of the date this form is completed, provide the gross recoveries You have received (before deducting any cost or expense, including attorneys' fees and costs paid or incurred by the holder):

    Amount: _____

5. The Collateral Source Recoveries that the undersigned has received, as disclosed in response to question number 4 above, were premised on the following legal claims or theories:

    _____
    _____

6. The name and address of each party other than the above-captioned debtor against whom You have made a demand that may give rise to a Collateral Source Recovery:

    _____
    _____

7.  Do you anticipate receiving Collateral Source Recoveries from any of the sources disclosed in question number 6?

☐ YES.  ☐ NO.

8.  If you answered "Yes" to question number 7, from which source(s) do you anticipate receiving Collateral Source Recoveries:

_____

_____

BY EXECUTING THIS DISCLOSURE, I UNDERSTAND THAT I AM REQUIRED TO REMIT TO THE BANYON TRUSTEE:  (I) DISTRIBUTIONS I RECEIVE IN EXCESS OF THE AMOUNT I WAS ENTITLED TO RECEIVE ON ACCOUNT OF MY CLAIM IF ALLOWED; (II) DISTRIBUTIONS I RECEIVED ON ACCOUNT OF MY CLAIM THAT IS DISALLOWED SUBSEQUENT TO A DISTRIBUTION BEING MADE; AND (III) AN AMOUNT OF CASH EQUAL TO THE VALUE OF ALL COLLATERAL SOURCE RECOVERIES I RECEIVE ON ACCOUNT OF MY CLAIM THAT WERE NOT DISCLOSED AS HAVING BEEN RECEIVED AS OF THE DATE OF THIS DISCLOSURE (WHETHER EXISTING AT THE TIME OF THIS DISCLOSURE OR ARISING IN THE FUTURE); PROVIDED, HOWEVER THAT IN NO EVENT SHALL I BE REQUIRED TO REMIT CASH TO THE BANYON TRUSTEE IN AN AMOUNT THAT IS GREATER THAN THE AMOUNT OF MY DISTRIBUTIONS ON SUCH CLAIM.

I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED STATES OF AMERICA THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

Name of Creditor: _____

By:_____
        [Print Name]

Title:_____

Signature:_____

Sign and Return To:

**Robert C. Furr, Trustee**
**Furr and Cohen, P.A.**
**2255 Glades Road, Suite 337w**
**Roca Raton, Florida 33431**

\48246798.1
4999213-2

Appendix 1.138

Form of Verified Collateral Source Recovery Disclosure

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

ROTHSTEIN ROSENFELDT ADLER, P.A.               Case No. 09-34791-BKC-RBR
                                               Chapter 11

        Debtor.

_____/

## VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE

On May 29, 2013, Herbert Stettin, as chapter 11 trustee for the above-captioned debtor (the "Trustee") and the Official Committee of Unsecured Creditors for the above-captioned debtor, filed a plan of liquidation (the "Plan")[1] in the above-captioned case.

YOU ARE RECEIVING THIS FORM BECAUSE THE TRUSTEE BELIEVES YOU MAY HOLD A CLAIM IN CLASS 2, CLASS 3, OR CLASS 7.

---

**IF YOU FAIL OR REFUSE TO DELIVER THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE TO THE VOTING AGENT SO THAT IT IS ACTUALLY RECEIVED BY THE VOTING AGENT NOT LATER THAN JULY 2, 2013 AT 5:00 PM (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE"), OR IF, AFTER NOTICE AND A HEARING, IT IS DETERMINED THAT YOU PROVIDED MATERIALLY FALSE INFORMATION IN THIS VERIFIED COLLATERAL SOURCE RECOVERY DISCLOSURE, THEN:**

      **1.      YOUR RIGHT TO RECEIVE ANY DISTRIBUTION UNDER THE PLAN MAY BE IRREVOCABLY WAIVED;**

      **2.      YOUR CLAIM MAY BE DISALLOWED; AND**

      **3.      YOUR BALLOT IN REGARD TO THE PLAN MAY NOT BE COUNTED.**

---

[1]     Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

## <u>DEFINITIONS:</u>

C.      "You" and "Your" refers to the Entity or Person filling out this Verified Collateral Source Recovery Disclosure and all agents, attorneys, third parties or other person or legal entity acting, or purporting to act on your behalf, in concert with you or under your control.

D.      "Collateral Source Recoveries" for the purpose of this Verified Collateral Source Recovery Disclosure means the gross amount (before deducting any fees, costs or other expenses incurred or paid in connection with your pursuit of any Collateral Source Recovery) of Cash and non-Cash assets received by you, available to you, received for your benefit, applied to your indebtedness, (whether made or to be made directly or indirectly to such holder or any agent, attorney, or other third party associated with the holder), from all parties and sources, including, without limitation, TD Bank, Gibraltar Private Bank & Trust Company, Berenfeld Spritzer Shechter & Sheer, LLP or in the Forfeiture Action, on account of or in any way related to any loss that you have that is directly or indirectly related to: (i) the Ponzi scheme orchestrated or operated by Scott W. Rothstein; (ii) Scott W. Rothstein and/or his co-conspirators, (iii) Rothstein Rosenfeldt Adler, P.A, and (iv) Banyon 1030-32, LLC and Banyon Income Fund, L.P.; <u>provided however</u>, that for the avoidance of any doubt, Collateral Source Recoveries do not include any tax benefit from a theft loss deduction taken in accordance with the Internal Revenue Code, or other tax benefits received by a holder of a Claim, in either case as a result of losses in connection with the Ponzi scheme orchestrated or operated by Rothstein.

Disclosure:

1.  Creditor's Contact Information

    a.  Your full legal name:

    _____

    b.  Your complete street address:

    _____

    c.  Your complete mailing address:
    _____

2.  Have You:

    a.  Filed or otherwise made a claim for restitution or return of forfeited assets with the Federal Bureau of Investigations ("FBI"), the United States Attorney's Office, or any other federal agency in connection with the case of *United States v. Scott W. Rothstein*, 09-60331-JIC (S.D. Fla. 2009).

    ☐ YES.   ☐ NO.

b. Sought compensation, recovery, redress, damages, or any other form of relief against any party other than the bankruptcy estate of Rothstein Rosenfeldt Adler, P.A. as a result of the alleged actions, inactions or omissions of any or all of: (i) Scott W. Rothstein and/or his co-conspirators, (ii) Rothstein Rosenfeldt Adler, P.A., (iii) Banyon 1030-32, LLC and Banyon Income Fund, L.P., and (iv) TD Bank, N.A. as related to any of (a) Scott W. Rothstein and/or his co-conspirators, (b) Rothstein Rosenfeldt Adler, P.A., and (c) Banyon 1030-32, LLC and Banyon Income Fund, L.P.

☐ YES. ☐ NO.

If You answered "YES" to question 2(a) or 2(b) then proceed to question 3.

If You answered "NO" to both question 2(a) and 2(b) then proceed to sign the attestation at the end of this document.

3. The name and address of each party other than the above-captioned debtor against whom You have made a demand that has given rise to a Collateral Source Recovery:

_____

_____

4. As of the date this form is completed, provide the gross recoveries You have received (before deducting any cost or expense, including attorneys' fees and costs paid or incurred by the holder):

Amount: _____

5. The Collateral Source Recoveries that the undersigned has received, as disclosed in response to question number 4 above, were premised on the following legal claims or theories:

_____

_____

6. The name and address of each party other than the above-captioned debtor against whom You have made a demand that may give rise to a Collateral Source Recovery:

_____

_____

7. Do you anticipate receiving Collateral Source Recoveries from any of the sources disclosed in question number 6?

☐ YES. ☐ NO.

8. If you answered "Yes" to question number 7, from which source(s) do you anticipate

receiving Collateral Source Recoveries:

_____

_____

BY EXECUTING THIS DISCLOSURE, I UNDERSTAND THAT I AM REQUIRED TO REMIT TO THE LIQUIDATING TRUST:  (I) DISTRIBUTIONS I RECEIVE IN EXCESS OF THE AMOUNT I WAS ENTITLED TO RECEIVE ON ACCOUNT OF MY CLAIM IF ALLOWED; (II) DISTRIBUTIONS I RECEIVED ON MY CLAIM THAT IS DISALLOWED SUBSEQUENT TO A DISTRIBUTION BEING MADE; AND (III) AN AMOUNT OF CASH EQUAL TO THE VALUE OF ALL COLLATERAL SOURCE RECOVERIES I RECEIVE THAT WERE NOT DISCLOSED AS HAVING BEEN RECEIVED AS OF THE DATE OF THIS DISCLOSURE (WHETHER EXISTING AT THE TIME OF THIS DISCLOSURE OR ARISING IN THE FUTURE); PROVIDED, HOWEVER THAT IN NO EVENT SHALL I BE REQUIRED TO REMIT CASH TO THE LIQUIDATING TRUST IN AN AMOUNT THAT IS GREATER THAN THE SUM OF SUCH HOLDER'S DISTRIBUTIONS.

I DECLARE UNDER PENALTY OF PERJURY OF THE LAWS OF THE UNITED STATES OF AMERICA THAT THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT.

Name of Creditor: _____

By:_____
        [Print Name]

Title:_____

Signature:_____

Sign and Return To:

**Trustee Services, Inc.**
**1844 N. Nob Hill Road, #613**
**Plantation, FL  33322**

Appendix 10.8

<u>Litigation Pending Against TD Bank Releasees</u>

*Arvidson, et al. v. TD Bank, N.A., et al.*, Case No. 12-30370, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Beverly, et al. v. TD Bank, N.A., et al.*, Case No. 13-60176, United States District Court for the Southern District of Florida (this case was referred to the United States Bankruptcy Court for the Southern District of Florida by order entered January 30, 2013 [ECF Doc. No. 5] as a proceeding related to the Chapter 11 Case, but it has not been docketed as a separate adversary proceeding) and, as remanded, Case No. 12-32710, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Gayla Susan Levin v. TD Bank, et al.* (*In re George Levin*), Case No.  10-33696, AP Case No. 13-01061, United States Bankruptcy Court for the Southern District of Florida, and, as remanded, Case No. 12-35089, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*George G. Levin v. TD Bank, et al.* (*In re George Levin*), Case No. 10-33696, AP Case No. 13-01060, United States Bankruptcy Court for the Southern District of Florida, and, as remanded, Case No. Case No. 12-35407, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Deborah Marlin as Trustee of the Deborah Marlin Revocable Trust U/A 06/01/98, et al. v. TD Bank, et al.*, Case No. 13-6202, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Platinum Partners Value Arbitrage Fund, LP, et al. v. TD Bank, N.A.*, Case No. 12-023947, Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

*Razorback Funding, LLC, et al. v. Scott W. Rothstein, et al.*, Case No. 09-062943 (07), Circuit Court for the 17th Judicial District in Broward County, Florida., except the *Plaintiffs' Amended Motion for Sanctions Against TD Bank, N.A.* dated as of December 10, 2012;

*RWRK Investments, LLC, et al. v. TD Bank, N.A., et al.*, Case No. 12-15605 (13), Circuit Court for the 17th Judicial District in Broward County, Florida.

*Stettin v. TD Bank, N.A.* (*In re Rothstein Rosenfeldt Adler, P.A.*), Case No. 09-34791, AP Case No. 11-02368, United States Bankruptcy Court for the Southern District of Florida.

Appendix 11.1.2

Stipulation and Order Regarding The Policies



**ORDERED in the Southern District of Florida on October 16, 2012.**

Raymond B. Ray, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:                                             Case No.: 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,                  Chapter 11 Case

     Debtor.

_____/

<u>**ORDER GRANTING MOTION TO APPROVE COMPROMISE**</u>
<u>**AND SETTLEMENT BETWEEN THE CHAPTER 11 TRUSTEE AND THE**</u>
<u>**GIBRALTAR D&O'S, THE RAZORBACK PARTIES AND THE MORSES**</u>
<u>**AND FOR ENTRY OF BAR ORDER**</u>

**THIS CAUSE** came before the Court for hearing on October 2, 2012 at 9:30 a.m., upon

the Trustee's Amended Joint *Motion to Approve (1) Settlement with Gibraltar Private Bank &*

*Trust Company and Certain of Its Officers and Directors Including John Harris, Charles*

*Sanders, Lisa Ellis & Steven D. Hayworth (the "D&O Settlement Agreement"); (2) Entry of Bar*

*Orders; (3) Settlement and Assignment Agreement by and Among the Trustees and the Morses;*

*(the "Trustees/Morses Agreement") and (4) Settlement Agreement by and Among the Trustees*

1

and the Razorback Parties (the "Trustees/Razorback Agreement") [ECF No. 3301] (the "**Motion**") filed by the Trustee on August 17, 2012. The Court has reviewed the Motion, and has considered the entire record in this case and the arguments of counsel at the hearing on the Motion and evidence adduced in support of the Motion (including any evidence offered by proffer and accepted by the Court without objection of any party) and having noted the withdrawal of the Objections to the Motion filed by FEP Victims Group [ECF Nos. 3445 and 3470] and RWRK [ECF Nos. 3449 and 3471]. The Court finds that notice of the Motion and the hearing thereon is sufficient [ECF Nos. 3385 and 3392] and that no other or further notice is or shall be required; having noted that no other objection to the Motion was raised by any party in interest, other than an objection filed *pro se* by Miriam Donner [ECF No. 3347], who did not appear at the hearing; having found that the settlement and compromise set forth in the Motion is reasonable and in the best interests of creditors and the estate; and having found that good and sufficient cause has been shown to warrant the entry of this Order. Based on the foregoing, it is

      **ORDERED** as follows:

      1.    The Motion is **GRANTED**, and all Objections are moot by virtue of being withdrawn or overruled, including the objection filed *pro se* by Miriam Donner [ECF No. 3347]. The request for a bar order shall be granted by separate order.

      2.    The terms of the D&O Settlement Agreement attached to the Motion as Exhibit "B," the Trustees/Razorback Agreement attached to the Motion as Exhibit "C," and the Trustees/Morses Agreement attached to the Motion as Exhibit "D," are approved and incorporated herein in their entirety. The Trustee is further authorized to take any action necessary to effectuate the D&O Settlement Agreement, the Trustees/Razorback Agreement and the Trustees/Morses Agreement.

3.      The Stipulation Concerning National Union's Motion to Withdraw the Reference, Motion to Stay, Objection, and Request For Judicial Notice in Support of the Objection to the Trustees' Amended Joint Motion to Approve (1) Settlement with Gibraltar Private Bank & Trust Company and Certain of its Officers and Directors Including John Harris, Charles Sanders, Lisa Ellis & Steven D. Hayworth; (2) Entry Of Bar Orders; And (3) Settlement and Assignment Agreement by and Among the Trustee and the Morses; and (4) Settlement Agreement by and among the Trustee and The Razorback Parties previously approved by the Court [ECF No. 3447] (the "National Union Stipulation") is adopted and incorporated herein by reference.

4.      The Court reserves jurisdiction regarding the interpretation, effectuation, and enforcement of the terms of the D&O Settlement Agreement, the Trustees/Razorback Agreement and the Trustees/Morses Agreement, the National Union Stipulation and this Order.

# # #


Submitted By

John H. Genovese, Esq.
Genovese Joblove & Battista, P.A.
Miami Tower
100 S.E. Second Street, 44th Floor
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310
Email: JGenovese@gjb-law.com

Copies Furnished To:

John H. Genovese, Esq.
[Attorney Genovese is directed to serve a copy of this Order upon all parties in interest].



**ORDERED in the Southern District of Florida on September 27, 2012.**

Raymond B. Ray, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
(FORT LAUDERDALE DIVISION)
www.flsb.uscourts.gov

In re                                                                    CASE NO. 09-34791-BKC-RBR
                                                                         CHAPTER 11

ROTHSTEIN ROSENFELDT
ADLER, P.A.,

      Debtor.

_____/

**ORDER DENYING AS MOOT
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA'S OBJECTION TO TRUSTEES' AMENDED
JOINT MOTION TO APPROVE SETTLEMENT WITH GIBRALTAR PRIVATE
BANK AND TRUST COMPANY AND RELATED AGREEMENTS [ECF NO. 3359]**

**THIS MATTER** came before the Court on September 19, 2012 at 2:30 p.m. upon

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") on behalf of itself

and its affiliates (including American International Specialty Lines Insurance Co.), objection to

the Trustees' Amended Joint Motion to Approve (1) Settlement with Gibraltar Private Bank and

Trust Company and Certain of its Officers and Directors Including John Harris, Charles Sanders,

Lisa Ellis & Steven D. Hayworth; (2) Entry of Bar Orders; (3) Settlement and Assignment

Agreement by and among the Trustees and the Morses; and (4) Settlement Agreement by and

among the Trustees and the Razorback (the "National Union Objection"). The Court, having conducted a hearing, noting the agreement of counsel, being advised that the parties have entered into a Stipulation Concerning National Union's Motion to Withdraw the Reference, Motion to Stay, Objection, and Request For Judicial Notice in Support of the Objection to the Trustees' Amended Joint Motion to Approve (1) Settlement with Gibraltar Private Bank and Trust Company and Certain of its Officers and Directors Including John Harris, Charles Sanders, Lisa Ellis & Steven D. Hayworth; (2) Entry Of Bar Orders; And (3) Settlement and Assignment Agreement by and Among the Trustee and the Morses; and (4) Settlement Agreement by and among the Trustee and The Razorback Parties (the "Stipulation") and being otherwise duly advised in the premises, it is:

**ORDERED:**

1.      The National Union Objection is **DENIED as MOOT.**

2.      The Stipulation annexed hereto as Exhibit "A" is **APPROVED** by Order of this Court *Nunc Pro Tunc* to September 19, 2012.

# # #

Submitted By

John H. Genovese, Esq.
Genovese Joblove & Battista, P.A.
Miami Tower
100 S.E. Second Street, 44th Floor
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310
Email: jgenovese@gjb-law.com

Copies Furnished To:

John H. Genovese, Esq.
[Attorney Genovese is directed to serve a copy of this Order upon all parties in interest].

-- 2 --

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | |
| ROTHSTEIN ROSENFELDT ADLER P.A., | CASE NO.: 09-34791-RBR |
| Debtor | CHAPTER 11 |
| In re: | Case No.: 10-33691-RBR |
| BANYON 1030-32, LLC, | CHAPTER 7 |
| Debtor | |
| In re: | Case No. 11-40929-RBR |
| BANYON INCOME FUND, LP, | CHAPTER 7 |
| Debtor | |

**STIPULATION CONCERNING NATIONAL UNION'S MOTION TO WITHDRAW THE REFERENCE, MOTION TO STAY, OBJECTION, AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THE OBJECTION TO THE TRUSTEES' AMENDED JOINT MOTION TO APPROVE (1) SETTLEMENT WITH GIBRALTAR PRIVATE BANK AND TRUST COMPANY AND CERTAIN OF ITS OFFICERS AND DIRECTORS INCLUDING JOHN HARRIS, CHARLES SANDERS, LISA ELLIS & STEVEN D. HAYWORTH; (2) ENTRY OF BAR ORDERS; AND (3) SETTLEMENT AND ASSIGNMENT AGREEMENT BY AND AMONG THE TRUSTEE AND THE MORSES; AND (4) SETTLEMENT AGREEMENT BY AND AMONG THE TRUSTEE AND THE RAZORBACK PARTIES** *(ECF Nos. 3301, 3359, 3360, 3361, and 544, 549, 550 and 551)*

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and Twin City Fire Insurance Company (**"Twin City"**) (collectively the **"Insurers"**), on the one hand, and the Chapter 11 Trustee of the estate of Rothstein Rosenfeldt Adler, P.A. (the "**RRA Trustee**") and the Chapter 7 Trustee for the estates of Banyon 1030-32, LLC and Banyon Income Fund, LP (the "**Banyon Trustee**") (collectively the "**Trustees**" and together with the

1

Insurers, the "**Parties**" and/or "**Party**" if used sigularly), on the other hand, hereby enter into this stipulation (the "**Stipulation**"), subject to the Court's approval, as follows:

1.     The Trustees have filed *Trustee's Amended Joint Motion to Approve (1) Settlement with Gibraltar Private Bank and Trust Company and Certain of its Officers and Directors Including John Harris, Charles Sanders, Lisa Ellis & Steven D. Hayworth; (2) Entry of Bar Orders; (3) Settlement and Assignment Agreement by and among the Trustees and the Morses; and (4) Settlement Agreement by and Among the Trustees and the Razorback Parties* (the "**Bar Order Motion**") [In re Rothstein, Rosenfeldt Adler P.A., Case No. 09-34791-RBR, ECF No. 3301; In re Banyon 1030-32, LLC, Case No. 10-33691-RBR, ECF No. 544] on August 17, 2012.

2.     The settlement sought to be approved in the Bar Order Motion includes an assignment to the Trustees by Gibraltar Private Bank and Trust Company ("**Gibraltar**") and certain of its directors and/or officers of their rights to pursue claims against National Union and Twin City under insurance policies issued to Gibraltar by National Union (Policy No. 01-232-51-05) and Twin City to Gibraltar (Policy No. 00 DA 0259335-09) (the "**Policies**").

3.     National Union, in response to the Bar Order Motion, has filed:

    i.     Objection to the Bar Order Motion [In re Rothstein, Rosenfeldt Adler P.A., Case No. 09-34791-RBR, ECF No. 3359; In re Banyon 1030-32, LLC, Case No. 10-33691-RBR, ECF No. 549] ("**Bar Order Objection**");

    ii.     Request for Judicial Notice in Support of National Union's Objection to the Bar Order Motion [In re Rothstein, Rosenfeldt Adler P.A., Case No. 09-34791-RBR, ECF No. 3360; In re Banyon 1030-32, LLC, Case No. 10-33691-RBR, ECF No. 550] ("**RJN**");

      iii.    Motion to Withdraw the Reference for the Bar Order Motion [In re Rothstein, Rosenfeldt Adler P.A., Case No. 09-34791-RBR, ECF No. 3361; In re Banyon 1030-32, LLC, Case No. 10-33691-RBR, ECF No. 551] (**"Motion to Withdraw Reference"**); and

      iv.    Motion to Stay Pursuant to Rule 5011 of the Federal Rules of Bankruptcy Procedure the Bar Order Motion [In re Rothstein, Rosenfeldt Adler P.A., Case No. 09-34791-RBR, ECF No. 3364; In re Banyon 1030-32, LLC, Case No. 10-33691-RBR, ECF No. 552] (**"Motion to Stay"**) (i-iv, collectively, "**National Union Filings**").

4.    Twin City intends to join in the National Union Filings and/or submit similar filings of its own.

5.    To resolve the issues raised by the National Union Filings and any filing that could have been filed by Twin City requesting similar relief, the Parties have agreed, subject to the Court's approval, as follows:

      i.    Notwithstanding the terms of the Bar Order Motion or any order granting or relating to it, any actions (including defenses or counterclaims) between one or more of the Trustees and one or more of the Insurers arising out of or relating to the Policies, including but not limited to any action to recover under the Policies by the Trustees or any action for declaratory relief or rescission by the Insurers, shall be filed and litigated exclusively in the United States District Court for the Southern District of Florida. The Parties agree that under no circumstances, and for no purposes, shall any such actions be referred to the United States Bankruptcy Court for the

Southern District of Florida as related to the bankruptcy cases, and no Party shall seek or suggest such referral.  In the event of such referral for any reason that is not revoked absolutely within 45 days, with the reference being withdrawn in its entirety with no pre-trial or other proceedings of any kind before the Bankruptcy Court, then the Party initiating the action shall immediately dismiss it without prejudice, subject to re-filing in the Southern District of Florida and/or pursuant to the ADR provision in the National Union policy.  The Parties further expressly agree that the provisions of this paragraph are not an impairment, waiver or modification of any ADR provision or requirement in the applicable Policies.

ii.  Nothing in the Bar Order Motion, or any order granting or relating to it, shall impair, waive or otherwise modify the terms, conditions, limitations and exclusions in the Policies, or any rights, claims, arguments, causes of action, defenses or counterclaims that any party to this Stipulation may have under the Policies, at law or in equity, including but not limited to challenges to the reasonableness of the settlement amount agreed to between the Chapter 11 Trustee of the Estate of Rothstein Rosenfeldt Adler, P.A., the Chapter 7 Trustee for the Estates of Banyon 1030-32, LLC and Banyon Income Fund, LP, the Razorback Plaintiffs, the Estate of Edward J. Morse, Carol A. Morse and Morse Operations, Inc, and certain officers and directors of Gibraltar Private Bank & Trust (Lisa Ellis, John Harris, Steven Hayworth and Charles Sanders).  All such rights, claims, arguments, causes of action, defenses and counterclaims (including without

limitation the right of the Insurers to dispute their responsibility under the Policies to pay all or any aspect of the Settlement Amount) may be asserted by or against the Trustees, including the Trustees as assignees of Gibraltar and certain of its directors and officers, in any action relating to the Policies, as if, and to the same extent, that the Insurer could have asserted such rights, arguments, causes of action or defenses against an Insured under one or more of the Policies.

iii. This Stipulation, and resolution of the National Union Filings, are not, other than as expressly set forth above with respect to the Trustees: (a) an agreement that the Policies are valid and enforceable; (b) an acknowledgement or agreement that Gibraltar, its directors and officers, or the Trustees as assignees, have valid claims under the Policies; (c) a waiver of any rights that any party to this Stipulation maintains to enforce the terms, conditions and exclusions in the Policies, at law or equity; and/or (d) an impairment, waiver or other modification of any rights, claims, arguments, causes of action, defenses or counterclaims arising under or otherwise related to the Policies. Except as stated herein, the Parties agree that no action taken in connection with this Stipulation and the agreements memorialized herein shall be construed as or asserted as a waiver of any of the terms, conditions, limitations or exclusions in the Policies.

iv. The terms of this Stipulation, once effective, shall be binding on the Parties and their respective successors-in-interest and assigns.

6. This Stipulation shall only be effective provided that (i) an Order approving

Stipulation and the Order approving this Stipulation.

7.     Upon entry on or before September 19, 2012 of an order by the Court approving this Stipulation, the National Union Filings shall be deemed provisionally resolved and on that basis co-withdrawn, subject to the Stipulation becoming effective as provided in paragraph 6, above.

IT IS SO STIPULATED.

| DATED:<br><br>September 18, 2012 | ALSTON & BIRD LLP<br>333 South Hope Street<br>16th Floor<br>Los Angeles, CA 90071-3004<br><br>By: _Grant T. Stein_<br>Michael J. Hartley / Brant T. Stein<br>Attorneys for National Union<br>Fire Insurance Company of Pittsburg, Pa. |
|---|---|
| DATED:<br><br>September 19, 2012 | VER PLOEG & LUMPKIN, P.A.<br>100 Southeast 2nd Street<br>30th Floor<br>Miami, Florida 33131<br><br>By: _____<br>Jason S. Mazer<br>Attorneys for RRA Trustee |
| DATED: 19<br><br>September 18, 2012 | STICHTER RIEDEL BLAIN & PROSSER, P.A.<br>110 East Madison Street<br>Suite 200<br>Tampa, Florida 33602<br><br>By: _____<br>Russell Blain<br>Attorneys for Banyon Trustee |
| DATED:<br><br>September 18, 2012 | KAPLAN ZEENA LLP<br>2 South Biscayne Blvd.<br>Suite 3050<br>Miami, Florida 33131<br><br>By: _____<br>James M. Kaplan<br>Attorneys for Twin City |