**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE

ROTHSTEIN, ROSENFELDT, ADLER, P.A.          CASE NO. 09-34791-RBR

                              Debtor.          CHAPTER 11
_____/

**DISCLOSURE STATEMENT FOR**
**CIRCLE K FAMILY, LLC'S PLAN OF LIQUIDATION**

**KOZYAK TROPIN & THROCKMORTON, P.A.**        **CONRAD & SCHERER, LLP**
2525 Ponce de Leon, 9th Floor                 633 South Federal Highway
Miami, FL 33134                               Fort Lauderdale, FL 33301
Tel: (305) 372-1800                           Tel:  (954) 847-3324
Fax: (305) 372-3508                           Fax: (954) 463-9244
Harley S. Tropin                              William R. Scherer
Florida Bar No. 241253                        Florida Bar No. 169454
Charles W. Throckmorton                       James D. Silver
Florida Bar No. 286192                        Florida Bar No. 373702
David L. Rosendorf                            Mark S. Roher
Florida Bar No. 996823                        Florida Bar No. 178098
David A. Samole
Florida Bar No. 582761

**Counsel for Circle K Family, LLC**          **Counsel for Circle K Family, LLC**

**KATZ BARRON SQUITERO FAUST**
2699 South Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: (305) 856-2444
Fax: (305) 285-9227
H. Eugene Lindsey, III
Florida Bar No. 130338

**Counsel for Circle K Family, LLC**

Dated: July 9, 2013

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ......................................................................................... 1
    A.    Overview of the Plan ................................................................ 3
    B.    Plan Mechanics and Chapter 11 Process………….………………… 5
    C.    Voting Instructions ................................................................. 12
    D.    Confirmation of the Plan by the Bankruptcy Court ........................... 14

II. BACKGROUND OF THE DEBTOR ..................................................... 14

III. THE CHAPTER 11 CASE ..................................................................... 15
    A.    The Debtor's Bankruptcy Proceedings ........................................ 15
    B.    Retained Professionals of the Debtor's estate .............................. 15
    C.    Litigation Commenced by Trustee ............................................. 17
    D.    Estate Financial Status .......................................................... 17
    E.    The Claims Process ............................................................. 17
    F.    Litigation Claims of the Estate ................................................. 18
    G.    Potential Sources of Additional Recoveries .................................. 18

IV. CHAPTER 11 PLAN OF LIQUIDATION.............................................. 20
    A.    Plan Overview ................................................................... 20
    B.    Plan Summary ................................................................... 20
    C.    Treatment of Claims and Interests ............................................ 21
    D.    Treatment of Executory Contracts ............................................ 29
    E.    Liquidating Trust Agreement ................................................. 29
    F.    Dissolution of the Debtor ....................................................... 31
    G.    Closing of the Bankruptcy Case ............................................... 32
    H.    Objections to Claims ........................................................... 32
    I.    Distributions Under the Plan .................................................. 32
    J.    Conditions to Confirmation ................................................... 35
    K.    Conditions to the Effective Date .............................................. 35
    L.    Modification of the Plan ....................................................... 35
    M.    Termination of Plan For Failure to Become Effective ....................... 35
    N.    Waiver of Conditions .......................................................... 35
    O.    Notice of Effective Date ....................................................... 35
    P.    Effect of Confirmation ......................................................... 36
    Q.    Exculpation, Injunction, and Limitation of Liability.......................... 36
    R.    Retention of Jurisdiction.…………………………………………… 38
    S.    No Admissions .……………………………………………………… 40
    T.    Preservation of Rights of Setoff.……………………………………….. 40
    U.    Severability/Pre-Confirmation Modification of Plan Provisions………….. 40

V. CONFIRMATION OF THE PLAN ............................................................................ 41
    A.     Confirmation Hearing .................................................................... 41
    B.     Confirmation Standards .................................................................. 41

VI. FUNDING AND FEASIBILITY OF THE PLAN ..................................................... 41
    A.     Funding of the Plan ...................................................................... 41
    B.     Best Interests Test ........................................................................ 41
    C.     Feasibility .................................................................................... 43
    D.     Risk Factors Associated with the Plan .......................................... 43

VII. ALTERNATIVES TO THE PLAN ......................................................................... 44

VIII. CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS ........................ 44
    A.     In General .................................................................................... 44
    B.     U.S. Federal Income Tax Consequences to the Debtor.................... 45
    C.     U.S. Federal Income Tax Consequences to the Holders of
            Allowed Claims…………………………………………….................. 46
    D.     U.S. Federal Income Tax Treatment of the Liquidating Trust and
            its Beneficiaries............................................................................ 47
    E.     Information Reporting and Backup Withholding ....................................…… 49
    F.     Importance of Obtaining Professional Tax Assistance ………………….. 50
    G.     Circular 230 Disclaimer……………………………………………….. 50

IX. CONCLUSION .................................................................................................... 50

## Exhibits to Disclosure Statement

**Exhibit A**           **Plan of Liquidation**

**Exhibit B**           **List of Adversary Proceedings**

**Exhibit C**           **Liquidation Analysis (to be filed separately at a later date)**

## DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION

> **THE PLAN PROPONENT RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION HEARING.**

## I.    INTRODUCTION

Circle K Family, LLC ("Circle K" or the "Plan Proponent"), an unsecured creditor of the bankruptcy estate of Rothstein Rosenfeldt Adler, P.A. (the "Debtor"), provides this Disclosure Statement (the "Disclosure Statement") to the Debtor's  impaired creditors to permit such creditors to make an informed decision concerning voting to accept or reject the Circle K Family, LLC's Plan of Liquidation (the "Plan") [ECF 4919] filed on July 8, 2013 with the United States Bankruptcy Court for the Southern District of Florida, Ft. Lauderdale Division (the "Bankruptcy Court") in connection with the above-captioned case filed pursuant to Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

A copy of the Plan is attached to this Disclosure Statement as Exhibit A. Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

This Disclosure Statement is presented to certain holders of Claims against, or Interests in, the Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtor's creditors, to make an informed judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon for any purpose other than that described above.

The Disclosure Statement is based on information in pleadings filed with the Bankruptcy Court, information provided by the Trustee, and facts gathered by Conrad & Scherer, LLP, Kozyak Tropin & Throckmorton, P.A. and Katz Barron Squitero, Faust, Friedberg, English & Allen, P.A, counsel for the Plan Proponent.

**THIS DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO THE VALUE OF THEIR PROPERTY) ARE AUTHORIZED BY THE PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO**

1

SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR OF THE PLAN PROPONENT, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF THE DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN. ACCORDINGLY, THE PLAN PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING THE DEBTOR OR ITS FINANCIAL CONDITION IS ACCURATE OR COMPLETE. ANY PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE DEBTOR'S ACTUAL RESULTS MAY NOT BE AS CONTEMPLATED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE AND THE PLAN PROPONENT BELIEVES IN GOOD FAITH THAT THE INFORMATION HEREIN IS ACCURATE, THE PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS IS CORRECT. THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THIS DISCLOSURE STATEMENT.   A STATEMENT OF THE ASSETS AND LIABILITIES OF THE DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF ITS CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST, INTERESTS IN OR SECURITIES OF, THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE

2

**STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Pursuant to the Bankruptcy Code, this Disclosure Statement was filed on July 9, 2013 and the Plan was filed on July 8, 2013. The Bankruptcy Court will hold a hearing on confirmation of the Plan beginning at [_____] (prevailing Eastern time) on _____ 2013, in the United States Bankruptcy Court for the Southern District of Florida (Ft. Lauderdale Division), 299 E. Broward Blvd. Room 308, Ft. Lauderdale, FL 33301 (the "Confirmation Hearing"). At that Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants, and will review a ballot report concerning votes cast for acceptance or rejection of the Plan.

A.    **Overview of the Plan**

**THE FOLLOWING IS A BRIEF OVERVIEW OF THE PLAN. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN, THE LIQUIDATING TRUST AGREEMENT, AND THE OTHER PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN ARTICLE IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

The Plan Proponent proposes this Plan providing for the treatment, resolution and satisfaction of all Claims against, and Interests in, the Debtor.

Circle K intends by the Plan to treat creditors fairly, to eliminate unnecessary, wasteful and costly litigation that depletes assets of this Estate and creditors for whose benefit the estate is being administered.  In this regard, the Plan will direct the Liquidating Trustee not to enter into agreements that would seek to bar the claims of Ponzi victims against TD Bank, N.A. ("TD Bank"), an adjudicated co-conspirator and aider and abettor of the Rothstein Ponzi scheme, and a

3

party with more than ample resources to pay any and all claims for which it has responsibility, including claims for punitive damages. Such a bar, unless done with the consent of the victims whose claims are being barred, in the view of this Plan, is not only unlawful but will continue to pit creditor against creditor and will result in further acrimonious and expensive litigation for years to come.

Such a bar order would also violate one of the cornerstones of the bankruptcy process -- equality of treatment of similarly situated creditors. Victim creditors in this case and the Banyon 1030-32 and Banyon Income Fund bankruptcy cases have had the unfettered right for more than 3 years to pursue and recover claims against TD Bank, resulting in more than $300 million in TD Bank settlements and a $67 million judgment (currently on appeal) against TD Bank for compensatory and punitive damages. Barring victim creditors from pursuing their claims against TD Bank will promote unequal treatment of creditors, and indeed would benefit many of those that have already successfully pursued their claims against TD Bank at the expense of those that would be denied that opportunity.

The Plan will also direct the Liquidating Trustee to promptly and amicably resolve all litigation pending against "net loser" Ponzi victims that were not complicit in and did not know they were investing in a Ponzi scheme. In that regard, the Plan directs that litigation claims not be pursued against these victims for fraudulent transfer, usury or similar claims and that any avoidance claims be limited to preferences under Section 547 of the Bankruptcy Code with the objective wherever possible to resolve those claims through a "netting" process in relation to claims objections and calculation of amounts to be distributed on such claims.

The Plan also recognizes that all creditors are benefitted by a swift and fair resolution of the criminal forfeiture action. There may be as much as $50 million in monies and assets from which a distribution can be made. However, for more than two years the Trustee has been engaged in litigation with the government, including an appeal to the Eleventh Circuit, thereby preventing most victims from receiving any restitution. The Plan directs the Liquidating Trustee to work cooperatively with the government to resolve that litigation amicably to enable a substantial and prompt distribution of monies and assets in the criminal forfeiture case. Such a distribution will benefit not only the Ponzi victims but also non-victims creditors through resulting reductions in claims held by Ponzi victims against the Estate. It is the objective of this Plan to see that those assets are distributed without further delay.

The Plan also recognizes that victim creditors that have pursued claims against complicit and responsible parties in the Ponzi have benefitted the Estate by obtaining substantial recoveries from TD Bank and others resulting in significant reductions of claims against the Estate, enabling increased distributions for the benefit of all creditors. In this regard, the Plan seeks to recognize and continue to provide incentive for these valuable contributions by treating such parties fairly and not penalizing them for these beneficial efforts. Accordingly, the Plan will ensure that reductions of claims against the Estate based on third party recoveries will be net of the fees and expenses incurred to achieve the recoveries. In addition, claims will not be reduced for amounts recovered for items not included in Allowed claims in this Bankruptcy Case such as pre-judgment interest and punitive damages. Thus, the Plan ensures that creditors do not receive a double recovery while retaining incentive for parties to continue pursuing third party recoveries that will ultimately benefit all creditors.

The Plan will direct the Liquidating Trustee to make an interim distribution at the earliest time practicable.

### B.    Plan Mechanics and the Chapter 11 Process

**THE FOLLOWING IS A BRIEF EXPLANATION OF THE PLAN MECHANICS AND THE CHAPTER 11 PROCESS. THE DESCRIPTION OF THE PLAN SET FORTH BELOW CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN, THE LIQUIDATING TRUST AGREEMENT, AND THE OTHER PLAN DOCUMENTS. CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE MORE DETAILED DESCRIPTION OF THE PLAN CONTAINED IN ARTICLE IV OF THIS DISCLOSURE STATEMENT AND THE PLAN ITSELF. THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT.  IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for business reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and equity interests in a debtor's bankruptcy estate.

The Plan is being presented to creditors and other parties in interest for their consideration, and some of the classes of creditors will be entitled to cast a ballot to either accept or reject the Plan. If the Plan is confirmed by the Bankruptcy Court, it will be binding upon all affected parties, including but not limited to creditors of, and holders of interests in, the Debtor, regardless of how they voted, even if they did not vote.

The Plan divides the Claims against, and Interests in, the Debtor into Classes. Certain Claims -- in particular, Administrative Claims, Statutory Fees, Professional Claims, and Priority Claims -- remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as further described herein.

Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it.  Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, are also not entitled to vote on it.

The Plan Proponent believes on balance that the distributions under the Plan will provide Creditors of the Debtor at least the same recovery, if not more, on account of Allowed Claims as would distributions by a chapter 7 trustee.  If the case were converted to chapter 7, a new claims bar date would be set and this could expose the estate to additional claims that otherwise may not be recognized in the chapter 11 since they were not filed by the chapter 11 claims bar date.  In addition, the Plan seeks to make an interim distribution at the earliest date practicable and it is

5

unlikely that this would occur in a chapter 7 case. Moreover, the Plan provides for an orderly and expeditious resolution of this case in a manner that reduces and avoids unnecessary litigation expenses and delay. The plan, by providing that no bar order will be sought in favor of TD Bank over the objection of its victims, also avoids embroiling the estate in wasteful and acrimonious litigation.

## ACCORDINGLY, THE PLAN PROPONENT URGES EACH CREDITOR ENTITLED TO VOTE ON THE PLAN TO VOTE TO <u>ACCEPT</u> THE PLAN.

Following are detailed, Class-by-Class summaries of the Claims against, and Interests in, the Debtor and the estimated distribution to the Creditors of the Debtor on account of such Allowed Claims or Interests.

The Plan Proponent calculated the asserted claims (other than Administrative Claims) based on filed and scheduled claims. To the extent a creditor filed a proof of claim that superseded a scheduled claim, the amount in the filed proof of claim was utilized. The Plan Proponent then reviewed all of the proofs of claims asserting General Unsecured Claims.

| Class | Description | Treatment | Approx. Amount Asserted | Est. Recovery | Status |
|-------|-------------|-----------|-------------------------|---------------|--------|
| 1 | Allowed Secured Claims | -See Plan, § 3.2<br><br>-Summary: An Allowed Secured Claimant shall receive, in discretion of the Liquidating Trustee, in discharge of such Claim: (a) Cash equal to the amount of such Allowed Secured Claim after the later of (i) the Effective Date; (ii) the date that such Secured Claim becomes Allowed, and (iii) a date agreed to by the Liquidating Trustee and the holder of such Allowed Secured Claim; (b) s reinstated Allowed Secured Claim ; (c) the collateral, or (d) other consensual treatment or as ordered by Bankruptcy Court. | Unknown [1]<br><br>No known Claims exist in Class 1 | 100% | Unimpaired and not entitled to vote |

---

[1] Some parties may have asserted and may hereafter attempt to assert secured claims as a result of constructive trust claims relating to monies in the criminal forfeiture or being held by the Estate. Whether and to what extent these claims will be allowed is not currently known, and the extent to which such claims may be hereafter asserted is not currently known.

6

| 2 | Allowed General Unsecured Claims | -See Plan, § 3.3.<br><br>-Summary: After payments on Allowed Unclassified Claims, and Allowed Claims under §3.2 of the Plan, and except as otherwise provided in § 3.3(b) of the Plan, each holder of an Allowed Class 2 Claim, shall receive, in full discharge of such Claim, Pro Rata Distributions of Cash from the Liquidating Trust, subject to application of Net Third Party Recoveries and Net Future Third party Recoveries, as applicable, until such Allowed Class 3 Claim has been paid the Full Amount of such Allowed Claim. | Est.--$125 million to $150 million[2] | Undetermined[3] | Impaired and entitled to vote |

---

[2] The projected aggregate Claim amount for Class 2 is an estimate and is subject to the Liquidating Trustee processing and determining of Class 2 Claims as set forth in Articles 3.3(b) and 7.3 of the Plan, as well as the treatment of the Razorback Substantial Contribution Claim and disposition of various assigned claims relating to certain chapter 11 Claims/Distributions of certain parties to be addressed by the Liquidating Trustee and the Plan.

[3] The projected aggregate recovery amount for Class 2 is subject to the Liquidating Trustee processing and determination of Class 2 Claims as set forth in Articles 3.3(b) and 7.3 of the Plan, the amount of aggregate Net Third Party Recoveries received, and Repayment Obligations made, by Class 2 Claimants, and the outcome of Litigation Claims Held by the Estate, and other provisions of the Plan.

| 3 | Banyon Unsecured Claim | -See Plan, § 3.4.<br><br>-Summary: After payments on Allowed Unclassified Claims, and on Allowed Claims under § 3.2 of the Plan, and except as otherwise provided in § 3.4(b) of the Plan, the Banyon Estates Trustees shall receive, in full discharge of such Allowed Class 3 Claim, Pro Rata Distributions of Cash from the Liquidating Trust, subject to application of Net Third Party Recoveries and Net Future Third party Recoveries, as applicable, until such Allowed Class 3 Claim has been paid the Full Amount of such Allowed Claim. The Banyon Trustee shall then make distributions to individual Banyon Estates claimants pursuant to the Banyon Estates' claims administration process. | Est. $50 million[4] | Undetermined[5] | Impaired and entitled to vote |

---

[4] The projected aggregate Claim amount for Class 3 is an estimate and is subject to the Liquidating Trustee processing and determining the Class 3 Claim as set forth in Articles 3.4 and 7.3 of the Plan, as well as the treatment of the Razorback Substantial Contribution Claim and disposition of various assigned claims relating to certain chapter 11 Claims/Distributions of certain parties to be addressed by the Liquidating Trustee and the Plan.

| 4 | Razorback Unsecured Rising Tide Claim | -See Plan, § 3.5.<br><br>-Summary: After payments on Allowed Unclassified Claims and Allowed Claims under §§ 3.2 -3.4 of the Plan, once it is determined that each of the holders of Allowed Class 2 and Class 3 Claims have received a Pro Rata Distribution of Cash equal to 95% of the Allowed amount of such Class 2 and Class 3 Claims, the Allowed Class 4 Claim shall commence receiving Pro Rata Distributions equal to the Pro Rata Distributions provided thereafter to Allowed Class 2 and Allowed Class 3 Claims; provided, however, that the total amount of Cash distributed pursuant to the Liquidating Trust to the holder of the Allowed Class 4 Claim shall not exceed $494,750 on account of the Allowed Class 4 Claim. | $9,895,000 | Undetermined[6] | Impaired and entitled to vote |

---

[5] The projected aggregate recovery amount for Class 3 is subject to the same general processes, contingencies and limitations described in Article 3.3(b) (Class 2 Claimants) of the Plan. However, the Banyon Trustee shall be required to establish appropriate procedures to determine the Third Party Recoveries, Net Third Party Recoveries, and Future Net Third Party Recoveries of the Banyon Ponzi Claimants to enable the Banyon Trustee to provide the required information to the Liquidating Trustee. No later than 45 days prior to any proposed Distribution Date, the Liquidating Trustee and the Banyon Trustee shall meet and confer in attempt to reconcile the required information.

[6] While the aggregate recovery amount is capped at $494,750, the projected aggregate recovery amount for Class 4 is subject to recovery amounts achieved by the Class 2 and 3 Claimants, which, in turn, are subject to the Liquidating Trustee processing and determining Class 2 and 3 Claims as set forth in Articles 3.3(b), 3.4(b) and 7.3 of the Plan, the amount of aggregate Net Third Party Recoveries by Class 2 and Class 3 Claimants, and the outcome of Litigation Claims Held by the Estate, and other provisions of the Plan.

| 5 | Subordinated Claims of Razorback, Levy & Gibraltar (and Future Subordinated Claims | -See Plan, § 3.6.<br><br>-Summary: After payments on Allowed Unclassified Claims and Allowed Claims under §§ 3.2 -3.5 of the Plan, each holder of an Allowed Class 5 Claim shall receive, in full discharge of such Claim, Pro Rata Distributions of Cash from the Liquidating Trust. For any Future Subordinated Claimant, such claimant will be entitled to participate in Class 5 Pro Rata distributions, subject to any conditions relating to the allowance of such Claim.[7] | Est. $45 million | Undetermined[8] | Impaired and entitled to vote |

---

[7] Nothing in the foregoing is intended to modify or supersede the court-approved settlement agreements between the Trustee and Razorback Plaintiffs [ECF 3362 & 3510], Levy Plaintiffs [ECF 3746] and Gibraltar [ECF 3500, 3310] with respect to, *inter alia*, allowance of their claims.

[8] The projected aggregate recovery amount for Class 5 is subject to recovery amounts achieved by the Class 2, 3 and 4 Claimants, which, in turn, are subject to the Liquidating Trustee processing and determining Class 2 and 3 Claims as set forth in Articles 3.3(b), 3.4(b) and 7.3 of the Plan, the amount of aggregate Net Third Party Recoveries by Class 2 and Class 3 Claimants, and the outcome of Litigation Claims Held by the Estate, and other provisions of the Plan.

| 6 | TD Bank's Assigned Claims | -See Plan, § 3.7.<br><br>-Summary: After payments on Allowed Unclassified Claims and Allowed Claims under §§ 3.2 -3.6 of the Plan, TD shall receive, on account of various assigned Allowed Claims, and in full discharge of such Claims, Pro Rata Distributions of Cash from the Liquidating Trust.[9] | Est. $86 mm | Undetermined[10] | Impaired and entitled to vote |
| 7 | All Interests of or in the Debtor | -See Plan, § 3.8.<br><br>-Summary: All Allowed Interests shall be forfeited to the United States of America in the Criminal Forfeiture Action. The United States of America shall not receive any periodic payments from the Liquidating Trust on account of the Allowed Interests unless all Allowed Unclassified Claims and Allowed Claims under §§ 3.2 -3.7 of the Plan have been satisfied in full. | Residual Interests | Undetermined[11] | Impaired and entitled to vote |

---

[9] For the avoidance of doubt, regardless of the Class priority of the original holder's Claim, once such claim is assigned to TD Bank, the Liquidating Trust should only make distributions to TD Bank on account of such or any claim as part of Class 6 distributions.

[10] The projected aggregate recovery amount for Class 6 is subject to recovery amounts achieved by the Class 2, 3, 4 and 5 Claimants, which, in turn, are subject to the Liquidating Trustee processing and determining Class 2 and 3 Claims as set forth in Articles 3.3(b), 3.4(b) and 7.3 of the Plan, the amount of aggregate Net Third Party Recoveries by Class 2 and Class 3 Claimants, and the outcome of Litigation Claims Held by the Estate, and other provisions of the Plan.

The preceding summaries of the material provisions of the Plan do not purport to be complete and are qualified in their entirety by reference to all of the provisions of the Plan, including all Exhibits thereto, all documents described therein and the definitions therein of certain terms used above. For a more detailed description of the Plan, see Article IV of this Disclosure Statement ("Chapter 11 Plan"). For detailed projected financial information, see Article VII of this Disclosure Statement ("Alternatives to the Plan") and Exhibit C ("Liquidation Analysis") that shall be separately filed at a later date.

### C. Voting Instructions

**THE PLAN PROPONENT STRONGLY RECOMMENDS EACH CREDITOR ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN.**

The Bankruptcy Code entitles only holders of impaired claims or equity interests who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims or equity interests that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on it. Holders of classes of claims or equity interests that will receive no distributions under a proposed plan are conclusively presumed to reject that plan and, therefore, are also not entitled to vote on it.

The holders of Claims in Classes 2, 3, 4, 5, 6 and 7, are Impaired and thus may vote to accept or reject the Plan. The Plan Proponent has enclosed Ballots with this Disclosure Statement to solicit the votes of all claimants in the foregoing Classes.

**A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 2, 3, 4, 5, 6 and 7. BEFORE VOTING, SUCH HOLDERS SHOULD READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN AND THE PLAN DOCUMENTS, IN THEIR ENTIRETY.**

You may vote on the Plan by completing the enclosed ballot (the "Ballot") and mailing it or sending via courier to the Clerk of the Court at the following address:

Clerk of Court, U.S. Bankruptcy Court
299 E. Broward Blvd., Room 112
Ft. Lauderdale, FL 33301

---

[11] The projected aggregate recovery amount for Class 7 is subject to recovery amounts achieved by the Class 2, 3, 4, 5 and 6 Claimants, which, in turn, are subject to the Liquidating Trustee processing and determining Class 2 and 3 Claims as set forth in Articles 3.3(b), 3.4(b) and 7.3 of the Plan, the amount of aggregate Net Third Party Recoveries by Class 2 and Class 3 Claimants, and the outcome of Litigation Claims Held by the Estate, and other provisions of the Plan.

**Your ballot must be received by the Bankruptcy Court at the above address by 4:30 p.m. (prevailing Eastern time) on _____, 2013 (the "Voting Deadline") or it will NOT BE COUNTED OR CONSIDERED (no facsimiles or e-mails containing a PDF of your ballot will be accepted). Enclosed is a stamped, addressed envelope for mailing or otherwise delivering your originally signed ballot to the Clerk of the Bankruptcy Court.**

If you are a claimant in 2, 3, 4, 5, 6 and 7, and you did not receive a Ballot with this Disclosure Statement, please contact counsel for the Plan Proponent:

James D. Silver, Esq.
CONRAD & SCHERER, LLP
633 SOUTH FEDERAL HIGHWAY, SUITE 800
FT. LAUDERDALE, FLORIDA 33301
Telephone: 954-462-5500
jsilver@conradscherer.com

Only holders of Allowed Claims or Interests in Impaired Classes of Claims or Interests are entitled to vote on the Plan. Any Ballot executed by the holder of an Allowed Claim or Interest, but which does not indicate acceptance or rejection of the Plan, will be considered a vote to accept the Plan. Any Ballot not executed by the holder of an Allowed Claim or Interest will not be counted as a vote to accept or reject the Plan.

An Impaired class of Claims or Interests accepts the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests in the Class that actually vote are cast in favor of the Plan. Whether or not a holder of a Claim or Interest votes on the Plan, such Person will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities of the classes of creditors and is confirmed by the Bankruptcy Court. Pursuant to the provisions of section 1126(e) of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith.

If the voting members of an Impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount and one-half (1/2) in number of Allowed Claims in that Class actually voted, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

The Plan Proponent may dispute proofs of Claims or Interests that have been filed or that the Trustee listed as disputed in the schedules that the Trustee filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on or otherwise participate in distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. Allowance of a Claim or Interest for voting purposes or disallowance of a Claim or Interest for voting purposes does not necessarily mean that all or a portion of that Claim or Interest will be allowed or disallowed for distribution purposes. The Debtor's schedules listing Claims and whether such Claims are disputed can be

13

inspected at the offices of Conrad & Scherer, LLP, 633 South Federal Highway, Suite 800, Ft. Lauderdale, FL 33301.

### D.    Confirmation of the Plan by the Bankruptcy Court

Once it is determined which Impaired classes have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. However, the Bankruptcy Court may confirm the Plan even if all but one of the Impaired classes do not accept the Plan if the Bankruptcy Court finds that the remaining Impaired class of Claims or Interests (not including any acceptances by "insiders" as defined in section 101(31) of the Bankruptcy Code) has accepted the Plan and that certain additional conditions are met. The Plan Proponent will therefore request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code with respect to any non-accepting Class of Claims or Interests.

Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision. Pursuant to the cram down provision, the Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class of General Unsecured Claims if the non-accepting claimants will receive the full value of their Claims, or, if the non-accepting claimants receive less than full value, if no Class of junior priority will receive anything on account of their pre-petition Claims or Interests.

The Plan provides for the liquidation of substantially all of the property of the Debtor's estate. Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge the Debtor from any of its debts which arose prior to November 10, 2009; however, Confirmation will make the Plan binding upon the Debtor, its creditors, holders of Claims and Interests, and other parties in interest regardless of whether they have accepted the Plan.

## II.    BACKGROUND OF THE DEBTOR

The Debtor is a professional association that was incorporated in the State of Florida on February 7, 2002 with two equal fifty percent (50%) shareholders, Scott Rothstein ("Rothstein") and Stuart Rosenfeldt ("Rosenfeldt"). The Debtor operated as a law firm that maintained a principal office at 401 E. Las Olas Blvd., suite 1650, Ft. Lauderdale, Florida, with satellite offices in Miami, Boca Raton, West Palm Beach, and New York City. The Debtor's Chief Executive officer was Rothstein, who was a member of the Florida Bar from 1988 until he was permanently disbarred by Order of the Florida Supreme Court dated November 25, 2009.

Prior to the commencement of the Bankruptcy Case, the Debtor employed 70 lawyers and generated less than $10 million of income from clients for the first ten months of 2009 and generated less than $10 million of income from its clients for the 2008 calendar year. The Debtor owned and maintained corporate bank accounts with two different banks, Gibraltar Private Bank and Trust ("Gibraltar") and Toronto Dominion Bank. These accounts included two operating accounts, a payroll account, a merchant account, and eight IOTA trust accounts.

Rothstein utilized the Debtor's business, including employees of the firm and the firm's premises, to operate a massive Ponzi scheme involving the purchase or investment in non-existent legal settlements of the firm in which the plaintiffs, the defendants, the settlement proceeds in

14

trust accounts, and the settlements themselves were all fictitious.   Billions of dollars of fraudulently obtained monies circulated through the Debtor's trust accounts, including Florida Bar IOTA accounts in furtherance of the Ponzi scheme.

On November 2, 2009, Rosenfeldt, on behalf of himself and the Debtor, filed a lawsuit in Broward County Circuit Court, Case No.: 2009CA059301AXXCE (the "Receivership Action"), against Rothstein alleging multiple wrongful acts by Rothstein, alleging that Rothstein had perpetrated a massive Ponzi scheme in which funds received from later investors were used to pay earlier investors and seeking the appointment of a receiver for the Debtor.  On November 4, 2009, the state court presiding over the Receivership Action entered an order (a) removing Rothstein as Chief Executive Officer, (b) designated Stuart Rosenfeldt as CEO of the Debtor pursuant to which "all authority to manage the firm's operations and its ongoing client engagements is vested in Plaintiff Rosenfeldt", and (c) appointing Herbert Stettin as the Receiver for the Debtor to, among other things, investigate the status of all funds held in trust accounts and to secure the firm's physical premises (the "Receivership Order").  The Receivership Order found that Rothstein relinquished any authority with respect to the law firm's management.   The Receivership Order did not grant the Receiver the authority to manage the firm's operations or ongoing client engagements except to the extent necessary to determine the status of funds held in trust or as otherwise consistent with the Receivership Order.

On or about January 27, 2010 Rothstein pled guilty to five counts of racketeering, fraud, and money laundering and was eventually sentenced to a prison term of fifty (50) years in connection with a $1.2 billion dollar Ponzi scheme orchestrated and ran by Rothstein through his operation of the Debtor.  The principal charges against Rothstein focused upon his involvement in a Ponzi scheme in which he sold purported confidential settlement agreements to investors, inducing those investors to deposit funds into the Debtor's accounts and transferring funds among the Debtor's accounts so that scheduled returns to investors would be paid from funds generated by new investors.  As part of his guilty plea, Rothstein agreed to forfeit various property, which included 24 pieces of property, numerous luxury cars, boats, jewelry, sports memorabilia, business interests and bank accounts.

## III.    THE CHAPTER 11 CASE

### A.    The Debtor's Bankruptcy Proceedings

The Debtor ceased operating as a law firm upon the discovery of the Rothstein Fraud on or about September 30, 2009. On November 10, 2009 (the "Petition Date"), an involuntary petition seeking relief under Chapter 11 of Title 11 of the United States Code was filed against the Debtor commencing the bankruptcy case.  On November 20, 2009, Herbert Stettin was appointed as the Chapter 11 Trustee (the Trustee") for the Debtor's estate [ECF 35].  Shortly thereafter, on November 30, 2009, the Bankruptcy Court entered an Order for Relief [ECF 66].

### B.    Retained Professionals of the Debtor's estate

Subsequent to the appointment of the Chapter 11 Trustee, the following professionals were retained by the Chapter 11 Trustee to assist him in administrating the Estate's assets and liabilities:

15

1)     Berger Singerman, LLP (Trustee's General Bankruptcy Counsel)

2)     Genovese Joblove & Batista, P.A. (Trustee's Special Litigation and Conflicts Counsel)

3)     Sprechman & Associates, P.A. (Trustee's Special Collections Counsel)

4)     Berkowitz Pollack Brant Advisors and Accountants, LLP (Trustee's Accountants and Financial Advisors)

5)     Trustee Services, Inc. (Trustee's Notice, Claims and Balloting Agent)

6)     Fisher Auction Co., Inc. (Trustee's Auctioneer)

7)     Richman Greer, P.A. (Trustee's Expert Witness)

8)     Ver Ploeg & Lumpkin, P.A. (Trustee's Special Insurance Counsel)

9)     Josephs Jack P.A. (Trustee's Special Litigation Counsel- Litigation against Gibraltar Bank)

10)    Boating World (Trustee's broker for sale of motor vessel)

11)    Development Specialists, Inc. (Trustee's Consultant/Expert Witness)

12)    Barber & Associates, LLC (Trustee's Real Estate Broker)

13)    Marcum, LLP (Trustee's Special Accountant)

In addition, on December 8, 2009, the UST appointed seven members to the Committee pursuant to §1102(a) [ECF No. 94]. The Committee was originally comprised of: (i) Emess Capital LLC, (ii) Ira Sochet Trustee- Ira Sochet Inter Vivos Revocable Trust, (iii) Edward J. Morse, (iv) Razorback Funding LLC, (v) D3 Capital Club LLC, (vi) Coquina Investments, and (vii) Shimon Levy. Subsequently, Coquina Investments, Razorback Funding LLC, D3 Capital LLC, Emess Capital LLC withdrew from the Committee.

Upon the formation of the Committee, the Committee initially retained the following professionals:

1)     Akerman Senterfitt, LLP (Committee's General Bankruptcy Counsel)

2)     Kluger, Kaplan, Silverman, Katzen Levine, P.L. (Committee's Special Insurance Litigation Counsel)

3)     Marcum LLP (Committee's Financial Advisor)

16

On February 27, 2013, the UST reconstituted the Committee to include (i) American Express Travel Related Services Company, Inc., (ii) Ira Sochet, Trustee-Revocable Intervivos Trust of Ira Sochet and (iii) John Mullin Esq. for Edward J. Morse (or his testamentary estate as his successor) [ECF 3926].

### C.    Litigation Commenced by Trustee

During the pendency of the bankruptcy case the Trustee commenced approximately 140 adversary proceedings on behalf of the Debtor's Estate (the "Adversary Proceedings"), many against Net Loser Victims of the Ponzi scheme. A list of the Adversary Proceedings is attached to this Disclosure Statement as Exhibit B. As of the date of the Disclosure Statement, approximately 50 adversary proceedings remain pending. A number of those may be against Net Loser Victims and thus will likely be resolved by the Liquidating Trustee pursuant to the directives in the Plan.

### D.    Estate Financial Status

As of May 2013, the Trustee possessed Cash in the approximate amount of $83.1 million [ECF 4516, at p. 112 of 391]. Such amount will be reduced based on the payment of Administrative Expense Claims through the Effective Date.

### E.    The Claims Process

The Bankruptcy Code provides a procedure for each Person who believes he has a Claim against a debtor to assert such Claim, so that such claimant can receive distributions from the debtor's bankruptcy estate. The bankruptcy court establishes a "bar date" - a date by which creditors must file their Claims, or else such Claims will not participate in the bankruptcy case or any distribution. The Liquidating Trustee will be responsible for reviewing claims for potential objections. Pursuant to the Plan, upon confirmation and the Plan becoming effective, the Liquidating Trustee shall have the exclusive authority to object to claims. These claims objections allow the Liquidating Trustee to eliminate objectionable claims, and thereby maximize the recovery to creditors with Allowed Claims.

On January 14, 2010, a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines was issued establishing May 12, 2010 as the deadline for filing proofs of Claims against the Debtor (the "Bar Date"). In addition, June 1, 2010 was set as the deadline for the filing of Claims by governmental units.

Pursuant to the Plan, all unpaid Administrative Claims must be filed on or before the Administrative Claims Bar Date. The Administrative Claims Bar Date is fourteen days prior to the Confirmation Hearing.

The Chapter 11 Trustee filed the Debtor's schedules which evidence several hundred disputed and unliquidated claims.[12] As of the date of this Disclosure Statement, the claim register

---

[12] See generally, Debtor's Schedules [ECF 144].

maintained by Trustee Services, Inc. (the "Claim/Noticing Agent") reflects that total claims aggregating in excess of $460 million have been filed against the Debtor's estate. However, the total claims amount includes duplicative claims, settled claims, claims subject to Third Party Recoveries and other objectionable claims.

Counsel for the Plan Proponent has begun to identify Claims for possible future resolution or objection, as well as other existing or potential Claims disputes. In addition, some claims have already been eliminated or reduced through claims objections by the Trustee. Nonetheless, a significant number of Claims have not yet been reviewed, and the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Plan Proponent's estimates in this Disclosure Statement. Additionally, subject to the terms of the Plan, the Liquidating Trustee may seek the reduction and/or disallowance of certain Claims that have been satisfied or settled. Accordingly, the amount of the Pro Rata share that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process. Under the Plan and Liquidating Trust Agreement, the Liquidating Trustee will be directed to complete the claims reconciliation and objection process on an expedited basis (90 days to object with possible extension such that time to object will not exceed 180 days) after confirmation as set forth in Article 7.3 of the Plan.

**F.      Litigation Claims of the Estate**

In addition to the Liquidating Trustee being tasked with making distributions to holders of Allowed Claims and handling the claims reconciliation/objection process, the Liquidating Trust (discussed below) is being created to pursue the Litigation Claims of the Debtor, which include the causes of action or potential causes of action against various parties, including, but not limited to, the Litigation Claims asserted in the pending Adversary Proceedings identified on Exhibit B of this Disclosure Statement and Schedule 1.42 of the Plan. However, to the extent certain of the Adversary Proceedings involve litigation against Net Loser Victims, the Plan directs the Liquidating Trustee to promptly and amicably resolve such litigation, all as set forth in more detail in the Plan.

**G.      Potential Sources of Additional Recoveries**

Three of the largest remaining sources of recovery for the Debtor's estate are as follows: (i) assets of the Debtor taken in the forfeiture action; (ii) recovery against George and Gayla Sue Levin and their business entities; and (iii) recovery of litigation claims for avoidable transfers.

**1.      Forfeiture Action**

On December 1, 2009, the United States, by information, charged Rothstein with RICO, money laundering and mail and wire fraud conspiracies and with substantive wire fraud in a case styled as USA v. Rothstein, Case No. 09-60331-CR-COHN, pending in the United States District Court for the Southern District of Florida, Ft. Lauderdale Division (the "Forfeiture Action"). On January 27, 2012, Rothstein pled guilty to all charges contained in the information and agreed to forfeit his right in the properties described in the Information and the Bill of Particulars in the Forfeiture Action. On April 19, 2010, the District Court entered a Preliminary Order of Forfeiture (the "Forfeiture Order"), which order forfeited all of Rothstein's right, title, and interest in all

18

property involved in the RICO and money laundering conspiracies and all property derived from the mail and wire fraud offenses.

The government intended to use monies and properties in the forfeiture action to provide restitution to victims. However, for more than two years the Trustee has been engaged in litigation with the government, including an appeal to the Eleventh Circuit, Case No. 11-10676-BB-USCA (the "Forfeiture Appeal"), thereby preventing most victims from receiving any restitution. The Plan also recognizes that all creditors are benefitted by a swift and fair resolution of the criminal forfeiture action. There may be as much as $50 million in monies and assets from which a distribution can be made. The Plan directs the Liquidating Trust to work cooperatively with the government to resolve that litigation amicably to enable a substantial and prompt distribution of monies and assets in the criminal forfeiture case. Such a distribution will benefit not only the Ponzi victims but also non-victims creditors through resulting reductions in claims held by Ponzi victims against the Estate. It is the objective of this Plan to see that those assets are distributed without further delay.

On June 12, 2013, the Eleventh Circuit Court of Appeals issued a ruling vacating the Forfeiture Order and remanding the case to the District Court for further proceedings. However, the government filed a motion for extension of time to request rehearing and a motion to stay mandate. It is believed that the government will pursue rehearing and/or rehearing *en banc* and possibly an appeal to the U.S. Supreme Court, all of which would cause further delay.

## 2.    Avoidance Action Analysis

The Trustee has filed a number of bankruptcy causes of action. To the extent any cause of action is unresolved as of the Effective Date, the Liquidating Trustee will have the right to pursue it. The net proceeds from these actions shall be utilized to make Distributions under the Plan, including to holders of Allowed General Unsecured Claims.

A chart listing the Estate's pending avoidance actions, is attached hereto as Exhibit B.

With respect to "net loser" Ponzi victims, the Plan will direct the Liquidating Trustee to promptly and amicably resolve all litigation pending against "net loser" Ponzi victims that were not complicit in and did not know they were investing in a Ponzi scheme. In that regard, the Plan directs that litigation claims not be pursued against these victims for fraudulent transfers, usury or similar claims, and that any avoidance claims be limited to preferences under Section 547 of the Bankruptcy Code with the objective wherever possible to resolve those claims through a "netting" process in relation to claims objections and calculation of amounts to be distributed on such claims.

## IV.    CHAPTER 11 PLAN OF LIQUIDATION

THE FOLLOWING IS A BRIEF SUMMARY OF CERTAIN OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN.  THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN.  CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN. SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY. THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.

### A.    Plan Overview

The only unclassified class of Claims contemplated by the Plan is Administrative Claims (including Professional Claims) and Priority Claims.  Classes 2, 3, 4, 5, 6 and 7 are Impaired and are entitled to vote on the Plan.

### B.    Plan Summary

#### 1.    Administrative Claims.

Subject to the allowance procedures and deadlines provided in the Plan, on the Effective Date or as soon thereafter as is practicable, the holder of an Allowed Administrative Claim shall receive on account of the Allowed Administrative Claim and in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim, or (b) such other treatment as to which the Liquidating Trustee and the holder of such Allowed Administrative Claim have agreed upon in writing, provided, however, that Professional Claims shall be paid in accordance with Section 2.3 of the Plan, as described below.

#### 2.    Statutory Fees.

The Trustee, on behalf of the Debtor, shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) within fourteen (14) days of the entry of the Confirmation Order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the Cash disbursements for the relevant period.  The Liquidating Trustee shall further pay the United States Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the Liquidating Trust for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6).

20

### 3.    Professional Claims.

On the Effective Date, the Trustee shall pay all amounts owing to the Professionals for all outstanding Professional Claims.    On or prior to the Administrative Claims Bar Date, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Effective Date.    Rather than estimate Professional Claims due for periods that have not been billed as of the Effective Date, Professionals shall apply for such amounts after the Effective Date.

### 4.    Allowed Priority Non-Tax Claims.

On the Effective Date, the Trustee shall pay all amounts owing to the holders of Allowed Priority Non-Tax Claims cash equal to the Allowed Priority Non-Tax Claim in full satisfaction, release, and discharge of the Allowed Priority Non-Tax Claim.    The Trustee scheduled disputed and unliquidated priority claims in favor of various creditors aggregating total liability in the amount of $815,348.56.

### 5.    Allowed Priority Tax Claims.

Holders of Allowed Priority Tax Claims shall receive on account of their Allowed Priority Tax Claim at the option of the Liquidating Trustee, in full satisfaction, settlement, release, extinguishment and discharge of such Allowed Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim in cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Allowed Priority Tax Claim becomes Allowed, and (iii) a date agreed to by the Liquidating Trustee and the holder of such Allowed Priority Tax Claim  equal monthly installment payments on account of their Allowed Priority Tax Claim; (b) equal cash payments from the Liquidating Trustee made on the last Business Day of every (3) month period following the Effective Date and terminating on November 30, 2014; or (c) such other treatment on such other terms and conditions as may be agreed upon in writing by the holder of such Allowed Priority Tax Claim and the Liquidating Trustee or as the Bankruptcy Court may order.    The Liquidating Trustee shall have the right, in his sole discretion, to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature.

### C.    Treatment of Claims and Interests.

The treatment of and consideration to be received by holders of Allowed Claims and the treatment of Interests pursuant to Article 3 of the Plan will be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims against, or Interests in, the Debtor and the Debtor's Estate, except as otherwise expressly provided in the Plan or the Confirmation Order.

### 1.    Class 1:  Allowed Secured Claims.

(a)    Definition of Class 1

21

Class 1 consists of Allowed Secured Claims. The Plan Proponents do not know whether any Secured Claims will ultimately be Allowed, though some Secured Claims have been filed based on tracing or constructive trust theories.

> (b)    Treatment of Class 1

Each holder of an Allowed Secured Claim shall receive, in the sole discretion of the Liquidating Trustee, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim: (a) Cash equal to the amount of such Allowed Secured Claim on or as soon as practicable after the later of (i) the Effective Date; (ii) the date that such Secured Claim becomes Allowed, and (iii) a date agreed to by the Liquidating Trustee and the holder of such Allowed Secured Claim; (b)  treatment such that such Allowed Secured Claim is reinstated; (c) the property securing such Allowed Secured Claim; or (d) such other treatment on such other terms and conditions as may be agreed upon in writing by the holder of such claim and the Liquidating Trustee or as the Bankruptcy Court may order.

> (c)    Voting Status of Class 1

Class 1 is Unimpaired under the Plan and the holders of such Claims are not entitled to vote on the Plan.

> **2.    Class 2:  Allowed General Unsecured Claims**

> (a)    Definition of Class 2

Class 2 consists of all Allowed General Unsecured Claims held by Creditors (including, but not limited to, Ponzi victim creditors and trade creditors).

> (b)    Treatment of Class 2

After all payments are made on account of Allowed Class 1 Claims as set forth in this Plan, each holder of Allowed Class 2 Claims shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Claim, periodic distributions from the Liquidating trust of its Pro Rata share on account of its Allowed Claim to be paid by the Liquidating Trust pursuant to the Liquidating Trust Agreement.

**Repayment Obligation** -- A Class 2 Creditor that is a Multiple Source Recovery Creditor shall be required to repay the Liquidating Trustee any "Excess Distributions" ("Repayment Obligation") and the Liquidating Trustee shall be deemed, without the necessity of taking further action, to hold a constructive trust over any monies or other property transferred, paid, distributed, or inuring to the benefit of such creditor to ensure payment of the Excess Distribution.  For purposes of the Plan, "Excess Distribution" shall mean the lesser of (i) the total distribution(s) made to such creditor pursuant to the Plan or Liquidating Trust Agreement (the "Total Distribution") and (ii) the amount by which the sum of the Total Distribution and the Future Net Third Party Recoveries exceed the allowed amount of such creditor's Allowed Claims under the Plan.  For purposes of the Plan, "Future Net Third Party Recoveries" shall

mean Net Third Party Recoveries occurring after the Class 2 Claim has been finally Allowed and after which the amount of the Class 2 Claim shall not been reduced. Neither "Future Net Third Party Recoveries" nor "Third Party Recoveries" (nor "Net Third Party Recoveries) means potential recoveries but rather means recoveries actually achieved. When "Future Net Third Party Recoveries" applies to another class, the definition shall be deemed to be modified to include the other class number. For the avoidance of doubt, the Repayment Obligation shall never exceed the Total Distribution to the affected creditor.

**Calculation of Future Net Third Party Recoveries or Net Third Party Recoveries --** In calculating any Future Net Third Party Recoveries or Net Third Party Recoveries, the Liquidating Trustee shall exclude any amounts attributable to recoveries for which such third party was or may have been liable, but which would not be recoverable as a component of an Allowed Class 2 Claim, such as pre-judgment interest and/or punitive damages. In performing such calculation, the Liquidating Trustee shall rely on any order or judgment setting forth the amounts recoverable on any particular basis (i.e., whether for damages, punitive damages, interest, etc.), and shall rely on any settlement agreement so allocating any settlement payment unless such allocation is patently unreasonable.

**Multiple Source Recovery Class 2 Creditors/Multiple Source Recovery Forms --** At least 45 days prior to any proposed Distribution Date, the Liquidating Trustee shall serve all Multiple Source Recovery Class 2 Creditors with a form requiring the Multiple Source Recovery Class 2 Creditors to disclose the identity and contact information for each of their potential additional source(s) of recovery (the "Third Party Recovery Sources"), the general basis for such claims for recovery, identification of any cases or proceedings in which any such claim for recovery has been made, and a summary of all recoveries, settlements, or judgments obtained or agreed from Third Party Recovery Sources, any allocations of the amounts so recovered, obtained or awarded, and the fees and expenses incurred to obtain same (the "Alternate Recovery Source Form"). Within 21 days from the date of service of the Alternate Source Recovery Form, Multiple Source Recovery Class 2 Creditors shall send the completed Alternate Source Recovery Form to the Liquidating Trustee. Multiple Source Recovery Class 2 Creditors that fail to timely provide the Alternative Source Recovery Form to the Liquidating Trustee, fail to provide the requested information or provide false or materially inaccurate information, shall be barred from receiving the distribution and any further distributions on account of their Allowed Class 2 Claims except that for good cause shown, the Bankruptcy Court, upon motion filed by the Multiple Source Recovery Class 2 Creditor not less than 10 days before the proposed Distribution Date, may excuse such non-compliance except to the extent than the Multiple Source Recovery Class 2 Creditor knowingly provided false information. In the event the Liquidating Trustee believes that a Multiple Source Recovery Class 2 Creditor had obtained a prior distribution as a result of providing him with false or materially inaccurate information, the Liquidating Trustee shall be entitled to file a motion with the Bankruptcy Court (and provide notice to the Multiple Source Recovery Class 2 Creditor) requesting relief that may include (a) disgorgement of some or all prior distribution(s); (b) disallowance or some or all future distributions; and (c) an award of attorneys' fees and costs incurred in bringing such motion.

**Liquidating Trustee to Ascertain Net Future Third Party Recoveries and Net Third Party Recoveries Prior to Distribution --** The Liquidating Trustee shall, prior to making any Distribution and in reviewing claims for any distribution, first ascertain the amount of all "Net

Third Party Recoveries" and "Net Future Third Party Recoveries" actually achieved.  In calculating any Net Third Party Recoveries and Net Future Third Party Recoveries, the Liquidating Trustee shall exclude any amounts attributable to recoveries for which such third party was or may have been liable, but which would not be recoverable as a component of an Allowed Class 2 Claim, such as pre-judgment interest, attorney's fees, costs, and/or punitive damages. In performing such calculation, the Liquidating Trustee shall rely on any order or judgment setting forth the amounts recoverable on any particular basis (i.e., whether for damages, punitive damages, interest, attorney's fees, costs, etc.), and shall rely on any settlement agreement so allocating any settlement payment unless such allocation is patently unreasonable. Provided, however, that notwithstanding anything herein to the contrary, reductions of claims on account of Third Party Recoveries, Net Third Party Recoveries, or Future Net Third Party Recoveries shall be made in accordance with any settlement agreement with the Trustee approved by the Bankruptcy Court in this Case where such court approved settlement agreement addresses the extent of any reductions that will be made based on Third Party Recoveries, Net Third Party Recoveries, Future Third Party Recoveries, or Future Net Third Party Recoveries.

**Tax Benefits Not Third Party Recovery** -- Moreover, for the avoidance of doubt, neither Third Party Recoveries, Net Third Party Recoveries nor Future Net Third Party Recoveries shall include any tax benefit from a theft loss deduction taken in accordance with the Internal Revenue Code, or other tax benefits received by a holder of a Claim, in either case as a result of losses in connection with the Debtor or Scott Rothstein.

**Distributions plus Future Net Third Party Recoveries not to Exceed Allowed Class 2 Claim Amount** -- At any time that the sum of the Total Distribution on account of an Allowed Class 2 Claim and the Future Net Third Party Recoveries applicable to the holder of such claim equals or exceeds such creditor's Allowed Class 2 Claim, as determined in the manner set forth above, then such Class 2 Claim shall be deemed fully satisfied and shall receive no further distributions from the Liquidating Trust. To the extent that the amount of a pro rata distribution to which a holder of an Allowed Class 2 Claim would otherwise be entitled would cause such holder to receive an amount greater than the amount necessary to full satisfy such Claim, the Liquidating Trustee shall distribute only such portion as will cause the claim to be fully satisfied. The adjustments provided for in this paragraph do not provide the Liquidating Trustee any authority to reduce or eliminate distributions on the basis of potential recoveries (i.e., recoveries that are possible but which have not yet been obtained).

**Notice of Reduced or No Distribution on Account of Future Net Third Party Recoveries** -- The Liquidating Trustee shall endeavor to determine the amount of any Future Net Third Party Recoveries of holders of Allowed Class 2 Claims at least 60 days prior to any distribution on account of such Claims.  At least 45 days prior to any distribution, the Liquidating Trustee shall serve a notice on any party whose distribution on account of its Allowed Class 2 Claim is to be reduced or not made on the basis of Third Party Recoveries, Net Third Party Recoveries, Future Third Party Recoveries, or Future Net Third Party Recoveries, advising the affected party of the determination made by the Liquidating Trustee.  Such notice shall provide the affected party thirty (30) days from the service of such notice to object to the determination, such objection to be filed with the Bankruptcy Court and served on the Liquidating Trustee. If a timely objection is filed and served, unless otherwise settled between

the Liquidating Trustee and the affected party, such objection shall be resolved by the Bankruptcy Court.

**Treatment not intended to Modify or Supersede Approved Settlements** -- Nothing in the foregoing is intended to modify or supersede any settlement agreements approved by Final Order of the Bankruptcy Court that address the effects of Third Party Recoveries on claims or distributions.

(c)     Voting Status of Class 2

Class 2 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

**3.     Class 3:  Banyon Unsecured Claim**

(a)     Definition of Class 3

Class 3 consists of the Allowed Unsecured Claim against the Debtor's bankruptcy estate held by the Banyon Bankruptcy Estates, which were created by operation of Section 541 of the Bankruptcy Code following the commencement of the Banyon Bankruptcy Cases.  The amount of the Allowed Class 3 Claim in favor of the Banyon Bankruptcy Estates shall be the total Allowed amount of all Ponzi related claims in the Banyon Bankruptcy Cases held by entities that (i) invested through Banyon 1030-32 or Banyon Income Fund and (ii) that timely filed proofs of claim in one or both of the Banyon Bankruptcy Cases or received an Allowed claim in either or both of the Banyon Bankruptcy Cases pursuant to a Final Order of the Bankruptcy Court less the amount of any distributions by the Liquidating Trustee in connection with the Bankruptcy Case to such Banyon investor Ponzi related claimants on account of claims included in the above calculation.  Provided, however, that claims for the same or substantially similar losses relating to the same investment that are made by or on behalf of the same entity in both Banyon Bankruptcy Cases shall be treated as an allowed claim for purposes of this paragraph only once and the substantially duplicative claim shall be excluded from the calculation of such allowed claim amounts.  For purposes of this Plan, the Allowed Class 3 Claim in favor of the Banyon Bankruptcy Estates is estimated at $50 million.

(b)     Treatment of Class 3

After all payments are made on account of Allowed Class 1 Claims, Robert Furr, as Trustee of the Banyon Bankruptcy Estates, or any successor Trustee of such estates (the "Banyon Trustee"), shall receive, in full satisfaction, settlement, release and discharge of and in exchange for the Allowed Class 3 Claim periodic Pro Rata distributions from the Liquidating Trust in amounts equal to periodic Pro Rata distributions made to holders of Allowed Class 2 Claims pursuant to the Liquidating Trust Agreement.   In no event shall the aggregate amount distributed on account of the Allowed Class 3 Claim exceed the amount of the Allowed Class 3 Claim.

The Banyon Bankruptcy Estates collectively shall be considered a Multiple Source Recovery Creditor for purposes of the Plan and the Allowed Class 3 Claim shall be subject to all requirements, rules and other provisions applicable to Multiple Source Recovery Creditors in

Class 2 beginning with the Repayment Obligation and continuing to the conclusion of Section 3.3 and including, without limitation, the provisions under the following headings: (i) **Repayment Obligation**, (ii) **Calculation of Future Net Third Party Recoveries or Net Third Party Recoveries**, (iii) **Multiple Source Recovery Creditors/Multiple Source Recovery Forms, Liquidating Trustee to Ascertain Net Future Third Party Recoveries and Net Third Party Recoveries Prior to Distribution**, (iv) **Tax Benefits Not Third Party Recovery**, (v) **Distributions plus Future Net third Party Recoveries not to Exceed Allowed Class 3 Claim Amount, Notice of Reduced or No Distribution on Account of Future Net Third Party Recoveries**, and (vi) **Treatment not intended to Modify or Supersede Approved Settlements**.

Provided, however, that calculation of Third Party Recoveries, Net Third Party Recoveries, and Future Third Party Recoveries, and Future Net Third Party Recoveries shall be based solely on recoveries of the claimants in the Banyon Bankruptcy Cases whose claims are included in calculating the Allowed Banyon Class 3 Claim ("Banyon Ponzi Claimants").

All notice procedures set out in Section 3.3 above shall apply to the Liquidating Trustee and the Banyon Trustee except that the Banyon Trustee shall be required to establish appropriate procedures to determine the Third Party Recoveries, Net Third Party Recoveries, and Future Third Party Recoveries, and Future Net Third Party Recoveries of the Banyon Ponzi Claimants to enable the Banyon Trustee to provide the required information to the Liquidating Trustee. No later than 45 days prior to any proposed Distribution Date, the Liquidating Trustee and the Banyon Trustee shall meet and confer in attempt to reconcile the required information.

(c)    Voting Status of Class 3

Class 3 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

**4.    Class 4: Razorback Unsecured Rising Tide Claim**

(a)    Definition of Class 4

Class 4 consists of the Allowed Unsecured Claim in the amount of $9,895,000 held by the Razorback Plaintiffs pursuant and subject to the terms of a court-approved settlement agreement with the Trustee [ECF 3362 & 3510]. Any reductions to the foregoing Allowed Claim amount or any distributions to be made thereon shall be strictly limited to any such reductions provided for in the foregoing settlement agreement and shall be made in accordance therewith.

(b)    Treatment of Class 4

The Allowed Class 4 Claim shall not receive any Distribution under this Plan or the Liquidating Trust until such time as the holders of Allowed Class 2 and Allowed Class 3 Claims have received Pro Rata Distributions of Cash from the Liquidating Trust equal to 95% of the Allowed amount of such Claims as determined by the Liquidating Trustee or the Bankruptcy Court. Once it is determined that each of the holders of Allowed Class 2 and Class 3 Claims have received a Pro Rata Distribution of Cash equal to 95% of the Allowed amount of such Class 2

and Class 3 Claims, the Allowed Class 4 Claim shall commence receiving Pro Rata Distributions equal to the Pro Rata Distributions provided thereafter to Allowed Class 2 and Allowed Class 3 Claims; provided, however, that the total amount of Cash distributed pursuant the Plan and Liquidating Trust to the holder of the Allowed Class 4 Claim shall not exceed $494,750 on account of the Allowed Class 4 Claim. The foregoing treatment shall be in full satisfaction, release and discharge of the Razorback Unsecured Rising Tide Claim.

(c)      Voting Status of Class 4

Class 4 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

**5.      Class 5:  Subordinated Claims of Razorback, Levy & Gibraltar (and Future Subordinated Claims)**

(a)      Definition of Class 5

Class 5 consists of the Allowed Subordinated Unsecured Claims of: (i) the Razorback Plaintiffs in the amount of $30,093,125, which was Allowed pursuant to their court-approved settlement agreement with the Trustee [ECF 3362 & 3510]; (ii) Shimon Levy in the amount of $3,089,861.46, Rachel Levy in the amount of $250,000, Daniel Minkowitz in the amount of $1,895,038.44, Mordechai Bar-Adon in the amount of $195,791.64, and Ben Zion Varon in the amount of $194,791.64 (collectively, the "Levy Plaintiffs"), each of which was Allowed pursuant to their court-approved settlement agreement with the Trustee [ECF 3746]; and (iii) Gibraltar Private Bank & Trust Company ("Gibraltar") in the amount of $10,000,000 pursuant to its court-approved settlement agreement with the Trustee [ECF 3500], so long as it performs under its Separate Agreements with the Trustees and Razorback Plaintiffs all as set forth and defined in the Gibraltar settlement agreement and related documents [ECF 3301].  Class 5 also consists of any Allowed Unsecured Claims that are subordinated AFTER the Effective Date but prior to the Bankruptcy Case being closed.

(b)      Treatment of Class 5

After the all payments are made on account of Allowed Class 1, Class 2, Class 3 and Class 4 Claims as set forth in this Plan, each holder of an Allowed Class 5 Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Class 5 Claim periodic Pro Rata distributions from the Liquidating Trust pursuant to the Liquidating Trust Agreement. In no event shall a holder of an Allowed Class 5 Claim recover aggregate amounts in excess of its Allowed Class 5 Claim.  With respect to any Future Subordinated Claimant, such claimant will be entitled to participate in Class 5 Pro Rata distributions, subject to any conditions relating to the allowance of such Claim.

Nothing in the foregoing is intended to modify or supersede the court-approved settlement agreements between the Trustee and Razorback Plaintiffs [ECF 3362 & 3510], Levy Plaintiffs [ECF 3746] and Gibraltar [ECF 3500, 3310] with respect to, inter alia, allowance of their claims.

27

(c)    Voting Status of Class 5

Class 5 is Impaired under the Plan and the holders of such Claims are entitled to vote on the Plan.

### 6.    Class 6: TD Bank's Assigned Claims

(a)    Definition of Class 6

Class 6 consists of the Allowed Unsecured Claims assigned to TD Bank, N.A. ("TD Bank"), in which TD Bank has been assigned various Allowed Claims of other claimants pursuant to settlements entered into either before or after the Effective Date, including most recently, a settlement where it received the assignment of the $26,000,000 subordinated unsecured claim of arising out of the Funds Settlement Agreement [ECF 3185 & 3352]. For the avoidance of doubt, regardless of the Class priority of the original holder's Claim, once such claim is assigned to TD Bank, the Liquidating Trust should only make distributions to TD Bank on account of such or any claim as part of Class 6 distributions.

(b)    Treatment of Class 6

After the all payments are made on account of Allowed Class 1, Class 2, Class 3, Class 4 and Class 5 Claims as set forth in this Plan, each holder of an Allowed Class 6 Claim, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Class 6 Claim periodic distributions from the Liquidating Trust pursuant to the Liquidating Trust Agreement. In no event shall a holder of an Allowed Class 6 Claim recover aggregate amounts in excess of its Allowed Class 6 Claim.

(c)    Voting Status of Class 6

Class 6 is Impaired under the Plan and the holder of such Claims are entitled to vote on the Plan.

### 7.    Class 7 consists of all Interests of or in the Debtor

(a)    Definition of Class 7

Class 7 consists of all Allowed Interests possessed by the equity holders of the Debtor.

(b)    Treatment of Class 7

All Allowed Interests shall be forfeited to the United States of America in the Forfeiture Action and the United States of America shall receive, in full satisfaction, settlement, release and discharge of and in exchange for its Allowed Interests, periodic distributions from the Liquidating Trust of its share on account of its Allowed Interests to be paid by the Liquidating Trust on dates to be determined in the reasonable discretion of the Liquidating Trustee. Notwithstanding the foregoing, Allowed Interests are subordinated to Allowed Class 1, 2, 3, 4, 5, and 6 Claims. Accordingly, the United States of America shall not receive any distribution from

28

the Liquidating Trust on account of the Allowed Interests unless and until holders of Allowed Class 1, 2, 3, 4, 5 and 6 Claims have been satisfied in full.

      (c)     Voting Status of Class 7

Class 7 is Impaired under the Plan and the holders of such Interests are entitled to vote on the Plan.

**D.     Treatment of Executory Contracts.**

Unless a motion to assume is filed prior to confirmation and an order authorizing assumption is entered on or prior to the Effective Date, all executory contracts and unexpired leases of the Debtor shall be rejected pursuant to Section 365 of Bankruptcy Code. To the extent any loan agreement pursuant to which the Debtor is a lender is deemed to be an executory contract within the meaning of 365 of the Bankruptcy Code, rejection of such loan agreement shall not, by itself, eliminate the borrower's obligations thereunder or cause any of Debtor's Liens, security interests or ownership rights to be released or extinguished. For the avoidance of any doubt, this section (Section 5.1 of the Plan) shall apply to any and all contracts or engagements the Debtor may have with professionals, including, but not limited to, attorneys, auditors and accountants.

The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejection of executory contracts pursuant to Bankruptcy Code Section 365 as of the Effective Date. Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order (the "Rejection Claim Bar Date"), or such Claim shall be forever barred, shall not be enforceable against the Debtor, its Estate, the Liquidating Trust, the Liquidating Trustee, or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Claim.

**E.     Liquidating Trust Agreement**

The following is a summary of the more salient provisions of the Liquidating Trust Agreement. The below is merely a summary and the reader is advised to review the complete text of the Liquidating Trust Agreement which is annexed to the Plan as Schedule 1.41.

      1.     **Establishment of the Liquidating Trust.**

On the Effective Date, the Trustee, on behalf of the Debtor and the Beneficiaries, shall execute the Liquidating Trust Agreement attached to the Plan as Schedule 1.41, and take all steps necessary to establish the Liquidating Trust. The Official Committee of Unsecured Creditors in this Bankruptcy Case is deemed automatically disbanded on the Effective Date.

      2.     **Purpose of Liquidating Trust.**

The Liquidating Trust is being established for the sole purpose of liquidating the Debtor's Assets, including prosecuting Litigation Claims and distributing the proceeds thereof to certain holders of Allowed Claims and Allowed Interests in the Debtor, as identified in and prescribed

29

by this Plan. The Liquidating Trust shall not continue or engage in any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Unless otherwise required by law, it is intended that all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

### 3.    Contribution of Assets to the Liquidating Trust.

On the Effective Date of the Plan, the Trustee on behalf of the Debtor's estate shall transfer all of the Debtor's Assets to the Liquidating Trust, pursuant to the terms of the Liquidating Trust Agreement. Title to all Assets contributed to the Liquidating Trust shall vest in the Liquidating Trust on the Effective Date following the transfer. For the avoidance of any doubt, following the contribution of Assets to the Liquidating Trust pursuant to the Plan (Section 6.1.3) and the Liquidating Trust Agreement, the Liquidating Trustee shall have standing to pursue Litigation Claims on behalf of the Liquidating Trust and shall be entitled to all remedies available to the Trustee in the Bankruptcy Case.

### 4.    Liquidating Trust Management.

The Liquidating Trustee shall have the power and authority set forth in the Liquidating Trust Agreement. As a condition to serving as Liquidating Trustee, and any successor trustee, the Liquidating Trustee is required to and shall post a bond in favor of the Liquidating Trust in an amount not less than the amount of Cash held by the Liquidating Trust, which bond shall be in substantially the form as that required by the United States Trustee's Office for trustees serving in bankruptcy cases within the Southern District of Florida. For the avoidance of any doubt, the Liquidating Trust shall post and be responsible for all costs associated with the posting of the foregoing bond including costs associated with such bond.

### 5.    Litigation Trust Structure.

As more fully set forth in the Liquidating Trust Agreement, the Liquidating Trustee shall oversee and direct the Liquidating Trust's operations and activities, including the retention of counsel, decisions to pursue or not pursue Litigation Claims belonging solely to the Liquidating Trust and its Beneficiaries, and settlement of any such Litigation Claims belonging solely to the Liquidating Trust and its Beneficiaries.

### 6.    Approval of Settlement.

The Liquidating Trustee shall have the authority as set forth in Section 4.4 of the Litigation Trust Agreement to settle or resolve any Litigation Claim subject to Bankruptcy Court approval under the Retention of Jurisdiction provisions set forth in Article 11 of the Plan.

### 7.    Retention and Compensation of Professionals by Liquidating Trustee.

The Liquidating Trustee, subject to approval of the Bankruptcy Court, may employ attorneys, accountants, appraisers, expert witnesses, insurance adjusters or other persons whose services may be reasonably necessary or advisable in the judgment of the Liquidating Trustee to advise or assist him in the discharge of his duties as Liquidating Trustee, or otherwise in the

exercise of any powers vested in the Liquidating Trustee, and to pay reasonable compensation, subject to approval of the Bankruptcy Court, to such attorneys, accountants, appraisers, expert witnesses, insurance adjusters or other persons. The Liquidating Trustee shall be authorized pursuant to Sections 4.5 of the Liquidating Trust Agreement to pay on a monthly basis the reasonable fees and expenses incurred by the Liquidating Trustee and his professionals, but shall file post-confirmation quarterly fee applications with the Bankruptcy Court for final approval of same.

### 8.    Resignation and Removal of Liquidating Trustee.

The Liquidating Trustee may resign and be discharged from any future obligations and liabilities under the Liquidating Trust Agreement by filing a notice thereof with the Bankruptcy Court at least thirty (30) days prior to the effective date of such resignation. Such resignation shall become effective on the date specified in such notice. The Liquidating Trustee may be removed at any time by order of the Bankruptcy Court upon motion by any party in interest pursuant to the standard under applicable law for removal of a Chapter 7 trustee. Venue for any actions concerning removal of the Liquidating trustee shall be proper in the Bankruptcy Court. Upon any such removal, such removed Liquidating Trustee shall not be entitled to any reimbursement and indemnification as set forth in the Liquidating Trust Agreement which remain due and owing to such Liquidating Trustee at the time of such removal, however, the Liquidating Trustee may request such reimbursement and indemnification, or a portion thereof, from the Bankruptcy Court upon notice and hearing to parties in interest. If, at any time, the Liquidating Trustee shall give notice of his intent to resign pursuant to the Liquidating Trust Agreement, or be removed or shall become incapable of acting, counsel to the Liquidating Trustee shall provide notice thereof to the Bankruptcy Court. The U.S. Trustee's Office, with the approval of the Bankruptcy Court, and upon notice and hearing to parties in interest, shall designate a successor liquidating trustee for the Liquidating Trust.

### 9.    Liquidating Trust Agreement Governs.

In the event of any inconsistencies between the Plan and the Liquidation Trust Agreement, the Liquidation Trust Agreement shall govern.

### 10.    Continuation of Automatic Stay.

In furtherance of the implementation of the Plan, except as otherwise provided herein, all injunctions or stays provided for in the Bankruptcy Case pursuant to Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect and apply to all Creditors and Beneficiaries holding Claims against the Debtor, the Estate, the Assets, the Liquidating Trustee, the Liquidating Trust and the Trust Assets until the Final Distribution Date.

### F.    Dissolution of the Debtor

As soon as practicable after the Effective Date, the Debtor will be dissolved and cease to exist for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the

31

Liquidating Trustee shall be authorized to file the Debtor's final tax returns and shall be authorized to File and shall File with the official public office for keeping corporate records in each Debtor's state of incorporation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Trustee without the need for any action or approval by any other party. From and after the Effective Date, the Debtor (i) for all purposes shall be deemed to have withdrawn its business operations from any state in which it was previously conducting, or are registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, and (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

### G.    Closing of the Bankruptcy Case

Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Bankruptcy Case, when all Assets contributed to the Liquidating Trust have been liquidated and converted into Cash (other than those Assets abandoned by the Liquidating Trust), and such Cash has been distributed in accordance with the Liquidating Trust Agreement and this Plan, and the Final Distribution made, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the Bankruptcy Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### H.    Objections to Claims

Subject to applicable law, and except as otherwise set forth herein, from and after the Effective Date, the Liquidating Trustee shall have the sole authority to litigate to judgment objections to Claims or Interests pursuant to applicable procedures established by, or grounds set forth in, the Bankruptcy Code, the Bankruptcy Rules, the Liquidating Trust Agreement and this Plan. Any compromise of any Claim objection by the Liquidating Trustee shall be subject to approval by the Bankruptcy Court under the Retention of Jurisdiction provisions set forth in Article 11 of this Plan. The deadline within which the Liquidating Trustee shall file and serve objections to Claims or Interests is ninety (90) days after the Effective Date ("Claims Objection Deadline"), subject to extension by the Bankruptcy Court for cause shown; provided, however, that under no circumstances shall the Claims Objection Deadline extend beyond one hundred-eighty (180) days after the Effective Date, unless the basis for the claims objection (i) arose after the time for objecting to claims has expired, and (ii) could not have been ascertained with reasonable diligence before the time for objecting to claims has expired.

### I.    Distributions Under the Plan

#### 1.    Payment Address and Form of Payment.

Distributions to holders of Allowed Claims and Interests shall be made: (a) at the addresses set forth in the proofs of Claim Filed by such holders; (b) at the addresses set forth in any written notices of address change Filed with the Bankruptcy Court or delivered to the Liquidating Trustee after the date on which any related proof of Claim was Filed; or (c) at the addresses reflected in the Schedules relating to the applicable Allowed Claim or Interest if no

proof of Claim has been Filed and the Liquidating Trustee has not received a written notice of a change of address.

Except as otherwise provided in the Liquidating Trust Agreement or the Confirmation Order, Cash payments to be made pursuant to the Plan shall be made by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

Other than in the Final Distribution, no payment of Cash in an amount of less than $100.00 shall be required to be made on account of any Allowed Claim.

### 2.    No Postpetition Interest.

Postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim; provided, however, that nothing herein shall have the effect of limiting any party's entitlement to recover interest from any party other than the Debtor or the Liquidating Trust, and provided further  that any recovery of interest from a third party shall not be treated as a "Third Party Recovery" for purposes of distributions under this Plan.  Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.   To the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

### 3.    Face Amount

Unless otherwise expressly set forth herein with respect to a specific Claim or Class of Claims, for the purpose of the provisions of this Article, the "Face Amount" of a Disputed Claim means the amount set forth on the proof of Claim, unless no proof of Claim has been timely Filed or deemed Filed, in which case the Face Amount shall be zero.

### 4.    Unclaimed or Undeliverable Distributions

For purposes of provisions of this Article, an "Unclaimed Distribution" or "Undeliverable Distribution" (and, collectively, "Unclaimed Property") means any distribution check issued by the Liquidating Trustee to any holder of an Allowed Claim or Interest pursuant to the Plan that (i) is returned to the Liquidating Trustee as undeliverable and no appropriate forwarding address is received within the later of: (a) 180 days after the Effective Date, and (b) 180 days after such attempted distribution by the Liquidating Trustee is made to such holder, or (ii) such distribution check is not negotiated or cashed within 180 days after its issuance by the Liquidating Trustee and no request for re-issuance is made within such 180-day period, at which time, such distribution shall be subject of a stop payment order and no further distributions shall be made to such holder on account of such Allowed Claim or Interest.  While the Liquidating Trustee is under no affirmative obligation to attempt to locate any holder of an Allowed Claim and may rely

33

upon the procedures set forth in the Plan (Article 8.1 -- "Delivery of Distributions in General"), the Liquidating Trustee should use best efforts to locate a holder of an Allowed Claim.

For the purposes of such determination as Unclaimed Property, such Allowed Claim or Interest shall be discharged and the holder of such Allowed Claim or Interest shall be forever barred from asserting such Claim against the Liquidating Trust, the Liquidating Trustee, the Debtor, its Estate or their respective property. In such cases, any Cash held for distribution on account of such Claim shall remain property of the Liquidating Trust subject to the other provisions of Article 8.6 described herein.

As authorized by Local Rule 3011-1(B)(2) and (C)(2), if the combined total of Unclaimed Property related to Allowed Claims under the Plan totals (i) $10,000 or more, the Unclaimed Property shall, subject to the provisions of the Plan (such as Section 8.4 -- "No de Minimis Distributions"), be distributed by the Liquidating Trustee, at the time of Final Distribution Date, to the Beneficiaries in Class 2 until such Beneficiaries are paid in full on account of their Allowed Claims in Class 2, as determined by the Liquidating Trustee, and, thereafter, distributed by the Liquidating Trustee to other Beneficiaries in the order of priority set forth in, and pursuant to the terms of, the Plan, or (ii) less than $10,000, the Unclaimed Property shall be donated to the Bankruptcy Bar Foundation, a not-for-profit, non-religious organization dedicated to, among other things, promoting the pro bono legal representation of the indigent; provided that, pursuant to Section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed, and the holder or successor to such holder of any Claim Disallowed will be forever barred, expunged, estopped and enjoined from asserting any such Disallowed Claim in any manner against the Trustee, the Estate, the Liquidating Trust, the Liquidating Trustee, Trust Assets, or their respective property, notwithstanding any federal or state escheat laws to the contrary.

### 5.    Interim Distributions

Unless otherwise provided in the Plan, the Liquidating Trustee in his discretion may make periodic distributions to the Beneficiaries entitled thereto in accordance with the Liquidating Trust Agreement.

### 6.    Final Distribution

The Liquidating Trustee shall make a final distribution in accordance with Section 5 of the Liquidating Trust Agreement.

### 7.    Disputed Claims Reserves

The Liquidating Trustee shall establish reserves for Disputed Claims in accordance with the terms of the Liquidating Trust Agreement.

### 8.    Compliance with Tax Requirements

In connection with the Plan and the distributions made in accordance thereto, to the extent applicable) the Liquidating Trust shall comply with all tax withholding and reporting requirements

34

imposed by any governmental unit, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

**J.**     **Conditions to Confirmation**

The Confirmation Order shall be in form and substance satisfactory to the Plan Proponent.

**K.**     **Conditions to the Effective Date**

The Plan shall not become effective and the Effective Date shall not occur unless and until:

(a)     The Confirmation Order shall be a Final Order of the Bankruptcy Court;

(b)     The Confirmation Order shall not have been stayed and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such Confirmation Order;

(c)     All documents, instruments and agreements, in form and substance satisfactory to the Plan Proponent, provided for under this Plan or necessary to implement this Plan, including, without limitation, the Liquidating Trust Agreement, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

**L.**     **Modification of the Plan**

Subject to the restrictions on Plan modifications set forth in section 1127 of the Bankruptcy Code, and subject to the consent of the other, the Plan Proponent reserves the right to alter, amend or modify the Plan before its substantial consummation.

**M.**     **Termination of Plan for Failure to Become Effective**

If the Effective Date shall not have occurred on or prior to the date that is forty-five (45) days after the Confirmation Date, then this Plan shall terminate and be of no further force or effect unless the provisions of this Section are waived in writing by the Plan Proponent.

**N.**     **Waiver of Conditions**

The Plan Proponent may waive any or all of the conditions set forth in Section 9.2 of the Plan.

**O.**     **Notice of Effective Date**

On the Effective Date, or as soon thereafter as is reasonably practicable, the Liquidating Trustee shall file with the Bankruptcy Court a "Notice of Effective Date" in a form reasonably acceptable to the Liquidating Trustee in his sole discretion, which notice shall constitute appropriate

35

and adequate notice that this Plan has become effective, provided, however, that the Liquidating Trustee shall have no obligation to notify any Person other than counsel to the Plan Proponent of such fact. The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern time, on the Effective Date specified in such filing. A courtesy copy of the Notice of Effective Date may be sent by first class mail, postage prepaid (or at the Liquidating Trustee's option, by courier or facsimile) to those Persons who have filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

**P.    Effect of Confirmation**

Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 11 of this Plan. Except as otherwise provided in Section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtor and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan.

**Q.    Exculpation, Injunction, and Limitation of Liability**

**1.    Exculpation.**

*EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, NEITHER THE PLAN PROPONENT NOR THE LIQUIDATING TRUSTEE, NOR ANY OF EACH SUCH FOREGOING PARTY'S EMPLOYEES, REPRESENTATIVES, MEMBERS, ADVISORS, ATTORNEYS, FINANCIAL ADVISORS OR AGENTS OR ANY OF SUCH PARTIES' SUCCESSORS AND ASSIGNS (AS PERTAINING TO SUCH FOREGOING PARTY IN THEIR FOREGOING CAPACITIES), SHALL HAVE OR INCUR, AND ARE HEREBY RELEASED FROM, ANY CLAIM, OBLIGATION, CAUSE OF ACTION OR LIABILITY TO ONE ANOTHER OR TO ANY HOLDER OF A CLAIM OR AN INTEREST, OR ANY OTHER PARTY IN INTEREST, OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS, EMPLOYEES, REPRESENTATIVES, ADVISORS, ATTORNEYS, FINANCIAL ADVISORS, AGENTS, OR AFFILIATES, OR ANY OF THEIR SUCCESSORS OR ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE BANKRUPTCY CASE, THE NEGOTIATION AND PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, OR THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR THEIR GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR ACTUAL FRAUD, AND IN ALL RESPECTS SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES (IF ANY) UNDER THE PLAN.*

*NOTWITHSTANDING ANY OTHER PROVISION OF THE PLAN, NEITHER ANY HOLDER OF A CLAIM OR INTEREST, OR OTHER PARTY IN INTEREST, NOR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, SHAREHOLDERS, MEMBERS,*

*EMPLOYEES, REPRESENTATIVES, ADVISORS, ATTORNEYS, FINANCIAL ADVISORS, INVESTMENT BANKERS, AGENTS OR AFFILIATES, AND NO SUCCESSORS OR ASSIGNS OF THE FOREGOING, SHALL HAVE ANY RIGHT OF ACTION AGAINST THE PLAN PROPONENT OR THE LIQUIDATING TRUSTEE OR ANY OF SUCH PARTIES' EMPLOYEES, REPRESENTATIVES, ADVISORS, ATTORNEYS, FINANCIAL ADVISORS, INVESTMENT BANKERS OR AGENTS OR SUCH PARTIES SUCCESSORS AND ASSIGNS, FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE BANKRUPTCY CASE, THE NEGOTIATION AND PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR SUCH PERSONS' GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR ACTUAL FRAUD.*

### 2. Injunction.

*EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, RIGHTS, CAUSES OF ACTION, LIABILITIES OR ANY INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE RELATED TO THE DEBTOR OR THE B A N K R U P T C Y CASE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE, OTHER THAN AS EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, REGARDLESS OF THE FILING, LACK OF FILING, ALLOWANCE OR DISALLOWANCE OF SUCH A CLAIM OR INTEREST AND REGARDLESS OF WHETHER SUCH ENTITY HAS VOTED TO ACCEPT THE PLAN, AND ANY SUCCESSORS, ASSIGNS OR REPRESENTATIVES OF SUCH ENTITIES SHALL BE PRECLUDED AND PERMANENTLY ENJOINED ON AND AFTER THE EFFECTIVE DATE FROM (A) THE COMMENCEMENT OR CONTINUATION IN ANY MANNER OF ANY CLAIM, ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CLAIM, INTEREST OR ANY OTHER RIGHT OR CLAIM AGAINST THE DEBTOR, OR ANY ASSETS OF THE DEBTOR WHICH THEY POSSESSED OR MAY POSSESS PRIOR TO THE EFFECTIVE DATE, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER WITH RESPECT TO ANY CLAIM, INTEREST OR ANY OTHER RIGHT OR CLAIM AGAINST THE DEBTOR, OR ANY ASSETS OF THE DEBTOR WHICH SUCH ENTITIES POSSESSED OR MAY POSSESS PRIOR TO THE EFFECTIVE DATE, (C) THE CREATION, PERFECTION OR ENFORCEMENT OF ANY ENCUMBRANCE OF ANY KIND WITH RESPECT TO ANY CLAIM, INTEREST OR ANY OTHER RIGHT OR CLAIM AGAINST THE DEBTOR OR ANY ASSETS OF THE DEBTOR WHICH THEY POSSESSED OR MAY POSSESS PRIOR TO THE EFFECTIVE DATE, AND (D) THE ASSERTION OF ANY CLAIMS THAT ARE RELEASED HEREBY.*

### 3. Limitation of Liability.

*EXCEPT AS EXPRESSLY SET FORTH IN THE PLAN, FOLLOWING THE EFFECTIVE DATE, NEITHER THE PLAN PROPONENT NOR THE LIQUIDATING TRUSTEE, OR ANY OF SUCH PARTIES' EMPLOYEES, ADVISORS, MEMBERS, ATTORNEYS, PROFESSIONALS OR AGENTS SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION IN CONNECTION WITH,*

*RELATED TO, OR ARISING OUT OF, THE BANKRUPTCY CASE, THE NEGOTIATION AND PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED IN CONNECTION WITH THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT OR ACTUAL FRAUD.*

**R.      Retention of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date and the transfer of the Assets to the Liquidating Trust, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case after the Effective Date to the fullest extent legally permissible, including, but not limited to jurisdiction to, among other things:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of, or subordinate for any purposes pursuant to Section 510, any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, request for attorneys' fees and costs, and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

(b)     Hear and determine any and all causes of action and rights of the Debtor that arose before or after the Petition Date that are expressly preserved pursuant to, among other things, Section 1123(b)(3) of the Bankruptcy Code, are yet to be liquidated and are preserved for prosecution by the Liquidating Trustee, including any designee or successor, against any Person whatsoever, on account of any and all Litigation Claims defined herein (including, but not limited to, all avoidance powers granted to the Debtor under the Bankruptcy Code and all causes of action and remedies granted pursuant to Sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, and all non-avoidance actions owned by the Debtor's bankruptcy estate including, but not limited to, claims of tort, breach of contract and claims lying in law or in equity, whether based in common law, Florida state law, another state's law, Federal law or otherwise);

(c)     Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract to which the Debtor is a party or with respect to which the Debtor may be liable, including without limitation the determination of whether such contract is executory for the purposes of Section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)     Enter orders as necessary to facilitate the Liquidating Trust's post-Confirmation sale or other disposition of Trust Assets;

(e)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and the Liquidating Trust Agreement and in an equitable manner;

(f)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor's bankruptcy estate that may be pending in the Bankruptcy Case on the Effective Date;

(g)     Hear and determine matters concerning state, local or federal taxes in accordance with Sections 346, 505 or 1146 of the Bankruptcy Code;

(h)     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Liquidating Trust Agreement, the Plan and the Confirmation Order;

(i)     Resolve any disputes relating to objections to allowance of compensation submitted by the Liquidating Trustee or his professionals;

(j)     Hear and determine any matters concerning the enforcement of the provisions of Article 10 of the Plan and any other exculpations,  limitations of liability or injunctions contemplated by the Plan;

(k)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation,  interpretation  or enforcement of the Liquidating  Trust Agreement, the Plan or the Confirmation Order;

(l)     Permit the Plan Proponent, to the extent authorized pursuant to Section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

(m)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Liquidating Trust Agreement, the Plan or the Confirmation Order and the distributions thereunder;

(n)     Enforce any injunctions entered in connection with, or relating to, the Plan or the Confirmation Order;

(o)     Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Liquidating Trust Agreements or the Plan are enjoined or stayed;

(p)    Determine any other matters that may arise in connection with, or relating to, the Plan or any agreement or the Confirmation Order;

(q)    Enter any orders in aid of prior orders of the Bankruptcy Court; and

(r)    Enter a final decree closing the Bankruptcy Case.

**S.    No Admissions**

The Plan Proponent reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponent revokes or withdraws the Plan, or if Confirmation does not occur or if the Plan does not become effective in accordance with Article 9 of the Plan, then this Plan shall be null and void, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor; (b) constitute an admission of any fact or legal conclusion by the Debtor, Plan Proponent or any other Entity, including, but not limited, to liability on an Claim or the propriety of an Claims Classification; or (c) prejudice in any manner the rights of the Plan Proponent or its counsel in any further proceedings involving the Debtor or the Debtor's bankruptcy estate.

**T.    Preservation of Rights of Setoffs**

The Liquidating Trustee, may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtor, the Debtor's bankruptcy estate or the Liquidating Trustee may have against the holder of such Claims; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Debtor, the Debtor's bankruptcy estate or the Liquidating Trustee may have against such holder.

**U.    Severability/Pre-Confirmation Modification of Plan Provisions.**

If prior to Confirmation any term or provision of the Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Plan Proponent, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## V.    CONFIRMATION OF THE PLAN

### A.    Confirmation Hearing

The Bankruptcy Court has scheduled the hearing for confirmation of the Plan for _____, 2013 at [_____](prevailing Eastern time) (the "Confirmation Hearing") before the Honorable Raymond B. Ray, Judge of the United States Bankruptcy Court for the Southern District of Florida (Ft. Lauderdale Division), in the United States Bankruptcy Court for the Southern District of Florida, 299 E. Broward Blvd. Room 308, Ft. Lauderdale, FL 33301. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. The Bankruptcy Court has directed that objections, if any, to the confirmation of the Plan be served on or before _____. (prevailing Eastern time) in the manner described in the Notice accompanying this Disclosure Statement.

### B.    Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of Chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that at least one class of impaired claims accept a plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims or interests which is impaired under the plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Plan Proponent believes that the Plan satisfies all of the requirements for confirmation.

## VI.    FUNDING AND FEASIBILITY OF THE PLAN

### A.    Funding of the Plan

Payment of Allowed Administrative Claims, fees incurred by the Liquidating Trust pursuant to 28 U.S.C. § 1930 (the "Statutory Fees"), and Allowed Class 1, 2, 3, 4, 5, 6 and 7, shall be funded from the Trust Assets of the Liquidating Trust, as the same may be augmented from time to time from, among other things, the liquidation of Trust Assets and the prosecution and enforcement of the Litigation Claims by the Liquidating Trust. The Plan Proponent expects that the Trust Assets as of the Effective Date will be sufficient to pay Allowed Administrative Claims (including Professional Claims) and Statutory Fees.

### B.    Best Interests Test

Notwithstanding acceptance of the Plan by each Impaired Class, in order to confirm the Plan, the Bankruptcy Court must determine that the Plan is in the best interests of each holder of a Claim or Interest in any such Impaired Class who has not voted to accept the Plan. Accordingly, if an Impaired Class does not unanimously accept the Plan, the best interests test requires the

41

Bankruptcy Court to find that the Plan provides to each member of such Impaired Class a recovery on account of the Class member's Claim or Interest that has a value, as of the Effective Date, at least equal to the value of the distribution that each such Class member would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date.

To estimate what members of each Impaired Class of unsecured creditors and equity security holders would receive if the Debtor's bankruptcy estate were liquidated under chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtor's assets if the Chapter 11 Case was converted to a chapter 7 case under the Bankruptcy Code and the assets were liquidated by a trustee in bankruptcy (the "Liquidation Value" of such assets). The Liquidation Value would consist of the net proceeds from the disposition of the Debtor's Assets and would be augmented by any Cash held by the Debtor.

The Liquidation Value of the Debtor's Assets available to General Unsecured Claims would be reduced by the costs and expenses of the liquidation, as well as other administrative expenses of the chapter 7 case.  The Debtor's costs of liquidation under chapter 7 would include the compensation of a chapter 7 trustee or trustees (which would equate to roughly 3% of all monies disbursed by the chapter 7 trustee pursuant to section 326(a) of the Bankruptcy Code), as well as new counsel and other professionals that will have to be retained by the chapter 7 trustee(s) (with said counsel and professionals needing a reasonable amount of time to familiarize themselves with this complex case at an additional cost to the estate), disposition expenses, all unpaid expenses incurred by the Trustee during the chapter 11 case (such as compensation for attorneys and accountants) to the extent allowed in the chapter 7 case, and litigation costs and claims against the Debtor arising from its business operations during the pendency of the Chapter 11 Case and chapter 7 liquidation case.  These costs, expenses and claims would be paid in full out of the Debtor's liquidation proceeds before the balance would be made available to pay General Unsecured Claims.

Moreover, the Plan Proponent believes that the distributions under the Plan will provide Creditors of the Debtor at least the same recovery, if not more, on account of Allowed Claims as would distributions by a chapter 7 trustee.  If the case were converted to chapter 7, a new claims bar date would be set and the estate could be exposed to some additional claims that were not filed by the chapter 11 claims bar date.  However, a large amount of the additional claims would likely be claims of Banyon 1030-32 and Banyon Income Fund Ponzi victim creditors holding claims in the Banyon Bankruptcy Cases.  Consequently, the economic impact should be significantly diminished since distributions on these claims would result in a corresponding, or at least significant reduction of the Banyon Class 3 Allowed Claim.  On balance, the Plan Proponent believes that the Plan (which does not seek to unlawfully and unfairly bar the claims of any creditors against TD Bank, and as a result, the Estate will not incur the resulting substantial attorneys' fees and expenses resulting from litigation surrounding such an effort) provides the opportunity for all creditors (regardless of whether they have sought to satisfy their claims from collateral sources) to receive at least as much or more than they would receive if this case was converted to chapter 7.  In addition, distributions under the Plan to Creditors of the Debtor would be made more quickly than distributions by a chapter 7 trustee, and a chapter 7 trustee would charge a substantial fee, reducing the amount available for distribution on account of Allowed Claims.

A liquidation analysis will be separately filed at later date as Exhibit C to this Disclosure Statement.

42

## C.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Debtor be able to perform its obligations under the Plan. For purposes of determining whether the Plan meets this requirement, the Plan Proponent analyzed the Debtor's assets on hand and the Plan Proponent believes that the Debtor has adequate funding to be able to meet its obligations under the Plan.

## D.    Risk Factors Associated with the Plan

Holders of Claims against, and Interests in, the Debtor should read and consider carefully the information set forth below, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. This information, however, should not be regarded as the only risk involved in connection with the Plan and its implementation.

The Claims of holders of Classes 2, 3, 4, 5, 6 and 7 Claims are subject to the risk of dilution if the total amount of Claims is higher than the Plan Proponent's estimate. A number of Disputed Claims are material and the total amount of all Claims, including Disputed Claims, is materially in excess of the total amount of Allowed Claims assumed in calculating the estimated distributions as set forth herein. Accordingly, the amount of distribution that will ultimately be received by any particular holder of a Class 2, 3, 4, 5, 6 and 7 Claim may be adversely affected by the aggregate amount of all Allowed Claims. Consequently, distributions to holders of Class 2, 3, 4, 5, 6 and 7 Claims will be made on an incremental basis until all Disputed Claims have been resolved.

A substantial amount of time may elapse between the Effective Date and the receipt of distributions, including, but not limited to, a Final Distribution, under the Plan for certain holders of Claims, because it may take a substantial amount of time to obtain a recovery, if any from the pursuit of the Litigation Claims by the Liquidating Trust. To the extent that distributions under the Plan are derived, in whole or in part, from recoveries on the Litigation Claims prosecuted by the Liquidating Trustee (or in the case of certain claims held by the Liquidating Trust Monitor), there can be no assurance that any such Litigation Claims will produce recoveries that will provide sufficient funds for such distributions to be made by the Liquidating Trusts. The determination of whether distributions will be made to Classes subordinate to the allowed General Unsecured Claims (*i.e.*, Classes 4, 5, 6 and 7) will depend almost entirely on the outcome of the Litigation Claims.  Even if all Classes entitled to vote accept the Plan, the Plan might not be confirmed by the Bankruptcy Court.  Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization unless, as here, such liquidation is proposed in the plan, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code. Because the Plan contemplates the liquidation of the Debtor's Estate, the Plan Proponent believes that the foregoing concerns are not implicated and that the Plan satisfies all the requirements for confirmation of a plan of reorganization under the Bankruptcy Code. There can be no assurance, however, that the Bankruptcy Court will also conclude that the requirements for confirmation of the Plan have been satisfied.

Additionally, successful confirmation of the Plan is subject to satisfaction or waiver of the conditions to Plan effectiveness, which are discussed in detail above. **THUS, THERE BE NO ASSURANCE THAT ALL OF THE VARIOUS CONDITIONS TO EFFECTIVENESS OF THE PLAN WILL BE TIMELY SATISFIED OR WAIVED.**

## VII.    ALTERNATIVES TO THE PLAN

Although this Disclosure Statement is intended to provide information to assist a Claim or Interest holder in determining whether to vote for or against the Plan, a summary of the alternatives to confirmation of the Plan may be helpful.

If the Plan is not confirmed, the following alternatives are available: (a) confirmation of another chapter 11 plan; (b) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (c) dismissal of the Chapter 11 Case leaving creditors and interest holders to pursue available non-bankruptcy remedies. These alternatives to the Plan are very limited and not likely to benefit creditors. As a Chapter 11 trustee has been appointed, the Debtor is not in a position to propose its own plan. Furthermore, no other party in interest has expressed any interest in proposing a plan. Accordingly, the most likely result if the Plan is not confirmed is that the Chapter 11 Case will be converted to a case under chapter 7 of the Bankruptcy Code. The Plan Proponent believes that conversion of the Chapter 11 Case to a chapter 7 case would result in (i) significant delay in distributions to all creditors who would have received a distribution under the Plan and (ii) diminished recoveries for holders of General Unsecured Claims.  If the Chapter 11 Case is dismissed, creditors would be free to pursue non-bankruptcy remedies in their attempts to satisfy claims against the Debtor.  However, in that event, creditors would be faced with the costs and difficulties of attempting, each on its own, to collect claims from a non-operating entity.

## VIII.    CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

**A.    In General.**  A description of certain United States ("U.S.") federal income tax consequences of the Plan is provided below.  The description of tax consequences below is for informational purposes only and, due to lack of definitive judicial or administrative authority or interpretation, substantial uncertainties exist with respect to various U.S. federal income tax consequences of the Plan as discussed herein.  Only the potential material U.S. federal income tax consequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims or Interests who are entitled to vote to confirm or reject the Plan are described below.  No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement.  No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities have been obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not binding upon the IRS or such other authorities. No representations are being made regarding the particular tax consequences of the confirmation and consummation of the Plan to the Debtor or to any particular holder of Claims or Interests.  No assurance can be given that the IRS or other tax authorities would not assert, or that a court would not sustain, a different position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "IRC"), Treasury Regulations

44

promulgated and proposed thereunder, judicial decisions, and administrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to the Debtor or to the holders of Claims or Interests. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT ADDRESS THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED, NOR ARE THE INCOME TAX CONSEQUENCES TO VICTIMS OF A PONZI SCHEME DISCUSSED HEREIN.

NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF CLAIMS OR INTERESTS. HOLDERS OF CLAIMS OR INTERESTS ARE STRONGLY URGED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.

### B. U.S. Federal Income Tax Consequences to the Debtor

#### i. Cancellation of Indebtedness Income

Generally, the discharge of a debt obligation owed by a debtor for an amount less than the "adjusted issue price" (in most cases, the amount the debtor received on incurring the obligation, with certain adjustments) gives rise to cancellation of indebtedness ("COD") income to the debtor under IRC § 61(a)(12), subject to certain rules and exceptions. However, when the discharge of indebtedness occurs pursuant to a plan confirmed by the Bankruptcy Court in a case under Title 11 of the Bankruptcy Code (e.g., a chapter 11 case), there is a special rule under the IRC § 108 which specifically excludes from the debtor's income the amount of such discharged indebtedness (the so-called "bankruptcy exception"). Instead, certain of the debtor's tax attributes otherwise available generally must be reduced by the amount of the COD income that is excluded from the debtor's income.

It is not certain whether the Debtor will have COD income under the Plan although any such COD income should be excluded from the Debtor's income under the "bankruptcy exception" referenced above assuming that the Plan is confirmed with respect to the Debtor.

        ii.     Transfer of Liquidating Trust Assets to the Liquidating Trust

The transfer of the Liquidating Trust Assets to the Liquidating Trust by the Debtor, as of the Effective Date, may result in the recognition of gain or income by the Debtor, depending in part on the value of such Assets on the Effective Date and the Debtor's tax basis in those Assets as of the Effective Date.   Provided that the Debtor is treated as an S corporation for U.S. federal income tax purposes, any such gain or income will not be taxable to the Debtor but rather will pass through and be taxable to its shareholders.

### C.     U.S. Federal Income Tax Consequences to the Holders of Allowed Claims

The U.S. federal income tax consequences of the Plan to the holders of Allowed Claims will depend on a number of factors, including, without limitation, the following: (i) whether the Claim constitutes a "security" for U.S. federal income tax purposes; (ii) the nature and origin of the Claim; (iii) the manner in which the holder acquired the Claim; (iv) the length of time the Claim has been held; (v) whether the Claim was acquired at a discount; (vi) whether the holder has taken a bad debt deduction or loss with respect to the Claim (or any portion thereof) in the current year or in any prior year; (vii) whether the holder has previously included in its taxable income accrued but unpaid interest with respect to the Claim; (viii) the holder's method of tax accounting; (ix) whether the Claim is an installment obligation for U.S. federal income tax purposes; and (x) the timing of any Distribution under the Plan with respect to the Claim. Holders of Allowed Claims will generally recognize gain or loss with respect to their Claims in an amount equal to the difference between the amount realized (generally, the amount of Cash and the fair market value of any other property received) with respect to their Claims and their tax basis in the Claims. In general, the character of any gain or loss recognized by such holder as capital or ordinary will depend on whether the Claim constitutes a capital asset in the hands of the holder.   To the extent that a debt instrument is acquired after its original issuance for less than the issue price of such instrument, it will have market discount.   A holder of an Allowed Claim with market discount must treat any gain recognized on the satisfaction of such Claim as ordinary income to the extent that it does not exceed the market discount that has already been accrued with respect to such Claim.   In addition, holders of Allowed Claims will recognize ordinary income to the extent they receive cash or other property that is allocable to accrued but unpaid interest that the holder has not yet included in its income.   There may also be state, local or foreign tax considerations applicable to particular holders of Allowed Claims, none of which are discussed herein.   Holders of Allowed Claims should consult with their own tax advisors for information that may be relevant to their particular situation and circumstances and the particular tax consequences to them of the transactions contemplated by the Plan.

**D.**     **U.S. Federal Income Tax Treatment of the Liquidating Trust and its Beneficiaries**

i.     U.S. Federal Income Tax Characterization of the Liquidating Trust

The Liquidating Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust within the meaning of § 301.7701-4(d) of the Treasury Regulations. It is being created pursuant to the Plan for the primary purpose of liquidating the assets transferred to it with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with the liquidating purpose of the Liquidating Trust. As such, the Liquidating Trust should be treated as a "grantor" trust pursuant to IRC §§ 671 through 678, except as discussed in subsections iv or v, below. Assuming that this tax treatment is correct, and subject to the exception discussed in subsections iv and v, below, the Liquidating Trust will not be treated as a separate entity for U.S. federal income tax purposes; instead, the holders of "beneficial interests" in the Liquidating Trust (i.e., the Beneficiaries of the Liquidating Trust) will be treated as the "grantors" of the Liquidating Trust's Assets and will be treated as owning their respective pro rata shares of such Assets, subject to any liabilities of the Debtor assumed by the Liquidating Trust and any liabilities of the Liquidating Trust itself.  The Liquidating Trustee may, but is not required to, request a ruling from the IRS regarding the "grantor trust" status of the Liquidating Trust for U.S. federal income tax purposes. Accordingly, while it is anticipated that the Liquidating Trust qualifies as a liquidating trust pursuant to § 301.7701-4(d) of the Treasury Regulations and Revenue Procedure 94-45, 1994-2 C.B. 684, in the absence of such ruling, there can be no assurance that the IRS will not dispute such tax treatment of the Liquidating Trust.  Beneficiaries of the Liquidating Trust should consult with their own tax advisors regarding the tax treatment of the Liquidating Trust for U.S. federal income tax purposes.

ii.     Establishment and Taxation of the Liquidating Trust

Except as discussed in subsections iv or v, below, the transfer of the Liquidating Trust Assets to the Liquidating Trust will be treated for U.S. federal income tax purposes (including, without, limitation, IRC §§ 61(a)(12), 483, 1001, 1012 and 1274) as a deemed transfer of the Liquidating Trust Assets from the Debtor to the Beneficiaries of the Liquidating Trust, subject to any liabilities of the Debtor or the Liquidating Trust payable from the proceeds of such Assets, followed by such Beneficiaries' deemed transfer of such Assets (subject to such liabilities) to the Liquidating Trust in exchange for their respective "beneficial interests" in the Liquidating Trust, all as of the Effective Date. Thus, on the Effective Date, each such Beneficiary should be treated as transferring its Claims to the Debtor in exchange for the Beneficiary's pro rata share of the applicable Liquidating Trust Assets (subject to any liabilities of the Liquidating Trust) followed by the Beneficiary's transfer of such Assets (subject to applicable liabilities) to the Liquidating Trust.  The "applicable Liquidating Trust Assets" are the Liquidating Trust Assets (or the proceeds thereof) from which a Beneficiary of the Liquidating Trust may be entitled to receive a Distribution under the Plan.  Each such Beneficiary should generally recognize gain or loss equal to the difference between the fair market value of the applicable Liquidating Trust Assets as of the Effective Date (subject to any applicable liabilities) and the Beneficiary's adjusted tax basis in its Allowed Claim.  The

47

tax basis of the applicable Liquidating Trust Assets deemed received by the Beneficiary in the exchange will equal the amount realized by that Beneficiary and the holding period for such Assets will begin on the day following the exchange. The value of the Liquidating Trust Assets transferred to the Liquidating Trust as of the Effective Date shall be the fair market value of such Assets as of that Effective Date of transfer. The Assets transferred into the Liquidating Trust shall be valued consistently by all parties including, but not limited to, the Debtor, the Debtor's Estate, the Liquidating Trustee and all Beneficiaries, and these valuations will be used for all U.S. federal income tax purposes. Each Beneficiary of the Liquidating Trust will be required to report on its U.S. federal income tax return its allocable share of any income, loss, deduction or credit recognized or incurred by the Liquidating Trust (including any interest or other investment income earned with respect to the Liquidating Trust Assets) in the manner described in the Liquidating Trust. The obligation of a Beneficiary to report that Beneficiary's allocable share of any such income is not dependent on the Liquidating Trust distributing any cash or other proceeds to that Beneficiary. Beneficiaries of the Liquidating Trust should consult with their own tax advisors for information that may be relevant to their particular circumstances regarding the U.S. federal income tax consequences to them resulting from the establishment of the Liquidating Trust.

### iii.    Tax Reporting

The Liquidating Trustee shall file returns (including U.S. federal income tax returns) for the Liquidating Trust as a grantor trust pursuant to § 1.671-4(a) and (b) of the Treasury Regulations. As soon as practicable after the close of each calendar year, but in no event later than March 15th, the Liquidating Trustee shall mail to each Beneficiary of record during such year, a statement showing information sufficient for each Beneficiary to determine its share of income, gain, loss, deductions and credits for U.S. federal income tax purposes in accordance with §§ 1.671-4(a) and 1.671-4(b)(3) of the Treasury Regulations. Notwithstanding the foregoing, in the event that (i) any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to § 1.468B-1 of the Treasury Regulations, or (ii) the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" pursuant to § 1.468B-9(c)(2)(ii) of the Treasury Regulations, the federal income tax consequences (including the tax reporting) shall be determined in accordance with the rules set forth in IRC § 468B and the Treasury Regulations thereunder.

### iv.    Holders of Disputed Claims and Disputed Ownership Fund Election

Although not free from doubt, holders of Disputed Claims should not recognize any gain or loss on the date that the assets are transferred to the Disputed Claims Reserve, but should only be required to report their gain or loss on the cash or other property that is distributed out to the holder from the Claims Reserve free from any further restriction. The Liquidating Trustee may elect under § 1.468B-9(c)(2)(ii) of the Treasury Regulations to treat the Liquidating Trust Assets allocable to the Disputed Claims Reserve as a "disputed ownership fund" for U.S. federal income tax purposes. Such election, if timely made, will result in the creation of a separate taxable entity and the U.S. federal income taxation would be governed

by § 1.468B-9(c) of the Treasury Regulations. If treated as a "disputed ownership fund," the income and gain recognized with respect to the Liquidating Trust Assets allocable to the Disputed Claims Reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to such Liquidating Trust Assets allocable to the Disputed Claims Reserve, and all Distributions from such Disputed Claims Reserve (which Distributions will be net of the related expenses by such Reserve) will be treated as received by the holders of Disputed Claims in respect of their Claims. Holders of Disputed Claims should consult with their own tax advisors regarding the U.S. federal income tax consequences to them arising from the Disputed Claims Reserve and any election to treat the Disputed Claims Reserve as a "disputed ownership fund" for U.S. federal income tax purposes.

v.    Qualified Settlement Fund

In the event any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to § 1.468B-1 of the Treasury Regulations, the U.S. federal income tax consequences shall be determined in accordance with the rules set forth in IRC § 468B and the Treasury Regulations thereunder. The creation of a qualified settlement fund ("QSF") is generally taxed as a C corporation and income tax returns will be required to be filed by the "administrator" of the QSF. In addition, if there is only one transferor of assets to the QSF, there is a special grantor trust tax election that the sole transferor of the property may make with the initial tax return to treat the QSF as a grantor trust (whether or not the QSF would otherwise be classified, in the absence of this election, as a grantor trust for U.S. income tax purposes. Holders of Claims should consult with their own tax advisors for information that may be relevant to their particular circumstances regarding the U.S. federal income tax consequences to them of having a qualified settlement fund established.

**E.    Information Reporting and Backup Withholding**

Certain payments, including payments in respect of accrued interest or market discount, are generally subject to information reporting by the payor to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the IRC's backup withholding rules, a U.S. holder may be subject to backup withholding at the applicable rate with respect to certain Distributions or payments pursuant to the Plan, unless the holder: (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact, or (ii) provides a correct U.S. taxpayer identification number and certifies under penalty of perjury that the holder is a U.S. person, the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividend and interest income.

Backup withholding is not an additional tax. Amounts withheld under the backup withholding rules may be credited against a holder's U.S. federal income tax liability, and a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by filing an appropriate claim for refund with the IRS.

### F.    Importance of Obtaining Professional Tax Assistance

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.    THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE.    THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING UPON A HOLDER'S PARTICULAR CIRCUMSTANCES.    ACCORDINGLY, HOLDERS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS ABOUT THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN, INCLUDING WITH RESPECT TO TAX REPORTING AND RECORD KEEPING REQUIREMENTS.

### G.    Circular 230 Disclaimer

TO ENSURE COMPLIANCE WITH U.S. TREASURY CIRCULAR 230, EACH HOLDER OF A CLAIM OR INTEREST IS HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL INCOME TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY ANY HOLDER OF A CLAIM OR INTEREST FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE IRC; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN; AND (C) EACH HOLDER OF A CLAIM OR INTEREST SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## IX.    CONCLUSION

For all of the reasons set forth in this Disclosure Statement, the Plan Proponent believes that confirmation of the Plan is preferable to all other alternatives. Consequently, the Plan Proponent recommends all holders of Class 2, 3, 4, 5, 6 and 7 Claims, vote to ACCEPT the Plan, and to complete and return their Ballots so that they will be RECEIVED by the Clerk of the Bankruptcy Court on or before _____ (prevailing Eastern time) on _____, 2013.

[SIGNATURES TO FOLLOW]

50

Dated: July 9, 2013

Respectfully Submitted

By: _____

Robert Kimmel
for Creditor, Circle K Family, LLC
Its: President

**KOZYAK TROPIN & THROCKMORTON, P.A.**
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508

By: /s/ Charles W. Throckmorton
Harley S. Tropin
Florida Bar No. 241253
hst@kttlaw.com
Charles W. Throckmorton
Florida Bar No. 286192
cwt@kttlaw.com
David L. Rosendorf
Florida Bar No. 996823
dlr@kttlaw.com
David A. Samole
Florida Bar No. 582761
das@kttlaw.com

**Counsel for Circle K Family, LLC**

**CONRAD & SCHERER, LLP**
633 South Federal Highway
Fort Lauderdale, FL 33301
Tel: (954) 847-3324
Fax: (954) 463-9244

By: /s/ James D. Silver
William R. Scherer
Florida Bar No. 169454
wscherer@conradscherer.com
James D. Silver
Florida Bar No. 373702
jsilver@conradscherer.com
Mark S. Roher
Florida Bar No. 178098
mroher@conradsherer.com

**Counsel for Circle K Family, LLC**

**KATZ BARRON SQUITERO FAUST**
2699 South Bayshore Drive, 7th Floor
Miami, Florida 33133
Tel: (305) 856-2444
Fax: (305) 285-9227
H. Eugene Lindsey, III
Florida Bar No. 130338
hel@katzbarron.com

**Counsel for Circle K Family, LLC**

## EXHIBIT A

*See* Circle K Family, LLC's Plan of Liquidation filed on July 8, 2013 [ECF 4919].

**EXHIBIT B**

| Adversary Name and Case No. |
| --- |
| 10-03552-RBR Stettin v. Caro Group, L.L.C. |
| 10-03553-RBR Stettin v. Exito Investment Group, L.L.C. |
| 10-03554-RBR Stettin v. Marmarser Investment, L.L,C. |
| 10-03556-RBR Stettin v. New Miami Group, L.L,C, |
| 10-03557-RBR Stettin v. Pirulin Group, L.L.C. |
| 10-03558-RBR Stettin v. OPMonies 2, L.L.C. et al |
| 10-03602-RBR Stettin v. Network Resources Investment Group, L.L.C |
| 10-03775-RBR Stettin v. Alu |
| 10-03823-RBR Thirteen Aqua Holdings Ltd v. Stettin |
| 11-02770-RBR Stettin v. FDS Investments USA, L.L.C. |
| 11-02771-RBR Stettin v. BWS Investments USA, L.L.C. |
| 11-02772-RBR Stettin v. GGTW Investments USA, LLC |
| 11-02773-RBR Stettin v. Viceroy Global Investments, Inc. |
| 11-02779-RBR Stettin v. Casa Casuarina, LLC et al |
| 12-01836-RBR Stettin v. Qtask |
| 11-02604-RBR Stettin v. Maple Leaf Drilling Partners, et, al. |
| 11-02734-RBR Stettin v. Boden |
| 11-02893-RBR Stettin v. Lifshitz |
| 11-02895-RBR Stettin v. Setvest, LLC |
| 11-02897-RBR Stettin v. Weiss |
| 11-02898-RBR Stettin v. Morgan |
| 11-02899-RBR Stettin v. Utica Advisors, LLC |
| 11-02902-RBR Stettin v. Wolinetz |
| 11-02903-RBR Stettin v. Mussry, et, al |
| 11-02906-RBR Stettin v. Pinewski |
| 11-02907-RBR Stettin v. Schreiber |
| 11-02909-RBR Stettin v. Schraga |
| 11-02910-RBR Stettin v. Sussco, Inc. |
| 11-02911-RBR Stettin v. Sturm, et, al. |
| 11-02912-RBR Stettin v. Szafranski, et, al. |
| 11-02914-RBR Stettin v. Goldstein |
| 11-02915-RBR Stettin v. Adelsberg |
| 11-02916-RBR Stettin v. Eisenberg Family Foundation |
| 11-02917-RBR Stettin v. Lifshitz Irrevocable Trust |
| 11-02918-RBR Stettin v. DC Capital Connections |
| 11-02920-RBR Stettin v. Diamond Street Equities |
| 11-02921-RBR Stettin v. Ber Group, LLC |

| |
|---|
| 11-02922-RBR Stettin v. Kavana, et, al. |
| 11-02926-RBR Stettin v. El Equities, LLC |
| 11-02927-RBR Stettin v. Krivoposk |
| 11-02928-RBR Stettin v. HN Associates |
| 11-02929-RBR Stettin v. Ballamor Capital Management, Inc, et, al. |
| 11-03014-RBR Stettin v. Preve, et, al. |
| 11-03018-RBR Stettin v. Leon |
| 11-03040-RBR Stettin v. Daniel Courtney, P.A. |
| 11-03034-RBR Stettin v. Banyon Capital, LLC |
| 11-03040-RBR Stettin v. Daniel Courtney, P.A. |
| 11-02908-RBR Stettin v. Paul, et, al. |
| 11-3013-RBR Stettin v. Intracoastal |
| 11-03021-RBR Stettin v. Harris, et, al. |

## EXHIBIT C

## LIQUIDATION ANALYSIS

***(To Be Filed Separately at a Later Date)***