**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                                          CASE NO. 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,          CHAPTER 11

    Debtor.
_____/

**JOINT MOTION TO APPROVE SETTLEMENT; APPOINT MICHAEL I. GOLDBERG
AS RESTITUTION RECEIVER; APPROVE 18 U.S.C. § 3664(j) PROTOCOLS;
APPROVE DISTRIBUTION PROTOCOLS; AND
REQUEST TO SET JOINT HEARING[1]**

    Michael I. Goldberg (the "Trustee" or "Goldberg"), in his capacity as Liquidating Trustee

for the RRA Liquidating Trust ("RRA Trust") and the United States of America (the

"Government," with Goldberg or the Trustee, the "Parties"), respectfully move for the specific

relief set forth below as the Parties have reached an agreement globally resolving **all** issues

between the Trustee and the Government relating to forfeiture and restitution matters in

connection with the Scott W. Rothstein ("Rothstein") criminal case.  The settlement between the

Parties is memorialized in the agreement attached hereto as Exhibit A (the "Agreement" or

"Settlement Agreement").[2]

    The Settlement Agreement, upon approval by the Courts, allows the Trustee and the

Government to avoid costly and protracted litigation with respect to forfeiture issues following

the issuance of the Eleventh Circuit Court of Appeals decision in *United States v. Rothstein,*

---

[1] The Parties are simultaneously filing this Motion before both the district court presiding over *United States v. Rothstein,*09-60331-CR-COHN (S.D. Fla. 2009) (the "District Court") and the bankruptcy court presiding over *In re Rothstein Rosenfeldt Adler P.A.,* 09-347981-RBR (Bankr. S.D. Fla. 2009) (the "Bankruptcy Court;" the District Court and Bankruptcy Court are referred to collectively as the Courts).

[2] The RRA Trust is the successor in interest to Rothstein Rosenfeldt Adler, P.A.'s ("RRA") bankruptcy estate and all assets of RRA's bankruptcy estate, including its forfeiture claims, have been transferred to the RRA Trust pursuant to the RRA Plan (as defined herein below).

1

*Rosenfeldt, Adler, P.A. (In re Rothstein, Rosenfeldt, Adler, P.A.),* 717 F.3d 1205 (11th Cir. 2013), and provides an equitable mechanism that will likely allow for all non-subordinated victims to be paid in full and for the RRA bankruptcy estate to receive a meaningful distribution from the assets seized by the Government in connection with Rothstein's criminal prosecution. The Settlement will facilitate a significant distribution to Qualifying Victims (as defined in the Settlement Agreement). The distribution to Qualifying Victims is expected, but not guaranteed to be, 100% of their ultimately allowed Restitution Claims. The RRA Trust is expected to receive in excess of $23 million of economic benefit comprised of the cash and assets that will be turned over to the RRA Estate pursuant to the Settlement Agreement and the collateral source effect of the distribution of approximately $28 million to the Qualifying Victims under the Collateral Source Recovery provisions contained in the confirmed RRA Plan (as defined herein below).

## BACKGROUND AND PROCEDURAL HISTORY

As the Courts are well aware, Scott W. Rothstein ("Rothstein"), the 50% shareholder of RRA, began perpetrating a Ponzi scheme through the sale of fictitious structured settlements. Rothstein used RRA's bank accounts in his Ponzi scheme. Through this process he commingled the law firm's legitimate receipts for legal work and the proceeds of his criminal activity.  In late October of 2009, Rothstein's scheme collapsed.

The procedural history of the litigation that was triggered by Rothstein's crimes is set forth in detail in the Settlement Agreement.

## THE SETTLEMENT

The Trustee and the Government believe that the terms of the Settlement are fair, equitable and in the best interests of the RRA Trust and the Qualifying Victims.

5825773-1

The following is a summary of the key terms of the Settlement Agreement:[3]

Forfeiture of Restitution Assets: The Trustee agrees to support the entry of a final order of forfeiture (the "Agreed Final Order of Forfeiture"), which shall finally forfeit to the Government the Restitution Assets. The Agreed Final Order of Forfeiture shall be in a form and substance acceptable to both the Trustee and the Government and consistent with the Agreement.

Release of Remaining Assets: All Remaining Assets shall be released to the Trustee for liquidation and/or distribution to the creditors of RRA pursuant to the RRA Plan under the supervision of the Bankruptcy Court.

Appointment of Michael I. Goldberg, Esq., as Restitution Receiver: The District Court Approval Order shall provide that Michael I. Goldberg, Esq., will be appointed as the "Restitution Receiver." The District Court Approval Order will authorize the Restitution Receiver to take any action necessary to distribute the proceeds of any Restitution Assets to Qualifying Victims in accordance with the Agreement and the Final Amended Restitution Order (as defined in the Agreement).

Maximum Proposed Distribution: Under no circumstances shall the distribution to any Qualifying Victim exceed the amount of the Restitution Claim after application of Title 18, United States Code, Section 3664(j).

Distribution to Holders of Allowed Restitution Claims: As soon as practicable after entry of the Final Amended Restitution Order by the District Court and the entry of the Agreed Final Order of Forfeiture, the Restitution Receiver shall disburse funds in accordance with the Final Amended Restitution Order, unless the District Court orders otherwise upon motion by the Restitution Receiver.

---

[3] To the extent that there is any conflict between the Settlement Agreement and this Motion, the terms of the Settlement Agreement control.

5825773-1

Kim Rothstein Criminal Case:  The Government agrees that all assets forfeited or subject to forfeiture in connection with the Kim Rothstein Criminal Case shall be treated as Remaining Assets under the Agreement; provided, however, the Trustee shall pay from the proceeds of the Remaining Assets the amount of $250,000 to Sean Dunn pursuant to Title 19 U.S.C.§ 1619.

Marin Criminal Case: The Government agrees that all assets forfeited or subject to forfeiture in connection with the Marin Criminal Case shall be treated as Remaining Assets under the Agreement.

Mass Mutual Case: The Trustee and the Government agree to have the Mass Mutual Funds treated as Remaining Assets under the Agreement.

Alu Appeal: The Alu Appeal shall be dismissed and the funds subject of the Alu Appeal shall be treated as Remaining Assets under the Agreement.

Future Criminal Prosecutions: This agreement does not cover any assets forfeited or subject to forfeiture in connection with any future criminal prosecutions involving or relating to the crimes committed by Scott W. Rothstein and others. The Parties reserve all of their rights with respect to any future criminal prosecutions.

## AUTHORITY TO SUPPORT APPROVAL OF THE SETTLEMENT

The Parties seek approval of the Settlement pursuant to the District Court's inherent power to approve settlements relating to the forfeiture and restitution process and pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Rule 9019"), which is applicable to the Bankruptcy Court's approval of the Settlement. The Parties submit that the Rule 9019 criteria are instructive and helpful to the District Court's consideration and approval of the Settlement.

Rule 9019 provides that, after notice and a hearing, a bankruptcy court may approve a proposed settlement of a claim. The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D.

4

Fla. 2007) *aff'd.* 567 F.3d 1307 (11th Cir. 2010)(citing *In re Air Safety Intern., L. C.*, 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

In passing on proposed settlements, the Bankruptcy Court must determine whether a proposed settlement is fair and equitable. *In re Chira*, 367 B.R. at 896. The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) (citing *In re Bicoastal Corp.*,164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993)); *see also In re Arrow Air, Inc.*, 85 B.R. at 886.

The Eleventh Circuit, in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), provided additional guidance regarding whether a settlement should be approved and established a four-part test:

      a.     The probability of success in litigation;

      b.     The difficulties, if any, to be encountered in the matter of collection;

      c.     The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

      d.     The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

The Parties each believe that they will be successful in any future litigation. However, the uncertainty of litigation coupled with the associated cost and delay of the Trustee and the Government litigating, is not in the best interests of the stakeholders in each respective case. Moreover, if litigation were to recommence, it is likely that one or both of the Parties would, again, seek appellate review of any decision made at trial, further delaying distributions to Qualifying Victims and creditors. The issues raised in this litigation are complicated and may require expert testimony and analysis regarding the financial transactions of the RRA law firm.

5825773-1

There is no difficulty in collecting the already monetized assets. However, certain assets have yet to be monetized and are incurring monthly carrying costs (i.e., real estate taxes), thereby decreasing the net recovery each month the dispute persists.

The litigation is undoubtedly complex. The first trial lasted three days and involved several witnesses, including two experts who traced millions of dollars through numerous bank accounts. Further litigation between the Parties would require the resolution of novel legal issues involving the intersection between bankruptcy law, constructive trust law, and federal forfeiture law.

The creditors and victims are singularly interested in obtaining their recovery as soon as possible. This Settlement allows for the prompt exercise and faithful discharge of the respective duties of the Parties who have worked tirelessly to ensure that the victims and creditors are compensated for their losses.

Accordingly, there is little doubt that the Settlement overwhelmingly meets the requirements under *Justice Oaks'* requirements and should therefore be approved.

## APPOINTMENT OF MICHAEL I. GOLDBERG AS RESTITUTION RECEIVER

In order to harmonize the distributions to be made to Qualifying Victims in the Rothstein Criminal Case and to creditors in the RRA Case, the Settlement provides for the appointment of Michael I. Goldberg as the Restitution Receiver.

The Court's authority to appoint a receiver is found in the criminal forfeiture provisions. Specifically, 18 U.S.C. § 982, which incorporates the provision of 21 U.S.C. § 853(g), provides, in relevant part, that the Court, following entry of an order of forfeiture and upon application of the United States, may take any action to protect the interests of the United States in the property ordered forfeited.

5825773-1

This mechanism has been employed by courts in this district before. In *United States v. Brandau*, Judge Hurley authorized the appointment of a receiver to monetize assets and distribute the proceeds to victims of the Financial Federated Ponzi scheme. *United States v. Brandau,* 99-8125-CR-HURLEY [ECF No. 759, *Order Approving Memorandum Agreement and Appoint Receiver* (S.D. Fla. Aug. 11, 2000)]. Similar to Goldberg, the *Brandau* Receiver also served as the bankruptcy trustee in the related chapter 11 case, which enabled him to better coordinate distributions between the two estates.

The Settlement Agreement contemplates that slightly more than $28,000,000 of assets will be finally forfeited and disbursed/restored to Qualifying Victims. In order to ensure that the distribution of these funds to Qualifying Victims and RRA creditors is maximized, the Settlement Agreement contemplates Goldberg being appointed as the Restitution Receiver. The benefit of Goldberg filling that role is that he and his professionals are already aware of and familiar with the collateral source recovery provisions in the RRA Plan. Moreover, as a result of the collateral source reporting that was required by the RRA Plan, Goldberg and his professionals are in the best position to apply, in consultation with the Government and under the District Court's supervision, the provisions of 18 U.S.C. § 3664(j). Indeed, having a single person responsible for harmonizing distributions from both the RRA Trust and the Rothstein Criminal Case is the most efficient and effective method to ensure that no person receives an amount exceeding their losses.

A. **Terms of Appointment**

Pursuant to the Settlement Agreement, the United States and the Trustee seek to have Goldberg appointed as Restitution Receiver:

**Scope**: the Restitution Receiver shall have standing to raise any position that is available to the Government or the RRA Trust.  The Restitution Receiver will be authorized by the

7

District Court to take any action necessary to protect or monetize any Restitution Assets (as defined in the Settlement Agreement) and to make distributions to Qualifying Victims in accordance with the Settlement Agreement and applicable law. Any issue relating to the scope of this receivership shall be determined in the first instance by the District Court.

**Fees and Expenses**: The Restitution Receiver and his counsel will be compensated exclusively from the RRA Trust on the same terms as they provide their services to the RRA Trust. Their fees and expenses will be treated as Costs and Expenses of the Liquidating Trust pursuant to sections 6.2.9 and 6.2.11 of the RRA Plan as modified by the Confirmation Order. Accordingly, all issues relating to the payment of the Restitution Receiver and his professionals' fees and expenses shall be heard and determined before the Bankruptcy Court.

B. **No Impact on Goldberg's role as Trustee**

The Government and the Trustee request that the Bankruptcy Court determine that Goldberg's appointment as Restitution Receiver will have no impact on Goldberg's ability to continue as the Trustee. Additionally, the Trustee also requests that the Bankruptcy Court determine that the Trustee's professionals (Berger Singerman LLP, Akerman LLP, Berkowitz Pollack Brandt Advisors and Accountants, and Kapila Mukamal LLP) (the "Trustee's Professionals") representation of the Restitution Receiver have no impact on their ability to continue representing the Trustee, even though they will be providing services to Goldberg in his capacity as Restitution Receiver.

## 18 U.S.C.§3664(j) PROTOCOLS

In order to ensure that Qualifying Victims are treated equally, the Parties request that the District Court approve certain protocols regarding the application of 18 U.S.C. § 3664(j)("Section 3664(j)"). Section 3664(j) provides:

5825773-1

**(1)** If a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.
**(2)** Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in—
**(A)** any Federal civil proceeding; and
**(B)** any State civil proceeding, to the extent provided by the law of the State.

Several of the Qualifying Victims have already recovered compensation in excess of their loss. It would be patently inequitable for these persons to share in Restitution Assets thereby diluting the recovery of other Qualifying Victims who have not yet been wholly compensated. The purpose of Section 3664(j)(2) "is to prevent double recovery by a victim." *United States v. Stanley*, 309 F.3d 611, 613 (9th Cir. 2002). If the victim later recovers civil damages for the same loss, the court subtracts that sum from the victim's loss to determine the defendant's remaining restitution. *Id.*; *see also United States v. Nucci*, 364 F.3d 419, 423 (2d Cir. 2004) (holding that victim may not receive double recovery in a criminal context); *United States v. Dawson*, 250 F.3d 1048, 1050 (7th Cir. 2001) (concluding that, in the criminal context, a victim should not receive more restitution than necessary to make him or her whole). Furthermore, the Settlement Agreement requires that any credit pursuant to 18 U.S.C. § 3664(j) be applied on a gross basis without deduction for attorneys' fees, costs or prejudgment interest. *See United States v. Sims,* 2003 U.S. Dist. LEXIS 9835 (E.D. Pa. May 30, 2003) (holding that the amount a plaintiff recovers on a judgment may be used to reduce restitution amounts pursuant to 18 U.S.C. § 3664(j)); *United States v. DiBruno*, 438 Fed. Appx. 198 (4th Cir. N.C. 2011)(noting that "any restitution amount paid to a victim under a restitution order must be reduced by the victim's recovery for the same loss in civil proceedings"); *Walsh v. United States*, 2014 U.S. Dist. LEXIS

17761 (D. Md. Feb. 12, 2014) (noting that the purpose of 18 U.S.C. § 3664(j) is to ensure that victims do not, through restitution, receive an amount exceeding their losses).

In order to facilitate the calculation of the reductions to the distributions due to Qualifying Victims as a result of the application of the 18 U.S.C. § 3664(j), the Trustee and the Government propose that the District Court approve the following protocols:

1. Within fourteen (14) days of the entry of an Order by the District Court approving this Motion, the Restitution Receiver and the Government shall jointly file the Distribution Schedule (as defined in the Settlement Agreement). The Distribution Schedule filed with the District Court will identify Qualifying Victims by VNS number only. At the District Court's request the Parties will file a Distribution Schedule, under seal, that lists the Qualifying Victims by name.

2. The Distribution Schedule will indicate for each Restitution Claim:

   a. The original allowed amount of the Restitution Claim;

   b. Any Collateral Source Recoveries that are applied to reduce the distribution due on any Restitution Claim; and

   c. Which Restitution Claims, if any, are to be treated as Subordinated Restitution Claims (as defined in the Settlement Agreement).

3. Any Qualifying Victim shall have twenty-one (21) days from the date of notice of the Distribution Schedule to file an objection with the District Court to the proposed treatment of their Restitution Claim.  **<u>Any objection must be signed under penalty of perjury by the holder of the Restitution Claim</u>**.

4. Upon resolution of the objections, the Court, at the request of the Parties, will enter a Final Amended Restitution Order.

10

5825773-1

The Parties believe that these Protocols provide for the most equitable and efficient and least intrusive way to ensure that no Qualifying Victim reaps a windfall at the expense of the other victims. Indeed, this is only way to ensure that each Qualifying Victim is paid only once on its claims.

## DISTRIBUTION PROTOCOLS

As soon as practicable after the District Court has entered the Final Amended Restitution Order, the Parties request that the Restitution Receiver be authorized to be begin making distributions to the Qualifying Victims in accordance with the Distribution Schedule, unless ordered otherwise by the District Court upon motion by the Restitution Receiver.   The Parties request that the District Court approve the following protocols:

1.  All distributions will be made by check;

2.  The address for any Qualifying Victim to which distribution will be mailed will be the address provided to the Government as part of the Victim Notification Service; and

3.  The Restitution Receiver, without the need for any further order of the Court, may replace any lost check at his discretion.

## REQUEST TO SET JOINT HEARING

The Settlement Agreement represents the culmination of years of work by both the Government and numerous bankruptcy professionals. It provides the quickest, most efficient and fairest way for the proceeds of the assets seized by the Government in November and December of 2009 to finally be distributed to the parties that were most affected by the actions of Rothstein and his co-conspirators.   Accordingly, in order to facilitate the approvals required for the Settlement to become effective, the Parties respectfully request that the District Court and Bankruptcy Court conduct a joint hearing to consider the relief requested in this Motion.

5825773-1

This procedure has been used in other circuits when faced with similar situations, most notably and recently in *In re Dreier LLP*, 08-15051-SMB (Bankr. S.D.N.Y. 2008); *United States v. Dreier*, 09-cr-085- JSR (S.D.N.Y. 2008)—another case involving a law firm in chapter 11 that was used as part of a large Ponzi scheme. In the *Dreier* case the judges overseeing the Marc S. Dreier criminal case, the Dreier LLP SEC lawsuit, and the Dreier LLP bankruptcy case, had several coordinated, joint status conferences. *See United States v. Dreier*, 09-cr-085-JSR (S.D.N.Y. 2009) (minute entry for April 22, 2009, referring to a joint status conference held by all three judges); *see also United States v. Dreier*, 09-cr-085-JSR (S.D.N.Y. May 4, 2009) (joint order to parties). The efficacy of these joint conferences was recognized by United States District Court Judge Rakoff, wherein he noted that the "inherent tensions are best addressed through coordination and cooperation by all concerned. Accordingly, on April 22, 2009, the three judges convened a joint hearing to urge such a resolution by the affected parties." *United States v. Dreier*, 09-cr-085-JSR (S.D.N.Y. February 5, 2010).

Accordingly, the Parties request that both the District Court and the Bankruptcy Court convene a joint hearing for the purpose of considering the Settlement Agreement and the other related relief requested in this Motion.[4]

**WHEREFORE** the Government and the Trustee respectfully request that:

A. <u>The District Court</u>: (i) grant the request for a joint hearing with the Bankruptcy Court; (ii) approve the Settlement Agreement; (iii) appoint Michael I. Goldberg, Esq., as Restitution Receiver; (iv) approve the 18 U.S.C. § 3664(j) Protocols; (v) approve the Distribution Protocols; (vi) retain jurisdiction over all aspects of the Settlement, except for approval by the Bankruptcy

---

[4] If the either the District Court or the Bankruptcy Court decline to grant the request for a joint hearing, the parties propose that the approval of the Settlement Agreement be obtained first from the Bankruptcy Court followed by the District Court. However, in the interest of efficiency the Parties submit that a joint hearing would be the most expeditious way to bring the Settlement Agreement before the Courts for approval.

5825773-1

Court and Bankruptcy Court oversight of the fees and costs of the Restitution Receiver and his professionals; and (vii) grant any other such relief as is just and appropriate.

B. The Bankruptcy Court: (i) grant the request for a joint hearing with the District Court; (ii) approve the Settlement Agreement; (iii) determine that Michael I. Goldberg's appointment as Restitution Receiver will have no impact on and will not disqualify Goldberg from continuing as the Trustee; (iv) determine that Trustee's Professionals may to continue to advise the Trustee in connection with the RRA case; (v) determine that Trustee's Professionals may provide services to the Trustee notwithstanding of their representation of the Restitution Receiver; (vi) authorize that all attorneys' fees, costs, and expenses incurred by the Restitution Receiver and his professionals be treated pursuant to sections 6.2.9 and 6.2.11 of the RRA Plan as modified by the Confirmation Order and compensated from RRA Liquidating Trust assets; (vii) retain jurisdiction to approve the Restitution Receiver and his professionals fees in the same manner as all other Post-Confirmation Professionals; and (viii) grant any other such relief as is just and appropriate.

Dated: July 14, 2014                        Respectfully Submitted,

                                            BERGER SINGERMAN LLP.
                                            *Counsel for Liquidating Trustee*
                                            1450 Brickell Avenue, Suite 1900
                                            Miami, FL 33131
                                            Telephone:    (305) 755-9500
                                            Facsimile:    (305) 714-4340


                                            By:   */s/  Paul Steven Singerman*
                                                  Paul Steven Singerman
                                                  singerman@bergersingerman.com
                                                  Florida Bar No. 378860
                                                  Isaac Marcushamer
                                                  imarcushamer@bergersingerman.com
                                                  Florida Bar No. 0060373

                                                  and

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:  ___/s/ Evelyn B. Sheehan_____
Evelyn B. Sheehan (Fla. Bar No. 944351)
Alison W. Lehr (Fla. Bar No. 444537)
Assistant United States Attorneys
99 NE 4th Street
Miami, FL  33132-2111
Tel. (305) 961-9101
Fax. (305) 536-7599
Evelyn.Sheehan@usdoj.gov
Alison.Lehr@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of July 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and therefore the foregoing has been furnished on such date via the Court's CM/ECF system to all electronic filing participants in this case.

_____/s/ Paul Steven Singerman_____
Paul Steven Singerman

5825773-1

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

**THIS Settlement Agreement** is entered into July 14, 2014 (the "**Settlement Agreement**") and is by and between Michael I. Goldberg, Esq., solely in his capacity as the Liquidating Trustee of the RRA Liquidating Trust (the "**Trustee**") of the bankruptcy estate of Rothstein Rosenfeldt Adler, P.A ("**RRA**") pending in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**") and the United States of America (the "**Government**" or the "**United States**"). The Trustee and the Government are collectively referred to as the "**Parties**".

## RECITALS

**The Scott Rothstein Criminal Case and RRA Bankruptcy**

A.     In 2005, Scott W. Rothstein ("**Rothstein**"), the 50% shareholder of Rothstein Rosenfeldt Adler, P.A. ("**RRA**"), began perpetrating a Ponzi scheme through various means, including through the sale of fictitious structured settlements with non-existent and fictitious clients of RRA (the "**Rothstein Ponzi**").

B.     On November 10, 2009, (the "**RRA Petition Date**"), certain creditors of RRA filed an involuntary petition for relief under Chapter 11 of Title 11 of the United States Code, as amended (the "**Bankruptcy Code**"), with the Bankruptcy Court against RRA, which created the RRA bankruptcy estate (the "**RRA Estate**"). RRA's bankruptcy case was assigned case number 09-34791-RBR (the "**RRA Case**").

C.     On November 20, 2009, the Office of the United States Trustee selected Herbert Stettin ("**Stettin**") to serve as the chapter 11 trustee in the RRA Case [RRA Case ECF No. 55]. On November 30, 2009, the Bankruptcy Court entered an order for relief in the RRA Case [RRA Case ECF No.66].

D.     On December 1, 2009, the United States Attorney for the Southern District of Florida charged Rothstein, by way of Information, with violations of 18 U.S.C. §1962(d), 18 U.S.C. §1956(h), 18 U.S.C. §1349 and 18 U.S.C. §1343   (Case No. 09-CR-60331-JIC) (the "**Rothstein Criminal Case**") [Criminal Case ECF No.1]. The Information further advised Rothstein that forfeiture of certain properties and a forfeiture money judgment would be sought pursuant to 18 U.S.C. §1963, §982(a)(1) and §981(a)(1)(C).  A Bill of Particulars for Forfeiture was then filed by the United States, which Bill of Particulars identified additional property subject to forfeiture [Criminal Case ECF No. 34].

E.     On April 19, 2010, the District Court presiding over the Rothstein Criminal Case (the "**District Court**") entered its Preliminary Order of Forfeiture [Criminal Case ECF No. 134] (the "**POF**"). The POF listed the assets subject to forfeiture (the "**POF Assets**").

5449226-7

F.    On May 24, 2010, Stettin filed his Verified Claims and Petition for Adjudication of Interests (the "**RRA Claims**"), wherein Stettin, as the Chapter 11 Trustee of RRA, made claim to many of the POF Assets [Criminal Case ECF No. 192].

G.    On June 9, 2010, Rothstein was sentenced by the District Court to 50 years in prison [Criminal Case ECF No.290].

H.    On July 9, 2010, the District Court entered its Order Granting in Part and Denying in Part United States' Motion to Dismiss Chapter 11 Trustee's Verified Claims and Petition [Criminal Case ECF No. 400] (the "**Dismissal Order**") dismissing all of RRA of Claims, except for the RRA Accounts (as defined in the Dismissal Order).

I.    On August 25, 2010, the District Court entered its Order Denying Trustee's Motion for Summary Judgment [Criminal Case ECF No. 578], which denied the Trustee's Motion for Summary Judgment relating to the RRA Accounts.

J.    On August 25, 2010, the District Court entered its Order Re: 21 U.S.C. §853(n) Claims [Criminal Case ECF No. 579], which adjudicated RRA Claims relating to the RRA Accounts.  On September 8, 2010, the United States filed a Motion for Partial Reconsideration of Order Re: 21 U.S.C. §853(n) Claims [Criminal Case ECF No. 609] with regard to the District Courts finding that Stettin had an interest in BA2, BA3, and BA5. And, after full briefing, on October 14, 2010, the District Court entered an Order Granting in Part and Denying in Part the United States Motion for Partial Reconsideration. [Criminal Case ECF No. 637].

K.    On August 31, 2010, the District Court entered an Amended Judgment against Rothstein, which included restitution in the amount of $406,172,140.26 [Criminal Case ECF No. 593, as amended by ECF Nos. 758, 808, and 825].

L.    On February 1, 2011, the District Court entered its First Final Order of Forfeiture [Criminal Case ECF No. 708] (the "**FFOF**"), which finally forfeited many of the POF Assets. Stettin timely appealed from the various adverse orders the district court had entered against him and the FFOF. *Stettin v. USA*, 11-10676 (11th Cir. 2011) (the "**Appeal**").

M.    On May 30, 2013, the Trustee and the Official Committee of Unsecured Creditors in the RRA Case filed the Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (As Modified) in the RRA Case (the "**RRA Plan**") [RRA Case ECF Docket No. 4517].

N.    On June 12, 2013, the Eleventh Circuit issued its opinion in the Appeal, reversing the District Court's rulings solely in regard to claims asserted by Stettin and remanded the case back to the District Court for further proceedings. *United States v. Rothstein, Rosenfeldt, Adler, P.A. (In re Rothstein, Rosenfeldt, Adler, P.A.)*, 717 F.3d 1205 (11th Cir. 2013).

O.    On July 17, 2013, the Bankruptcy Court entered its Order Confirming Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (as Modified), Dated May 29, 2013 and Setting the Bar Date for Lease and Contract Rejection Claims [RRA Case ECF No. 5063] (the "**Confirmation Order**").

2

P.     The effective date (as defined in the RRA Plan) of the RRA Plan was July 22, 2013.

Q.     As of the effective date of the RRA Plan, Michael Goldberg, Esq. was appointed as the trustee of the RRA Liquidating Trust.

R.     On November 7, 2013, the Eleventh Circuit issued its Mandate as to the Appeal (the "**Mandate**").

## The Alu Litigation

S.     During the pendency of the Criminal Case, on December 9, 2010, Stettin sued Joseph and Jody Alu (the "**Alus**") to avoid and recover alleged fraudulent transfers, *Stettin v. Alu*, 10-3775 (Bankr. S.D. Fla. 2010) (the "**Alu Case**").

T.     The Alus interpled the funds at issue, and the United States as successor in interest to Fifth Court Financial LLC ("**Fifth Court**") became a third party defendant in the Alu Case as a result of equity of Fifth Court being one of the POF Assets.

U.     The Bankruptcy Court entered summary judgment in favor of the United States. Case No. Adv. Pro. No.   10-03775-BKC-RBR-*A*, *Stettin v. Joseph Alu and Jody Alu and USA*.[Alu ECF No. 136].

V.     Stettin appealed to the district court. *Stettin v. USA*, Case No. 12-62193 (S.D. Fla. 2012) (the "**Alu Appeal**"). On August 7, 2013, the district court presiding over the Alu Appeal entered its Opinion and Order [Alu Appeal ECF No. 29] affirming the Bankruptcy Court. Stettin appealed to the Eleventh Circuit, where the Alu Appeal remains pending, with all briefing abated. *Stettin v. USA*, Case No. 13-13786 (11th Cir. 2013).

## The Kim Rothstein Litigation

W.     On June 17, 2011, the Bankruptcy Court entered its Order Granting Motion to Approve the Settlement Agreement Between the Chapter 11 Trustee and Kimberly A. Rothstein [RRA Case ECF No. 1799] (the "**Kim Settlement Order**"). The Kim Settlement Order approved the settlement between Kimberly Rothstein ("**Kim Rothstein**") and RRA (the "**Kim Rothstein Settlement**").

X.     On September 6, 2012, Kim Rothstein was charged by the Government with conspiracy to commit money laundering, to obstruct justice and to tamper with a witness. *USA v. Rothstein*, 12-CR-60204-RSR (the "**Kim Rothstein Criminal Case**").

Y.     The Trustee alleged that Kim Rothstein violated the Kim Rothstein Settlement.

Z.     On May 6, 2014, the Bankruptcy Court entered Final Judgment in the amount of $2,000,000.00 against Kimberly Rothstein for violation of the Kim Rothstein Settlement.

AA.    On November 12, 2013, the Government obtained a Preliminary Order of Forfeiture forfeiting assets recovered as a result of the investigation that culminated in Kim

Rothstein's Criminal Case.    [Kim Rothstein Criminal Case ECF No. 113].   The Parties have reached an agreement to extend the time for RRA to file a petition within the Kim Rothstein Criminal Case pending approval of this Settlement Agreement.

### Marin and Daoud Litigation

BB.    On September 6, 2012, Eddy Marin and Patrick Daoud were charged with conspiracy to obstruct justice, obstruction of justice, and perjury. *United States v. Eddy Marin and Patrick Daoud*, Case No. 12-CR-60205 (S.D. Fla. 2012) ("**Marin Criminal Case**").

Y.    On March 24, 2014, the Government obtained a Preliminary Order of Forfeiture forfeiting assets recovered as a result of the investigation that culminated in the Marin Criminal Case.   [Marin Criminal Case ECF No. 98].

### Mass Mutual Litigation

CC.    On December 12, 2009, Massachusetts Mutual Life Insurance Co. filed an action against Rothstein. *Massachusetts Mutual Life Ins. Co., v. Rothstein*, 09-cv-61915-AJ (S.D. Fla. 2009) (the "**Mass Mutual Case**"). The Mass Mutual Case ended with Massachusetts Mutual Life Insurance Co., depositing $618,777.40 into the District Court's registry ("**Mass Mutual Funds**").

DD.    In all, the Government and the Trustee wish to resolve all disputes between them in connection with the Rothstein Criminal Case; the Kim Rothstein Criminal Case; the Marin Criminal Case; the Alu Appeal; and the Mass Mutual Litigation (collectively, the "**Rothstein-Related Litigation**").

EE.    The Government wishes to meet its obligations to protect the rights of Qualifying Victims and therefore wishes to distribute the Restitution Assets to Qualifying Victims holding Restitution Claims in the most efficient manner possible[1]. The Parties agree that this Settlement Agreement and the appointment of a Restitution Receiver is the best means to accomplish this goal.

**NOW, THEREFORE, IT IS HEREBY AGREED,** by and among the undersigned Parties as follows:

1.    <u>Recitals</u>.  The recitals set forth above are an integral part of this Agreement and are incorporated herein by reference and are explicitly made a part of this Agreement.

2.    <u>Definitions:</u>

a.    **Restitution Claim**: means each of the claims allowed by the District Court in its Order Approving Government's Final Report as to Restitution [Criminal Case ECF No. 598] (the "**Restitution Order**") [Criminal Case ECF No. 593, as amended [Criminal Case ECF Nos. 758, 808, and 825].

---

[1] Terms are defined in Section 3, below.

b.          **Restitution Assets**: means those assets listed on Exhibit A hereto.

c.          **Collateral Source Recoveries**: means any amount recovered by a Qualifying Victim for the same loss claimed by the Qualifying Victim in the Qualifying Victim's Restitution Claim, as mandated by 18 U.S.C. §3664(j)(2), or any compensation from any other source with respect to the loss covered by the Restitution Claim, as mandated by 18 U.S.C. §3664(j)(1). For the avoidance of doubt, Collateral Source Recoveries shall be calculated on a gross basis, with no reduction or credit for prejudgment interest, attorneys' fees or costs.

d.          **Subordinated Restitution Claim**: means any Restitution Claim in respect of which the distribution on account thereof would be paid to the "provider of compensation" as mandated by 18 U.S.C. §3664(j)(1).

e.          **Remaining Assets**: means all assets listed on Exhibit B hereto.

f.          **Qualifying Victim**:    means those persons or entities previously awarded restitution by the District Court pursuant to DE 598 as amended DE 758, 808, 825 subject to Title 18, United States Code, Section 3664(j) and Title 18, United States Code, Section 3663A(a)(2).

g.          **Settlement Effective Date**: means the first business day after the last to occur of each of: (i) the order entered by the District Court approving this Settlement Agreement (the "**District Court Approval Order**") becoming a Final Order (as hereinafter defined), and (ii) the order entered by the Bankruptcy Court approving this Agreement becoming a Final Order (the "**Bankruptcy Court Approval Order**").

h.          **Final Order**: means an order or judgment of the District Court or Bankruptcy Court, or other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, re-argument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, re-argument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, re-argument or rehearing has been denied or resulted in no modification of such order; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order, shall not cause such order not to be a Final Order.

i.          **Approval Motion**: means the *Joint Agreed Motion To Approve Settlement; Appoint Michael I. Goldberg As Restitution Receiver; Approve 18 U.S.C.§3664(J) Protocols; Approve Distribution Protocols; And Request To Set Joint Hearing* to be filed both before the District Court and the Bankruptcy Court.

5

3.     **Material Terms**

    a.          Forfeiture of Restitution Assets: The Trustee agrees to support the entry of a final order of forfeiture (the "**Agreed Final Order of Forfeiture**"), which shall finally forfeit the Restitution Assets to the Government. The Agreed Final Order of Forfeiture shall be in a form acceptable to both the Trustee and the Government and consistent with the terms of this Settlement Agreement.

    b.          Release of Remaining Assets: All Remaining Assets shall be released to the Trustee for liquidation and/or distribution to the creditors of RRA pursuant to the RRA Plan under the supervision of the Bankruptcy Court.

    c.          Appointment of Michael I. Goldberg, Esq., as Restitution Receiver: The District Court Approval Order shall provide that Michael I. Goldberg, Esq. will be appointed as the "**Restitution Receiver.**" The District Court Approval Order will authorize the Restitution Receiver to take any action necessary to distribute the proceeds of all Restitution Assets to Qualifying Victims in accordance with this Settlement Agreement and the Final Amended Restitution Order (as defined in paragraph 3 (f) below). The terms of the Restitution Receivership shall include:

        (i)      Scope: the Restitution Receiver shall have standing to raise any position that is available to the Government or the RRA Trust. The Restitution Receiver will be authorized by the District Court to take any action necessary to protect or monetize any Restitution Assets and to make distributions to Qualifying Victims in accordance with the Settlement Agreement and applicable law. Any issue relating to the scope of the receivership shall be determined in the first instance by the District Court.

        (ii)     Fees and Expenses: The Restitution Receiver and his counsel will be compensated exclusively from the RRA Trust on the same terms as they provide their services to the RRA Trust. Their fees and expenses will be treated as Costs and Expenses of the Liquidating Trust pursuant to sections 6.2.9 and 6.2.11 of the RRA Plan as modified by the Confirmation Order. Accordingly, all issues relating to the payment of the Restitution Receiver and his professionals' fees and expenses shall be heard and determined before the Bankruptcy Court.

    d.          Restitution Receiver Distribution Schedule: Within 14 days of the Settlement Effective Date, the Parties shall file with the District Court a schedule identifying the Restitution Claim for each Qualifying Victim through VNS numbers (the "**Distribution Schedule**"). The Distribution Schedule will indicate for each Restitution Claim: (i) the original allowed amount of the Restitution Claim; (ii) any Collateral Source Recoveries that are applied to reduce the distribution due on any Restitution Claim; and (iii) which Restitution Claims, if any, are to be treated as Subordinated Restitution Claims. Any objection to the Distribution Schedule must be filed in accordance with the procedures approved by the District Court or they are forever barred.

5449226-7

e.        Maximum Proposed Distribution: Under no circumstances shall the distribution to any Qualifying Victim exceed the amount of the Restitution Claim after application of Title 18, United States Code, Section 3664(j) thereby taking into account all Collateral Source Recoveries.

f.        Approval of the Restitution Receiver Distribution Schedule and Procedure to Resolve any Objection Thereto: the Government and the Restitution Receiver shall seek approval of the Distribution Schedule by the District Court. Any interested party listed thereon shall have 21 days from the date regarding the Distribution Schedule to file an objection with the District Court to their Restitution Claim. For purposes hereof the date of notice shall mean the date on which the Distribution Schedule is mailed to the victims through the Victim Notification System ("VNS"). Any such objection shall be signed under penalty of perjury by the holder of the Restitution Claim. The District Court shall resolve all objections. After all objections are adjudicated by the District Court, the Parties agree to support the entry of an amended restitution order by the District Court (the "**Final Amended Restitution Order.**").

g.        Distribution to Holders of Allowed Restitution Claims: As soon as practicable after entry of the Final Amended Restitution Order by the District Court and the entry of the Agreed Final Order of Forfeiture, the Restitution Receiver shall disburse funds to Qualified Victims in accordance with Final Amended Restitution Order, unless the District Court orders otherwise upon motion by the Restitution Receiver.

h.        Kim Rothstein Criminal Case:  The Government agrees that all assets forfeited or subject to forfeiture in connection with the Kim Rothstein Criminal Case shall be treated as Remaining Assets under this Settlement Agreement; provided, however, the Trustee shall pay from the proceeds of the Remaining Assets the amount of $250,000 to Sean Dunn pursuant to Title 19, U.S.C., Section 1619.

i.        Marin Criminal Case: The Government agrees that all assets forfeited or subject to forfeiture in connection with the Marin Criminal Case shall be treated as Remaining Assets under this Settlement Agreement.

j.        Mass Mutual Case: The Trustee and the Government agree to have the Mass Mutual Funds treated as Remaining Assets under this Settlement Agreement.

k.        Alu Appeal: The Alu Appeal shall be dismissed and the funds subject of the Alu Appeal shall be treated as Remaining Assets under this Settlement Agreement.

l.        Future Criminal Prosecutions: This agreement does not cover any assets forfeited or subject to forfeiture in connection with any future criminal prosecutions involving or relating to the crimes committed by Scott W. Rothstein and others. The Parties reserve all of their rights in respect of any future criminal prosecutions.

m.        Filing of the Approval Motion.  Promptly after the execution of this Settlement Agreement, the Trustee and the Government shall file the Approval Motion seeking both Bankruptcy Court and District Court approval of this Settlement Agreement.

7

n.        Request for Joint Hearing. The Trustee and the Government shall seek a joint expedited hearing on the Approval Motion before the District Court and Bankruptcy Court. If either Court refuses to conduct a joint hearing, the Parties shall expeditiously first seek approval of this Settlement Agreement by the Bankruptcy Court followed by approval by the District Court.

o.        Dismissal of Litigation: Upon the Settlement Effective Date, all litigation between the Trustee and the Government shall be resolved and dismissed in accordance with the terms of this Settlement Agreement.

4.    Best Interest of RRA:  The Trustee believes that the execution and approval of this Settlement Agreement is in the best interests of the RRA Liquidating Trust and the beneficiaries thereof.

5.    Best Interests of Qualifying Victims: The Government believes that this Settlement Agreement is in the best interests of the Qualifying Victims.

6.    Governing Law: This Settlement Agreement shall be governed by and construed in accordance with the federal law and where applicable the internal laws of the State of Florida, without giving effect to any principles of conflicts of law.

7.    Retention of Jurisdiction: The Bankruptcy Court shall retain jurisdiction solely to enforce its order approving this Agreement and to approve the compensation of the Restitution Receiver and any professional he hires. The District Court shall have exclusive jurisdiction as it relates to all other matters including, but not limited to, the interpretation of this Agreement, all restitution issues, and all disputes arising therefrom.

8.    Interpretation. Each Party represents that it has been represented by the counsel of its respective choice in connection with the negotiation of the settlement and documentation of this Settlement Agreement. The Parties have participated jointly in the negotiation and drafting of this Settlement Agreement. If an ambiguity or question of intent or interpretation arises, this Settlement Agreement will be construed as if drafted jointly by the Parties hereto and no presumption or burden of proof will arise favoring or disfavoring any Party hereto because of the authorship of any provision of this Settlement Agreement.

9.    Headings.  The headings of the Sections, Paragraphs and subsections of this Settlement Agreement are inserted for convenience only and are not part of this Settlement Agreement and do not in any way limit or modify the terms or provisions of this Settlement Agreement and shall not affect the interpretation hereof.

10.    Entire Agreement.  This Settlement Agreement constitutes the full and entire agreement among the Parties with regard to the subject hereof, and supersedes all prior negotiations, representations, promises or warranties (oral or otherwise) made by any Party with respect to the subject matter hereof. No Party has entered into this Settlement Agreement in reliance on any other Party's prior representation, promise or warranty (oral or otherwise) except for those that may be expressly set forth in this Settlement Agreement.

5449226-7

11.    <u>Amendment</u>.  The terms and provisions of this Settlement Agreement cannot be amended, modified or supplemented orally or by course of conduct or course of dealing, but only in a writing signed by the Party affected thereby.

12.    <u>Counterparts</u>.  This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement.  Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

13.    <u>Further Assurances</u>.  Each of the Parties hereto agrees to execute and deliver, or to cause to be executed and delivered, all such instruments, and to take all such action as the other Parties may reasonably request in order to effectuate the intent and purposes of, and to carry out the terms of, this Settlement Agreement.

14.    <u>Parties' Fees and Costs</u>.  The Parties shall bear their own costs (including legal fees) in connection with the negotiation of the settlement and drafting of this Settlement Agreement.

5449226-7

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement, intending to be legally bound hereby.

**WIFREDO A. FERRER**
**United States Attorney for the**
**Southern District of Florida**

Evelyn D. Sheehan (Fla. Bar No. 944351)
Alison W. Lehr (Fla. Bar No. 444537)
Assistant United States Attorneys
99 NE 4th Street
Miami, FL   33132-2111
Tel. (305) 961-9101
Fax. (305) 536-7599
Evelyn.Sheehan@usdoj.gov
Alison.Lehr@usdoj.gov

Date:          2/14/14

**MICHAEL I. GOLDBERG, Esq.**
**Solely in his capacity as Liquidating Trustee**
**of the RRA Liquidating Trust**

Date:

10

5449226-7

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement, intending to be legally bound hereby.

**WIFREDO A. FERRER**
**United States Attorney for the**
**Southern District of Florida**

_____
Evelyn B. Sheehan (Fla. Bar No. 944351)
Alison W. Lehr (Fla. Bar No. 444537)
Assistant United States Attorneys
99 NE 4th Street
Miami, FL  33132-2111
Tel. (305) 961-9101
Fax. (305) 536-7599
Evelyn.Sheehan@usdoj.gov
Alison.Lehr@usdoj.gov

Date:             _____

_____
**MICHAEL I. GOLDBERG, Esq.**
**Solely in his capacity as Liquidating Trustee**
**of the RRA Liquidating Trust**

Date:             7/14/14

10

5449226-7

## EXHIBIT A- RESTITUTION ASSETS

| IDENTIFICATION PER ECF NO. 134 | DESCRIPTION |
|---|---|
| RP22 | 353 4 Ave., Unit 12-H, Brooklyn, NY |
| VV1 | 1990 Red Ferrari F40 Coupe |
| VV2 | White Bentley Convertible |
| VV3 | 2008 Yellow McLaren Mercedes Benz |
| VV4 | 2007 Black Limousine Ford Expedition |
| VV5 | 2008 Red Ferrari 430 Spider |
| VV6- | 2007 Silver Rolls Royce Convertible |
| VV7 | 2006 Silver Hummer H1 |
| VV8 | 2008 Cadillac Escalade |
| VV9 | 1967 Red Convertible Corvette |
| VV10 | 2008 Black Bugatti Veyron EB |
| VV12 | 2006 Red Ferrari F430 Spider |
| VV13 | 2008 Chevrolet Corvette |
| VV14 | 2009 Chevrolet Corvette Z06 |
| VV15 | 2009 Blue Gray Maserati Granturismo Coupe |
| VV16 | 2009 White Mercedes Benz |
| VV17 | 2007 87' Warren |
| VV18 | 33' Aquariva |
| VV19 | 2009 11' Yamaha Jet Ski |
| VV20 | 2009 11' Yamaha VS |
| VV21 | 2009 11' Yamaha VS |
| VV22 | 1999 55' Sea Ray 540 Sundancer |
| VV23 | 2009 Yamaha Jet Ski |
| VV24 | 2010 White Lamborghini lp-670sv |
| T1 | 304 Pieces of Jewelry |
| T2 | 16 DuPont Lighters |
| T3 | 3 pieces sports memorabilia |
| T4 | $271,160 in U.S. currency |
| T5 | $1,500 in U.S. currency |
| T6 | $30,000 in American Express Gift Cards |
| T7 | $50,000 in American Express Gift Cards |
| T8 | 5 additional watches |
| T9 | Guitar collection |
| BA1 | Fidelity Investments Stock Account |
| BA6 | Bank account 178780211819923220000187 |
| BA7 | Bank account Banque Populaire, Morocco |
| BA8 | Bank account Banque Populaire, Morocco |

5816213-3

| | |
|---|---|
| BA12 | Toronto Dominion Bank, N.A. 6860422200 |
| BA13 | Toronto Dominion Bank, N.A. 6860755757 |
| BA14 | Toronto Dominion Bank, N.A. 6860755781 |
| BI 9 | Equity interest in Renato Watches |
| BI 12 | Equity interest in Sea Club Ocean Resort Hotel, LLC |
| BI 19 | Equity interest in Iron Street Management, LLC |
| BI 24 z. | Broward Financial Holdings, Inc. |
| C4 | $90,000 to Republican Party of Florida |

**EXHIBIT B- REMAINING ASSETS**

| IDENTIFICATION PER ECF NO. 134 | DESCRIPTION |
|---|---|
| BA2 | Gibraltar Bank account 50010085 |
| BA3 | Gibraltar Bank account 50010093 |
| BA4 | Gibraltar Bank account 50011253 |
| BA5 | Gibraltar Bank account 50015214 |
| BA10 | Toronto Dominion Bank, N.A. 6861011556 |
| BA11 | Toronto Dominion Bank, N.A. 6860420923 |
| BA16 | Toronto Dominion Bank, N.A. 6861076906 |
| BA17 | Toronto Dominion Bank, N.A. 6861011614 |
| BA18 | Toronto Dominion Bank, N.A. 6860291274 |
| BA19 | Toronto Dominion Bank, N.A. 6861076922 |
| BA20 | Schwyzer Kantonalbank #CH75 0077700530742040 |
| BI  24 b. | 235 GC LLC |
| BI  24 c. | 350 LOP#2840 LLC |
| BI  24 d. | 353 BR LLC |
| BI  24 f. | 708 Spangler LLC |
| BI  24 g. | 1012 Broward LLC |
| BI  24 h. | 1198 Dixie LLC |
| BI  24 i. | 1299 Federal LLC |
| BI  24 j. | 2133 IP LLC |
| BI  24 k. | 15158 LLC |
| BI  24 m. | AAMG1 LLC |
| BI  24 n. | AAMM Holdings |
| BI 1 | Stock Certificates, or beneficial interest, Gibraltar Private Bank & Trust |
| BI 10 | Equity interest in Edify LLC |
| BI 11 | Equity interest V Georgio Vodka |
| BI 13 | Equity interest in North Star Mortgage |
| BI 14 | Equity Interest in Kip Hunter Marketing, LLC |
| BI 15 | Equity interest in RRA Sports and Entertainment, LLC |
| BI 16 | Equity interest in Casa Casuarina |
| BI 17 | Equity interest in Alternative Biofuel Technologies, Inc. |
| BI 18 | Equity interest in RRA Goal Line Management |
| BI 2 | Equity interest in Qtask |
| BI 20 | Equity interest in Africat |

| | |
|---|---|
| BI 21 | Equity interest in 1198 Dixie LLC |
| BI 22 | Equity interest 1299 Federal LLC |
| BI 23 | Promissory Note by Uniglobe |
| BI 24 a. | Equity Interest in 29 Bahia LLC |
| BI 24 aa. | Equity interest in CI07, LLC |
| BI 24 ab. | Equity interest in CI08, LLC |
| BI 24 ac. | Equity interest in CI16, LLC |
| BI 24 ad. | Equity interest inCI 27, LLC |
| BI 24 ae. | CSU LLC |
| BI 24 af. | D&D Management & Investment LLC |
| BI 24 ag. | D&S Management and Investment LLC |
| BI 24 ah. | DJB Financial Holdings LLC |
| BI 24 ai. | Equity interest in DYMMU, LLC |
| BI 24 aj. | Equity interest in Full Circle Fort Lauderdale, LLC |
| BI 24 ak. | Equity interest in Full Circle Trademark Holdings LLC. |
| BI 24 al. | Equity interest in GHWI LLC |
| BI 24 am. | IDNL GEAH LLC |
| BI 24 an | Equity interest in ILK3, LLC. |
| BI 24 ao | Equity interest in IS Management, LLC. |
| BI 24 ap | Equity interest in JRCL, LLC. |
| BI 24 aq | Equity interest in Judah, LLC. |
| BI 24 ar. | Kendall Sports Bar |
| BI 24 at. | NF Servicing LLC |
| BI 24 au. | NRI 11 LLC |
| BI 24 av. | NRI 15 LLC |
| BI 24 aw. | NS Holdings LLC |
| BI 24 ax | Equity interest in PRCH, LLC. |
| BI 24 ay | Equity interest in PK Adventures, LLC. |
| BI 24 az | Equity interest in PK's Wild Ride, Ltd. |
| BI 24 ba | All Equity interest held by or on behalf of , in Rothstein Family Foundation |
| BI 24 bb | Equity interest in RRA Consulting, Inc. |
| BI 24 bc. | RRA Goal Line Management LLC |
| BI 24 bd. | RRA Sports and Entertainment LLC |
| BI 24 be. | RSA 11th Street LLC |
| BI 24 bf. | RW Collections LLC |
| BI 24 bg | Equity interest in S& KEA, LLC. |
| BI 24 bh. | Scorh LLC |
| BI 24 bi | Equity interest in Tipp, LLC. |
| BI 24 bj | Equity interest in VGS, LLC. |

| | |
|---|---|
| BI 24 bk | Equity interest in The Walters Family, LLC. |
| BI 24 bl | Equity interest in Walter Industries, LLC. |
| BI 24 bm. | WPBRS LLC |
| BI 24 bn. | WAWW |
| BI 24 bo | Equity interest in WAWW 2, LLC. |
| BI 24 bp | Equity interest in WAWW 3, LLC. |
| BI 24 bq. | WAWW 4 LLC |
| BI 24 br | Equity interest in WAWW 5, LLC. |
| BI 24 bs | Equity interest in WAWW 6, LLC. |
| BI 24 bt | Equity interest in WAWW 7, LLC. |
| BI 24 bu. | WAWW 8 LLC |
| BI 24 bv. | WAWW 9 LLC |
| BI 24 bw. | WAWW 10 LLC |
| BI 24 bx. | WAWW 11 LLC |
| BI 24 by. | WAWW 12 LLC |
| BI 24 bz. | WAWW 14 LLC |
| BI 24 ca | Equity interest in WAWW 15, LLC. |
| BI 24 cb | Equity interest in WAWW 16, LLC. |
| BI 24 cc. | WAWW 17 LLC |
| BI 24 cd | Equity interest in WAWW 18, LLC. |
| BI 24 ce. | WAWW 19 LLC |
| BI 24 cf | Equity interest in WAWW 20, LLC. |
| BI 24 cg | Equity interest in WAWW 21, LLC. |
| BI 24 ch | Equity interest in WAWW 22, LLC. |
| BI 24 ci | Equity interest in JB Boca M Holdings, LLC. |
| BI 24 e | 10630 #110 LLC |
| BI 24 l | Equity interest in AANG, LLC. |
| BI 24 o | Equity interest in ABT Investments, LLC. |
| BI 24 p | Equity interest in Advanced Solutions |
| BI 24 q | Equity interest in Bahia Property Management, LLC. |
| BI 24 r | Equity interest in Boat Management, LLC. |
| BI 24 s. | BOSM Holdings LLC |
| BI 24 t | All Equity interest held by or on behalf of, in BOVA Prime, LLC. |
| BI 24 u | All Equity interest held by or on behalf of, in BOVA Restaurant Group, LLC. |
| BI 24 v | All Equity interest held by or on behalf of, in The BOVA Group, LLC. |
| BI 24 w | All Equity interest held by or on behalf of, in BOVA Smoke, LLC. |

| BI 24 x | All Equity interest held by or on behalf of, in BOVCU, LLC. |
|---------|------------------------------------------------------------|
| BI 24 y | All Equity interest held by or on behalf of, in BOVRI, LLC. |
| BI 25 a | interest in The 2009 Scott W. Rothstein Revocable Trust |
| BI 25 aa. | Renato Watches, Inc. |
| BI 25 ab | interest in Rothstein Family, LTD. |
| BI 25 ad | interest in SPAC Investments, LLC |
| BI 25 ae | interest in TB22 Mario's, Inc. |
| BI 25 af | interest in TB22N, LLC |
| BI 25 ag | interest in TLBN, LLC |
| BI 25 ah. | UG, LLC |
| BI 25 ai | interest in Uniglobe Environmental Solutions, Inc. |
| BI 25 aj | interest in VGSI, LLC |
| BI 25 ak | interest in V Georgio Spirits, LLC |
| BI 25 al | interest in WAWW 13, LLC |
| BI 25 am | interest in Rothstein Rosenfeldt Adler, P.A., located in Florida |
| BI 25 an | interest in Rothstein Rosenfeldt Adler, P.A., located in Venezuela |
| BI 25 b | interest in REC Group, LLC |
| BI 25 c | interest in REN Group, LLC |
| BI 25 d | interest in REP Group, LLC |
| BI 25 e | interest in RES Group, LLC |
| BI 25 f | interest in RET Group, LLC |
| BI 25 g | interest in REV Group, LLC |
| BI 25 h. | AAMG, LLC |
| BI 25 i | interest in BFHI, LLC |
| BI 25 j | interest in BFH1, LLC |
| BI 25 k. | Cartshield USA, LLC |
| BI 25 l | interest in CCCN, LLC |
| BI 25 m | interest in CCM, LLC |
| BI 25 n | interest in Cha Cha Cha, Inc. |
| BI 25 o. | Fifth Court Financial, LLC |
| BI 25 p. | GBPT, LLC |
| BI 25 q. | Iron Street Management, LLC |
| BI 25 r | interest in JB Boca Holdings, LLC |
| BI 25 s. | JJ Finance Holdings, LLC |
| BI 25 t. | JWG Holdings, LLC |
| BI 25 u | interest in Luxury Resorts, LLC |

| | |
|---|---|
| BI 25 v | interest in MLC 350, LLC |
| BI 25 w. | MRISC, LLC |
| BI 25 x. | MRI Scan Center, Inc. |
| BI 25 y. | QT, LLC |
| BI 25 z. | Qtask |
| BI 3 | Equity interest in Broward Bank of Commerce |
| BI 7 | Equity interest in Café Iguana, Pembroke Pines, Florida |
| BI 8 | Equity interest in Cart Shield USA, LLC |
| C1 | $6,000 for Alex Sink |
| C2 | $40,000 Republican Party of Florida |
| C3 | $10,000 Republican Party of Florida "Federal" |
| C5 | $5,000 Republican Party of Florida |
| C6 | $800,000 Joe DiMaggio Children's Hospital |
| C7 | $1,000,000 Holy Cross Hospital |
| C8 | $9,600 Gov. Charlie Crist |
| C9 | Funds turned over in response to publicity, including $5,000 from CAKK |
| M1 | All premiums paid to Mutual Life Insurance Company |
| M2 | American Express rewards points totaling 20,920,701 |
| M3 | Property in response to publicity, including watches from "JH" and "MBF" |
| RP10 | 10630 NW 4th street, Apt. 110, Plantation, Florida |
| RP11 | 227 Garden Court, Lauderdale by the Sea, Florida |
| RP12 | 708 Spangler Boulevard, Bay 1, Hollywood, Florida |
| RP13 | 1012 East Broward Boulevard, Fort Lauderdale, Florida |
| RP15 | 350 SE 2nd Street, Commercial Unit 2, Fort Lauderdale, Florida |
| RP16 | 361 SE 9 Lane, Boca Raton, Florida |
| RP17 | 1198 N Old Dixie Highway, Boca Raton, Florida |
| RP18 | 1299 N Federal Highway, Boca Raton, Florida |
| RP19 | 151 East 58 Street, apartment 42D, New York, New York |

| | |
|---|---|
| RP20 | 11 Bluff Hill Cove Farm, Narragansett, Rhode Island |
| RP23 | 290 W 11th Street, #1C, New York, NY |
| RP6 | 350 SE 2nd Street, Unit 2840, Fort Lauderdale, Florida |
| RP7 | 380 Carrington Drive, Weston, Florida |
| RP8 | 2133 Imperial Point Drive, Fort Lauderdale, Florida |
| | |
| **IN ADDITION TO THE FOREGOING, ALL ASSETS SEIZED BY GOVERNMENT AND NOT LISTED ON EXHIBIT A ARE TO BE CONSIDERED REMAINING ASSETS UNDER THE SETTLEMENT AGREEMENT, UNLESS RELEASED OR DISMISSED PURSUANT TO COURT ORDER PRIOR TO THE DATE OF THE SETTLEMENT AGREEMENT.** | |