

**ORDERED in the Southern District of Florida on September 2, 2014.**

Raymond B. Ray, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE:                                          CASE No.:  09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A.,               CHAPTER 11

        Debtor.
_____/

**ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT; APPOINT
MICHAEL I. GOLDBERG AS RESTITUTION RECEIVER; APPROVE 18 U.S.C. §
3664(j) PROTOCOLS; APPROVE DISTRIBUTION PROTOCOLS; AND
REQUEST TO SET JOINT HEARING [ECF No. 5704]**

        THIS MATTER came before the Court on August 28, 2014 at 9:30 a.m. pursuant to the

Court's *Order Setting Hearing on Joint Motion to Compromise Controversy* [ECF No. 5707]

(the "Scheduling Order"), which set a hearing before the Court to consider the *Joint Motion To*

*Approve Settlement; Appoint Michael I. Goldberg As Restitution Receiver; Approve 18 U.S.C. §*

*3664(j) Protocols; Approve Distribution Protocols; And Request To Set Joint Hearing* (the

"**Motion**") [ECF No. 5704]. For the reasons stated on the record and in this Order, the Court

grants the relief sought in the Motion as set forth herein.[1]

### The Record before the Court and Procedural Background:

On July 14, 2014, Michael I. Goldberg (the "Trustee" or "Goldberg"), in his capacity of

as the Liquidating Trustee for the RRA Liquidating Trust ("RRA Trust") and the United States

of America (the "Government") filed the Motion. The settlement agreement between the Trustee

and the Government attached as Exhibit A to the Motion (the "Settlement").

Prior to the hearing, the following objections were filed: (i) the Sochet Entities' Limited

Objection (the "**Sochet Objection**") [ECF No. 5725]; (ii) the FEP Group's Preliminary

Objection (the "**FEP Objection**") [ECF No. 5726]; (iii) the Razorback Parties' Preliminary

Objection (the "**Razorback Parties' Objection**")[ECF No. 5727]; (iv) the Limited Response

filed by TD Bank [ECF No. 5738] (the "**TD Bank Response**"); (v) the Razorback Parties'

Supplemental Objection (the "**Razorback Supplemental Objection**") [ECF No. 5748]; and (vi)

the FEP Group's Joinder in the Razorback Supplemental Objection (the "FEP Joinder") [ECF

No. 5752] (collectively, the "**Objections**").

At the hearing, TD Bank, N.A. ("**TD Bank**") withdrew the TD Bank Response and any

opposition to the Motion. TD Bank stated that it decided not to object to the Motion, in part, as a

result of the testimony provided by the Trustee at his deposition on August 20, 2014. TD Bank,

through its counsel, advised the Court that it supported the Motion and considered the Settlement

to be in the best interest of the RRA Trust and its creditors and beneficiaries.

In support of the Settlement, the Liquidating Trustee filed the following: (i) the Reply by

Liquidating Trustee ("**Liquidating Trustee Reply**") [ECF No. 5746]; (ii) Liquidating Trustee's

---

[1] The Court finds that notice of the hearing was sufficient and served in accordance with applicable rules and the previous orders of this Court. *See* Certificate of Service [ECF No. 5709]. The request to set a joint hearing was already denied by Judge Cohn's July 15, 2014 Order [D. Ct. Case No. 09-CR-60331-COHN ECF No. 847].

Reply In Opposition to Razorback Parties' Supplemental Objection (the "**Supplemental Reply**") [ECF No. 5749]; (iii) the Direct Examination of Michael I. Goldberg [ECF No. 5755]; and (iv) the Notice of Filing Order Regarding Joint Motion to Approve the Settlement Procedure [ECF No. 5756].

## The Evidence:

At the hearing the Court received into evidence Trustee Exhibits 1-11. No party raised any objection to the admission of the Trustee's Exhibits.  Only Razorback cross-examined the Trustee. No other party offered any evidence. The Court finds the testimony of the Trustee [ECF No. 5755; Trustee Exhibit 1] to be candid, forthright, and credible. Accordingly, the Direct Examination of Michael I. Goldberg [ECF No. 5755] is incorporated into this Order in its entirety.

## Findings of Fact:

Once the Settlement becomes effective, pursuant to the Settlement the RRA Trust will receive approximately $16.6 million in cash from the assets currently held by the Government. In addition, the RRA Trust will receive all of the unliquidated assets seized by the Government, including, without limitation, jewelry recovered in connection with the Kim Rothstein criminal case, Case No. 12-cr-60204-RSR (S.D. Fla. 2012). The Trustee estimates that he expects that the RRA Trust will receive $4-8 million from the liquidation of the unliquidated assets. Finally, the Trustee estimates that, once the Settlement is effective, an additional $12.3 million will be realized by the RRA Trust as a result of the Collateral Source Recovery effect (the "CSR Effect). The CSR Effect is an additional benefit for the RRA Trust resulting from the distribution to the holders of the restitution claims before any further funds are disbursed to the Class 3 Claims

under the Plan.[2] By controlling the timing, pursuant to the Settlement, it is estimated that the RRA Trust will save approximately $12.3 million it would otherwise have to pay out to Class 3 claimants who are also restitution claimants.  In total the Court finds that the Settlement will render an immediate cash benefit to the RRA Trust of approximately $16.6 million. The Court further finds that the projection of a total economic benefit to the RRA Trust of between $33,045,396.00 and $37,045,396.00 is reasonable and likely under the circumstances.

The Court also finds that the Trustee's appointment as Restitution Receiver (as that term is defined in the Settlement) will have no impact on and will not disqualify Goldberg from continuing to serve as Trustee in this case. The Court further finds that all professionals already retained by the Trustee may render advice to Goldberg in his capacity as Restitution Receiver, without any impact on any professional's ability to continue rendering advice and services to Goldberg in his capacity as Trustee.

Finally, the Court is convinced that any continued litigation between the Government and the RRA Trust would be exceedingly expensive and would likely last several years. The Court expects that, if the RRA Trust and the Government were required to litigate, the litigation would only end after *en banc* appellate review by the Eleventh Circuit and possibly the Supreme Court of the United States. Moreover, several creditor constituencies have at various times complained about the ongoing litigation between the Government and the Trustee. *See* Exhibit 4 at p.43; Exhibit 5 at p. 4; Exhibit 6 p 20 lines 16-18; Exhibit 6 p.38 lines 14-15.

---

[2] "Plan" means the *Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (As Modified), Dated May 29, 2013* [ECF No. 4517] and confirmed by this Court's July 17, 2013 *Order Confirming Second Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed Jointly by the Trustee and the Official Committee of Unsecured Creditors (As Modified), Dated May 29, 2013 and Setting Bar Date for Lease and Contract Rejection Claims* [ECF No. 5063] (the "Confirmation Order").

**Conclusions of Law:**

Fed. R.Bankr. P. 9019 ("Rule 9019") provides that, after notice and a hearing, a bankruptcy court may approve a proposed settlement. The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Chira*, 367 B.R. 888, 896 (S.D. Fla. 2007) *aff'd.* 567 F.3d 1307 (11th Cir. 2010)(citing *In re Air Safety Intern., L. C.*, 336 B.R. 843, 852 (S.D. Fla. 2005)); *In re Arrow Air, Inc.*, 85 B.R. 886 (Bankr. S.D. Fla. 1988).

In passing on proposed settlements, the Court must determine whether a proposed settlement is fair and equitable. *In re Chira*, 367 B.R. at 896. The Court must evaluate whether the compromise falls below the "lowest point in the range of reasonableness." *In re S&I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) (citing *In re Bicoastal Corp.*,164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993)); *see also In re Arrow Air, Inc.*, 85 B.R. at 886.

The Eleventh Circuit, in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), provided additional guidance regarding whether a settlement should be approved and established a four-part test:

    a.    The probability of success in litigation;

    b.    The difficulties, if any, to be encountered in the matter of collection;

    c.    The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

    d.    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

The Trustee testified that he believes he would be successful in any future litigation. [Exhibit 1 paragraph 20]. However, he also acknowledges that litigation is not risk-free. [Exhibit 1 paragraph 20]. The Court agrees that the risk of litigation in this case outweighs any

incremental benefit that might be achieved over the benefits of the Settlement. Accordingly, this prong strongly favors approval of the Settlement.

There is no difficulty in collecting the already monetized assets. However, certain assets have yet to be monetized and are incurring monthly carrying costs, thereby decreasing the net recovery each month the dispute persists. [Exhibit 1 paragraph 21]. Therefore, this prong also strongly favors approval of the Settlement.

The litigation between the Trustee and the Government is very complex, as it continues to present numerous novel issues. The first trial in the District Court lasted two days and involved several witnesses, including two experts who traced millions of dollars through numerous bank accounts. Further litigation between the Trustee and the Government would require the resolution of novel legal issues involving the intersection between bankruptcy law, constructive trust law, and federal forfeiture law. [Exhibit 1 paragraph 22].  Further litigation would also require a long trial at which experts for the Trustee would seek to trace millions of dollars to each and every claimed asset.[3]

Most of the creditors and victims are singularly interested in obtaining their recovery as soon as possible. This Settlement allows for the prompt exercise and faithful discharge of the respective duties of the Parties who have worked tirelessly to ensure that the victims and creditors are compensated for their losses. Moreover, it comports with the requests of the various parties throughout the case that the RRA Trust and the Government resolve their differences amicably.

---

[3] The Court agrees with the Trustee's view that the Eleventh Circuit Opinion only gives the Trustee the right to continue litigation. *See Eleventh Circuit Opinion* at p. 21-22. The Court does not agree with reading advanced by some of the Objectors that the Eleventh Circuit Opinion determined that all forfeited property was property of the RRA.

Accordingly, the Settlement overwhelmingly meets the requirements under *In re Justice Oaks II, Ltd*, is above the lowest point on the range of reasonableness, and is exceedingly fair and equitable.

None of the Objections states a valid reason why the Settlement should not be approved. The Court finds that there was sufficient disclosure, consistent with various orders entered by the District Court [Exhibits 3, 8, 9, and 10], for all parties to assess the general impact of the Settlement on the RRA Trust pursuant to *In re Justice Oaks*. Moreover, the Court overrules the jurisdictional objection raised by the Sochet Entities. The Eleventh Circuit Opinion expressly remanded the forfeiture litigation to district court, where a tracing trial as to all claimed assets would be necessary.[4]  Finally, any concerns about the composition of or distribution to any of the holders of restitution claims pursuant to Title 18, United States Code, Section 3664 are matters that will be decided by the district court and are irrelevant to the determination of whether the Settlement meets the *In re Justice Oaks II, Ltd* factors.

Accordingly, it is hereby,

**ORDERED that:**

1.      The Motion [ECF No. 5704] is **GRANTED.**

2.      The Settlement [ECF No. 5704, Exhibit A] is **APPROVED**.   The Trustee is **AUTHORIZED** to take any action to effectuate the Settlement, without further order of this Court.

---

[4] The Trustee objected to the standing of the Sochet Entities and the FEP Group because neither has a financial interest in the approval of the Settlement. The Sochet Entities will receive the Distributions they are entitled to receive from the RRA Trust pursuant to the Plan and applicable orders of this Court whether or not this Settlement is approved. Additionally, FEP is not a creditor in this case. FEP is a creditor in the Banyon Cases, and the claims of the Banyon Estates against the RRA Estate, have already has been paid in full in this case. Accordingly, under *Westwood Cmty. Two Ass'n v. Barbee, (In re Westwood Cmty. Two Ass'n)*, 293 F.3d 1332 (11th Cir. 2002), neither the Sochet Entities nor FEP has standing. Notwithstanding their lack of standing, the Court has considered the merits of their objections and overruled them on the merits.

3.      For the reasons stated herein, the reasons stated on the record, and the reasons in ECF Nos. 5704, 5746, 5749, 5755, which are adopted by the Court, the Objections [ECF Nos.5725, 5726, 5727, 5738, 5748, 5752] are **OVERRULED**.

4.      Michael I. Goldberg's appointment as Restitution Receiver will have no impact on and will not disqualify Goldberg from continuing as the Trustee.

5.      The Trustee's Professionals may continue to advise the Trustee in connection with the RRA case.

6.      The Trustee's Professionals may provide services to the Trustee notwithstanding their representation of the Restitution Receiver; and to the extent authorized by the District Court to represent the Restitution Receiver, the Trustee's Professionals may represent the Restitution Receiver.

7.      All attorneys' fees, costs, and expenses incurred by the Restitution Receiver and his professionals will be treated in accordance with sections 6.2.9 and 6.2.11 of the RRA Plan as modified by the Confirmation Order and compensated from RRA Trust assets.

8.      The Court shall retain jurisdiction to approve compensation to be paid to the Restitution Receiver and his professionals' fees in the same manner as all other Post-Confirmation Professionals.

#   #   #

Submitted by:
Isaac M. Marcushamer, Esq.
imarcushamer@bergersingerman.com
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

*(Attorney Marcushamer is hereby directed to mail a conformed copy of this order to all interested parties and to file a Certificate of Service).*