**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE: CASE NO.: 09-34791-RBR

ROTHSTEIN ROSENFELDT ADLER, P.A., CHAPTER 11

Debtor.
_______________________________________/

# BRADLEY EDWARDS' RESPONSE IN OPPOSITION TO JEFFREY EPSTEIN'S EXPEDITED MOTION TO BE EXCUSED FROM ATTENDING SHOW CAUSE HEARING AND SUPPLEMENT THERETO

Bradley J. Edwards ("Edwards"), by and through undersigned counsel, hereby files this Response in Opposition to Jeffrey Epstein's Expedited Motion to Be Excused From Attending Show Cause Hearing and Supplement Thereto, which has been set for hearing on October 23, 2018 and states as follows:

## The Disc Did Not Sit in a Box

Contrary to what has been repeatedly stated by Jeffrey Epstein ("Epstein") and Fowler White, the disc that Fowler White retained in violation of this Court's November 30, 2010 Agreed Order did not "sit in a box" for the past eight (8) years. This fact, however, was only uncovered at the October 19, 2018 deposition duces tecum of Fowler White's corporate representative, which was conducted *after* Epstein's deposition on October 13, 2018. Thus, the Court should not excuse Epstein from attending the upcoming Show Cause hearing because Edwards is entitled to cross-examine Epstein on the recent discovery that not only did the disc not "sit in a box" but Fowler White printed at least 32 pages of materials from the disc (26 of which are listed in Edwards' privilege log) and made handwritten notations on at least one (1) of the pages.

Attached as Exhibit 'D'[1] to the Fowler White deposition transcript is a composite of 32 documents that were printed off the disc that is the subject of these contempt proceedings. The printed documents were contained in a folder labeled 'J. Carney - Printing of CD Issue -.' Twenty-six (26) of the emails are listed on Edwards' privilege log. The folder itself was logged on an inventory from 2014, which Fowler White apparently created when it transferred the Epstein case files to storage. And, tellingly, at least one (1) email contains **handwritten notations**, indicating that not only did Fowler White take the "disc **out** of the box" and print certain privileged materials, but it analyzed those materials in derogation of this Court's November 30, 2010 Agreed Order.

What is unknown at this point is whether Epstein was aware that his attorneys not only retained, but were in fact apparently utilizing, the disc and materials that are the subject of the November 30, 2011 Agreed Order. Did Epstein receive copies of these materials? Did he instruct Fowler White to print the documents? What role, if any, did he play in what is the clear violation of this Court's Order? Those questions are but a few that Edwards is clearly entitled to cross-examine Epstein on at the upcoming Show Cause hearing, as he seeks to meet the high burden of clear and convincing evidence to hold Epstein in contempt.[2] For these reasons, the Court should deny Epstein's Expedited Motion to Be Excused.

In addition, Epstein was instructed not to answer a litany of questions at his October 13, 2018 deposition, and Edwards is entitled to re-ask those questions on cross-examination and to have the Court determine the validity of any such instruction. For example, Epstein testified during his deposition that his personal attorney, Darren Indyke, handed him somewhere between 3 and 100 documents that were obtained from the Fowler White disc at issue. See Epstein Dep. Tr. at

[1] Per the agreement of the parties, this exhibit is attached under seal.

[2] Edwards' recitation of these prospective sampling of these questions is made with full reservations of his work-product privilege, and any further requirement that Edwards establish a predicate to form the basis to support his position that Epstein appear at the Show Cause hearing would violate Edward' work-product privilege and be equivalent to requiring Edwards to divulge his trial strategy in advance of Friday's hearing.

29:1-24 (number of documents); 33:8-9 (received from Mr. Indyke)[3]. Epstein, however, was instructed not to answer the following question based on the assertion of the attorney-client privilege:

> (MR. SCAROLA) Q: Were you told at the time that Mr. Indyke gave you the less than 100 pages that he said were contained on the disc, that an allegation was made that any of those documents were privileged?
>
> . . .
>
> (MR. LINK): So if you can answer that general questions because the source of information was from somebody other than Mr. Indyke and/or your lawyers, then you can answer it.
>
> (EPSTEIN) A: I cannot answer it separate from that.
>
> Q: Did your lawyers, including Mr. Indyke, tell you when they handed over those pages to you that there's an allegation that these pages contain privileged materials?
>
> (MR. LINK): I am going to instruct you not to answer it.

Epstein Dep. Tr. at 54:24-55:21.

The instruction not to answer is improper. Edwards has the burden to establish, by clear and convincing evidence, that Epstein violated the Court's November 30, 2010 Agreed Order. That Agreed Order prohibits Epstein from "retain[ing] images **or copies of the subject document** on its computer **or otherwise**." If Epstein was given copies of documents and was told that those documents were listed on Edwards' privilege log, it follows that Epstein was also told about this Court's November 30, 2011 Agreed Order at the time he was given the copies of the documents by Mr. Indyke.[4] At that point, Epstein would be in willful violation of the Court's Agreed Order if he retained these documents and would have been obliged to order his attorneys and agents, Link & Rockenbach, to destroy the subject documents to ensure that Epstein was in compliance with

---

[3] A copy of the referenced excerpts of Epstein's October 13, 2018 deposition transcript is attached hereto as Exhibit 'A'.

[4] This is yet another example of a question that needs to be asked of Epstein during the Show Cause hearing.

this Court's Agreed Order. Again, this is but one example of questions which Epstein refused to answer and to which Edwards is entitled to re-ask at the Show Cause hearing so that the Court can rule on the propriety of the objection and instruction.

**Conclusion**

For the forgoing reasons, Edwards respectfully requests that the Court deny Epstein's Expedited Motion.

I HEREBY CERTIFY that, pursuant to L.R. 9011-4(B) the undersigned counsel is qualified to practice before this Court.

I HEREY CERTIFY that a true and correct copy of the foregoing was served on electronically to the examinee, the debtor, the attorney for the debtor, the trustee, all CM/ECF subscribers, and by email or U.S. Mail on those parties listed on the attached service list this 26th day of September, 2018.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

*/s/ David P. Vitale Jr.*
Jack Scarola
Florida Bar No.: 169440
David P. Vitale, Jr.
Florida Bar No.: 115179
Attorney E-Mails: jsx@searcylaw.com; and mmccann@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Attorneys for Bradley J. Edwards

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 22, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certified that the foregoing document is being served this day on all counsel of record or pro se parties identified on the on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ David P. Vitale Jr.*_______________
DAVID P. VITALE JR.
Florida Bar No.: 115179
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax: 561-383-9451
Attorneys for Bradley J. Edwards

**SERVICE LIST**

Joseph L. Ackerman, Jr., Esq.
Fowler White Burnett, P.A.
901 Phillips Point West
777 South Flagler Drive
West Palm Beach, Florida 33401-6170
Phone: (561) 802-9044
Fax: (561) 802-9976

Scott J. Link, Esq.
Link & Rockenbach, P.A.
Scott@linkrocklaw.com
Kara@linkrocklaw.com
1555 Palm Beach Lakes Boulevard
Suite 301
West Palm Beach, FL 33401
Phone: 561-727-3600
Fax: 561-727-3601
Attorneys for Jeffrey Epstein

Jack A. Goldberger, Esquire
jgoldberger@agwpa.com; smahoney@agwpa.com
Atterbury Goldberger & Weiss, P.A.
250 Australian Avenue S, Suite 1400
West Palm Beach, FL 33401
Phone: (561)-659-8300
Fax: (561)-835-8691
Attorneys for Jeffrey Epstein

Phil Burlington, Esq.
Nichole J. Segal, Esquire
njs@FLAppellateLaw.com; kbt@FLAppellateLaw.com
Burlington & Rockenbach, P.A.
444 W Railroad Avenue, Suite 350
West Palm Beach, FL 33401
Phone: (561)-721-0400
Attorneys for Bradley J. Edwards

EDWARDS POTTINGER LLC
Bradley J. Edwards FLBN 54207
Brittany N. Henderson FLBN 118247
Edwards Pottinger LLC
425 N Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Phone: (954)-524-2820

Fax: (954)-524-2822
Attorneys for Farmer, Jaffe, Weissing,
Edwards, Fistos & Lehrman, P.L.

Jay Howell
Jay Howell & Associates
Florida Bar No.: 225657
Attorney E-Mail(s): jay@jayhowell.com
644 Cesery Blvd. #250
Jacksonville, FL 32211
(904) 680-1234

Paul G. Cassell
S.J. Quinney College of Law at the
University of Utah
332 S. University St.
Salt Lake City, UT 84112
(above for address purposes only)
Attorney E-Mail: cassellp@law.utah.edu
Attorneys for L.M., E.W., and Jane Doe

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN
AND FOR PALM BEACH COUNTY, FLORIDA

Case No. 502009CA040800XXXXMB

JEFFREY EPSTEIN,

Plaintiff/Counter-Defendant,

vs.

SCOTT ROTHSTEIN, individually;
BRADLEY EDWARDS, individually,

Defendants/Counter-Plaintiffs.
______________________________/

VIDEOTAPED DEPOSITION

OF

JEFFREY EPSTEIN

Saturday, October 13th, 2018
9:07 a.m. - 11:00 a.m.
1555 Palm Beach Lakes Boulevard, #930
West Palm Beach, Florida 33401

Examination of the witness taken before

Sonja D. Hall
Palm Beach Reporting Service, Inc.
1665 Palm Beach Lakes Boulevard, Suite 1001
West Palm Beach, FL 33401
(561) 471-2995

EXHIBIT
A

BY MR. SCAROLA:

Q Can you characterize in any way the volume of documents that you received that you understood originated on the disc?

A I don't recall.

Q Was it more than one?

A Probably.

Q Was it more than two?

A Probably.

Q Was it more than three?

A I don't know what you mean by documents. Are you talking about pages?

Q Yes. Let's be very specific.

Did you receive more than three pages that you understood to have been printed out from the disc?

MR. LINK: Let me think about the question for a minute.

You can answer that question.

THE WITNESS: Yes.

BY MR. SCAROLA:

Q Was it more than 10?

A I would say less than 100, so we don't have to go through numbers.

Q That does indeed save us some time.

question.

THE WITNESS: Sometime in February I was handed, from my attorneys, some documents. Is what I recall. Some documents from my attorneys. I was handed some documents.

BY MR. SCAROLA:

Q Who specifically handed you those documents?

A Darren Indyke.

Q Where were you?

A I believe in New York. I can't be certain.

Q How many pages did Mr. Indyke hand you on that occasion?

A Less than 100.

Q Were those pages accompanied by any cover letter?

A Not that I recall.

Q Were they accompanied by any summary of the contents?

A Not that I recall.

Q Were they accompanied by any index?

A Not that I recall.

Q What did Mr. Indyke tell you about the documents when he gave him to you?

MR. LINK: I'm going to instruct you

discuss with you what I think the impediment is to these general questions, because there were alleged privileged emails that were produced in the litigation -- before my law firm was retained -- voluntarily by Mr. Edwards and his law firm, so that there had been in the record alleged privileged emails for years in this case. And you have not asked specific questions about the emails that were located by my law firm in February as to your questions.

So I think your general questions about alleged privileged emails is not encompassed in what the court has asked or what we are here to talk about. And it's creating confusion, because there were many alleged privileged emails produced years ago.

BY MR. SCAROLA:

Q Did Mr. Link tell you the things that he just stated on the record at some time prior to today?

MR. LINK: You are not going to answer that question, Mr. Epstein.

BY MR. SCAROLA:

Q Were you told at the time that Mr. Indyke gave you the less than 100 pages that he said were

contained on the disc, that an allegation was made that any of those pages were privileged?

THE WITNESS: Can you repeat the question for me, please?

(Thereupon, the requested portion of the record was read back by the reporter as above duly recorded.)

MR. LINK: So if you can answer that general question because the source of information was from somebody other than Mr. Indyke and or your lawyers, then you can answer it.

THE WITNESS: I cannot answer it separate from that.

BY MR. SCAROLA:

Q Did your lawyers, including Mr. Indyke, tell you when they handed over those pages to you that there's an allegation that these pages contain privileged material?

MR. LINK: I am going to instruct you not to answer it.

Do you mind if we take a break?

THE VIDEOGRAPHER: Going off the record at 10:15 a.m.

(A recess was had.)